IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| MARGARET J. STILWELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-CV-02160 |
| v. | ) | |
| | ) | Honorable Chief Judge |
| AMERICAN GENERAL LIFE | ) | Michael P. McCuskey |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| AMERICAN GENERAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| FIRST MID ILLINOIS BANK & TRUST, | ) | |
| TUSCOLA FURNITURE GROUP, LLC, | ) | |
| and JANKO FINANCIAL GROUP, LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THIRD PARTY COMPLAINT**

NOW COME Third-Party Defendants, TUSCOLA FURNITURE GROUP, LLC ("TFG") and JANKO FINANCIAL GROUP, LLC ("JFG"), by HOWARD & HOWARD ATTORNEYS, P.C. and respectfully submit their Memorandum of Law in Support of their Motion to Dismiss Defendant's/Third-Party Plaintiff's, AMERICAN GENERAL LIFE INSURANCE COMPANY ("AGLIC"), Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Central District Local Rule 7.1:

**I. INTRODUCTION**

This is a third party action by American General to recover payments made on a policy insuring the life of James Stilwell. American General paid this money to the Third Party

1

Defendants pursuant to collateral assignment of life insurance benefit signed by Margaret Stilwell ("Margaret"). Regardless of how it characterizes the allegations in its Third-Party Complaint, AGLIC has failed to allege that the Third-Party Defendants made any misrepresentation of material fact. It merely alleges that the documents submitted by the Third-Party Defendants did not entitle them to payment on the policy. The purported "misrepresentation" or "mistake" was the assertion that the facts set forth in the claim created a right to payment.

The payments in question total $512,974.50 and were made by AGLIC to TFG and First Mid Illinois Bank & Trust ("Bank") (together with JFG collectively referred to as "Third-Party Defendants") pursuant to collateral assignments of life insurance held by TFG, JFG and Bank on American General Policy #2604663. The original collateral assignments to TFG in the amount of $250,000, to JFG in the amount of $2,000,000, and to Bank in the amount of $1,000,000 were made to secure an obligation of the Stilwells to the Third-Party Defendants. JFG subsequently released its assignment in favor of TFG.

Margaret, the wife of James Stilwell, was the owner and the death beneficiary of Policy #2604663. Margaret filed this suit asserting that AGLIC's payment to TFG, JFG and Bank breached Policy #2604663 because JFG had released its assignment and because TFG, JFG and Bank never received a joint assignment from her. Margaret asserts that Bank was only owed $81,000, that TFG was owed $250,000, and the $2,000,000 assignment to JFG had been released. Thus, Margaret claims only $331,000 should have been paid. From the total payment made of $512,974.50, Margaret claims AGLIC overpaid the Third-Party Defendants by $181,974.50. AGLIC answered Margaret's Complaint by denying all allegations that its payments to TFG and JFG were improper. AGLIC, nevertheless, brought this third party action

2

asserting that if it is liable to Margaret for improper payment, TFG, JFG and Bank are liable to it for the amounts improperly paid. AGLIC's third party claim asserts that TFG, JFG and Bank are liable to it under the following theories: constructive trust or equitable lien (fraud), constructive trust or equitable lien (mistake), restitution/unjust enrichment (fraud), restitution/unjust enrichment (mistake), contribution, and implied indemnity.

The Third-Party Complaint fails to state a claim upon which relief can be granted. AGLIC's effort to recover the payment is barred by the voluntary payment doctrine which holds payments voluntarily paid with knowledge of all the underlying facts cannot be recovered absent coercion, fraud or a superior bargaining position. AGLIC's attempts to plead around the voluntary payment doctrine by asserting that TFG, JFG and Bank committed fraud by representing that JFG released its assignment amounting to $2,000,000 in favor of TFG pursuant to a release dated November 20, 2000 and by representing the outstanding life insurance assignments totaling $3,000,000. The exhibits attached to its Third-Party Complaint demonstrate that all material facts were disclosed and there was neither fraud nor any mistake of fact entitling AGLIC to recover the payments it paid to TFG and Bank. AGLIC has pled no more than it reached the wrong conclusion regarding the legal effect of what the Third-Party Defendants submitted.

## II. BACKGROUND

No material facts or documents are in dispute in this case. Margaret and Third-Party Plaintiff AGLIC simply contest whether an assignment had the legal effect of transferring ownership rights as claimed by the Third-Party Defendants. Regardless of AGLIC's present second guessing, it had all the underlying information and documents from which to draw its own conclusion when it voluntarily made payment.

Margaret alleges in her Complaint that AGLIC improperly paid the joint claim in the amount of $512,974.50 submitted by TFG, JFG and Bank. *Third Party Complaint, ¶¶ 34-35*. Her Complaint is attached to the Third-Party Complaint as Exhibit 12. However, only $181,974.50 and the legal effect of a single assignment from JFG in favor of TFG are at issue in both the Complaint and the Third-Party Complaint. Plaintiff's Complaint alleges that, although JFG released its prior assignments and TFG was owed more on the date of Mr. Stilwell's death, TFG only held a valid assignment for $250,000. *Third Party Complaint, Factual Background, ¶ 35*. Plaintiff also alleges that that although Bank held a valid assignment for one million dollars ($1,000,000), it was only owed $81,000 at the time of Mr. Stilwell's death. *Id.* Finally, Plaintiff alleges that JFG, TFG and Bank never received a joint assignment and, therefore, could not make a joint claim. *Id.* Bank, JFG and TFG were not named as defendants in Margaret's Complaint.

AGLIC answered the Complaint by denying all allegations that its payments to TFG and JFG were improper. AGLIC, nevertheless, brought this third party action asserting that if it is liable to Margaret for improper payment, TFG, JFG and Bank are liable to it for the amounts improperly paid.

AGLIC brings Counts I and III for fraud based on certain representations made in the Proof of Claim by TFG, JFG and Bank that: (1) JFG released its assignments amounting to two million dollars ($2,000,000) in favor of TFG and, thus, transferred those rights under the assignment to TFG pursuant to the agreement between JFG and TFG; and (2) the outstanding life insurance assignments they received from AGLIC on the policy in satisfaction of the requirements of the parties' consignment agreement totaled at least three million dollars (3,000,000). *Third Party Complaint, Count I, ¶ 37*. AGLIC does not allege that Bank, JFG and TFG made any representations not reflected in the documents or concealed any facts or

4

documents. In Counts II and IV, AGLIC attempts to state causes of action for mistake claiming the representations listed above were made by Bank, TFG and JFG under the mistaken belief that JFG's release in favor of TFG was valid. *Third Party Complaint, Count II, p. 38 and Count IV, p. 44*. Count V alleges that if Margaret was damaged, it was a result of Bank, TFG and JFG. Finally, in Count VI AGLIC alleges a claim for implied indemnity arising from the same representations.

The Third-Party Complaint's allegations and the documents attached thereto reveal in detail that all the parties, including AGLIC, had full knowledge of the underlying facts at the time AGLIC paid the $181,974.50 to TFG and Bank. There were four original collateral assignments of Policy #2604663 (the "Policy") from Margaret on behalf of Mr. Stilwell for business transactions which are not contested. The Policy issued to Margaret on October 27, 1998 had a face value of four million dollars ($4,000,000). (See Policy attached as Exhibit 1 to Third-Party Complaint.)

On April 19, 1999, Margaret executed an assignment under the Policy in the amount of $500,000 to JFG. (See Margaret's April 19, 1999 assignment to JFG attached as Exhibit 2 to the Third-Party Complaint.) AGLIC confirmed receipt, endorsement and recording of the April 19, 1999 assignment by correspondence to JFG. On September 25, 2000, Margaret executed another assignment under the Policy in the amount of $1,500,000 to JFG. (See Margaret's September 25, 2000 assignment to JFG attached as Exhibit 3 to the Third-Party Complaint.) American General confirmed receipt, endorsement and recording to JFG by correspondence. On November 20, 2000, Lawrence Bianchi executed a form assignment document on behalf of JFG releasing the above assignments "in favor of Tuscola Furniture Group, LLC" (TFG). (See November 20, 2000 assignment from JFG to TFG attached as Exhibit 4 to the Third-Party

5

Complaint.) American General received, endorsed and recorded the same and confirmed its actions by correspondence to JFG.

On November 28, 2000, Margaret made a third assignment in the amount of $250,000 under the Policy to TFG. (See Margaret's November 28, 2000 assignment to TFG attached as Exhibit 5 to Third-Party Complaint.) AGLIC confirmed receipt, endorsement and recording through a correspondence to TFG. On January 11, 2001, Margaret made a fourth assignment under the Policy to Bank in the amount of $1,000,000. (See Margaret's January 11, 2001 assignment to Bank attached as Exhibit 6 to Third-Party Complaint.) AGLIC confirmed receipt, endorsement and recording by correspondence to Bank.

The insured, James E. Stilwell, died on May 2, 2003. Thereafter, AGLIC provided claim forms to entities with assignments on file. On May 12, 2003, Bank submitted a completed claim form for $512,974.50 on behalf of Bank, JFG and TFG with a cover letter. (See May 12, 2003 correspondence and attached documents attached as Exhibit 7 to the Third-Party Complaint.) The cover letter advised AGLIC the Third-Party Defendants were making a joint claim for collateral assignments which secured an unpaid obligation. The May 12, 2003 cover letter itemized the $512,974.50 still due and owing to Bank, TFG and JFG.

On the same day, May 12, 2003, Lawrence Bianchi, as representative for both TFG and JFG, sent a letter to AGLIC confirming that Bank, JFG and TFG were making a joint application for life insurance proceeds and itemizing the amount still due and owing. (See May 12, 2003 correspondence and attached documents attached as Exhibit 8 to the Third-Party Complaint).

On June 10, 2003, AGLIC sent separate correspondence to TFG, JFG and Bank requesting verification of the assignments and confirmation of the debt owed under the assignments.

On June 11, 2003, Lawrence Bianchi sent an exhaustive verification letter on behalf of JFG and TFG explaining in chronological detail the assignments and events that formed the basis of the Third-Party Defendants' claims under the Policy. (See June 11, 2003 correspondence attached as Exhibit 10 to the Third-Party Complaint.) In that letter, Mr. Bianchi highlighted and emphasized the November 20, 2000, release by JFG of its assignment **"in favor of Tuscola Furniture Group, LLC"** by bolding this language on page two.

In addition and to further support the claim of TFG and JFG, in the June 11, 2003 letter, Mr. Bianchi submitted several agreements that explained and tracked the transfers of interest that ultimately resulted in the November 20, 2000 release by JFG of assignment **"in favor of Tuscola Furniture Group, LLC."** (See June 11, 2003 correspondence attached as Exhibit 10 to the Third-Party Complaint.) Bianchi explained that on April 19, 1999, JFG and James Stilwell, as President of Amishland County Village, Inc., entered into a consignment agreement for the retailing of Amish furniture. In the April 19, 1999 consignment agreement, JFG required James and Margaret Stilwell to provide personal guarantees. The consignment agreement further required that JFG and its lender, Bank, receive an assignment of the Policy from the Stilwells in the amount of $2,000,000. Margaret made $500,000 of the required assignment on April 19, 1999 (See Margaret's April 19, 1999 assignment to JFG attached as Exhibit 2 to the Third-Party Complaint) and assigned the remaining $1,500,000 on September 25, 2000. (See Margaret's September 25, 2000 assignment to JFG attached as Exhibit 3 to the Third-Party Complaint.)

Mr. Bianchi's June 11, 2003 correspondence also provided and explained a November 16, 2000 assignment assumption agreement between JFG to TFG, which was a newly formed entity at the time of the November assignment. The correspondence detailed that JFG owned seventy percent (70%) of TFG. The assignment assumption agreement between TFG and JFG

7

included rights to insurance assignments relating to the previous April 19, 1999 consignment agreement.

Mr. Bianchi's June 11, 2003 correspondence to American General also enclosed and explained a consignment agreement dated November 17, 2000 between TFG and Amishland Country Village, Inc. In the November 17, 2000 agreement, TFG required James and Margaret Stilwell to provide personal guarantees and pledge a portion of the proceeds of the Policy. To effectuate this, the November 17, 2000 consignment agreement required TFG and Bank to receive an assignment of $1,250,000 under the Policy. Mr. Bianchi explained that in support of the November 17 consignment agreement, JFG on November 20, 2000 released its assignment under the Policy from Margaret **"in favor of Tuscola Furniture Group, LLC."** (See November 20, 2000 assignment from JFG to TFG attached as Exhibit 4 to the Third-Party Complaint.) Pursuant to the consignment agreement, Margaret then assigned $1,000,000 under the Policy to Bank. (See Margaret's January 11, 2001 assignment to Bank attached as Exhibit 5 to Third-Party Complaint.)

Armed with the assignments and the chronology provided by Third-Party Defendants, AGLIC then paid $512,974.50 on the joint claim. American General does not refute or contradict any of the facts contained in the documents. In fact, it incorporates these documents throughout its pleading.

### III.  STANDARD OF REVIEW

Rule 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief may be granted. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004). When a plaintiff pleads itself out of court, that is, admits all the ingredients of an impenetrable defense, a complaint that otherwise states a claim may be dismissed pursuant to

Rule 12(b)(6). *Id.* at 901. When considering a Rule 12(b)(6) motion to dismiss, the Court must accept all the allegations as true. *Cohn v. Anthem Life & Health Ins. Co.*, 965 F. Supp. 1119 (N.D. Ill. 1997). The test under Rule 12(b)(6) is whether it appears beyond doubt plaintiff can prove no set of facts to support the claim which would entitle it to relief. *Id.* Although a court may not look beyond the pleadings in a 12(b)(6) motion, documents incorporated by reference into the pleadings and all documents attached to the pleadings as exhibits are considered a part of the pleadings for all purposes pursuant to Federal Rule of Civil Procedure 10(c). *Marie O. v. Edgar*, 157 F.R.D. 433, n. 1 (N.D. Ill. 1994).

## IV.  APPLICABLE LAW

In this diversity action, the *Erie* Doctrine calls for the Court to apply the substantive law of the forum state in which the cause of action arose. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Thus, Illinois law governs this case.

## IV.  BRIEF STATEMENT OF SUPPORTING AUTHORITY

TFG and JFG's motion to dismiss should be granted for the following reasons: (1) AGLIC paid the Third-Party Defendants under a claim of right with knowledge of underlying facts. Absent coercion, fraud or a superior bargaining position by the transferee, money paid under a mistake of law is not recoverable. *Cohn v. Anthem Life & Health Ins. Co.*, 965 F. Supp. 1119, 1121-22 (N.D. Ill. 1997) citing *Illinois Graphics Co. v. Nickum,* 159 Ill. 2d 469, 639 N.E.2d 1282, 1292 (1994); and (2) all that AGLIC has alleged is that it drew the wrong conclusion regarding whether the Third-Party Defendants had a legal right to payment. "Mistake of law" has been defined as an erroneous conclusion of the legal effect of known facts. *Id.* Even if AGLIC reached the wrong legal conclusion, it may not recover a payment made as a result of a

mistake of law. *Auto Owners Ins. Co. v. South Side Trust & Savings Bank*, 176 Ill. App. 3d 303, 531 N.E.2d 146 (3rd Dist. 1988).

### V. ARGUMENT

AGLIC brings Count I for Constructive Trust or Equitable Lien (Fraud) based on certain representations made in the Proof of Claim by TFG, JFG and Bank that: (1) JFG released its assignments amounting to two million dollars ($2,000,000) in favor of TFG and thus, transferred those rights under the assignment to TFG pursuant to the agreement between JFG and TFG; and (2) the outstanding life insurance assignments they received from Plaintiff on the policy and satisfaction of the requirements of the parties' consignment agreement totaled at least three million dollars (3,000.000). *Third Party Complaint, Count I, ¶ 37*.

AGLIC then alleges TFG, JFG and Bank made these and other representations in support of their claim knowing they were false or with reckless disregard for the truth or falsity of the statements to induce AGLIC to approve and pay their joint claim in the amount of $512,974.50. *Id. at ¶ 38*. AGLIC takes these representations and also characterizes them as fraud in Count I, as mistake in Count II, as fraud in Count III and as mistake in Count IV. AGLIC seeks contribution and implied indemnity in Counts V and VI, respectively, as a result.

**A.    American General can not recover a voluntary payment made under a claim of right; it can only recover if fraud or mistake of fact occurred.**

Counts II and IV for mistake must be dismissed for failure to state a cause of action. AGLIC made a voluntary payment in this case based on all pertinent and material facts available. No facts or documents were concealed from its review. If a mistake was made in this case, it was one of law. As a result, AGLIC may not recover in this lawsuit.

Under the "voluntary payments doctrine, … neither money paid under a claim of right with full knowledge of the underlying facts and absent coercion, fraud or a superior bargaining

10

position by the transferee nor money paid under a mistake of law is recoverable." *Cohn v. Anthem Life & Health Insurance Co.*, 965 F. Supp. at 1121-22. "Mistake of law" has been defined as an erroneous conclusion of the legal effect of known facts. *Id. See also Hartford v. Doubler*, 105 Ill. App. 3d 999, 434 N.E.2d 1189, 1191 (3rd Dist. 1982). ("It is a well established proposition of law that money paid under a mistake of fact can be recovered by the payor. However, money paid under mistake of law cannot be so recovered.")

In *Hartford*, the defendant rancher's insurance policy excluded coverage for the loss of livestock while in a public sale barn. When some of the rancher's steers were stolen from a public sale barn, the insured notified the authorities and his insurer. 434 N.E.2d at 1190. The claims form submitted by the insured noted that the loss occurred at a public sale barn. After interviewing the insured, and reviewing the police report and claim form, the insurer paid the claim. *Id.* The insurer later filed suit to recover the payment, asserting the adjuster made payment by mistake without knowledge of the public barn exclusion. *Id* at 1191.

The appellate court affirmed the trial court's grant of summary judgment in favor of the rancher. In doing so, it noted the insurer is charged with knowledge of its policies and received the request to act under the terms of its policy. *Id.* Thus, the court held, the insurer made the payment with full knowledge of the sale barn exclusion and it was a nonrecoverable mistake of law. It stated "[b]ecause approval and payment of the … claims were made voluntarily and without lack of knowledge or mistake of fact, any policy provisions exempting coverage have been waived." *Id.* at 1192.

It was significant in *Hartford v. Doubler* that defendants neither withheld information nor distorted the facts presented to the plaintiff. Because approval of payment of the defendants'

11

claims was made voluntarily and without lack of knowledge or mistake of facts, the insurer could not recover those amounts.

The *Hartford* court relied on the earlier case of *Western & Southern Life Insurance Co. v. Brueggeman*, 323 Ill. App. 3d 173, 55 N.E.2d 719 (4th Dist. 1944). In the *Western & Southern* case, an insurer had inadvertently made payment on a claim of a beneficiary to a life insurance policy for a military death despite a military and naval service exemption clause in the policy. The insurer made payment with knowledge that the insured was in the military. The court in *Western* found that payment had been made voluntarily without any fraud or misrepresentation and that the insurer could not recover the payment.

In *Auto Owners Ins. Co. v. South Side Trust & Savings Bank*, 176 Ill. App. 3d 303, 531 N.E.2d 146 (3rd Dist. 1988), South Side Bank brought a counterclaim against an insurer to recover payments its employees made on a letter of credit. South Side issued a letter of credit on behalf of an electrical subcontractor to secure a performance bond issued by the insurer. The performance bond did not conform to the letter of credit, but South Side paid a draw made by the issuer of the performance bond. Its employees had assumed that the wording of the bond and the letter of credit were in compliance.

South Side later learned that the performance bond and letter of credit were not in compliance, and it sued the issuer of the performance bond to recover the draw it had paid. South Side argued that its error was one of fact entitling it to recover its payment to the issuer of the performance bond and that it was not aware of noncompliance because the plaintiff failed to supply it with a copy of the bond. The insurer successfully argued that since South Side Bank misinterpreted the legal effect of the letter of credit, it had made a mistake of law. The Appellate

Court held that since the defendant paid the money without demanding to see the bond, it also had waived its right to reimbursement.

AGLIC reached its own legal conclusion regarding the Third-Party Defendants' right to payment the November 20, 2000 assignment was valid based on all of the information provided to it. As stated in *Auto Owners*, misinterpreting the legal effect of a document is a mistake of law. There should be no difference in the outcome here. If AGLIC was in doubt, it could have interpleaded the funds.

Here, like the nonrecoverable payments in *Hartford v. Doubler, Auto Owners* and *Western & Southern*, AGLIC made voluntarily, with full knowledge, and with the benefit of the documents themselves, including the November 20, 2000 release of assignment by JFG in favor of TFG. AGLIC required Bank, TFG and JFG to produce documents and information for its review. *Third-Party Complaint, Factual Background, ¶ 27*. Pursuant to AGLIC's request for verification of the basis for the joint claim, on June 11, 2003, Lawrence Bianchi sent an exhaustive verification correspondence on behalf of JFG and TFG explaining in chronological detail the assignments and events which formed the basis of the entities claims made under the Policy and drawing attention to the November 20, 2000 release of assignment by JFG in favor of TFG. (See June 11, 2003 correspondence attached as Exhibit 10 and Exhibits 7-9 to the Third-Party Complaint. See also *Third-Party Complaint, Factual Background, ¶¶ 21-32*.)

AGLIC's Third-Party Complaint openly recognizes it received all relevant underlying facts. AGLIC alleges it requested, received, acknowledged receipt of, and subsequently recorded all four assignments. *Third-Party Complaint, Factual Background, ¶¶ 9-18*. This includes the assignments from Margaret to JFG and TFG, as well as the November 20, 2000 assignment from JFG in favor of TFG. *Third-Party Complaint, Factual Background, ¶ 13 and Exhibit 4, thereto*.

13

(See also AGLIC's Answer to Margaret's Complaint, ¶ 8, Affirmative Defense, ¶ 13 attached as Exhibit 13 to Third-Party Complaint.)  As is clear from Paragraphs 11 through 14 of the Third-Party Complaint, AGLIC had the November 20, 2000 assignment prior to its decision to make payment.  Now, only after Margaret claims the assignment from JFG to TFG was a blanket release and not an assignment does AGLIC seek to recover payments it voluntarily made.

AGLIC made a voluntary payment after receiving the documents and information.  AGLIC necessarily concluded the November 20, 2000 assignment was properly executed in favor of TFG and made payments accordingly.  Like the insurer in *Auto Owners*, TFG and JFG believed they had properly executed the legal document assigning JFG's interest to TFG.  Like the bank in *Auto Owners*, AGLIC received and reviewed the legal document without objection.  Like the bank in *Auto Owners*, AGLIC should not be allowed to recover its voluntary payment.  Even if AGLIC misinterpreted the effect of the assignment, such a mistake was one of law.  Under Illinois law, it may not recover payments it voluntarily made when it had all the relevant facts, even if it reached the wrong legal conclusion from those facts.

**B.     American General has not and cannot allege fraud.**

To state a cause of action for fraudulent misrepresentation, a plaintiff must allege that the defendant made a representation of material fact, the defendant knew or believed the representation was untrue, the plaintiff had a right to and did rely on the representation, the representation was made for the purpose of inducing the plaintiff to act or refrain from acting, and the representation led to the plaintiff's injury.  *Miner v. Fashion Enterps., Inc.* 342 Ill. App. 3d 405, 794 N.E.2d 902 (1st Dist. 2003).  A misrepresentation is "material" and therefore actionable if it is such that had the other party been aware of it, he would have acted differently.  *Mack v. Plaza Dewitt Ltd. Partnership*, 137 Ill. App. 3d 343, 484 N.E.2d 900 (1st Dist. 1985).

Here there was not a misrepresentation of material fact. The statement that "JFG released its assignments amounting to $2,000,000 in favor of TFG and thus, transferred those rights under the assignment to TFG pursuant to the agreement dated November 16, 2000, between JFG and TFG and the release of assignment dated November 20, 2000 submitted to American General" is not a misrepresentation at all.

Even if a "misrepresentation" was made, it was not one of fact. The "misrepresentation" alleged is the legal effect of the November 20, 2000 assignment from JFG in favor of TFG. AGLIC does not allege the Third-Party Defendants misrepresented the language in the November 20, 2000 assignment. The Third-Party Defendant simply quoted the language in the assignment. Simply put, Margaret reached a different conclusion of the legal effect of the language than both AGLIC and the Third-Party Defendants did in this case. Regardless of the conclusion reached, AGLIC, made its decision with full knowledge of the facts.

**C.    American General's fraud, unjust enrichment, contribution and implied indemnity claims are nothing more than relabeled mistake claims and are defective for the same reasons as its mistake claims.**

All of AGLIC's third party claims are based on the same "misrepresentations." The Third-Party Complaint alleges that TFG, JFG and Bank represented that JFG had released its assignment of two million dollars ($2,000,000) in favor of TFG pursuant to the release dated November 20, 2000. The Third-Party Complaint further alleges TFG, JFG and Bank represented that the outstanding life insurance assignments totaled three million dollars ($3,000,000). See *Count II, ¶ 37.* In Counts II and IV, AGLIC alleges TFG, JFG and Bank made these representations based on the mistaken belief that JFG's release in favor of TFG on November 20, 2000 was a valid transfer rather than a blanket release whereas in Counts I and III, it claims the very same "misrepresentations" were made with knowledge of their inaccuracy or reckless

15

disregard for the same. The exact same "misrepresentations" purportedly give rise to AGLIC's contribution claim in Count V and implied indemnity claim in Count VI.

The problem with these alternative theories of recovery is that they suffer from the same defects as AGLIC's mistake claim. These are not misrepresentations of fact, but regardless of how AGLIC chooses to characterize the same conduct, it fails to state a cause of action because it has not and cannot allege it did not have complete knowledge of the material facts.

**D.   To the extent that American General has properly alleged fraud, misrepresentation and coercion, such an allegation is directly contradicted by Exhibit 4 and the exhibit must control.**

Even if we were to assume AGLIC's allegations otherwise stated viable claims, the exhibits attached to its Third-Party Complaint, specifically Exhibit No. 4, contradict these allegations. To the extent the allegations contradict the exhibits, the exhibits control. *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir. 1998). The Seventh Circuit held "[i]n examining the pleadings, we must determine how to resolve this tension between the allegations in the complaint and the exhibits attached to the complaint. It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Id*. at 454 citing *ALA, Inc. v. CCAIR, Inc*., 29 F.3d 855, 859 n. 8 (3d Cir.1994) (concluding that when documents attached to a complaint contradict the allegations of the complaint, the document controls in a Rule 12(b)(6) motion to dismiss for failure to state a claim); *Bell v. Lane,* 657 F. Supp. 815, 817 (N.D. Ill. 1987) (stating that "[w]here exhibits attached to a complaint negate its allegations, a court is not required to credit the unsupported allegations" in denying a petition to file *in forma pauperis* based on information in the exhibits that contradicted allegations made in the petition). In fact, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate

16

that he or she is not entitled to judgment." *Northern Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 454 citing *Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992).

The exhibits here conclusively establish AGLIC had full knowledge of the underlying facts and would directly contradict allegations of misrepresentation, mistake or fraud. AGLIC had in its possession all the relevant assignments. (See Exhibits 2-6 to Third-Party Complaint.) Pursuant to AGLIC's request for verification of the basis for the joint claim, Lawrence Bianchi sent an exhaustive verification correspondence on behalf of JFG and TFG explaining in chronological detail the assignments and events which formed the basis of the entities' claim made under the Policy and drawing attention to the November 20, 2000 release of assignment by JFG in favor of TFG. (See June 11, 2003 correspondence attached as Exhibit 10 and Exhibits 7-9 to the Third-Party Complaint.) In addition to and in further support for the joint claim, in the June 11, 2003 correspondence, Mr. Bianchi submitted several agreements with explanation tracking the transfers of interest resulting in the November 20, 2000 release by JFG of assignment **"in favor of Tuscola Furniture Group, LLC."** There is not a single fact or document that AGLIC points to or could point to that it was deprived of in making its decision.

## VI.  CONCLUSION

For the reasons stated above, AGLIC's Third-Party Complaint should be dismissed pursuant to Federal Rule 12(b)(6).

Dated:  March 31, 2006

                                                  TUSCOLA FURNITURE GROUP, LLC
                                                  and JANKO FINANCIAL GROUP, LLC


                                                  By:   /s/   Timothy J. Howard
                                                       Timothy J. Howard

Timothy J. Howard  
Michael S. Seneca  
Howard & Howard Attorneys, P.C.  
211 Fulton Street, Suite 600  
Peoria, IL 61602  
(309) 672-1483  
(309) 672-1568 (fax)  

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this Memorandum of Law complies with the type volume limitation of Local Rule 7.1(B)(4) and contains 5,306 words in the memorandum.

/s/ Timothy J. Howard

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2006, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system and that service was made electronically to the parties as indicated on that system.

/s/ Timothy J. Howard

laf\g:\j-l\janko financial\tuscola furniture grp\pldgs\appeal\mem in support of motion to dismiss.doc