IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MARGARET J. STILWELL, HALEY STILWELL, HEIDI STILWELL, JAMIE STILWELL, MEGAN STILWELL, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN GENERAL LIFE INSURANCE COMPANY, <br><br> Defendants. <br><br> AMERICAN GENERAL LIFE INSURANCE COMPANY, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> FIRST MID ILLINOIS BANK & TRUST, TUSCOLA FURNITURE GROUP, LLC, and JANKO FINANCIAL GROUP, LLC, <br><br> Third-Party Defendants. | No. 05 CV 02160 <br><br> Honorable Chief Judge Michael P. McCuskey <br><br> Magistrate Judge David G. Bernthal |

## DEFENDANT/THIRD-PARTY PLAINTIFF'S RESPONSE TO THIRD-PARTY DEFENDANTS' MOTIONS TO DISMISS

Defendant/Third-Party Plaintiff, American General Life Insurance Company ("AGL"), improperly named by Third Party Defendants as American General Finance, by its undersigned attorneys, for its response to Third-Party Defendants' Motions to Dismiss, states as follows:

### INTRODUCTION

Margaret Stilwell ("Plaintiff") claims that AGL improperly paid approximately $181,974.50 on a joint claim submitted by First Mid-Illinois Bank & Trust ("First Mid") and Tuscola Furniture Group, LLC ("TFG"). In sum, Plaintiff claims that her Assignees submitted improper and inaccurate claims,

322120.2

which AGL should not have paid. *See*, Third Party Complaint, Ex. 12 at ¶¶8, 13-18. AGL denies all allegations of liability in Plaintiff's Complaint.

AGL filed a third party complaint against Janko Financial Group, LLC ("Janko" or "JFG"), TFG, and First Mid (hereinafter "Creditors"). In their motion to dismiss, the Creditors completely misinterpret the purpose of the third party claim against them. AGL's Third Party Complaint is a contingent claim against the Creditors whereby, while AGL denies any allegation of liability, if a judgment is entered against it and in favor of Plaintiff, a judgment should also be entered in its favor and against the Creditors based on the theories of constructive trust, restitution/unjust enrichment, contribution, and indemnity against the Creditors.

Counts I and II are based on a theory of constructive trust, fraud and mistake. AGL alleges that if AGL's payment of the joint claim was improper, which American General expressly denies, TFG, JFG, and First Mid came into the possession of the overpayment as a consequence of their own unauthorized and wrongful conduct or based on their mistaken belief and representations concerning the validity of the assignments and relationship between the parties and, thus, have been unjustly enriched by the payment of their joint claim and should not be allowed to retain this sum. AGL should then be entitled to the imposition of a constructive trust over the funds wrongfully obtained by TFG, JFG and First Mid.

In the alternative, Counts III and IV are based on a theory of restitution/unjust enrichment, fraud and mistake. AGL alleges that if AGL is found liable to Plaintiff, then TFG, JFG, and First Mid have been unjustly enriched to the detriment of AGL, who, in paying the claim relied upon the truth of the false or mistaken representations made by TFG, JFG and First Mid in the proof of claim, and it would be inequitable for TFG, JFG, and First Mid to retain such funds. AGL would then be entitled to a judgment against TFG, JFG, and First Mid for the unauthorized and fraudulently induced payment.

322120.2

In the alternative, Count V is based on a theory of contribution. Here, AGL alleges that if any damages were suffered by Plaintiff, then those damages were the direct and proximate result of the acts and/or omissions of the Creditors in connection with their proof of loss. If AGL is found liable to Plaintiff, then AGL would be entitled to contribution from TFG, JFG, and First Mid in an amount proportionate to their percentage share of liability under "The Joint Tortfeasor Contribution Act" 740 ILCS 100/0.01. *et seq*.

In the alternative, Count VI is based on a theory of implied indemnity. Here, AGL alleges that upon the insured's death, and in processing the Creditors' claim for benefits, AGL relied upon the executed claimant's form, the assignments on file, and the representations, warranties and assurances contained in the documentation that the Creditor's submitted to support the payment of their claim. Any damages sustained by Plaintiff arising from the payment of the joint claim submitted by the Creditors were caused by the conduct and/or representations made by the Creditors in connection with their claim for benefits. AGL would then be entitled to indemnity against TFG, JFG, and First Mid for all judgments, attorney's fees, costs and settlements which may be entered in this matter.

In their motion to dismiss, Third Party Defendants try to adjudicate AGL's Third Party claims on the merits. They do not claim that AGL has not sufficiently pled any of the above theories. They instead argue that AGL mischaracterizes its allegations without applying their arguments to any specific count. Contrary to their general contentions, first, AGL's allegations regarding mistake are mistakes of fact and not of law. Second, Third Party Defendants misapply the voluntary payment doctrine to the facts of this case. Third, their contention that AGL is not entitled to the relief it seeks because their joint claim, and the supporting information and documents submitted by the Creditors in support of their claim, are not misrepresentations is misplaced. This contention runs circles around the fact that, regardless of whether they are representations or misrepresentations, the Creditors represented

322120.2

to AGL that they were entitled to the full amount of their joint claim. The Creditors do not deny, as they cannot, that they made these representations to AGL, thus, inducing AGL to make a payment on their joint claim.

What the Creditors lose focus of is the fact that AGL denies all allegations of liability in Plaintiff's Complaint. However, to the extent that AGL is liable, its liability is predicated on the representations made by the Creditors concerning the validity of the assignments and relationship between the parties and, thus, would have been unjustly enriched by the payment of their joint claim and should not be allowed to retain this sum.

## FACTS

The Old Line Life Insurance Company of America, a subsidiary of AGL, issued Policy No. 2604663 ("the Policy") to James Stilwell with a face amount of $4,000,000. *See*, Third Party Complaint at Ex. 1. James E. Stilwell was President of Amishland Country Village, Inc. and Margaret Stilwell was the owner and a named beneficiary of the Policy. The Policy allowed the policyholder to make third party assignments of the Policy.

Margaret Stillwell executed two assignments under the Policy to JFG in the amount of $500,000 and $1,500,000. *Id.* at Ex. 2 and 3. Thereafter, on November 20, 2000, Lawrence Bianchi, executed a form assignment document on behalf of JFG, evidencing a release of the above assignments "***in favor of Tuscola Furniture Group, LLC***". *Id.* at Ex. 4. AGL received and recorded the release of assignments by JFG on December 1, 2000, and it forwarded correspondence to JFG which confirmed the receipt, endorsement, and recording of the release of assignment as part of the policy records. *Id.* Margaret Stilwell also executed a form assignment document to TFG in the amount of $250,000.00 and one to First Mid in the amount of $1,000,000. *Id.* at Ex. 5 and Ex. 6. The insured, James E. Stilwell, died on May 2, 2003.

- 4 -

322120.2

Thereafter, AGL provided claimant statement forms to those entities with assignments on file and recorded under the Policy, including TFG and First Mid. On May 12, 2003, First Mid, TFG and JFG submitted to AGL completed claim forms on behalf of First Mid, TFG, and JFG along with a correspondence signed by Thomas J. Chamberlain for the Bank and Lawrence W. Bianchi, acting as authorized representative of both TFG and JFG, indicating that TFG and First Mid were jointly making an application on the collateral assignments they received to secure an obligation under a consignment agreement dated November 17, 2000 between TFG and Amish Land Country Village, Inc. Specifically, Mr. Bianchi represented that the total debt owed was $512,974.50, which amount included amounts that TFG owed to First Mid and that the collateral assignments at issue included assignments to JFG, TFG and the Bank dated April 19, 1999 for $500,000, September 25, 2000 for $1,500,000, January 11, 2001 for $1,000,000, and November 21, 2000 for $250,000. *Id.* at Ex. 7, Ex. 8 and Ex. 9.

On June 10, 2003, AGL sent separate correspondence to TFG, JFG, and First Mid, requesting verification of the assignments referenced in their correspondence and confirmation of the debt owed under the assignments. On June 11, 2003, American General received correspondence from Mr. Bianchi on behalf of both TFG and JFG, enclosing documentation in support of their claim[1], and stated, in relevant part:

> On 16 April 1999, Janko Financial Group (JFG), LLC entered into a consignment agreement for the retailing of Amish Furniture with Amish Land Country Village, Inc. and guaranteed personally by James and Margaret Stilwell. Section 3.9 of this original consignment agreement required that JFG and their lender, First Mid-Illinois Bank

---

[1] The documentation included an assignment and assumption agreement dated 16 November 2000 between JFG and TFG, a consignment agreement dated November 17, 2000 between TFG and Amish Land Country Village, Inc., and an addendum to JFG's operating agreement dated January 1, 2002.

322120.2

and Trust (FMIB), receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $2,000,000.

On 19 April 1999, JFG received an assignment of life insurance in the amount of $500,000 from Margaret Stilwell, owner of Policy No. 2604663 with James Stilwell as the insured. However, it was not until 25 September 2000, that JFG received a second assignment of life insurance for the same policy in the amount of $1,500,000 from Margaret Stilwell.

On 16 November 2000, JFG signed an assignment and assumption agreement with the newly formed LLC, Tuscola Furniture Group (TFG), LLC. This new entity is owned 70% by JFG with JFG acting as managing member. This agreement was specifically included and lists any rights to insurance assignments relating to the original consignment agreement.

On 17 November 2000, TFG entered into a new consignment agreement with Amish Land Country Village, Inc. and guaranteed personally by James and Margaret Stilwell. This new agreement modified and replaced the previous agreement. Once again, Section 3.9 of the new consignment agreement required that TFG and their lender FMIB receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $1,250,000.

**On 20 November 2000, in support of the assignment and assumption agreement between JFG and TFG, JFG signed a release of assignment on Policy No. 2604663 'in favor of Tuscola Furniture Group, LLC.' This release was a transfer of all rights of insurance assignment for JFG to TFG.**

On 21 November 2000, TFG received an assignment of life insurance in the amount of $250,000 from Margaret Stilwell, owner of Policy No. 2604663 with James Stilwell as the insured. Then, on 11 January 2001, FMIB received an assignment of life insurance for the same policy in the amount of $1,000,000 from Margaret Stilwell.

The preceding chronology of events resulted in the following assignments from Margaret Stilwell on Policy No. 2604663:

**Tuscola Furniture Group, LLC - $2,000,000 (assignment transfer to Tuscola Furniture Group, LLC via agreement dated 16 November 2000 and release dated 20 November 2000);**

Tuscola Furniture Group, LLC - $250,000 (21 November 2000);

322120.2

>       First Mid-Illinois Bank and Trust - $1,000,000 (11 January 2001).
>
> **Therefore the life insurance assignments received from Margaret Stilwell on Policy No. 2604663 in satisfaction of the requirements of the consignment agreements (dated 16 April 1999 and 17 November 2000) totaled $3,250,000.**
>
> These events lead us to the claim being made jointly by TFG and FMIB to American General Life as documented in the information submitted by TFG, TFG and FMIB, a joint claim is being made for $512,974.50 in conjunction with the obligations of Amish Land County Village, Inc. and James and Margaret Stilwell per the consignment agreement date [sic] 17 November 2000. The payment of this claim in the amount of $512,974.50 would release all assignments to JFG, TFG and FMIB, which total $3,250,000. Mr. Sawicki, as we discussed I believe that a review of the enclosed letters dated 12 May 2003 and 28 May 2003, provide American General Life with releases for all assignments totaling $3,250,000 upon receipt of the claim amount of $512,974.50.'"

*Id.* at Ex. 10 [emphasis added]

As noted above, to support their claim, JFG and TFG verified that, via the agreement dated 16 November 2000 between JFG and TFG and the release of assignment dated November 20, 2000, executed by JFG, JFG transferred its assignments, amounting to $2,000,000.00 cumulatively, to TFG. JFG and TFG represented to American General that the outstanding life insurance assignments received from Plaintiff on the Policy in satisfaction of the requirements of the parties' consignment agreements (dated 16 April 1999 and 17 November 2000) totaled $3,250,000.

On June 26, 2003, in reliance upon these and the other representations made by TFG, JFG and First Mid in support of their joint claim, and in reliance upon the documentation that theses entities submitted to support their claim under the Policy, American General issued a check made payable to Tuscola Furniture Group and First Mid Illinois Bank & Trust in the amount of $512,974.50 in full satisfaction of the outstanding assignments.

## ARGUMENT

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi., 910*

*F.2d 1510, 1520* (7th Cir. 1990). When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claim and draw all reasonable inferences in favor of the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997); *United States v. Sherwin-Williams Co.*, Case No. 00-2064, 2001 U.S. Dist. LEXIS 25120 at *5-6 (C.D. Ill. July 13, 2001). A complaint should not be dismissed, under Rule 12(b)(6), for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). The plaintiff is required only to provide a short and plain statement of his claim that will give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Glisson v. Sangamon County Sheriff's Dep't*, 408 F. Supp. 2d 609 at *18-19 (C.D. Ill. 2006) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992)).

As noted above, the Creditors do not dispute the sufficiency of the well-pleaded factual allegations in AGL's Third Party Complaint. Despite their contentions that AGL cannot recover payment on their joint claim, the Creditors fail to show, beyond doubt, that AGL is not entitled to the relief it seeks.

I.  **Counts I and III state a claim for Constructive Trust and Restitution/Unjust Enrichment based on Fraud**

Federal Rule of Civil Procedure 9(b) requires fraud allegations to "be stated with particularity." Fed. R. Civ. P. 9(b). Under this rule, a complaint alleging fraud must explicitly set forth all the pertinent facts including the "who, what, when, where, and how" of the alleged fraud. *Midwest Commerce Banking v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In this case, the Creditors do not claim that AGL failed to state the identity of

322120.2

the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to AGL. *See, Bogner v. Airco, Inc.*, Case No. 02-1157, 2003 U.S. Dist. LEXIS 26890 at *27-28 (C.D. Ill. Apr. 1, 2003). It is clear from the Third Party Complaint that JFG, TFG, and First Mid represented to AGL through their correspondence dated May 13, 2003 and June 11, 2003 that the release of assignment dated November 20, 2000 was a transfer of all rights of insurance assignments for JFG to TFG. As such, AGL has met the pleading requirements of Rule 9(b).

The parties agree that Illinois law applies to this instant case. To state a viable claim for fraud in Illinois, a plaintiff must prove the following five elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) made for the purpose of inducing the plaintiff to act or rely upon it; (4) action by the plaintiff in reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Sims v. Tezak*, 296 Ill. App. 3d 503, 694 N.E.2d 1015 (Ill. App. Ct. 1998); *Hoseman v. Weinschneider*, 322 F.3d 468 (7th Cir. 2003); *Bogner*, 2003 U.S. Dist. LEXIS 26890 at *28.

The Creditors claim that the statement that "JFG released its assignments amounting to $2,000,000 in favor of TFG and thus, transferred those rights under the assignment to TFG pursuant to the agreement dated November 16, 2000, between JFG and TFG and the release of assignment dated November 20, 2000 submitted to American General" is not a misrepresentation at all. Third Party Defendant's Motion at p.15.

First, the Creditors do not dispute that they made such a statement or representation to AGL. Second, as noted above, AGL claims that neither party acted improperly. However, to the extent that AGL's payment to the Creditors was wrongful, such conduct would be based on the Creditors' misrepresentations regarding the November 20, 2000 release of assignment as a release in favor of

322120.2

TFG rather than a full release of its assignment based on the underlying supporting documents JFG, TFG and First Mid presented to AGL reflecting the agreements between the Creditors and Amishland Country Village. Third, the Creditors cannot dispute that their statements and representations to AGL were material to inducing AGL to make a payment on their joint claim. In the event that AGL is found liable to Plaintiff, AGL's liability would be based on their false statements to AGL. But for their representations to AGL, AGL would not have paid their joint claim. Their representations to AGL regarding their assignments caused AGL to act differently and pay on their joint claim.

Their contention that they simply quoted the language in the assignment is also misguided. Not only was the November 16, 2000 release of assignment signed by Lawrence Bianchi as authorized member of JFG as the assignee, Mr. Bianchi also signed the joint claim forms filed with AGL and their supporting correspondence. Furthermore, on June 11, 2003, AGL received correspondence from Mr. Bianchi on behalf of both TFG and JFG enclosing documentation in support of their claim, and stating that that "on 20 November 2000, in support of the assignment and assumption agreement between JFG and TFG, JFG signed a release of assignment on Policy No. 2604663 'in favor of Tuscola Furniture Group, LLC.' This release was a transfer of all rights of insurance assignment for JFG to TFG." *See,* Third Party Complaint at Ex. 10. Such assertion is more than simply quoting language in the assignment. It is clear from the above that AGL paid the joint claim based on representations made by TFG, JFG and First Mid regarding their intended effect to the November 20, 2000 release of assignment.

For all these reasons AGL has stated a claim for relief under Counts I and III.

**II.      Counts II and IV state a claim for Construct Trust and Restitution/Unjust Enrichment based on Mistake**

There is no legal basis to support the Creditors' theory regarding voluntary payment doctrine. In support of their argument, the Creditors cite to *Cohn v. Anthem Life & Health Ins. Co.*, 965 F. Supp.

1119, 1121-22 (N.D. Ill. 1997), *Hartford v. Doubler*, 105 Ill. App. 3d 999, 434 N.E.2d 1189, 1191 (3rd Dist. 1982) *Western & Southern Life Insurance Co. v. Brueggeman*, 323 Ill. App. 3d 173, 55 N.E.2d 719 (4th Dist. 1944), *Auto Owners Ins. Co. v. South Side Trust & Savings Bank*, 176 Ill. App. 3d 303, 531 N.E.2d 146 (3rd Dist. 1988). These cases are inapposite and all, with the exception of *Cohn*, were decided on the merits. The cited cases at best show that the Creditors are not entitled to the relief they seek in their motion to dismiss.

First, the Creditors cite to these cases relying on the voluntary payments doctrine, under which, neither money paid under a claim of right with full knowledge of the underlying facts and absent coercion, fraud[2] or a superior bargaining position by the transferee nor money paid under a mistake of law is recoverable. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 491, 639 N.E.2d 1282, 1292 (1994). However, there is an exception to this general rule: Illinois law does permit an insurer to recover amounts paid in error where the erroneous payment occurred under a mistake of fact., and the payment would not have been made had the facts been known to the payor. *Hartford Accident & Indem. Co. v. Chicago Housing Auth.*, 12 F.3d 92, 96 (7th Cir. 1993) ("CHA"); *Cohn*, 965 F. Supp. at 1122. Under this theory, the Creditors mistakenly try to categorize AGL's claim of mistake as one of law instead of fact in order to bar recovery under Counts II and IV of AGL's Third Party Complaint.

In CHA, the insurer paid a claim under the mistaken belief that certain claims exceeded one million dollars. 12 F.3d at 96. This factual mistake led the insurer to conclude that the claim triggered coverage under its policy. The Seventh Circuit considered the insurer's mistake to be one of fact. *Id.* The court found that the record was clear that CHA represented to the insurer that payments had exceeded the limits of the underlying policy. *Id.* The insurer responded by making the requested payment. *Id.* Under the Illinois test, this representation caused the insurer to make a mistake of fact that

---

[2] In this case, AGL claims as alternative theories constructive trust and restitution based on fraud in Counts I and IV, which are fully addressed above.

certain claims exceeded on million dollars. *Id.* When it discovered that its factual interpretation was incorrect (i.e. that no single claim exceeded $ 1,000,000), it demanded its money back. *Id.* Under Illinois law, this scenario represents a mistake of fact whereby the insurer is entitled to recover. *Id.*

In this case, AGL's Third-Party Complaint, as a contingent claim, makes it clear that the Creditors' representations caused AGL to make a mistake of fact that their individual assignments exceeded their joint claim. Again, AGL does not claim any wrongdoing by either AGL or the Creditors. However, to the extent that a mistake was made, it was a mistake of fact, which would only have been known by the Creditors (and not AGL). AGL relied on the information provided by the Creditors in support of their joint claim. AGL, in good faith, believed the representations made by the Creditors' and made the payment requested by them. *Id.* at 97. AGL claims that in such event, money was paid under a mistake of fact, which would not have been paid had the facts been known to AGL and, as such, payment may be recovered.

Second, *Cohn, Hartford,* and *Western* all involve cases where the insurer asserted a mistake of fact based on a policy exclusion or "an inadvertent clerical error". *Cohn,* 965 F. Supp. at 1122. In those cases, the court charged the insurer with knowledge of its policies and received the request to act under the terms of its policy. *Hartford* 434 N.E.2d at 1191. In this case, AGL's knowledge regarding the material facts was based on facts and representations made by the Creditors regarding the underlying agreements between the Creditors and Amishland Country Village. Moreover, any request to act and pay on the joint claim was received from TFG, JFG, and First Mid, not based on a mistake as to any term contained in the Policy.

Third, *Auto Owners* involved a counterclaim brought a bank against the insurer to recover payments made on a letter of credit. After a bench trial, the court found for the insurer. The appellate court upheld the trial court's decision and found that because the bank paid without demanding a bond

322120.2

that would have shown noncompliance, the bank was not entitled to be reimbursed under the equitable principle of waiver. 176 Ill. App. 3d at 312. In this case, the Creditors admit that AGL required them to produce documents and information for its review in support of their joint claim. Third Party Defendants' Motion at p.13. Thus, they cannot dispute that based on those documents and information AGL paid on their joint claim. Again, AGL claims that it is not liable to Plaintiff. However, to the extent that the Court finds that it is liable, AGL acted based on the Creditors representations that the November 20, 2000 release was actually a transfer to TFG and not a blanket release and made a payment under mistaken belief of fact that third parties were entitled to an assignment in $3,250,000. This is a fact that could not have been independently verified by AGL. Only JFG, TFG and First Mid as the assignees under the Policy could verify their valid assignments to AGL. AGL did not misinterpret the documents, rather it relied on the documents and information as represented by the Creditors. As a contingent claim, to the extent that AGL is liable, so are the Creditors on whose information AGL relied in paying their claim.

Lastly, the Creditors contention that AGL should have interpleaded the funds is also misplaced as AGL did not receive competing claims from any other parties. The Creditors were the only parties claiming title to the proceeds under what they claim were four valid assignments.

For all these reasons AGL has stated a claim for relief under Counts II and IV.

### III.   Counts V and VI state a claim for Contribution and Implied Indemnity

In their motion to dismiss, the Creditors claim that AGL's contribution and implied indemnity claims are nothing more than relabeled mistake claims and are defective for the same reasons as its mistake claims. Third Party Defendants' Motion to Dimiss at p. 15. Accordingly, for the same reasons noted above, AGL properly states a claim for contribution and implied indemnity.

322120.2

### IV. JFG's Release of Assignment dated November 20, 2000, does not contradict any allegation contained in AGL's Third Party Complaint.

Contrary to the Creditors assertion, Exhibit 4 – the November 20, 2000 assignment – does not contradict any allegation contained in AGL's Third Party Complaint. Exhibit 4 is marked "release of assignments" and it is signed by Lawrence Bianchi/Authorized member and marked "in favor of Tuscola Furniture Group". On December 4, 2000, AGL sent a release of assignment verification to JFG regarding the same. Upon Mr. Stilwell's death, by letter dated June 10, 2003, AGL sent separate correspondence to TFG, JFG, and First Mid requesting verification of the assignments referenced and confirmation of the debt owed under the assignments. On June 11, 2003, AGL received correspondence from Mr. Bianchi on behalf of TFG and JFG with an exhaustive verification letter emphasizing that the November 20, 2000 release by JFG of its assignment was "in favor of Tuscola Furniture Group, LLC" and "represented a transfer of all rights of insurance assignment for JFG to TFG." In addition, Mr Bianchi submitted several agreements between the Third Party Defendants and the insured in support of their claim that the November 20, 2000 release was not a full release of JFG's assignment.

AGL contends that based on Mr. Bianchi's submissions, it properly paid the joint claim. However, as a contingent claim, to the extent that TFG, JFG and Firs Mid were not entitled to such payment, AGL improperly paid such joint claim based on misrepresentations of material fact made by Third Party Defendants. In such event, had AGL been aware of the Third Party Defendants' misrepresentations, it would not have paid on their joint claim.

### CONCLUSION

For the reasons set forth herein, AGL is entitled to the imposition of a constructive trust, restitution, contribution, and indemnity against JFG, TFG, and First Mid as contingent claims if a

judgment is entered against AGL and in favor of Plaintiff. In such event a judgment should also be entered in AGL's favor and against the Creditors based on the above theories.

Accordingly, Defendant/Third-Party Plaintiff, American General Life Insurance Company prays that the Court deny Third Party Defendants' motion to dismiss AGL's Third Party Complaint, and award AGL any other relief the court deems appropriate.

                              Respectfully submitted,

                              THE AMERICAN GENERAL LIFE INSURANCE COMPANY

                              By:  /s/ Cinthia G. Motley
                                      Cinthia G. Motley

                                      Daniel J. McMahon
                                      Rebecca M. Rothmann
                                      Cinthia G. Motley
                                      WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
                                      120 North LaSalle Street, Suite 2600
                                      Chicago, Illinois 60602
                                      Tel: (312) 704-0550
                                      Fax: (312) 704-1522

322120.2

## CERTIFICATE OF SERVICE

I hereby certify that on April 28th, 2006, I electronically filed the above pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*By CM/ECF Electronic Notification*
Jason M. Crowder
HELLER, HOLMES & ASSOC., P.C.
1101 Broadway, P.O. Box 889
Mattoon, IL 61938
(217) 235-2700
(217) 235-0743 (Fax#)
crowderjason@hotmail.com.

Richard L Heavner
HEAVNER SCOTT BEYERS & MIHLAR
111 E Main St, Suite 200
Decatur, IL 62523
217-422-1719
Fax: 217-422-1754
richardheavner@hsbattys.com

Timothy J Howard
HOWARD & HOWARD ATTORNEYS PC
211 Fulton St, Ste 600
Peoria, IL 61602-1350
309-672-1483
Fax: 309-672-1568
thoward@howardandhoward.com

/s/ Cinthia G. Motley
Cinthia G. Motley

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
120 North La Salle Street, Suite 2600
Chicago, Illinois 60602
Tel. (312) 704-0550
Fax (312) 704-1522
Cinthia.Motley@wilsonelser.com

322120.2