**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
Urbana Division

| | |
|---|---|
| MARGARET STILWELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 05-2160 |
| AMERICAN GENERAL LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

In June 2005, Plaintiff, Margaret Stilwell, filed a complaint in the Fifth Judicial Court, Coles County, Illinois, against Defendant, American General Life Insurance Company (hereinafter "AGL"), alleging breach of an insurance contract. In July 2005, AGL filed a Notice of Removal (#1), removing the case to federal court. Federal jurisdiction is based on diversity (28 U.S.C. § 1446).

In January 2006, AGL filed a Third Party Complaint (#14) against Third Party Defendants First Mid Illinois Bank & Trust (hereinafter "First Mid"), Tuscola Furniture Group, LLC (hereinafter "TFG"), and Janko Financial Group, LLC (hereinafter "JFG") alleging fraud, mistake, contribution, implied indemnity, and unjust enrichment. In February 2006, Plaintiff filed an Amended Complaint (#16) adding her daughters as co-plaintiffs. In March 2006, Third Party Defendants filed separate Motions To Dismiss Third Party Complaint (#30, #32). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Third Party Defendants' Motions To Dismiss Third Party Complaint (**#30, #32**) be **DENIED.**

## I. Background

The following background is taken from the Third Party Complaint. AGL is a Texas insurance corporation that transacted business in Illinois but whose principal place of business is in Houston, Texas. First Mid is a private subsidiary of First Mid-Illinois, Bancshares, Inc., a

Delaware corporation, which maintains its principal place of business in Mattoon, Illinois. TFG and JFG are limited liability companies with their principal places of business in Peru, Illinois.

In October 1998, an AGL subsidy, The Old Line Life Insurance Company of America, issued Policy No. 2604663 to James Stilwell with a face amount of $4,000,000. James Stilwell was the President of Amishland Country Village, Inc. The owner of his policy was his wife, Margaret Stilwell. Margaret Stilwell and their children, Jamie, Heidi, Megan, and Haley Stilwell, were beneficiaries.

Pursuant to the policy, the Stilwells were allowed to make third party assignments. The policy provided as follows:

> No assignment of this policy will be binding on [AGL] until filed with us in writing and recorded by us. No assignment will affect any payment we made before we recorded the assignment. We will not be responsible for the validity of an assignment.
>
> All rights of the owner and any revocable beneficiary are subject to the rights of any assignee on record with us.

(#14, Ex. 1, Life Policy, p. 7.)

In April 1999, Margaret Stilwell made an assignment for $500,000 to JFG. In September 2000, she executed another assignment to JFG in the amount of $1,500,000.

In November 2000, Lawrence Bianchi, an authorized representative for JFG, signed a "Release of Assignment," noting that he was releasing the assignment "in favor of Tuscola Furniture Group, LLC." (#14, Ex. 4, Release of Assignment, p. 1.) The same day, Margaret Stilwell executed an assignment in favor of TFG for $250,000. In January 2001, she executed another assignment for $1,000,000 in favor of First Mid.

James Stilwell died on May 2, 2003.  In May 2003, First Mid submitted a claim to AGL on behalf of itself, TFG, and JFG.  Included with the claim was a letter from Bianchi (on behalf of TFG and JFG) and Thomas Chamberlian (on behalf of First Mid), stating as follows:

> [TFG and First Mid] are jointly making application on the Collateral Assignments they received to secure an obligation under a certain Consignment Agreement dated November17, 2000 between TFG and Amishland Country Village, Inc.
>
> [T]he total amount owed by Amishland Country Village, Inc. and guaranteed by James and Margaret Stilwell is $512,974.50.  This amount includes the amounts that TFG owes [First Mid].
> . . .
> Upon receipt of this amount TFG and [First Mid] will relinquish all Assignments against the proceeds on the life insurance policy number 2604663.  Specifically, these are the Assignments to [JFG, TFG, and First Mid] dated April 19, 1999 for $50,000.00, September 25, 2000 for $1,500,000, and January 11, 2001 for $1,000,000.

(#14, Ex. 7, Chamberlain Letter, p.1.)  Included with the letter was documentation purporting to show that the Stilwells owed TFG $512,974.52.

The same day Bianchi submitted another letter to AGL, restating the claim and confirming that TFG and First Mid were jointly applying for payment of the assignments made to secure an obligation under a collateral agreement between TFG and Amishland Country Village, Inc.  Later in May 2003, Bianchi amended his May 12, 2003, letter, advising AGL that he had previously forgotten to include the outstanding assignment to TFG dated November 2000 in the amount of $250,000.

In June 2003, AGL requested verification of the assignments TFG, JFG, and First Mid had claimed in May 2003.  Bianchi responded by enclosing his prior letter to AGL and outlining all of the assignments allegedly held by TFG, JFG, and First Mid.  He asserted that the life insurance assignments received from Margaret Stilwell on her husband's policy totaled $3,250,000.  Around this same time TFG and JFG authorized Bianchi to act as signatory for the purpose of releasing all assignments pertaining to the joint claim.  In addition, they asserted that,

via the November 2000 Release of Assignment, JFG transferred both of its assignments, totaling $2,000,000, to TFG.

On June 26, 2003, AGL paid $512,974.50 to Third Party Defendants based on its reliance upon the representations made to it by TFG, JFG, and First Mid and the supporting documentation and letters.

In her amended complaint, Margaret Stilwell argues that AGL improperly paid the joint claim. She contends that TFG was overpaid by $181,974.50. Specifically, she contends that, at the time of her husband's death, TFG was owed only $250,000 and First Mid was owed only $81,000. In addition, Margaret Stilwell contends that (1) JFG did not properly release its assignments in favor for TFG; and (2) TFG, JFG, and First Mid cannot combine their assignments and make a joint claim for benefits because no joint assignment was ever issued.

AGL responded to the complaint by denying all allegations of liability. It filed a Third Party Complaint against TFG, JFG, and First Mid, asserting that if it is found to be liable, Third Party Defendants should be liable for the amounts AGL is found to have improperly paid. In Counts I and III, AGL alleges that Third Party Defendants committed fraud by misrepresenting the effect of the release of assignments from JFG to TFG and the total amount of their assignments. In Counts II and IV, AGL alleges mistake based on the above representations. In Count V, AGL alleges a claim for contribution; specifically, that if Margaret Stilwell was injured her damages were the direct and proximate result of the acts and/or omissions of Third Party Defendants. In Count VI, AGL alleges a claim for implied indemnity arising from the same representations.

## II. Standard

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss, the Court must accept all well-pleaded factual allegations in the claim as true and draw all reasonable

inferences in favor of the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). The Court should dismiss the claim only if the nonmoving party cannot prove any set of facts consistent with the allegations of the complaint that would entitle him to relief. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

### III.  Analysis

In their motions to dismiss, Third Party Defendants argue that the Court should dismiss the claims against them for the following reasons: (1) AGL has not alleged fraud; (2) the voluntary payment doctrine precludes relief for AGL's mistake claims; (3) AGL's fraud, unjust enrichment, contribution, and implied indemnity claims are relabeled mistake claims and are defective for the same reason that the mistake claims are defective under the voluntary payment doctrine; and (4) even if AGL has a viable claim, that claim is inconsistent with the exhibits, which control.

### A.  Fraud Claims

Third Party Defendants first contend that AGL has not adequately alleged fraud. Specifically, they contend that the fraudulent misrepresentations alleged by AGL are not misrepresentations but instead describe the legal effect of the November 2000 assignment from JFG in favor of TFG. In addition, they contend that even if there was a misrepresentation, it was not one of material fact.

In Illinois, the elements of fraud include: (1) that the defendant made false statements of material fact, (2) knowing that they were false, and (3) intending that the plaintiff would rely on them; (4) that plaintiff did rely; (5) that his reliance was justified; and (6) that plaintiff suffered damage as a result. *TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir. 1998). Under Federal Rule of Civil Procedure 9(b), a fraud claim must be plead with particularity; that is, the plaintiff must allege the "who, what, when, and where" of the alleged fraud to survive dismissal on a Rule 12(b)(6) motion. *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

Here, AGL alleged in Counts I and III of its complaint that Third Party Defendants represented to AGL that (1) JFG released assignments amounting to $2,000,000 in favor of TFG and transferred assignments to TFG pursuant to the November 2000 agreement between TFG and JFG and also the November 2000 release of assignment made by JFG; and that (2) Third Party Defendants held outstanding life insurance assignments totaling at least $3,000,000 for consignment agreements made in April 1999 and November 2000.

Third Party Defendants contend that they simply quoted the language in the assignment; thus, no representation was made. They contend that the statement that "JFG released its assignments amounting to $2,000,000 in favor of TFG and thus, transferred those rights under the assignment to TFG pursuant to the agreement dated November 16, 2000, between JFG and TFG and the release of assignment dated November 20, 2000, submitted to American General" is not a misrepresentation at all because they simply quoted the language in the assignment. AGL responds that this statement was indeed a misrepresentation because Bianchi asserted that Third Party Defendants' claim was proper in June 2003 when he wrote AGL and explained the situation surrounding the claim.

Allegations of fraud are serious claims to lay against a defendant because they can damage a defendant's business, career, and general reputation regardless of their validity. Thus, claims of fraud are not to be taken lightly. For this reason, pleading a claim of fraud requires more particularity than other claims. *See* FED. R. CIV. P. 9(b). Therefore, a plaintiff who pleads fraud is required to identify the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff; however, the plaintiff need not plead facts that show that the misrepresentation is in fact false. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

The Court concludes that AGL properly alleges misrepresentation in its fraud claim. The purported misrepresentation is properly alleged regardless of whether it consists of a mere recitation of the assignment or an assertion of a properly held claim. AGL clearly states that Third Party Defendants made the representation through their respective proof of claim letters in

**6**

May and June 2003. Furthermore, AGL lays out in detail the contents of its claim in its complaint. The Federal Rules of Civil Procedure do not require that AGL provide all of the facts to back up its misrepresentation claims; instead, they require only that AGL provide the basic information concerning the claims, which the Court finds AGL has done.

In addition, Third Party Defendants contend that even if they made misrepresentations, the misrepresentations were not of material fact. AGL responds that, to the extent that AGL erred by paying the Third Party Defendants' insurance claim, its error was based on Third Party Defendants' representations made to AGL in support of their insurance claim. A misrepresentation is material if, had the plaintiff been aware of the true facts, it would have acted in a different manner. *See Mack v. Plaza Dewitt Ltd. P'ship,* 484 N.E.2d 900, 906 (Ill. App. Ct. 1985). The Court concludes that the representations were clearly material. But for the representations, AGL would not have paid Third Party Defendants' claim; thus, but for the representations there would be no fraud claim because AGL would have acted in a different way.

Third Party Defendants do not contest the sufficiency of the remaining elements of fraud. Because the Court concludes that Plaintiff has adequately alleged a material misrepresentation, the Court recommends denying the motion to dismiss Counts I and III of AGL's complaint.

### B.  Mistake Claims and the Voluntary Payment Doctrine

Third Party Defendants next argue that AGL cannot recover under its mistake claims (Counts II, IV) because the voluntary payment doctrine precludes recovery. Specifically, Third Party Defendants contend that the doctrine precludes relief because voluntary payments made under a claim of right cannot be recovered absent fraud or mistake of fact.

The voluntary payment doctrine provides that "neither money paid under a claim of right with full knowledge of the underlying facts and absent coercion, fraud or a superior bargaining position by the transferee nor money paid under a mistake of law is recoverable." *Illinois Graphics Co. v. Nickum*, 639 N.E.2d 1282, 1292 (Ill. 1994). Mistake of law has been held to be "an erroneous conclusion of the legal effect of known facts." *Hartford v. Doubler*, 434 N.E.2d

1189, 1191 (Ill. App. Ct. 1982). However, as an exception to this rule, "money paid under a mistake of fact, which would not have been paid had the facts been known to the payor," may be recovered. *Id.* Thus, the Court must decide whether AGL made a mistake of fact or a mistake of law when it voluntarily paid Third Party Defendants' claim.

Third Party Defendants contend that AGL made a mistake of law. On the other hand, AGL contends that it made a mistake of fact. It contends that this case is similar to *Hartford Accident & Indemnity Company v. Chicago Housing Authority* 12 F.3d 92 (7th Cir. 1993) (hereinafter "*CHA*"), and distinguishes between the case at hand and cases cited by Third Party Defendants regarding mistake of law.

Third Party Defendants rely on *Cohn v. Anthem Life & Health Insurance Co.,* 965 F. Supp. 1119 (N.D. Ill. 1997); *Hartford*, 434 N.E.2d 1189; *Western & Southern Life Insurance Co. v. Brueggeman*, 55 N.E.2d 719 (Ill. App. Ct. 1944) (hereinafter "*Western & Southern*"); and *Auto-Owners Insurance Company v. South Side Trust & Savings Bank,* 532 N.E.2d 146 (Ill. App. Ct. 1988) (hereinafter "*Auto-Owners*"), as support for their contention that AGL made a mistake of law.

In *Cohn*, the defendant insurance company filed a counterclaim against the plaintiffs, seeking reimbursement for an amount the insurance company allegedly paid in error for hospital treatment not covered by the insurance policy. The insurance company claimed that although all parties were aware of the policy, it paid for treatments as a result of "an inadvertent clerical/computer error." *Cohn*, 965 F. Supp. at 1120. The court held that the defendant's ability to recover hinged on whether its action constituted a mistake of fact or of law. The court charged defendant insurance company with knowing its own policies and stated that it "made the Payment 'voluntarily and without lack of knowledge or mistake of fact' . . . . As such, under the law of Illinois, the Counterclaim must be dismissed, as [defendant] cannot state any facts which would entitle it to relief." *Id.* at 1123 (quoting *Hartford*, 434 N.E.2d at 1192). Therefore, the court found that the insurance company made a mistake of law.

**8**

The *Cohn* decision relied on *Western & Southern* and *Hartford*. Like the defendant insurance company in *Cohn*, the defendants in *Western & Southern* and *Hartford* both paid claims that were inconsistent with their policies, which the courts found to be mistakes of law. In *Western & Southern*, the appellate court affirmed the trial court's judgment against the plaintiff insurance company who sought to recover an overpayment of an insurance claim. The plaintiff's policy limited recovery for military-related deaths to the amount of the premiums paid on the policy. When the defendant's son died, the plaintiff paid the claim but later filed suit to recover nearly all of its payment, contending that the payment was "made through inadvertence." *Western & Southern*, 55 N.E.2d at 720. The court found that the insurance company could not recover for the erroneous payment because it voluntarily paid the insurance claim, knowing fully that the deceased was in the military and that its own policy did not fully cover military-related claims. *Id.* at 722.

In *Hartford*, the plaintiff insurance company insured the defendants under a farmowners-ranchowners policy that contained a coverage exclusion for loss of livestock while in a public sale barn. Sixteen of the defendants' steers were stolen from livestock sale barns and the defendants submitted claims to the insurance company, which the company voluntarily paid. The plaintiff filed an action, claiming that "the payments had been mistakenly made, in that [they were approved] without any knowledge of the public sale barn exclusion contained in the defendant's insurance policy." *Hartford*, 434 N.E.2d at 1191. The appellate court affirmed the trial court's grant of summary judgment in favor of the defendants, holding that the payments were made as a result of a mistake of law because the plaintiff insurance company, "having drafted the contract of insurance and having been requested to act under its terms, is deemed to have knowledge of the policy provisions." *Id.*

Finally, in *Auto-Owners*, defendant bank issued a letter of credit which was then used to obtain a performance bond from the plaintiff insurance company. The bank subsequently made payments to the insurance company when the bond principal defaulted on the performance bond. However, the principal listed on the bond was not the same as the principal named on the letter

of credit. As a result, the bank claimed that it had made a mistake of fact when it made those payments. The appellate court upheld the trial court's decision that the defendant bank was not entitled to recover the payments because it made a mistake of law when it failed to adequately examine the performance bond before paying on the letter of credit.

Based on these cases, Third Party Defendants contend that the mistake AGL claims is one of law. They contend that, like the insurance companies and the bank in the above cases, AGL reached its own legal conclusion as to the validity of Third Party Defendants' claim based on all of the facts that it had before. As a result, Third Party Defendants contend that the Court should find that AGL cannot recover from Third Party Defendants.

In response, AGL contends, and the Court agrees, that the above cases can be distinguished from the situation here. *Cohn, Hartford,* and *Western & Southern* all involve cases where an insurance company paid a claim inconsistent with its own policy. Furthermore, the payment in question was not inconsistent with AGL's policy, nor did AGL make any purportedly inadvertent errors. *See, e.g., Cohn*, 965 F. Supp. at 1122. Finally, this case differs from *Auto-Owners* because unlike the defendant bank in that case, AGL did in fact attempt to verify Third Party Defendants' claim, and it paid the claim based on the information provided. AGL did not blindly pay the claim without seeking verification of its validity.

Therefore, if AGL made a mistake, it occurred during verification of the claim for which Third Party Defendants provided the factual background. This is much more analogous to cases finding insurance companies to have made mistakes of fact, specifically, *CHA* and *Illinois Graphics.*

In *CHA*, the Seventh Circuit held that the plaintiff insurance company made a mistake of fact when it paid a claim in good faith based on the information the defendant provided about its claim. The defendant asserted that its claim exceeded $1,000,000. Thus, it triggered coverage under the insurance policy. Based on this representation, the insurance company paid the claim

**10**

as requested. The court held that "[u]nder the Illinois test, this representation caused [plaintiff] to make a mistake of fact." *CHA*, 12 F.3d at 97.

The Illinois Supreme Court reached a similar conclusion a year later in *Illinois Graphics*. There, the Court concluded that plaintiff insurance company paid a claim based on incorrect and incomplete information that the defendant provided regarding a claimed injury. The Court concluded that the claim for return of monies stated a cause of action based on a mistake of fact.

The circumstances in this case are similar to *CHA* and *Illinois Graphics* because here AGL paid Third Party Defendants' claim based on information Third Party Defendants provided. It did not make a mistake of law as Third Party Defendants contend because it did not make the mistake due to an inadvertent error or an error that was inconsistent with its own policy. The error occurred as a result of AGL's reliance on Third Party Defendants' representations.

Third Party Defendants further note that AGL paid based on its own volition. They contend that AGL only brought suit after Margaret Stilwell raised her claim. Although this is true, it only strengthens the argument that AGL made a mistake of fact. AGL believed that the claim was proper based on the factual information provided, so it had no reason to believe it wrongly paid the claim until the error was brought to its attention. This is unlike an inadvertent mistake of law where AGL would have found out that it paid a claim inconsistent with its own policies and practices.

The Court concludes that AGL sufficiently alleges a mistake of fact in its complaint. Thus, the Court finds that the Third Party Complaint is sufficient as to Counts II and IV and recommends that they not be dismissed.

### C. Other Claims

Next, Third Party Defendants argue that AGL's fraud, unjust enrichment, contribution, and implied indemnity claims are nothing more than relabeled mistake claims, and, thus, are defective for the same reasons that the mistake claims in Counts II and IV are defective. The

Court has concluded that AGL's allegations indicate that it made a mistake of fact; therefore, this argument is not persuasive.

Because Third Party Defendants do not further contest the sufficiency of AGL's unjust enrichment, contribution, and implied indemnity claims, the Court need not further consider the sufficiency of the pleadings.  The Court thus recommends denying the motion to dismiss Counts V and VI.

### D.  Controlling Weight of Exhibits

Finally, Third Party Defendants argue that to the extent AGL states otherwise viable claims, the exhibits contradict the allegations and thus control.  Specifically, Third Party Defendants contend that the Release of Assignment "conclusively establish[es]" that AGL had complete knowledge of the underlying facts of the claim.  (#14, Ex. 4, Release of Assignment, p. 1.)  In response, AGL contends that the exhibits do not contradict any allegations in its complaint.

Documents attached to the pleadings, which are referred to in the plaintiff's complaint and are central to the claim, are considered part of the pleadings.  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993).  It is well established that if an exhibit contradicts an allegation, the exhibit controls.  *See, e.g., N. Ind. Gun & Outdoor Shows, Inc., v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

After reviewing the exhibits, specifically the Release of Assignment, the Court concludes that, as a matter of law, the exhibit is ambiguous even when considered in the context of the other exhibits.  It is unclear whether the Release of Assignment is a release of assignment pursuant to its language and form or whether it constitutes an assignment and, if so, what it assigns.  For this reason, the Court cannot conclude at this time that the exhibits provide a basis for dismissing AGL's claims.

## IV.  Summary

For the reasons stated above, this Court recommends that Third Party Defendants' Motions To Dismiss Third Party Complaint **(#30, #32)** be **DENIED**.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 23rd day of June, 2006.

                                                                                  s/ DAVID G. BERNTHAL
                                                                                  U.S. MAGISTRATE JUDGE