07478.00134

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| MARGARET J. STILWELL, HALEY STILWELL, HEIDI STILWELL, JAMIE STILWELL, MEGAN STILWELL, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 05 CV 02160 |
| v. | ) ) | Honorable Chief Judge Michael P. McCuskey |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) ) | Magistrate Judge David G. Bernthal |
| Defendants. | ) ) ) | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| FIRST MID ILLINOIS BANK & TRUST, TUSCOLA FURNITURE GROUP, LLC, and JANKO FINANCIAL GROUP, LLC, | ) ) ) ) | |
| Third-Party Defendants. | ) | |

### AMERICAN GENERAL'S RESPONSE BRIEF
### TO PLAINTIFF'S MOTION TO COMPEL

NOW COMES, Defendant, AMERICAN GENERAL LIFE INSURANCE COMPANY (hereinafter "American General"), by and through its attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, and for its Response Brief to Plaintiff's Motion to Compel, states as follows:

### I.   INTRODUCTION

While Plaintiffs' motion appears to suggest that American General has been uncooperative in the discovery process and has refused to comply with their request for additional documents, the Company has produced every single document identified in its initial

383619.1
338597.1

privilege log except for those which were made for the purpose of obtaining, providing, and memorializing the legal advice its claims handlers solicited from American General's in-house counsel in the course of determining whether to pay the joint claim submitted by Third Party Defendants. *See*, American General's letter dated January 10, 2007 (Ex. 5, entry No. 74-2). *See also* entry No. 14 for a factual background of Third-Party Defendants' joint claim submitted to American General.

After its January 10, 2007 supplemental production, counsel for American General engaged in a telephone discovery conference with Plaintiffs' counsel on February 14, 2007 in an attempt to resolve Plaintiffs' continued objections and the present discovery dispute. At that time, counsel for American General agreed to produce all documents, except for those which contain direct communications between counsel and the claims handlers concerning the advice of counsel and those portions of the documents which memorialized counsel's advice and opinions on the payment of the claim. *See* American General's letter dated February 15, 2007, attached as Defendant's Exhibit 1, which includes a facsimile confirmation dated February 15, 2007. Notwithstanding his receipt of the supplemental production consisting of documents Bates stamped AIG 429-431, 440-443, 446-447 and a revised privilege log, Plaintiffs' counsel filed the present motion the next day.

Plaintiffs' motion pertains to five documents -- all of which are protected from disclosure under the attorney client privilege. Two of these documents are e-mails from Melinda Boyd (a/k/a Melinda Dressler), American General's general counsel, to Margaret Singh, the initial claims adjuster who requested Ms. Boyd's review and legal opinion. Bates stamped AIG 432-439. These documents contain communications between counsel and her client concerning the requested claim review and counsel's advice.

383619.1

Two of these documents are file notes authored by Ms. Singh which, in part, memorialize Ms. Boyd's opinion and advice concerning the payment of the claim at issue. Bates stamped AIG 429, 440. American General has produced these two documents, but in redacted form to protect disclosure of corporate counsel's opinions to the claims adjusters who requested her advice. The last document is a file note created by senior claims analyst Ms. Diana Fields, which memorializes communications that she had with Ms. Boyd regarding Plaintiff's counsel's pre-litigation claim correspondence and Ms. Boyd's advice regarding the Company's response thereto. Bates stamped AIG 444-445.

## II.    ARGUMENT

According to Illinois law, the attorney-client privilege attaches upon a showing that the communication (1) originated in a confidence that it would not be disclosed; (2) was made to an attorney acting in her legal capacity for the purpose of securing legal advice or services; and (3) remained confidential. *Chicago Trust Co. v. Cook County Hosp.*, 298 Ill.App. 3d 396, 698 N.E.2d 641 (1st Dist. 1998). In general, the threshold requirements include a showing that the communication originated in a confidence that it would not be disclosed and was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential. *Archer Daniels Midland Co. v. Koppers Co.*, 138 Ill.App. 3d 276, 279 (Ill. App. Ct. 1985)(citing *Cox v. Yellow Cab Co.*, 61 Ill.2d 416, 337 N.E.2d 15 (1975).

This Court should uphold American General's assertion of privilege. Here, legal advice was sought from in house counsel Melinda Boyd by the claims handlers who processed the joint claim at issue. *See*, Deposition of Diana Fields at 51, 60 attached at Defendant's Ex. 3. While processing the claim at issue, Ms. Singh and Ms. Fields specifically called upon Ms. Boyd to review the documents that had been submitted by Third Party Defendant Creditors for the specific purpose of obtaining her professional opinion on whether the Company should properly

pay that claim. These communications were made in confidence and American General has repeatedly asserted privilege over any and all communications between its claims handlers and in-house counsel. *See*, Deposition of Fields at pages 60-62, 76, privilege log at Plaintiff's Ex. 3 entry 74-2, and defense counsel correspondence of February 15, 2007 at Defendant's Ex. 1 and February 16, 2007 at Defendant's Ex. 2, which include Defendant's revised privilege log.

Plaintiffs' claim that American General has failed to meet its burden is misguided and disingenuous based on the description provided in the privilege log and in the face of the answers that Diana Fields gave in response to Plaintiffs' counsel's questions on this point. Deposition of Fields at pages 51, 60-62, 76-78.[1] Furthermore, Plaintiffs' claim that the privilege is inapplicable for three additional reasons is baseless and it should be summarily rejected.

### A. There Is No Claim For or Evidence of Bad Faith To Allow Plaintiff to Circumvent the Privilege

First, Plaintiffs claim that they are entitled to know not just the factual basis but the actual legal opinion and advice on which the Company relied in determining that payment was due because "the actions of [Company] in handling the claim are at issue." Memo at p. 4. Of course, every case that Plaintiffs can cite for this proposition is one where an insurer is sued for bad faith. This is a simple contract dispute. Plaintiffs have never attempted to assert a claim for bad faith and there is absolutely no evidence to support such claim. Accordingly, there is no credible argument around the attorney-client privilege based on the claim that American General's good faith is an issue or could possibly be called into question in this matter.

---

[1] Plaintiffs took the deposition of Diana Fields on July 6, 2006. During the deposition, Plaintiff's counsel attempted to explore her knowledge of Ms. Boyd's review and advice and the Company repeatedly asserted privilege over this information. Plaintiff never pursued this disclosure of this protected testimony directly from Ms. Fields.

383619.1

B.   **The Communications Are Legal In Nature and Not Authored in the Ordinary Course of Claims Processing**

Nor is there any basis to support Plaintiffs' second contention, which appears to be based on the belief that in-house counsel's opinion is automatically solicited on every claim processed in the ordinary course of the life insurance business. The documents at issue were not prepared in the ordinary course as part of the claim file. They were created because the claims handlers specifically sought out in-house counsel's legal advice and recommendations on how to proceed after Third Party Defendants/Creditors submitted additional out of the ordinary correspondence and documentation to the Company to supplement and support their demand for payment of proceeds pursuant to various collateral assignments after American General notified these creditors that its records indicated that Tuscola Furniture Group held a single assignment for $250,000. *See* Deposition of Fields at page 51, Defendant's Ex. 3.

In support of her argument, Plaintiff mistakenly cites to *Prisco Serena Sturm Architects v. Liberty Mut. Ins. Co.*, No. 94 C 5716, 1996 U.S. Dist. LEXIS 2216 at *2 (N.D. Ill. 1996), which involves a bad faith claim against an insurer. In *Prisco*, the court noted that the Seventh Circuit has not specifically ruled on the attorney-client privilege issue when confronted by a bad faith action against an insurance carrier. 1996 U.S. Dist. LEXIS 2216 at *2. Citing to authority from other circuits the court noted that where allegations of bad faith existed against an insurance company, the plaintiff was entitled to know the evaluations and advice relied upon for the decision. *Id.* at *3. On that premise, the court found that the documents sought to be produced related to the insurer's evaluation and handling of the claim and prepared in the ordinary course of business. *Id.* at *4. As noted above, Plaintiffs have not asserted any claim of bad faith against Defendant. As such, *Prisco* is equally inapplicable for the proposition that the documents at issue were prepared in the ordinary course of business.

383619.1

Plaintiffs' summary statement that the handful of documents over which American General maintains privilege were not prepared for the purpose of securing legal advice is unfounded and disingenuous. Counsel's emails communications to the claims handler and the claims handlers' file notes concerning her communications with counsel were clearly generated for that very purpose. Plaintiff is aware through his various communications with American General and through discovery that in-house counsel was requested by American General to review Third-Party creditors' claim and to provide a recommendation as to whether the claim should be paid. *See* Deposition of Fields at pages 51, 60-62, 76-78.

As such, it is hard to imagine how Plaintiffs can claim that in-house counsel's communications to the claims staff who determined claims and who specifically solicited her help in this regard does not contain counsel's communications, legal advice and recommendations on how the Company should proceed regarding Third Parties' claims to the insurance proceeds at issue in this lawsuit.

C. **The Claim Handlers Are Within the Company's Control Group for Purposes of the Communications At Issue**

Last, but not least, Plaintiffs improperly and summarily apply the "control group" test in *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103, 432 N.E.2d 250 (1982) and argue that the privilege is inapplicable because a claims adjuster is not "top management" and, thus, counsel's communications with claims handlers can never be privileged. This position is also seriously misplaced.

"The general control group rule concerns who within the corporation qualifies as the corporate client for purpose of the privilege." *In re Quantum Chemical/Lummus Crest*, 1992 U.S. Dist. LEXIS 5448 (N.D. Ill. 1992). "In the context of a corporation and the attorney-client privilege, the 'client' may encompass many different people and/or entities who share in the

confidentiality inherent in a privileged communication. Members in a 'control group' of a corporate client are just such people.  A corporation acts through its agents, and thus, although the corporation is the client, the agents are the people who seek counsel for the corporation" *Dexia Credit Local v. Rogan,* 231 F.D.R. 268, 277, 2004 U.S. Dist. LEXIS 25635 at * 25 (N.D. Ill. 2004).

Contrary to Plaintiffs' suggestion, in Illinois the term 'control group,' is defined not only to include "top management," but also to include employees whose advisory role to top management in a particular area is such that a decision would not normally be made without their advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority." *Id.* 231 F.D.R. at 277, 2004 U.S. Dist. LEXIS 25635 at * 24, *citing Hayes v. Burlington No. and Santa Fe Railway Co.*, 323 Ill.App.3d 474, 752 N.E.2d 470, 473 (Ill. App. 2001).  In *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103, the Illinois Supreme Court held that a rule limiting the privilege to employees performing "top management" duties was too narrow.  Instead, it adopted an expanded version of the control group test, explaining:

> We believe that an employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority, is properly within the control group…this approach, we think, better accommodates modern corporate realties and recognizes that decision making within a corporation is a process rather than a final act.

*Id.* at 120.

Under the control group test, there are two tiers of corporate employees whose communications are protected.  The first tier consists of the top management decision makers, and the second tier consists of those employees who directly advise top management, and upon whose opinions and advice the decision-makers rely.  *Id*; see also *Mlynarksi,* 213 Ill.App.3d 427

(1st Dist. 1991); *Goh v. CRE Acquisition, Inc., 2004*, 02 C 4838, U.S. Dist. LEXIS 5943 (D. Ill. 2004)(The control group includes individuals who advise the decision-makers of a company).

It is common sense to conclude that an insurance carrier's "top management" generally has nothing to do with processing of claims and it is the Company's claims adjusters and handlers who determine whether the claim requirements have been met and whether benefits should be paid in the ordinary course of processing claims. These are the agents who are the general decision makers when it comes the determination of benefits -- which is the issue at hand. Accordingly, as claims handlers, Ms. Singh and Ms. Fields fall squarely within the Company's "control group" for purposes of the privileged communication at issue. *See*, Diana Fields Affidavit attached at Ex. 4, *The Midwesco-Paschen Joint Venture for the Viking Projects v. IMO Industries, Inc.*, 265 Ill. App. 3d 654, 663, 638 N.E. 2d 322, 328 (1st Dist. 1994) (field service manager who discussed allegations with corporate counsel deemed member of control group where he gave advice relied upon by management pertaining to liability); *Am. Nat'l Bank & Trust Co. v. Axa Client Solutions*, No. 00 C 6786, 2002 U.S. Dist. LEXIS 4805 (N. D. Ill. 2002), ("In the corporate context, the privileged nature of a communication does not lose its status as such simply because it is disseminated among numerous employees of the corporation.")

The communications between Ms. Singh and Ms. Fields and corporate counsel with whom they conferred are privileged. These documents reflect direct communications from and to counsel regarding her advice concerning whether benefits should be paid, memorializing her legal analysis and opinions, and what response should be made to Plaintiff's counsel's pre-litigation demand. They were prepared and maintained within American General with the expectation that they would remain confidential and they should be protected by the attorney

383619.1

client privilege. To hold otherwise would mean that a corporation that designates a company representative to analyze and pay claims can solicit the advice of in-house counsel to assist them but can have no expectation that its agent's communication with counsel will remain confidential. Corporations must be able to rely upon the attorney client privilege extending to the representative that is designated as responsible for handling and determining special claim matters.

Finally, Plaintiffs cannot be heard to argue that the few privileged documents that American General has refused to produce is calculated to improperly "shelter important knowledge." The factual basis upon which the claim was determine has been fully disclosed and all documents that form the basis for counsel's opinions have been produced. It is only in-house counsel's own interpretation of those documents and her legal opinion which led to the payment of the claim that has been formally kept from Plaintiffs and their counsel. However, American General submits that the legal basis for payment is no mystery as it can be gleaned relatively easily from the face of the documents produced in discovery. At the Court's request, Defendant can provide the documents at issue for the Court's *in camera* review.

### III.   CONCLUSION

WHEREFORE, Defendant, AMERICAN GENERAL INSURANCE COMPANY, respectfully requests that this Court enter an Order denying Plaintiff's Motion to Compel Production of Documents.

Respectfully submitted,

**AMERICAN GENERAL LIFE INSURANCE COMPANY**


By: _____/s/ Cinthia G. Motley_____
    Cinthia G. Motley

Daniel J. McMahon
Rebecca M. Rothmann
Cinthia G. Motley
WILSON, ELSER, MOSKOWITZ,
 EDELMAN & DICKER LLP
120 North La Salle Street, Suite 2600
Chicago, Illinois 60602
Phone: (312) 704-0550
Fax: (312) 704-1522
Cinthia.motley@wilsonelser.com

- 10 -

383619.1

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing notice was deposited in the U.S. Mail, postage prepaid, enclosed in an envelope properly addressed to all counsel listed on the attached service list on this 5th day of March, 2007.

                                                                /s/ Cinthia G. Motley
                                                                  Cinthia G. Motley

**SERVICE LIST**
*Margaret Stilwell v. American General Life Ins. Co.*

Jason M. Crowder
HELLER, HOLMES & ASSOC., P.C.
1101 Broadway, P.O. Box 889
Mattoon, IL 61938
(217) 235-2700
(217) 235-0743 (Fax#)
crowderjason@hotmail.com.

Richard L Heavner
HEAVNER SCOTT BEYERS & MIHLAR
111 E Main St., Suite 200
Decatur, IL 62523
217-422-1719
Fax: 217-422-1754
richardheavner@hsbattys.com

Timothy J Howard
HOWARD & HOWARD ATTORNEYS PC
211 Fulton St, Ste 600
Peoria, IL 61602-1350
309-672-1483
Fax: 309-672-1568
thoward@howardandhoward.com

383619.1