IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| MARGARET J. STILLWELL, HALEY STILLWELL, HEIDI STILLWELL, JAMIE STILLWELL, and MEGAN STILLWELL, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | Case No. 05-CV-02160 |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) ) | The Honorable Michael P. McCuskey |
| Defendant/Third Party Plaintiff, | ) ) | Magistrate Judge David G. Bernthal |
| -vs- | ) ) | |
| FIRST MID-ILLINOIS BANK & TRUST; TUSCOLA FURNITURE GROUP, L.L.C.; and JANKO FINANCIAL GROUP, L.L.C., | ) ) ) ) | |
| Third Party Defendants. | ) | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Now come Plaintiffs MARGARET J. STILLWELL, HALEY STILLWELL, HEIDI STILLWELL, JAMIE STILLWELL, and MEGAN STILLWELL, by Jason M. Crowder and David Stevens of Heller, Holmes & Associates, P.C., their attorneys, and for their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(D) state as follows:

**I. INTRODUCTION**

Plaintiffs claim in their Amended Complaint that Defendant breached its contract of life insurance with them when it paid $512,974.50 jointly to First Mid-Illinois Bank & Trust and Tuscola Furniture Group, L.L.C., when it should have only paid First Mid-Illinois Bank & Trust $81,020.00 and Tuscola Furniture Group $250,000.00 under separate valid collateral assignments. They claim money damages in the amount of $181,954.50 plus statutory interest in the approximate amount of

1

$65,000.00, the exact amount depending upon the date of payment. Most of the facts material to the claim are undisputed, as stated below, and those facts which are disputed may readily be resolved in favor of Plaintiffs by reference to the documents attached hereto as Exhibits and incorporated herein by reference. There is no genuine issue of material fact remaining, and Plaintiffs are entitled to judgment against Defendant as a matter of law. The amount of damages is readily calculable.

## II. UNDISPUTED MATERIAL FACTS

Plaintiffs submit the following as undisputed material facts.

1. James E. Stillwell, deceased, had a term life insurance policy with Defendant's predecessor in interest The Old Line Life Insurance Company of America in the amount of $4,000,000.00; Plaintiff Margaret J. Stillwell was the owner of the policy; and the original beneficiaries under the policy were the five Plaintiffs. Defendants admitted these allegations in their Answer. Exhibit 1.

2. Collateral assignments were made from this insurance policy to several business creditors, including Citizens First National Bank (CFNB; $1.5 million); Tuscola National Bank (TNB: $2 million); Tuscola Furniture Group, L.L.C. (TFG; $250,000.00); First Mid-Illinois Bank & Trust (FMIBT; $1 million); and Janko Financial Group (JFG; two assignments, $2 million total), and Defendant had knowledge of the assignments. Defendant admitted these allegations in its Answer. Exhibits 2, 3, 4, 5, 16, 17, 18, 21.

3. JFG released its assignments on or about November 28, 2000, and Defendant had knowledge of the releases. Defendant admitted these allegations in its Answer. Exhibits 6, 18, 22.

4. Upon the death of James E. Stillwell, Defendant was contractually obligated to pay out all amounts properly due on the assignments and to provide the original beneficiaries with any remainder. Defendant admitted these allegations in its Answer. Exhibit 1.

5. Upon the death of James E. Stillwell, CFNB and TNB were each owed an amount in excess of their assignments, and Defendant properly issued each a check for the full amount of the assignment ($2 million to CFNB and $1.5 million to TNB). Defendant admitted that it issued the checks in its Answer. Exhibit 21.

6. Upon the death of James E. Stillwell, TFG and FMIBT made a joint claim to Defendant for $512,974.50 of the life insurance proceeds. Defendant admitted these allegations in its Answer. Exhibits 13, 14, 15.

7. Decedent never made a joint assignment to TFG and FMIBT, and Defendant had knowledge that no such joint assignment had been made. Defendant admitted these allegations in its Answer. Exhibits 16, 17.

8. FMIBT was owed only $81,020.00 at the time of the death of James E. Stillwell. Exhibit 20.

9. TFG claimed it was owed in excess of $250,000.00 at the time of the death of James E. Stillwell. Exhibit 13, 14.

10. Defendant paid $512,974.50 of the life insurance proceeds to TFG and FMIBT pursuant to their joint claim. Exhibits 20, 24.

11. FMIBT took $81,020.00 plus $160.37 in interest and $480.00 in legal fees from the $512,974.50 paid to it and TFG jointly, and paid the balance of $431,314.13 to TFG. Exhibit 20.

12. Pursuant to Illinois statute, interest accrues on any unpaid balance of life insurance benefits at the rate of 9% per year. 215 ILCS 5/224(l) (West 2004).

13. James E. Stillwell died on May 2, 2003. Exhibit 22.

14. James E. Stillwell was President and owner of Amishland Country Village, Inc. (ACV). Ex. 7.

15. ACV entered into a Consignment Agreement with TFG on November 19, 2000. Ex. 7.

16. ACV had previously entered into a Consignment Agreement with JFG on 4/19/99. Exs. 7, 12.

17. Richard Janko, as Manager of JFG, executed a Quitclaim Bill of Sale to TFG on November 16, 2000. Ex. 8.

18. Richard Janko, as Authorized Member of JFG, executed an Assignment and Assumption Agreement, assigning to Richard Janko, as Authorized Member of JFG, which was Manager of TFG, the Consignment Agreement dated 4/16/99 between ACV and JFG, and all contracts and other documents including insurance policies related to and incurred in connection with the acquisition and consignment of Amish furniture, on November 16, 2000. Ex. 11.

19. Richard Janko, as Authorized Member of JFG, which was Manager of TFG, executed an Assignment selling, assigning, and transferring to FMIBT all collateral and a security agreement on November 17, 2000. Ex. 10.

20. James E. Stillwell, as President of ACV, executed a Bill of Sale to TFG, selling, assigning, transferring, and setting over to TFG all Amish furniture inventory it owned in consideration of the receipt of $208,341.00 on December 20, 2000. Ex. 9.

21. It was while JFG had the consignment agreement with ACV that Plaintiff Margaret J. Stillwell authorized the two collateral assignments to JFG. Exs. 2, 3.

22. When the new consignment agreement was signed with TFG, Plaintiff Margaret J. Stillwell authorized the collateral assignments to TFG amd FMIBT. Exs. 4, 5.

23. The Consignment Agreement of November 17, 2000, in Paragraph 3.9, provides:

"ACV will maintain life insurance and pay the premiums thereon on JAMES STILLWELL in an amount of at least $1,250,000.00 or an amount equal to the

4

>Inventory Cap, if higher, with TFG and BANK named as beneficiary with an insurance company rated A or better by AM Best. The life insurance proceeds shall be used first to pay BANK for the amount TFG owes BANK in order to release its lien on the Amish furniture, then to TFG for all Amish furniture owned by TFG at average wholesale cost, less credit for the amount paid BANK, and any other amounts owed to TFG under this Agreement and any excess life insurance proceeds shall be paid to the Estate of JAMES STILLWELL or ACV. Upon payment, TFG will convey title to as much of the Amish furniture free and clear of all liens, as was paid for by the insurance proceeds, to ACV."

Ex. 7.

### III. ARGUMENT

#### A. Requirements for Summary Judgment

Federal Rule of Civil Procedure 56 provides, in pertinent part:

>"A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof. . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."

A federal court will neither resolve factual disputes nor weigh conflicting evidence; it will only determine if a genuine issue of material fact exists for trial. Such an issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).) If no such issue exists, the sole question is whether the moving party is entitled to judgment as a matter of law. In reaching a conclusion as to the presence of a genuine issue of material fact, this Court will view the evidence and draw all inferences in a way most favorable to the nonmoving party. (*Tolentino v. Friedman,* 46 F.3d 645, 649 (7th Cir.), *cert. denied,* 515 U.S. 1160, 115 S. Ct. 2613, 132 L. Ed. 2d 856 (1995).) According to the Supreme Court of the United States: "As to materiality, the

5

substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." (*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510, 91 L. Ed. 2d 202.)

The movant bears the burden of establishing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. (*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986) (the moving party has the responsibility of informing the court of portions of the record or affidavits that demonstrate the absence of a triable issue). In addition, the moving party may meet its burden of showing an absence of a material issue by demonstrating "that there is an absence of evidence to support the nonmoving party's case." (*Celotex Corp.,* 477 U.S. at 325, 106 S. Ct. at 2553, 91 L. Ed. 2d 265.) Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. (*Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513, 91 L. Ed. 2d 202; *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1989); *Spring v. Sheboygan Area School Dist.,* 865 F.2d 883, 886 (7th Cir.1989).)

If the moving party meets her burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. (*Matsushita Elec. Indus. Co. v. Zenith Radio Co.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986).) In pertinent part, Federal Rule of Civil Procedure 56(e) reads:

> "The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

This rule "requires the nonmoving party to go beyond the pleadings" and produce evidence of a genuine issue for trial. (*Celotex Corp.,* 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d 265.) The district court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." (*Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511, 91 L. Ed. 2d 202.)

In this matter, Plaintiffs assert that there are no genuine issues of material fact regarding their allegations of breach of contract against Defendant AMERICAN GENERAL LIFE INSURANCE COMPANY, and that they are entitled to judgment as a matter of law. They seek readily computable money damages in the amount of $181,954.50 plus statutory interest in the approximate amount of $65,000.00 plus their costs of suit.

### B. Elements of a Claim for Breach of Contract

The elements of a claim for breach of contract are well established, and include the existence of a contract, performance by the non-breaching party, a material breach of the contract, and damages flowing from the breach. (*Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001).) In this case there is no issue regarding the existence of the contract (Ex. 1), or performance by the non-breaching party; Defendant has made payments on the contract, and does not claim that Plaintiffs have failed to do anything they were required to do by the contract. Nor is there an issue regarding damages, if a material breach of the contract is proven. The sole issue upon which the parties disagree is whether or not there was a material breach, and even here most of the material facts are undisputed. The question is of the interpretation of the contract, which is a matter of law (*see, e.g., Ooley v. Schwitzer Division, Household Manufacturing, Inc.*, 961 F.2d 1293, 1298 (7th Cir. 1992)), and of the application of the undisputed facts. Both lead inevitably to the conclusion that Defendant breached

the contract when it paid $512,947.50 to First Mid-Illinois Bank & Trust and Tuscola Furniture Group jointly rather than $81,020.00 to First Mid-Illinois Bank & Trust and $250,000.00 to Tuscola Furniture Group as it should have under existing and valid assignments. Plaintiffs are entitled to judgment as a matter of law.

### B. Application of the Facts to the Law

Page 7 of the Policy of Insurance at issue describes assignments under the policy. (Ex. 1) It states:

> "No assignment of this policy will be binding on us until filed with us in writing and recorded by us. No assignment will affect any payment we made before we recorded the assignment. We will not be responsible for the validity of an assignment.
>
> All rights of the owner and any revocable beneficiary is subject to the rights of any assignee on record with us."

The policy required the owner to authorize any and all assignments.

Two collateral assignments which have nothing to do with this case were authorized by the owner of the policy, Plaintiff Margaret J. Stillwell: one to Tuscola National Bank in the amount of $2,000,000.00 and the other to Citizen's First National Bank in Princeton in the amount of $1,500,000.00. Payment on a collateral assignment depends upon the entity to whom the policy is assigned being owed money by the decedent (*see, e.g.*, *Warnock v. Davis*, 104 U.S. 775, 781, 26 L. Ed. 924 (1881)), and in the cases of Tuscola National Bank and Citizen's First Bank the Defendant insurance company paid out the entire amounts assigned. (Ex. 21)

There were two other valid collateral assignments at the time of the death of James E. Stillwell on May 2, 2003: one to First Mid-Illinois Bank & Trust in the amount of $1,000,000.00, authorized by policy owner Margaret J. Stillwell on January 11, 2001; and the other to Tuscola Furniture Group in the amount of $250,000.00, authorized by policy owner Margaret J. Stillwell on November 21, 2000. (Ex. 21) At the time of the death of James E. Stillwell, however, First Mid-

8

Illinois Bank & Trust was owed only $81,020.00 (Ex. 20) It could therefore only collect that amount, regardless of the amount of the assignment. (*See, e.g., Crotty v. Union Mutual Insurance Co. of Maine*, 144 U.S. 621, 623-24, 12 S. Ct. 729, 749, 36 L. Ed. 566 (1892).) Tuscola Furniture Group claimed to be owed $431,954.50. (Ex. 20) Since its collateral assignment was limited to $250,000.00, however, it could only recover that amount.

Following the death of James E. Stillwell, First Mid-Illinois Bank & Trust and Tuscola Furniture Group submitted a joint claim in the amount of $512,974.50, the amount of the two claims combined. (Exs. 13, 14, 15) When Defendant paid the claims, it wrote one check to both claimants in the full amount of $512,974.50. (Ex. 20) First Mid-Illinois Bank & Trust applied $81,020.00 to pay off the debt to it, along with $480.00 in legal fees and $160.37 in accrued interest, and gave the balance of $431,314.13 to Tuscola Furniture Group. (Ex. 20) Defendant thus overpaid First Mid-Illinois Bank & Trust by $640.37, based upon its entitlement under the collateral assignment to only $81,020.00, and it overpaid Tuscola Furniture Group by $181,314.13, based upon its entitlement to only $250,000.00 under the collateral assignment. Plaintiffs were thus deprived of $181,954.50 under the terms of the contract of life insurance.

Additionally, pursuant 215 ILCS 5/224(l) (West 2004), interest accrues on any unpaid balance of life insurance benefits at the rate of 9% per year. Since it has been almost four years since the death of James E. Stillwell, an additional amount of approximately $65,000.00 is due, with the exact amount depending upon when the amount due is paid.

Defendant may argue that Tuscola Furniture Group had $2,250,000.00 of collateral assignments instead of $250,000.00. This claim would arise from the two collateral assignments to Janko Financial Group for $500,000.00 and $1,500,000.00, created in April and October, 2000. (Exs. 2, 3) The assignments were released in December, 2000. (Exs. 6, 18, 22) Despite the lack of a

9

provision in the contract for the transfer of the assignment to another assignee, and despite the lack of the policy owner's consent, when Janko Financial Group representative Lawrence W. Bianchi signed the release form in November, 2000, he wrote in the words: "In favor of Tuscola Furniture Group." (Ex. 6)

This attempt to assign the assignment without the consent of the owner of the policy has no validity whatsoever. In fact, Defendant did not recognize the attempt as valid at the time. Defendant has an internal policy of verifying assignments and releases of assignments. For example, when Tuscola Furniture Group received its $250,000.00 collateral assignment in December, 2000, Defendant sent a letter entitled "Assignment Verification." (Ex. 4) When Janko Financial Group released its assignments, Defendant sent them a letter on December 4, 2000, acknowledging the release. (Ex. 6) Defendant did not send an assignment verification to Tuscola Furniture Group regarding any purported assignment of the assignments of Janko Financial Group.

Further, at the time of his death James E. Stillwell owed no money to Janko Financial Group. (Ex. 22) Without an insurable interest in the life of James E. Stillwell, any assignment of the life insurance policy to Janko Financial Group was invalid. (*Warnock v. Davis*, 104 U.S. 775, 781, 26 L. Ed. 924 (1881).) Even if the purported assignment of the assignments had been valid, however, Tuscola Furniture Group would only be able to step into the shoes of Janko Financial Group for purposes of the assignments, and collect whatever was owed to Janko Financial Group, which was nothing. (*See Perry v. Globe Auto Recycling, Inc.,* 227 F.3d 950, 953 (7th Cir.2000).) Either way, Tuscola Furniture Group's ability to collect was limited to the amount of its assignment, or $250,000.00.

The assignment of a collateral assignment of a life insurance policy is similar to the assignment of a mortgage. Both a collateral assignment of a life insurance policy and a mortgage

are made for the purpose of securing a debt. If there is no underlying debt, there is no mortgage. (*See*, *e.g.*, *Evans v. Berko*, 408 Ill. 438, 444, 97 N.E.2d 316, 320 (1951).) By analogy, if there is no underlying debt, there is no collateral assignment of a life insurance policy. An attempt to assign a mortgage without transfer of the underlying debt will not pass the mortgagee's interest to the assignee, but is a nullity. (*Delano v. Bennett*, 90 Ill. 533, 536 (1878); *Commercial Products Corp. v. Briegel*, 101 Ill. App. 2d 156, 163, N.E.2d 317, 321 (3d Dist. 1968); *see also* 27A *Illinois Law and Practice: Mortgages*, Section 95 (West 2003).) Similarly, an attempt to assign a collateral assignment of a life insurance policy without transfer of the underlying debt will not pass the primary assignee's interest to the secondary assignee, but is a nullity.

Defendant sent a letter to counsel for Plaintiffs on January 26, 2004, outlining the valid assignments and their outstanding balances. (Ex. 21) Tuscola Furniture Group was listed in that letter with an assignment of only $250,000.00. There was no mention of Defendant acknowledging or recording an assignment in favor of Tuscola Furniture Group for an additional $2,000,000.00. In fact, in that letter there are no mentions of Janko Financial Group at all. In another letter to counsel for Plaintiffs on March 5, 2004, Defendant's representative stated flatly: "It was [Defendant]'s position that the assignments to JFG dated April 2000 and October 2000 had been released by the Release of Assignment received by [Defendant] in December, 2000." (Ex. 22)

Defendant may also argue that the language of the Consignment Agreement of 11/17/00 required ACV to obtain a policy of life insurance on James E. Stillwell with TFG and FMIBT as joint beneficiaries to the extent of $1.25 million. (Ex. 7) Even if true, this is irrelevant to the present case. All that matters here is what the contract of insurance provided, and its language is clear, unambiguous, and essentially undisputed. Collateral assignments in the aggregate amount of $1.25 million from the life insurance policy at issue were indeed made, but they were two separate

11

collateral assignments in the amounts of $1 million to FMIBT and $250,000.00 to TFG. TFG and FMIBT may be held to have waived the obligation by failing to enforce it for over two years; in any case, their quarrel if any is with Decedent and his corporation, ACV. The Defendant insurance company was obligated to pay on the collateral assignments only the amounts due to each assignee, and it did not do so.

Paragraph 3.9 of the Consignment Agreement of November 17, 2000, recites that "[t]he life insurance proceeds shall be used first to pay BANK for the amount TFG owes BANK in order to release its lien on the Amish furniture, then to TFG for all Amish furniture owned by TFG at average wholesale cost, less credit for the amount paid BANK, and any other amounts owed to TFG under this Agreement and any excess life insurance proceeds shall be paid to the Estate of JAMES STILLWELL or ACV." The Defendant insurance company was not a party to the Consignment Agreement, was not a third-party beneficiary of it, and cannot possibly be bound by it. The only signatories were James Stillwell for ACV and Richard Janko for TFG; neither represented the insurance company.

The undisputed facts, the unambiguous language of the contract of insurance, and the documents produced in discovery and included as Exhibits to this Motion for Summary Judgment make it clear that there is no genuine issue of material fact in this matter and that there is no evidence to support Defendant's case so that a jury could reasonably find in its favor. There is no doubt as to the existence of a genuine issue of material fact for trial. Defendant breached the contract of insurance when it paid First Mid-Illinois Bank & Trust and Tuscola Furniture Group more than they were entitled to under valid collateral assignments. Plaintiffs were damaged thereby to the extent of $181,954.50 plus approximately $65,000.00 in statutory interest, depending upon the date of the payment.

## IV. CONCLUSION

For the reasons outlined above, Plaintiffs MARGARET J. STILLWELL, HALEY STILLWELL, HEIDI STILLWELL, JAMIE STILLWELL, and MEGAN STILLWELL pray this Court to enter Summary Judgment in their favor and against Defendant AMERICAN GENERAL LIFE INSURANCE COMPANY in an amount to be determined; for costs; and for such other and further relief to which they may be entitled and which this Court deems just and fair.

        MARGARET J. STILLWELL, HALEY STILLWELL,
        HEIDI STILLWELL, JAMIE STILLWELL, and
        MEGAN STILLWELL, Plaintiffs


By:     s/Jason M, Crowder
        Of Heller, Holmes & Associates, P.C.
        Their Attorneys

## EXHIBIT LIST FOR PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1. Life insurance policy.

2. $500,000.00 collateral assignment dated 4/19/99 to JFG.

3. $1.5 million collateral assignment dated 9/25/00 to JFG.

4. $250,000.00 TFG collateral assignment dated 11/21/00 with assignment verification.

5. $1 million First Mid collateral assignment with assignment verification (1/11/01).

6. Release of Assignment for JFG with Release of Assignment Verificiation (12/4/00).

7. Consignment agreement dated 11/17/00.

8. Quit Claim Bill of Sale dated 11/16/00.

9. Bill of Sale from ACV to TFG dated 12/20/00.

10. Assignment between TFG and First Mid dated 11/17/00 (re: consignment agreement).

11. Assignment & Assumption agreement dated 11/16/00 between JFG & TFG.

12. Prior consignment agreement between JFG & ACV.

13. Claim letter of First Mid dated 5/12/03.

14. Claim letter of TFG dated 5/12/03.

15. Claim letter of TFG dated 5/28/03.

16. AIG letter to First Mid dated 6/10/03.

17. AIG letter to TFG dated 6/10/03.

18. AIG letter to JFG dated 6/10/03.

19. JFG letter to AIG dated 6/11/03.

20. Documents showing payout and amount to First Mid of $81,660.37.

21. Letter from AIG to Jason M. Crowder dated 1/26/04.

22. Letter from AIG to Jason M. Crowder dated 3/5/04.

23. Letter from AIG to First Mid transmitting claimant's statement.

24. Letter from AIG to First Mid dated 6/26/03 transmitting $512,974.50 for joint claim.

25. Letter from AIG to Lloyd Murphy of Tuscola National Bank regarding claim.

JASON M. CROWDER
HELLER, HOLMES & ASSOCIATES, P.C.
1101 Broadway, P.O. Box 889
Mattoon, IL 61938-0889
Telephone: (217) 235-2700
Fax: (217) 235-0743
E-Mail: CrowderJason@Hotmail.com

14

## CERTIFICATE OF SERVICE

      I hereby certify that on March 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Timothy J. Howard; Cinthia G. Motley; Julie Beyers; Michael S. Seneca; Daniel J. McMahon; and Rebecca M. Rothmann.

                                                  s/Jason M. Crowder
                                                  Heller, Holmes & Associates, P.C.
                                                  1101 Broadway, P.O. Box 889
                                                  Mattoon, IL 61938-0889
                                                  Telephone: (217) 235-2700
                                                  Fax: (217) 235-0743
                                                  E-Mail: CrowderJason@Hotmail.com
                                                  Attorneys for Plaintiffs