E-FILED
Wednesday, 28 March, 2007  09:18:38 AM
Clerk, U.S. District Court, ILCD

11/02/00

# CONSIGNMENT AGREEMENT

This Consignment Agreement made this 17th day of November 2000 by and between TUSCOLA FURNITURE GROUP, LLC., an Illinois Limited Liability Company, hereafter "TFG" and AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation, hereafter "ACV".

WHEREAS, ACV is in the business of retail sale of Amish made furniture and desires to establish a retail outlet in Tuscola, Illinois but lacks financial resources for acquiring an adequate inventory of Amish furniture, and

WHEREAS, TFG has the financial resources and is willing to purchase an inventory of Amish crafted furniture and consign same with ACV upon the terms and conditions herein, and

WHEREAS, JANKO FINANCIAL GROUP, L.L.C., an Illinois Limited Liability Company, hereafter "JANKO" and ACV are parties to a "Consignment Agreement" dated April 16, 1999, and

WHEREAS, JANKO having the right, without the consent of ACV, to assign its interest in the Cosignment Agreement, has assigned its interest in the Cosignment Agreement dated 4/16/99 to TFG, and

WHEREAS, TFG (as assignee of JANKO) and ACV, desiring to  modify the Cosignment Agreement dated April 16, 1999, by terminating same and entering into this agreement do hereby agree as follows:

0.O   THE AGREEMENT:

   0.1   The Consignment Agreement dated April 16, 1999 by and between JANKO and ACV is hereby terminated and replaced by this Consignment Agreement, effective as of the date of this agreement.

   0.2   ACV shall cooperate with JANKO and TFG in regards to changing the name of the consignor on all documents relating to transactions relating to this agreement.

EXHIBIT 7

1

000075

1. **DEFINITIONS**

    1.1   "ACV" means AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation the consignee under this Consignment Agreement.

    1.2   "AMISH FURNITURE" herein means (i) originally made and crafted Amish furniture, fully finished, (ii) AMISH style furniture made by others and (iii) any "other furniture" purchased and owned by TFG in an amount not to exceed 3% of the average wholesale replacement cost of total inventory, but does not include crafts, lamps, pictures and accessories other than wood products, whether Amish made or not.

    1.3   "AVERAGE WHOLESALE COST" means the inventory value of the AMISH FURNITURE as determined by QUICK BOOKS software program on a straight line average

    1.4   "BANK" means FIRST MID-ILLINOIS BANK and TRUST OF TUSCOLA, ILLINOIS.

    1.5   "INVENTORY CAP" means the maximum total aggregate amount of the average wholesale cost of Amish Furniture consigned by TFG to ACV.

    1.6   "JANKO" means JANKO FINANCIAL GROUP, L.L.C., an Illinois Limited Liability Company, the manager of TFG.

    1.7   "TFG'S INVESTMENT" means all amounts paid by TFG for AMISH FURNITURE less credits for payments received from sales of AMISH FURNITURE

    1.8   "STILWELL" means JAMES and/or MARGARET STILWELL, the sole Shareholders of ACV.

    1.9   "TFG" means TUSCOLA FURNITURE GROUP, LLC., an Illinois Limited Liability Company, the consigner under this Agreement.

2. **AGREEMENTS OF TFG**

    2.1   TFG agrees to purchase the existing inventory of Amish furniture now owned by ACV at current wholesale replacement cost and to purchase new Amish furniture selected by ACV, all at wholesale value or cost from time to time during the existence of this Agreement provided that the total amount of purchases shall never exceed $1,250,000.00 except as otherwise allowed herein.

    2.2   TFG will be the owner of such Amish furniture free and clear of all liens and encumbrances except a Security Agreement with BANK in an amount not to exceed 80% of the wholesale value.

000076

2.3   TFG will consign the Amish furniture with ACV and with no other party or entity unless with the consent of ACV or pursuant to termination of this Agreement by reason of the default of ACV.

2.4   TFG will pay ACV, or at the direction of ACV, the seller of the Amish furniture all items delivered to an ACV store or warehouse within seven (7) days of demand and TFG'S receipt of proper documentation, i.e. Purchase Order Receipts with corresponding copy of vendor invoices and no more frequently than once every two (2) weeks.

2.5   Wholesale value will be determined and supported by receipts or invoices from suppliers, copies to be provided by STILWELL.

2.6   TFG may increase or waive the inventory cap of $1,250,000.00 limit on the purchase of Amish furniture upon the written request of ACV submitted not earlier than one (1) year from the date of this Agreement and conditioned upon evidence that ACV is current and not in default on any of its financial obligations including all current and long term lenders and tax obligations to State and Federal governmental bodies.

3.   **AGREEMENTS OF ACV:**

3.1   ACV will sell to TFG its existing inventory of Amish furniture at current wholesale replacement cost and purchase on behalf of TFG additional Amish furniture at wholesale cost from time to time during the term of this Agreement which total wholesale value should never exceed $1,250,000.00 unless increased pursuant to paragraph 2.6 above.

3.2   ACV's purchase at wholesale of Amish furniture on behalf of TFG shall be under the supervision and direction of STILWELL who shall exercise reasonable care and diligence in selecting marketable Amish furniture at fair and reasonable cost.

3.3   ACV will keep, preserve, repair and maintain all Amish furniture in good condition at only the following locations:

   (1) 1304 Tuscola Blvd., Tuscola, IL.  61953
   (2) East Route 36,  Atwood,  IL.   61913
   (3) 123 N. Main St., Atwood, IL    61913
   (4) 601 & 603 S. Main, Tuscola, IL   61953 ( 1 bldg. occupying 2 lots)

3

000077

and sell and market same in the ordinary course of its business at retail pricing in such amounts as determined by ACV. At all times ownership of the Amish furniture shall be in the name of TFG and ACV will execute, obtain or provide such Bill of Sales, Inventory lists, or other documents as deemed necessary by TFG to evidence its ownership.

3.4    Principal Payments: ACV will pay or remit to BANK in an account designated by TFG by the 10th day of the month, an amount equal to the average wholesale cost of the items sold during the previous month. Such reductions in the inventory level of Amish furniture may be replaced up to the inventory cap.

3.5    Consignment Payments: For its consignment services, ACV may retain all amounts in excess of average wholesale cost obtained from the sale at retail of the Amish furniture after deducting and paying Bank in an account designated by TFG by the 10th day of the month an amount equal to the previous month's total of:

a)    10% of retail sale price, exclusive of sales tax;

b)    interest (at the rate charged by BANK to TFG) on the amount of TFG'S INVESTMENT; and

c)    all other costs, points, fees, charges by BANK to TFG.

3.6    Exclusive: ACV will not accept for consignment, sell or lease furniture of any kind except in accordance with this Consignment Agreement, and ACV will not pledge the Amish Furniture or proceeds therefrom as collateral except as required by paragraph 3.17 of this Agreement.

3.7    Product Liability Insurance: ACV will obtain Product Liability Insurance in the minimum amount of One Million Dollars at its cost, naming TFG as an additional insured with fee tail coverage, with an Insurance Company rated by AM Best of a rating of "A" or better.

3.8    Casualty Insurance: ACV will insure the Amish furniture against fire, loss, theft, vandalism, damage and other casualty with an insurance company rated by AM Best of a rating A or better at its full insurable value naming TFG and BANK as additional party insured. Said policies will maintain a clause requiring notice to TFG and BANK ten (10) days prior to any alteration in terms or cancellation. ACV will furnish evidence of such insurance being in force to TFG and BANK. Any insurance proceeds paid to TFG and BANK in excess of the balance of the obligations owed by ACV to TFG and TFG'S cost for the Amish Furniture shall be the property of ACV and shall be paid over to ACV after the obligations due under this Agreement and Amish furniture costs have been paid in their entirety.

000078

3.9 **Life Insurance:** ACV will maintain life insurance and pay the premiums thereon on JAMES STILWELL in an amount of at least $1,250,000.00 or an amount equal to the Inventory Cap, if higher, with TFG and BANK named as beneficiary with an insurance company rated A or better by AM Best. The life insurance proceeds shall be used first to pay BANK for the amount TFG owes BANK in order to release its lien on the Amish furniture, then to TFG for all Amish furniture owned by TFG at average wholesale cost, less a credit for the amount paid BANK, and any other amounts owed to TFG under this Agreement and any excess life insurance proceeds shall be paid to the Estate of JAMES STILWELL or ACV. Upon payment, TFG will convey title to as much of the Amish furniture free and clear of all liens, as was paid for by the insurance proceeds, to ACV.

3.10 If ACV shall at any time or times hereafter fail to obtain and maintain any of the policies of insurance required above, or fail to pay any premium in whole or in part relating to any such policies, then TFG may, but need not, obtain and cause to be maintained any or all of such policies and pay any part or all of the premiums due thereunder without thereby waiving the said default or any other default by ACV. Any sums so disbursed by TFG shall be additional indebtedness owed by ACV to TFG and shall incur interest at the default rate of 12%.

3.11 ACV shall implement and maintain an inventory and accounting system acceptable to TFG and BANK for the purpose of tracking the purchase and sale and payment of funds pursuant to this Agreement, which shall include, but not be limited to the following:

    a) Physical inventory will be taken by ACV once/month and ACV will do such spot inventories as directed by TFG. TFG may also conduct its own spot, random or complete inventories.

    b) ACV will maintain on a daily basis, a running book inventory.

    c) Whenever inventory records over a quarterly period indicate "inventory shrinkage" has occurred, ACV will pay TFG within five (5) days the amount of SHRINKAGE at average wholesale cost, plus 10% of the sale price of the missing inventory and inventory records will be adjusted in accordance therewith.

    d) ACV will establish and implement a physical coding system of inventory items acceptable to TFG, and every item will be backed by a Bill of Sale, purchase order or paid receipt in connection with its acquisition and a sales receipt in connection with its disposition.

000079

    3.12    ACV shall pay and be responsible for all expenses for the storage, transportation, handling, sales and distribution of said Amish furniture, as well as all costs incurred by TFG in connection with BANK financing of TFG'S purchase of Amish furniture, including, but not limited to interest, points, fees and other BANK charges incurred to maintain inventory financing by BANK.

    3.13    ACV will keep account books and records giving complete information covering all transactions in connection with the purchase, sale, returns and distribution of Amish furniture and payment of the amounts due hereunder, and such books and records shall be open during normal business hours to the inspection of any duly authorized representative of TFG or BANK.

    3.14    <u>Inspections</u>: TFG, BANK or their agents shall have the right, at any time and from time to time hereunder, to inspect and examine the Amish furniture and to copy any records relating thereto, provided that such inspection, examination or copying does not unreasonably interfere with ACV's Business.

    3.15    ACV will use its best efforts to sell and merchandise Amish furniture promptly and in a profitable manner.

    3.16    ACV shall not have any store wide sale of Amish furniture for less than average wholesale cost plus 10% without the consent of TFG except in the case of Amish furniture deemed unmarketable, obsolete or damaged in the opinion of ACV.

    3.17    <u>Security Agreement:</u> ACV will execute any and all security agreements and UCC financing statements required by Article 9 of the Uniform Commercial Code, Section 9-114 in order for TFG to perfect a security interest in the Amish Furniture with priority over the creditors of ACV.

4.    <u>TERM</u>

    4.1    This Agreement shall remain in effect for ten (10) years from the date of April 16, 1999.

    4.2    Not until after April 15, 2004, shall ACV have the right to terminate this Agreement and then only upon thirty (30) days advance written notice to TFG and payment within said 30 days to TFG for the Amish furniture at current wholesale replacement cost or average wholesale cost, whichever is higher and all accrued and delinquent obligations owed by ACV to TFG. In addition, ACV will pay TFG a "residual payment" equal to two times 2% of the average annual gross retail sales of Amish furniture by ACV during the previous five

6

years.   1/8 of said amount shall be paid for the next eight quarters thereafter or until April 15, 2009, which ever occurs first.

4.3   TFG shall have the right to terminate this Agreement any month after January 1, 2001. Written notice of termination shall be given to ACV 120 days in advance of the date of termination. In the event of termination by TFG, TFG will be paid within said 120 days the same amounts as in the event of termination by ACV except TFG shall not be entitled to the residual payment.

5.   **WARRANTIES AND COVENANTS OF ACV:**

5.1   ACV expressly warrants, covenants and agrees, so long as any indebtedness as hereinbefore described remains unpaid to TFG, as follows:

5.2   ACV is (or at time of conveyance will be) the sole owner of the Amish furniture in its existing inventory free from any lien, security interest or encumbrance in favor of any person or entity, has the right to convey its existing inventory of Amish furniture to TFG and will defend the collateral against the claims and demands of all persons.

5.3   Except for sales in the ordinary course of business, ACV shall not sell, assign, transfer, encumber or hypothecate in any manner the Amish furniture.

5.4   ACV is a Corporation duly organized, validly existing and in good standing under the laws of the State of Illinois. ACV has the power and authority to carry on its business, to enter into this Consignment Agreement and to carry out the provisions hereof.

5.5   ACV is not in violation of, and the execution, delivery and performance of and compliance with this Consignment Agreement, will not result in ACV being in violation of, or in conflict with, or constitute a default under any term or provisions of any mortgage, indenture, contract, agreement, instrument, judgement, decree, order, statute, rule or regulation applicable thereto.

5.6   There are no actions, suits or proceedings pending or to the knowledge of ACV threatened against or affecting ACV at law or in equity or before or by any federal, state, municipal or other governmental department, commissions, board, bureau, agency or instrumentality, domestic or foreign, which involve the possibility of any judgement or liability not fully covered by insurance and which may result in any material adverse change in ACV's business or the operations, properties or assets or in the condition (financial or otherwise) of ACV.

6. **CONTINGENCIES AND CONDITIONS:**

   6.1   TFG'S obligations under this Agreement are contingent upon:

   6.2   TFG obtaining a line of credit in the minimum of 1.0 million dollars from BANK for the purchase of Amish furniture on terms acceptable to TFG and ACV.

   6.3   Personal guarantee to TFG by JAMES and MARGARET STILWELL of all funds owed by ACV to TFG and for the obligations of ACV under this Agreement whether to TFG or BANK. In addition, STILWELL, will co-sign and will cause ATWOOD MEAT SERVICE, INC. to co-sign the Security Agreements and UCC Financing Statements referred to in paragraph 3.17.

   6.4   Life Insurance on JAMES STILWELL in the amount of at least 1.25 Million Dollars or an amount equal to the Inventory Cap, if higher, with TFG and BANK as beneficiaries to the extent of the amounts owed to them, with an Insurance Company rated "A" or better by AM Best.

   6.5   Casualty insurance coverage equal to average wholesale cost on all furniture inventory with TFG and BANK named as an additional insured party with an Insurance Company rated "A" or better by AM Best.

   6.6   Product Liability Insurance in an amount of at least One Million Dollars with TFG named as an additional insured party, with an Insurance Company rated "A" or better by AM Best.

   6.7   An inventory and accounting system acceptable to TFG and BANK for the purpose of tracking the Amish furniture business and payments due under this Agreement.

   **PERFORMANCE:**

   7.1   If ACV (1) defaults by failing to pay when due any single installment or payment required to be made to TFG or BANK under the terms of this Consignment Agreement and such default is not cured within ten (10) days of written notice to ACV; or (2) defaults in the performance of any other covenant or agreement hereof and such default is not cured by ACV within thirty (30) days after written notice to ACV (unless the default involves a dangerous condition which shall be cured forthwith); TFG may treat such a default as a breach of this Agreement and TFG shall have any one or more of the following remedies in addition to all other rights and remedies provided at law or in equity: (i) maintain an action for any unpaid amounts; (ii) declare the entire

balance due and maintain an action for such amount; (iii) forfeit the ACV's interest this Agreement, retain all sums paid; and with or without notice and without process of law, take possession of said furniture, or any part thereof that remains unsold or in the custody of ACV, and for that purpose may enter any of the premises of ACV to search for or obtain said furniture, and consignee hereby waives any trespass or any rights of action for damages that it might or could have against consignor or its agents by reason of consignor, or its agents, procuring or attempt to procure possession of Amish furniture after forfeiture as aforesaid; or (iv) upon ACV's failure to surrender possession of the Amish furniture to TFG, maintain an action for possession of the Amish furniture under the Illinois Replevin Act.

7.2   If default is based upon the failure to pay sales taxes, insurance, liens or other charges relating to the Amish furniture as provided in this Agreement, TFG may elect to make such payments, which amounts shall become immediately due and payable by ACV to TFG, and if not paid within ten (10) days of demand shall then be payable together with 12% interest per annum.

8.   **DEFAULT, FEES:**

8.1   ACV shall pay all reasonable attorney's fees and costs incurred by TFG in enforcing the terms and provisions of this Consignment Agreement, or in defending any proceeding to which TFG is made a party defendant as a result of the acts or omissions of ACV.

8.2   All rights and remedies given to TFG, shall be distinct, separate, and cumulative, and the use of one or more thereof shall not exclude or waive any other right or remedy allowed by law, unless specifically waived in this Agreement. No waiver of any breach or default of either party hereunder shall be implied from any omission by the other party to take any action on account of any similar or different breach or default. The payment or acceptance of money after it falls due after knowledge of any breach of this agreement by TFG, or after the termination of ACV's right of possession of the Amish Furniture hereunder, or after the service of any notice, or after commencement of any suit, or after final judgment for replevin shall not reinstate, continue, or extend this Agreement nor affect any such notice, demand or suit or any right hereunder not herein expressly waived.

9.   **DELINQUENT MONTHLY PAYMENTS:**

9.1   ACV acknowledges that late payments by ACV to TFG of the amounts or other charges due hereunder will cause TFG to incur costs not contemplated by this Agreement, the exact amount of which will be extremely difficult to ascertain.

000083

Such costs include, but are not limited to, processing and accounting charges and late charges which may be imposed upon BANK by the terms of any note, and/or security agreement covering the Amish Furniture. Accordingly, if any installment or any sum due from ACV shall not be received by TFG or TFG'S designee within ten (10) days after said amount is due, then ACV shall pay to TFG a late charge equal to the greater of (i) five percent (5%) per month of such overdue amount, plus any attorney's fees incurred by TFG by reason of ACV's failure to pay and/or other charges due hereunder; or (ii) One Hundred Dollars ($100.00). The parties hereby agree that such late charges represent a fair and reasonable estimate of the cost that TFG will incur by reason of the late payment by ACV. Acceptance of such late charges by TFG shall in no event constitute a waiver of ACV's default with respect to such overdue amount, nor prevent TFG from exercising any of the other rights or remedies granted hereunder.

10. **SEVERABILITY:**

10.1 Any provisions of this Consignment Agreement which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision hereof, and such other provisions shall remain in full force and effect.

11. **WAIVER:**

11.1 The waiver by TFG of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition of any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of payment hereunder by TFG shall not be deemed to be a waiver of any preceding breach by ACV of any term, covenant or condition of this Agreement, other than the failure of ACV to pay the particular delinquency so accepted, regardless of the TFG'S knowledge of such preceding breach at the time of acceptance of such delinquent payment.

12. **NOTICES:**

12.1 All notices and demands which may, or are required to be given by either party to the other hereunder, shall be in writing. All notices and demands by the TFG to the ACV shall be sent by United States Certified or Registered mail, postage prepaid, addressed to ACV at the business address, or to such other places as the ACV may from time to time designate in writing to the TFG or may be personally served upon ACV. All notices and demands by ACV to TFG shall be sent by United States Certified or Registered Mail, postage prepaid, addressed to TFG, 2220 Marquette Road, Peru, IL or to such other person or place or persons or places as the TFG may from time to time designate in writing to the ACV. All notices shall be effective as of the date of receipt or certification. Delivery may also be made by an established national overnight delivery service (such as Federal Express).

000084

13. MARGINAL HEADINGS:

   13.1   The marginal headings and titles to the Paragraphs of this Agreement are not a part of the Agreement and shall have no effect upon the construction or interpretation of any part hereof.

14. TIME:

   14.1   Time is of the essence in this Consignment Agreement and each and all of its provisions.

15. SUCCESSORS AND ASSIGNS; BINDING EFFECT:

   15.1   The covenants and conditions herein contained shall, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of the parties hereto.

   15.2   ACV may not assign its interest, rights or obligations herein without the consent of TFG.

16. SUBORDINATION:

   16.1   Upon the request of TFG, ACV herewith subordinates or will subordinate its rights hereunder to any lien of any Security Agreement by TFG to any bank, or other lending institution now or hereafter placed against the Amish furniture. ACV shall execute upon request a document indicating said subordination. The provisions of this paragraph shall be self-operative and no further instrument of subordination shall be required.

17. SURVIVAL OF REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS:

   17.1   TFG and ACV each hereby agree that their respective representations, warranties, covenants and agreements set forth herein shall survive the closing and shall thereafter be fully effective and enforceable.

18. AGENTS:

   18.1   TFG'S agent for all matters under this agreement is DICK JANKO, until ACV is notified of a different agent pursuant to paragraph 12.1.

   18.2   ACV's agent for all matters under this Agreement is JAMES STILWELL, until TFG is notified of a different agent pursuant to paragraph 12.1.

000085

19. **ENTIRE AGREEMENT:**

    19.1  This Consignment Agreement contains the entire agreement of the parties hereto with respect to the matters covered hereby, and no other agreement, statement or promise made by any party hereto, or to any employee, officer or agent of any party hereto, which is not contained herein, shall be binding or valid.

This Agreement is made __17__ day, of __November__, 2000.

ACV:                                            TFG:

AMISHLAND COUNTRY VILLAGE, INC.,
an Illinois Corporation

TUSCOLA FURNITURE GROUP, LLC.,
An Illinois Limited Liability Company,
By its manager: JANKO FINANCIAL GROUP, L.L.C., An Limited Liability Company,

BY: __[signature]__
Printed: JAMES STILLWELL
Its: President

BY: __[signature]__
RICHARD JANKO, Authorized Member
2220 Marquette Road
Peru, IL 61354

JANKO\AMISHLND-TFG.AGR3SA

000086