E-FILED
Monday, 02 April, 2007  03:39:33 PM
Clerk, U.S. District Court, ILCD

PO Box 401
Milwaukee  WI  53201 0401
888 653 5463

# THE OLD LINE LIFE Insurance Company of America

## POLICY DELIVERY RECEIPT

Contract/Certificate Number: _____ 2604663 _____

Owner: _____ MARGARET STILWELL _____

**My life or annuity contract/certificate has been delivered to me.**

Date: _____

Owner Signature: _____

**IMPORTANT NOTICE:**   **The laws of your state may require the completed Policy Delivery Receipt be returned to the Insurance Company.**



EXHIBIT
A1

EXHIBIT
1

# AMERICAN GENERAL LIFE INSURANCE COMPANY

MARGARET STILWELL
218 N IOWA STREET
ATWOOD IL   61913

Company: OLD LINE LIFE INSURANCE COMPANY
Policy Number: 2604663
Insured or Annuitant: MARGARET STILWELL

## MERGER CERTIFICATE

This certificate has been issued as a result of a merger on March 31, 2003 of:

**THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA,** a Wisconsin insurance corporation
(Old Line Life);

Into

**AMERICAN GENERAL LIFE INSURANCE COMPANY,** a Texas insurance corporation (American General
Life), the surviving company.

This is to certify that American General Life hereby assumes all liability for the insurance policy,
certificate or annuity contract identified above issued by Old Line Life (or any predecessor company) the
same as if it had been issued originally by American General Life. Benefits under the policy, certificate
or annuity contract identified above will not change as a result of this merger.

This certificate is effective March 31, 2003.

Signed at the Home Office of American General Life Insurance Company,

_Elizabeth M. Tuel_
Secretary

_[signature]_
President

### IMPORTANT

This certificate becomes a part of your policy, certificate or annuity contract, and should be attached
thereto. All inquiries should be directed to American General Life Insurance Company, 2727-A Allen
Parkway, Houston, Texas 77019 (Mailing Address: P.O.Box 4373, Houston, TX 77210-4373).

**FOR INFORMATION OR TO MAKE A COMPLAINT, CALL US AT 1-800-937-2351.**

AGLC 8204-IL

# AMERICAN GENERAL
## FINANCIAL GROUP

THE OLD LINE LIFE  INSURANCE COMPANY OF AMERICA
*Member American General Financial Group*
P.O. Box 401
Milwaukee, Wisconsin 53201-0401
888/653-5463

## CHECKBOOK REMINDER
### (Please substitute for any previous slip referring to this policy)

| (Name of Insured)<br>JAMES E STILWELL | (Policy)<br>2604663 |
|---|---|

Please remember to deduct $ _1,780.63_ on the ___27___ of each billing period. Your premium will be automatically paid by the Pre-Authorized Check Plan premium.

**Notice:**   If you change your checking account to another bank, please complete the form below and mail immediately to the address shown.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**AUTHORIZATION TO HONOR PRE-AUTHORIZED PAYMENTS DRAWN AND PAYABLE TO:**

The OLD LINE LIFE Insurance Company of America                ATTACH VOIDED CHECK TO COMPLETED FORM

As a convenience to me, I hereby request and authorize you, or your Agent Bank, to initiate debit entries on my checking account maintained at the bank named below hereof for the periodic payment to the company named above, hereinafter called COMPANY, of premiums due and/or loan repayment on the policy(ies) shown below, and, if a mutual fund program is indicated below, to the broker/dealer or its nominee or to the funds shown below for mutual fund subscription payments, and if a savings and loan savings account is indicated below, to the savings and loan association shown below for deposit to the dedicated savings account and if other amounts are designated, to the designated payee.

**It is agreed that:**

1. Debit entries shall be drawn on or about the dates on which payments are due.
2. The COMPANY shall incur no liability by reason of the dishonor of any such debit entries.
3. Any requirement for giving notice of premium due on the insurance policies shall be waived as long as this plan is in effect.
4. This authorization shall not become effective unless and until the insurance policies are approved and shall relate only to insurance premiums, policy loan repayment, mutual fund subscription payments or deposits to savings accounts falling due on or after the issue date of said insurance policies.
5. This plan shall continue in effect unless and until terminated by COMPANY or me by thirty (30) days written notice to the other party. COMPANY may terminate the plan immediately if any debit entries are not paid upon presentation.
6. Amounts drawn shall be distributed by Agent Bank to COMPANY, or the funds or savings and loan associations named hereon within fifteen (15) days after presentation of debit entries to bank depositor named hereon.
7. This service shall apply to policies and fund accounts listed hereon.

This authorization is applicable (please check premium payment desired) to the following:

| POLICY NUMBERS | NAME OF INSURED | MONTHLY | QUARTERLY | SEMI-ANNUAL | ANNUAL |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Expressly recognizing that the premiums on the above policy(ies) are due in accordance with the provision therein and that the COMPANY hereby in no way waives or modifies the premium due date or any other terms of the policy(ies).

I request that debit entries be drawn under this authority on the _____ day of each month a premium is due. If no date is indicated, debit entries will be drawn on the due date, or earliest due date of the policy(ies).

NAME OF BANK _____

ADDRESS _____

| | CITY | STATE | ZIP CODE |
|---|---|---|---|

| ACCOUNT NO. | DATE | SIGNATURE OF DEPOSITOR AS IT APPEARS ON BANK RECORDS |
|---|---|---|

# Finding a Low Cost Policy

After you have decided which kind of life insurance fits your needs, look for a good buy. Your chances of finding a good buy are better if you use two types of index numbers that have been developed to aid in shopping for life insurance. One is called the "Surrender Cost Index" and the other is the "Net Payment Cost Index". It will be worth your time to try to understand how these indexes are used, but in any event, use them only for comparing the relative costs of similar policies. *LOOK FOR POLICIES WITH LOW COST INDEX NUMBERS.*

## What is Cost?

"Cost" is the difference between what you pay and what you get back. If you pay a premium for life insurance and get nothing back, your cost for the death protection is the premium. If you pay a premium and get something back later on, such as a cash value, your cost is smaller than the premium.

The cost of some policies can also be reduced by dividends; these are called "participating" policies. Companies may tell you what their current dividends are, but the size of future dividends is unknown today and cannot be guaranteed. Dividends actually paid are set each year by the company.

Some policies do not pay dividends. These are called "guaranteed cost" or "non-participating" policies. Every feature of a guaranteed cost policy is fixed so that you know in advance what your future cost will be.

The premiums and cash values of a participating policy are guaranteed, but the dividends are not. Premiums for participating policies are typically higher than for guaranteed cost policies, but the cost to you may be higher or lower, depending on the dividends actually paid.

## WHAT ARE COST INDEXES?

In order to compare the cost of policies, you need to look at:

1. Premiums
2. Cash values
3. Dividends

Cost indexes use one or more of these factors to give you a convenient way to compare relative costs of similar policies. When you compare costs, an adjustment must be made to take into account that money is paid and received at different times. It is not enough to just add up the premiums you will pay and to subtract the cash values and dividends you expect to get back. These indexes take care of the arithmetic for you. Instead of having to add, subtract, multiply and divide many numbers yourself, you just compare the index numbers which you can get from the life insurance agents and companies:

1. *Life Insurance Surrender Cost Index* - This index is useful if you consider the level of the cash values to be of primary importance to you. It helps you compare costs if at some future point in time, such as 10 or 20 years, you were to surrender the policy and take its cash value.

2. *Life Insurance Net Payment Cost Index* - This index is useful if your main concern is the benefits that are to be paid at your death and if the level of cash values are of secondary importance to you. It helps you compare costs at some future point in time, such as 10 or 20 years, if you continue paying premiums on your policy and do not take its cash value.

\*\*\*

There is another number called the Equivalent Level Annual Dividend. It shows the part dividends play in determining the cost index of a participating policy. Adding a policy's Equivalent Level Annual Dividend to its cost index allows you to compare total costs of similar policies before deducting dividends. However, if you

make any cost comparisons of a participating policy with a non-participating policy, remember that the total cost of the participating policy will be reduced by dividends, but the cost of the non-participating policy will not change.

## HOW DO I USE COST INDEXES?

The most important thing to remember when using cost indexes is that a policy with a smaller index number is generally a better buy than a comparable policy with a larger index number. The following rules are also important:

1. Cost comparisons should only be made between similar plans of life insurance. Similar plans are those which provide essentially the same basic benefits and require premium payments for approximately the same period of time. The closer policies are to being identical, the more reliable the cost comparison will be.

2. Compare index numbers only for the kind of policy for your age and for the amount you intend to buy. Since no one company offers the lowest cost for *all* types of insurance at *all* ages and for *all* amounts of insurance, it is important that you get the indexes for the actual policy, age and amount which you intend to buy. Just because a "shoppers guide" tells you that one company's policy is a good buy for a particular age and amount, you should not assume that all of the company's policies are equally good buys.

3. Small differences in index numbers could be offset by other policy features, or differences in the quality of service you may expect from the company or its agent. Therefore, when you find small differences in cost indexes, your choice should be based on something other than cost.

4. In any event, you will need other information on which to base your purchase decision. Be sure you can afford the premiums, and that you understand its cash values, dividends and death benefits. You should also make a judgement on how well the life insurance company or agent will provide service in the future to you as a policyholder.

5. These life insurance cost indexes apply to new policies and should not be used to determine whether you should drop a policy you have already owned for awhile in favor of a new one. If such a replacement is suggested, you should ask for information from the company which issued the old policy before you take action.

## Important Things to Remember—A Summary

The first decision you must make when buying a life insurance policy is choosing a policy whose benefits and premiums most closely meet your needs and ability to pay. Next, find a policy which is also a relatively good buy. If you compare Surrender Cost Indexes and Net Payment Cost Indexes of similar competing policies, your chances of finding a relatively good buy will be better than if you do not shop. *REMEMBER, LOOK FOR POLICIES WITH LOWER COST INDEX NUMBERS.* A good life insurance agent can help you choose the amount of life insurance and kind of policy you want and will give you cost indexes so that you can make cost comparisons of similar policies.

Don't buy life insurance unless you intend to stick with it. A policy which is a good buy when held for 20 years can be very costly if you quit during the early years of the policy. If you surrender such a policy during the first few years, you may get little or nothing back and much of your premium may have been used for company expenses.

Read your new policy carefully, and ask the agent or company for an explanation of anything you do not understand. Whatever you decide now, it is important to review your life insurance program every few years to keep up with any changes in your income and responsibilities.

STATEMENT OF POLICY COST AND BENEFIT INFORMATION

LTG SERIES 10 YR
RTG10

THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA
P.O. BOX 401
MILWAUKEE, WI 53201-0401

POLICY NO    2604663

INSURED    JAMES E STILWELL

AGE    44    DEBBIE    NO CITY

| POLICY YEAR | ANNUAL PREMIUM (CURRENT RATES) | GUARANTEED CASH SURRENDER VALUE | GUARANTEED DEATH PAYMENT BEGIN. OF YR. |
|---|---|---|---|
| 1 | 20350.00 | | 4000000 |
| 2 | 20350.00 | | 4000000 |
| 3 | 20350.00 | | 4000000 |
| 4 | 20350.00 | | 4000000 |
| 5 | 20350.00 | | 4000000 |
| 6 | 20350.00 | | 4000000 |
| 7 | 20350.00 | | 4000000 |
| 8 | 20350.00 | | 4000000 |
| 9 | 20350.00 | | 4000000 |
| 10 | 20350.00 | | 4000000 |
| 11 | 127510.00 | | |
| 12 | 142990.00 | | |
| 13 | 161950.00 | | |
| 14 | 183430.00 | | |
| 15 | 207430.00 | | |
| 16 | 235030.00 | | |
| 17 | 266470.00 | | |
| 18 | 302470.00 | | |
| 19 | 343560.00 | | |
| 20 | 385870.00 | | |
| AT AGE 62 | 342550.00 | | 4000000 |
| AT AGE 65 | 479710.00 | | 4000000 |

LIFE INSUR. NET PAYMENT COST INDEX
10TH YR.**    5.09
20TH YR.**    24.48

LIFE INSUR. SURRENDER COST INDEX
10TH YR.**    5.09
20TH YR.**    24.48

**AN EXPLANATION OF THE INTENDED USE OF THE LIFE INSURANCE COST INDEXES IS PROVIDED IN THE LIFE INSURANCE BUYERS GUIDE.

THE COLUMNS OF THIS REPRESENTATION DO NOT REFLECT THE FACT THAT, BECAUSE OF INTEREST, A DOLLAR IN THE FUTURE HAS LESS VALUE THAN A DOLLAR TODAY.

IMPORTANT NOTE - DURING THE THIRTY DAY PERIOD FROM THE DATE OF DELIVERY OF THIS POLICY, IT MAY BE SURRENDERED TO THE COMPANY FOR CANCELLATION AND A FULL REFUND OF ANY MONEY PAID.

11/12/2003

IL

STATEMENT OF POLICY COST AND BENEFIT INFORMATION

LTG SERIES 10 YR
RTG10

THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA
P.O. BOX 401
MILWAUKEE, WI 53201-0401

POLICY NO    2604663

INSURED    JAMES E STILWELL

AGE    44

DEBBIE

NO CITY

| POLICY YEAR | ANNUAL PREMIUM (MAXIMUM RATES) | GUARANTEED CASH SURRENDER VALUE | GUARANTEED DEATH PAYMENT BEGIN. OF YR. |
|---|---|---|---|
| 1 | 20350.00 | | 4000000 |
| 2 | 20350.00 | | 4000000 |
| 3 | 20350.00 | | 4000000 |
| 4 | 20350.00 | | 4000000 |
| 5 | 20350.00 | | 4000000 |
| 6 | 20350.00 | | 4000000 |
| 7 | 20350.00 | | 4000000 |
| 8 | 20350.00 | | 4000000 |
| 9 | 20350.00 | | 4000000 |
| 10 | 20350.00 | | 4000000 |
| 11 | 165910.00 | | 4000000 |
| 12 | 189590.00 | | 4000000 |
| 13 | 210550.00 | | 4000000 |
| 14 | 238510.00 | | 4000000 |
| 15 | 269710.00 | | 4000000 |
| 16 | 305470.00 | | 4000000 |
| 17 | 346390.00 | | 4000000 |
| 18 | 393190.00 | | 4000000 |
| 19 | 445270.00 | | 4000000 |
| 20 | 501790.00 | | 4000000 |
| AT AGE 62 | 445270.00 | | 4000000 |
| AT AGE 65 | 637710.00 | | 4000000 |

| | LIFE INSUR. NET PAYMENT COST INDEX | | LIFE INSUR. SURRENDER COST INDEX | |
|---|---|---|---|---|
| | 10TH YR.** | 20TH YR.** | 10TH YR.** | 20TH YR.** |
| | 5.09 | 30.88 | 5.09 | 30.88 |

**AN EXPLANATION OF THE INTENDED USE OF THE LIFE INSURANCE COST INDEXES IS PROVIDED IN THE LIFE INSURANCE BUYERS GUIDE.

THE COLUMNS OF THIS REPRESENTATION DO NOT REFLECT THE FACT THAT, BECAUSE OF INTEREST, A DOLLAR IN THE FUTURE HAS LESS VALUE THAN A DOLLAR TODAY.

IMPORTANT NOTE - DURING THE THIRTY DAY PERIOD FROM THE DATE OF DELIVERY OF THIS POLICY, IT MAY BE SURRENDERED TO THE COMPANY FOR CANCELLATION AND A FULL REFUND OF ANY MONEY PAID.

IL

11/12/2003

AGENCY: 834
AGENT : X DEBBIE
MAILTO: NONE
POLICY: 2604663

DEBBIE

Ill..l..l..l..l..l..ll..l..l..l..l

NO AGENT ADDRESS FOUND

# THE OLD LINE LIFE Insurance Company of America

1200 North Mayfair Road, Suite 300 • PO Box 401 • Milwaukee WI  53201-0401 • 800-487-5433

THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA, A STOCK COMPANY (REFERRED TO IN THIS POLICY AS WE/US/OUR) WILL PAY THE BENEFITS OF THIS POLICY SUBJECT TO ITS PROVISIONS. THIS PAGE AND THE PAGES THAT FOLLOW ARE PART OF THIS POLICY.

SIGNED AT OUR HOME OFFICE AT 1200 NORTH MAYFAIR ROAD, SUITE 300, P.O. BOX 401, MILWAUKEE, WISCONSIN  53201 0401.

_General Counsel_                    _President_

RIGHT TO RETURN POLICY

THE OWNER MAY RETURN THIS POLICY TO US AT THE ABOVE ADDRESS OR TO THE AGENT FROM WHOM IT WAS PURCHASED WITHIN 30 DAYS AFTER RECEIPT.  THIS POLICY WILL THEN BE CANCELLED AS OF ITS DATE OF ISSUE AND ANY PREMIUM PAID WILL BE REFUNDED.

NW                                                          B-7133
B1101000-1033-0501

NOTICE PAGE

# ILLINOIS
## LIFE AND HEALTH INSURANCE GUARANTY
## ASSOCIATION LAW

Note: The terms "policy" and "Policyholder" as used in this Notice shall be read to mean "certificate" and "Certificateholder", respectively, as applicable to persons insured under a group insurance plan.

Residents of Illinois who purchase health insurance, life insurance, and annuities should know that the insurance companies licensed in Illinois to write these types of insurance are members of the Illinois Life and Health Insurance Guaranty Association. The purpose of this Guaranty Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its policy obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the covered claims of policyholders that live in Illinois (and their payees, beneficiaries, and assignees) and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however, as noted on the other side of this page.

### DISCLAIMER

The Illinois Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE FOR YOUR POLICY. Even if coverage is provided, there are substantial limitations and exclusions. Coverage is generally conditioned on continued residence in Illinois. Other conditions may also preclude coverage.

You should not rely on availability of coverage under the Life and Health Insurance Guaranty Association Law when selecting an insurer. Your insurer and agent are prohibited by law from using the existence of the Association or its coverage to sell you an insurance policy.

The Illinois Life and Health Insurance Guaranty Association or the Illinois Department of Insurance will respond to any questions you may have which are not answered by this document. Policyholders with additional questions may contact:

Illinois Life and Health Insurance Guaranty Association
8420 West Bryn Mawr Avenue
Chicago, Illinois 60631
(312) 714-8050

Illinois Department of Insurance
320 West Washington Street
4th Floor
Springfield, Illinois 62767
(217) 782-4515

### SUMMARY OF GENERAL PURPOSES AND
### CURRENT LIMITATIONS OF COVERAGE

The Illinois law that provides for this safety-net coverage is called the Illinois Life and Health Insurance Guaranty Association Law ("Law") [215 ILCS 5/531.01, et seq.]. The other side of this page contains a brief summary of the Law's coverages, exclusions and limits. This summary does not cover all provisions, nor does it in any way change anyone's rights or obligations under the Law or the rights or obligations of the Guaranty Association. If you have obtained this document from an agent in connection with the purchase of a policy, you should be aware that its delivery to you does not guarantee that your policy is covered by the Guaranty Association.

(continued on next page)

NP-1A IL

## NOTICE PAGE (Continued)

If any complaints arise regarding the insurance provided by this policy, you may contact us as follows:

American General Insurance Service Center
Correspondence Unit
P.O. Box 35844
Dallas, Texas 75235-0844

Toll Free Telephone Number: 1-800-487-5433
Within Dallas Area Code 214: 654-6300

If you are unable to obtain the information you need from us, you may write to the Department of Insurance at the following address:

Illinois Department of Insurance
Consumer Division
Springfield, Illinois 62767

## TABLE OF CONTENTS

| PAGE | TITLE OF PROVISION |
|------|---------------------|
| 7 | ASSIGNMENT |
| 7 | BENEFICIARY |
| 7 | CHANGE OF OWNER OR BENEFICIARY |
| 7 | CLAIMS OF CREDITORS |
| 7 | CONTRACT |
| 7 | CORRESPONDENCE |
| 5 | DEFINITIONS |
| 6 | EXCHANGE OPTIONS |
| 5 | GRACE PERIOD |
| 3 | INCONTESTABILITY |
| 7 | MISSTATEMENT OF AGE OR SEX |
| 5 | NONPARTICIPATING |
| 7 | OWNER |
| 3 | PAYMENT OF PROCEEDS |
| 7 | POLICY SETTLEMENT |
| 2 | POLICY SPECIFICATIONS |
| 5 | PREMIUM PAYMENT |
| 5 | REINSTATEMENT |
| 5 | RENEWAL OPTION |
| 5 | RIGHT TO CHANGE PREMIUM |
| COVER | RIGHT TO RETURN POLICY |
| 2 | SCHEDULE OF BENEFITS AND PREMIUMS |
| 3 | SUICIDE |
| LAST | TABLE OF PREMIUMS |

SEE SUPPLEMENTAL BENEFIT PAGES FOR RIDERS, IF ANY

RENEWABLE LEVEL TERM LIFE POLICY -- INDETERMINATE PREMIUM
INSURANCE PAYABLE IN EVENT OF DEATH PRIOR TO EXPIRY DATE
PREMIUMS PAYABLE DURING TERM                         NO DIVIDENDS

POLICY SPECIFICATIONS

| INSURED | JAMES E STILWELL | 2604663 | POLICY NUMBER |
| FACE AMOUNT | $4,000,000 | 10/27/1998 | DATE OF ISSUE |
| PREMIUM CLASS | NON-TOBACCO RATED CLASS H | 44 | AGE AT ISSUE |

SCHEDULE OF BENEFITS AND PREMIUMS

| BENEFITS | BENEFIT AMOUNTS | ANNUAL PREMIUMS | YEARS PAYABLE |
|---|---|---|---|
| LIFE INSURANCE | $4,000,000 | $6,830.00 | 10 YEARS* |
| INITIAL EXPIRY DATE 10/27/2008 | | | |

SUBSEQUENT EXPIRY DATES WILL OCCUR AT THE END OF EACH ONE YEAR RENEWABLE TERM PERIOD. THE FINAL EXPIRY DATE IS 10/27/2049.

| PERMANENT EXTRA | | 13,520.00 | 10 YEARS |

TOTAL FIRST YEAR ANNUAL PREMIUM                $20,350.00

PREMIUMS OTHER THAN ANNUAL ARE A PERCENTAGE OF THE ANNUAL PREMIUM. PREMIUMS ARE PAYABLE AT 01 MONTH INTERVALS FROM 10/27/1998.   THE FIRST INTERVAL PREMIUM IS $1,780.63.

* RENEWAL PREMIUMS ARE SHOWN ON THE LAST PAGE.  ON THE  TENTH POLICY ANNIVERSARY AND ANY LATER POLICY ANNIVERSARY WE HAVE A LIMITED RIGHT TO CHANGE THE PREMIUM.  SEE THE RIGHT TO CHANGE PREMIUM PROVISION.

THIS POLICY MAY BE EXCHANGED FOR A NEW POLICY.  SEE THE EXCHANGE OPTIONS PROVISION.  OPTION 1 IS AVAILABLE UNTIL THE EIGHTH POLICY ANNIVERSARY, PROVIDED THE INSURED IS AGE 65 OR LESS ON THE DATE OF EXCHANGE.  THE DATE OF EXCHANGE UNDER OPTION 2 IS THE TENTH POLICY ANNIVERSARY, PROVIDED THE INSURED IS AGE 70 OR LESS.

## PAYMENT OF PROCEEDS

THE FACE AMOUNT WILL BE PAID TO THE BENEFICIARY IMMEDIATELY UPON RECEIPT OF DUE PROOF OF THE DEATH OF THE INSURED IF DEATH OCCURS PRIOR TO THE EXPIRY DATE.  IF DEATH OCCURS IN THE GRACE PERIOD OF AN UNPAID PREMIUM AN AMOUNT EQUAL TO THE PREMIUM FOR ONE MONTH WILL BE DEDUCTED FROM THE PROCEEDS.

## SUICIDE EXCLUSION

IN THE EVENT OF THE SUICIDE OF THE INSURED, WHILE SANE OR INSANE, WITHIN 2 YEARS FROM THE DATE OF ISSUE, OUR LIABILITY WILL BE LIMITED TO THE PREMIUMS PAID.

## INCONTESTABILITY

WE WILL NOT CONTEST THIS POLICY AFTER IT HAS BEEN IN FORCE DURING THE LIFETIME OF THE INSURED FOR TWO YEARS FROM THE DATE OF ISSUE.  WE WILL NOT CONTEST ANY REINSTATEMENT AFTER THE REINSTATEMENT HAS BEEN IN FORCE DURING THE LIFETIME OF THE INSURED FOR TWO YEARS.  IF WE DO CONTEST A REINSTATEMENT, WE WILL CONTEST ONLY STATEMENTS MADE IN THE REINSTATEMENT APPLICATION.

(THIS PAGE IS INTENTIONALLY LEFT BLANK.)

**Age or attained age** means the insured's age nearest birthday at the beginning of a policy year.

**Policy months, years and anniversaries.** The first policy year begins on the date of issue. Policy months, years and anniversaries will be measured from that date.

## PREMIUM PAYMENT

The first premium is due on or before delivery of this policy. Later premiums are due and payable at the intervals and for the period shown on page 2, while the insured is alive. With our consent, premiums may be paid at other intervals.

Premiums after the first are payable at our home office or to an authorized agent in exchange for a receipt signed by one of our officers.

Any premium, after the first, not paid on or before its due date will be in default. Such due date will be the date of default.

## GRACE PERIOD

A 31 day grace period, without interest charge, is allowed for the payment of each premium after the first. This policy will stay in force during this period. If the premium is not paid by the end of this period, insurance will cease.

## REINSTATEMENT

This policy may be reinstated within five years of the date of default subject to receipt of evidence of insurability satisfactory to us.

Reinstatement will also be subject to (1) payment of the premium for the grace period with interest at the rate of 6% per year compounded annually plus the premium due for the current policy month, if this policy has a renewable term period of one year, or (2) payment of all overdue premiums with interest at the rate of 6% per year compounded annually, if this policy has a renewable term period other than one year.

## NONPARTICIPATING

This policy does not pay dividends.

## RENEWAL OPTION

This policy may be renewed without evidence of insurability on each expiry date for a further term period. Renewal premiums are shown on the last page.

The first premium for a new term will be due at the end of the previous term. This policy will renew if this premium is paid within the grace period. Premiums for the new term will be due and payable at the intervals show on page 2.

No term period will extend beyond the final expiry date shown on page 2.

## RIGHT TO CHANGE PREMIUM

We reserve the right to change the premium for this policy on the policy anniversary specified on page 2 and on any later policy anniversary, subject to the following terms:

1. The premium will not exceed the applicable maximum premium shown on the last page.

2. Any change in premium will be made on a uniform basis for all insureds with the same benefits and provisions who have the same age at issue, date of issue, sex and premium class. No change in premium will occur due to any change in the insured's health or occupation.

3. Any change in premium will take effect only after 30 days' prior notice to the owner of this policy.

4. Any change in premium will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing the premium.

This provision does not apply to any rider attached to this policy.

## OWNER

The owner is as shown in the application unless changed. The owner has all rights under this policy while the insured is alive. These rights are subject to the consent of any living irrevocable beneficiary.

## BENEFICIARY

The beneficiary or beneficiaries are as shown in the application unless changed. If no beneficiary survives the insured, the owner or the estate of the owner will be the beneficiary. However, if a trust is the owner and no beneficiary survives the insured, the estate of the insured will be the beneficiary.

## CHANGE OF OWNER OR BENEFICIARY

While this policy is in force the owner may change the beneficiary or ownership by written notice to us. When we record the change, it will take effect as of the date the owner signed the notice, subject to any payment we make or other action we take before recording.

## CORRESPONDENCE

Any request, notice or proof shall be filed with our home office.

## ASSIGNMENT

No assignment of this policy will be binding on us until filed with us in writing and recorded by us. No assignment will affect any payment we made before we recorded the assignment. We will not be responsible for the validity of an assignment.

All rights of the owner and any revocable beneficiary are subject to the rights of any assignee on record with us.

## POLICY SETTLEMENT

In any settlement we may require the return of this policy.

## THE CONTRACT

This policy, including any riders and endorsements, the original application and any supplemental applications and declarations, is the entire contract.

All statements in an application are representations and not warranties. No statement will be used to void this policy or to contest a claim unless it appears in an application or declaration which is attached to and made part of this policy.

This policy may not be changed, nor may any of our rights or requirements be waived, except in writing by one of our authorized officers.

## MISSTATEMENT OF AGE OR SEX

If the insured's age or sex has been misstated, any death benefit payable by us will be what the premiums paid would have bought at the insured's correct age and sex.

## CLAIMS OF CREDITORS

All payments under this policy are exempt from the claims of creditors to the extent permitted by law. Payments may not be assigned or withdrawn without our consent before becoming payable.

The Payment Options of the policy to which this endorsement is attached will be as follows:

## PAYMENT OPTIONS

The term "annuitant/insured" as used in the following paragraph means the person named in the Policy Specifications as annuitant or insured, as the case may be.

Proceeds of less than $5,000 will be paid in one lump sum. Proceeds of $5,000 or more may be paid under an option. When proceeds are placed under an option the payee will receive a settlement contract. The date of the contract will be the date the proceeds become payable. The owner may choose the option only while the annuitant/insured is living. After the death of the annuitant/insured, the beneficiary may choose the option if proceeds are payable in one sum. Payment options for death proceeds must be chosen within six months after the annuitant's/insured's death. Payment options for other proceeds must be chosen within two months of the date they are payable. All elections must be filed with us in writing. Payments may be requested at 1, 3, 6 or 12 month intervals. Each payment must be at least $50. Each payee must be a living person receiving payments in his own right.

The interest rate for options 1, 2 and 3 will be declared by us each year. This rate will never be less than 3% per year. For options 1 and 3 any interest in excess of 3% will be used to increase payment amounts; for option 2 any excess interest will be used to lengthen the payment period.

For options 4, 5, 6 and 7 the payments will be based on rates declared by us from time to time. These rates will be 3 1/2% less than the published rates in effect for immediate annuities on the date of the settlement contract. Payments under these rates will never be less than the amount according to the tables of minimum monthly income in this endorsement. The rates in the tables are derived from a projection of the 1983 Table "a", and an annual interest rate of 3.00%.

**Option 1. Interest.** We will hold the proceeds on deposit. Interest will be paid while the payee is living. Sums of $500 or more may be withdrawn up to four times a year.

**Option 2. Specified Income.** We will pay a stated income amount until the proceeds, with interest on the unpaid balance, are used up. The income each year may not be less than 10% of the proceeds.

**Option 3. Income for Specified Period.** We will pay an income for a stated period, up to 30 years.

**Option 4. Life Income with Guaranteed Period.** We will pay an income for a guaranteed period and for the rest of the payee's life. The guaranteed period may be 10, 15 or 20 years.

**Option 5. Life Income without Guaranteed Period.** We will pay an income for the payee's lifetime. Payments will end at the death of the payee. However, if the payee dies within one year of the date of the settlement contract, payments will be continued to a contingent payee until 10 years from the date of the settlement contract.

**Option 6. Life Income with Installment Refund.** We will pay an income for a guaranteed period and for the rest of the payee's life. The guaranteed period is the period required for the sum of income payments to equal the proceeds applied.

**Option 7. Joint Life Income with 2/3 to Survivor.** We will pay an income while both payees are living. When one payee dies we will pay 2/3 of the income for the rest of the survivor's life. However, if one payee dies within one year from the date of the settlement contract, income will be paid to the survivor thereafter as if the survivor had chosen option 5 on the date of the settlement contract.

**Additional Option to Buy Single Premium Immediate Life Annuity at Reduced Rate.** If proceeds of at least $5,000 are applied under option 4, 5, 6 or 7, additional money may be used to buy a single premium immediate life annuity. The cost of this annuity will be 3 1/2% less than the then published rate. The monthly income from this annuity together with the monthly income from option 4, 5, 6 or 7 may not exceed 3 times the monthly income which could be bought solely by applying the policy proceeds. Written request must be made within 31 days from the date proceeds are payable.

(Continued on page 2)

## TABLE OF MINIMUM MONTHLY INCOME FOR FEMALE PAYEES UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

### OPTION 3 — INCOME FOR SPECIFIED PERIOD

| Year | Income |
|---|---|
| 1 | $ 84.47 |
| 2 | 42.86 |
| 3 | 28.99 |
| 4 | 22.06 |
| 5 | 17.91 |
| 6 | 15.14 |
| 7 | 13.16 |
| 8 | 11.68 |
| 9 | 10.53 |
| 10 | 9.61 |
| 11 | 8.86 |
| 12 | 8.24 |
| 13 | 7.71 |
| 14 | 7.26 |
| 15 | 6.87 |
| 16 | 6.53 |
| 17 | 6.23 |
| 18 | 5.96 |
| 19 | 5.73 |
| 20 | 5.51 |
| 21 | 5.32 |
| 22 | 5.15 |
| 23 | 4.99 |
| 24 | 4.84 |
| 25 | 4.71 |
| 26 | 4.59 |
| 27 | 4.48 |
| 28 | 4.37 |
| 29 | 4.27 |
| 30 | 4.18 |

| AGE AT FIRST PAYMENT | OPTION 4 — LIFE INCOME WITH GUARANTEED PERIOD | | | OPTION 5 — LIFE INCOME WITHOUT GUARANTEED PERIOD | OPTION 6 — LIFE INCOME WITH INSTALLMENT REFUND |
|---|---|---|---|---|---|
| | 10 Years | 15 Years | 20 Years | | |
| 5 and under | $ 2.72 | $ 2.72 | $ 2.72 | $ 2.72 | $ 2.79 |
| 6 | 2.73 | 2.73 | 2.73 | 2.73 | 2.79 |
| 7 | 2.74 | 2.74 | 2.74 | 2.74 | 2.79 |
| 8 | 2.75 | 2.75 | 2.75 | 2.75 | 2.79 |
| 9 | 2.76 | 2.76 | 2.76 | 2.76 | 2.79 |
| 10 | 2.77 | 2.77 | 2.77 | 2.77 | 2.79 |
| 11 | 2.78 | 2.78 | 2.78 | 2.78 | 2.79 |
| 12 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 |
| 13 | 2.80 | 2.80 | 2.80 | 2.80 | 2.80 |
| 14 | 2.81 | 2.81 | 2.81 | 2.81 | 2.81 |
| 15 | 2.82 | 2.82 | 2.82 | 2.82 | 2.82 |
| 16 | 2.83 | 2.83 | 2.83 | 2.83 | 2.83 |
| 17 | 2.85 | 2.85 | 2.84 | 2.85 | 2.84 |
| 18 | 2.86 | 2.86 | 2.86 | 2.86 | 2.86 |
| 19 | 2.87 | 2.87 | 2.87 | 2.87 | 2.87 |
| 20 | 2.89 | 2.89 | 2.89 | 2.89 | 2.88 |
| 21 | 2.90 | 2.90 | 2.90 | 2.90 | 2.90 |
| 22 | 2.92 | 2.92 | 2.92 | 2.92 | 2.91 |
| 23 | 2.93 | 2.93 | 2.93 | 2.93 | 2.93 |
| 24 | 2.95 | 2.95 | 2.95 | 2.95 | 2.95 |
| 25 | 2.97 | 2.97 | 2.96 | 2.97 | 2.96 |
| 26 | 2.98 | 2.98 | 2.98 | 2.98 | 2.98 |
| 27 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 |
| 28 | 3.02 | 3.02 | 3.02 | 3.02 | 3.02 |
| 29 | 3.04 | 3.04 | 3.04 | 3.04 | 3.04 |
| 30 | 3.06 | 3.06 | 3.06 | 3.06 | 3.06 |
| 31 | 3.09 | 3.08 | 3.08 | 3.09 | 3.08 |
| 32 | 3.11 | 3.11 | 3.11 | 3.11 | 3.10 |
| 33 | 3.13 | 3.13 | 3.13 | 3.13 | 3.13 |
| 34 | 3.16 | 3.16 | 3.15 | 3.16 | 3.15 |
| 35 | 3.18 | 3.18 | 3.18 | 3.18 | 3.18 |
| 36 | 3.21 | 3.21 | 3.21 | 3.21 | 3.20 |
| 37 | 3.24 | 3.24 | 3.24 | 3.24 | 3.23 |
| 38 | 3.27 | 3.27 | 3.27 | 3.27 | 3.26 |
| 39 | 3.30 | 3.30 | 3.30 | 3.30 | 3.29 |
| 40 | 3.34 | 3.33 | 3.33 | 3.34 | 3.32 |
| 41 | 3.37 | 3.37 | 3.36 | 3.37 | 3.35 |
| 42 | 3.41 | 3.40 | 3.40 | 3.41 | 3.39 |
| 43 | 3.44 | 3.44 | 3.43 | 3.45 | 3.42 |
| 44 | 3.49 | 3.48 | 3.47 | 3.49 | 3.46 |
| 45 | 3.53 | 3.52 | 3.51 | 3.53 | 3.50 |
| 46 | 3.57 | 3.57 | 3.55 | 3.58 | 3.54 |
| 47 | 3.62 | 3.61 | 3.60 | 3.62 | 3.58 |
| 48 | 3.67 | 3.66 | 3.64 | 3.67 | 3.63 |
| 49 | 3.72 | 3.71 | 3.69 | 3.73 | 3.68 |
| 50 | 3.78 | 3.76 | 3.74 | 3.78 | 3.73 |
| 51 | 3.83 | 3.82 | 3.79 | 3.84 | 3.78 |
| 52 | 3.90 | 3.88 | 3.85 | 3.90 | 3.83 |
| 53 | 3.96 | 3.94 | 3.90 | 3.97 | 3.89 |
| 54 | 4.03 | 4.00 | 3.96 | 4.04 | 3.95 |
| 55 | 4.10 | 4.07 | 4.02 | 4.12 | 4.02 |
| 56 | 4.17 | 4.14 | 4.09 | 4.19 | 4.08 |
| 57 | 4.25 | 4.22 | 4.15 | 4.28 | 4.15 |
| 58 | 4.34 | 4.29 | 4.22 | 4.36 | 4.23 |
| 59 | 4.42 | 4.37 | 4.29 | 4.46 | 4.30 |
| 60 | 4.52 | 4.46 | 4.36 | 4.56 | 4.39 |
| 61 | 4.62 | 4.55 | 4.44 | 4.66 | 4.47 |
| 62 | 4.72 | 4.64 | 4.51 | 4.78 | 4.56 |
| 63 | 4.84 | 4.74 | 4.59 | 4.90 | 4.66 |
| 64 | 4.95 | 4.84 | 4.65 | 5.03 | 4.76 |
| 65 | 5.08 | 4.95 | 4.74 | 5.17 | 4.87 |
| 66 | 5.21 | 5.06 | 4.81 | 5.31 | 4.98 |
| 67 | 5.35 | 5.17 | 4.89 | 5.47 | 5.10 |
| 68 | 5.50 | 5.28 | 4.96 | 5.65 | 5.23 |
| 69 | 5.66 | 5.40 | 5.03 | 5.83 | 5.36 |
| 70 | 5.82 | 5.52 | 5.09 | 6.03 | 5.51 |
| 71 | 6.00 | 5.64 | 5.15 | 6.25 | 5.66 |
| 72 | 6.18 | 5.75 | 5.21 | 6.49 | 5.82 |
| 73 | 6.37 | 5.87 | 5.26 | 6.74 | 5.99 |
| 74 | 6.56 | 5.98 | 5.30 | 7.02 | 6.17 |
| 75 | 6.76 | 6.09 | 5.34 | 7.33 | 6.37 |
| 76 | 6.97 | 6.19 | 5.38 | 7.65 | 6.57 |
| 77 | 7.17 | 6.29 | 5.41 | 8.01 | 6.78 |
| 78 | 7.39 | 6.38 | 5.43 | 8.40 | 7.02 |
| 79 | 7.59 | 6.46 | 5.46 | 8.82 | 7.26 |
| 80 | 7.79 | 6.53 | 5.47 | 9.28 | 7.52 |
| 81 and over | 7.99 | 6.59 | 5.49 | 9.78 | 7.79 |

MINIMUM INCOME AMOUNTS PAYABLE OTHER THAN MONTHLY WILL BE FURNISHED ON REQUEST.

### TABLE OF MINIMUM MONTHLY INCOME UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

### OPTION 7 - JOINT LIFE INCOME WITH TWO THIRDS TO SURVIVOR

| Female | 40 | 45 | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
|---|---|---|---|---|---|---|---|---|---|
| **Male** | | | | | | | | | |
| 40 | $3.35 | $3.45 | $3.55 | $3.67 | $3.80 | $3.94 | $4.10 | $4.28 | $4.47 |
| 41 | 3.37 | 3.47 | 3.58 | 3.70 | 3.83 | 3.97 | 4.14 | 4.32 | 4.51 |
| 42 | 3.39 | 3.49 | 3.60 | 3.72 | 3.86 | 4.01 | 4.18 | 4.37 | 4.56 |
| 43 | 3.41 | 3.51 | 3.62 | 3.75 | 3.89 | 4.05 | 4.22 | 4.41 | 4.61 |
| 44 | 3.42 | 3.53 | 3.65 | 3.78 | 3.92 | 4.08 | 4.26 | 4.46 | 4.67 |
| 45 | 3.44 | 3.55 | 3.67 | 3.81 | 3.96 | 4.12 | 4.31 | 4.51 | 4.72 |
| 46 | 3.46 | 3.57 | 3.70 | 3.84 | 3.99 | 4.16 | 4.35 | 4.56 | 4.78 |
| 47 | 3.48 | 3.59 | 3.72 | 3.87 | 4.03 | 4.20 | 4.40 | 4.61 | 4.84 |
| 48 | 3.50 | 3.62 | 3.75 | 3.90 | 4.07 | 4.25 | 4.45 | 4.67 | 4.90 |
| 49 | 3.52 | 3.64 | 3.78 | 3.93 | 4.10 | 4.29 | 4.50 | 4.73 | 4.97 |
| 50 | 3.54 | 3.66 | 3.80 | 3.96 | 4.14 | 4.34 | 4.55 | 4.79 | 5.04 |
| 51 | 3.56 | 3.69 | 3.83 | 4.00 | 4.18 | 4.38 | 4.61 | 4.85 | 5.11 |
| 52 | 3.58 | 3.71 | 3.86 | 4.03 | 4.22 | 4.43 | 4.66 | 4.92 | 5.19 |
| 53 | 3.60 | 3.73 | 3.89 | 4.07 | 4.26 | 4.48 | 4.72 | 4.99 | 5.27 |
| 54 | 3.62 | 3.76 | 3.92 | 4.10 | 4.31 | 4.53 | 4.78 | 5.06 | 5.35 |
| 55 | 3.65 | 3.78 | 3.95 | 4.14 | 4.35 | 4.59 | 4.85 | 5.13 | 5.43 |
| 56 | 3.67 | 3.81 | 3.98 | 4.17 | 4.39 | 4.64 | 4.91 | 5.21 | 5.52 |
| 57 | 3.69 | 3.84 | 4.01 | 4.21 | 4.44 | 4.69 | 4.98 | 5.29 | 5.62 |
| 58 | 3.72 | 3.86 | 4.04 | 4.24 | 4.48 | 4.75 | 5.05 | 5.37 | 5.72 |
| 59 | 3.74 | 3.89 | 4.07 | 4.28 | 4.53 | 4.81 | 5.12 | 5.46 | 5.82 |
| 60 | 3.76 | 3.92 | 4.10 | 4.32 | 4.58 | 4.87 | 5.19 | 5.55 | 5.93 |
| 61 | 3.79 | 3.95 | 4.13 | 4.36 | 4.62 | 4.93 | 5.27 | 5.64 | 6.04 |
| 62 | 3.82 | 3.97 | 4.17 | 4.40 | 4.67 | 4.99 | 5.34 | 5.74 | 6.16 |
| 63 | 3.84 | 4.00 | 4.20 | 4.44 | 4.72 | 5.05 | 5.42 | 5.84 | 6.28 |
| 64 | 3.87 | 4.03 | 4.24 | 4.48 | 4.77 | 5.11 | 5.51 | 5.94 | 6.41 |
| 65 | 3.90 | 4.06 | 4.27 | 4.52 | 4.82 | 5.18 | 5.59 | 6.05 | 6.54 |
| 66 | 3.92 | 4.10 | 4.31 | 4.57 | 4.88 | 5.25 | 5.68 | 6.16 | 6.68 |
| 67 | 3.95 | 4.13 | 4.34 | 4.61 | 4.93 | 5.31 | 5.76 | 6.28 | 6.83 |
| 68 | 3.98 | 4.16 | 4.38 | 4.65 | 4.98 | 5.38 | 5.85 | 6.39 | 6.98 |
| 69 | 4.01 | 4.19 | 4.42 | 4.70 | 5.04 | 5.45 | 5.94 | 6.51 | 7.13 |
| 70 | 4.04 | 4.23 | 4.45 | 4.74 | 5.09 | 5.52 | 6.03 | 6.63 | 7.29 |
| 71 | 4.07 | 4.26 | 4.49 | 4.78 | 5.14 | 5.59 | 6.12 | 6.76 | 7.45 |
| 72 | 4.10 | 4.29 | 4.53 | 4.83 | 5.20 | 5.66 | 6.22 | 6.88 | 7.62 |
| 73 | 4.13 | 4.33 | 4.57 | 4.87 | 5.25 | 5.73 | 6.31 | 7.01 | 7.80 |
| 74 | 4.16 | 4.36 | 4.61 | 4.92 | 5.31 | 5.80 | 6.40 | 7.14 | 7.97 |
| 75 | 4.19 | 4.39 | 4.65 | 4.96 | 5.36 | 5.87 | 6.50 | 7.27 | 8.15 |
| 76 | 4.22 | 4.43 | 4.68 | 5.01 | 5.42 | 5.94 | 6.59 | 7.40 | 8.33 |
| 77 | 4.25 | 4.46 | 4.72 | 5.05 | 5.47 | 6.00 | 6.68 | 7.53 | 8.52 |
| 78 | 4.28 | 4.49 | 4.76 | 5.10 | 5.52 | 6.07 | 6.77 | 7.66 | 8.71 |
| 79 | 4.31 | 4.53 | 4.80 | 5.14 | 5.58 | 6.14 | 6.87 | 7.79 | 8.89 |
| 80 | 4.34 | 4.56 | 4.83 | 5.18 | 5.63 | 6.21 | 6.96 | 7.92 | 9.08 |

MINIMUM INCOME AMOUNTS FOR AGES NOT SHOWN AND MINIMUM INCOME AMOUNTS
PAYABLE OTHER THAN MONTHLY WILL BE FURNISHED ON REQUEST.

**Application for life insurance to:**
THE OLD LINE LIFE Insurance Company America

260 4663

**PART A**

**COMPLETE FOR ALL POLICIES (Please Print) — Questions 1a through g apply to Proposed Insured**
(referred to in this application as we/us/our)

**1. a. NAME** first middle last
JAMES E Stilwell ☒ Male ☐ Female

**b.** ☒ Single ☐ Married ☐ Divorced ☐ Widowed ☐ Separated

**c. DATE OF BIRTH** month day year 10 07 54   **d. AGE** 43   **e. BIRTHPLACE** state IL county USA

**1. SOCIAL SECURITY OR TAX NO.** 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

**g. HOME TELEPHONE NO.** 217 578-3132

**2. SEND ALL MAIL TO OWNER AT ADDRESS IN** ☐ 3a ☐ 3b ☐ 9

**3. a. RESIDENCE ADDRESS OF PROPOSED INSURED**
No. & Street 218 N. Iowa B
City Atwood   State IL   Zip 61913
How long at this address? _____ yrs. Previous Addresses (5 Yrs )

QUESTIONS 3b & c APPLY TO PROPOSED INSURED IF 15 OR OVER. TO OWNER OR PAYOR IF PROPOSED INSURED UNDER AGE 15.

**b. BUSINESS ADDRESS** with present employer _____ yrs.
Employer Self Employed Entrepreneur
No. & Street 102 N. MAIN
City Atwood   State IL   Zip 61913
Nature of Business Antiques, Furniture, Stereo, meat

**c. OCCUPATION** (All, if more than one) Food Service, Restaurant Owner
Duties (Describe)

**4. HAS ANY PERSON PROPOSED FOR INSURANCE:**

| | Yes | No |
|---|---|---|
| a. smoked cigarettes during the past 12 months? | ☐ | ☒ |
| b. smoked pipes or cigars during the past 12 months? | ☐ | ☒ |
| c. used any other tobacco products during the past 12 months? | ☐ | ☒ |

**5. HAS ANY PERSON PROPOSED FOR INSURANCE:**

| | Yes | No |
|---|---|---|
| a. engaged, or intend to engage, in hang gliding, racing, scuba diving, sky diving? | ☐ | ☒ |
| b. had driver's license restricted, revoked or suspended? If yes, give driver's ID#. | ☐ | ☒ |
| c. other life insurance applications pending? | ☐ | ☒ |
| d. ever had life or health insurance declined, modified or rated? | ☐ | ☒ |
| e. any intention of traveling or residing outside the U.S.? | ☐ | ☒ |
| f. any intention of replacing or changing any life insurance or annuity policy in force in this or any other company? | ☐ | ☒ |

If any of 5a through 5f are answered Yes, give name & full details in REMARKS.

| | Yes | No |
|---|---|---|
| g. taken within five years or intend to take flights other than as fare-paying passenger on scheduled airlines? If Yes, complete Aviation Questionnaire. | ☐ | ☒ |

**6. a. PLAN** ☒ Non Par ☐ Par
LT6 10   **b. AMOUNT** 5,000,000

**c. PREMIUMS PAYABLE** ☐ Annual ☒ Semi-annual ☐ Quarterly
☐ Pre-Auth. Chk. ☐ GAP ☐ List Bill

**d. For Universal Life only:**
☐ Option 1 ☐ Option 2
Planned Premium $
Additional Initial Premium $

**e. AUTOMATIC PREMIUM LOAN, if available** ☐ Yes ☐ No

**f. ADDITIONAL COVERAGES** (Check if desired)
☐ WP or WMD
☐ ADB $ _____
☐ Spouse Rider ____ Units ☐ Child Rider ____ Units
☐ GIO _____ Units
☐ Term Rider Plan _____ $ _____ (Amt. or M.I.)
☐ Term Rider on Other Insured — use separate application

**g. IF PARTICIPATING, USE OF DIVIDENDS**   Purchase 1 Yr. Term, balance to:
☐ (1) Cash   ☐ (5) Deposit at Interest
☐ (2) Reduce Premium   ☐ (6) Reduce Premiums
☐ (3) Paid Up Additions   ☐ (7) Purchase Paid Up Additions
☐ (4) Deposit at Interest   ☐ (8) Use All to Purchase 1 Yr. Term

**7. LIFE INSURANCE IN FORCE ON PROPOSED INSURED**

| Name of Company | Issue Year | Amount | ADB | Personal/Business |
|---|---|---|---|---|
| Bankers Life | 84 | 880,000 | | Business |

**8. BENEFICIARY for benefits payable upon death of the proposed insured**

Full Name   Age   Relationship
Primary: Margaret Stilwell 47 Wife 60%
Jamie Stilwell (10%) Heidi Stilwell (10) Megan
Contingent Stilwell (10) Haley Stilwell (10%)
Luke Stilwell, Grandson

Except as otherwise directed: (a) The proceeds are to be divided equally among all persons who are named as Primary Beneficiary and who survive the insured, but if none survive, equally among all persons who are named as Contingent Beneficiary and who survive the insured. (b) The right to change the beneficiary is reserved.

**9. NAME OF OWNER** if other than proposed insured   Relationship
Margaret Stilwell   Wife
Address 218 N Iowa
Atwood, IL 61913
Social Security or Tax No. 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

**10. SPECIAL POLICY DATE, IF DESIRED**

**11. AMOUNT PAID WITH THIS APPLICATION: $** 0

**12. REMARKS**

**AMENDMENTS AND CORRECTIONS** (for Home Office use only)
Plan LT 9 10

**THIS IS A REISSUED POLICY AND REPLACES ANY POLICY BEARING THIS NUMBER PRIOR TO** 10-30-98

This application consists of Part A and one or more Parts B. This application is not a contract of insurance. A contract of insurance shall take effect only if a policy is issued on this application and the first premium is paid in full (a) during the lifetime of all proposed insureds and (b) while there is no change in the insurability and health of all such persons from that stated in this application. However, if cash is paid when this application is signed, the terms of the Conditional Receipt shall apply. It is represented that all statements and answers in this application are true, full and complete, and bind all parties in interest under any policy applied for. Only an authorized officer of our Company can make, void, waive or change any of the conditions or provisions of any application, policy or receipt or accept risks or pass on insurability. Notice to or knowledge by our examiner is not notice to or knowledge by us. Acceptance of any policy issued on this application shall mean acceptance of any change, correction, addition or amendment noted by us in the "Amendments and Corrections" Section. However, any such change shall require the written consent of the person or persons who sign this application. The Proposed Insured shall be the policy owner unless another owner is named above.

**DECLARATION**
I have carefully read the receipt. I understand and agree to its terms including the conditions under which a limited amount of insurance may take effect before policy delivery. I have received the MIB, Inc. and Fair Credit Reporting Act Notices.

Signed at City Atwood   State IL
Date 3/2/98

Witness William Jordyn
(LICENSED RESIDENT AGENT WHERE REQUIRED BY STATUTE OR REGULATION)

Signature of Proposed Insured X Jas E Stilwell
Signature of Spouse (Spouse Rider Only)
Signature of Owner (if 9 answered) X Margaret Stilwell
SIGNATURE & TITLE OF OFFICER SIGNING FOR CORP OR TRUSTEE

Form 4485-Q (Rev. 88)

FF-04001000-1048-1996
Supply Ordering Number: 0-001000-1018-1996

**THE OLD LINE LIFE** Insurance Company of America

(refers ... to in this application as we/us/our)

**PART B**

**1. PROPOSED INSURED**    A. Height    B. Weight    C. Change in weight in past 12 months. *(Give reason)*
(Person Named on 1a Part A)    6 ft. 1 in.    320 lbs.    lbs.  Loss _____  Gain _____

| 2. FULL NAME(S) OF ADDITIONAL INDIVIDUAL(S) PROPOSED FOR INSURANCE (PLEASE PRINT) first middle last | DATE OF BIRTH month day year | Age | Sex | Place of Birth | Height ft. in. | Weight lbs. | Total Insurance in Force |
|---|---|---|---|---|---|---|---|
| a. SPOUSE OR PAYOR (If proposed for insurance) | | | | | | | |
| b. CHILDREN (If proposed for insurance and residing with Proposed Insured) | | | | | | | |

**3. Name and address of your personal physician** (if none, so state) DR. MANO HANN · Main Street · Atwood Il. 61913

QUESTIONS 4-8 PERTAIN TO ALL PERSONS NAMED ABOVE AND ARE TO BE ANSWERED TO THE BEST OF THE APPLICANT'S KNOWLEDGE AND BELIEF

GIVE FULL DETAILS IF ANSWER TO QUESTION 4 IS NO OR 5, 6, 7, 8 IS YES

| | Yes | No | Name of Person | Details, Dates, Doctors' Names & Addresses |
|---|---|---|---|---|
| 4. Are all persons proposed for insurance in good health? | ☒ | ☐ | | |
| 5. Has any person proposed for insurance any physical defect? | ☐ | ☒ | | |

**6. HAS ANY PERSON PROPOSED FOR INSURANCE:**

| | Yes | No |
|---|---|---|
| a. received treatment or joined an organization for alcoholism or drug dependency or abuse; been advised to discontinue the use of alcohol or drugs? | ☐ | ☒ |
| b. used cocaine, barbiturates, amphetamines or any other drug which might cause a dependency, other than as prescribed by a licensed physician? | ☐ | ☒ |
| c. ever been diagnosed by or received medical treatment from a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ | ☒ |
| d. ever applied for or received disability benefits from any source? | ☐ | ☒ |

**7. HAS ANY PERSON PROPOSED FOR INSURANCE EVER HAD:**

| | Yes | No |
|---|---|---|
| a. convulsions, epilepsy, paralysis, neuritis, sciatica, nervous breakdown, headache, dizziness, fainting spells, speech defect, nervous or mental disorder? | ☐ | ☒ |
| b. high blood pressure, chest pain, palpitation, heart attack, stroke, heart murmur, hemorrhage, rheumatic fever, disorder of heart or blood vessels? | ☐ | ☒ |
| c. persistent hoarseness or cough, shortness of breath, asthma, emphysema, tuberculosis, bronchitis, disorder of respiratory system? | ☐ | ☒ |
| d. recurrent indigestion, ulcer, colitis, diverticulitis, hernia, intestinal bleeding, appendicitis, disorder of stomach, liver, digestive or abdominal organs? | ☐ | ☒ |
| e. sugar, albumin, blood or pus in urine, kidney stone, diabetes, or disorder of kidneys, bladder, prostate, or genito-urinary organs? | ☐ | ☒ |
| f. arthritis, gout, disorder of muscles, bones, joints or spine? | ☐ | ☒ |
| g. impairment of vision or hearing or disorder of eyes, ears, nose or throat? | ☐ | ☒ |
| h. tumor, cyst, cancer, hemorrhoids, venereal disease, anemia, disorder of blood, skin, thyroid or other glands? | ☐ | ☒ |
| i. treatment or observation in any hospital or institution? (past 5 years) | ☐ | ☒ |
| j. X-ray or electrocardiograms? (past 5 years) | ☐ | ☒ |
| k. treatment or consultations with any physicians or practitioners, other than as stated above? (past 5 years) | ☐ | ☒ |
| 8. Is any person proposed for insurance now pregnant? (if so, how many months?) | ☐ | ☒ |

**COMPLETE IF PROPOSED INSURED UNDER AGE 15**

9. List life insurance in force on family (if none, so state).

| Age | Amount | | Age | Amount |
|---|---|---|---|---|
| Father | | | Mother | |
| Brothers | | | Sisters | |

**COMPLETE IF PROPOSED INSURED AGE 15 OR OVER & NOT SELF-SUPPORTING**

10. Parent's/Spouse's full name ......................................................

11. Parent's/Spouse's occupation ...................................................

12. How much insurance does Parent/Spouse carry? ...................

13. Does Proposed Insured have an independent source of income?
    (state source) ...............................................................................

Owner (if other than parent) ...................

Signature of Proposed Insured ...................

Signature of Spouse (if required) ...................

Witness ................... *William John Lyn*
(LICENSED RESIDENT AGENT WHERE REQUIRED BY STATUTE OR REGULATION)

Signature of Owner (if required) ...................

Form 4485-Q (Rev. 88)

Is policy intended to replace insurance or annuity in this company? ☐ Yes ☒ No    If Yes, give full details and attach any other papers required by state law.

PRODUCER'S REPORT

Are you related to any person proposed for insurance? ☐ Yes ☒ No    If Yes, give details ...................

Estimate of Proposed Insured's Income:  Salary $ 150,000    Other Income $ ...................    Net Worth $ 10,000,000

*William John Lyns* W0090

| AGENCY OR BRANCH OFFICE | CODE NO. | PRODUCER'S NAME FOR RECORD PURPOSES (IF MORE THAN ONE INDICATE % SPLIT) | CODE NO. |
|---|---|---|---|

I hereby certify that I personally solicited and completed this application; that I have no knowledge of anything which might affect the insurability of any person proposed for insurance which is not fully set forth herein.

*William John Lyn* SIGNATURE OF PRODUCER

FF-04001000-1046-1196
Supply Ordering Number- 04201000-1019-1196

**THE OLD LINE LIFE Insurance Company of America**

26 04663

Agency # C0090

## ANSWERS TO MEDICAL EXAMINER

PART B    forming Part B of Application when used in connection with new Life Insurance

Proposed Insured _Earl_ (First Name) _Jasmin_ (Middle Initial) _Sidwell_ (Last Name)   Birth Date _10_ (Month) _7_ (Day) _54_ (Year)

1. a. Name and address of your personal physician (if none, so state)
_Dr. Nathan Atwood, ILL._

b. Date and reason last consulted?
_Phy. Injection - 1 yr ago_

c. What treatment was given or medication prescribed?
_Col. Rx_

| | Yes | No |
|---|---|---|
| 2. Have you smoked cigarettes during the past 12 months? | ☐ | ☑ |
| Do you currently smoke pipes or cigars or use any other tobacco products? | ☐ | ☑ |
| 3. a. Have you received treatment or joined an organization for alcoholism or drug dependency or abuse; been advised to discontinue the use of alcohol or drugs? | ☐ | ☑ |
| b. Have you used cocaine, barbiturates, amphetamines or any other drug which might cause a dependency, other than as prescribed by a licensed physician? | ☐ | ☑ |
| 4. Have you ever had or been told you had or been treated for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ | ☑ |
| 5. Are you in good health? | ☑ | ☐ |
| 6. Do you have any physical defect? | ☐ | ☑ |
| 7. Have you ever been treated for or ever had any known indication of: | | |
| a. convulsions, epilepsy, paralysis, neuritis, sciatica, nervous breakdown, headache, dizziness, fainting spells, speech defect, nervous or mental disorder? | ☐ | ☑ |
| b. high blood pressure, chest pain, palpitation, heart attack, stroke, heart murmur, hemorrhage, rheumatic fever, disorder of heart or blood vessels? | ☐ | ☑ |
| c. persistent hoarseness or cough, shortness of breath, asthma, emphysema, tuberculosis, bronchitis, disorder of respiratory system? | ☐ | ☑ |
| d. recurrent indigestion, ulcer, colitis, diverticulitis, hernia, intestinal bleeding, appendicitis, disorder of stomach, liver, digestive or abdominal organs? | ☐ | ☑ |
| e. sugar, albumin, blood or pus in urine, kidney stone, diabetes, or disorder of kidneys, bladder, prostate, or genito-urinary organs? | ☐ | ☑ |
| f. arthritis, gout, disorder of muscles, bones, joints or spine? | ☐ | ☑ |
| g. impairment of vision or hearing or disorder of eyes, ears, nose or throat? | ☐ | ☑ |
| h. tumor, cyst, cancer, hemorrhoids, venereal disease, anemia, disorder of blood, skin, thyroid or other glands? | ☐ | ☑ |
| 8. Are you now under observation or taking treatment? | ☐ | ☑ |
| 9. Have you had any change in weight in the past year? | ☐ | ☑ |
| 10. Other than above, have you within the past 5 years: | | |
| a. Had any mental or physical disorder not listed above? | ☐ | ☑ |
| b. Had a checkup, consultation, illness, injury, surgery? | ☐ | ☑ |
| c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☐ | ☑ |
| d. Had electrocardiogram, X-ray, or other diagnostic test? | ☐ | ☑ |
| e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☑ |

| | Yes | No |
|---|---|---|
| 11. Have you ever been deferred, rejected or discharged from military service or discharged because of a physical or mental condition? | ☐ | ☑ |
| 12. Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability? | ☐ | ☑ |
| 13. Family History: Tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? | ☐ | ☑ |

| | Age if Living? | Cause of Death | Age at Death? |
|---|---|---|---|
| Father | 67 | Living & well | |
| Mother | 63 | Living & well | |
| Brothers and Sisters No. Living . . . . | 1 Brother - Stephen - Barth | | |
| No. Dead . . . . | 1 Sister 41 | Living & well | |

14. Females only:

| | Yes | No |
|---|---|---|
| a. Have you ever had any disorder of menstruation, pregnancy or of the female organs or breasts? | ☐ | ☐ |
| b. Are you now pregnant? (If so, how many months?) | ☐ | ☐ |

Give full details in REMARKS if Answer to Question 5 is No, or if answer to Questions 2-4 or 6-14 is Yes. Identify question number and circle applicable items; include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.

REMARKS

I hereby declare that, to the best of my knowledge and belief, the information given above is correctly recorded, complete and true, and I agree that the Company, believing it to be true, shall rely and act upon it accordingly.

Date _3-23-98_

Signature of Person Examined _____ (or adult applicant if person examined is under 15)

Signed at City _Urbana_   State _Ill._   Witnessed by _Robert W. Obean, M.D._   M.D.

Form 80P (Rev. 87)   The attached authorization should be dated and signed by the person examined.

0420-000-1032-1194 (Front)

TABLE OF PREMIUMS AT THE CURRENT AND MAXIMUM RATES FOR THE FACE AMOUNT
AND PREMIUM CLASS OF THIS POLICY.

WE MAY CHANGE THE CURRENT PREMIUM IN ACCORDANCE WITH THE RIGHT TO CHANGE
PREMIUM PROVISION.

| POLICY YEAR | CURRENT ANNUAL LIFE INSURANCE PREMIUM | MAXIMUM ANNUAL LIFE INSURANCE PREMIUM |
|---|---|---|
| 1- 10 | 20,350.00 | 20,350.00 |
| 11 | 127,510.00 | 165,910.00 |
| 12 | 142,990.00 | 185,950.00 |
| 13 | 161,950.00 | 210,550.00 |
| 14 | 183,430.00 | 238,510.00 |
| 15 | 207,430.00 | 269,710.00 |
| 16 | 235,030.00 | 305,470.00 |
| 17 | 266,470.00 | 346,390.00 |
| 18 | 302,470.00 | 393,190.00 |
| 19 | 342,550.00 | 445,270.00 |
| 20 | 385,870.00 | 501,790.00 |
| 21 | 432,190.00 | 561,790.00 |
| 22 | 479,710.00 | 623,710.00 |
| 23 | 524,950.00 | 682,510.00 |
| 24 | 569,350.00 | 740,350.00 |
| 25 | 616,510.00 | 801,430.00 |
| 26 | 670,150.00 | 871,270.00 |
| 27 | 735,910.00 | 956,590.00 |
| 28 | 814,270.00 | 1,064,710.00 |
| 29 | 902,950.00 | 1,189,630.00 |
| 30 | 1,001,350.00 | 1,339,630.00 |
| 31 | 1,108,750.00 | 1,526,710.00 |
| 32 | 1,220,950.00 | 1,759,150.00 |
| 33 | 1,339,390.00 | 2,045,710.00 |
| 34 | 1,465,270.00 | 2,397,910.00 |
| 35 | 1,595,230.00 | 2,832,190.00 |
| 36 | 1,726,990.00 | 3,366,070.00 |
| 37 | 1,860,430.00 | 3,827,830.00 |
| 38 | 1,977,430.00 | 3,827,830.00 |
| 39 | 2,080,030.00 | 3,827,830.00 |
| 40 | 2,198,470.00 | 3,827,830.00 |
| 41 | 2,359,870.00 | 3,827,830.00 |
| 42 | 2,591,470.00 | 3,827,830.00 |
| 43 | 2,892,070.00 | 3,827,830.00 |
| 44 | 3,245,110.00 | 3,827,830.00 |
| 45 | 3,646,990.00 | 3,827,830.00 |

80-RCT 79-8                2604663          NEXT TO LAST PAGE

TABLE OF PREMIUMS AT THE CURRENT AND MAXIMUM RATES FOR THE FACE AMOUNT
AND PREMIUM CLASS OF THIS POLICY.   (CONTINUED)

| POLICY YEAR | CURRENT ANNUAL LIFE INSURANCE PREMIUM | MAXIMUM ANNUAL LIFE INSURANCE PREMIUM |
|---|---|---|
| 46 | 3,827,830.00 | 3,827,830.00 |
| 47 | 3,827,830.00 | 3,827,830.00 |
| 48 | 3,827,830.00 | 3,827,830.00 |
| 49 | 3,827,830.00 | 3,827,830.00 |
| 50 | 3,827,830.00 | 3,827,830.00 |
| 51 | 3,827,830.00 | 3,827,830.00 |

RENEWABLE LEVEL TERM LIFE POLICY -- INDETERMINATE PREMIUM
INSURANCE PAYABLE IN EVENT OF DEATH PRIOR TO EXPIRY DATE
PREMIUMS PAYABLE DURING TERM

NO DIVIDENDS

80-RCT 79-8                    2604663                    LAST PAGE

580 000 25 083

Jan Ka Financia "Group LLC  ORIGINAL

Address 2320 Marquette Rd
Peru IL 61354

its successors and assigns, (herein called the "Assignee") Policy No. 260 4663 _____ issued by the

(herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "Policy"), upon the life of James E. Stilwell

of Atwood, IL 61913 _____ and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof:
1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;
2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;
3. The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at any time, from other persons, and to pledge or assign the Policy as security for such loans or advances;
4. The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and
5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:
1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;
2. The right to designate and change the beneficiary;
3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy complying with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:
1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed;
2. That the Assignee will not exercise either the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and
3. That the Assignee will upon request forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.

F. The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the liabilities or the existence of any default therein, or the giving of any notice under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefor to the Insurer. Checks for all or any part of the sums payable under the Policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee.

G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, but any such amounts so paid by the Assignee from its own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall draw interest at a rate fixed by the Assignee from time to time not exceeding 6% per annum.

H. The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

I. The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

J. In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the Policy or rights of collateral security therein, the provisions of this assignment shall prevail.

K. Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to any assignment for the benefit of creditors.

X _____  (X) _Margaret Stilwell_  _4/19/99_
Witness                            Policyowner (if company owned, name of company & title of officer signing)    Date

                                   Soc. Sec./Tax ID# _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_

X _Lawrence W. Branch_  (X) _____  _4/19/99_
Witness                            Joint Insured/Owner, Assignee, Irrevocable Beneficiary or Spouse    Date
                                   in Community Property State

**Received and filed at the Home Office of The Old Line Life Insurance Company of America, 707 North Eleventh Street, P.O. Box 401, Milwaukee, Wisconsin 53201-0401.**

Date: _____  By: _____

EXHIBIT
2

## INDIVIDUAL ACKNOWLEDGMENT

State of ___Illinois___

County of ___Douglas___ } ss:

On the ___19th___ day of ___April___ 19 99 , before me personally came

___Margaret Stilwell___ , to me known to be the Individual ____ described in and who executed the

assignment on the reverse side hereof and acknowledged to me that _____ s he _____ executed the same.

My commission expires ___6-22-00___

OFFICIAL SEAL
RICHARD A HARRER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/22/00

## CORPORATE ACKNOWLEDGMENT

State of _____

County of _____ } ss:

On the _____ day of _____ 19 _____ , before me personally came

_____ , who being by me duly sworn, did depose and say that he resides in

_____ that he is the _____ of _____

the corporation described in and which executed the assignment on the reverse side hereof; that he knows the seal of said corporation; that the seal affixed to said assignment is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
Notary Public

My commission expires _____

Duplicate received and filed at the home office of the Insurer in ___Dallas, TX___ , this ___ MAY 1 4 1999 ___ day of _____ 19 _____

_____
By _____
Authorized Officer

NOTE: When executed by a corporation, the corporate seal should be affixed and there should be attached to the assignment a certified copy of the resolution of the Board of Directors authorizing the signing officer to execute and deliver the assignment in the name and on behalf of the corporation.

**THE OLD LINE LIFE** Insurance Company of America 

ADMINISTRATIVE OFFICES / PO BOX 35844 / DALLAS TX 75235 0844
214 654 6300 / 800 487 5433 / FAX 214 654 6008

May 14, 1999

JANKO FINANCIAL GROUP
2320 MARQUETTE RD
PERU IL 61354

Re: Insured, James Stillwell
Policy Number    2604663
Owner, James Stillwell

```
*********************************
*                               *
*    ASSIGNMENT VERIFICATION    *
*                               *
*********************************
```

The original document submitted to place an assignment on this policy
has been endorsed, recorded and made a part of the policy records.

The original copy of this assignment is attached for your records.

If this assignment is released or transferred, please notify us in
writing.

Prepared By: Title Change Unit
             Policyowner Service Department

Attachment

cc:

2303
23/03
An American General Company                    ***** TA *****

EXHIBIT
3

SEP 08 2008 15:06 FR AG-DALLAS SERV CTR 2146546022 TO 912175783560 P.02/03

POOR ORIGINAL

ADMINISTRATIVE OFFICE
PO Box 35844
Dallas TX 75235 8683
800 487 6433/214 654 6300/FAX 214 654 6001



## THE OLD LINE LIFE Insurance Company of America
### An American General Company

## ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL

1,500,000

A. For Value Received the undersigned hereby assign, transfer and set over to _____
JAN KO Financial Group LLC 2220 MARQUETTA RD Peru FL 61354
PLEASE PRINT FULL NAME AND ADDRESS OF ASSIGNEE
its successors and assigns, (herein called the "Assignee") Policy No. 2 6 0 4 663 , issued by the
Company (herein called "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being
herein called the "Policy"), upon the life of JAMES F. Stilwell
of ATWOOD FL 61913 , and all claims, options, privileges, rights, title and interest therein
and thereunder (except as provided in Paragraph C hereof) subject to all the terms and conditions of the Policy and to all superior
liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the
Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this
assignment and pass by virtue hereof:
1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;
2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and
at such other times as the Insurer may allow;
3. The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at any time, from other persons,
and to pledge or assign the Policy as security for such loans or advances;
4. The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy now or
hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided
that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend
deposits and additions shall continue on the plan in force at the time of this assignment; and
5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive
all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from
this assignment and do not pass by virtue hereof:
1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;
2. The right to designate and change the beneficiary;
3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these
rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other
right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made
subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them,
to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned
and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:
1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured
or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment
not been executed;
2. That the Assignee will not exercise either the right to surrender the Policy (except for the purpose of paying premiums) the right
to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when
due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the address last supplied
in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and
3. That the Assignee will forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or
change of beneficiary or any election of an optional mode of settlement.

The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action
taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice
under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee.
The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole
receipt of the Assignee for any sums received shall be a full discharge and release therefor to the Insurer. Checks for all or any part
of the sums payable under the Policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, then, and in such
amounts as may be requested by the Assignee.

The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy
whether or not obtained by the Assignee, or any other charges on the Policy, but any such amounts so paid by the Assignee from its
own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall draw interest at a rate fixed by
the Assignee from time to time not exceeding 6% per annum.

The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except
as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or
assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may
grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee
shall determine, the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any
right permitted under this assignment, without resorting or regard to other security.

In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with
respect to the Policy or rights of collateral security therein, the provisions of this assignment shall prevail.

Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to
any assignment for the benefit of creditors.



EXHIBIT

4

SEP 09 2000 15:07 FR AG-DALLAS SERV CTR    2146546022 TO 912175783560    000609 001322

Signed this _____ 25 day of September _____ 2000 ___ YEAR

in the presence of:

_____ William John Lyons _____    _____ Margaret Stilwell _____
                                      INSURED OR OWNER (IF OTHER THAN INSURED)

_____    _____
                                      OTHER REQUIRED SIGNATURE

_____    _____
                                      OTHER REQUIRED SIGNATURE

**POOR ORIGINAL**

**CORPORATE ACKNOWLEDGEMENT**

STATE OF ___Illinois___ }
                        } ss
COUNTY OF ___Douglas___ }

On the 25th of ___September___ 2000, before me personally came ___Margaret Stilwell___
                              YEAR
who being by me duly sworn, did depose and say that she resides in ___Atwood, IL___ that she is
the ___Vice President___ of ___Atwood Mor Service Inc___ the corporation described in and which executed the foregoing instrument; that he
knows the seal of said corporation; that the seal affixed to said assignment is such corporate seal; that it was so affixed by order of the
Board of Directors of said corporation, and that he signed his name thereto by like order.

OFFICIAL SEAL
GERALD V. ALEXANDER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/03/02

_____
NOTARY PUBLIC

My commission expires ___4-3-02___

**HOME OFFICE USE ONLY**

This is to certify that the original of this collateral Assignment has been recorded with the Company.

Dated in ___Dallas TX___ this _____ day of _____    OCT 0 2 2000
                                                                  YEAR

By _____
   AUTHORIZED OFFICER

10/4/0011:57
000609001320

# THE OLD LINE LIFE Insurance Company of America

ADMINISTRATIVE OFFICES / PO BOX 35844 / DALLAS TX 75235 0844
214 654 6300 / 800 487 5433 / FAX 214 654 6008

October 3, 2000

JANKO FINANCIAL GROUP LLC
2220 MARQUETTA RD
PERU IL  61354

Re:  Insured, James E Stilwell
     Policy Number   2604663
     Owner, James E Stilwell

```
**********************************
*                                *
*     ASSIGNMENT VERIFICATION    *
*                                *
**********************************
```

The original document submitted to place an assignment on this policy
has been endorsed, recorded and made a part of the policy records.

A copy of this assignment is attached for your records.

If this assignment is released or transferred, please notify us in
writing.

Prepared By:  Title Change Unit
              Policyowner Service Department

Attachment

cc:   W0908 FRAN TONY M CARTER
      W0090 FRAN WILLIAM J LYONS

2303
23/03
    An American General Company

***** TA *****


EXHIBIT
5



## ASSIGNMENT AND ASSUMPTION AGREEMENT
## (AMISH FURNITURE)

This Assignment and Assumption Agreement made as of this __16__ day of __NOV_____,
2000 by and between JANKO FINANCIAL GROUP, LLC, an Illinois Limited Liability Company,
Assignor, and TUSCOLA FURNITURE GROUP, LLC, an Illinois Limited Liability Company,
Assignee.

NOW THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable
consideration, the receipt whereof is acknowledged, Assignor hereby assigns and Assignee hereby
agrees to assume and to fully and faithfully perform the obligations of Assignor under the following:

1.    Consignment Agreement dated 4/16/99 by and between AMISHLAND COUNTRY
      VILLAGE, INC., and JANKO FINANCIAL GROUP, L.L.C.

2.    Any and all Contracts and other documents including insurance policies, relating to and
      incurred in connection with the acquisition and consignment of AMISH FURNITURE
      pursuant to the Consignment Agreement referred to in paragraph 1.

3.    All inventory of AMISH FURNITURE owned by Assignor and subject to the Consignment
      Agreement.

IN WITNESS WHEREOF, the Assignor and Assignee have caused this Assignment and Assumption
Agreement to be fully executed and delivered this __16__ day of __NOV_____, 2000.

ASSIGNEE:                                     ASSIGNOR:
TUSCOLA FURNITURE GROUP, LLC                  JANKO FINANCIAL GROUP, LLC
by its Manager,
JANKO FINANCIAL GROUP,L.L.C.

BY: _____          BY: _____
RICHARD JANKO, Authorized Member              RICHARD JANKO, Authorized Member



**EXHIBIT**

**6**

JANKO\TUSCOLA-AMISHLAND.ASNM



000068

## ASSIGNMENT

For value received, the undersigned, secured party under a security agreement dated November  17 , 2000, between the undersigned and Amishland's Country Village, Inc., a corporation referred to as debtor, hereby sells, assigns, and transfers to First Mid-Illinois Bank & Trust, N.A. of 410 S. Main, P.O. Box 18, City of Tuscola, County of Douglas, State of Illinois, its successors and assigns, the foregoing security agreement, hereafter referred to as agreement, and all right, title and interest of the undersigned in and to the collateral described therein, hereby granting full power to the assignee, either in its own name or in the name of the undersigned, to take all legal or other proceedings that the undersigned may have taken but for this agreement.

The undersigned represents and warrants that:

1. The Agreement evidences a bona fide consignment of the collateral to debtor;
2. The description of the collateral set forth in agreement is correct;
3. All statements contained in agreement are in all respects true and correct;
4. The consignment was made in accordance with all laws and regulations affecting such consignment;
5. Agreement is valid and enforceable in accordance with its terms;
6. The names and signatures on agreement are not forged, fictitious or assumed, and are genuine in all respects;
7. At the time of the consignments, title to the collateral was in the undersigned and the collateral was, on delivery to the debtor and is now, free from all liens and encumbrances, except agreement;
8. Agreement is subject to no defenses on the part of debtor;
9. Duly completed copies of agreement were delivered to debtor prior to his execution thereof;
10. The collateral was delivered to debtor on consignment in good condition, without any misrepresentation by the undersigned and has been accepted by debtor; and
11. The undersigned is the owner of agreement free from all liens and encumbrances except agreement, and has full right and power to sell and assign the same.

This assignment is made subject to all the terms, conditions, promises, representations, and warranties contained in any agreement in effect between the undersigned and debtor on the date hereof.

Dated: _____ NOV. 17 _____, 2000

TUSCOLA FURNITURE GROUP, L.L.C., an
Illinois Limited Liability Company

By: Its Manager: JANKO FINANCIAL
GROUP, L.L.C., a Limited Liability Company

By: _____
Richard Janko, Authorized Member
220 Marquette Road
Peru, Illinois 61354

EXHIBIT
7

000054

# CONSIGNMENT AGREEMENT

This Consignment Agreement made this _17th_ day of _November_ 2000  by and between TUSCOLA FURNITURE GROUP, LLC., an Illinois Limited Liability Company, hereafter "TFG" and AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation, hereafter "ACV".

WHEREAS, ACV is in the business of retail sale of Amish made furniture and desires to establish a retail outlet in Tuscola, Illinois but lacks financial resources for acquiring an adequate inventory of Amish furniture, and

WHEREAS, TFG has the financial resources and is willing to purchase an inventory of Amish crafted furniture and consign same with ACV upon the terms and conditions herein, and

WHEREAS, JANKO FINANCIAL GROUP, L.L.C., an Illinois Limited Liability Company, hereafter "JANKO" and ACV are parties to a "Consignment Agreement" dated April 16, 1999, and

WHEREAS, JANKO having the right, without the consent of ACV, to assign its interest in the Cosignment Agreement, has assigned its interest in the Cosignment Agreement dated 4/16/99 to TFG, and

WHEREAS, TFG (as assignee of JANKO) and ACV, desiring to    modify the Cosignment Agreement dated April 16, 1999, by terminating same and entering into this agreement do hereby agree as follows:

## 0.O    THE AGREEMENT:

0.1    The Consignment Agreement dated April 16, 1999 by and between JANKO and ACV is hereby terminated and replaced by this Consignment Agreement, effective as of the date of this agreement.

0.2    ACV shall cooperate with JANKO and TFG in regards to changing the name of the consignor on all documents relating to transactions relating to this agreement.

EXHIBIT

tabbies

__8__

1

000075

1. **DEFINITIONS**

    1.1    "ACV" means AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation the consignee under this Consignment Agreement.

    1.2    "AMISH FURNITURE" herein means (i) originally made and crafted Amish furniture, fully finished, (ii) AMISH style furniture made by others and (iii) any "other furniture" purchased and owned by TFG in an amount not to exceed 3% of the average wholesale replacement cost of total inventory, but does not include crafts, lamps, pictures and accessories other than wood products, whether Amish made or not.

    1.3    "AVERAGE WHOLESALE COST" means the inventory value of the AMISH FURNITURE as determined by QUICK BOOKS software program on a straight line average

    1.4    "BANK" means FIRST MID-ILLINOIS BANK and TRUST OF TUSCOLA, ILLINOIS.

    1.5    "INVENTORY CAP" means the maximum total aggregate amount of the average wholesale cost of Amish Furniture consigned by TFG to ACV.

    1.6    "JANKO" means JANKO FINANCIAL GROUP, L.L.C., an Illinois Limited Liability Company, the manager of TFG.

    1.7    "TFG'S INVESTMENT" means all amounts paid by TFG for AMISH FURNITURE less credits for payments received from sales of AMISH FURNITURE

    1.8    "STILWELL" means JAMES and/or MARGARET STILWELL, the sole Shareholders of ACV.

    1.9    "TFG" means TUSCOLA FURNITURE GROUP, LLC., an Illinois Limited Liability Company, the consigner under this Agreement.

2. **AGREEMENTS OF TFG**

    2.1    TFG agrees to purchase the existing inventory of Amish furniture now owned by ACV at current wholesale replacement cost and to purchase new Amish furniture selected by ACV, all at wholesale value or cost from time to time during the existence of this Agreement provided that the total amount of purchases shall never exceed $1,250,000.00 except as otherwise allowed herein.

    2.2    TFG will be the owner of such Amish furniture free and clear of all liens and encumbrances except a Security Agreement with BANK in an amount not to exceed 80% of the wholesale value.

000076

2

2.3    TFG will consign the Amish furniture with ACV and with no other party or entity unless with the consent of ACV or pursuant to termination of this Agreement by reason of the default of ACV.

2.4    TFG will pay ACV, or at the direction of ACV, the seller of the Amish furniture all items delivered to an ACV store or warehouse within seven (7) days of demand and TFG'S receipt of proper documentation, i.e. Purchase Order Receipts with corresponding copy of vendor invoices and no more frequently than once every two (2) weeks.

2.5    Wholesale value will be determined and supported by receipts or invoices from suppliers, copies to be provided by STILWELL.

2.6    TFG may increase or waive the inventory cap of $1,250,000.00 limit on the purchase of Amish furniture upon the written request of ACV submitted not earlier than one (1) year from the date of this Agreement and conditioned upon evidence that ACV is current and not in default on any of its financial obligations including all current and long term lenders and tax obligations to State and Federal governmental bodies.

3.    AGREEMENTS OF ACV:

3.1    ACV will sell to TFG its existing inventory of Amish furniture at current wholesale replacement cost and purchase on behalf of TFG additional Amish furniture at wholesale cost from time to time during the term of this Agreement which total wholesale value should never exceed $1,250,000.00 unless increased pursuant to paragraph 2.6 above.

3.2    ACV's purchase at wholesale of Amish furniture on behalf of TFG shall be under the supervision and direction of STILWELL who shall exercise reasonable care and diligence in selecting marketable Amish furniture at fair and reasonable cost.

3.3    ACV will keep, preserve, repair and maintain all Amish furniture in good condition at only the following locations:

(1)  1304 Tuscola Blvd., Tuscola, IL.  61953
(2)  East Route 36,  Atwood, IL.  61913
(3)  123 N. Main St., Atwood, IL  61913
(4)  601 & 603 S. Main, Tuscola, IL  61953 ( 1 bldg. occupying 2 lots)

3

and sell and market same in the ordinary course of its business at retail pricing in such amounts as determined by ACV. At all times ownership of the Amish furniture shall be in the name of TFG and ACV will execute, obtain or provide such Bill of Sales, Inventory lists, or other documents as deemed necessary by TFG to evidence its ownership.

3.4   Principal Payments: ACV will pay or remit to BANK in an account designated by TFG by the 10th day of the month, an amount equal to the average wholesale cost of the items sold during the previous month. Such reductions in the inventory level of Amish furniture may be replaced up to the inventory cap.

3.5   Consignment Payments: For its consignment services, ACV may retain all amounts in excess of average wholesale cost obtained from the sale at retail of the Amish furniture after deducting and paying Bank in an account designated by TFG by the 10th day of the month an amount equal to the previous month's total of:

a)   10% of retail sale price, exclusive of sales tax;

b)   interest (at the rate charged by BANK to TFG) on the amount of TFG'S INVESTMENT; and

c)   all other costs, points, fees, charges by BANK to TFG.

3.6   Exclusive: ACV will not accept for consignment, sell or lease furniture of any kind except in accordance with this Consignment Agreement, and ACV will not pledge the Amish Furniture or proceeds therefrom as collateral except as required by paragraph 3.17 of this Agreement.

3.7   Product Liability Insurance: ACV will obtain Product Liability Insurance in the minimum amount of One Million Dollars at its cost, naming TFG as an additional insured with fee tail coverage, with an Insurance Company rated by AM Best of a rating of "A" or better.

3.8   Casualty Insurance: ACV will insure the Amish furniture against fire, loss, theft, vandalism, damage and other casualty with an insurance company rated by AM Best of a rating A or better at its full insurable value naming TFG and BANK as additional party insured. Said policies will maintain a clause requiring notice to TFG and BANK ten (10 ) days prior to any alteration in terms or cancellation. ACV will furnish evidence of such insurance being in force to TFG and BANK. Any insurance proceeds paid to TFG and BANK in excess of the balance of the obligations owed by ACV to TFG and TFG'S cost for the Amish Furniture shall be the property of ACV and shall be paid over to ACV after the obligations due under this Agreement and Amish furniture costs have been paid in their entirety.

000078

3.9   <u>Life Insurance</u>:   ACV will maintain life insurance and pay the premiums thereon on JAMES STILWELL in an amount of at least $1,250,000.00 or an amount equal to the Inventory Cap, if higher, with TFG and BANK named as beneficiary with an insurance company rated A or better by AM Best. The life insurance proceeds shall be used first to pay BANK for the amount TFG owes BANK in order to release its lien on the Amish furniture, then to TFG for all Amish furniture owned by TFG at average wholesale cost, less a credit for the amount paid BANK, and any other amounts owed to TFG under this Agreement and any excess life insurance proceeds shall be paid to the Estate of JAMES STILWELL or ACV. Upon payment, TFG will convey title to as much of the Amish furniture free and clear of all liens, as was paid for by the insurance proceeds, to ACV.

3.10   If ACV shall at any time or times hereafter fail to obtain and maintain any of the policies of insurance required above, or fail to pay any premium in whole or in part relating to any such policies, then TFG may, but need not, obtain and cause to be maintained any or all of such policies and pay any part or all of the premiums due thereunder without thereby waiving the said default or any other default by ACV. Any sums so disbursed by TFG shall be additional indebtedness owed by ACV to TFG and shall incur interest at the default rate of 12%.

3.11   ACV shall implement and maintain an inventory and accounting system acceptable to TFG and BANK for the purpose of tracking the purchase and sale and payment of funds pursuant to this Agreement, which shall include, but not be limited to the following:

a)   Physical inventory will be taken by ACV once/month and ACV will do such spot inventories as directed by TFG. TFG may also conduct its own spot, random or complete inventories.

b)   ACV will maintain on a daily basis, a running book inventory.

c)   Whenever inventory records over a quarterly period indicate "inventory shrinkage" has occurred, ACV will pay TFG within five (5) days the amount of SHRINKAGE at average wholesale cost, plus 10% of the sale price of the missing inventory and inventory records will be adjusted in accordance therewith.

d)   ACV will establish and implement a physical coding system of inventory items acceptable to TFG, and every item will be backed by a Bill of Sale, purchase order or paid receipt in connection with its acquisition and a sales receipt in connection with its disposition.

5

3.12    ACV shall pay and be responsible for all expenses for the storage, transportation, handling, sales and distribution of said Amish furniture, as well as all costs incurred by TFG in connection with BANK financing of TFG'S purchase of Amish furniture, including, but not limited to interest, points, fees and other BANK charges incurred to maintain inventory financing by BANK.

3.13    ACV will keep account books and records giving complete information covering all transactions in connection with the purchase, sale, returns and distribution of Amish furniture and payment of the amounts due hereunder, and such books and records shall be open during normal business hours to the inspection of any duly authorized representative of TFG or BANK.

3.14    Inspections: TFG, BANK or their agents shall have the right, at any time and from time to time hereunder, to inspect and examine the Amish furniture and to copy any records relating thereto, provided that such inspection, examination or copying does not unreasonably interfere with ACV's Business.

3.15    ACV will use its best efforts to sell and merchandise Amish furniture promptly and in a profitable manner.

3.16    ACV shall not have any store wide sale of Amish furniture for less than average wholesale cost plus 10% without the consent of TFG except in the case of Amish furniture deemed unmarketable, obsolete or damaged in the opinion of ACV.

3.17    Security Agreement: ACV will execute any and all security agreements and UCC financing statements required by Article 9 of the Uniform Commercial Code, Section 9-114 in order for TFG to perfect a security interest in the Amish Furniture with priority over the creditors of ACV.

## 4.    TERM

4.1    This Agreement shall remain in effect for ten (10) years from the date of April 16, 1999.

4.2    Not until after April 15, 2004, shall ACV have the right to terminate this Agreement and then only upon thirty (30) days advance written notice to TFG and payment within said 30 days to TFG for the Amish furniture at current wholesale replacement cost or average wholesale cost, whichever is higher and all accrued and delinquent obligations owed by ACV to TFG. In addition, ACV will pay TFG a "residual payment" equal to two times 2% of the average annual gross retail sales of Amish furniture by ACV during the previous five

000080

years.    1/8 of said amount shall be paid for the next eight quarters thereafter or until April 15, 2009, which ever occurs first.

4.3    TFG shall have the right to terminate this Agreement any month after January 1, 2001. Written notice of termination shall be given to ACV 120 days in advance of the date of termination. In the event of termination by TFG, TFG will be paid within said 120 days the same amounts as in the event of termination by ACV except TFG shall not be entitled to the residual payment.

5.    <u>WARRANTIES AND COVENANTS OF ACV:</u>

5.1    ACV expressly warrants, covenants and agrees, so long as any indebtedness as hereinbefore described remains unpaid to TFG, as follows:

5.2    ACV is (or at time of conveyance will be) the sole owner of the Amish furniture in its existing inventory free from any lien, security interest or encumbrance in favor of any person or entity, has the right to convey its existing inventory of Amish furniture to TFG and will defend the collateral against the claims and demands of all persons.

5.3    Except for sales in the ordinary course of business, ACV shall not sell, assign, transfer, encumber or hypothecate in any manner the Amish furniture.

5.4    ACV is a Corporation duly organized, validly existing and in good standing under the laws of the State of Hlinois. ACV has the power and authority to carry on its business, to enter into this Consignment Agreement and to carry out the provisions hereof.

5.5    ACV is not in violation of, and the execution, delivery and performance of and compliance with this Consignment Agreement, will not result in ACV being in violation of, or in conflict with, or constitute a default under any term or provisions of any mortgage, indenture, contract, agreement, instrument, judgement, decree, order, statute, rule or regulation applicable thereto.

5.6    There are no actions, suits or proceedings pending or to the knowledge of ACV threatened against or affecting ACV at law or in equity or before or by any federal, state, municipal or other governmental department, commissions, board, bureau, agency or instrumentality, domestic or foreign, which involve the possibility of any judgement or liability not fully covered by insurance and which may result in any material adverse change in ACV's business or the operations, properties or assets or in the condition (financial or otherwise) of ACV.

7                                        000081

6.    **CONTINGENCIES AND CONDITIONS:**

6.1    TFG'S obligations under this Agreement are contingent upon:

6.2    TFG obtaining a line of credit in the minimum of 1.0 million dollars from BANK for the purchase of Amish furniture on terms acceptable to TFG and ACV.

6.3    Personal guarantee to TFG by JAMES and MARGARET STILWELL of all funds owed by ACV to TFG and for the obligations of ACV under this Agreement whether to TFG or BANK. In addition, STILWELL, will co-sign and will cause ATWOOD MEAT SERVICE, INC. to co-sign the Security Agreements and UCC Financing Statements referred to in paragraph 3.17.

6.4    Life Insurance on JAMES STILWELL in the amount of at least 1.25 Million Dollars or an amount equal to the Inventory Cap, if higher, with TFG and BANK as beneficiaries to the extent of the amounts owed to them, with an Insurance Company rated "A" or better by AM Best.

6.5    Casualty insurance coverage equal to average wholesale cost on all furniture inventory with TFG and BANK named as an additional insured party with an Insurance Company rated "A" or better by AM Best.

6.6    Product Liability Insurance in an amount of at least One Million Dollars with TFG named as an additional insured party, with an Insurance Company rated "A" or better by AM Best.

6.7    An inventory and accounting system acceptable to TFG and BANK for the purpose of tracking the Amish furniture business and payments due under this Agreement.

**PERFORMANCE:**

7.1    If ACV (1) defaults by failing to pay when due any single installment or payment required to be made to TFG or BANK under the terms of this Consignment Agreement and such default is not cured within ten (10) days of written notice to ACV; or (2) defaults in the performance of any other covenant or agreement hereof and such default is not cured by ACV within thirty (30) days after written notice to ACV (unless the default involves a dangerous condition which shall be cured forthwith); TFG may treat such a default as a breach of this Agreement and TFG shall have any one or more of the following remedies in addition to all other rights and remedies provided at law or in equity: (i) maintain an action for any unpaid amounts; (ii) declare the entire

000082

balance due and maintain an action for such amount; (iii) forfeit the ACV's interest this Agreement, retain all sums paid; and with or without notice and without process of law, take possession of said furniture, or any part thereof that remains unsold or in the custody of ACV, and for that purpose may enter any of the premises of ACV to search for or obtain said furniture, and consignee hereby waives any trespass or any rights of action for damages that it might or could have against consignor or its agents by reason of consignor, or its agents, procuring or attempt to procure possession of Amish furniture after forfeiture as aforesaid; or (iv) upon ACV's failure to surrender possession of the Amish furniture to TFG, maintain an action for possession of the Amish furniture under the Illinois Replevin Act.

7.2    If default is based upon the failure to pay sales taxes, insurance, liens or other charges relating to the Amish furniture as provided in this Agreement, TFG may elect to make such payments, which amounts shall become immediately due and payable by ACV to TFG, and if not paid within ten (10) days of demand shall then be payable together with 12% interest per annum.

## 8.    DEFAULT, FEES:

8.1    ACV shall pay all reasonable attorney's fees and costs incurred by TFG in enforcing the terms and provisions of this Consignment Agreement, or in defending any proceeding to which TFG is made a party defendant as a result of the acts or omissions of ACV.

8.2    All rights and remedies given to TFG, shall be distinct, separate, and cumulative, and the use of one or more thereof shall not exclude or waive any other right or remedy allowed by law, unless specifically waived in this Agreement. No waiver of any breach or default of either party hereunder shall be implied from any omission by the other party to take any action on account of any similar or different breach or default. The payment or acceptance of money after it falls due after knowledge of any breach of this agreement by TFG, or after the termination of ACV's right of possession of the Amish Furniture hereunder, or after the service of any notice, or after commencement of any suit, or after final judgment for replevin shall not reinstate, continue, or extend this Agreement nor affect any such notice, demand or suit or any right hereunder not herein expressly waived.

## 9.    DELINQUENT MONTHLY PAYMENTS:

9.1    ACV acknowledges that late payments by ACV to TFG of the amounts or other charges due hereunder will cause TFG to incur costs not contemplated by this Agreement, the exact amount of which will be extremely difficult to ascertain.

000083

Such costs include, but are not limited to, processing and accounting charges and late charges which may be imposed upon BANK by the terms of any note, and/or security agreement covering the Amish Furniture. Accordingly, if any installment or any sum due from ACV shall not be received by TFG or TFG'S designee within ten (10) days after said amount is due, then ACV shall pay to TFG a late charge equal to the greater of (i) five percent (5%) per month of such overdue amount, plus any attorney's fees incurred by TFG by reason of ACV's failure to pay and/or other charges due hereunder; or (ii) One Hundred Dollars ($100.00). The parties hereby agree that such late charges represent a fair and reasonable estimate of the cost that TFG will incur by reason of the late payment by ACV. Acceptance of such late charges byTFG shall in no event constitute a waiver of ACV's default with respect to such overdue amount, nor prevent TFG from exercising any of the other rights or remedies granted hereunder.

10.    SEVERABILITY:

   10.1    Any provisions of this Consignment Agreement which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision hereof, and such other provisions shall remain in full force and effect.

11.    WAIVER:

   11.1    The waiver by TFG of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition of any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of payment hereunder by TFG shall not be deemed to be a waiver of any preceding breach by ACV of any term, covenant or condition of this Agreement, other than the failure of ACV to pay the particular delinquency so accepted, regardless of the TFG'S knowledge of such preceding breach at the time of acceptance of such delinquent payment.

12.    NOTICES:

   12.1    All notices and demands which may, or are required to be given by either party to the other hereunder, shall be in writing. All notices and demands by the TFG to the ACV shall be sent by United States Certified or Registered mail, postage prepaid, addressed to ACV at the business address, or to such other places as the ACV may from time to time designate in writing to the TFG or may be personally served upon ACV. All notices and demands by ACV to TFG shall be sent by United States Certified or Registered Mail, postage prepaid, addressed to TFG, 2220 Marquette Road, Peru, IL or to such other person or place or persons or places as the TFG may from time to time designate in writing to the ACV. All notices shall be effective as of the date of receipt or certification. Delivery may also be made by an established national overnight delivery service (such as Federal Express).

000084

13. **MARGINAL HEADINGS:**

    13.1   The marginal headings and titles to the Paragraphs of this Agreement are not a part of the Agreement and shall have no effect upon the construction or interpretation of any part hereof.

14. **TIME:**

    14.1   Time is of the essence in this Consignment Agreement and each and all of its provisions.

15. **SUCCESSORS AND ASSIGNS; BINDING EFFECT:**

    15.1   The covenants and conditions herein contained shall, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of the parties hereto.

    15.2   ACV may not assign its interest, rights or obligations herein without the consent of TFG.

16. **SUBORDINATION:**

    16.1   Upon the request of TFG, ACV herewith subordinates or will subordinate its rights hereunder to any lien of any Security Agreement by TFG to any bank, or other lending institution now or hereafter placed against the Amish furniture. ACV shall execute upon request a document indicating said subordination. The provisions of this paragraph shall be self-operative and no further instrument of subordination shall be required .

17. **SURVIVAL OF REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS:**

    17.1   TFG and ACV each hereby agree that their respective representations, warranties, covenants and agreements set forth herein shall survive the closing and shall thereafter be fully effective and enforceable.

18. **AGENTS:**

    18.1   TFG'S agent for all matters under this agreement is DICK JANKO, until ACV is notified of a different agent pursuant to paragraph 12.1.

    18.2   ACV's agent for all matters under this Agreement is JAMES STILWELL, until TFG is notified of a different agent pursuant to paragraph 12.1.

000085

19.    **ENTIRE AGREEMENT**:

19.1    This Consignment Agreement contains the entire agreement of the parties hereto with respect to the matters covered hereby, and no other agreement, statement or promise made by any party hereto, or to any employee, officer or agent of any party hereto, which is not contained herein, shall be binding or valid.

This Agreement is made ___17___ day, of ___November___, 2000.

ACV:                                              TFG:

AMISHLAND COUNTRY                 TUSCOLA FURNITURE GROUP, LLC.,
VILLAGE, INC.,                             An Illinois Limited Liability Company,
an Illinois Corporation                    By its manager:    JANKO FINANCIAL
                                                     GROUP, L.L.C., An Limited Liability
                                                     Company,

BY: _____    BY: _____
Printed: JAMES STILLWELL              RICHARD JANKO, Authorized Member
Its: ___President___                         2220 Marquette Road
                                                     Peru, IL 61354

JANKO\AMISHLND-TFG.AGR3SA

000086

## GUARANTY

WHEREAS, TUSCOLA FURNITURE GROUP, LLC., an Illinois Limited Liability Company, hereinafter referred to as "TFG" and AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation, hereinafter referred to as "ACV" are about to execute a document entitled "CONSIGNMENT AGREEMENT" dated ___Nov 17___, 2000, wherein TFG will consign Amish furniture to ACV; and

WHEREAS, JAMES STILWELL and MARGARET STILWELL, hereinafter referred to as "Guarantor", have a financial interest in ACV; and

WHEREAS, TFG would not execute the Consignment Agreement if Guarantor did not execute and deliver to TFG this Guarantee.

NOW, THEREFORE, for and in consideration of the execution of the foregoing Consignment Agreement by TFG and as a material inducement to TFG to execute said Consignment Agreement, Guarantor hereby unconditionally and irrevocably guarantees the prompt payment by ACV of all sums payable by ACV under said Consignment Agreement and the faithful and prompt performance by ACV of each and every one of the terms, conditions and covenants of said Consignment Agreement to be kept and performed by ACV.

It is specifically agreed and understood that the terms of the foregoing Consignment Agreement may be altered, affected, modified or changed by agreement between TFG and ACV, or by a course of conduct, and said Consignment Agreement may be assigned by TFG, or any assignee of TFG, without consent or notice to Guarantor and that this Guaranty shall thereupon and thereafter guarantee the performance of said Consignment Agreement as so changed, modified, altered or assigned.

This Guaranty shall not be released, modified or affected by failure or delay on the part of TFG to enforce any of the rights or remedies of TFG under said Consignment Agreement, whether pursuant to the terms thereof or at law or in equity.

Ten (10) days' notice of default shall be given to Guarantor, it being specifically agreed and understood that the guarantee of the undersigned is a continuing guarantee under which TFG may proceed forthwith and immediately against ACV or against Guarantor following any breach or default by ACV or for the enforcement of any rights which TFG may have as against ACV pursuant to or under the terms of the within Consignment Agreement at law or in equity.



EXHIBIT
9

000087

1

TFG shall have the right to proceed against the Guarantor hereunder following any breach or default by ACV without first proceeding against ACV and without previous notice to or demand upon ACV.

Guarantor hereby waives (a) notice of acceptance of this Guaranty; (b) demand of payment, presentation and protest; (c) all right to assert or plead any statute of limitations as to or relating to this Guaranty and the Consignment Agreement; (d) any right to require TFG to proceed against the ACV or any other Guarantor or any other person or entity liable to TFG; (e) any right to require TFG to proceed under any other remedy TFG may have before proceeding against Guarantor; and (f) any right of subrogation.

Guarantor does hereby subrogate all existing or future indebtedness of ACV to Guarantor to the obligations owed to TFG under this Consignment Agreement and this Guaranty.

In the event any action be brought by said TFG against Guarantor hereunder to enforce the obligation of Guarantor hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee which shall be fixed by the Court.

IN WITNESS WHEREOF, the undersigned have set their hands and seals this ___/7___ day of ___N o v___, 2000, at ___T u s c u l___ Illinois.

GUARANTOR:

_____
JAMES STILWELL

_____
MARGARET STILWELL

ADDRESS: _2 1 8   n   I O W A_
_A r t w o o d   I L L   6 1 9 1 3_

JANKO\GUARANTY.STL-TFG

2

000088

# NOTICE

Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the premiums for that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The premiums may be added to your total outstanding balance or obligation. The premiums may be more than the premiums for insurance you may be able to obtain on your own.

You acknowledge receipt of a copy of this notice.

AMISHLAND'S COUNTRY VILLAGE, INC.

Signature BY: JAMES E STILWELL:

Date   11/17/00

TUSCOLA FURNITURE GROUP, LLC BY ITS
MANAGER; JANKO FINANCIAL GROUP, LLC

Signature BY: RICHARD JANKO:

Date   11/17/00

Bankers Systems, Inc., St. Cloud, MN  Form CPIN-IL  11/7/96

**EXHIBIT**

tabbies

10

000069

NOV 20 2000 11:14 FR AG-DALLAS SERV CTR    2146546022 TO 912175783560  00039 001003

**POOR ORIGINAL**

**AMERICAN GENERAL FINANCIAL GROUP**

**Assignment**

☐ All American Life Insurance Company (AALL), P.O. Box 35844 Dallas, TX 75235-8883
☐ The American Franklin Life Insurance Company (AMFLIC), P.O. Box 19520, Springfield, IL 62794-9520
☐ American General Life Insurance Company (AGLI), P.O. Box 4373, Houston TX 77210-4373
☐ The Franklin Life Insurance Company (FLIC), #1 Franklin Square, Springfield, IL 62713-0001
☒ The Old Line Life Insurance Company of America (OLL), P.O. Box 35844, Dallas TX 75235-8883

Members of American General Financial Group. American General Financial Group is the marketing name for American General Corporation and its subsidiaries.

| 1. | CONTRACT IDENTIFICATION | You may use this form for multiple contracts that have the same contract owner and require the same signatures. All contracts must be assigned to the same assignee or all contracts released from assignment with same assignee. |
|---|---|---|

☐ Check Here If New Address

CONTRACT No.: 7604663

OWNER: Margaret Stilwell     SSN/TIN OR EIN: 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

Address: 218 N. Iowa
Atwood, IL 61913

Phone No.: (217) 578-3132
INSURED/ANNUITANT (if other than Owner): James E. Stilwell

| 2. ☐ ASSIGNMENT | For value received, I/we hereby assign and transfer to the named Assignee/Creditor as their interest may appear, the Contract number named above, issued by the Company, upon the life as named above and all moneys now or hereafter payable thereunder, subject to the conditions of said contract, the regulations of the Company and to any lien, charge, or indebtedness thereon now or hereafter existing in favor of the Company. |
|---|---|

Assignee/Creditor Name:
Assignee/Creditor Address:

| 3. ☒ RELEASE OF ASSIGNMENT | The consideration for which the Assignment was made, having been fully paid and satisfied, all right, title, and interest of the assignee in the above named Contract issued or assumed by the Company on the above named life is hereby relinquished. |
|---|---|

Assignee/Creditor Name: Janko Financial Group LLC.
Assignee/Creditor Address: 2220 Marquetta Rd Peru, IL 61354

| 4. | SIGN HERE FOR ABOVE REQUEST | This request must be dated and all required signatures must be written in ink, using full legal names. |
|---|---|---|

To assign this contract, this request must be signed by the person or persons who have the rights of ownership under the terms of the contract. For Corporate Owned contracts, this form must be signed by one officer followed by the officer's title. The request must be accompanied by a piece of corporate letterhead or paper with the corporate seal that has been signed by that officer. For contracts owned by a Partnership, the full name of the partnership should be written followed by the signatures of any partner, other than the Insured. For contracts owned by or assigned to a Trustee, Trustee signatures are required as instructed by the trust agreement.

**OVERLAP**

Under penalty of perjury, the contract owner(s) certify: (1) that the number(s) shown on this form is any (are our) correct social security (or taxpayer identification) number(s) and (2) that I am (we are) not subject to backup withholding under Section 340C(A)(1XC) of the Internal Revenue Code.

X _____  _____
Signature of Owner          Date
(or other party interested in contract)

To release the assignment of this contract, this request must be signed by the Assignee.

X Lawrence W. Bianchi / Authorized Member     In favor of Tuscola Furniture Group, LLC

Received and Recorded on The Old Line Life Insurance Company
DEC 01 2000
☒ ASSIGNMENT ☐ Complete
☒ RELEASE OF ASSIGNMENT

EXHIBIT

12/7/0 010:45
001120 005508

# THE OLD LINE LIFE Insurance Company of America

ADMINISTRATIVE OFFICES / PO BOX 35844 / DALLAS TX 75235 0844
214 654 6300 / 800 487 5433 / FAX 214 654 6008

December 4, 2000

JANKO FINANCIAL GROUP LLC
2220 MARQUETTA RD
PERU IL  61354

Policy Number    2604663          Insured, Margaret Stilwell

Owner, James E Stilwell

```
                *************************************
                **                                 **
                **  RELEASE OF ASSIGNMENT VERIFICATION  **
                **                                 **
                *************************************
```

The original document submitted to release the assignment on this
policy has been endorsed, recorded and made a part of the policy
records.

A copy of this release of assignment is attached for your records.

Sincerely,

Title Change Unit
Policyowner Service Department

Attachment

cc:    W0908 FRAN TONY M CARTER
       W0090 FRAN WILLIAM J LYONS

23/03
      An American General Company


EXHIBIT
12

NOV 20 2000 11:14 FR AG-DALLAS SERV CTR    2146546022 TO 912175783560

# POOR
## ORIGINAL  *250,000*

**AMERICAN GENERAL FINANCIAL GROUP**

**Assignment**

- ☐ All American Life Insurance Company (AAL), P.O. Box 35844 Dallas, TX 76235-8563
- ☐ The American Franklin Life Insurance Company (AMFLIC), P.O. Box 19520, Springfield, IL 62794-9520
- ☐ American General Life Insurance Company (AGL), P.O. Box 4373, Houston TX 77210-4373
- ☐ The Franklin Life Insurance Company (FLIC), #1 Franklin Square, Springfield, IL 62713-0001
- ☒ The Old Line Life Insurance Company of America (OLL), P.O. Box 35844, Dallas TX 75235-8563

Members of American General Financial Group. American General Financial Group is the marketing name for American General Corporation and its subsidiaries.

| 1. | CONTRACT IDENTIFICATION | You may use this form for multiple contracts that have the same contract owner and require the same signatures. All contracts must be assigned to the same assignee or all contracts released from assignment with same assignee. |
|---|---|---|

☐ Check Here if New Address

CONTRACT No.: 2604663

OWNER: Margaret Stilwell    SSN/TIN or EIN: 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

Address: 218 N. Town

Atwood, IL 61913

Phone No.: (217) 578-3731    578-3300

INSURED/ANNUITANT (if other than Owner): James E. Stilwell

| 2. | ☒ ASSIGNMENT | For value received, I/we hereby assign and transfer to the named Assignee/Creditor as their interest may appear, the Contract number named above, issued by the Company, upon the life as named above and all moneys now or hereafter payable thereunder, subject to the conditions of said contract, the regulations of the Company and to any lien, charge, or indebtedness thereon now or hereafter existing in favor of the Company. |
|---|---|---|

Assignee/Creditor Name: Tuscola Furniture Group, L.L.C.    ($250,000)

Assignee/Creditor Address: 2200 Marquette Rd  Peru, IL 61354

| 3. | ☐ RELEASE OF ASSIGNMENT | The consideration for which the Assignment was made, having been fully paid and satisfied, all right, title, and interest of the assignee in the above named Contract issued or assumed by the Company on the above named life is hereby relinquished. |
|---|---|---|

Assignee/Creditor Name: _____

Assignee/Creditor Address: _____

*NOT AN OVERLAP*

| 4. | SIGN HERE FOR ABOVE REQUEST | This request must be dated and all required signatures must be written in ink, using full legal names. |
|---|---|---|

To assign this contract, this request must be signed by the person or persons who have the rights of ownership under the terms of the contract. For Corporate Owned contracts, this form must be signed by one officer followed by the officer's title. The request must be accompanied by a piece of corporate letterhead or paper with the corporate seal that has been signed by that officer. For contracts owned by a Partnership, the full name of the partnership should be written followed by the signatures of any partner, other than the Insured. For contracts owned by or assigned to a Trustee, Trustee signatures are required as instructed by the trust agreement.

Under penalty of perjury, the contract owner(s) certify: (1) that the number(s) shown on this form is (are our) correct social security (or taxpayer identification) number(s); and (2) that I am (we are) not subject to backup withholding under Section 3406(A)(1)(C) of the Internal Revenue Code.

**ASSIGNMENT**

Signature of Owner: *Margaret Stilwell*    Date: 12/1/2000

Signature of co-owner (or other party interested in contract): _____    Date: _____

**RELEASE OF ASSIGNMENT**

To release the assignment of this contract, this request must be signed by the Assignee.

DEC 01 2000
Received and Recorded on _____
by The Old Line Life Insurance Company
Registrar _____

EXHIBIT 13



## THE OLD LINE LIFE Insurance Company of America

ADMINISTRATIVE OFFICES / PO BOX 35844 / DALLAS TX 75235 0844
214 654 6300 / 800 487 5433 / FAX 214 654 6008

December 4, 2000

TUSCOLA FURNITURE GROUP LLC
2220 MARQUETTA RD
PERU IL  61354

Re:  Insured, James E Stilwell
     Policy Number   2604663
     Owner, Margaret Stilwell

```
*********************************
*                               *
*    ASSIGNMENT VERIFICATION    *
*                               *
*********************************
```

The original document submitted to place an assignment on this policy
has been endorsed, recorded and made a part of the policy records.

A copy of this assignment is attached for your records.

If this assignment is released or transferred, please notify us in
writing.

Prepared By:  Title Change Unit
              Policyowner Service Department

Attachment

cc:   W0908 FRAN TONY M CARTER
      W0090 FRAN WILLIAM J LYONS

2303
23/03
      An American General Company

EXHIBIT
14

# AMERICAN GENERAL
## FINANCIAL GROUP

$1,000,000

☐ All American Life Insurance Company (AAL), P.O. Box 35844 Dallas, TX 75235-8683
☐ The American Franklin Life Insurance Company (AMFLIC), P.O. Box 19520, Springfield, IL 62794-9520
☐ American General Life Insurance Company (AGL), P.O. Box 4373, Houston TX 77210-4373
☐ The Franklin Life Insurance Company (FLIC), #1 Franklin Square, Springfield, IL 62713-0001
☒ The Old Line Life Insurance Company of America (OLL), P.O. Box 35844, Dallas TX 75235-8683

Members of American General Financial Group. American General Financial Group is the marketing name for American General Corporation and its subsidiaries.

| | |
|---|---|
| **1. CONTRACT IDENTIFICATION**<br><br>☐ Check Here if New Address | You may use this form for multiple contracts that have the same contract owner and require the same signatures. All contracts must be assigned to the same assignee or all contracts released from assignment with same assignee.<br><br>CONTRACT No.: __2604663__<br><br>OWNER: __MARGARET Stilwell__     SSN/TIN OR EIN: __332 - 46 - 1792__<br><br>Address: __218 N. Iowa__<br>__Atwood, IL. 61913__<br><br>Phone No.: __(217) 578-3132__        __578-3322__<br>INSURED/ANNUITANT (if other than Owner): __James E. Stilwell__ |
| **2. ☒ ASSIGNMENT** | For value received, I/we hereby assign and transfer to the named Assignee/Creditor as their interest may appear, the Contract number named above, issued by the Company, upon the life as named above and all moneys now or hereafter payable thereunder, subject to the conditions of said contract, the regulations of the Company and to any lien, charge, or indebtedness thereon now or hereafter existing in favor of the Company.<br><br>Assignee/Creditor Name: __1st mid-Illinois Bank & Trust ( 1,000,000 )__<br><br>Assignee/Creditor Address: __PO Box 18, 410 S. main Tuscola, IL 61953__ |
| **3. ☐ RELEASE OF ASSIGNMENT** | The consideration for which the Assignment was made, having been fully paid and satisfied, all right, title, and interest of the assignee in the above named Contract issued or assumed by the Company on the above named life is hereby relinquished.<br><br>Assignee/Creditor Name: _____<br><br>Assignee/Creditor Address: _____ |
| **4. SIGN HERE FOR ABOVE REQUEST**<br><br><br><br><br>**ASSIGNMENT**<br><br>**RELEASE OF ASSIGNMENT** | This request must be dated and all required signatures must be written in ink, using full legal names.<br><br>To assign this contract, this request must be signed by the person or persons who have the rights of ownership under the terms of the contract. For **Corporate Owned** contracts, this form must be signed by one officer followed by the officer's title. The request must be accompanied by a piece of corporate letterhead or paper with the corporate seal that has been signed by that officer. For contracts owned by a **Partnership**, the full name of the partnership should be written followed by the signatures of any partner, other than the insured. For contracts owned by or assigned to a **Trustee**, Trustee signatures are required as instructed by the trust agreement.<br><br>Under penalty of perjury, the contract owner(s) certify: (1) that the number(s) shown on this form is my (are our) correct social security (or taxpayer identification) number(s); and (2) that I am (we are) not subject to backup withholding under Section 3406(A)(1)(C) of the Internal Revenue Code.<br><br>__Margaret Stilwell__  __1/11/01__<br>Signature of Owner        Date        Signature of co-owner        Date<br>(or other party interested in contract)<br><br>To release the assignment of this contract, this request must be signed by the Assignee. |

AGLC 0205

_____     JAN 2 9 2001
Assignee        Date

Received and Recorded on _____
by The Old Line Life Insurance Company
Registrar _____

EXHIBIT 15

This assignment is recorded subject to a prior collateral assignment executed by the policyowner.



# THE OLD LINE LIFE Insurance Company of America

ADMINISTRATIVE OFFICES / PO BOX 35844 / DALLAS TX 75235 0844
214 654 6300 / 800 487 5433 / FAX 214 654 6008

January 30, 2001

1ST MID ILLNOIS BANK & TRUST
PO BOX 18
TUSCOLA IL  61953

Re:  Insured, James E Stilwell
     Policy Number   2604663
     Owner, James E Stilwell

```
************************************
*                                  *
*    ASSIGNMENT VERIFICATION       *
*                                  *
************************************
```

The original document submitted to place an assignment on this policy
has been endorsed, recorded and made a part of the policy records.

A copy of this assignment is attached for your records.

If this assignment is released or transferred, please notify us in
writing.

Prepared By:  Title Change Unit
              Policyowner Service Department

Attachment

cc:  W0908 FRAN TONY M CARTER
     W0090 FRAN WILLIAM J LYONS

2303

23/03
      An American General Company



EXHIBIT

16

 **AMERICAN GENERAL**

*Insurance Service Center for:*

**American General Life Insurance Company**

05/02/2003

MARGARET STILWELL
PO BOX 538
ATWOOD IL 61913-0538

| | |
|---|---|
| Contract Number: | 2604663 |
| Insured: | JAMES E STILWELL |
| Claim Number: | 03D00893OLL |

Dear MRS STILWELL:

We are sorry to learn of the loss of JAMES E STILWELL. Please extend our sincere sympathy to all the members of the family.

The Illinois Department of Insurance requires that our Company notify you that interest shall accrue on the proceeds payable because of the death of the insured from the date of death, at the rate of 9 percent on the total amount payable or the face amount, if payments are to be made in installments until the total payment or first installment is paid, unless payment is made within fifteen (15) days from the date of receipt by the Company of due proof of loss.

Sincerely,
INDIVIDUAL CLAIMS DEPARTMENT

cc:    W0908
       W0090

**EXHIBIT**
tabbies°
17

3096

011

**American General Life Insurance Company**
*Member of American International Group, Inc.*
Service Center • P.O. Box 4373 • Houston, TX 77210-4373 • 1.800.487.5433 • Fax 214.654.6008



May 12, 2003

Mr. William J. Lyons, LUTCF
District Manager
American General Life Insurance Company
231 N. Main Street
Atwood, IL 61913-0260

**Re:    Life Insurance Policy No. 2604663**

Dear Mr. Lyons:

Pursuant to your letter of May 6, 2003, Tuscola Furniture Group, LLC ("TFG") and First Mid-Illinois Bank & Trust ("Bank"), are jointly making application on the Collateral Assignments they received to secure an obligation under a certain Consignment Agreement dated November 17, 2000 between TFG and Amishland Country Village, Inc.

As itemized on the attached Exhibit A, the total amount owed by Amishland Country Village, Inc. and guaranteed by James and Margaret Stilwell is $ _512,974.50_ . This amount includes the amounts that TFG owes the Bank.

Please issue your draft made payable to "Tuscola Furniture Group, LLC. and First Mid-Illinois Bank & Trust", and have it delivered to First Mid-Illinois Bank & Trust - 2229 South Neil - Champaign, IL 61820 - ATTN: Thomas J. Chamberlain. The signature of the Bank officer below acknowledges and confirms this direction.

Upon receipt of this amount TFG and the Bank will relinquish all Assignments against the proceeds on the life insurance policy number 2604663. Specifically, these are the Assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19, 1999 for $500,000.00, September 25, 2000 for $1,500,000.00, and January 11, 2001 for $1,000,000.00.



EXHIBIT

_18_



Mr. William J. Lyons
May 12, 2003
Page 2

Finally, we have enclosed a completed Claimant's Statement on the form you provided for both TFG and Janko Financial Group, LLC.

Very truly yours,

First Mid-Illinois Bank & Trust

By: _____

Thomas J. Chamberlain
Community President

Acknowledgment:

The undersigned, on behalf of Tuscola Furniture Group, LLC and Janko Financial Group, LLC, the manager of TFG hereby acknowledges and confirms the directions above.

Tuscola Furniture Group, LLC and
Janko Financial Group, LLC,
the manager of TFG

By: _____

Lawrence W. Bianchi
Their Authorized Representative

Enclosures

5/20/0 3:58P
005607 000141

EXHIBIT A

## TUSCOLA FURNITURE GROUP, LLC (TFG)
### Amounts due from Stilwells/ACV
### As of April 30, 2003

| | Principal | Interest (Prime) + 10 % of Reported Sales | Total |
|---|---|---|---|
| 3/31/03 - 1st Qtr Financials (thru 2/28, transactions consistently 1 month behind) | 404,951.63 | 71,810.39 | 476,762.02 |
| March    (1,359.98 + 1,461.71) | | 2,821.69 | 2,821.69 |
| April    (4,882.40 + 1,414.56) | | 6,296.96 | 6,296.96 |
| | 404,951.63 | 80,929.04 | 485,880.67 |
| | | | |
| $101,780.32 unlocated inventory at cost Unknown sales price certainly higher, TFG entitled to a minimum of 10% fee. | | | 10,178.04 |
| | | | |
| JFG/TFG credit application guaranty claim from Eagle Industries for unauthorized purchases made by Stilwell outside the system. (4,463.91 + 7,250.88) | | | 11,714.79 |
| | | | |
| Legal | | | 5,201.00 |
| | | | 512,974.50 |

Due from Stilwell 4-30-03.xls

MAY 07 '03 15:25 FR AMERICAN N LIFE

**Proof of Death**
**- Claimant's Statement**

# AIG  AMERICAN GENERAL

**American General Life Insurance Company**
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

**To Be Completed By The Beneficiary**

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 10-07-54 | Heart Attack | 5/02/03 |

**POLICIES DECEASED HELD WITH THIS COMPANY:**

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | $4,000,000.00 | | |

I hereby certify that the policy of insurance for the listed policy has been  ☐ ENCLOSED  ☐ LOST  ☐ DESTROYED

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| First Mid-Illinois Bank & Trust | | Assignee/Creditor |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| 2229 South Neil | Champaign | IL | 61820 | (217) 359-9889 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim?  ☐ YES  ☒ NO   If yes, what amount? $_____   (Attach copy of assignment)

How do you want proceeds paid?  ☒ Lump Sum  *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.

Settlement ☐ Option   If Option, give details:_____

**IMPORTANT:** Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.)?  ☐ YES  ☐ NO    (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

First Mid-Illinois Bank & Trust
PLEASE SIGN HERE  BY: *Thomas J. Chamberlain*     Thomas J. Chamberlain, Community President

| Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number. | CLAIMANT'S S.S. NO. | OR | TAX I.D. NO. 37-0404035 |
|---|---|---|---|

Note: If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

**CERTIFICATION:** Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

DATE 5-12-03

CLAIMANT'S SIGNATURE
First Mid-Illinois Bank & Trust
PLEASE SIGN HERE  BY: *Thomas J. Chamberlain*     Thomas J. Chamberlain, Community President

**WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?** SHOW BELOW

First Mid-Illinois Bank & Trust
ATTN:  Thomas J. Chamberlain, Community President
2229 South Neil
Champaign, IL 61820



# *Tuscola Furniture Group, LLC*

*Michael M. Janko*, CPA, JD
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-9902
Fax (630) 964-9903

*Richard F. Janko*
*Lawrence W. Bianchi*
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3380
Fax (815) 223-7160
lfg.Peru@insightbb.com

12 May 2003

VIA OVERNIGHT MAIL DELIVERY

Mr. William J. Lyons, LUTCF
District Manager
American General Life Insurance Company
231 N. Main Street
Atwood, IL 61913-0260

     RE:    Life Insurance Policy No. 2604663

Dear Mr. Lyons:

     Pursuant to your letter of May 6, 2003, Tuscola Furniture Group, LLC ("TFG") and First Mid-Illinois Bank & Trust Company ("Bank"), are jointly making application on the Collateral Assignments they received to secure an obligation under a certain Consignment Agreement dated November 17, 2000 between TFG and Amishland Country Village, Inc.

     As itemized on the attached Exhibit A, the total amount owed by Amishland Country Village, Inc. and guaranteed by James and Margaret Stilwell is $512,974.50. This amount includes the amounts that TFG owes the Bank.

     Please issue your draft made payable to "Tuscola Furniture Group, LLC and First Mid-Illinois Bank & Trust," and have it delivered to the Bank at 2229 South Neil, Champaign, Illinois 61820, Attn: Thomas J. Chamberlain, Community President. The signature of the Bank officer below acknowledges and confirms this direction.

     Upon receipt of this amount, TFG and the Bank will relinquish all Assignments against the proceeds on the life insurance policy number 2604663. Specifically, these are the Assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19, 1999 for $500,000, September 25, 2000 for $1,500,000, and January 11, 2001 for $1,000,000.

**EXHIBIT**

tabbies®  *19*

Finally, we have also enclosed a completed Claimant's Statement on the form you provided for both TFG and Janko Financial Group, LLC.

Very truly yours,

Tuscola Furniture Group, LLC and
Janko Financial Group, LLC,
the manager of TFG

By: _Lawrence W. Bianchi_
Lawrence W. Bianchi
Their Authorized Representative

Acknowledgment:

The undersigned, on behalf of First Mid-Illinois Bank & Trust hereby acknowledges and confirms the directions above.

First Mid-Illinois Bank
& Trust

By: _Thomas J. Chamberlain_
Thomas Chamberlain
Community President

Enclosures

cc:    First Mid-Illinois Bank & Trust
        Richard L. Broch, Esq.
        Timothy J. Howard, Esq.
        Richard Heavner, Esq.

g:\j-l\janko financial\tuscola furniture grp\cor\insurance ltr

5/20/0 31:58P
005607 000148

## TUSCOLA FURNITURE GROUP, LLC (TFG)
### Amounts due from Stilwells/ACV
### As of April 30, 2003

| | Principal | Interest (Prime) + 10 % of Reported Sales | Total |
|---|---|---|---|
| 3/31/03 - 1st Qtr Financials (thru 2/28, transactions consistently 1 month behind) | 404,951.63 | 71,810.39 | 476,762.02 |
| March (1,359.98 + 1,461.71) | | 2,821.69 | 2,821.69 |
| April (4,882.40 + 1,414.56) | | 6,296.96 | 6,296.96 |
| | 404,951.63 | 80,929.04 | 485,880.67 |
| $101,780.32 unlocated inventory at cost Unknown sales price certainly higher, TFG entitled to a minimum of 10% fee. | | | 10,178.04 |
| JFG/TFG credit application guaranty claim from Eagle Industries for unauthorized purchases made by Stilwell outside the system. (4,463.91 + 7,250.88) | | | 11,714.79 |
| Legal | | | 5,201.00 |
| | | | 512,974.50 |

Due from Stilwell 4-30-03


2:05-cv-02160-MPM-DGB   #83-3    Page 63 of 83

005807 000149

## Tuscola Furniture Group, LLC  (TFG)
### STILWELL - Inventory Reconciliation

**3/31/03**                                                             404,951.63

COGS deducted from physical count (since sold) but not yet paid for by Stilwell:
    Thru 3/31/03                                    201,896.27
    1st three (3) days of April, 2003                      0.00
                                                                          (201,896.27)
                                                                           203,055.36

Inventory count @ 4/3/03 by Cherub Financial                             (101,275.04)

*Shortage*                                                                 101,780.32

RP
5/8/2003

MAY 09 '03 10:45 FR AMERIC  GEN LIFE          TO 916152  1173

# AIG  AMERICAN GENERAL

**Proof of Death - Claimant's Statement**

**American General Life Insurance Company**
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

To Be Completed By The Beneficiary

**DECEASED**

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 10/07/54 | Heart Attack | 5/02/03 |

POLICIES DECEASED HELD WITH THIS COMPANY:

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | $4,000,000 | | |

I hereby certify that the policy of insurance for the listed policy has been   ☐ ENCLOSED   ☐ LOST   ☐ DESTROYED

**CLAIMANT**

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| TUSCOLA FURNITURE GROUP, LLC | | ASSIGNEE / CREDITOR |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| 2220 MARQUETTE RD | PERU | IL | 61354 | (815) 223-3380 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim?   ☐ YES   ☒ NO   If yes, what amount? $_____   (Attach copy of assignment)

How do you want proceeds paid?   ☒ Lump Sum   *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.   ☐ Settlement Option   If Option, give details:_____

**IMPORTANT:** Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.)   ☐ YES   ☒ NO   (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE   Tuscola Furniture Group, LLC By Its Authorized Representative   Lawrence W. Bianchi

**TAXPAYER I.D. NO.**

| Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number. | CLAIMANT'S S.S. NO. | OR | TAX I.D. NO. # 36-4391423 |
|---|---|---|---|

**Note:** If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

**CERTIFICATION:** Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

PLEASE SIGN HERE   CLAIMANT'S SIGNATURE   Tuscola Furniture Group, LLC By Its Authorized Representative   Lawrence W. Bianchi   DATE   5/09/03

**MAILING**

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?   SHOW BELOW

See Attached Letter

L 2843 Rev0103                                    Page 1 of 2



# Tuscola Furniture Group, LLC

*Michael M. Janko*, CPA, JD
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-9902
Fax (630) 964-9903

*Richard F. Janko*
*Lawrence W. Bianchi*
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3380
Fax (815) 223-7160

28 May 2003

Mr. William J. Lyons, LUTCF
District Manager
American General Life Insurance Company
231 N. Main Street
Atwood, IL 61913-0260

VIA FAX (217/578-3292)
& OVERNIGHT MAIL

RE:    Life Insurance Policy No. 2604663

Dear Mr. Lyons:

Please accept this letter as an amendment to my letter dated 12 May 2003. When listing "all Assignments" against the proceeds on the life insurance policy number 2604663, I inadvertently left out an assignment to Tuscola Furniture Group, LLC dated November 21, 2000 for $250,000.

Paragraph four of my letter dated 12 May 2003 is hereby amended to read as follows:

"Upon receipt of this amount, TFG and the Bank will relinquish all Assignments against the proceeds on the life insurance policy number 2604663. Specifically, these are the assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19, 1999 for $500,000, September 25, 2000 for $1,500,000, November 21, 2000 for $250,000 and January 11, 2001 for $1,000,000."

Please contact me immediately if any further documentation should be needed. Thank you for your assistance.

Very Truly Yours,

Tuscola Furniture Group, LLC and
Janko Financial Group, LLC, the manager of TFG

By: *Lawrence W. Bianchi*
Lawrence W. Bianchi
Their Authorized Representative

cc:    First Mid-Illinois Bank & Trust
Richard L. Broch, Esq.
Timothy J. Howard, Esq.
Richard Heavner, Esq.

**EXHIBIT**
20



 **AMERICAN GENERAL**

Company

*Insurance Service Center for:*

American General Life Insurance

June 10, 2003

TUSCOLA FURNITURE GROUP LLC
ATTN: LAWRENCE BIANCHI
2220 MARQUETTE RD
PERU IL 61354-1538

| | |
|---|---|
| Contract Number: | 2604663 |
| Insured: | JAMES STILWELL |
| Claim Number: | 03D00893OLL |

Dear Mr. Mr. Bianchi:

We are in receipt of the certified death certificate for the above-referenced insured under Policy Number 2604633.

Our records indicate in December 2000, a Collateral Assignment was made under Policy Number 2604663 to Tuscola Furniture Group, LLC for the amount of $250,000.00. Our records do not reflect a release of this assignment.

Therefore, in order to continue processing this claim, please review your records and determine if the Collateral Assignment is still in effect, or, if it has been released. We will need a letter from this business signed by an Officer of the Company, giving the amount of debt still owed, or, a release of the assignment.

The Rules and Regulations of the Illinois Department of Insurance requires that our Company advise you that if you wish to take this matter with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 100 West Randolph Street, Chicago, Illinois 60601 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

If you should have any questions regarding this information or forms, please do not hesitate to contact our office at 1.800.487.5433.

Sincerely,
INDIVIDUAL CLAIMS DEPARTMENT

cc:     W0908
        W0090

**EXHIBIT**

tabbies

21

3009

American General Life Insurance Company
*Member of American International Group, Inc.*
Service Center • P.O. Box 4373 • Houston, TX 77210-4373 • 1.800.487.5433 • Fax 214.654.6008

 **AMERICAN GENERAL**

Company

_Insurance Service Center for:_

**American General Life Insurance**

June 10, 2003

JANKO FINANCIAL GROUP, LLC
ATTN: LAWRENCE BIANCHI
2220 MARQUETTE RD
PERU IL 61354-1538

| | |
|---|---|
| Contract Number: | 2604663 |
| Insured: | JAMES STILWELL |
| Claim Number: | 03D00893OLL |

Dear Mr. Bianchi:

We are in receipt of a claimant's statement signed by you for the benefit of Janko Financial Group LLC under Policy Number 2604633.

Our records show that In April 2000 and in October 2000, there were Collateral Assignments against the above policy to Janko Financial Group, LLC. In December 2000, we received a release of the Collateral Assignment to Janko Financial Group, LLC. Our records do not reflect a Collateral Assignment to Janko Financial Group, LLC after December 2000. According to our records, there is no debt owing to Janko Financial Group, under Policy 2604633. If you have proof that there is debt owing to this company against this policy, please send us the proof, within fifteen days from the date of this letter.

The Rules and Regulations of the Illinois Department of Insurance requires that our Company advise you that if you wish to take this matter with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 100 West Randolph Street, Chicago, Illinois 60601 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

If you should have any questions regarding this information or forms, please do not hesitate to contact our office at 1.800.487.5433.

Sincerely,
INDIVIDUAL CLAIMS DEPARTMENT

cc:    W0908
       W0090

3009

0B1

 



**AMERICAN GENERAL**

Company

*Insurance Service Center for:*

American General Life Insurance

June 10, 2003

FIRST MID-ILLINOIS BANK & TRUST
ATTN: THOMAS J CHAMBERLAIN, COMMUITY PRESIDENT
2229 SOUTH NEIL ST
CHAMPAIGN, IL 61820-2001

COPY

| | |
|---|---|
| Contract Number: | 2604663 |
| Insured: | JAMES STILWELL |
| Claim Number: | 03D008930LL |

Dear Mr. Chamberlain:

We are in receipt of the certified death certificate for the above-referenced insured under Policy Number 2604633.

Our records indicate in January 2001, a Collateral Assignment was made under Policy Number 2604663 to First Mid Illinois Bank and Trust. Our records do not reflect a release of this assignment.

Therefore, in order to continue processing this claim, please review your records and determine if the Collateral Assignment is still in effect, or, if it has been released. We will need a letter from this business signed by an Officer of the Company, giving the amount of debt still owed, or, a release of the assignment.

The Rules and Regulations of the Illinois Department of Insurance requires that our Company advise you that if you wish to take this matter with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 100 West Randolph Street, Chicago, Illinois 60601 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

If you should have any questions regarding this information or forms, please do not hesitate to contact our office at 1.800.487.5433.

Sincerely,
INDIVIDUAL CLAIMS DEPARTMENT

cc:     W0908
        W0090

3009

# **J**anko Financial Group, L.L.C.

*Real Estate Investments and Financial Management*

*Michael M. Janko,* CPA, JD
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-9902
Fax (630) 964-9903
Rp@jankofinancial.com

*Richard F. Janko*
*Lawrence W. Bianchi*
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3380
Fax (815) 223-7160
Jfg.peru@insightbb.com

11 June 2003

Ray Sawicki, Director of Claims
American General Life
6363 Forrest Park Rd.
Dallas, TX 75235-5460

**VIA FAX (214/654-6047) &
REGULAR MAIL**

RE:   **LIFE INSURANCE POLICY No.  2604663**

Dear Mr.  Sawicki:

Thank you for the opportunity to provide a further explanation for a rather complex situation. Enclosed are copies of the following letters that I will reference in this correspondence:

**12 May 2003** - Letter to William J.  Lyons, District Manager for AIG from Lawrence W.
Bianchi, Authorized Representative for Tuscola Furniture Group, LLC & Janko
Financial Group, LLC (letter acknowledged by Thomas Chamberlain, Community
President for First Mid-Illinois Bank & Trust);

**12 May 2003** - Letter to William J.  Lyons, District Manager for AIG from Thomas
Chamberlain, Community President for First Mid-Illinois Bank & Trust (letter
acknowledged by Lawrence W.  Bianchi, Authorized Representative for Tuscola
Furniture Group, LLC & Janko Financial Group, LLC);

**28 May 2003** - Letter to William J.  Lyons, District Manager for AIG from Lawrence W.
Bianchi, Authorized Representative for Tuscola Furniture Group, LLC & Janko
Financial Group, LLC.

**On 16 April 1999,** Janko Financial Group (JFG), LLC entered into a Consignment Agreement for the retailing of Amish Furniture with Amishland Country Village, Inc.  and guaranteed personally by James and Margaret Stilwell.  Section 3.9 of this original Consignment Agreement required that JFG and their lender, First Mid-Illinois Bank & Trust (FMIB), receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $2,000,000.

**On 19 April 1999,** JFG received an assignment of life insurance in the amount of $500,000 from Margaret Stilwell, owner of policy number 2604663 with James Stilwell as the insured. However, it was not until **25 September 2000** that JFG received a second assignment of life insurance for the same policy in the amount of $1,500,000 from Margaret Stilwell.



On 16 November 2000, JFG signed an Assignment & Assumption Agreement with a newly formed LLC, Tuscola Furniture Group (TFG), LLC. This new entity is owned 70% by JFG with JFG acting as managing member. This agreement specifically included and lists any rights to insurance assignments relating to the original Consignment Agreement.

On 17 November 2000, TFG entered into a new Consignment Agreement with Amishland Country Village, Inc and guaranteed personally by James and Margaret Stilwell. This new agreement modified and replaced the previous agreement. Once again, Section 3.9 of the new Consignment Agreement required that TFG and their lender FMIB receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $1,250,000.

On 20 November 2000, in support of the Assignment & Assumption Agreement between JFG & TFG, JFG signed a release of assignment on policy number 2604663 **"In favor of Tuscola Furniture Group, LLC."** This release was a transfer of all rights of insurance assignment from JFG to TFG.

On 21 November 2000, TFG received an assignment of life insurance in the amount of $250,000 from Margaret Stilwell, owner of policy number 2604663 with James Stilwell as the insured. Then, on 11 January 2001, FMIB received an assignment of life insurance for the same policy in the amount of $1,000,000 from Margaret Stilwell.

The preceeding chronology of events resulted in the following assignments from Margaret Stilwell on policy number 2604663:

> **Tuscola Furniture Group, LLC - $2,000,000** (assignment transferred to Tuscola Furniture Group, LLC via Agreement dated 16 November 2000 and Release dated 20 November 2000);
>
> **Tuscola Furniture Group, LLC - $250,000** (21 November 2000);
>
> **First Mid-Illinois Bank & Trust - $1,000,000** (11 January 2001).

Therefore, the life insurance assignments received from Margaret Stilwell on policy number 2604663 in satisfaction of the requirements of the Consignment Agreements (dated 16 April 1999 and 17 November 2000) totaled **$3,250,000.**

These events lead us to the claim being made jointly by TFG and FMIB to American General Life. As documented in the information submitted by JFG, TFG and FMIB, a joint claim is being made for $512,974.50 in conjunction with the obligations of Amishland Country Village, Inc. and James and Margaret Stilwell per the Consignment Agreement date 17 November 2000. The payment of this claim in the amount of $512,974.50 would release all assignments to JFG, TFG and FMIB which total $3,250,000. Mr. Sawicki, as we discussed I believe that a review of the enclosed letters dated 12 May 2003 and 28 May 2003, provide American General Life with releases for all assignments totaling $3,250,000 upon receipt of the claim amount of $512,974.50.

I apologize for the complex nature of this letter. However, I do believe that I have provided a factual summary of the situation. Also, I would be glad to answer any questions that you might have on this matter. In any event please contact me after your legal department has completed their review. As I am sure you can appreciate, all parties concerned are anxiously awaiting payment of our claim.

Thank you for your kind attention.

Sincerely,

*Lawrence W. Bianchi*

Lawrence W. Bianchi/ Authorized Representative
Tuscola Furniture Group, LLC and
Janko Financial Group, LLC, the manager of TFG
:bm

Enclosures

cc:     Dick Janko
        Mike Janko
        Tom Chamberlain, FMIB
        Tim Howard, Attorney at Law

# Janko Financial Group, L.L.C.

*Real Estate Investments and Financial Management*

Michael M. Janko, CPA JD
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-0901
Fax (630) 964-0903
mjanko@jankofg.com

Richard F. Janko
Lawrence W. Bianchi
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3300
Fax (815) 223-7160
jfjanko@jankofg.com

25 June 2003

American General Life Insurance Company
Individual Claims Department
Box 4373
Houston, TX 77210-4373
Attention: Melinda Boyd

VIA FAX (713/620-4840) &
US MAIL

RE:    Contract #2604663
       Insured: James Stilwell
       Claim # 03D008930LL

Dear Sir:

Please accept this letter as a formal authorization for Lawrence W. Bianchi to act as signatory for Janko Financial Group, LLC in release of all assignments pertaining to Contract #2604663, James Stilwell-Insured, Claim # 03D00890LL. Also, please accept this letter as a formal authorization for Lawrence W. Bianchi to act as signatory for Tuscola Furniture Group, LLC on behalf of its manager Janko Financial Group, LLC in release of all assignments pertaining to Contract #2604663, James Stilwell-Insured, Claim #03D00890LL.

Janko Financial Group, LLC, an
Illinois limited liability company

_____
Richard F. Janko, One of Its Members

_____
Michael M. Janko, One of Its Members

_____
Lawrence W. Bianchi, One of Its Members

EXHIBIT
tabbies
23

 **AMERICAN GENERAL**

*Insurance Service Center for:*

**American General Life Insurance Company**

June 26, 2003

FIRST MID-ILLINOIS BANK & TRUST
ATTN: THOMAS CHAMBERLAIN
2229 SOUTH NEIL
CHAMPAIGN IL 61820-2001

| | |
|---|---|
| Contract Number: | 2604663 |
| Insured: | JAMES STILWELL |
| Claim Number: | 03D00893OLL |

DEAR MR. CHAMBERLAIN:

Enclosed is our check for $512,974.50 representing payment of benefits payable to Tuscola Furniture Group, LLC and First Mid-Illinois Bank and Trust..

TOTAL PAYABLE                                        $512,974.50

We appreciate the opportunity to be of service to you during this time. If we may be of further assistance, please contact our office.

Thank You.
INDIVIDUAL CLAIMS DEPARTMENT

Enclosure -  Check

cc:     W0908
        W0090


EXHIBIT
24

3009

0131

 **AMERICAN GENERAL**

*Insurance Service Center for:*

**American General Life
Insurance Company**

July 10, 2003

MARGARET STILWELL
P O BOX 538
ATWOOD IL 61913-0538

Contract Number:     2604663
Insured:             JAMES STILWELL
Claim Number:        03D00893OLL

Dear Ms. Stilwell:

Please accept our sincere sympathy in the loss of your husband. Enclosed is our check for $25,354.98 representing your share of the above policy benefits due to you.

Family members should review the beneficiary designation in their policies. If there is an active policy with our Company and a beneficiary change needs to be made, please contact our Customer Services Representatives.

We are enclosing four claim forms for the remaining beneficiaries to complete and return to our office.

We appreciate the opportunity to be of service to you during this time. If we may be of further assistance, please contact our office.

Thank You.
INDIVIDUAL CLAIMS DEPARTMENT

Enclosure -   Check & claim forms

cc:      W0908
         W0090

EXHIBIT
25

3009

**American General Life Insurance Company**
*Member of American International Group, Inc.*
Service Center • P.O. Box 4373 • Houston, TX  77210-4373 • 1.800.487.5433 • Fax 214.654.6008

0131



 AMERICAN GENERAL

Company

Insurance Service Center for:

American General Life Insurance

**DATE:** July 10, 2003

**TO:** WILLIAM J LYONS, AGENT

**FROM:** Margaret Singh, - Individual Claims Department

**SUBJECT:** Contract Number 2604663
Insured - JAMES STILWELL
Claim Number 03D00893OLL

Enclosed is the letter and check, which you will need to deliver to MARGARET STILWELL. The telephone number we have for them is 217-578-3132. We are also enclosing four claimant statements for the remaining beneficiaries to complete. We would like to thank you very much for all your assistance with this claim.

Please complete the bottom of this form and return it to our office so we can document our files.

If you have any questions, please let us know.

Thank You

Enclosure - Check

AGENT

07/18/2003
DATE DELIVERED/MAILED

**EXHIBIT**

26

3009

American General Life Insurance Company
*Member of American International Group, Inc.*
Service Center • P.O. Box 4373 • Houston, TX 77210-4373 • 1.800.487.5433 • Fax 214.654.6008



8/1/03 10:19A
00919000199

## AMERICAN GENERAL

**Proof of Death**
**- Claimant's Statement**

**American General Life Insurance Company**
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

To Be Completed By The Beneficiary

### I — DECEASED

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 10-07-54 | myocardial infarction | 05/03/03 |

POLICIES DECEASED HELD WITH THIS COMPANY:

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | 4,000,000 | | |

I hereby certify that the policy of insurance for the listed policy has been ☐ ENCLOSED ☐ LOST ☐ DESTROYED

### II — CLAIMANT

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| Haley Elizabeth Stilwell | 09/03/86 | Daughter |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| PO Box 538, 218 N. Iowa | Atwood | IL | 61913 | (217) 578-3132 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim? ☐ YES ☒ NO   If yes, what amount? $ _____

How do you want proceeds paid? ☒ Lump Sum ... ☐ Settlement Option

IMPORTANT: Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.)? ☒ YES ☐ NO

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE **x Haley Elizabeth Stilwell**

### III — TAXPAYER I.D. NO.

CLAIMANT'S S.S. NO. 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   OR TAX I.D. NO.

CERTIFICATION: Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

PLEASE SIGN HERE **X Haley Elizabeth Stilwell**   DATE 7/25/03

### IV — MAILING

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED? SHOW BELOW.
Please send check to Agent for Delivery

EXHIBIT 27

L 2843 Rev0103    Page 1 of 2

## GENERAL INSTRUCTIONS

1. **Claimant's Statement.** This statement must be completed by the beneficiary. If there is more than one beneficiary, each must complete a separate statement.
2. **Death Certificate.** A certified copy of the death certificate is to be furnished with this form.
3. **Newspaper Account.** When available, a newspaper account of the death should be submitted.
4. **Policy.** The policy should be sent with this Statement. Explain if not enclosed.

## SPECIAL INSTRUCTIONS

**Estate Beneficiary.** The Statement must be completed by the Executor or Administrator, and a certified copy of appointment must be furnished.

**Minor Beneficiary.** The Statement is to be completed by the legally appointed guardian of the Estate of the minor and an official certificate of the guardian's appointment must be furnished.

**Predeceased Beneficiary.** When a beneficiary has predeceased the insured, a certified copy of the death certificate is to be furnished.

**Class Beneficiaries.** An affidavit showing the names and dates of birth of each must be submitted.

**Assignee.** The Statement is to be completed by the assignee. If the assignment is no longer effective, a release of assignment from the assignee should be submitted. If collaterally assigned, the statement should be completed by both the beneficiary and assignee and the amount claimed by the assignee indicated on the statement.

Guidelines for Determining the Proper Identification Number to Give the Payer. – Social Security numbers have nine digits separated by two hyphens: i.e., 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. Employer identification numbers have nine digits separated by only one hyphen: i.e., 00-0000000. The table below will help you determine the number to give the payer.

| For this type of account: | Give the SOCIAL SECURITY number of – | For this type of Account | Give the TAX IDENTIFICATION number of – |
|---|---|---|---|
| 1. An individual's account | The individual | 9. A valid trust, estate, or pension trust | Legal entity (Do not furnish the identifying number of the personal representative or trustee unless the legal entity itself is not designated in the account title.) |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, any one of the individuals | | |
| 3. Husband and wife (joint account) | The actual owner of the account or, if joint funds, either person | 10. Corporate account | The corporation |
| 4. Custodian account of a minor (Uniform Gift to Minors Act) | The Minor | 11. Religious, charitable, or educational organization account | The organization |
| 5. Adult and minor (joint account) | The adult or, if the minor is the only contributor, the minor | 12. Partnership account held in the name of the business | The partnership |
| 6. Account in the name of guardian or committee for a designated ward, minor, or incompetent person | The ward, minor, or incompetent person | 13. Association, club or other tax-exempt organization | The organization |
| | | 14. A broker or registered nominee | The broker or nominee |
| 7. a. The usual revocable savings trust account (grantor is also trustee) | The grantor-trustee | 15. Account in the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| b. So-called trust account that is not legal or valid trust under State law | The actual owner | | |
| 8. Sole proprietorship account | The owner | | |



8/1/03 10:19A
0091900014901

**AIG** | **AMERICAN GENERAL**

Proof of Death
- Claimant's Statement

## American General Life Insurance Company
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

**To Be Completed By The Beneficiary**

**I DECEASED**

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 6-07-54 | Myocardial Infarction | 05/02/03 |

POLICIES DECEASED HELD WITH THIS COMPANY:

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | 4,000,000 | | |

I hereby certify that the policy of insurance for the listed policy has been   ☐ ENCLOSED   ☐ LOST   ☐ DESTROYED

**II CLAIMANT**

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| Megan Suzanne Stilwell | 07/28/84 | Daughter |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| Box 538 218 N. Iowa | Atwood | IL | 61913 | (217) 578.2816 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim?   ☒ YES   ☐ NO   If yes, what amount? $_____   (Attach copy of assignment)

How do you want proceeds paid?   Lump Sum ☒   *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.   Settlement Option ☐   If Option, give details:_____

IMPORTANT: Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.)   ☒ YES   ☐ NO   (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE   ☒ Megan Suzanne Stilwell

**III TAXPAYER I.D. NO.**

Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number.

| CLAIMANT'S S.S. NO. | OR | TAX I.D. NO. |
|---|---|---|
| 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 | | |

Note: If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

CERTIFICATION: Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

PLEASE SIGN HERE   CLAIMANT'S SIGNATURE   X Megan Suzanne Stilwell   DATE 07/23/2003

**IV MAILING**

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?   SHOW BELOW

Please Send check for Delivery By Agent

L 2843 Rev0103   Page 1 of 2

## GENERAL INSTRUCTIONS

1. **Claimant's Statement.** This statement must be completed by the beneficiary. If there is more than one beneficiary, each must complete a separate statement.

2. **Death Certificate.** A certified copy of the death certificate is to be furnished with this form.

3. **Newspaper Account.** When available, a newspaper account of the death should be submitted.

4. **Policy.** The policy should be sent with this Statement. Explain if not enclosed.

## SPECIAL INSTRUCTIONS

**Estate Beneficiary.** The Statement must be completed by the Executor or Administrator, and a certified copy of appointment must be furnished.

**Minor Beneficiary.** The Statement is to be completed by the legally appointed guardian of the Estate of the minor and an official certificate of the guardian's appointment must be furnished.

**Predeceased Beneficiary.** When a beneficiary has predeceased the insured, a certified copy of the death certificate is to be furnished.

**Class Beneficiaries.** An affidavit showing the names and dates of birth of each must be submitted.

**Assignee.** The Statement is to be completed by the assignee. If the assignment is no longer effective, a release of assignment from the assignee should be submitted. If collaterally assigned, the statement should be completed by both the beneficiary and assignee and the amount claimed by the assignee indicated on the statement.

> **Guidelines for Determining the Proper Identification Number to Give the Payer.** – Social Security numbers have nine digits separated by two hyphens: i.e., 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. Employer identification numbers have nine digits separated by only one hyphen: i.e., 00-0000000. The table below will help you determine the number to give the payer.

| For this type of account: | Give the SOCIAL SECURITY number of – | For this type of Account | Give the TAX IDENTIFICATION number of – |
|---|---|---|---|
| 1. An individual's account | The individual | 9. A valid trust, estate, or pension trust | Legal entity (Do not furnish the identifying number of the personal representative or trustee unless the legal entity itself is not designated in the account title.) |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, any one of the individuals | | |
| 3. Husband and wife (joint account) | The actual owner of the account or, if joint funds, either person | 10. Corporate account | The corporation |
| 4. Custodian account of a minor (Uniform Gift to Minors Act) | The Minor | 11. Religious, charitable, or educational organization account | The organization |
| 5. Adult and minor (joint account) | The adult or, if the minor is the only contributor, the minor | 12. Partnership account held in the name of the business | The partnership |
| 6. Account in the name of guardian or committee for a designated ward, minor, or incompentent person | The ward, minor, or incompetent person | 13. Association, club or other tax-exempt organization | The organization |
| | | 14. A broker or registered nominee | The broker or nominee |
| 7. a. The usual revocable, savings trust account (granter is also trustee) | The grantor-trustee | 15. Account in the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| b. So-called trust account that is not legal or valid trust under State law | The actual owner | | |
| 8. Sole proprietorship account | The owner | | |

L 2843 Rev0103



**AMERICAN GENERAL**

8/1/03 10:19A
00919001907
**Proof of Death**
**- Claimant's Statement**

### American General Life Insurance Company
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

To Be Completed By The Beneficiary

**I DECEASED**

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James C. Stilwell | 10-07-54 | Myocardial Infarction | 05/02/03 |

POLICIES DECEASED HELD WITH THIS COMPANY:

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | 4,000,000 | | |

I hereby certify that the policy of insurance for the listed policy has been ☐ ENCLOSED ☐ LOST ☐ DESTROYED

**II CLAIMANT**

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| Jami Joline Stilwell Bowles | 11/07/76 | Daughter |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| P.O. Box 844 | Atwood | IL | 61913 | (217) 578-2816 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim? ☐ YES ☒ NO  
If yes, what amount? $ _____ ( Attach copy of assignment )

How do you want proceeds paid? Lump Sum ☒ *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.

☐ Settlement Option  If Option, give details: _____

IMPORTANT: Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.) ☒ YES ☐ NO  (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE ☒ Jami Joline Stilwell Bowles

**III TAXPAYER I.D. NO.**

Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number.

| CLAIMANT'S S.S. NO. | | TAX I.D. NO. |
|---|---|---|
| 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 | OR | |

Note: If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

CERTIFICATION: Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

PLEASE SIGN HERE  CLAIMANT'S SIGNATURE  X Jami Bowles   Jami Joline Stilwell Bowles   DATE 7/16/03

**IV MAILING**

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?  SHOW BELOW

Please send Check to Agent for Delivery

## GENERAL INSTRUCTIONS

1. **Claimant's Statement.** This statement must be completed by the beneficiary. If there is more than one beneficiary, each must complete a separate statement.
2. **Death Certificate.** A certified copy of the death certificate is to be furnished with this form.
3. **Newspaper Account.** When available, a newspaper account of the death should be submitted.
4. **Policy.** The policy should be sent with this Statement. Explain if not enclosed.

## SPECIAL INSTRUCTIONS

**Estate Beneficiary.** The Statement must be completed by the Executor or Administrator, and a certified copy of appointment must be furnished.

**Minor Beneficiary.** The Statement is to be completed by the legally appointed guardian of the Estate of the minor and an official certificate of the guardian's appointment must be furnished.

**Predeceased Beneficiary.** When a beneficiary has predeceased the insured, a certified copy of the death certificate is to be furnished.

**Class Beneficiaries.** An affidavit showing the names and dates of birth of each must be submitted.

**Assignee.** The Statement is to be completed by the assignee. If the assignment is no longer effective, a release of assignment from the assignee should be submitted. If collaterally assigned, the statement should be completed by both the beneficiary and assignee and the amount claimed by the assignee indicated on the statement.

> **Guidelines for Determining the Proper Identification Number to Give the Payer. – Social Security numbers have nine digits separated by two hyphens: i.e., 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. Employer identification numbers have nine digits separated by only one hyphen: i.e., 00-0000000. The table below will help you determine the number to give the payer.**

| For this type of account: | Give the SOCIAL SECURITY number of – | For this type of Account | Give the TAX IDENTIFICATION number of – |
|---|---|---|---|
| 1. An individual's account | The individual | 9. A valid trust, estate, or pension trust | Legal entity (Do not furnish the identifying number of the personal representative or trustee unless the legal entity itself is not designated in the account title.) |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, any one of the individuals | | |
| 3. Husband and wife (joint account) | The actual owner of the account or, if joint funds, either person | 10. Corporate account | The corporation |
| 4. Custodian account of a minor (Uniform Gift to Minors Act) | The Minor | 11. Religious, charitable, or educational organization account | The organization |
| 5. Adult and minor (joint account) | The adult or, if the minor is the only contributor, the minor | 12. Partnership account held in the name of the business | The partnership |
| 6. Account in the name of guardian or committee for a designated ward, minor, or incompentent person | The ward, minor, or incompetent person | 13. Association, club or other tax-exempt organization | The organization |
| | | 14. A broker or registered nominee | The broker or nominee |
| 7. a. The usual revocable savings trust account (grantor is also trustee) | The grantor-trustee | 15. Account in the Department of Agri-culture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| b. So-called trust account that is not legal or valid trust under State law | The actual owner | | |
| 8. Sole proprietorship account | The owner | | |

# AIG

## AMERICAN GENERAL

Proof of Death
- Claimant's Statement

**American General Life Insurance Company**
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

To Be Completed By The Beneficiary

**I DECEASED**

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 10-07-54 | Myocardial Infarction | 05/02/03 |

POLICIES DECEASED HELD WITH THIS COMPANY:

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | 4,000,000 | | |

I hereby certify that the policy of insurance for the listed policy has been   ☐ ENCLOSED   ☐ LOST   ☐ DESTROYED

**II CLAIMANT**

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| Heidi Jo Stilwell | 09-29-82 | Daughter |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| P.O. Box 704 | Atwood | IL | 61913 | (217) 578-2846 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim?   ☐ YES   ☒ NO   If yes, what amount? $ _____ ( Attach copy of assignment )

How do you want proceeds paid?   ☒ Lump Sum   *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.   ☐ Settlement Option   If Option, give details: _____

IMPORTANT: Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.)   ☒ YES   ☐ NO   (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE   X Heidi J Stilwell

**III TAXPAYER I.D. NO.**

Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number.

| CLAIMANT'S S.S. NO. | OR | TAX I.D. NO. |
|---|---|---|
| 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 | | |

Note: If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

CERTIFICATION: Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

PLEASE SIGN HERE   X Heidi Jo Stilwell   DATE 07/28/03

**IV MAILING**

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?   SHOW BELOW

Please Mail directly to Agent

L 2843 Rev0103

Page 1 of 2

# GENERAL INSTRUCTIONS

1.  **Claimant's Statement.** This statement must be completed by the beneficiary. If there is more than one beneficiary, each must complete a separate statement.

2.  **Death Certificate.** A certified copy of the death certificate is to be furnished with this form.

3.  **Newspaper Account.** When available, a newspaper account of the death should be submitted.

4.  **Policy.** The policy should be sent with this Statement. Explain if not enclosed.

## SPECIAL INSTRUCTIONS

**Estate Beneficiary.** The Statement must be completed by the Executor or Administrator, and a certified copy of appointment must be furnished.

**Minor Beneficiary.** The Statement is to be completed by the legally appointed guardian of the Estate of the minor and an official certificate of the guardian's appointment must be furnished.

**Predeceased Beneficiary.** When a beneficiary has predeceased the insured, a certified copy of the death certificate is to be furnished.

**Class Beneficiaries.** An affidavit showing the names and dates of birth of each must be submitted.

**Assignee.** The Statement is to be completed by the assignee. If the assignment is no longer effective, a release of assignment from the assignee should be submitted. If collaterally assigned, the statement should be completed by both the beneficiary and assignee and the amount claimed by the assignee indicated on the statement.

Guidelines for Determining the Proper Identification Number to Give the Payer. – Social Security numbers have nine digits separated by two hyphens: i.e., 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. Employer identification numbers have nine digits separated by only one hyphen: i.e., 00-0000000. The table below will help you determine the number to give the payer.

| For this type of account: | Give the SOCIAL SECURITY number of – | For this type of Account | Give the TAX IDENTIFICATION number of – |
|---|---|---|---|
| 1.  An individual's account | The individual | 9.  A valid trust, estate, or pension trust | Legal entity (Do not furnish the identifying number of the personal representative or trustee unless the legal entity itself is not designated in the account title.) |
| 2.  Two or more individuals (joint account) | The actual owner of the account or, if combined funds, any one of the individuals | | |
| 3.  Husband and wife (joint account) | The actual owner of the account or, if joint funds, either person | 10.  Corporate account | The corporation |
| 4.  Custodian account of a minor (Uniform Gift to Minors Act) | The Minor | 11.  Religious, charitable, or educational organization account | The organization |
| 5.  Adult and minor (joint account) | The adult or, if the minor is the only contributor, the minor | 12.  Partnership account held in the name of the business | The partnership |
| 6.  Account in the name of guardian or committee for a designated ward, minor, or incompentent person | The ward, minor, or incompetent person | 13.  Association, club or other tax-exempt organization | The organization |
| | | 14.  A broker or registered nominee | The broker or nominee |
| 7.  a.  The usual revocable savings trust account (grantor is also trustee) | The grantor-trustee | 15.  Account in the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| b.  So-called trust account that is not legal or valid trust under State law | The actual owner | | |
| 8.  Sole proprietorship account | The owner | | |

L 2843 Rev0103                         Page 1 of 2