# AMISHLAND COUNTRY VILLAGE

## TUSCOLA FURNITURE GROUP - CONSIGNMENT DOCUMENTS
### (November 17, 2000)

| | | |
|---|---|---|
| ACV | means | Amishland Country Village, Inc. |
| Atwood | means | Atwood Meat Service, Inc. |
| First Mid-Illinois | means | First Mid-Illinois Bank & Trust of Tuscola |
| JFG | means | Janko Financial Group, L.L.C. |
| Stilwell | means | James Stilwell |
| TFG | means | Tuscola Furniture Group, LLC |
| TNB | means | Tuscola National Bank |

### DOCUMENTS                                                    DATE

| | |
|---|---|
| 1. Consignment Agreement between TFG and ACV | 11/17/00 |
| 2. Personal Guarantee, Stilwell To TFG | 11/17/00 |
| 3. UCC search, State | 11/15/00 |
| 4. Security Agreement, ACV to TFG | 11/17/00 |
| 5. UCC -1 , ACV to TFG | 11/17/00 |
| 6. Article of Incorporation,  ACV | 4/24/98 |
| 7. Certificate of Good Standing for ACV | 11/13/00 |
| 8. Certificate of Incumbrancy for ACV | 11/17/00 |
| 9. Corporate resolution by ACV authorizing its agreements | 11/17/00 |
| 10. Product liability Ins.  by ACV with TFG as an addition insured | 11/17/00 |
| 11. Casualty Ins.  by ACT w/TFG and First Mid-Illinois as additional insured | 11/17/00 |
| 12. Life Insurance on James Stilwell for $1,250,000.00 w/TFG and First Mid-Illinois as  beneficiaries | to come |
| 13. Resolution of the manager for TFG & LLC Authorization | 11/16/00 |
| 14. Certification of JFG | 11/16/00 |
| 15. Assignment JFG to TFG | 11/16/00 |

EXHIBIT

B5

0653

16. Bill of Sale JFG to TFG                                          11/16/00

17. Articles of Organization for TFG                                9/15/00

18. $1,000,000.00 note, TFG to First Mid-Illinois                   11/17/00

19. $1,000,000.00 line of Credit, TFG to First Mid-Illinois         11/17/00

20. Personal Guarantee for the TFG note                             11/17/00

21. Security Agreement TFG to First Mid-Illinois                    11/17/00

22. UCC-1, TFG to First Mid-Illinois                                11/17/00

23. Assignment of Security Agreement TFG to First Mid-Illinois      11/17/00

24. UCC-3 Assignment from TFG to First Mid-Illinois                 11/17/00

25. Notice of Insurance requirement                                 11/17/00

26. Notification of the Consignment Agreement to TNB w/proof of mailing    11/17/00 - 11/21/00

27. Bill of Sale, Stilwell, Atwood, & ACV to TFG          At time TFG buys Amish

28. Payoff letter TNB                                     Furniture from Atwood

29. Release or Amendment by TNB of its 2 UCC's & security
    interest in the Amish Furniture when TNB is paid off

30. Release or Amendment by the Shelby County Bank of its 2 UCC's
    & security interest in Amish Furniture

31. Release or Amendment by Fox Capital Fund of its UCC &
    security interest in Amish Furniture

32. Inventory list of TFG's existing Amish Furniture               See "A" below

33. Inventory list of Stilwell's existing Amish Furniture          See "B" below

Future Events:

   (A) Inventory list and value of JFG's Amish Furniture sold to TFG. Payment of
this amount from TFG to JFG with line of credit advance from First Mid-Illinois.

   (B) Inventory list and value of Atwood's Amish Furniture sold to TFG. Complete items
27-31. Payment of this amount from TFG to Atwood with line of credit advance from
First Mid-Illinois.

LWB\sma
JANKO\AMISH-2ndLIST.DOC

# CONSIGNMENT AGREEMENT

This Consignment Agreement made this _17th_ day of _November_ 2000 by and between TUSCOLA FURNITURE GROUP, LLC., an Illinois Limited Liability Company, hereafter "TFG" and AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation, hereafter "ACV".

WHEREAS, ACV is in the business of retail sale of Amish made furniture and desires to establish a retail outlet in Tuscola, Illinois but lacks financial resources for acquiring an adequate inventory of Amish furniture, and

WHEREAS, TFG has the financial resources and is willing to purchase an inventory of Amish crafted furniture and consign same with ACV upon the terms and conditions herein, and

WHEREAS, JANKO FINANCIAL GROUP, L.L.C., an Illinois Limited Liability Company, hereafter "JANKO" and ACV are parties to a "Consignment Agreement" dated April 16, 1999, and

WHEREAS, JANKO having the right, without the consent of ACV, to assign its interest in the Cosignment Agreement, has assigned its interest in the Cosignment Agreement dated 4/16/99 to TFG, and

WHEREAS, TFG (as assignee of JANKO) and ACV, desiring to    modify the Cosignment Agreement dated April 16, 1999, by terminating same and entering into this agreement do hereby agree as follows:

## 0.O    THE AGREEMENT:

    0.1    The Consignment Agreement dated April 16, 1999 by and between JANKO and ACV is hereby terminated and replaced by this Consignment Agreement, effective as of the date of this agreement.

    0.2    ACV shall cooperate with JANKO and TFG in regards to changing the name of the consignor on all documents relating to transactions relating to this agreement.

1

0655

1. **DEFINITIONS**

    1.1    "ACV" means AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation the consignee under this Consignment Agreement.

    1.2    "AMISH FURNITURE" herein means (i) originally made and crafted Amish furniture, fully finished, (ii) AMISH style furniture made by others and (iii) any "other furniture" purchased and owned by TFG in an amount not to exceed 3% of the average wholesale replacement cost of total inventory, but does not include crafts, lamps, pictures and accessories other than wood products, whether Amish made or not.

    1.3    "AVERAGE WHOLESALE COST" means the inventory value of the AMISH FURNITURE as determined by QUICK BOOKS software program on a straight line average

    1.4    "BANK" means FIRST MID-ILLINOIS BANK and TRUST OF TUSCOLA, ILLINOIS.

    1.5    "INVENTORY CAP" means the maximum total aggregate amount of the average wholesale cost of Amish Furniture consigned by TFG to ACV.

    1.6    "JANKO" means JANKO FINANCIAL GROUP, L.L.C., an Illinois Limited Liability Company, the manager of TFG.

    1.7    "TFG'S INVESTMENT" means all amounts paid by TFG for AMISH FURNITURE less credits for payments received from sales of AMISH FURNITURE

    1.8    "STILWELL" means JAMES and/or MARGARET STILWELL, the sole Shareholders of ACV.

    1.9    "TFG" means TUSCOLA FURNITURE GROUP, LLC., an Illinois Limited Liability Company, the consigner under this Agreement.

2. **AGREEMENTS OF TFG**

    2.1    TFG agrees to purchase the existing inventory of Amish furniture now owned by ACV at current wholesale replacement cost and to purchase new Amish furniture selected by ACV, all at wholesale value or cost from time to time during the existence of this Agreement provided that the total amount of purchases shall never exceed $1,250,000.00 except as otherwise allowed herein.

    2.2    TFG will be the owner of such Amish furniture free and clear of all liens and encumbrances except a Security Agreement with BANK in an amount not to exceed 80% of the wholesale value.

2

2.3     TFG will consign the Amish furniture with ACV and with no other party or entity unless with the consent of ACV or pursuant to termination of this Agreement by reason of the default of ACV.

2.4     TFG will pay ACV, or at the direction of ACV, the seller of the Amish furniture all items delivered to an ACV store or warehouse within seven (7) days of demand and TFG'S receipt of proper documentation, i.e. Purchase Order Receipts with corresponding copy of vendor invoices and no more frequently than once every two (2) weeks.

2.5     Wholesale value will be determined and supported by receipts or invoices from suppliers, copies to be provided by STILWELL.

2.6     TFG may increase or waive the inventory cap of $1,250,000.00 limit on the purchase of Amish furniture upon the written request of ACV submitted not earlier than one (1) year from the date of this Agreement and conditioned upon evidence that ACV is current and not in default on any of its financial obligations including all current and long term lenders and tax obligations to State and Federal governmental bodies.

## 3.     AGREEMENTS OF ACV:

3.1     ACV will sell to TFG its existing inventory of Amish furniture at current wholesale replacement cost and purchase on behalf of TFG additional Amish furniture at wholesale cost from time to time during the term of this Agreement which total wholesale value should never exceed $1,250,000.00 unless increased pursuant to paragraph 2.6 above.

3.2     ACV's purchase at wholesale of Amish furniture on behalf of TFG shall be under the supervision and direction of STILWELL who shall exercise reasonable care and diligence in selecting marketable Amish furniture at fair and reasonable cost.

3.3     ACV will keep, preserve, repair and maintain all Amish furniture in good condition at only the following locations:

(1) 1304 Tuscola Blvd., Tuscola, IL. 61953
(2) East Route 36,   Atwood,  IL.   61913
(3) 123 N. Main St.,  Atwood,  IL    61913
(4) 601 & 603 S. Main, Tuscola, IL  61953 ( 1 bldg.  occupying 2 lots)

3

and sell and market same in the ordinary course of its business at retail pricing in such amounts as determined by ACV. At all times ownership of the Amish furniture shall be in the name of TFG and ACV will execute, obtain or provide such Bill of Sales, Inventory lists, or other documents as deemed necessary by TFG to evidence its ownership.

3.4 <u>Principal Payments</u>: ACV will pay or remit to BANK in an account designated by TFG by the 10th day of the month, an amount equal to the average wholesale cost of the items sold during the previous month. Such reductions in the inventory level of Amish furniture may be replaced up to the inventory cap.

3.5 <u>Consignment Payments</u>: For its consignment services, ACV may retain all amounts in excess of average wholesale cost obtained from the sale at retail of the Amish furniture after deducting and paying Bank in an account designated by TFG by the 10th day of the month an amount equal to the previous month's total of:

   a)     10% of retail sale price, exclusive of sales tax;

   b)     interest (at the rate charged by BANK to TFG) on the amount of TFG'S INVESTMENT; and

   c)     all other costs, points, fees, charges by BANK to TFG.

3.6 <u>Exclusive:</u> ACV will not accept for consignment, sell or lease furniture of any kind except in accordance with this Consignment Agreement, and ACV will not pledge the Amish Furniture or proceeds therefrom as collateral except as required by paragraph 3.17 of this Agreement.

3.7 <u>Product Liability Insurance:</u> ACV will obtain Product Liability Insurance in the minimum amount of One Million Dollars at its cost, naming TFG as an additional insured with fee tail coverage, with an Insurance Company rated by AM Best of a rating of "A" or better.

3.8 <u>Casualty Insurance:</u> ACV will insure the Amish furniture against fire, loss, theft, vandalism, damage and other casualty with an insurance company rated by AM Best of a rating A or better at its full insurable value naming TFG and BANK as additional party insured. Said policies will maintain a clause requiring notice to TFG and BANK ten (10 ) days prior to any alteration in terms or cancellation. ACV will furnish evidence of such insurance being in force to TFG and BANK. Any insurance proceeds paid to TFG and BANK in excess of the balance of the obligations owed by ACV to TFG and TFG'S cost for the Amish Furniture shall be the property of ACV and shall be paid over to ACV after the obligations due under this Agreement and Amish furniture costs have been paid in their entirety.

4

3.9  **Life Insurance:**  ACV will maintain life insurance and pay the premiums thereon on JAMES STILWELL in an amount of at least $1,250,000.00 or an amount equal to the Inventory Cap, if higher, with TFG and BANK named as beneficiary with an insurance company rated A or better by AM Best. The life insurance proceeds shall be used first to pay BANK for the amount TFG owes BANK in order to release its lien on the Amish furniture, then to TFG for all Amish furniture owned by TFG at average wholesale cost, less a credit for the amount paid BANK, and any other amounts owed to TFG under this Agreement and any excess life insurance proceeds shall be paid to the Estate of JAMES STILWELL or ACV. Upon payment, TFG will convey title to as much of the Amish furniture free and clear of all liens, as was paid for by the insurance proceeds, to ACV.

3.10  If ACV shall at any time or times hereafter fail to obtain and maintain any of the policies of insurance required above, or fail to pay any premium in whole or in part relating to any such policies, then TFG may, but need not, obtain and cause to be maintained any or all of such policies and pay any part or all of the premiums due thereunder without thereby waiving the said default or any other default by ACV. Any sums so disbursed by TFG shall be additional indebtedness owed by ACV to TFG and shall incur interest at the default rate of 12%.

3.11  ACV shall implement and maintain an inventory and accounting system acceptable to TFG and BANK for the purpose of tracking the purchase and sale and payment of funds pursuant to this Agreement, which shall include, but not be limited to the following:

a)  Physical inventory will be taken by ACV once/month and ACV will do such spot inventories as directed by TFG. TFG may also conduct its own spot, random or complete inventories.

b)  ACV will maintain on a daily basis, a running book inventory.

c)  Whenever inventory records over a quarterly period indicate "inventory shrinkage" has occurred, ACV will pay TFG within five (5) days the amount of SHRINKAGE at average wholesale cost, plus 10% of the sale price of the missing inventory and inventory records will be adjusted in accordance therewith.

d)  ACV will establish and implement a physical coding system of inventory items acceptable to TFG, and every item will be backed by a Bill of Sale, purchase order or paid receipt in connection with its acquisition and a sales receipt in connection with its disposition.

5

0659

3.12    ACV shall pay and be responsible for all expenses for the storage, transportation, handling, sales and distribution of said Amish furniture, as well as all costs incurred by TFG in connection with BANK financing of TFG'S purchase of Amish furniture, including, but not limited to interest, points, fees and other BANK charges incurred to maintain inventory financing by BANK.

3.13    ACV will keep account books and records giving complete information covering all transactions in connection with the purchase, sale, returns and distribution of Amish furniture and payment of the amounts due hereunder, and such books and records shall be open during normal business hours to the inspection of any duly authorized representative of TFG or BANK.

3.14    Inspections: TFG, BANK or their agents shall have the right, at any time and from time to time hereunder, to inspect and examine the Amish furniture and to copy any records relating thereto, provided that such inspection, examination or copying does not unreasonably interfere with ACV's Business.

3.15    ACV will use its best efforts to sell and merchandise Amish furniture promptly and in a profitable manner.

3.16    ACV shall not have any store wide sale of Amish furniture for less than average wholesale cost plus 10% without the consent of TFG except in the case of Amish furniture deemed unmarketable, obsolete or damaged in the opinion of ACV.

3.17    Security Agreement: ACV will execute any and all security agreements and UCC financing statements required by Article 9 of the Uniform Commercial Code, Section 9-114 in order for TFG to perfect a security interest in the Amish Furniture with priority over the creditors of ACV.

4.    TERM

4.1    This Agreement shall remain in effect for ten (10) years from the date of April 16, 1999.

4.2    Not until after April 15, 2004, shall ACV have the right to terminate this Agreement and then only upon thirty (30) days advance written notice to TFG and payment within said 30 days to TFG for the Amish furniture at current wholesale replacement cost or average wholesale cost, whichever is higher and all accrued and delinquent obligations owed by ACV to TFG. In addition, ACV will pay TFG a "residual payment" equal to two times 2% of the average annual gross retail sales of Amish furniture by ACV during the previous five

6

0660

years.    1/8 of said amount shall be paid for the next eight quarters thereafter or until April 15, 2009, which ever occurs first.

4.3    TFG shall have the right to terminate this Agreement any month after January 1, 2001. Written notice of termination shall be given to ACV 120 days in advance of the date of termination. In the event of termination by TFG, TFG will be paid within said 120 days the same amounts as in the event of termination by ACV except TFG shall not be entitled to the residual payment.

5.    <u>WARRANTIES AND COVENANTS OF ACV</u>:

5.1    ACV expressly warrants, covenants and agrees, so long as any indebtedness as hereinbefore described remains unpaid to TFG, as follows:

5.2    ACV is (or at time of conveyance will be) the sole owner of the Amish furniture in its existing inventory free from any lien, security interest or encumbrance in favor of any person or entity, has the right to convey its existing inventory of Amish furniture to TFG and will defend the collateral against the claims and demands of all persons.

5.3    Except for sales in the ordinary course of business, ACV shall not sell, assign, transfer, encumber or hypothecate in any manner the Amish furniture.

5.4    ACV is a Corporation duly organized, validly existing and in good standing under the laws of the State of Illinois. ACV has the power and authority to carry on its business, to enter into this Consignment Agreement and to carry out the provisions hereof.

5.5    ACV is not in violation of, and the execution, delivery and performance of and compliance with this Consignment Agreement, will not result in ACV being in violation of, or in conflict with, or constitute a default under any term or provisions of any mortgage, indenture, contract, agreement, instrument, judgement, decree, order, statute, rule or regulation applicable thereto.

5.6    There are no actions, suits or proceedings pending or to the knowledge of ACV threatened against or affecting ACV at law or in equity or before or by any federal, state, municipal or other governmental department, commissions, board, bureau, agency or instrumentality, domestic or foreign, which involve the possibility of any judgement or liability not fully covered by insurance and which may result in any material adverse change in ACV's business or the operations, properties or assets or in the condition (financial or otherwise) of ACV.

0661

6.  **CONTINGENCIES AND CONDITIONS:**

   6.1  TFG'S obligations under this Agreement are contingent upon:

   6.2  TFG obtaining a line of credit in the minimum of 1.0 million dollars from BANK for the purchase of Amish furniture on terms acceptable to TFG and ACV.

   6.3  Personal guarantee to TFG by JAMES and MARGARET STILWELL of all funds owed by ACV to TFG and for the obligations of ACV under this Agreement whether to TFG or BANK. In addition, STILWELL, will co-sign and will cause ATWOOD MEAT SERVICE, INC. to co-sign the Security Agreements and UCC Financing Statements referred to in paragraph 3.17.

   6.4  Life Insurance on JAMES STILWELL in the amount of at least 1.25 Million Dollars or an amount equal to the Inventory Cap, if higher, with TFG and BANK as beneficiaries to the extent of the amounts owed to them, with an Insurance Company rated "A" or better by AM Best.

   6.5  Casualty insurance coverage equal to average wholesale cost on all furniture inventory with TFG and BANK named as an additional insured party with an Insurance Company rated "A" or better by AM Best.

   6.6  Product Liability Insurance in an amount of at least One Million Dollars with TFG named as an additional insured party, with an Insurance Company rated "A" or better by AM Best.

   6.7  An inventory and accounting system acceptable to TFG and BANK for the purpose of tracking the Amish furniture business and payments due under this Agreement.

   **PERFORMANCE:**

   7.1  If ACV (1) defaults by failing to pay when due any single installment or payment required to be made to TFG or BANK under the terms of this Consignment Agreement and such default is not cured within ten (10) days of written notice to ACV; or (2) defaults in the performance of any other covenant or agreement hereof and such default is not cured by ACV within thirty (30) days after written notice to ACV (unless the default involves a dangerous condition which shall be cured forthwith); TFG may treat such a default as a breach of this Agreement and TFG shall have any one or more of the following remedies in addition to all other rights and remedies provided at law or in equity: (i) maintain an action for any unpaid amounts; (ii) declare the entire

8

balance due and maintain an action for such amount; (iii) forfeit the ACV's interest this Agreement, retain all sums paid; and with or without notice and without process of law, take possession of said furniture, or any part thereof that remains unsold or in the custody of ACV, and for that purpose may enter any of the premises of ACV to search for or obtain said furniture, and consignee hereby waives any trespass or any rights of action for damages that it might or could have against consignor or its agents by reason of consignor, or its agents, procuring or attempt to procure possession of Amish furniture after forfeiture as aforesaid; or (iv) upon ACV's failure to surrender possession of the Amish furniture to TFG, maintain an action for possession of the Amish furniture under the Illinois Replevin Act.

7.2     If default is based upon the failure to pay sales taxes, insurance, liens or other charges relating to the Amish furniture as provided in this Agreement, TFG may elect to make such payments, which amounts shall become immediately due and payable by ACV to TFG, and if not paid within ten (10) days of demand shall then be payable together with 12% interest per annum.

## 8.     DEFAULT, FEES:

8.1     ACV shall pay all reasonable attorney's fees and costs incurred by TFG in enforcing the terms and provisions of this Consignment Agreement, or in defending any proceeding to which TFG is made a party defendant as a result of the acts or omissions of ACV.

8.2     All rights and remedies given to TFG, shall be distinct, separate, and cumulative, and the use of one or more thereof shall not exclude or waive any other right or remedy allowed by law, unless specifically waived in this Agreement.  No waiver of any breach or default of either party hereunder shall be implied from any omission by the other party to take any action on account of any similar or different breach or default.  The payment or acceptance of money after it falls due after knowledge of any breach of this agreement by TFG, or after the termination of ACV's right of possession of the Amish Furniture hereunder, or after the service of any notice, or after commencement of any suit, or after final judgment for replevin shall not reinstate, continue, or extend this Agreement nor affect any such notice, demand or suit or any right hereunder not herein expressly waived.

## 9.     DELINQUENT MONTHLY PAYMENTS:

9.1     ACV acknowledges that late payments by ACV to TFG of the amounts or other charges due hereunder will cause TFG to incur costs not contemplated by this Agreement, the exact amount of which will be extremely  difficult to ascertain.

0663

Such costs include, but are not limited to, processing and accounting charges and late charges which may be imposed upon BANK by the terms of any note, and/or security agreement covering the Amish Furniture. Accordingly, if any installment or any sum due from ACV shall not be received by TFG or TFG'S designee within ten (10) days after said amount is due, then ACV shall pay to TFG a late charge equal to the greater of (i) five percent (5%) per month of such overdue amount, plus any attorney's fees incurred by TFG by reason of ACV's failure to pay and/or other charges due hereunder; or (ii) One Hundred Dollars ($100.00). The parties hereby agree that such late charges represent a fair and reasonable estimate of the cost that TFG will incur by reason of the late payment by ACV. Acceptance of such late charges byTFG shall in no event constitute a waiver of ACV's default with respect to such overdue amount, nor prevent TFG from exercising any of the other rights or remedies granted hereunder.

## 10.    SEVERABILITY:

10.1    Any provisions of this Consignment Agreement which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision hereof, and such other provisions shall remain in full force and effect.

## 11.    WAIVER:

11.1    The waiver by TFG of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition of any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of payment hereunder by TFG shall not be deemed to be a waiver of any preceding breach by ACV of any term, covenant or condition of this Agreement, other than the failure of ACV to pay the particular delinquency so accepted, regardless of the TFG'S knowledge of such preceding breach at the time of acceptance of such delinquent payment.

## 12.    NOTICES:

12.1    All notices and demands which may, or are required to be given by either party to the other hereunder, shall be in writing. All notices and demands by the TFG to the ACV shall be sent by United States Certified or Registered mail, postage prepaid, addressed to ACV at the business address, or to such other places as the ACV may from time to time designate in writing to the TFG or may be personally served upon ACV. All notices and demands by ACV to TFG shall be sent by United States Certified or Registered Mail, postage prepaid, addressed to TFG, 2220 Marquette Road, Peru, IL or to such other person or place or persons or places as the TFG may from time to time designate in writing to the ACV. All notices shall be effective as of the date of receipt or certification. Delivery may also be made by an established national overnight delivery service (such as Federal Express).

0664

13. **MARGINAL HEADINGS:**

    13.1    The marginal headings and titles to the Paragraphs of this Agreement are not a part of the Agreement and shall have no effect upon the construction or interpretation of any part hereof.

14. **TIME:**

    14.1    Time is of the essence in this Consignment Agreement and each and all of its provisions.

15. **SUCCESSORS AND ASSIGNS; BINDING EFFECT:**

    15.1    The covenants and conditions herein contained shall, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of the parties hereto.

    15.2    ACV may not assign its interest, rights or obligations herein without the consent of TFG.

16. **SUBORDINATION:**

    16.1    Upon the request of TFG, ACV herewith subordinates or will subordinate its rights hereunder to any lien of any Security Agreement by TFG to any bank, or other lending institution now or hereafter placed against the Amish furniture.  ACV shall execute upon request a document indicating said subordination. The provisions of this paragraph shall be self-operative and no further instrument of subordination shall be required .

17. **SURVIVAL OF REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS:**

    17.1    TFG and ACV each hereby agree that their respective representations, warranties, covenants and agreements set forth herein shall survive the closing and shall thereafter be fully effective and enforceable.

18. **AGENTS:**

    18.1    TFG'S agent for all matters under this agreement is DICK JANKO, until ACV is notified of a different agent pursuant to paragraph 12.1.

    18.2    ACV's agent for all matters under this Agreement is JAMES STILWELL, until TFG is notified of a different agent pursuant to paragraph 12.1.

0665

19.    **ENTIRE AGREEMENT:**

19.1    This Consignment Agreement contains the entire agreement of the parties hereto with respect to the matters covered hereby, and no other agreement, statement or promise made by any party hereto, or to any employee, officer or agent of any party hereto, which is not contained herein, shall be binding or valid.

This Agreement is made ___17___ day, of ___November___, 2000.

ACV:                                                TFG:

AMISHLAND COUNTRY                    TUSCOLA FURNITURE  GROUP, LLC.,
VILLAGE, INC.,                               An Illinois Limited Liability Company,
an Illinois Corporation                       By its manager:    JANKO FINANCIAL
                                                    GROUP, L.L.C., An Limited Liability
                                                    Company,

BY: _____        BY: _____
Printed: JAMES STILLWELL                     RICHARD JANKO, Authorized Member
Its:      President                                  2220 Marquette Road
                                                    Peru, IL  61354

JANKO\AMISHLND-TFG.AGR3SA

12

# GUARANTY

WHEREAS, TUSCOLA FURNITURE GROUP, LLC., an Illinois Limited Liability Company, hereinafter referred to as "TFG" and AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation, hereinafter referred to as "ACV" are about to execute a document entitled "CONSIGNMENT AGREEMENT" dated ___Ŋ o υ / 7__, 2000, wherein TFG will consign Amish furniture to ACV; and

WHEREAS, JAMES STILWELL and MARGARET STILWELL, hereinafter referred to as "Guarantor", have a financial interest in ACV; and

WHEREAS, TFG would not execute the Consignment Agreement if Guarantor did not execute and deliver to TFG this Guarantee.

NOW, THEREFORE, for and in consideration of the execution of the foregoing Consignment Agreement by TFG and as a material inducement to TFG to execute said Consignment Agreement, Guarantor hereby unconditionally and irrevocably guarantees the prompt payment by ACV of all sums payable by ACV under said Consignment Agreement and the faithful and prompt performance by ACV of each and every one of the terms, conditions and covenants of said Consignment Agreement to be kept and performed by ACV.

It is specifically agreed and understood that the terms of the foregoing Consignment Agreement may be altered, affected, modified or changed by agreement between TFG and ACV, or by a course of conduct, and said Consignment Agreement may be assigned by TFG, or any assignee of TFG, without consent or notice to Guarantor and that this Guaranty shall thereupon and thereafter guarantee the performance of said Consignment Agreement as so changed, modified, altered or assigned.

This Guaranty shall not be released, modified or affected by failure or delay on the part of TFG to enforce any of the rights or remedies of TFG under said Consignment Agreement, whether pursuant to the terms thereof or at law or in equity.

Ten (10) days' notice of default shall be given to Guarantor, it being specifically agreed and understood that the guarantee of the undersigned is a continuing guarantee under which TFG may proceed forthwith and immediately against ACV or against Guarantor following any breach or default by ACV or for the enforcement of any rights which TFG may have as against ACV pursuant to or under the terms of the within Consignment Agreement at law or in equity.

1

0667

TFG shall have the right to proceed against the Guarantor hereunder following any breach or default by ACV without first proceeding against ACV and without previous notice to or demand upon ACV.

Guarantor hereby waives (a) notice of acceptance of this Guaranty; (b) demand of payment, presentation and protest; (c) all right to assert or plead any statute of limitations as to or relating to this Guaranty and the Consignment Agreement; (d) any right to require TFG to proceed against the ACV or any other Guarantor or any other person or entity liable to TFG; (e) any right to require TFG to proceed under any other remedy TFG may have before proceeding against Guarantor; and (f) any right of subrogation.

Guarantor does hereby subrogate all existing or future indebtedness of ACV to Guarantor to the obligations owed to TFG under this Consignment Agreement and this Guaranty.

In the event any action be brought by said TFG against Guarantor hereunder to enforce the obligation of Guarantor hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee which shall be fixed by the Court.

IN WITNESS WHEREOF, the undersigned have set their hands and seals this _17_ day of _Nov_, 2000, at _Tuscula_ Illinois.

GUARANTOR:

_____
JAMES STILWELL

_____
MARGARET STILWELL

ADDRESS: _218 n Iowa_
_Tutwion Ill 61913_

JANKO\GUARANTY.STL-TFG

2

0668

# AMISHLAND COUNTRY VILLAGE

## UCC - SEARCH

## SECRETARY OF STATE

| SECURED PARTY | DEBTOR | COLLATERAL | FILING INFO |
|---|---|---|---|
| 1. Tuscola Nat'l Bk. | Stilwell & Atwood | General<br>(Tuscola location) | 4035733<br>5/14/99 |
| 2. Tuscola Nat'l Bk. | Atwood | General<br>(Atwood location) | 3108674<br>4/13/97 |
| 3. Tuscola Nat'l Bk. | Atwood | Continuation of<br>3108674 | 3783360<br>1/07/98 |
| 4. Community Bk of<br>Shelby County | Atwood | General | 4023932<br>4/21/99 |
| 5. Community Bk of<br>Shelby County | Atwood | General | 4033673<br>5/11/99 |
| 6. Credential Leasing | Atwood | Cooker Mixer | 3741672<br>9/19/97 |
| 7. Preferred Capital<br>(Assign to Advanta Bank) | Atwood | Various Kitchen<br>equip.<br>original cost $56,715.00 | 4189470<br>4/11/00 |
| 8. Preferred Capital<br>(Assign to Advanta Bank) | Atwood | Various Kitchen<br>equip.<br>original cost $61,732.00 | 4223227<br>6/15/00 |
| 9. Fox Capital Fund | Atwood | All inventory | 3799032<br>2/4/98 |

LWB/sma
JANKO\Amishlnd.search.ltr

100 North Main Street • P.O. Box 18 • Tuscola, Illinois 61953 • (217) 253-3344 • Fax (217) 253-4012 • Member FDIC

**DEBTOR'S EXACT FULL LEGAL NAME** – Insert only one debtor name (2a or 2b)

1a. ENTITY'S NAME
James E. Sitkrell

1b. INDIVIDUAL'S LAST NAME

1c. MAILING ADDRESS
P. O. Box 838

1d. S.S. OR TAX I.D.   OPTIONAL   1e. TYPE OF ENTITY   ADD'L INFO RE ENTITY DEBTOR

FIRST NAME

CITY
Atwood

STATE   COUNTRY   POSTAL CODE
IL                            61913

1g. ENTITY'S ORGANIZATIONAL I.D. #, if any   ☐ NONE

MIDDLE NAME   SUFFIX

1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION

**2. SECURED PARTY'S (ORIGINAL S/P or ITS TOTAL ASSIGNEE'S) EXACT FULL LEGAL NAME** – Insert only one secured party name (2a or 2b)

2a. ENTITY'S NAME
TUSCOLA NATIONAL BANK

2b. INDIVIDUAL'S LAST NAME

2c. MAILING ADDRESS
909 E. PROGRESS BLVD., P.O. BOX 110

FIRST NAME

CITY
TUSCOLA

STATE   COUNTRY   POSTAL CODE
IL                            61953

2e. ENTITY'S ORGANIZATIONAL I.D. #, if any   ☐ NONE

MIDDLE NAME   SUFFIX

**3. This FINANCING STATEMENT covers the following types or items of property:**
All Inventory, Accounts, Equipment and Fixtures; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts) proceeds).

This Financing Statement is to be recorded in the real estate records. Some or all of the collateral is located on the following described real estate. SEE ATTACHED EXHIBIT. James E. Sitkrell and Margaret J. Sitkrell is the record owner of the real property described on which the collateral is located.

5. CHECK   ☐ This FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest (a) in collateral already subject to a security interest in another jurisdiction when it was brought into this state, or when the debtor's location was changed to this state, or (b) in accordance with other statutory provisions [additional data may be required]

6. REQUIRED SIGNATURE(S)

7. If filed in Florida (check one)   ☐ Documentary stamp tax paid   ☐ Documentary stamp tax not applicable

8. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum   [if applicable]

9. Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s) [ADDITIONAL FEE] [optional]   ☐ All Debtors   ☐ Debtor 1   ☐ Debtor 2

(1) FILING OFFICER COPY — NATIONAL FINANCING STATEMENT (FORM UCC1) (TRANS) (REV. 12/18/95)   CFI ProServices, Inc., 800 S.W. 6th Avenue, Portland, Oregon 97204

0670

9A. NAME OF FIRST DEBTOR ON RELATED FINANCING STATEMENT

OR INDIVIDUAL'S LAST NAME    FIRST NAME    MIDDLE NAME, SUFFIX

9A9. MISCELLANEOUS:

**99134 178 2**

Ad1. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one name (Ad1a or Ad1b)

Ad1a. ENTITY'S NAME

OR Ad1b. INDIVIDUAL'S LAST NAME    FIRST NAME    MIDDLE NAME    SUFFIX

Ad1c. MAILING ADDRESS    CITY    STATE   COUNTRY   POSTAL CODE

Ad1d. S.S. OR TAX I.D.#   OPTIONAL   Ad1e. TYPE OF ENTITY   Ad1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION   Ad1g. ENTITY'S ORGANIZATIONAL I.D.#, if any   ☐ NONE

Ad2. ADDITIONAL SECURED PARTY'S EXACT FULL LEGAL NAME – insert only one name (Ad2a or Ad2b)

Ad2a. ENTITY'S NAME

OR Ad2b. INDIVIDUAL'S LAST NAME    FIRST NAME    MIDDLE NAME    SUFFIX

Ad2c. MAILING ADDRESS    CITY    STATE   COUNTRY   POSTAL CODE

Ad3a. ☒ This FINANCING STATEMENT covers timber to be cut, minerals, or mineral-related accounts, or is filed as a fixture filing.

Ad3b. ☐ This FINANCING STATEMENT covers crops growing or to be grown on the real estate described below.

Ad4. Description of real estate:

SEE ATTACHED EXHIBIT

Ad5. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

James E. Stilwell and Margaret J. Stilwell
P. O. Box 538
Atwood, IL. 61913

Ad6. ☐ Debtor is a TRANSMITTING UTILITY (if applicable)

Ad7. REQUIRED SIGNATURE

CFI ProServices, Inc. 400 S.W. 6th Avenue, Portland, Oregon 97204

(1) FILING OFFICER COPY — NATIONAL ADDENDUM (FORM UCC1Ad) (TRANS) (REV. 12/18/95)

0671

# UCC FINANCING STATEMENT — FOLLOW INSTRUCTIONS CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. FILING OFFICE ACCT # (optional)

C. RETURN COPY TO: (Name and Mailing Address)

```
TUSCOLA NATIONAL BANK
901 S. PROGRESS BLVD.
P.O. BOX 110
TUSCOLA, IL 61953
```

UCU10S714/99:02:4185T
20.00 CK01
SOS IL  09:03  4035733 FS

D. OPTIONAL DESIGNATION (if applicable): ☐ LESSOR/LESSEE ☐ CONSIGNOR/CONSIGNEE ☐ NON-UCC FILING

## 1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b)

1a. ENTITY'S NAME: **Atwood Steel Service, Inc.**

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

1c. MAILING ADDRESS: **P.O. Box 530**    99134 178 1    CITY: **Atwood**   STATE: **IL**   COUNTRY   POSTAL CODE: **61913**

1d. S.S. OR TAX I.D. #: **37-1117543**   OPTIONAL ADD'NL INFO RE ENTITY DEBTOR   1e. TYPE OF ENTITY   1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION   1g. ENTITY'S ORGANIZATIONAL I.D.#, if any   ☐ NONE

## 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b)

2a. ENTITY'S NAME:

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| **James E. Stilwell** | | | |

2c. MAILING ADDRESS: **P.O. Box 530**   CITY: **Atwood**   STATE: **IL**   COUNTRY   POSTAL CODE: **61913**

2d. S.S. OR TAX I.D. #   OPTIONAL ADD'NL INFO RE ENTITY DEBTOR   2e. TYPE OF ENTITY   2f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION   2g. ENTITY'S ORGANIZATIONAL I.D.#, if any   ☐ NONE

## 3. SECURED PARTY'S (ORIGINAL S/P or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME – insert only one secured party name (3a or 3b)

3a. ENTITY'S NAME: **TUSCOLA NATIONAL BANK**

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

3c. MAILING ADDRESS: **900 S. PROGRESS BLVD., P.O. BOX 110**   CITY: **TUSCOLA**   STATE: **IL**   COUNTRY   POSTAL CODE: **61953**

## 4. This FINANCING STATEMENT covers the following types or items of property:

All inventory, Accounts, Equipment and Fixtures, whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

This Financing Statement is to be recorded in the real estate records. Some or all of the collateral is located on the following described real estate. SEE ATTACHED EXHIBIT James E. Stilwell and Margaret J. Stilwell is the record owner of the real property described on which the collateral is located.

5. CHECK ☐ This FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest (a) in collateral already subject to a security interest in another jurisdiction when it was brought into this state, or when the debtor's location was changed to this state, or (b) in accordance with other statutory provisions (additional data may be required)

6. REQUIRED SIGNATURE(S)

7. If filed in Florida (check one) ☐ Documentary ☐ Non-documentary stamp tax paid ☐ stamp tax paid ☐ not applicable

8. This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS Attach Addendum (if applicable)

9. Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s) (ADDITIONAL FEE) (optional) ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

CFI ProServices, Inc. 400 S.W. 6th Avenue, Portland, Oregon 97204

0672

UCC FINANCING STATEMENT ADDENDUM — FOLLOW INSTRUCTIONS

9AA. NAME OF FIRST DEBTOR ON RELATED FINANCING STATEMENT

9A. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX

9B. MISCELLANEOUS

99134 178 2

**Ad1. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** — insert only one name (Ad1a or Ad1b)

Ad1a. ENTITY'S NAME

Ad1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

Ad1c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE

Ad1d. S.S. OR TAX I.D.# | OPTIONAL | Ad1e. TYPE OF ENTITY | Ad1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | Ad1g. ENTITY'S ORGANIZATIONAL I.D.#, if any | ☐ NONE

**Ad2. ADDITIONAL SECURED PARTY'S EXACT FULL LEGAL NAME** — insert only one name (Ad2a or Ad2b)

Ad2a. ENTITY'S NAME

Ad2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

Ad2c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE

Ad3a. ☑ This FINANCING STATEMENT covers timber to be cut, minerals, or minerals-related accounts, or is filed as a fixture filing

Ad3b. ☐ This FINANCING STATEMENT covers crops growing or to be grown on the real estate described below

Ad3c. Description of real estate:

**SEE ATTACHED EXHIBIT**

Ad3d. Additional collateral description:

Ad5. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

James E. Stilwell and Margaret J. Stilwell
P. O. Box 638
Atwood, IL 61913

Ad4. REQUIRED SIGNATURE

Ad6. ☐ Debtor is a TRANSMITTING UTILITY (if applicable)

(1) FILING OFFICER COPY — NATIONAL ADDENDUM (FORM UCC1Ad) (TRANS) (REV. 12/18/95)

CFI ProServices, Inc. 400 S.W. 6th Avenue, Portland, Oregon 97204

0673

# EXHIBIT

Part of the following described tract: Part of Government Lots 3 and 4 of the Northeast
Quarter of Section 2, Township 15 North, Range 8 East of the Third Principal Meridian,
Douglas County, Illinois, described as follows: Beginning at a ½ inch iron rod with
plastic cap marked PLS 2054 being the Southeast corner of Steven Subdivision as per
plat recorded March 10, 1994, in Plat Cabinet, Slide 116 in the Recorder's Office of said
county; thence South 90 degrees 00 minutes 00 seconds West (record bearing) 2418.63
feet along the South line of said Steven Subdivision to the East line of Lot "Z", in
Meadowview Subdivision as per plat in Book 1, Page 544 of Plats; thence South 00
degrees 23 minutes 49 seconds West 60.00 feet along said East line to the center of
Scattering Forks Drainage Ditch thence along the center of said ditch South 47 degrees
26 minutes 29 seconds East 145.08 feet and South 35 degrees 52 minutes 50 seconds East
863.68 feet and South 45 degrees 24 minutes 08 seconds East 515.35 feet and South 71
degrees 06 minutes 14 seconds East 401.47 feet and South 51 degrees 53 minutes 25
seconds East 860.59 feet to the South line of said Government Lot 3; thence North 89
degrees 37 minutes 44 seconds East 433.00 feet along said South line to a concrete right
of way marker on the West line of the right of way of FAI Route No. 57; thence along
said West line North 00 degrees 40 minutes 48 seconds West 753.28 feet to a concrete
right of way marker and North 04 degrees 16 minutes 01 seconds West 400.18 feet to a
concrete right of way marker and North 00 degrees 45 minutes 38 seconds West 650.88
feet to a concrete right of way marker and North 12 degrees 46 minutes 43 seconds West
70.39 feet to the point of beginning, containing 69.149 acres, also known as Lots 1, 2, 3,
and 4 of Amishland Country Village Subdivision, City of Tuscola.

This STATEMENT is presented to THE FILING OFFICER for filing pursuant to the Uniform Commercial Code

| Debtor(s) (Last Name First) and address(es) | Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number & Filing Office) |
|---|---|---|
| Atwood Meat Service, Inc P.O. Box 538 Atwood, IL 61913 | Tuscola National Bank P.O. Box 110 214 N Main St. Tuscola, IL 61953 | |

This Statement refers to original Financing Statement No. 3108674
Date Filed April 13 19 97 Filed with State of Illinois

A ☒ **CONTINUATION** — The original financing statement between the foregoing Debtor and Secured Party, bearing the file number shown above, is still effective.

B ☐ **PARTIAL RELEASE** — From the collateral described in the financing statement bearing the file number shown above, the Secured Party releases the property indicated below.

☐ **ASSIGNMENT** — The Secured Party certifies that as per Secured Party has assigned to the Assignee whose name and address is shown below, Secured Party's rights under the financing statement bearing the file number shown above in the property indicated below.

C ☐ **TERMINATION** — The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

D ☐ **AMENDMENT** — The financing statement bearing the above file number is amended as set forth below.
   ☐ To show the Secured Party's new address as indicated below.
   ☐ To show the Debtor's new address as indicated below.
   ☐ As set forth below.

Tuscola National Bank

Dated December 26 19 97

By _Leslie D. Hall_
(Signature of Secured Party)

FILING OFFICER - ALPHABETICAL
9 8 0 0 7     0 7 0 2

This form of Financing Statement is approved by the Secretary of State.

STANDARD FORM - UNIFORM COMMERCIAL CODE - FORM UCC-3 REV. 1-74

This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code

| Debtor(s) (Last Name First) and Address(es) | Secured Party(ies) and Address(es) | For Filing Officer |
|---|---|---|
| Atwood Clad Service, Inc. | TUSCOLA NATIONAL BANK | |
| P. O. Box 538 | 214 N. MAIN ST. | |
| Atwood, IL  61913 | P.O. BOX 550 | |
| | TUSCOLA, IL  61953 | |

This Financing statement covers the following types or items of property:

All Inventory, Accounts, Contract Rights, Equipment and Fixtures, whether owned now or acquired later; all accessions, additions, replacements, and substitutions; all records of any kind relating to any of the foregoing; all proceeds (including insurance, general intangibles and other accounts proceeds).

This Financing Statement is to be recorded in the real estate records. Some or all of the collateral is located on the following described real estate: Lot 15 and the South 21 1/2 feet of Lot 14 in Block 15 of the original Town (now Village) of Atwood, Douglas County, Illinois.

X ☒ Products of Collateral are also covered.

___ X ___ Additional sheets presented.

___ X ___ Filed with Secretary of State of Illinois.

Debtor is a transmitting utility as defined in UCC 9-105.

05 2 9 96

FILING OFFICER COPY - ALPHABETICAL

STANDARD FORM - UNIFORM COMMERCIAL CODE - FORM UCC-2

0676

THIS STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code

Debtor(s) (Last Name First) and address(es)
Atwood Meat Service, Inc.
102 North Main
Atwood, IL 61913

Secured Party(ies) and address(es)
COMMUNITY BANKS OF SHELBY COUNTY
P. O. Box 117
Cowden, IL 62422

UIMU422T/99:07:9027:
20:01:000
0SIL 10:17 4023932 FS

1. This financing statement covers the following types (or items) of property:

See Attached Exhibit "A"

ASSIGNEE OF SECURED PARTY

99 11 559 0

2. Products of Collateral are also covered.

Additional sheets presented.

Filed with Office of Secretary of State of Illinois.

Debtor is a transmitting utility as defined in UCC 19-105.

(1) FILING OFFICER COPY - ALPHABETICAL

By
Signature(s) of Debtor(s)        (Secured Party)

STANDARD FORM - UNIFORM COMMERCIAL CODE - FORM UCC-1 - Rev. 1-75

Greg Miller

Atwood Meat Service, Inc.
102 North Main
Atwood, IL 61913

DEBTOR'S NAME, ADDRESS AND SSN OR TIN
("I" means each Debtor who signs.)

COMMUNITY BANKS OF SHELBY COUNTY
P.O. Box 157
Cowden, IL 62422

SECURED PARTY'S NAME AND ADDRESS
("we" means the Secured Party, its successors and assigns.)

I am entering into this security agreement with you on _____ Apr 11 20 __ 1999 _____ (date).

Atwood Meat Service, Inc.  James E. Stillwell

I AGREE TO THE TERMS SET OUT ON THE FRONT AND BACK OF THIS AGREEMENT. I have received a copy of this document on today's date.

Atwood Meat Service

By: _____

Title: President

By: _____

The property will be used for ☐ personal ☑ business _____ reasons.
☐ agricultural

Atwood Meat Service, Inc.

By: James E. Stillwell

Title: President

© 1996, 1999 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341) SECURITY AGREEMENT FORM SA-1/29/99

**GENERALLY** - "You" means the Secured Party identified on this reverse side of this agreement...

**APPLICABLE LAW** - I agree that this security agreement will be governed by the law of the state in which you are located...

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - I represent that I own all of the property...

**PURCHASE MONEY SECURITY INTEREST** - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement...

**AUTHORITY OF SECURED PARTY TO MAKE ADVANCES AND PERFORM FOR DEBTOR** - I agree to pay you on demand any sums you advanced on my behalf...

**LIMITATIONS** - This agreement will not secure a debt described in this section entitled "Secured Debts" on the reverse side:

**INSURANCE** - I agree to buy insurance on the property against the risks and for the amounts you require and to furnish you continuing proof of coverage...

**WARRANTIES AND REPRESENTATIONS** - If this agreement includes accounts...

**DEFAULT** - I will be in default if any one or more of the following occur:

**REMEDIES** - If I am in default on this agreement, you have the following remedies:

**FILING** - A carbon, photographic or other reproduction of this security agreement or the financing statement covering the property described in this agreement may be used as a financing statement where allowed by law...

**CO-MAKERS** - If more than one of us has signed this agreement, we are all obligated equally under the agreement...



Atwood Heat Service, Inc.
102 North Main Street
Atwood, Il. 61913

COMMODITY BANK OF SHELBY COUNTY
P. O. Box 157
Cowden, Il. 62422

This financing statement covers the following types (or items) of property:

See Attachment "A"

99131 107 0

(1) FILING OFFICER COPY - ALPHABETICAL

105 North Main Street

**DEBTOR'S NAME, ADDRESS AND SSN OR TIN**
("I" means each Debtor who signs.)

COMMUNITY BANKS OF SHELBY COUNTY
P. O. BOX 157
Columbia, TN 62422

**SECURED PARTY'S NAME AND ADDRESS**
("You" means the Secured Party, its successors and assigns.)

I am entering into this security agreement with you on **May 5, 1999** (date).

**SECURED DEBTS.** I agree that this security agreement will secure the payment and performance of the debts, liabilities or obligations described below I (Check one) □ I ☒ name)  **Atwood Heat Service, Inc.**

Check one below:
- □ **Specific Debts.** The debts, liability or obligations evidenced by described: **20.00 TN**
- ☒ **All Debts.** Except in those cases listed in the LIMITATIONS...

**SECURITY INTEREST.** To secure the payment and performance of the above described Secured Debts, liabilities and obligations, I give you a security interest in all of the property described below that I now own and that I may own in the future (including, but not limited to, all parts, accessories, repairs, improvements, and accessions to the property, whenever the property be or, may be located, and all proceeds and products from the property.

- ☒ **Inventory:** All inventory which I hold for ultimate sale or lease, or which I have been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.
- ☒ **Equipment:** All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described is a list or schedule which I give to you will also be included in the secured property but such a list is not necessary for a valid security interest in my equipment.
- ☒ **Farm Products:** All farm products including, but not limited to:
  (a) all poultry and livestock and their young, along with their products, produce and replacements;
  (b) all crops, annual or perennial, and all products of the crops; and
  (c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.
- ☒ **Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment:** All rights I have now and that I may have in the future to the payment of money including, but not limited to:
  (a) payment for goods and other property sold or leased or for services rendered, whether or not I have earned such payment by performance; and
  (b) rights to payment arising out of all present and future debts owing to me, chattel paper and loans and obligations receivable.
  The above include any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.
- ☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.
- □ **Government Payments and Programs:** All payments, accounts, general intangibles, or other benefits (including, but not limited to payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of any preexisting, current or future Federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and the USDA).
- □ **The secured property includes, but is not limited to, the following:**

If this agreement covers timber to be cut, minerals (including oil and gas), fixtures or crops growing or to be grown, the legal description is:

I am a(n) □ individual □ partnership ☒ corporation

□ If checked, file this agreement in the real estate records.
Record Owner (if not me):

The property will be used for □ personal ☒ business □ agricultural _____ reasons.

**COMMUNITY BANKS OF SHELBY COUNTY**
(Secured Party's Name)

By: _____
Title: President

I AGREE TO THE TERMS SET OUT ON THE FRONT AND BACK OF THIS AGREEMENT. I have received a copy of this document on today's date.

**Atwood Heat Service, Inc.**
(Debtor's Name)

By: _____ *James E. Stilwell*
James E. Stilwell
Title: President

_____ *Margaret Jo Stilwell*
Margaret Jo Stilwell
Title: Vice President

© 1986, 1990 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341) SECURITY AGREEMENT FORM SA 3/29/90

GENERALLY - ...

APPLICABLE LAW - ...

OWNERSHIP AND DUTIES TOWARD PROPERTY - ...

LIMITATIONS - This agreement will not secure a debt described in the section entitled "Secured Debts" on the reverse side:

1) ...
2) ...
3) ...
4) ...
5) ...

PURCHASE MONEY SECURITY INTEREST - ...

AUTHORITY OF SECURED PARTY TO MAKE ADVANCES AND PERFORM FOR DEBTOR - ...

DEFAULT - ...

REMEDIES - ...

FILING - ...

CO-MAKERS - ...

FORM EA  BACKSIDE REVISION DATE 2/28/90

THIS FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| 1. Debtor(s) (Last Name First) and address(es) | 2. Secured Party(ies) and address(es) | 3. |
|---|---|---|

1. Debtor(s) (Last Name First) and address(es)
Atwood Meat Service Inc.
105 S Main St.
Atwood IL 61913

Tax ID/Social Security No.

2. Secured Party(ies) and address(es)
Credential Leasing Corp
P. O. Box 5967
Harrisburg PA 17110

Tax ID/Social Security No.

For Filing Officer (Date, Time and Filing Office)

4. This financing statement covers the following types (or items) of property:

(1) Calico/Groen TDB/8-20 CFC Water Jacketed Cooker Mixer

S/N 2250cms

6. Assignee(s) of Secured Party and Address(es)

This statement is filed without the debtor's signature to perfect a security interest in collateral. (check ☒ if so)
☐ already subject to a security interest in another jurisdiction when it was brought into this state.
☐ which is proceeds of the original collateral described above in which a security interest was perfected.
Check ☒ if covered: ☐ Proceeds of Collateral are also covered ☐ Products of Collateral are also covered. No. of additional Sheets presented.

Filed with:

By: _____
Signature(s) of Debtor(s)

By: _____
Signature(s) of Secured Party(ies)

(1) Filing Officer Copy – Alphabetical

STANDARD FORM - FORM UCC-1.

This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

Lessee(s) (Last Name First) and address(es)
ATWOOD MEAT SERVICE, INC.
AMISHLAND BBQ
5 PROGRESS
TUSCOLA, IL 61953

Lessor(s) and address(es)
PREFERRED CAPITAL CORPORATION

905 NORTH LAKE BLVD.
TAHOE CITY, CA 96145

For Filing Officer
(Date, Time, Number, and Filing Office)

UCU1 04/11/00 05:06:42
20.00 Ck01
SOSIL 08:41 4189420 ES

This financing statement covers the following types (or items) of property:
SEE INVOICE THIS FINANCING STATEMENT IS BEING FILED FOR
INFORMATIONAL PURPOSES ONLY TO GIVE NOTICE OF THE SECURED
PARTY'S OWNERSHIP OF THE EQUIPMENT." 716-5507816-1

ASSIGNEE OF LESSOR
ADVANTA BANK CORP.

1020 LAUREL OAK ROAD, P.O. BOX 1228

VOORHEES, NJ 08043-7228

92121 ADVANTA
2293845-41-1

001020464000

☐ Products of Collateral are also covered.

☐ Additional sheets presented.
☐ Filed with Office of Secretary of State of Illinois.
☐ Lessee is a transmitting utility as defined in UCC 9-105.

Filed With:   Illinois

ATWOOD MEAT SERVICE, INC.
By ATTORNEY-IN-FACT
Signature of (Lessee)

RETURN ACK. TO
DATA FILING SERVICES, INC.
P. BOX 23071
GLENDALE, CA 91209-9071

Signature of Lessee (Required to Check Central By UCC 9-402 (2))

Lessor:   Signing for All

2293845

P.02/03

# Invoice

Lippert Inc.
600 W. 172nd Street
South Holland, IL 60473
USA
Phone: 708-333-6900
Fax: 708-333-3888

**Invoice Number:**
0

**Invoice Date:**
Feb 29, 2000

**Page:**
1

Duplicate

**Sold To:**
Preferred Lease
12770 High Bluff Dr.
Ste. #340/Attn: Dan Hayward
San Diego, CA 92130

**Ship to:**
The Amishland BBQ Smokehouse
5 Progress
Tulsa, OK 61953

UCU104/11/00:0S:0642:
20.00 Ck01
SUS1L 03:41 4189470 FS

001020464001

| Customer ID | | Customer P.O. | | | |
|---|---|---|---|---|---|
| Preferred Lease | | | | Payment Terms | |
| Sales Rep ID | | | | Net 30 Days | |
| | | Shipping Method | | Ship Date | Due Date |
| | | Direct | | 2/29/00 | 3/30/00 |
| Quantity | Item | | Description | Unit Price | Extension |
| 1.00 | | | Lot of Equipment to Include the following: (1) Walk-In Cooler/Freezer Combination (1) Russell Refrigeration System (1) Captive Air Exhaust Ventalation System (2) Deck Type Double Oven (1) Double Deck Convection Oven with set of casters | 56,715.00 | 56,715.00 |

Check No:

| | |
|---|---|
| Subtotal | 56,715.00 |
| Sales Tax | |
| Total Invoice Amount | 56,715.00 |
| Payment Received | 0.00 |
| **TOTAL** | 56,715.00 |

This STATEMENT is presented to a filing officer for filing pursuant to a Uniform Commercial Code.

**ATWOOD MEAT SERVICE INC**
**AMISHLAND BBQ SMOKEHOUSE**
**102 N MAIN STREET**
**ATWOOD, IL 61913**

PREFERRED CAPITAL CORPORATION
100 MAIN STREET, SUITE 150
DOVER, NJ 03820

For Filing Officer
(Date, Time, Number, and Filing Office)

RECEIVED
SECRETARY OF STATE
UNIFORM COMM. CODE DIV.
00 JUN -7 AM 11:58

"SEE INVOICE. THIS FINANCING STATEMENT IS BEING FILED FOR INFORMATIONAL PURPOSES ONLY TO GIVE NOTICE OF THE SECURED PARTY'S OWNERSHIP OF THE EQUIPMENT." 716-507816-3

ASSIGNEE OF LESSOR
ADVANTA BANK CORP.
1020 LAUREL OAK ROAD, P.O. BOX 1228
VOORHEES, NJ 08043-7228

93868 ADVANTA
2385581-41-1
UCU106/15/00:09:2789:
20.00 CK01:
SOSIL:09:51:4223227.FS

001670955C00

Products of Collateral are also covered.

Additional sheets presented.

Filed with the Office of Secretary of State of Illinois.

Lessee is a transmitting utility as defined in UCC 9-105.

RETURN ACK TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

Filed With:   Illinois

ATWOOD MEAT SERVICE INC
By ATTORNEY-IN-FACT
Signature of Lessee
Signing For All.

Signature of Lessee Required to Send By UCC s-402 (2)

600 W. 172nd Street
South Holland, IL  60473
USA

Voice   708-333-6900
Fax     708-333-3888

# Invoice

**Invoice Number**
3

**Invoice Date**
Mar 17, 2000

**Page:**
1

Duplicate

UCU106/1S/00:09:2789:
20:00 CK01
S0SIL 09:51 4223227.FS

**Sold To:**
Preferred Lease
12770 High Bluff Dr.
Ste. #340/Attn: Dan Hayward
San Diego, CA  92130

**Ship to:**
The Amishland BBQ Smokehouse
5 Progress
Tuscola, IL  61953

001670955601

| Customer ID | Customer PO | Payment Terms |
|---|---|---|
| Preferred Lease | | Net 30 Days |

| Sales Rep ID | Shipping Method | Ship Date | Due Date |
|---|---|---|---|
| | Direct/Lippert | | 4/16/00 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 1.00 | | Lot of Equipment/Smallwares to include the following: Griddle, Steamer, Plumbing Accessories, (3) Fryers, Hot Food Unit, (2) Ranges, (2) Beverage Tables, (2) Display Cases, Mixer, Glo Ray Food Warmer, Gas Connects, Custom Shelving, Custom Counter Tops, Baby Changing Station, Extra True Shelving, Pre Rinse Basket | 46,871.00 | 46,871.00 |

| | |
|---|---|
| Subtotal | 46,871.00 |
| Sales Tax | |
| Total Invoice Amount | 46,871.00 |
| Payment Received | 0.00 |
| **TOTAL** | 46,871.00 |

Check No:

0687