E-FILED
Monday, 02 April, 2007 03:01 PM
Clerk, U.S. District Court, ILCD

**Jake's Antiques**

Phone 217-774-4221
Fax 217-774-4241

W RT 16 RR 2 Box 20
Shelbyville, IL 62565

**AMISHLAND'S COUNTRY SMOKEHOUSE**
**S PROGRESS**
**TUSCOLA, IL 61953**

UCU106/1S/00:09:2789
20.00 CK01
SOS IL 09:S1 4223227 FS

| | |
|---|---|
| BILLING DATE: | |
| ACCOUNT ID: | |
| PREVIOUS BALANCE | |

001670955002

## ACCOUNT ACTIVITY

| DATE | INVOICE NO. | DETAILS | CHARGES | PAYMENTS |
|---|---|---|---|---|
| 2/1/00 2008 | | 193 SINGLE PRESS NEW CIGARES @77.00 | $14,861.00 | |
| | | | | |
| | | | | |
| Billed to: Preferred Leasee, 12770 High Bluff Drive, Suite 340, San Diego, CA 92110 | | | | |
| | | | | |
| | | | | |
| | | Totals: | $14,861.00 | $0.00 |
| | | Please pay this amount: | | $14,861.00 |

0688

This STATEMENT is presented for a filing officer for filing pursuant to the Uniform Commercial Code.

| Debtor(s) (Last Name First) and address(es) | Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number and Filing Office) |
|---|---|---|

Atwood Feed Service, Inc
P.O. Box 838
Atwood, IL 61913

Fox Knox Capital Fund, L.P.
2202 Fox Dr.
Champaign, IL 61820

This financing statement covers the following types (or items) of property:

All inventory whether owned now or acquired later,
all accessions, additions, replacements, and
substitutions

This Financing Statement is to be recorded in the
real estate records. Some or all of the collateral is located on the
following described real estate: Lot 15 and the South 21 1/2 feet of Lot
14 in Block 15 of the Original Town, now Village, of Atwood, Douglas County,
Illinois.

ASSIGNEE OF SECURED PARTY

☐ Products of Collateral are also covered.

Additional sheets presented.

Filed with Office of Secretary of State of Illinois.

By:

FILING OFFICER ALPHABETICAL

9 8 0 3 5        0 4 3 6

STANDARD FORM — UNIFORM COMMERCIAL CODE — FORM UCC-1 — REV 1-78

| AMISHLAND'S COUNTRY VILLAGE, INC<br>1304 TUSCOLA BLVD<br>TUSCOLA, IL 61953<br><br>TAXPAYER I.D. NUMBER : 37-1397921<br>**DEBTOR'S NAME, ADDRESS AND SSN OR TIN**<br>("I" means each Debtor who signs.) | TUSCOLA FURNITURE GROUP, LLC<br>2220 MARQUETTE ROAD<br>PERU, IL 61354<br><br><br>**SECURED PARTY'S NAME AND ADDRESS**<br>("You" means the Secured Party, its successors and assigns.) |

I am entering into this security agreement with you on _____ NOV. 17, 2000 _____ (date).

**SECURED DEBTS.** I agree that this security agreement will secure the payment and performance of the debts, liabilities or obligations described below that (Check one) ☐ I ☒ (name) AMISHLAND'S COUNTRY VILLAGE, INC. _____ owe(s) to you now or in the future:

(Check one below):

☐ **Specific Debt(s).** The debt(s), liability or obligations evidenced by (describe): _____ and all extensions, renewals, refinancings, modifications and replacements of the debt, liability or obligation.

☒ **All Debt(s).** Except in those cases listed in the "LIMITATIONS" paragraph on page 2, each and every debt, liability and obligation of every type and description (whether such debt, liability or obligation now exists or is incurred or created in the future and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several or joint and several).

**Security Interest.** To secure the payment and performance of the above described Secured Debts, liabilities and obligations, I give you a security interest in all of the property described below that I now own and that I may own in the future (including, but not limited to, all parts, accessories, repairs, improvements, and accessions to the property), wherever the property is or may be located, and all proceeds and products from the property.

☒ **Inventory:** All inventory which I hold for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

☐ **Equipment:** All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will also be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.

☐ **Farm Products:** All farm products including, but not limited to:
(a) all poultry and livestock and their young, along with their products, produce and replacements;
(b) all crops, annual or perennial, and all products of the crops; and
(c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

☒ **Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment:** All rights I have now and that I may have in the future to the payment of money including, but not limited to:
(a) payment for goods and other property sold or leased or for services rendered, whether or not I have earned such payment by performance; and
(b) rights to payment arising out of all present and future debt instruments, chattel paper and loans and obligations receivable.
The above include any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.

☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of any preexisting, current or future Federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and the ASCS).

☒ **The secured property includes, but is not limited by, the following:** ALL ORIGINALLY MADE AND CRAFTED AMISH FURNITURE, FULLY FINISHED, AND AMISH STYLE FURNITURE MADE BY OTHERS, PLUS OTHER FURNITURE COMPLIMENTARY TO, BUT NOT CURRENTLY PRODUCED BY AMISH MANUFACTURES, BUT DOES NOT INCLUDE CRAFTS, LAMPS, PICTURES AND ACCESSORIES OTHER THAN WOOD PRODUCTS WHETHER AMISH MADE OR NOT

If this agreement covers timber to be cut, minerals (including oil and gas), fixtures or crops growing or to be grown, the legal description is:

FURNITURE COVERED BY THIS SECURITY AGREEMENT IS TO BE KEPT, PRESERVED, REPAIRED AND MAINTAINED AT THE FOLLOWING LOCATIONS:

1. 1304 TUSCOLA BLVD., TUSCOLA, ILLINOIS 61953
2. EAST ROUTE 36, ATWOOD, ILLINOIS 61913
3. 123 N. MAIN ST., ATWOOD, ILLINOIS 61913
4. 601 & 603 S. MAIN ST., TUSCOLA, ILLINOIS 61953
   (1 BUILDING OCCUPYING 2 LOTS)

---

**I am a(n)** ☐ individual ☐ partnership ☒ corporation ☐

☐ If checked, file this agreement in the real estate records.

Record Owner (if not me): _____

The property will be used for ☐ personal ☒ business
☐ agricultural ☐ _____ reasons.

TUSCOLA FURNITURE GROUP, LLC
BY ITS MANAGER: JANKO FINANCIAL GROUP, LLC

By: _____ RICHARD JANKO

Title: AUTHORIZED MEMBER

**I AGREE TO THE TERMS SET OUT ON BOTH PAGE 1 AND PAGE 2 OF THIS AGREEMENT. I have received a copy of this document on today's date.**

AMISHLAND'S COUNTRY VILLAGE, INC
(Debtor's Name)

By: _____ JAMES E STILWELL

Title: PRESIDENT

By: _____

Title: _____

© 1986, 1990 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341) SECURITY AGREEMENT FORM SA 8/5/91

**GENERALLY** - "You" means the Secured Party identified on page 1 of this agreement. "I," "me" and "my" means each person who signs this security agreement as Debtor and who agrees to give the property described in this agreement as security for the Secured Debts. All terms and duties under this agreement are joint and individual. No modification of this security agreement is effective unless made in writing and signed by you and me. This security agreement remains in effect, even if the note is paid and I owe no other debt to you, until discharged in writing. Time is of the essence in this agreement.

**APPLICABLE LAW** - I agree that this security agreement will be governed by the law of the state in which you are located. If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the property is located.

To the extent permitted by law, the terms of this agreement may vary applicable law. If any provision of applicable law may not be varied by agreement, any provision of this agreement that does not comply with that law will not be effective. If any provision of this agreement can be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - I represent that I own all of the property, or to the extent this is a purchase money security interest I will acquire ownership of the property with the proceeds of the loan. I will defend it against any other claim. Your claim to the property is ahead of the claims of any other creditor. I agree to do whatever you require to protect your security interest and to keep your claim in the property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the property.

I will keep the property in my possession and will keep it in good repair and use it only for the purpose(s) described on page 1 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the property and, if I am not, that I have provided you with a list of prior owners of the property.

I will keep the property at my address listed on page 1 of this agreement, unless we agree I may keep it at another location. If the property is to be used in another state, I will give you a list of those states. I will not try to sell the property unless it is inventory or I receive your written permission to do so. If I sell the property I will have the payment made payable to the order of you and me.

You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent (1) a beneficial interest in the debtor is sold or transferred or (2) there is a change in either the identity or number of members of a partnership or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

I will pay all taxes and charges on the property as they become due. You have the right of reasonable access in order to inspect the property. I will immediately inform you of any loss or damage to the property.

**LIMITATIONS** - This agreement will not secure a debt described in the section entitled "Secured Debts" on page 1:

1) if you fail to make any disclosure of the existence of this security interest required by law for such other debt;
2) if this security interest is in my principal dwelling and you fail to provide (to all persons entitled) any notice of right of rescission required by law for such other debt;
3) to the extent that this security interest is in "household goods" and the other debt to be secured is a "consumer" loan (as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices);
4) if this security interest is in margin stock subject to the requirements of 12 C.F.R. Section 207 or 221 and you do not obtain a statement of purpose if required under these regulations with respect to that debt; or
5) if this security interest is unenforceable by law with respect to that debt.

**PURCHASE MONEY SECURITY INTEREST** - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any non-purchase money loan also secured by this agreement will not be deemed to apply to the purchase money loan, and (b) payments on the purchase money loan will be deemed to apply first to the non-purchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items of collateral were acquired or if acquired at the same time, in the order selected by you. No security interest will be terminated by application of this formula. "Purchase money loan" means any loan the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**AUTHORITY OF SECURED PARTY TO MAKE ADVANCES AND PERFORM FOR DEBTOR** - I agree to pay you on demand any sums you advanced on my behalf including, but not limited to, expenses incurred in collecting, insuring, conserving, or protecting the property or in any inventories, audits, inspections or other examinations by you in respect to the property. If I fail to pay such sums, you may do so for me, adding the amount paid to the other amounts secured by this agreement. All such sums will be due on demand and will bear interest at the highest rate provided in any agreement, note or other instrument evidencing the Secured Debt(s) and permitted by law at the time of the advance.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. I understand that this authorization includes, but is not limited to, permission to: (1) prepare, file, and sign my name to any necessary reports or accountings; (2) notify any account debtor of your interest in this property and tell the account debtor to make the payments to you or someone else you name, rather than me; (3) place on any chattel paper a note indicating your interest in the property; (4) in my name, demand, collect, receive and give a receipt for, compromise, settle, and handle any suits or other proceedings involving the collateral; (5) take any action you feel is necessary in order to realize on the collateral, including performing any part of a contract or endorsing it in my name; and (6) make an entry on my books and records showing the existence of the security agreement. Your right to perform for me shall not create an obligation to perform and your failure to perform will not preclude you from exercising any of your other rights under the law or this security agreement.

**INSURANCE** - I agree to buy insurance on the property against the risks and for the amounts you require and to furnish you continuing proof of coverage. I will have the insurance company name you as loss payee on any such policy. You may require added security if you agree that insurance proceeds may be used to repair or replace the property. I will buy insurance from a firm licensed to do business in the state where you are located. The firm will be reasonably acceptable to you. The insurance will last until the property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

**WARRANTIES AND REPRESENTATIONS** - If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to me or which I take back in trust for you. I will not mix them with any other property of mine. I will deliver them to you at your request. If you ask me to pay you the full price on any returned items or items retaken by myself, I will do so.

If this agreement covers inventory, I will not dispose of it except in my ordinary course of business at the fair market value for the property, or at a minimum price established between you and me.

If this agreement covers farm products I will provide you, at your request, a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products. In addition to those parties named on this written list, I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of my agreement with you and the Food Security Act. In this paragraph the terms farm products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

**DEFAULT** - I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) I change my name or assume an additional name without first notifying you before making such a change; (9) failure to plant, cultivate and harvest crops in due season; (10) if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES** - If I am in default on this agreement, you have the following remedies:

1) You may demand immediate payment of all I owe you under any obligation secured by this agreement.
2) You may set off any obligation I have to you against any right I have to the payment of money from you.
3) You may demand more security or new parties obligated to pay any debt I owe you as a condition of giving up any other remedy.
4) You may make use of any remedy you have under state or federal law.
5) If I default by failing to pay taxes or other charges, you may pay them (but you are not required to do so). If you do, I will repay to you the amount you paid plus interest at the highest contract rate.
6) You may require me to gather the property and make it available to you in a reasonable fashion.
7) You may repossess the property and sell it as provided by law. You may repossess the property so long as the repossession does not involve a breach of the peace or an illegal entry onto my property. You may sell the property as provided by law. You may apply what you receive from the sale of the property to: your expenses; your reasonable attorneys' fees and legal expenses (where not prohibited by law); any debt I owe you. If what you receive from the sale of the property does not satisfy the debts, you may take me to court to recover the difference (where permitted by law).

I agree that 10 days written notice sent to my address listed on page 1 by first class mail will be reasonable notice to me under the Uniform Commercial Code.

If any items not otherwise subject to this agreement are contained in the property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.

8) In some cases, you may keep the property to satisfy the debt. You may enter upon and take possession of all or any part of my property, so long as you do not breach the peace or illegally enter onto the property, including lands, plants, buildings, machinery, and equipment as may be necessary to permit you to manufacture, produce, process, store or sell or complete the manufacture, production, processing, storing or sale of any of the property and to use and operate the property for length of time you feel is necessary to protect your interest, all without payment or compensation to me.

By choosing any one or more of these remedies, you do not waive your right to later use any other remedy. You do not waive a default if you choose not to use any remedy, and, by electing not to use any remedy, you do not waive your right to later consider the event a default and to immediately use any remedies if it continues or occurs again.

**FILING** - A carbon, photographic or other reproduction of this security agreement or the financing statement covering the property described in this agreement may be used as a financing statement where allowed by law. Where permitted by law, you may file a financing statement which does not contain my signature, covering the property secured by this agreement.

**CO-MAKERS** - If more than one of us has signed this agreement, we are all obligated equally under the agreement. You may sue any of us or any of us together if this agreement is violated. You do not have to tell me if any term of the agreement has not been carried out. You may release any co-signer and I will still be obligated under this agreement. You may release any of the security and I will still be obligated under this agreement. Waiver by you of any of your rights will not affect my duties under this agreement. Extending this agreement or new obligations under this agreement, will not affect my duty under the agreement.

This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| Debtor(s) (Last Name First) and address(es) | Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number, and Filing Office) |
|---|---|---|
| AMISHLAND'S COUNTRY VILLAGE, INC. 1304 TUSCOLA BLVD TUSCOLA, ILLINOIS  61953 | TUSCOLA FURNITURE GROUP, LLC 2220 MARQUETTE ROAD PERU, ILLINOIS  61354 | |

1. This financing statement covers the following types (or items) of property:

ALL FURNITURE INVENTORY, WHETHER NOW OWNED OR HEREAFTER AQUIRED, INCLUDING ALL ORIGINALLY MADE AND CRAFTED AMISH FURNITURE, FULLY FINISHED, AND AMISH STYLE FURNITURE MADE BY OTHERS, PLUS OTHER FURNITURE INVENTORY COMPLIMENTARY TO, BUT NOT CURRENTLY PRODUCED BY AMISH MANUFACTURES, BUT DOES NOT INCLUDE CRAFTS, LAMPS, PICTURES AND ACCESSORIES OTHER THAN WOOD PRODUCTS, WHETHER AMISH MADE OR NOT.  ALL ACCOUNTS, INSTRUMENTS, DOCUMENTS, CHATTEL PAPER AND OTHER RIGHTS TO PAYMENT, AND GENERAL INTANGIBLES, RELATING TO FURNITURE INVENTORY.  FURNITURE COVERED BY THIS FINANCING STATEMENT IS TO BE KEPT, PRESERVED, REPAIRED AND MAINTAINED AT THE FOLLOWING LOCATIONS:

ASSIGNEE OF SECURED PARTY

FIRST MID-ILLINOIS BANK & TRUST
P O BOX 18, 410 S MAIN ST
TUSCOLA, ILLINOIS 61953

1. 1304 TUSCOLA BLVD., TUSCOLA, IL 61953
2. EAST ROUTE 36, ATWOOD, IL 61913
3. 123 N MAIN ST., ATWOOD, IL 61913
4. 601 & 603 S MAIN ST., TUSCOLA, IL 61953
   (1 BUILDING OCCUPYING 2 LOTS)

2. ☐ Products of Collateral are also covered.

——— Additional sheets presented.
——— Filed with Office of Secretary of State of Illinois.
——— Debtor is a transmitting utility as defined in UCC §9-105.

AMISHLAND'S COUNTRY VILLAGE, INC.

By

TUSCOLA FURNITURE GROUP, LLC

BY: _____ (Secured Party)

Signature of Debtor Required in Most Cases;
Signature of Secured Party in Cases Covered By UCC §9-402 (2)

FILE COPY–SECURED PARTY(IES)

This form of financing statement is approved by the Secretary of State.

STANDARD FORM – UNIFORM COMMERCIAL CODE – FORM UCC-1 – REV. 1 - 75

File Number    5991-766-8

212325

# State of Illinois
## Office of
## The Secretary of State

**Whereas,**

ARTICLES OF INCORPORATION OF
AMISHLAND'S COUNTRY VILLAGE, INC.
INCORPORATED UNDER THE LAWS OF THE STATE OF ILLINOIS HAVE BEEN
FILED IN THE OFFICE OF THE SECRETARY OF STATE AS PROVIDED BY THE
BUSINESS CORPORATION ACT OF ILLINOIS, IN FORCE JULY 1, A.D. 1984.

**Now Therefore, I, George H. Ryan,** Secretary of State of the State of Illinois, by virtue of the powers vested in me by law, do hereby issue this certificate and attach hereto a copy of the Application of the aforesaid corporation.

**In Testimony Whereof,** I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, at the City of Springfield, this 24TH day of APRIL A.D. 19 98 and of the Independence of the United States the two hundred and 22ND

*George H Ryan*

Secretary of State

C-212.2

BOOK 470 PAGE 127

0693

6

Form **BCA-2.10** | **ARTICLES OF INCORPORATION**

(Rev. Jan. 1995)
George H. Ryan
Secretary of State
Department of Business Services
Springfield, IL 62756
http://www.sos.state.il.us

Payment must be made by certified check, cashier's check, Illinois attorney's check, Illinois C.P.A's check or money order, payable to "Secretary of State."

This space for use by Secretary of State

# FILED

APR 21 1998

GEORGE H. RYAN
SECRETARY OF STATE

**SUBMIT IN DUPLICATE!**

This space for use by
Secretary of State

Date 4-21-48

Franchise Tax  $ 25.00
Filing Fee       $ 75.00
                     100.00
Approved:  RL

1. CORPORATE NAME: _Amishland's Country Village, Inc._

(The corporate name must contain the word "corporation", "company," "incorporated," "limited" or an abbreviation thereof.)

2. Initial Registered Agent:

| James | E. | Stilwell |
|---|---|---|
| First Name | Middle Initial | Last name |

Initial Registered Office:

| 218 N. Iowa, P.O. Box 538 | | |
|---|---|---|
| Number | Street | Suite # |
| Atwood        IL | 61913 | Douglas |
| City | Zip Code | County |

3. Purpose or purposes for which the corporation is organized:
(If not sufficient space to cover this point, add one or more sheets of this size.)

The Corporation has been organized to operate and manage a business operation to be known as "Amishland" in Tuscola, Illinois, and to otherwise engage in any lawful act or activities for which Corporations may be organized under the Act and to possess and exercise all of the powers and privileges granted by the Act or by any other law of the State of Illinois, together with any lawful powers and privileges incident thereto as far as such powers and

4. Paragraph 1: Authorized Shares, Issued Shares and Consideration Received:

| Class | Par Value per Share | Number of Shares Authorized | Number of Shares Proposed to be Issued | Consideration to be Received Therefor |
|---|---|---|---|---|
| Common | $ 1.00 | 100 | 100 | $ 100.00 |

TOTAL = $ 100.00

Paragraph 2: The preferences, qualifications, limitations, restrictions and special or relative rights in respect of the shares of each class are:
(If not sufficient space to cover this point, add one or more sheets of this size.)

BOOK **470** PAGE **128**

(over)

0694

5. *OPTIONAL:*  (a) Number of directors constituting the initial board of directors of the corporation: _____
(b) Names and addresses of the persons who are to serve as directors until the first annual meeting of shareholders or until their successors are elected and qualify:

| Name | Residential Address | City, State, ZIP |
|------|--------------------|-----------------|

__The business of the Corporation shall be managed by the__
__shareholders of said Corporation__

6. *OPTIONAL:*  (a) It is estimated that the value of all property to be owned by the corporation for the following year wherever located will be:  $ _____
(b) It is estimated that the value of the property to be located within the State of Illinois during the following year will be:  $ _____
(c) It is estimated that the gross amount of business that will be transacted by the corporation during the following year will be:  $ _____
(d) It is estimated that the gross amount of business that will be transacted from places of business in the State of Illinois during the following year will be:  $ _____

7. *OPTIONAL:*  *OTHER PROVISIONS*
Attach a separate sheet of this size for any other provision to be included in the Articles of Incorporation, e.g., authorizing preemptive rights, denying cumulative voting, regulating internal affairs, voting majority requirements, fixing a duration other than perpetual, etc.

8.
## NAME(S) & ADDRESS(ES) OF INCORPORATOR(S)

The undersigned incorporator(s) hereby declare(s), under penalties of perjury, that the statements made in the foregoing Articles of Incorporation are true.

Dated ___April 15___  19 __98__

| Signature and Name | Address |
|--------------------|---------|
| 1. *Signature* | 218 N. Iowa, P.O. Box 538 *Street* |
| James E. Stilwell *(Type or Print Name)* | Atwood, IL  61913 *City/Town  State  Zip Code* |
| 2. *Signature* | 2 218 N. Iowa, P.O. Box 538 *Street* |
| Margaret Stilwell *(Type or Print Name)* | Atwood, IL  61913 *City/Town  State  Zip Code* |
| 3. *Signature* | 3 218 N. Iowa, P.O. Box 538 *Street* |
| Jamie Stilwell *(Type or Print Name)* | Atwood, IL  61913 *City/Town  State  Zip Code* |

(Signatures must be in **BLACK INK** on original document. Carbon copy, photocopy or rubber stamp signatures may only be used on conformed copies.)
NOTE: If a corporation acts as incorporator, the name of the corporation and the state of incorporation shall be shown and the execution shall be by its president or vice president and verified by him, and attested by its secretary or assistant secretary.

## FEE SCHEDULE

- The initial franchise tax is assessed at the rate of 15/100 of 1 percent ($1.50 per $1,000) on the paid-in capital represented in this state, with a minimum of $25.
- The filing fee is $75.
- The minimum total due (franchise tax + filing fee) is $100.
  (Applies when the Consideration to be Received as set forth in Item 4 does not exceed $16,667)
- The Department of Business Services in Springfield will provide assistance in calculating the total fees if necessary.

Illinois Secretary of State    Springfield, IL 62756
Department of Business Services   Telephone (217) 782-9522 or 782-9523

BOOK **470** PAGE**129**

C-162.19

Paragraph 3 Continued -

and privileges are necessary or convenient to the conduct, promotion or attainment of the business and purposes of the Corporation.

BOOK **470** PAGE **130**

Filed for Record
Hour of 9.50 o'clock A M

MAY 0 1 1998

Recorded in book 470 page 130
RECORDS.
James A. Ingram
RECORDER DOUGLAS CO.

0696

File Number _____ 5991-766-8



## To all to whom these Presents Shall Come, Greeting:

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that AMISHLAND'S COUNTRY VILLAGE, INC., A DOMESTIC CORPORATION, INCORPORATED UNDER THE LAWS OF THIS STATE APRIL 24, 1998, APPEARS TO HAVE COMPLIED WITH ALL THE PROVISIONS OF THE BUSINESS CORPORATION ACT OF THIS STATE RELATING TO THE FILING OF ANNUAL REPORTS AND PAYMENT OF FRANCHISE TAXES, AND AS OF THIS DATE, IS IN GOOD STANDING AS A DOMESTIC CORPORATION IN THE STATE OF ILLINOIS*************************************************************



**In Testimony Whereof,** I, hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, this _____ 13TH _____ day of _____ NOVEMBER _____ A.D. _____ 2000 _____ .

*Jesse White*

SECRETARY OF STATE

C-260.1

# CERTIFICATE OF INCUMBENCY

The undersigned do hereby certify that the persons named below have been duly elected or appointed, have duly qualified as, and on this day are the Directors and Officers of AMISHLAND'S COUNTRY VILLAGE, INC., as indicated below and that set forth opposite the respective name of each is a sample of his or her signature.

| NAME | OFFICE | SIGNATURE |
|---|---|---|
| JAMES STILWELL | President and Director | *Jas Stilwell* |
| MARGARET STILWELL | Vice President and Director | *Margaret Stilwell* |
| JAMI STILWELL-BOWLES | Secretay/Treas. and Director | *Jami Stilwell Bowles* |

IN WITNESS WHEREOF, I have hereunto set my hand this 17th day of November, 2000.

*Jami Stilwell - Bowles*
Corporate Secretary,
AMISHLAND'S COUNTRY VILLAGE, INC.

The undersigned does hereby certify that the persons named below are all the Shareholders of AMISHLAND'S COUNTRY VILLAGE, INC.

## NAME

JAMES STILWELL
MARGARET STILWELL
JAMI STILWELL-BOWLES

IN WITNESS WHEREOF, I have hereunto set my hand this 17th day of November, 2000.

*Jas Stilwell*
JAMES STILWELL, President,
AMISHLAND'S COUNTRY VILLAGE, INC.

0698

8

# AMISHLAND'S COUNTRY VILLAGE, INC.
## RESOLUTION OF SHAREHOLDERS

---

**WHEREAS,** AMISHLAND'S COUNTRY VILLAGE, Inc.("ACV") is an Illinois Corporation in good standing, and

**WHEREAS,** the business of ACV is is managed by the Shareholders of the Corporation as stated in its Articles Of Incorporation filed with the State of Illinois on April 24, 1998, and

**WHEREAS,** James Stilwell, as President of ACV, may be granted by the Shareholders and Managers exclusive authority on behalf of ACV to manage the operations and affairs of ACV, and

**WHEREAS,** the Shareholders and Managers of ACV heretofore agreed, and did in fact enter into a Consignment Agreement with the JANKO FINANCIAL GROUP, LLC, ("JFG") an Illinois Limited Liability Company, dated 4/16/99, in which JFG provided financial resources to purchase an inventory of Amish crafted furniture and consign the same with ACV.

**WHEREAS,** the Shareholders and Managers have determined it necessary for the business of ACV to enter into a revised Consignment Agreement with TUSCOLA FURNITURE GROUP, LLC, an Illinois Liability Company, ("TFG"), as assignee of JFG, which has the resources and is willing to purchase an inventory of Amish crafted furniture and consign the same with ACV, and

**WHEREAS,** a revised Consignment Agreement dated November 02, 2000, has been drafted containing the terms and conditions of the transactions as agreed to between TFG and ACV, attached hereto as Exhibit "A".

**THEREFORE, BE IT RESOLVED,** by the Shareholders and Managers of ACV as follows:

1.    That James Stilwell as President of ACV is hereby authorized on behalf of ACV to execute any and all documents necessary and relating to the sale and consignment of inventory of Amish crafted furniture involving TFG, specifically, but not limited to, the revised Consignment Agreement with TFG dated 11-02-00.

2.   That James Stilwell is hereby authorized and empowered for and on behalf of ACV, without any further action by the Shareholders and Managers, to make such changes in and amendments and modifications in documents as he shall, in his sole discretion and judgment, approve, which approval shall be conclusively evidenced by the execution thereof.

**IN WITNESS WHEREOF,** the undersigned Shareholders and Managers of AMISHLAND'S COUNTRY VILLAGE, INC., have approved and executed this Resolution, effective this _17 ᵀᴴ_ day of November, 2000.

AMISHLAND'S COUNTRY VILLAGE, INC.
By its Shareholders and Managers,

_____
James Stilwell

_____
Margaret Stilwell

_____
Jami Stilwell - Bowles

0700

# ACORD CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YY)
11/15/00

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|
| Dimond Bros. Agency, Inc. ARC<br>106 E. Main Street<br>P.O. Box 275<br>Arcola, IL 61910 | |
| | **INSURERS AFFORDING COVERAGE** |
| INSURED<br>Amishland's Country Village, Inc.<br>C/O Mr. Jim Stilwell<br>P. O. Box 538<br>Atwood, IL 61913 | INSURER A: Cincinnati Insurance Co |
| | INSURER B: |
| | INSURER C: |
| | INSURER D: |
| | INSURER E: |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS MADE  X OCCUR | CAP5049570AWR | 11/19/99 | 11/19/00 | EACH OCCURRENCE | $1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $100,000 |
| | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☐ PRO-JECT ☐ LOC | | | | GENERAL AGGREGATE | $ |
| | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | **AUTOMOBILE LIABILITY**<br>☐ ANY AUTO<br>☐ ALL OWNED AUTOS<br>☐ SCHEDULED AUTOS<br>☐ HIRED AUTOS<br>☐ NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | **GARAGE LIABILITY**<br>☐ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN  EA ACC<br>AUTO ONLY:  AGG | $ |
| | **EXCESS LIABILITY**<br>☐ OCCUR  ☐ CLAIMS MADE | | | | EACH OCCURRENCE | $ |
| | | | | | AGGREGATE | $ |
| | ☐ DEDUCTIBLE<br>☐ RETENTION | | | | | $ |
| | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | OTHER Business<br>Personal Prop | CAP5049450AWR | 11/19/99 | 11/19/00 | $2,000,000/$250 Ded | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
Tuscola Furniture Group is an additional insured on business personal property and general liability.  First Mid IL Bank and Trust is a loss payee on the business personal property

| CERTIFICATE HOLDER  X ADDITIONAL INSURED; INSURER LETTER | CANCELLATION |
|---|---|
| Tuscola Furniture Group, LLC<br>2220 Marquette Road<br>Peru, IL 61354 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE<br>_Christie C. Cox_ |

ACORD 25-S (7/97) 1 of 2    #S2754/M2122    CAC    © ACORD CORPORATION 1988

0701

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|
| Dimond Bros. Agency, Inc. ARC 106 E. Main Street P. O. Box 275 Tuscola, IL  61910 | |
| | **INSURERS AFFORDING COVERAGE** |
| **INSURED** Amishland Country Village Inc C/O Mr. Jim Stilwell P. O. Box 538 Atwood, IL  61913 | INSURER A: Cincinnati Insurance Co |
| | INSURER B: |
| | INSURER C: |
| | INSURER D: |
| | INSURER E: |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** [X] COMMERCIAL GENERAL LIABILITY  CLAIMS MADE [X] OCCUR | CAP5049570AWR | 11/19/00 | 11/19/01 | EACH OCCURRENCE | $1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $100,000 |
| | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY [ ] PRO-JECT [ ] LOC [ ] | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | **AUTOMOBILE LIABILITY** ANY AUTO ALL OWNED AUTOS SCHEDULED AUTOS HIRED AUTOS NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | **GARAGE LIABILITY** ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN   EA ACC AUTO ONLY:       AGG | $ $ |
| | **EXCESS LIABILITY** OCCUR  CLAIMS MADE  DEDUCTIBLE RETENTION $ | | | | EACH OCCURRENCE | $ |
| | | | | | AGGREGATE | $ |
| | | | | | | $ |
| | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | | WC STATU-TORY LIMITS / OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | **OTHER** | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
Tuscola Furniture Group is an additional insured on business personal property and general liability.  First Mid IL Bank and Trust is a loss payee on the business personal property

| CERTIFICATE HOLDER          [X] ADDITIONAL INSURED; INSURER LETTER: | CANCELLATION |
|---|---|
| Tuscola Furniture Group, LLC 2220 Marquette Road Tuscola, IL  61354 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

# TUSCOLA FURNITURE GROUP, LLC
## RESOLUTION OF THE MANAGER

WHEREAS, JANKO FINANCIAL GROUP, L.L.C., ("JFG") an Illinois Limited Liability Company, is the manager of TUSCOLA FURNITURE GROUP, LLC, ("TFG") an Illinois Limited Liability Company; and

WHEREAS, the Manager has the exclusive authority on behalf of TFG to "manage the operations and affairs of TFG, and

WHEREAS, the management of JFG is controlled by more than 50% of the total percentage interest of all members of JFG, pursuant to Section 9.1 of the Operating Agreement of JFG; and

WHEREAS, the percentage membership interest of JFG is RICHARD F. JANKO - 47.5%, MICHAEL M. JANKO - 47.5%, and LAWRENCE W. BIANCHI - 5%; and

WHEREAS, JFG, in return for 100% ownership of TFG, and payment for JFG's Amish Furnitue proposes to assign to TFG, the interest of JFG in a certain Consignment Agreement with Amishland Country Village, Inc., dated 4/16/99 and all rights, title and interest of JFG in and to its inventory of Amish Furniture described on Exhibit "A", and

WHEREAS, the manager of TFG has determined that it is necessary for the business of TFG to establish a line of credit loan for up to $1,000,000.00 with FIRST MID-ILLINOIS BANK hereafter "BANK" and to secure said loan with a first security interest in TFG's AMISH FURNITURE at an initial interest rate of 9.5 %, adjusted quarterly with maturity on or before 4/16/02.

THEREFORE, BE IT RESOLVED, by the Manager of TFG as follows:

1.    That JFG be and hereby is authorized to execute and deliver on behalf of TFG all documents necessary and relating to the acquisition by TFG of all rights of JFG in and to Amish Furniture and the Consignment Agreement with Amishland Country Village, Inc. dated 4/16/99.

2.    That JFG be and hereby is authorized to execute and deliver on behalf of TFG a revised Consignment Agreement with Amishland Country Village, Inc., under draft date of 11/02/00.

3.     That JFG be and hereby is directed and authorized to execute and deliver on behalf of TFG, all Notes, Security Agreements and related loan documents; pay all loan service charges and other fees incurred in connection with the borrowing up to 1 Million Dollars from BANK, with such indebtedness secured by Security Agreement on all Amish Furniture owned by TFG.

4.     That RICHARD F. JANKO, Authorized member shall execute on behalf of manager JFG and on behalf of TFG pursuant to the following format:

TUSCOLA FURNITURE GROUP, LLC

by its Manager,

JANKO FINANCIAL GROUP, L.L.C.

BY:_____

RICHARD F. JANKO, Authorized Member

5.     That RICHARD JANKO, be and he hereby is, authorized and empowered, for and on behalf of TFG, without any further action by JFG, to execute and deliver any other documents that may be required, requested or determined to be proper, for the above described transactions with such determination to be conclusively evidenced by the execution or delivery of the aforementioned items.

6.     That the said person, be and he hereby is authorized and empowered for and on behalf of TFG, without any further action by the manager, to make such changes in and amendments and modifications in documents as he shall, in his sole discretion and judgment, approve, which approval shall be conclusively evidenced by the execution thereof.

7.     That the said person, be and he hereby is authorized and directed to pay all fees and expenses and to do or cause to be done, such other acts and things as he deem necessary or proper in order to carry out and to fully effectuate the purposes of the foregoing Resolution.

IN WITNESS WHEREOF, the undersigned, as a majority of the Members of JANKO FINANCIAL GROUP, L.L.C., an Illinois Limited Liability Company, as manager of TUSCOLA

FURNITURE GROUP, LLC, an Illinois Limited Liability Company, have approved and executed this Resolution, effective the ___/6___ day of ___*NOV,*_____, 2000.


TUSCOLA FURNITURE GROUP, LLC.
By its Manager,


JANKO FINANCIAL GROUP, L.L.C.


BY: _____
      RICHARD F. JANKO, Member


BY: _____
      LAWRENCE W. BIANCHI, Member


LWB/sma
JANKO\TUSCOLA-AMISHFURN.RES

CERTIFICATION
OF
JANKO FINANCIAL GROUP

I HEREBY CERTIFY, that I am a member of JANKO FINANCIAL GROUP, L.L.C., an Illinois Limited Liability Company, hereafter "JFG"

I FURTHER CERTIFY, that by unanimous agreement, without a meeting, the Members of JFG adopted the Resolution of JFG as Manager of Tuscola Furniture Group, LLC., ("TFG") attached hereto approving TFG's purchase of JFG's Amish Furniture, TFG entering into a Consignment Agreement with Amishland Country Village, Inc. and a $1,000,000.00 loan by Tuscola Furniture Group, LLC., from First Mid-Illinois Bank & Trust N.A.

I FURTHER CERTIFY, that this Resolution is within the power of the Members to adopt as provided in the Operating Agreement of JFG and the following is a list of all the Members and Managers of JFG and their percentage membership interest.

MEMBER/MANAGER:

| RICHARD F. JANKO | 47.5% |
| MICHAEL M. JANKO | 47.5% |
| LAWRENCE W. BIANCHI | 5.0% |

I FURTHER CERTIFY, that the Articles of Organization for JFG attached hereto have not been amended, are a true and correct copy of the Articles, and no dissolution of JFG has occurred.

I FURTHER CERTIFY, that the JFG Operating Agreement with First Second and Third Amendments attached hereto are a true and correct copy of the originals.

I FURTHER CERTIFY, there are no past due franchise taxes to the State of Illinois.

Dated this _16_ day of _November_, 2000.

_____
Member

LWB/sma
JANKO\Fin-Amishfurn-CERT

## ASSIGNMENT AND ASSUMPTION AGREEMENT
### (AMISH FURNITURE)

---

This Assignment and Assumption Agreement made as of this _1(_ day of _Nov_ _____, 2000 by and between JANKO FINANCIAL GROUP, LLC, an Illinois Limited Liability Company, Assignor, and TUSCOLA FURNITURE GROUP, LLC, an Illinois Limited Liability Company, Assignee.

NOW THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt whereof is acknowledged, Assignor hereby assigns and Assignee hereby agrees to assume and to fully and faithfully perform the obligations of Assignor under the following:

1.    Consignment Agreement dated 4/16/99 by and between AMISHLAND COUNTRY VILLAGE, INC.,  and JANKO FINANCIAL GROUP, L.L.C.

2.    Any and all Contracts and other documents including insurance policies,  relating to and incurred in connection with the acquisition and consignment of AMISH FURNITURE pursuant to the Consignment Agreement referred to in paragraph 1.

3.    All inventory of AMISH FURNITURE owned by Assignor and subject to the Consignment Agreement.

IN WITNESS WHEREOF, the Assignor and Assignee have caused this Assignment and Assumption Agreement to be fully executed  and delivered this _16_ day of _November_ , 2000.

ASSIGNEE:
TUSCOLA FURNITURE GROUP, LLC
by its Manager,
JANKO FINANCIAL GROUP, L.L.C.

BY: _____
RICHARD JANKO, Authorized Member

ASSIGNOR:
JANKO FINANCIAL GROUP, LLC

BY: _____
RICHARD JANKO, Authorized Member

JANKO\TUSCOLA-AMISHLAND.ASNM

## QUITCLAIM BILL OF SALE

Seller , JANKO FINANCIAL GROUP, L.L.C. an Illinois Limited Liability Company, in consideration of payment for the average wholesale cost and other good and valuable consideration, does hereby sell, assign, transfer, and set over to Buyer, TUSCOLA FURNITURE GROUP,LLC., the following described personal property, to-wit:

All AMISH FURNITURE owned by Seller and consigned to AMISHLAND COUNTRY VILLAGE, INC. pursuant to Consignment Agreement dated April 16, 1999.

ALL WARRANTIES OF QUALITY, FITNESS AND MERCHANTABILITY ARE HEREBY EXCLUDED.

IN WITNESS WHEREOF, Seller has signed and sealed this Bill of Sale at Ottawa, IL this __16__ day of November _____, 2000.

JANKO FINANCIAL GROUP, L.L.C.,

BY: _____
RICHARD JANKO, Manager

LWB/sma
JANKO\FINAC-FURN-AMISH.QC.DEED

File Number _____0046000-1_____



**STATE OF ILLINOIS**
**OFFICE OF**
**THE SECRETARY OF STATE**

*Whereas,*    ARTICLES OF ORGANIZATION OF

TUSCOLA FURNITURE GROUP, LLC,
ORGANIZED UNDER THE LAWS OF THE STATE OF ILLINOIS HAVE BEEN FILED
IN THE OFFICE OF THE SECRETARY OF STATE AS PROVIDED BY THE LIMITED
LIABILITY COMPANY ACT OF ILLINOIS, IN FORCE JANUARY 1, 1994.

*Now Therefore, I, Jesse White, Secretary of State of the State
of Illinois, by virtue of the powers vested in me by law, do
hereby issue this certificate of organization under the
Illinois Limited Liability Company Act.*

*In Testimony Whereof, I hereto set my hand and cause to
be affixed the Great Seal of the State of Illinois, at
the City of Springfield, this _____15TH_____
day of _____SEPTEMBER_____ A.D. __2000__ and
of the Independence of the United States
the two hundred and _____25TH_____.*

*Jesse White*

SECRETARY OF STATE

LLC-19.2

17

| Form **LLC-5.5**<br>January 1999 | **Illinois**<br>**Limited Liability Company Act**<br>Articles of Organization | **FILED**<br><br>SEPTEMBER 15, 2000 |
|---|---|---|
| Jesse White<br>Secretary of State<br>Department of Business Services<br>Limited Liability Company Division<br>Room 359, Howlett Building<br>Springfield, IL 62756<br>http://www.sos.state.il.us | *SUBMIT IN DUPLICATE*<br>Must be typewritten<br>This space for use by Secretary of State | LIMITED LIABILITY CO. DIV.<br>JESSE WHITE<br>SECRETARY OF STATE |
| Payment must be made by certified check, cashier's check, Illinois attorney's check, Illinois C.P.A.'s check or money order, payable to Secretary of State | Date<br>Assigned File #<br>Filing Fee<br>Approved: | 09 15 2000<br>0046 600 1<br>$400.00<br>LB. | **PAID**<br><br>SEPTEMBER 15, 2000 |

1.  Limited Liability Company Name:  Tuscola Furniture Group, LLC

    (The LLC name must contain the words limited liability company, L.L.C. or LLC and cannot contain the terms corporation, corp., incorporated, inc., ltd, co., limited partnership, or LP)

2.  Transacting business under an assumed name:  ☐ Yes    ☒ No

    (If YES, a Form LLC-1.20 is required to be completed and attached to these Articles)

3.  The address, including county, of its principal place of business:  (Post office box alone and c/o are unacceptable:  2220 Marquette Road, Peru, IL  61354; LaSalle County      .

4.  Federal Employer Identification Number (F.E.I.N.):    Applied for    .

5.  The Articles of Organization are effective on:  (Check One)

    a) ☒ the filing date, or    b) ☐ another date later than but not more than 60 days
    subsequent to the filing date: _____
    (month, day, year)

6.  The registered agent's name and registered office address is:

    | Registered Agent: | Michael | M. | Janko |
    |---|---|---|---|
    | | *First Name* | *Middle Initial* | *Last Name* |
    | Registered Office: | 2220 Marquette Road | | |
    | (P.O. Box alone and | *Number* | *Street* | *Suite #* |
    | c/o are unacceptable) | Peru, IL | 61354; | LaSalle |
    | | *City, State* | *Zip Code* | *County* |

7.  Purpose or purposes for which the LLC is organized.  Include the business code # (from IRS Form 1065) *(If not sufficient space to cover this point, add one or more sheets of this size.)*

    To engage in any lawful act or activity for which limited liability companies may be organized under the Illinois Limited Liability Company Act. 561430

8.  The latest date, if any, upon which the company is to dissolve:  Perpetual
    (month, day, year)

    Any other events of dissolution enumerated on an attachment.  (Optional)

Doc. No.: 526017

9.  Other provisions for the regulation of the internal affairs of the LLC per Section 5-5(a)(8) included as attachment:

☐ Yes    ☒ No
*If yes, state the provision(s) and the statutory cite(s) from the ILLCA.*

10. a) Management is vested, in whole or in part, in the manager(s): ☒ Yes    ☐ No
*If yes, list names and business addresses.*

Janko Financial Group, L.L.C.
2220 Marquette Road
Peru, IL  61354    0006 756 3

b) Management is vested, in whole or in part, by the member(s): ☐ Yes    ☒ No
*If yes, list names and addresses.*

11. The undersigned affirms, under penalties of perjury, having authority to sign hereto, that these articles of organization are to the best of my knowledge and belief, true, correct and complete.

Dated:  September 5, 2000

| Signature(s) and Name(s) of Organizer(s) | Business Address(es) |
|---|---|
| 1. *Signature* | 1.  2300 Cabot Drive |
| Dean J. Leffelman, Organizer and Attorney | *Number    Street* |
| *(Type or print name and title)* | Lisle |
| | *City/Town* |
| *(Name if a corporation or other entity)* | IL 60532 |
| 2. | *State  Zip Code* |
| *Signature* | 2. |
| | *Number    Street* |
| *(Type or print name and title)* | |
| | *City/Town* |
| *(Name if a corporation or other entity)* | *State  Zip Code* |
| 3. | 3. |
| *Signature* | *Number    Street* |
| *(Type or print name and title)* | *City/Town* |
| *(Name if a corporation or other entity)* | *State  Zip Code* |

Doc. No.: 526017

| | | |
|---|---|---|
| TUSCOLA FURNITURE GROUP, LLC<br>2220 MARQUETTE ROAD<br>PERU, IL 61354 | FIRST MIL. ..LINOIS BANK & TRUST,<br>N.A.<br>410 S MAIN, P.O. BOX 18<br>TUSCOLA, IL 61953 | Loan Number 2150095387<br>Date NOVEMBER 17, 2000<br>Maturity Date APRIL 16, 2002<br>Loan Amount $ 1,000,000.00<br>Renewal Of |
| BORROWER'S NAME AND ADDRESS<br>"I" includes each borrower above, joint and severally. | LENDER'S NAME AND ADDRESS<br>"You" means the lender, its successors and assigns. | : ID#: 36-4391423 |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of ONE MILLION AND NO/100*
* * * * * * * * * * * * * * * * * * * * * * * Dollars $ 1,000,000.00

☐ **Single Advance:** I will receive all of this principal sum on _____. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On NOV. 17, 2000
_____ I will receive the amount of $ _____ and future principal advances are contemplated.

Conditions: The conditions for future advances are UPON REQUEST OF TUSCOLA FURNITURE GROUP, LLC, MANAGER
JANKO FINANCIAL GROUP, LLC, AUTHORIZED MEMBERS RICHARD JANKO OR MICHAEL JANKO, BASED ON
INVOICES, NOT TO EXCEED 80% OF ACTUAL COST OF INVENTORY

☒ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
all other conditions and expires on APRIL 16, 2002

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from NOVEMBER 17, 2000 at the rate of 9.500 %
per year until JANUARY 16, 2001

☒ **Variable Rate:** This rate may then change as stated below.

☒ **Index Rate:** The future rate will be EQUAL TO the following index rate: HIGHEST PRIME RATE AS LISTED
IN THE MONEY RATE SECTION OF THE WALL STREET JOURNAL

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ **Frequency and Timing:** The rate on this note may change as often as QUARTERLY
A change in the interest rate will take effect THE 16TH DAY OF EACH JANUARY, APRIL, JULY & OCTOBER

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
_____ %. The rate may not change more than _____ % each _____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☒ The amount of each scheduled payment will change.    ☒ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/365 basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☐ at a rate equal to _____

☒ ~~CHARGE:~~ If a payment is made more than 10 days after it is due, I agree to pay a late charge of 5.000% OF THE
LATE PAYMENT WITH A MAXIMUM OF $25.00

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount
above: _____

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest ON DEMAND, BUT IF NO DEMAND IS MADE THEN ON THE 16TH DAY OF EACH
MONTH BEGINNING DECEMBER 16, 2000
☒ **Principal:** I agree to pay the principal ON DEMAND, BUT IF NO DEMAND IS MADE THEN ON APRIL 16, 2002

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____
and will be due _____ . A payment of $ _____ will be due _____
_____ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due _____

**ADDITIONAL TERMS:**
INVENTORY CHECKS WILL BE CONDUCTED MONTHLY BY A REPRESENTATIVE OF THE BORROWER AND/OR A BANK
OFFICER AT THE BANK'S SOLE DISCRETION. A REPORT DETAILING THE FINDINGS OF THE INVENTORY
CHECK WILL BE FORWARDED TO THE BANK FOR REVIEW WITHIN THREE BUSINESS DAYS.
LINE OF CREDIT AGREEMENT OF EVEN DATE WITH THIS NOTE. IT IS EXPRESSLY UNDERSTOOD THAT FIRST
MID-ILLINOIS BANK & TRUST WILL ADVANCE UP TO AN AMOUNT NOT TO EXCEED 80% OF THE ACTUAL COST
OF INVENTORY.
ASSIGNMENT OF UCC-1 AND SECURITY AGREEMENT ORIGINALLY EXECUTED BY AMISHLAND'S COUNTRY
VILLAGE, INC., DEBTOR AND GRANTED TO TUSCOLA FURNITURE GROUP.
$300,000 PERSONAL GUARANTY FROM RICHARD F JANKO.

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate<br>document by type and date): SECURITY AGREEMENT & UCC-1<br>AGREEMENT SIGNED EVEN DATE TO THIS NOTE;<br>ASSIGNMENT OF SECURITY AGREEMENT & UCC-1 FROM<br>CONSIGNOR; PERSONAL GUARANTY<br>(This section is for your internal use. Failure to list a separate security document does not mean the<br>agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is BUSINESS: FLOOR PLAN<br>FURNITURE INVENTORY<br>☒ **CONFESSION OF JUDGMENT:** I agree to the terms of the<br>"Confession of Judgment" paragraph on page 2.<br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING**<br>**THOSE ON PAGE 2).** I have received a copy on today's date. |

Signature for Lender

X _Thomas J Chamberlain_ (signature)
THOMAS J CHAMBERLAIN

TUSCOLA FURNITURE GROUP, LLC BY ITS MANAGER:
JANKO FINANCIAL GROUP, LLC

BY: _Richard F Janko_ (signature)
RICHARD F JANKO, AUTHORIZED MEMBER

0712

18

this ☐ 05 ☐ C ☐ 02 ☐ 00 ☐ notice. Borrower which signs this note and each other person or legal entity (including guarantors, sureties, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Illinois will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your written consent. Time is of the essence in this agreement.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate instrument, by the "Default" and "Remedies" paragraphs herein.

**REMEDIES:** Upon payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceeding...; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**CONFESSION OF JUDGMENT:** In addition to your remedies listed herein, I authorize any attorney to appear in any court of record having jurisdiction over this matter and to confess judgment, without process, against me, in favor of you, for any unpaid principal, accrued interest and accrued charges due on this agreement, together with collection costs including reasonable attorney's fees.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION:** I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |

© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-IL 4/2/96

0713

| | | |
|---|---|---|
| TUSCOLA FURNITURE GROUP, LLC<br>2220 MARQUETTE ROAD<br>PERU, IL 61354<br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" in ~~~ each borrower above, jointly and severally. | FIRST N    ILLINOIS BANK & TRUST,<br>N.A.<br>410 S MAIN, P.O. BOX 18<br>TUSCOLA, IL 61953<br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Line of Credit No. 2150095387<br>Date NOVEMBER 17, 2000<br>Max. Credit Amt. $1,000,000.00<br>Loan Ref. No. 2150095387 |

ou h... .xtended to me a line of credit in the

AMOUNT of ONE MILLION AND NO/100 _____ $ ____1,000,000.00____ .

ou will make loans to me from time to time until __3:00__ P.m. on APRIL 15, 2002 . Although the line of credit xpires on that date, I will remain obligated to perform all my duties under this agreement so long as I owe you any money advanced according to the rms of this agreement, as evidenced by any note or notes I have signed promising to repay these amounts.

This line of credit is an agreement between you and me. It is not intended that any third party receive any benefit from this agreement, whether by irect payment, reliance for future payment or in any other manner. This agreement is not a letter of credit.

. **AMOUNT:** This line of credit is:

XX OBLIGATORY: You may not refuse to make a loan to me under this line of credit unless one of the following occurs:
   a. I have borrowed the maximum amount available to me;
   b. This line of credit has expired;
   c. I have defaulted on the note (or notes) which show my indebtedness under this line of credit;
   d. I have violated any term of this line of credit or any note or other agreement entered into in connection with this line of credit;

   e. _____
   _____
   _____

☐ DISCRETIONARY: You may refuse to make a loan to me under this line of credit once the aggregate outstanding advances equal or exceed
_____ $ _____ .

ubject to the obligatory or discretionary limitations above, this line of credit is:

XX OPEN-END (Business or Agricultural only): I may borrow up to the maximum amount of principal more than one time.
☐ CLOSED-END: I may borrow up to the maximum only one time.

. **PROMISSORY NOTE:** I will repay any advances made according to this line of credit agreement as set out in the promissory note, I signed on __NOVEMBER 17, 2000__ , or any note(s) I sign at a later time which represent advances under this agreement. The note(s) set(s) out the terms relating to maturity, interest rate, repayment and advances. If indicated on the promissory note, the advances will be made as follows: UPON REQUEST OF TUSCOLA FURNITURE GROUP, LLC, MANAGER JANKO FINANCIAL GROUP, LLC, AUTHORIZED MEMBERS RICHARD JANKO OR MICHAEL JANKO, BASED ON INVOICES OR RECEIPTS, NOT TO EXCEED 80% OF THE ACTUAL COST OF INVENTORY _____

. **RELATED DOCUMENTS:** I have signed the following documents in connection with this line of credit and note(s) entered into in accordance with this line of credit:

XX security agreement dated _NOVEMBER 17, 2000_____    ☐ _____
☐ mortgage dated _____    ☐ _____
XX guaranty dated _NOVEMBER 17, 2000_____    ☐ _____

. **REMEDIES:** If I am in default on the note(s) you may:
   ( )  ~~ke any action as provided in the related documents;
        ~~thout notice to me, terminate this line of credit.
        ~~y selecting any of these remedies you do not give up your right to later use any other remedy. By deciding not to use any remedy should I default, you do not waive your right to later consider the event a default, if it happens again.

. **COSTS AND FEES:** If you hire an attorney to enforce this agreement I will pay your reasonable attorney's fees, where permitted by law. I will also pay your court costs and costs of collection, where permitted by law.

. **COVENANTS:** For as long as this line of credit is in effect or I owe you money for advances made in accordance with the line of credit, I will do the following:
   a. maintain books and records of my operations relating to the need for this line of credit;
   b. permit you or any of your representatives to inspect and/or copy these records;
   c. provide to you any documentation requested by you which support the reason for making any advance under this line of credit;
   d. permit you to make any advance payable to the seller (or seller and me) of any items being purchased with that advance;

   e. _____
   _____
   _____

. **NOTICES:** All notices or other correspondence with me should be sent to my address stated above. The notice or correspondence shall be effective when deposited in the mail, first class, or delivered to me in person.

. **MISCELLANEOUS:** This line of credit may not be changed except by a written agreement signed by you and me. The law of the state in which you are located will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation.

OR THE LENDER

THOMAS J CHAMBERLAIN _____

tle VICE PRESIDENT _____

**SIGNATURES: I AGREE TO THE TERMS OF THIS LINE OF CREDIT. I HAVE RECEIVED A COPY ON TODAY'S DATE.**

TUSCOLA FURNITURE GROUP, LLC BY ITS MANAGER: JANKO FINANCIAL GROUP, LLC

BY: _____
RICHARD F JANKO, AUTHORIZED MEMBER

0714
19

ARANTY

TUSCOLA , IL
(City)        (State)

NOVEMBER 17, 2000

Jr good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce FIRST MID-ILLINOIS BANK & TRUST, N.A., 410 S MAIN, P.O. BOX 18, TUSCOLA, IL 61953 (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of TUSCOLA FURNITURE GROUP, LLC

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

    A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: TUSCOLA FURNITURE GROUP, LLC, LINE OF CREDIT IN THE AMOUNT OF $1,000,000 and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

    B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the joint Undersigned to guaranty the obligation.

The Undersigned further acknowledges and agrees with Lender that:

    **1.** No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

    **2.** This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this ₍nty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as ₍Jebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

    **3.** If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

    **4.** The liability of the Undersigned hereunder shall be limited to a principal amount of $ 300,000.00 (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

    **5.** The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ; ☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above ₍on.

        X _____
        RICHARD F JANKO

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-397-2341) FORM M-240 5/20/91 (For Corporate Guarantor use M-250)          (page 1 of 2)

0715

20

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from ( to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue ( Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. The Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this ( guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-397-2341) FORM M-240  5/20/91 (For Corporate Guarantor use M-250)

0716

| | |
|---|---|
| TUSCOLA FURNITURE GROUP, LLC<br>2220 MARQUETTE ROAD<br>PERU, IL 61354<br><br>TAX___ER I.D. NUMBER : 36-4391423<br>DEBTOR'S NAME, ADDRESS AND SSN OR TIN<br>("I" means each Debtor who signs.) | FIRST MID-ILLINOIS BANK & TRUST, N.A<br>410 S MAIN, P.O. BOX 18<br>TUSCOLA, IL 61953<br><br>SECURED PARTY'S NAME AND ADDRESS<br>("You" means the Secured Party, its successors and assigns.) |

I am entering into this security agreement with you on ___NOVEMBER 17, 2000_____ (date).

SECURED DEBTS. I agree that this security agreement will secure the payment and performance of the debts, liabilities or obligations described below that (Check one) ☐ I ☒ (name) TUSCOLA FURNITURE GROUP, LLC

_____ owe(s) to you now or in the future:

(Check one below):

☐ Specific Debt(s). The debt(s), liability or obligations evidenced by (describe): _____ and all extensions, renewals, refinancings, modifications and replacements of the debt, liability or obligation.

☒ All Debt(s). Except in those cases listed in the "LIMITATIONS" paragraph on page 2, each and every debt, liability and obligation of every type and description (whether such debt, liability or obligation now exists or is incurred or created in the future and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several or joint and several).

Security Interest. To secure the payment and performance of the above described Secured Debts, liabilities and obligations, I give you a security interest in all of the property described below that I now own and that I may own in the future (including, but not limited to, all parts, accessories, repairs, improvements, and accessions to the property), wherever the property is or may be located, and all proceeds and products from the property.

☒ Inventory: All inventory which I hold for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

☐ Equipment: All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will also be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.

☐ Farm Products: All farm products including, but not limited to:
(a) all poultry and livestock and their young, along with their products, produce and replacements;
(b) all crops, annual or perennial, and all products of the crops; and
(c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

☒ Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment: All rights I have now and that I may have in the future to the payment of money including, but not limited to:
(a) payment for goods and other property sold or leased or for services rendered, whether or not I have earned such payment by performance; and
(b) rights to payment arising out of all present and future debt instruments, chattel paper and loans and obligations receivable.
The above include any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.

☒ General Intangibles: All general intangibles including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.

☐ Government Payments and Programs: All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of any preexisting, current or future Federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and the ASCS).

☒ The secured property includes, but is not limited by, the following: ALL ORIGINALLY MADE AND CRAFTED AMISH FURNITURE, FULLY FINISHED, AND AMISH STYLE FURNITURE MADE BY OTHERS, PLUS OTHER FURNITURE COMPLIMENTARY TO, BUT NOT CURRENTLY PRODUCED BY AMISH MANUFACTURES, BUT DOES NOT INCLUDE CRAFTS, LAMPS, PICTURES AND ACCESSORIES OTHER THAN WOOD PRODUCTS WHETHER AMISH MADE OR NOT

If this agreement covers timber to be cut, minerals (including oil and gas), fixtures or crops growing or to be grown, the legal description is:

FURNITURE COVERED BY THIS SECURITY AGREEMENT IS TO BE KEPT, PRESERVED, REPAIRED AND MAINTAINED AT THE FOLLOWING LOCATIONS:

1.  1304 TUSCOLA BLVD., TUSCOLA, ILLINOIS 61953
2.  EAST ROUTE 36, ATWOOD, ILLINOIS 61913
3.  123 N. MAIN ST., ATWOOD, ILLINOIS 61913
4.  601 & 603 S. MAIN ST., TUSCOLA, ILLINOIS 61953
       (1 BUILDING OCCUPYING 2 LOTS)

---

| | |
|---|---|
| I am a(n) ☐ individual ☐ partnership ☐ corporation<br>☒ LIMITED LIABILITY COMPANY<br>☐ If checked, file this agreement in the real estate records.<br>Record Owner (if not me): _____ | I AGREE TO THE TERMS SET OUT ON BOTH PAGE 1 AND PAGE 2 OF THIS AGREEMENT. I have received a copy of this document on today's date. |

TUSCOLA FURNITURE GROUP, LLC BY ITS MANAGER:
(Debtor's Name)
JANKO FINANCIAL GROUP, LLC

The property will be used for ☐ personal ☒ business
☐ agricultural ☐ _____ reasons.

By: ___Richard F. Janko_____
RICHARD F. JANKO

FIRST MID-ILLINOIS BANK & TRUST, N.A.
(Secured Party's Name)

Title: AUTHORIZED MEMBER

By: ___Thomas J. Chamberlain____

By: _____

Title: VICE PRESIDENT

Title: _____

©1986, 1990 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341) SECURITY AGREEMENT FORM SA 8/5/91                (page 1 of 2)

this agreement. "I," "me" and "my" means each person who signs this security agreement as Debtor and agrees to give to ... .operty described in this agreement as security for the Secured Debts. All terms and duties under this agreement are joint and individual. No modification of this security agreement is effective unless made in writing and signed by you and me. This security agreement remains in effect, even if the note is paid and I owe no other debt to you, until charged in writing. Time is of the essence in this agreement.

**APPLICABLE LAW** - I agree that this security agreement will be governed by the law of the state in which you are located. If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the property is located.

To the extent permitted by law, the terms of this agreement may vary applicable law. If any provision of applicable law may not be varied by agreement, any provision of this agreement that does not comply with that law will not be effective. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - I represent that I own all of the property, or to the extent this is a purchase money security interest I will acquire ownership of the property with the proceeds of the loan. I will defend it against any other claim. Your claim to the property is ahead of the claims of any other creditor. I agree to do whatever you require to protect your security interest and to keep your claim in the property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the property.

I will keep the property in my possession and will keep it in good repair and use it only for the purpose(s) described on page 1 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the property and, if I am not, that I have provided you with a list of prior owners of the property.

I will keep the property at my address listed on page 1 of this agreement, unless we agree I may keep it at another location. If the property is to be used in another state, I will give you a list of those states. I will not try to sell the property unless it is inventory or I receive your written permission to do so. If I sell the property I will have the payment made payable to the order of you and me.

You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent (1) a beneficial interest in the debtor is sold or transferred or (2) there is a change in either the identity or number of members of a partnership or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

I will pay all taxes and charges on the property as they become due. You have the right of reasonable access in order to inspect the property. I will immediately inform you of any loss or damage to the property.

**LIMITATIONS** - This agreement will not secure a debt described in ... ion entitled "Secured Debts" on page 1:
1) if you fail to make any disclosure of the existence of this security interest required by law for such other debt;
2) if this security interest is in my principal dwelling and you fail to provide (to all persons entitled) any notice of right of rescission required by law for such other debt;
3) to the extent that this security interest is in "household goods" and the other debt to be secured is a "consumer" loan (as these terms are defined in applicable federal regulations governing unfair and deceptive credit practices);
4) if this security interest is in margin stock subject to the requirements of 12 C.F.R. Section 207 or 221 and you do not obtain a statement of purpose if required under these regulations with respect to that debt; or
5) if this security interest is unenforceable by law with respect to that debt.

**PURCHASE MONEY SECURITY INTEREST** - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any non-purchase money loan also secured by this agreement will not be deemed to apply to the purchase money loan, and (b) payments on the purchase money loan will be deemed to apply first to the non-purchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items of collateral were acquired or if acquired at the same time, in the order selected by you. No security interest will be terminated by application of this formula. "Purchase money loan" means any loan the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**AUTHORITY OF SECURED PARTY TO MAKE ADVANCES AND PERFORM FOR DEBTOR** - I agree to pay you on demand any sums you advanced on my behalf including, but not limited to, expenses incurred in collecting, insuring, conserving, or protecting the property or in any inventories, audits, inspections or other examinations by you in respect to the property. If I fail to pay such sums, you may do so for me, adding the amount paid to the other amounts secured by this agreement. All such sums will be due on demand and will bear interest at the highest rate provided in any agreement, note or other instrument evidencing the Secured Debt(s) and permitted by law at the time of the advance.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. I understand that this authorization includes, but is not limited to, permission to: (1) prepare, file, and sign my name to any necessary reports or accountings; (2) notify any account debtor of your interest in this property and tell the account debtor to make the ... ents to you or someone else you name, rather than me; (3) place ... y chattel paper in note indicating your interest in the property; (4) ... y name, demand, collect, receive and give a receipt for, compromise, settle, and handle any suits or other proceedings involving the collateral; (5) take any action you feel is necessary in order to realize on the collateral, including performing any part of a contract or endorsing it in my name; and (6) make an entry on my books and records showing the existence of the security agreement. Your right to perform for me shall not create an obligation to perform and your failure to perform will not preclude you from exercising any of your other rights under the law or this security agreement.

... to buy insurance on the property against the risks and for the amounts you require and for ... you continuing proof of coverage. I will have the insurance con ... name you as loss payee on any such policy. You may require a ... ed security if you agree that insurance proceeds may be used to repair or replace the property. I will buy insurance from a firm licensed to do business in the state where you are located. The firm will be reasonably acceptable to you. The insurance will last until the property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

**WARRANTIES AND REPRESENTATIONS** - If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to me or which I take back in trust for you. I will not mix them with any other property of mine. I will deliver them to you at your request. If you ask me to pay you the full price on any returned items or items retaken by myself, I will do so.

If this agreement covers inventory, I will not dispose of it except in my ordinary course of business at the fair market value for the property, or at a minimum price established between you and me.

If this agreement covers farm products I will provide you, at your request, a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products. In addition to those parties named on this written list, I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of my agreement with you and the Food Security Act. In this paragraph the terms farm products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

**DEFAULT** - I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) I change my name or assume an additional name without first notifying you before making such a change; (9) failure to plant, cultivate and harvest crops in due season; (10) if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES** - If I am in default on this agreement, you have the following remedies:
1) You may demand immediate payment of all I owe you under any obligation secured by this agreement.
2) You may set off any obligation I have to you against any right I have to the payment of money from you.
3) You may demand more security or new parties obligated to pay any debt I owe you as a condition of giving up any other remedy.
4) You may make use of any remedy you have under state or federal law.
5) If I default by failing to pay taxes or other charges, you may pay them (but you are not required to do so). If you do, I will repay to you the amount you paid plus interest at the highest contract rate.
6) You may require me to gather the property and make it available to you in a reasonable fashion.
7) You may repossess the property and sell it as provided by law. You may repossess the property so long as the repossession does not involve a breach of the peace or an illegal entry onto my property. You may sell the property as provided by law. You may apply what you receive from the sale of the property to: your expenses; your reasonable attorneys' fees and legal expenses (where not prohibited by law); any debt I owe you. If what you receive from the sale of the property does not satisfy the debts, you may take me to court to recover the difference (where permitted by law).
I agree that 10 days written notice sent to my address listed on page 1 by first class mail will be reasonable notice to me under the Uniform Commercial Code.
If any items not otherwise subject to this agreement are contained in the property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.
8) In some cases, you may keep the property to satisfy the debt. You may enter upon and take possession of all or any part of my property, so long as you do not breach the peace or illegally enter onto the property, including lands, plants, buildings, machinery, and equipment as may be necessary to permit you to manufacture, produce, process, store or sell or complete the manufacture, production, processing, storing or sale of any of the property and to use and operate the property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

By choosing any one or more of these remedies, you do not waive your right to later use any other remedy. You do not waive a default if you choose not to use any remedy, and, by electing not to use any remedy, you do not waive your right to later consider the event a default and to immediately use any remedies if it continues or occurs again.

**FILING** - A carbon, photographic or other reproduction of this security agreement or the financing statement covering the property described in this agreement may be used as a financing statement where allowed by law. Where permitted by law, you may file a financing statement which does not contain my signature, covering the property secured by this agreement.

**CO-MAKERS** - If more than one of us has signed this agreement, we are all obligated equally under the agreement. You may sue any one of us or any of us together if this agreement is violated. You do not have to tell me if any term of the agreement has not been carried out. You may release any co-signer and I will still be obligated under this agreement. You may release any of the security and I will still be obligated under this agreement. Waiver by you of any of your rights will not affect my duties under this agreement. Extending this agreement or new obligations under this agreement, will not affect my duty under this agreement.

This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

For Filing Officer
(Date, Time, Number, and Filing Office)

| Debtor(s) (Last Name First) and address(es) | Secured Party(ies) and address(es) |
|---|---|
| TUSCOLA FURNITURE GROUP, LLC<br>2220 MARQUETTE ROAD<br>PERU, ILLINOIS 61354 | FIRST MID-ILLINOIS BANK & TRUST<br>P O BOX 18, 410 S MAIN ST<br>TUSCOLA, ILLINOIS 61953 |

1. This financing statement covers the following types (or items) of property:

ALL FURNITURE INVENTORY, WHETHER NOW OWNED OR HEREAFTER
AQUIRED, INCLUDING ALL ORIGINALLY MADE AND CRAFTED
AMISH FURNITURE, FULLY FENISHED, AND AMISH STYLE FURNITURE
MADE BY OTHERS, PLUS OTHER FURNITURE INVENTORY
COMPLIMENTARY TO, BUT NOT CURRENTLY PRODUCED BY AMISH
MANUFACTURES, BUT DOES NOT INCLUDE CRAFTS, LAMPS, PICTURES
AND ACCESSORIES OTHER THAN WOOD PRODUCTS, WHETHER AMISH MADE OR NOT.  ALL ACCOUNTS,
INSTRUMENTS, DOCUMENTS, CHATEL PAPER AND OTHER RIGHTS TO PAYMENT, AND GENERAL INTANGIBLES,
RELATING TO FURNITURE INVENTORY.  FURNITURE COVERED BY THIS FINANCING STATEMENT
IS TO BE KEPT, PRESERVED, REPAIRED AND MAINTAINED AT THE FOLLOWING LOCATIONS:

1. 1304 TUSCOLA BLVD, TUSCOLA, IL 61953     3. 123 N MAIN ST, ATWOOD, IL 61913
2. EAST ROUTE 36, ATWOOD, IL 61913          4. 601 & 603 S MAIN ST, TUSCOLA, IL 61953
                                              (1 BUILDING OCCUPYING 2 LOTS)

ASSIGNEE OF SECURED PARTY

2. ☐ Products of Collateral are also covered.

_____ Additional sheets presented.
_____ Filed with Office of Secretary of State of Illinois.
_____ Debtor is a transmitting utility as defined in UCC §9-105.

TUSCOLA FURNITURE GROUP, LLC BY ITS MANAG
JANKO FINANCIAL GROUP, LLC
By:
RICHARD JANKO, AUTHORIZED MEMBER
(Secured Party)

*Signature of Debtor Required in Most Cases:
Signature of Secured Party in Cases Covered By UCC §9-402 (2)

FILE COPY-DEBTOR(S)

This form of financing statement is approved by the Secretary of State.

STANDARD FORM –UNIFORM COMMERCIAL CODE – FORM UCC-1 – REV. 1 - 75

0719
22

## ASSIGNMENT

For value received, the undersigned, secured party under a security agreement dated November  17 , 2000, between the undersigned and Amishland's Country Village, Inc., a corporation referred to as debtor, hereby sells, assigns, and transfers to First Mid-Illinois Bank & Trust, N.A. of 410 S. Main, P.O. Box 18, City of Tuscola, County of Douglas, State of Illinois, its successors and assigns, the foregoing security agreement, hereafter referred to as agreement, and all right, title and interest of the undersigned in and to the collateral described therein, hereby granting full power to the assignee, either in its own name or in the name of the undersigned, to take all legal or other proceedings that the undersigned may have taken but for this agreement.

The undersigned represents and warrants that:

1.  The Agreement evidences a bona fide consignment of the collateral to debtor;
2.  The description of the collateral set forth in agreement is correct;
3.  All statements contained in agreement are in all respects true and correct;
4.  The consignment was made in accordance with all laws and regulations affecting such consignment;
5.  Agreement is valid and enforceable in accordance with its terms;
6.  The names and signatures on agreement are not forged, fictitious or assumed, and are genuine in all respects;
7.  At the time of the consignments, title to the collateral was in the undersigned and the collateral was, on delivery to the debtor and is now, free from all liens and encumbrances, except agreement;
8.  Agreement is subject to no defenses on the part of debtor;
9.  Duly completed copies of agreement were delivered to debtor prior to his execution thereof;
10. The collateral was delivered to debtor on consignment in good condition, without any misrepresentation by the undersigned and has been accepted by debtor; and
11. The undersigned is the owner of agreement free from all liens and encumbrances except agreement, and has full right and power to sell and assign the same.

This assignment is made subject to all the terms, conditions, promises, representations, and warranties contained in any agreement in effect between the undersigned and debtor on the date hereof.

Dated:  _____ _NOV. 17_ _____, 2000

TUSCOLA FURNITURE GROUP, L.L.C., an Illinois Limited Liability Company

By:  Its Manager:  JANKO FINANCIAL GROUP, L.L.C., a Limited Liability Company

By: _____
Richard Janko, Authorized Member
220 Marquette Road
Peru, Illinois 61354

This STATEMENT is presented to THE FILING OFFICER for filing pursuant to the Uniform Commercial Code:

| Debtor(s) (Last Name First) and address(es) | Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number, and Filing Office) |
|---|---|---|
| AMISHLAND'S COUNTRY VILLAGE, INC. 1304 TUSCOLA BLVD TUSCOLA, ILLINOIS 61953 | TUSCOLA FURNITURE GROUP, LLC 2220 MARQUETTE ROAD PERU, ILLINOIS 61354 | |

This Statement refers to original Financing Statement No._____

Date filed: _____, ☒ 2000 Filed with **Secretary of State, IL**

A. ☐ CONTINUATION..... The original financing statement between the foregoing Debtor and Secured Party, bearing the file number shown above, is still effective.

B. ☐ PARTIAL RELEASE.. From the collateral described in the financing statement bearing the file number shown above, the Secured Party releases the property indicated below.

C. ☒ ASSIGNMENT........... The Secured Party certifies that the Secured Party has assigned to the Assignee whose name and address is shown below, Secured Party's rights under the financing statement bearing the file number shown above in the property indicated below.

D. ☐ TERMINATION........ The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

E. ☐ AMENDMENT........... The financing statement bearing the above file number is amended.
     ☐ To show the Secured Party's new address as indicated below;
     ☐ To show the Debtor's new address as indicated below;
     ☐ As set forth below:

| ASSIGNEE: FIRST MID-ILLINOIS BANK & TRUST P O BOX 180 410 S MAIN ST TUSCOLA, ILLINOIS 61953 | FULL ASSIGNMENT OF ORIGINAL FINANCING STATEMENT |
|---|---|
| BY: _____ (Debtor) JAMES E. STIRRETT (Signature of Debtor, if required) Dated: _____, 19___ | TUSCOLA FURNITURE GROUP, LLC BY ITS MANAGER: JANKO FINANCIAL GROUP, L (Secured Party) By: _____ (Signature of Secured Party) RICHARD JANKO |

FILE COPY—SECURED PARTY(IES)

This form of Financing Statement is approved by the Secretary of State.

STANDARD FORM—UNIFORM COMMERCIAL CODE—FORM UCC-3 REV. 7-74

0721

24

# NOTICE

Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the premiums for that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The premiums may be added to your total outstanding balance or obligation. The premiums may be more than the premiums for insurance you may be able to obtain on your own.

You acknowledge receipt of a copy of this notice.

AMISHLAND'S COUNTRY VILLAGE, INC.

Signature BY: JAMES E STILWELL:

Date 11/17/00

TUSCOLA FURNITURE GROUP, LLC BY ITS
MANAGER: JANKO FINANCIAL GROUP, LLC

Signature BY: RICHARD JANKO:

Date 11/17/00

Bankers Systems, Inc., St. Cloud, MN  Form CPIN-IL 11/7/96

## NOTIFICATION OF SECURITY INTEREST IN CONSIGNED GOODS

TO:        Tuscola National Bank                    Community Bank of Shelby County
           P.O. Box 110                             P.O. Box 157
           900 South Progress Street                Cowden,   IL    62422
           Tuscola, IL 61953

   TUSCOLA FURNITURE GROUP LLC., an Illinois Limited Liability Company, hereafter "TFG", hereby gives notice that TFG expects to deliver "goods" on Consignment to Consignee AMISHLAND COUNTRY VILLAGE.  The goods are originally made and crafted Amish furniture, fully finished, AMISH style furniture made by others and any "other furniture" purchased and owned by TFG in an amount not to exceed 3% of the average wholesale replacement cost of the total inventory, but does not include crafts, lamps, pictures and accessories other than wood products, whether Amish made or not, and the "goods" will be at the following locations:

   1.    1304 Tuscola Blvd.  Tuscola, Illinois 61953
   2.    East Route 36, Atwood, Illinois 61913
   3.    123 N. Main Street, Atwood, Illinois 61913
   4.    601 & 603 South Main Street, Tuscola, Illinois 61953

   This Notification is pursuant to Article 9 of the Uniform Commercial Codes section 9-114, describing the goods being delivered from TFG as cosigner to AMISHLAND COUNTRY VILLAGE INC., as consignee pursuant to a Consignment Agreement.

                    Sincerely yours;

                    TUSCOLA  FURNITURE GROUP, LLC

                           by its Manager,

                    JANKO FINANCIAL GROUP, L.L.C.

           BY:_____    DATE 11/16/00
                    Richard F. Janko, Authorized Member

                    2220 Marquette Road
                    Peru,    IL    61354
                    815-223-3380

LWB/sma
JANKO\SecurityNofic.DOC

0723

2/

## PROOF OF MAILING

The undersigned certifies that a copy of the attached Notification of Security Interest in Consigned Goods mailed this _2/_ day of November, 2000 as follows:

Tuscola National Bank
P.O. Box 110
900 S Progress Street
Tuscola, IL 61953

Community Bank of Shelby County
P.O. Box 157
Cowden, IL 62422

by depositing same with the U.S. Mail deposited at Ottawa, IL postage prepaid.

Lawrence W. Baxter

LAWRENCE W. BAXTER
Attorney At Law
417 West Madison Street
Ottawa, IL 61350
Phone: 815-433-0363

JANKO\ProofMailing.DOC

0724

**BROCH & NOLAN**
107 W. South Central Avenue
Tuscola, IL  61953
Phone:  217/ 253-2366
Fax:  217/ 253-2296

## FAX TRANSMITTAL COVER SHEET

TO:  Tom Chamberlain : 217-253-4012
      Lawrence Baxter : 815-433-6899

FROM:  Rick Broch

DATE:  11/21/00

FAX RECEIVER NUMBER:
NUMBER OF PAGES SENT, INCLUDING COVER SHEET: 2
SPECIAL INSTRUCTIONS:  Re: ACV / TFG Closing -- Release From Shelby County Banks

Gentlemen:

    Please find attched hereto a copy of the following Partial Release of Lien from the Banks of Shelby County concerning Atwood Meat Services, Inc.. If you have any comment regarding its form, give me a call.

      Thank you.

                    Rick Broch.

********CONFIDENTIALITY NOTE ********

THE DOCUMENT ACCOMPANYING THIS TELECOPY TRANSMISSION CONTAINS INFORMATION FROM THE OFFICE OF BROCH & NOLAN, ATTORNEYS AT LAW, WHICH MAY BE CONFIDENTIAL AND/OR LEGALLY PRIVILEGED. THE INFORMATION IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ON THIS TRANSMISSION SHEET. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS TELECOPIED INFORMATION IS STRICTLY PROHIBITED, AND THAT THE DOCUMENTS SHOULD BE RETURNED TO THIS FIRM IMMEDIATELY. IN THIS REGARD, IF YOU HAVE RECEIVED THIS TELECOPY IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE RETURN OF THE ORIGINAL DOCUMENTS TO US AT NO COST TO YOU.

Nov 17 00 04:07p    BROWN & HOLMY    217- 13-2160

Bankers Systems, Inc., St. Cloud, MN Form UCC-3-IL 11/27/96

# STATE OF ILLINOIS
### UNIFORM COMMERCIAL CODE
### STATEMENTS OF CONTINUATION, PARTIAL RELEASE, ASSIGNMENT, ETC— FORM UCC-3

**INSTRUCTIONS:**
1. PLEASE TYPE this form. Fold only along perforation for mailing.
2. Remove Secured Party and Debtor copies and send other 3 copies with interleaved carbon paper to the filing officer.
3. Enclose filing fee.
4. If the space provided for any item(s) on the form is inadequate the item(s) should be continued on additional sheets, preferably 5" x 8" or 6" x 10". Only one copy of such additional sheets need be presented to the filing officer with a set of three copies of Form UCC-3. Long schedules of collateral, etc., may be on any size paper that is convenient for the Secured Party.
5. At the time of filing, filing officer will return third copy as an acknowledgement.

This STATEMENT is presented to THE FILING OFFICER for filing pursuant to the Uniform Commercial Code:

| Debtor(s) (Last Name First) and address(es) | Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number, and Filing Office) |
|---|---|---|
| Atwood Meat Service, Inc.<br>102 North Main Street<br>Atwood, IL  61913 | Community Banks of Shelby County<br>PO Box 157<br>Cowden, IL  62422 | |

This Statement refers to original Financing Statement No. _____

Date filed: _____ Filed with _____

A. ☐ CONTINUATION ..... The original financing statement between the foregoing Debtor and Secured Party, bearing the file number shown above, is still effective.

B. ☒ PARTIAL RELEASE ... From the collateral described in the financing statement bearing the file number shown above, the Secured Party releases the property indicated below.

C. ☐ ASSIGNMENT _____ The Secured Party certifies that the Secured Party has assigned to the Assignee whose name and address is shown below, Secured Party's rights under the financing statement bearing the file number shown above in the property indicated below.

D. ☐ TERMINATION _____ The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

E. ☐ AMENDMENT _____ The financing statement bearing the above file number is amended.
- ☐ To show the Secured Party's new address as indicated below:
- ☐ To show the Debtor's new address as indicated below:
- ☐ As set forth below

See Attachment "A"

| _____ (Debtor)<br>(Signature of Debtor, if required) | COMMUNITY BANKS OF SHELBY COUNTY (Secured Party) |
|---|---|
| Dated: _____<br>FILING OFFICER ALPHABETICAL | By: _____<br>(Signature of Secured Party) |

This form of Financing Statement is approved by the Secretary of State.

ORIGINAL FILING OFFICER COPY—UNIFORM COMMERCIAL CODE FORM UCC-3 REV 1/74

## Attachment "A"

"All furniture inventory, whether now owned or hereafter acquired, including all originally made and crafted Amish furniture, plus other furniture inventory complimentary to, but not currently produced by Amish manufacturers, plus all accounts, instruments, documents, chattel paper and other rights to payment, and general intangibles relating to furniture inventory"

This partial release does not pertain to any other equipment, inventory, accounts, instruments, documents, chattel paper and other rights to payment and general intangibles of Atwood Meat Service Inc., James Stilwell or Margaret Stilwell.

## FOX CAPITAL FUND, L.P.

May 14, 1998

Mr. Richard L. Broch
Broch & Nolan
107 West South Central Avenue
Tuscola, Illinois 61953

RE: Atwood Meat Service d/b/a Amishland Distributors

Dear Richard:

Enclosed please find the UCC-1 termination statements for Atwood Meat Service and the Releases of Mortgage for Jim and Margaret Stilwell.  They all need to be filed with the appropriate county or the State of Illinois.

If you need anything else, please let me know.

Sincerely,

Paul W. Shaffer
Vice President

2202 FOX DRIVE
CHAMPAIGN, ILLINOIS 61820
PHONE: 217.398.6080
FAX: 217.398.6149
EMAIL: FOXFUND@SIMPLINK.COM

| Debtor(s) (Last Name First) and address(es) | Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number, and Filing Office) |
|---|---|---|
| Atwood Meat Services, Inc.<br>P.O. Box 638<br>Atwood, IL 61913 | Fox Capital Fund, L.P.<br>2202 Fox Dr.<br>Champaign, IL 61820 | Filed 3755<br>February 9, 1998 at 8:30am<br>James A. Ingram<br>Douglas County Recorder |

1. This financing statement covers the following types (or items) of property:

All inventory, accounts, contract rights,
equipment and fixtures owned now or aacquired later;
all accessions, additions, XXXX replacements, and
substitutions; all records of any kind relating to
any of the foregoing; all proceeds (including
insurance, general intangibles and other accounts p...

ASSIGNEE OF SECURED PARTY

This Financing Statement is to be recorded in the real estate records. Some
or all of the collateral is located on the following described real estate:
Lot 15 and the South 21 1/2 feet of Lot 14 in Block 15 of the Original Town,
now Village, of Atwood, Douglas County, Illinois

2. ☐ Products of Collateral are also covered.

TERMINATION STATEMENT: This Statement of Termination of Financing is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code.
The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

Date 5/12 19 98            By: _Fox Capital Fund LP_
_(Signature of Secured Party or Assignee of Record. Not Valid Until Signed.)_

**FILING OFFICER-ACKNOWLEDGEMENT**    This form of financing statement is approved by the Secretary of State.

STANDARD FORM—UNIFORM COMMERCIAL CODE—FORM UCC-1—REV. 1-76

---

This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| Debtor(s) (Last Name First) and address(es) | Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number, and Filing Office) |
|---|---|---|
| Atwood Meat Service, Inc.<br>P.O. Box 638<br>Atwood, IL 61913 | Fox XXXX Capital Fund, L.P.<br>2202 Fox Dr.<br>Champaign, IL 61820 | 37/980JB |

1. This financing statement covers the following types (or items) of property:

All inventory whether owned now or acquired later;
all accessions, additions, replacements, and
substitutions.

ASSIGNEE OF SECURED PARTY

This Financing Statement is to be recorded in the
real estate records. Some or all of the collateral is located on the
following described real estate: Lot 15 and the South 21 1/2 feet of Lot
14 in Block 15 of the Original Town, now Village, of Atwood, Douglas County,
Illinois.

2. ☑ Products of Collateral are also covered.

TERMINATION STATEMENT: This Statement of Termination of Financing is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code.
The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

Date 5/12 19 98            By: _Fox Capital Fund LP_
_(Signature of Secured Party or Assignee of Record. Not Valid Until Signed.)_

**FILING OFFICER-ACKNOWLEDGEMENT**    This form of financing statement is approved by the Secretary of State.

STANDARD FORM—UNIFORM COMMERCIAL CODE—FORM UCC-1—REV. 1-76