E-FILED
Monday, 02 April, 2007 05:15 PM
Clerk, U.S. District Court, ILCD



IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
DOUGLAS COUNTY, ILLINOIS

AMISHLAND DEVELOPMENT, LLC,
an Illinois Limited Liability Company,

      Plaintiff,

v.

AMISHLAND COUNTRY VILLAGE,
INC.,
JAMES STILWELL, and
MARGARET STILWELL,

      Defendants.

**FILED**

JUN 3 0 2003

CLERK OF THE CIRCUIT CO
DOUGLAS COUN

Case No. 03 LM 10

## MOTION FOR VOLUNTARY DISMISSAL

Plaintiff, AMISHLAND DEVELOPMENT, LLC, by Howard & Howard Attorneys, P.C., moves to dismiss its Complaint.

Dated:  June 27, 2003.

              AMISHLAND DEVELOPMENT, LLC,

      By: _____
              Timothy J. Howard,
              One of its Attorneys

Timothy J. Howard
Michael S. Seneca
Howard & Howard Attorneys, P.C.
One Technology Plaza
211 Fulton Street, Suite 600
Peoria, IL 61602
(309) 672-1483
(309) 672-1568 (fax)

**EXHIBIT**
**B8**

1

0032

**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT**
**Douglas County, Illinois**

17379.3

AMISHLAND DEVELOPMENT, LLC, )
)
Plaintiff, )
)
vs. )  No. 03-LM-10
)
AMISHLAND COUNTRY VILLAGE, INC. )
)
Defendant. )

**N O T I C E**

To:   Mr. Timothy J. Howard            Mr. Richard L. Broch
      HOWARD & HOWARD, P.C.       Attorney at Law
      One Technology Plaza          P.O. Box 253
      211 Fulton St., Ste. 600       Tuscola, IL  61953
      Peoria, IL  61602

PLEASE TAKE NOTICE that on the 27th day of June, 2003, the following Order was made and entered of record in the above-entitled cause by Judge Frank W. Lincoln, to wit:

> By agreement of counsel, cause called for status review by telephone conference call. Timothy Howard appears on behalf of Plaintiff. Richard L. Broch appears on behalf of Defendants. Representation by counsel of resolution of cause. Cause continued for receipt of settlement documents 9:00 a.m., July 16, 2003.

DATED this 27th day of June, 2003.

_____
Clerk of the Circuit Court
Of Douglas County, Illinois

**JULIE MILLS**
Circuit Clerk of Douglas County
Douglas County Courthouse
P.O. Box 50
Tuscola, Illinois  61953
Telephone: (217) 253-2352

0033



# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## DOUGLAS COUNTY, ILLINOIS

AMISHLAND DEVELOPMENT, LLC,    )
An Illinois Limited Liability Company    )
                                         )
                           Plaintiff,    )
                                         )    No. 03-LM-10
        vs.                              )
                                         )
AMISHLAND COUNTRY VILLAGE, INC.          )
JAMES STILWELL, and                      )
MARGARET STILWELL,    Defendants.        )

**FILED**

**MAR 19 2003**

*Julie Mills*
CLERK OF THE CIRCUIT COURT
DOUGLAS COUNTY, ILLINOIS

## ANSWER
## TO COMPLAINT-FORCIBLE ENTRY AND DETAINER

Now come the Defendants, AMISHLAND COUNTRY VILLAGE, INC., and JAMES STILWELL and MARGARET STILWELL, by their attorney, Richard L. Broch, and for their answer to the Complaint for Forcible Entry and Detainer filed in this cause state as follows:

   1. Defendants admit the allegations as contained in paragraph 1. of the Complaint.

   2. Defendants admit the allegations as contained in paragraph 2. of the Complaint.

   3. Defendants admit the allegations of paragraph 3. of the Complaint.

   4. Defendants admit the allegations of paragraph 4 of the Complaint.

   5. Defendants deny the allegations of paragraph 5. of the Complaint, and demand proof thereof.

   6. Defendants deny the allegations of paragraph 6. of the Complaint, and demand proof thereof.

   7. Defendants admit the allegations of paragraph 7. of the Complaint.

   8. Defendants deny the allegations of paragraph 8. of the Complaint, and demand proof thereof.

   9. Defendants deny the allegations of paragraph 9. of the Complaint, an

**RECE[**

**MAR 2 0**

0034

proof thereof.

10. Defendants deny the allegations of paragraph 10. of the Complaint, and demand proof thereof.

11. Defendants deny the allegations of paragraph 11. of the Complaint, and demand proof thereof.

WHEREFORE, the Defendants pray for Judgment in their favor and against the Plaintiff as follows :

A. Plaintiff not be allowed possession of the premises from the Defendants;

B. Defendants not be adjudged in default of the Lease as requested by Plaintiff, and no order of possession be issued to remove Defendants from the premises.

C. The Court not allow Plaintiff to recover from Defendants any amounts for alleged past due rent, attorney's fees and costs of suit.

D. The Court allow Defendants to recover their reasonable attorney's fees incurred in defense of this action.

E. For such further relief as the Court would deem equitable and proper.

AMISHLAND COUNTRY VILLAGE INC.,
JAMES STILWELL and MARGARET
STILWELL, Defendants

BY: _Richard L Broch_
Richard L. Broch, Their Attorney

Richard L. Broch
Attorney at Law
1304 S. Tuscola Blvd.
P.O. Box 253
Tuscola, IL 61953
(217) 253-2366

## VERIFICATIONS

STATE OF ILLINOIS     )
                           ) SS
COUNTY OF DOUGLAS   )

    James Stilwell, being first duly sworn, states that he is an authorized representative of Defendant, Amishland Country Village, Inc., that he has read the foregoing Answer to Complaint- Forcible Entry and Detainer, and that he knows that the anwers to the allegations of said Complaint are true in substance and in fact to the best of his knowledge, information and belief.

                                 _____
                                   James Stilwell,
                                   Authorized Representative

Subscribed and sworn to before me
this _19ᵀᴴ_ day of March, 2003.

_Richard L. Broch_
Notary Public

> "OFFICIAL SEAL"
> RICHARD L. BROCH
> Notary Public, State of Illinois
> My Commission Expires 05/29/06

STATE OF ILLINOIS     )
                           ) SS
COUNTY OF DOUGLAS )

    James Stilwell and Margaret Stilwell, first being duly sworn, state that they are named Defendants in this cause, that they have read the foregoing Answer to Complaint- Forcible Entry and Detainer, and that the answers to the allegations of sais Complaint therein contained are true in substance and in fact to the best of their knowledge, information and belief.

                                   _____
                                   James Stilwell

                                   _____
                                   Margaret Stilwell

Subscribed and sworn to before me
this _19ᵀᴴ_ day of March, 2003.

_Richard L. Broch_
Notary Public

> "OFFICIAL SEAL"
> RICHARD L. BROCH
> Notary Public, State of Illinois
> My Commission Expires 05/29/06

COPY

oward &Howard
law for business

One North Main
Suite 430
101 North Main Street
Ann Arbor, MI 48104.1475
734.222.1483

The Pinehurst Office Center
Suite 101
39400 Woodward Avenue
enfield Hills, MI 48304.5151
248.645.1483

The Michigan Building
Suite 200
100 Portage Street
alamazoo, MI 49007.4802
269.382.1483

The Phoenix Building
Suite 500
North Washington Square
Lansing, MI 48933.1817
517.485.1483

One Technology Plaza
Suite 600
211 Fulton Street
Peoria, IL 61602.1350
309.672.1483

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
DOUGLAS COUNTY, ILLINOIS

AMISHLAND DEVELOPMENT, LLC,
an Illinois Limited Liability Company,

      Plaintiff,

v.                        Case No. 03 LM-10

AMISHLAND COUNTRY VILLAGE,
INC.,
JAMES STILWELL, and
MARGARET STILWELL,

      Defendants.

**FILED**

FEB 1 3 2003

*Julie Mills*
CLERK OF THE CIRCUIT COURT
DOUGLAS COUNTY, ILLINOIS

## COMPLAINT – FORCIBLE ENTRY AND DETAINER

NOW COMES Plaintiff, AMISHLAND DEVELOPMENT, LLC, by Howard & Howard

Attorneys, P.C., and for its Complaint for Forcible Entry and Detainer, states as follows:

1.    Plaintiff, Amishland Development, LLC, is an Illinois limited liability company

and the Landlord of certain property occupied by the Defendants and commonly known as 1304

South Tuscola Boulevard, Tuscola, Illinois 61953 (the "Premises").

2.    Defendant, Amishland Country Village, Inc. is the tenant of the Premises pursuant

to a written Lease Agreement dated May 25, 2001 ("Lease"). A copy of the Lease is attached

hereto as Exhibit A.

3.    The Defendants, James Stilwell and Margaret Stilwell are the Guarantors of the

Lease and may be in possession of the Premises.

4.    The transaction complained of herein occurred in the County of Douglas, State of

Illinois.

5.    The Defendants have failed to comply with the terms of the Lease by failing to

pay in a timely manner, the rent and real estate taxes as required by the Lease.

1

0047

6.    Since January 1, 2002, the Defendants are in default of the payment of rent in the sum of $384,190.33.

7.    Pursuant to Section 24 of the Lease, the Plaintiff served the Defendants with a Landlord's Ten Day Notice on January 30, 2003. A copy of the Landlord's Ten Day Notice is attached hereto as Exhibit B.

8.    Unless the Defendants cured the payment defaults, the Notice also terminated the Lease and notified the Defendants to quit and deliver up possession of the Property pursuant to 735 ILCS 5/9-210 (West 2001).

9.    At the time of the hearing on this Complaint, more than ten days will have elapsed since the service of the Notice of Default upon the Defendants, and the Plaintiff is entitled to possession of the Premises by virtue of the Defendants' default and their refusal to quit and deliver up possession thereof.

10.   Defendants owe Plaintiff for rent, after allowing all just credits and set-offs, the sum of $384,190.33.

11.   Plaintiff is also entitled to recover its reasonable attorneys' fees and costs incurred in enforcing the terms of the Lease pursuant to Section 20.1 of the Lease.

WHEREFORE, Plaintiff prays for Judgment in its favor and against Defendants as follows:

A.    Plaintiff have and recover possession of the Premises from the Defendants;

B.    Defendants be ordered to immediately vacate the Premises and return all keys to the Premises to the Plaintiff, and in default thereof, an order of possession be issued to the Douglas County Sheriff to remove the Defendants from the Premises; and

C.    Plaintiff recover from the Defendants all amounts incurred and owing for past due rent, reasonable attorneys' fees and costs of suit.

Howard & Howard
law for business

One North Main
Suite 430
101 North Main Street
Ann Arbor, MI 48104.1475
734.222.1483

The Pinehurst Office Center
Suite 101
39400 Woodward Avenue
Bloomfield Hills, MI 48304.5151
248.645.1483

The Michigan Building
Suite 200
100 Portage Street
Kalamazoo, MI 49007.4802
269.382.1483

The Phoenix Building
Suite 500
222 North Washington Square
Lansing, MI 48933.1817
517.485.1483

One Technology Plaza
Suite 600
211 Fulton Street
Peoria, IL 61602.1350
309.672.1483

2

AMISHLAND DEVELOPMENT, LLC

By: _____
      Timothy J. Howard,
      One of its Attorneys

oward & Howard
*law for business*

One North Main
Suite 430
101 North Main Street
Ann Arbor, MI 48104.1475
734.222.1483

The Pinehurst Office Center
Suite 101
39400 Woodward Avenue
loomfield Hills, MI 48304.5151
248.645.1483

The Michigan Building
Suite 200
100 Portage Street
alamazoo, MI 49007.4802
269.382.1483

The Phoenix Building
Suite 500
2 North Washington Square
Lansing, MI 48933.1817
517.485.1483

One Technology Plaza
Suite 600
211 Fulton Street
Peoria, IL 61602.1350
309.672.1483

Timothy J. Howard
Jeffrey G. Sorenson
Howard & Howard Attorneys, P.C.
One Technology Plaza
211 Fulton Street, Suite 600
Peoria, IL 61602
(309) 672-1483
(309) 672-1568 (fax)

3

## VERIFICATION

STATE OF ILLINOIS        )
                         ) SS
COUNTY OF DOUGLAS        )

     Lawrence W. Bianchi, being first duly sworn, states that he is an authorized representative of Plaintiff, Amishland Development, LLC, that he has read the foregoing Complaint, and that the allegations therein contained are true in substance and in fact to the best of his knowledge, information and belief.

                                 _Lawrence W. Bianchi_

                                   Lawrence W. Bianchi
                                   *Authorized Representative*

Subscribed and sworn to before me
this __6__ day of February, 2003.

_Kari J Bouxsein_
Notary Public

> "OFFICIAL SEAL"
> KARI J BOUXSEIN
> Notary Public, State of Illinois
> My Commission Expires 12-07-04

4

# AFFIDAVIT REGARDING DAMAGES SOUGHT
## (Pursuant to Supreme Court Rule 222(b))

Lawrence W. Bianchi, being first duly sworn, upon his oath, deposes and says:

1.    That he is an authorized representative of Plaintiff, Amishland Development, LLC, and is duly authorized to make this Affidavit on its behalf and to proceed in this matter.

2.    That he has read the Complaint to be filed in this cause and knows its contents, and that all the matters and things stated in it are true and correct.

3.    That the total amount of money damages sought by Plaintiff, Amishland Development, LLC, against the Defendants, Amishland Country Village, Inc., James Stilwell and Margaret Stilwell, exceeds $50,000.00.

4.    That if sworn as a witness in the trial of this case, I can competently testify to the above.

_Lawrence W. Bianchi_
Lawrence W. Bianchi
_Authorized Representative_

Subscribed and sworn to before me
this __6__ day of February, 2003.

_Kari J Bouxsein_
Notary Public

> "OFFICIAL SEAL"
> KARI J BOUXSEIN
> Notary Public, State of Illinois
> My Commission Expires 12-07-04

betty\g:\j-l\janko financial\amishland dev\pldgs\cmplt forcible entry

5

0051

# LEASE AGREEMENT

## (AMISHLAND COUNTRY VILLAGE)

This Lease Agreement made and entered into as of the _25ᵗʰ_ day of _May_ , 2001 by and between AMISHLAND DEVELOPMENT, LLC., an Illinois Limited Liability Company hereinafter referred to as "Landlord", and AMISHLAND COUNTRY VILLAGE, Inc., an Illinois Corporation hereinafter referred to as "Tenant."

## WITNESSETH:

WHEREAS, Landlord is the owner of the real estate commonly known as 1304 South Tuscola Boulevard, Tuscola, IL. 61953 and legally described on Exhibit "A" attached hereto, (hereafter the "Leased Premises") to be Leased to the Tenant in accordance with the terms hereafter set forth and;

WHEREAS, the following definitions apply to this Lease:

"Additions" means signage, alterations, fixtures and attachments to the Leased Premises added by the Tenant.

"Improvements" means the existing building as depicted on ALTA survey dated _21 March ,2001_, and prepared by Illini Engineering Associates hereafter referred to as "Phase I (a) (i)" and additions to the Leased Premises added by the Landlord hereafter referred to as "Phase I (a) (ii) and Phase I (b)".

"Landlord" is defined above.

"Tenant" is defined above.

"Leased Premises" is defined above.

NOW THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties agree as follows:

**1.0    INCORPORATION OF PREAMBLES, EXHIBITS AND PRIOR LEASE:**

  1.1    The foregoing Preambles are made a part of this Lease.

  1.2    The following Exhibits are made a part of this Lease, whether attached hereto or not:

    Exhibit "A"    Legal Description of Leased Premises.

1



EXHIBIT

A

0052

# LEASE AGREEMENT
## (Amishland Country Village)

### Table of Contents

| ARTICLE | HEADING | PAGE |
|---|---|---|
| 1.0 | Preambles, Exhibits & Prior Lease | 1 |
| 2.1 | Phase I (a)(ii) Improvements | 2 |
| 2.5 | Phase I (b) Improvements | 3 |
| 3.0 | Purpose | 3 |
| 4.1 | Term | 4 |
| 4.2 | Option to Renew | 4 |
| 5.1 | Initial Monthly Rent | 4 |
| 5.2 | Monthly Rent CPI Adjustment | 4 |
| 5.3 | Monthly Rent Adjustment for Improvements | 5 |
| 5.4 | Actual Project Costs | 5 |
| 5.5 | Payments | 5 |
| 5.6.1 | Taxes | 6 |
| 5.8 | Option to Purchase | 6 |
| 5.8.1 | Option price in year 3 | 6 |
| 5.8.2 | Option price after 3rd year | 6 |
| 6.0 | Relationship | 7 |
| 7.0 | Compliance with Law | 7 |
| 8.0 | Alterations and Tenant Additions | 7 |
| 8.2 | Signage | 7 |
| 9.0 | Maintenance and Repair | 8 |
| 10.0 | Abandonment | 8 |
| 11.0 | Liens | 9 |
| 12.0 | Assignment and Subletting | 9 |
| 13.0 | Indemnification of Landlord | 10 |
| 14.0 | Insurance | 10 |
| 15.0 | Utilities | 11 |
| 16.0 | Holding over | 11 |
| 17.0 | Entry by Landlord | 12 |
| 18.0 | Insolvency or Bankruptcy | 12 |
| 19.0 | Tenant's Default and Landlord's Remedies | 13 |
| 20.00 | Fees, Rights and Remedies | 13 |
| 21.00 | Reconstruction | 14 |
| 22.00 | Eminent Domain | 14 |
| 23.00 | Sale by Landlord | 15 |
| 24.00 | Right to Cure | 15 |
| 25.00 | Delinquent Rentals | 16 |
| 27.00 | Attorney's Fees | 16 |

(i)

| ARTICLE | HEADING | PAGE |
|---|---|---|
| 30.00 | Notices | 17 |
| 33.00 | Successor and Assigns | 17 |
| 34.00 | Subordination | 17 |
| 35.00 | Non-Disturbance Clause | 18 |
| 36.00 | Recordation | 18 |
| 37.00 | Tax Reports | 18 |
| 38.00 | Personal Guarantee | 19 |
| Exhibit A | Legal Description | |
| Exhibit B | Phase I Improvements | |
| Exhibit C | Phase II Improvements | |
| Exhibit D | Tenant's Additions | |
| Exhibit E | Personal Guarantee | |

(ii)

JANKO\AmLnd-Lse-TblCnt.3/14/01sma

Exhibit "B"    Description of Phase I (a) (ii) Improvements to be constructed by Landlord, and estimated costs. (2.1) (5.4)

Exhibit "C"    Description of Phase I(b) Improvements to be constructed by Landlord and estimated costs. (2.5) (5.4)

Exhibit "D"    Description of Tenant's initial "additions" to the Leased Premises. (8.0) and items to be removed at termination of Lease. (8.4)

Exhibit "E"    Personal Guarantee. (38.0)

1.3    The Commercial Triple Net Lease dated _____ 1998 by and between Landlord and Tenant is hereby terminated and replaced by this Lease Agreement.


## 2.0    CONSTRUCTION OF IMPROVEMENTS:

2.1    (Phase I (a) (ii) Improvements):    Landlord shall construct and complete, at Landlord's expense, improvements to the existing building on the Leased Premises paving and landscaping, as described in Exhibit "B" attached hereto, hereafter referred to as the Phase I (a) (ii) Improvements.

2.2    Start of Construction: Construction of the Phase I (a) (ii) Improvements shall be commenced within 60 days of Tenant's approval by execution of Exhibit "B". Such construction shall progress continuously until completion, delayed only by weather conditions, strikes, lockouts, casualties, material or labor shortages, Acts of God, governmental regulation or control, or other causes beyond Landlord's control.

2.3    Finish of construction and delivery of possession: Delivery of possession of the Phase I(a) (ii) Improvements shall be deemed to have been made at "finish of construction" defined as when the Phase I (a) (ii) Improvements shall have been substantially completed and made available to Tenant.

2.4    Tenant's Inspection: Landlord shall notify Tenant in writing as soon as the Phase I (a) (ii) Improvements are substantially completed and ready for final inspection by Tenant. Landlord's notice to Tenant shall, for purposes of this Lease, conclusively determine the "finish of construction" date, unless Tenant, within five (5) days after said notice, serves upon Landlord a list of reasons why the Phase I (a) (ii) Improvements are not substantially completed. Landlord and Tenant will agree on a punch list of items to be corrected and completed within thirty (30) days of the date of inspection. In such event, the "finish of construction" shall be as agreed by Landlord and Tenant, or otherwise determined pursuant to this paragraph. Notwithstanding the foregoing, the taking of possession of the Phase I (a) (ii) Improvements by Tenant shall be deemed conclusively to establish that the Phase I (a) (ii)

2

Improvements have been completed and that the "Finish of Construction" date is the date of taking of possession.

2.5    (Phase I(b) Improvements):  Landlord shall construct and complete, at Landlord's expense, two (2) 11,200 sq. ft. additions to the building on the Leased Premises, for use by Tenant as a banquet hall and additional furniture retail space as described in Exhibit "C" attached hereto, hereafter referred to as the Phase I(b) Improvements.

2.6    Start of Construction:  Construction of the Phase I(b) Improvements shall be commenced within 60 days of Tenant's approval by execution of Exhibit "C". Such construction shall progress continuously until completion, delayed only by weather conditions, strikes, lockouts, casualties, material or labor shortages, Acts of God, governmental regulation or control, or other causes beyond Landlord's control.

2.7    Finish of construction and delivery of possession:  Delivery of possession of the Phase I(b)  Improvements shall be deemed to have been made at "finish of construction" defined as when the Phase I(b) Improvements shall have been substantially completed and made available to Tenant for the installation of its fixtures and equipment.

2.8    Tenant's Inspection:  Landlord shall notify Tenant in writing as soon as the Phase I(b) Improvements are substantially completed and ready for final inspection by Tenant. Landlord's notice to Tenant shall, for purposes of this Lease, conclusively determine the "finish of construction" date, unless Tenant, within five (5) days after said notice, serves upon Landlord a list of reasons why the Phase I(b) Improvements are not substantially completed. Landlord and Tenant will agree on a punch list of items to be corrected and completed within thirty (30) days of the date of inspection.  In such event, the "finish of construction" shall be as  agreed by Landlord and Tenant, or otherwise determined pursuant to this paragraph. Notwithstanding the foregoing, the taking of possession of the Phase I(b) Improvements by Tenant shall be deemed conclusively to establish that the Phase I(b) Improvements have been completed and that the "Finish of Construction" date is the date of taking of possession.

3.0    PURPOSE:

3.1    The Leased Premises shall be continuously occupied by the Tenant for the purposes of restaurant and retail sales to the general public; and any and all ancillary uses thereto,  including, but not limited to, the rental of banquet rooms, and maintenance of business offices.

3.2    Uses Prohibited: Tenant shall not permit the Leased Premises to be used in any manner which would render the insurance thereon void. Tenant shall not use or occupy the Leased Premises, or permit the Leased Premises to be used or occupied, contrary to any statute, rule, order, ordinance, environmental requirement or regulation applicable thereto; or in any manner which would violate any certificate of occupancy affecting the same; or

3

which would cause structural injury to the Improvements; or which would constitute a public or private nuisance or waste. Tenant shall not store on the property any hazardous materials that would require special handling, treatment or reporting.

    3.3    <u>Prohibition of Use</u>: If the use of the Leased Premises should at any time during the Lease term be prohibited by law or ordinance or other governmental regulation, or prevented by injunction, this Lease shall not be thereby terminated, nor shall Tenant be entitled by reason thereof to surrender the Leased Premises or to any abatement or reduction in rent, nor shall the respective obligations of the parties hereto be otherwise affected.

## 4.0    <u>TERM AND OPTION TO RENEW</u>:

    4.1    <u>Term</u>: The Lease shall commence on the _25th_ day of _May_ 2001(commencement date) and shall end 20 years later with the last day of the term being the _30_ day of _May_ 2021.

    4.2    <u>Option to Renew</u>: Provided, Tenant is not in default upon the expiration of the original 20 year term, Tenant shall have the option to extend this lease one (1) time for an additional period of five (5) years upon receipt by Landlord of written notice of Tenant's exercise of this option at least 180 days prior to the expiration of the original term.

## 5.0    <u>RENT AND OPTION TO PURCHASE</u>:

    5.1    <u>Initial Monthly Rent</u>: Beginning on "commencement date" and continuing on or before the 1st day of each and every month thereafter until the end of the first five (5) years of the lease, Tenant shall pay as Initial Monthly Rent to Landlord the sum of $33,759.00 monthly, in advance, (with the first month's rent prorated), which is based upon Landlord's actual costs for Phase I (a) (ii) of $3,069,000.00 x 1.1%.

    5.2    <u>Monthly Rent CPI Adjustment</u>: For each subsequent 5 year period after the first 5 years of the 20 year term and the option to renew, the monthly Rent shall be adjusted to ½ of the equivalent in dollars of purchasing power of the initial monthly Rent as adjusted pursuant to 5.3, but in no event shall the Monthly Rent be less than the sum of the initial monthly rent plus the Monthly Rent Adjustment for Improvements determined pursuant to paragraph 5.3. The Monthly Rent shall be adjusted with reference to the "Consumer Price Index" published by the United States Bureau of Labor Statistics, (or its successor organization), the United States City Average "All Items" line of the "All Urban Consumers" index (with 1982=100). The base for calculation shall be the first day of the second month preceding the commencement date. Beginning the 1st day of the second month preceding the 1st day of the 6th, 11th, and 16th year of the 20 year period and the renewal term of this Lease, the "Consumer Price Index" shall be ascertained and ½ of the percentage increase in such Index from the 1st day of the second month preceding the commencement date of the Lease,

4

to 2 months before the beginning of each 5 year period and the renewal period times the initial Monthly Rent as adjusted pursuant to 5.3 plus the initial Monthly Rent as adjusted pursuant to 5.3, shall be the Monthly Rent for the beginning of each 5 year period and the renewal term. Such Monthly Rent shall be payable in advance.

**EXAMPLE:**  Assume only Phase I(a)(ii) Improvements completed at a cost of $50,000.00. Initial monthly rent plus 5.3 ($33,759.00 plus $550.00) equals = $34,309.00 per month.

Index for March 1, 2001  =  100
Index for March 1, 2006  =  105
Percentage Increase        =  5%
Monthly Rent beginning the 6th year (2.5% of $ 34,309.00)  plus  $ 34,309.00 equals Monthly Rent of $ 35,166.73.

        Appropriate adjustment shall be made in the event there is a published amendment of the index figures used herein for computation.  In the event that the All Urban Consumer's United States City Average ceases to be published, another index which most closely approximates the All Urban Consumer's Index shall be substituted.

        5.3     <u>Monthly Rent Adjustment For Improvements</u>:  The Monthly Rental shall be adjusted based on actual project cost (defined in para. 5.4) of the Phase I(a)(ii) and Phase I(b) Improvements.  For each $1,000.00 of Phase I(a)(ii) or Phase I(b) Improvements added and completed by Landlord, the monthly rent shall be adjusted upward 1.1% of the cost of such improvements.  The adjustment shall take effect on the 1st day of the month following "finish of construction "as defined in 2.0 above.
Example: If actual project costs of Phase I (a) (ii) improvements are $50,000.00, the monthly Rent shall increase $550.00 per month.

        5.4     <u>Actual Project Costs</u>:  Actual project costs of the "Phase I(a)(ii) or Phase I(b) Improvements" is the cost of construction for the work and related charges recited in Exhibits "B" and "C", plus extras and/or credits incurred thereafter. Landlord will certify the actual cost of the project within thirty(30) days of finish of construction.

        5.5     <u>Payment</u>: The rental shall be paid monthly with each month's payment due on or before the 1st day of each month to Landlord at 2220 Marquette Road, Peru, Illinois, payable to AMISHLAND DEVELOPMENT, L.L.C., or to such other person or entity or at such other place as Landlord may from time to time designate in writing. The parties agree that the rental shall be paid to Landlord without deduction or offset unless and until the Tenant has consulted with and informed the Landlord of the reason(s) for said setoff and Landlord consents, or if Landlord does not consent, the setoff is permitted by applicable statutory law.

        5.6     <u>Additional Rent</u>:  In addition to the Monthly Rent, Tenant agrees to pay as additional rent the following:

5

**5.6.1 Taxes:** During the term of this Lease or any extension thereof, Tenant shall be responsible for and shall pay when due, all of the real estate taxes, special assessments or any other governmental charges against the Leased Premises. The real estate taxes for the tax year, in which the term of this Lease shall begin, shall be paid entirely by Tenant but for the year in which this Lease shall end, the taxes shall be apportioned so that the Tenant shall pay only those portions thereof which correspond with the portion of such year as are within the Lease term. Tenant reserves the right to contest any future assessed valuations placed on the real estate and Landlord agrees to cooperate in any contest brought by Tenant.

**5.6.2 Insurance, Utilities, Repair and Maintenance:** The cost of insurance (14.0), utilities (15.0), repairs and maintenance (9.0) are the responsibility of the tenant in addition to the rent.

**5.7 Net Lease:** This is an absolutely net Lease and Landlord shall not be required to provide any services or do any act or thing with respect to the Leased Premises or the appurtenances thereto, except as may be specifically provided.

**5.8 Option to Purchase:** Tenant shall have the Option to Purchase the Leased Premises after the second full Lease year, upon at least sixty (60) days(but not more than 120 days) written notice in advance of intended closing date at the following price.

**5.8.1** If closing occurs during the third full Lease year, the option price is $3,200,000.00 plus Actual Project Costs (defined in 5.4) of Phase I(a)(ii) and Phase I(b) Improvements, to the extent of completion.

**5.8.2** If closing occurs after the end of the third full Lease year, the option price shall be the fair market value as determined by a licensed commercial appraiser selected by mutual agreement of Landlord and Tenant, or if Landlord and Tenant cannot agree on an appraiser, then each party will select a licensed commercial appraiser, and the two appraisers selected shall select a third licensed commercial appraiser who shall determine the fair market value of the Leased Premises, but in no event shall the option price be less than$3,200,000.00 plus Actual Project Costs defined in 5.4.

**5.8.3** This option to purchase (i) shall expire upon termination of this Lease; (ii) cannot be exercised while Tenant is in default or breach of this Lease; and (iii) cannot be assigned without Landlord's consent, which may be withheld at Landlord's sole discretion.

**5.8.4** The cost of the appraisal shall be split between Landlord and Tenant, unless Tenant after notice of exercise of option fails to complete the purchase for reasons other than Landlord's fault, in which case the Tenant shall pay for the appraisal.

6

6.0    RELATIONSHIP:

The relationship of the parties during the term of this Lease Agreement shall at all times be that of Landlord and Tenant. Neither Landlord nor Tenant shall be deemed to be a partner or engaged in a joint venture with or an associate of the other in the conduct of its business, nor shall the Tenant or the Landlord be liable for any debts incurred by the other in the conduct of its business, nor shall anything contained herein be deemed or construed to confer upon the Landlord or Tenant any interest in the business of the other.

7.0    COMPLIANCE WITH LAW:

Tenant shall not use the Leased Premises, or permit anything to be done in or about the Leased Premises, which will in any way conflict with any law, statute, ordinance or governmental rule or regulation now in force or which may hereafter be enacted or promulgated.  Tenant shall, at its sole cost and expense, promptly comply with all laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force and with the requirements of any board of fire underwriters or other similar body now or hereafter constituted relating to or affecting the condition, use or occupancy of the Premises. The Judgment of any Court of competent jurisdiction, or the admission of Tenant in an action against Tenant, whether Landlord be a party thereto or not, that Tenant has violated any such law, statute, ordinance or governmental rule, regulation or requirement shall be conclusive of that fact as between Landlord and Tenant.

8.0    ALTERATIONS AND TENANT "ADDITIONS":

8.1    Initial "Additions" by Tenant:  Tenant, at its sole cost and expense, has made the additions described on Exhibit "D", all decorating of the Leased Premises and Tenant has purchased and agrees to purchase as needed such furniture, fixtures and equipment as Tenant desires for Tenant's use of  the Leased Premises.

8.2    Signage:  Tenant, at Tenant's expense, shall be allowed to install signage in compliance with any covenants and restrictions against the Leased Premises and with the ordinances of the governmental authorities having jurisdiction over the Leased Premises and Tenant shall be responsible for the maintenance of such signs.

8.3    Future Additions: The Tenant shall not make any alterations in or "additions" to the Leased Premises without the Landlord's advance written consent in each and every instance, which shall not be unreasonably withheld.  If the Landlord consents to such alterations or additions, before the commencement of the work or delivery of any materials onto the Leased Premises, or into the building, Tenant shall Exhibit to Landlord the plans, specifications, names and addresses of contractors, copies of contracts, necessary permits, financial arrangements for the payment of same, or waivers of lien against any and all claims,

7

costs, damages, liabilities and expenses which may arise in connection with the alterations or additions. Whether the Tenant furnishes the Landlord the foregoing or not, Tenant hereby agrees to hold the Landlord harmless for any and all liabilities arising out of the acts of Tenant or its agents, employees or contractors who may be connected with said alterations or additions. The Tenant shall Exhibit to Landlord, contractors' affidavits and full and final waivers of lien and/or receipted bills covering all labor and materials expended and used. All alterations and additions shall comply with all insurance requirements and with all ordinances and regulations of the municipality or governmental bodies with jurisdiction over the Leased Premises. All alterations and additions shall be constructed in a good and workmanlike manner and only first quality types of material shall be used.

8.4    Removal of Tenant's Additions: Unless indicated in Exhibit "D" attached hereto or prior arrangements were made in writing at the time of installation of future "additions", tenant shall not remove any of Tenant's additions at the expiration or sooner termination of the Lease, except, Tenant shall, upon demand by Landlord, at Tenant's sole cost and expense, forthwith and with all due diligence, remove those, additions, and fixtures, including signs, that were made by Tenant, and designated by Landlord to be removed. Tenant shall, repair any damage to the Leased Premises caused by such removal. All of Tenant's personal property can be removed upon termination of this Lease as long as the Tenant returns the Leased Premises to its original condition, ordinary wear, tear and casualty excepted.

## 9.0    MAINTENANCE AND REPAIR:

9.1    By entry hereunder, Tenant accepts the Leased Premises as being in good, sanitary order, condition and repair. Tenant shall, at Tenant's sole cost and expense, keep the Leased Premises and every part thereof in good condition and repair. Tenant hereby waives all rights to make repairs at the expense of Landlord as provided by any law, statute or ordinance now or hereafter in effect. Tenant shall be responsible for and shall promptly repair and replace, without expense to Landlord, the improvements on the Leased Premises, including structural repairs and capital improvements required by law. Tenant shall, upon expiration or sooner termination of the term hereof, surrender the Leased Premises to Landlord in the same condition as when received, ordinary wear, tear and casualty excepted.

9.2    Tenant, at Tenant's sole expense, shall be responsible for and repair of all utility and mechanical systems. Tenant shall maintain and repair all parking lots and landscaping, and shall keep parking spaces, driveways and sidewalks reasonably free from snow and ice.

## 10.0    ABANDONMENT:

Fifteen days' physical absence by Tenant with any installment being unpaid, or reason to believe Tenant has vacated the Leased Premises with no intent again to take possession

thereof shall be conclusively deemed to be an abandonment of the Leased Premises by Tenant. In such event, and in addition to Landlord's remedies set forth in this Lease, Landlord may, but need not, enter upon the Leased Premises and act as Tenant's agent to perform necessary decorating and repairs and to re-rent the Leased Premises outright or on terms similar to those contained in this Lease with allowance for then existing market conditions. Tenant shall be conclusively deemed to have abandoned any personal property remaining on or about the Leased Premises and Tenant's interest therein shall thereby pass under this Lease as a Bill of Sale to Landlord without additional payment by Landlord to Tenant.

## 11.0    LIENS AND ENCUMBRANCES:

Tenant shall keep the Leased Premises free from any encumbrances and liens arising out of any work performed, materials furnished or obligations incurred by or under Tenant. Tenant agrees to indemnify Landlord and defend (subject to reasonable approval of Landlord's attorney) at Tenant's expense, Landlord from all actions and costs of suit and attorney's fees incurred by Landlord in connection with any such lien. However, it is the obligation of the Tenant to notify Landlord of Tenant's intention to file an appearance on behalf of the Landlord to defend such action.

## 12.0    ASSIGNMENT AND SUBLETTING:

Tenant shall not assign, transfer, hypothecate or encumber this Lease, or any interest therein, and shall not sublet the Leased Premises or any part thereof, or any right or privilege appurtenant thereto, or suffer any other person (the agents and servants of Tenant excepted) to occupy or use the said Leased Premises, or any portion thereof, without the written consent of Landlord first had and obtained, (except Tenant has the right to assign to an affiliate in connection with a corporate merger or corporate reorganization, provided assignee is of at least equal financial means in the opinion of Landlord) and a consent to one assignment, transfer, hypothecation, encumbrance, subletting, occupation or use by any other person shall not be deemed to be a consent to any subsequent assignment, transfer, hypothecation, encumbrance, subletting, occupation or use by another person. Such assignment or subletting without such consent shall be void and shall, at the option of Landlord, terminate this Lease. This Lease shall not, nor shall any interest therein, be assignable as to the interest of Tenant by operation of law, without the written consent of Landlord. Landlord agrees not to unreasonably withhold or delay its consent to any proposed assignment or Sublease, provided that such assignment or Sublease is to a financially responsible party, or an affiliate in connection with a corporate merger or corporate reorganization provided Assignee is of at least equal financial means in the opinion of Landlord, and provided further that such assignee or sublessee agrees to assume the obligations of Tenant under this Lease, in a form reasonably satisfactory to Landlord including where applicable, a personal guarantee of all of the terms of this Lease, and provided further that no such assignment or Sublease shall be construed as releasing Tenant from its obligations hereunder for the full performance of this Lease.

9

## 13.0    INDEMNIFICATION OF LANDLORD:

13.1    Except as provided by law, Landlord shall not be liable to Tenant, and Tenant hereby waives all claims against Landlord, for any injury or damage to any person or property in or about the Leased Premises by or from any cause whatsoever, and without limiting the generality of the foregoing, whether caused by water leakage of any character from the roof, walls, basement or other portion of the Leased Premises of the building, or caused by gas, fire, oil, electricity or any cause whatsoever in, on or about the Premises or any adjacent parking areas or any part thereof. Said paragraph shall not be operable if damage was caused by the willful or wanton conduct of the Landlord or its agents.

13.2    Tenant shall hold Landlord harmless from and defend Landlord against any and all claims or liability for any injury or damage to any person or property whatsoever: (1) occurring in, on or about the Leased Premises or any part thereof; and (2) occurring in, on or about any facilities (including, with prejudice to the generality of the term "facilities", stairways, elevators, passageways, hallways and parking areas), the use of which Landlord may have in conjunction with other Tenants when such injury or damage shall be caused in part or in whole by the act, neglect, fault of, or omission of any duty with respect to the same by Tenant, its agents, servants, employees or invitees.

## 14.0    INSURANCE:

14.1    <u>Hazard Insurance</u>:  Tenant shall be responsible to insure the structures on the Leased Premises during the term of this Lease. Tenant shall provide at Tenant's sole expense with a certificate of insurance from an insurance company with an A.M. Best rating of not less than "A", that the property is insured through a "special form" commercial policy for the full replacement cost of the structures on the Leased Premises. Said policy shall name the Landlord, as the insured thereunder and shall also name the Landlord's current Mortgagee, if any, as an additional insured. Tenant agrees that the Landlord may require Tenant to provide at Tenant's expense, additional insurance coverage in the future if the replacement cost of the insured property increases. *Including flood insurance, if required. RY

14.2    <u>Liability Insurance</u>: Tenant shall also, at no cost or expense to Landlord but for the mutual benefit and protection of Tenant and Landlord, maintain comprehensive general liability insurance with a Company with an A.M. Best rating of not less than "A", against claims for personal injury or death and property damage occurring upon, in, or about the Leased Premises, from and after the start of the lease term, such insurance to afford protection to the limit of no less than One Million Dollars ($1,000,000.00) per occurrence, Two Million Dollars ($2,000,000.00) general aggregate, and One Hundred Thousand Dollars ($100,000.00) property damage. Said policy of insurance shall name Landlord and Tenant as insured as their interest may appear. Tenant shall not engage or cause such acts to occur which might otherwise result in a forfeiture of such insurance. Tenant agrees to furnish to Landlord a certificate evidencing the insurance required by this Paragraph, which certificate shall contain

10

an agreement by the insurer that said policy shall not be canceled or materially changed without at least ten (10) days prior written notice to Landlord. Any such policy of insurance shall be primary and not contributing with any insurance provided by Landlord.

14.3    <u>Business Interruption Insurance</u>: Tenant shall also maintain at its expense, business interruption insurance to cover up to six (6) months rent to the Landlord. Tenant agrees to furnish to Landlord a certificate evidencing the insurance required by this Paragraph, which certificate shall contain an agreement by the insurer that said policy shall not be canceled or materially changed without at least ten (10) days prior written notice to Landlord. Any such policy of insurance shall be primary and not contributing with any insurance provided by Landlord.

14.4    <u>Dram Shop</u>: In addition to the aforesaid insurance coverages, if liquor is served upon the Leased Premises, Tenant shall, at Tenant's own cost and expense, with reputable insurance companies approved by Landlord, provide and keep in full force and effect a liquor liability policy, commonly known as Dram Shop Insurance, insuring Landlord and Tenant. Tenant agrees to furnish to Landlord a certificate evidencing the insurance required by this Paragraph, which certificate shall contain an agreement by the insurer that said policy shall not be canceled or materially changed without at least ten (10) days prior written notice to Landlord. Any such policy of insurance shall be primary and not contributing with any insurance provided by Landlord.

## 15.0    UTILITIES:

Tenant shall pay all costs of all utilities, including but not limited to water, sewer, gas, electric, telephone and refuse disposal, charged to the premises during the term of this Lease. Janitor service and other utility services shall not be provided by the Landlord. Landlord shall not be deemed to be in default hereunder, nor shall Landlord be liable for, and Tenant shall not be entitled to exercise any remedy pursuant to this Lease, at law or in equity, by reason of Landlord's failure to furnish any of the foregoing when such failure is caused by accidents, breakage, repairs, strikes, lockouts or other cause, similar or dissimilar beyond the reasonable control of Landlord or if such failure is the result of any action or inaction by a public or private utility company or other governmental agency, nor shall such failure be construed as an eviction of Tenant, actual or constructive.

## 16.0    HOLDING OVER:

In the event that Tenant shall hold over the Leased Premises after the expiration of the term hereof without the consent of Landlord, either express or implied, such holding over shall be construed to be only a tenancy from month-to-month, subject to all of the covenants, conditions, and obligations hereof, and, unless a new rental has been negotiated with the Landlord, Tenant hereby agrees to pay Landlord 120% of the last Monthly Rent plus other

11

charges provided for by this Lease for such additional time as Tenant shall hold the Leased Premises after expiration of the Lease.

## 17.0   ENTRY BY LANDLORD:

17.1 Landlord reserves and shall at any and all times have the right to enter the Leased Premises to inspect the same, to supply any service to be provided by Landlord to Tenant hereunder, to submit said Leased Premises to prospective purchasers or Tenants, during the last one hundred eighty (180) days of the Lease, to post notices of nonresponsibility, and to alter, improve or repair the Leased Premises, without abatement of rent and may for that purpose erect scaffolding and other necessary structures where reasonable required by the character of the work to be performed, always providing the entrance to the Leased Premises shall not be blocked thereof, and further providing that the business of Tenant shall not be interfered with unreasonably. Tenant hereby waives any claim for damages for any injury or inconvenience to, or interference with Tenant's business, any loss of occupancy or quiet enjoyment of the Premises, and any other loss occasioned thereby. In the event the Landlord is desirous of inspecting the property other than during normal business hours, and unless said entry is for emergency purposes, Landlord shall provide the Tenant with twenty-four (24) hours advance notice of its intention to inspect.

17.2   Tenant expressly agrees that Landlord may, at its election, terminate this Lease in the event of the occurrence of any of the contingencies herein  described by giving not less that ten (10) days' written notice to Tenant, and when so terminated, the Landlord may re-enter the Leased Premises. It is further expressly understood and agreed that Landlord shall be entitled upon such re-entry, notwithstanding any other provisions of the Lease, to exercise such rights and remedies and to recover from Tenant as damages for loss of the bargain resulting from such breach, not as a penalty, such amounts as are specified in rent paragraphs hereof, unless any statute or rule or law governing the proceedings in which such damages are to be proved shall lawfully limit the amount of such claims capable of being so proved, in which case Landlord shall be entitled to recover as and for liquidated damages the maximum amount which may be allowed under such statute or rule or law.

## 18.0   INSOLVENCY OR BANKRUPTCY:

If (a) a Petition to have Tenant adjudicated a Bankrupt under Chapters I through VII or a Petition for Reorganization or arrangement or for relief under Chapters VII, IX, X XI, XII or XIII of the Bankruptcy Act, as now in force or hereafter amended, be filed by or against Tenant, and if so filed against Tenant is not dismissed within thirty (30) days from the date of such filing; (b) in any judicial act or proceeding, or pursuant to any compositions of creditors, a receiver or other officer or agent (including Tenant as a debtor in possession) be appointed to take charge of the Premises or the business conducted therein; (c) Tenant becomes insolvent (either in the equity or bankruptcy sense) or commences any act of bankruptcy; or (d) if Tenant or any assignee or successor in interest of Tenant commences proceedings for winding-

12

up, the occurrence of any such contingency shall be deemed to constitute and shall be construed as a repudiation of the obligations of Tenant and as a breach of this Lease.

## 19.0   TENANT'S DEFAULT AND LANDLORD REMEDIES:

19.1   If Tenant (1) defaults by failing to pay when due any single installment or payment required to be made to Landlord under the terms of this Lease and such default is not cured within ten (10) days of written notice to Tenant; or (2) defaults in the performance of any other covenant or agreement hereof and such default is not cured by Tenant within thirty (30) days after written notice to Tenant (unless the default involves a dangerous condition which shall be cured forthwith). Landlord may treat such a default as a breach of this Lease and Landlord shall have any one or more of the following remedies in addition to all other rights and remedies provided at law or in equity: (i) maintain an action for any unpaid installments; (ii) relet the Leased Premises with Tenant remaining liable for any deficiency; (iii) forfeit the Tenant's interest in this Lease (iv) retain all sums paid and (v) upon Tenant's failure to surrender possession, maintain an action for possession under the Forcible Entry and Detainer Act, subject to the rights of Tenant to reinstate as provided in that Act.

19.2   If default is based upon the failure to pay taxes, insurance, liens or other charges as provided in this Lease, Landlord may after ten (10) days notice upon Tenant to do so, elect to make such payments and add the amount to the rents due, which amounts shall become immediately due and payable by Tenant to Landlord, and if not paid within 10 days of demand for payment shall then be payable together with 18% interest per annum.

## 20.0   FEES, RIGHTS AND REMEDIES:

20.1   Tenant or Landlord shall pay all reasonable attorney's fees and costs incurred by the other in enforcing the terms and provisions of this Lease, including forfeiture or specific performance, in defending any proceeding to which Tenant or Landlord is made a party defendant (or creditor in the event of Landlord's bankruptcy or being declared insolvent) as a result of the acts or omissions of the other party.

20.2   (1) All rights and remedies given to Tenant, or Landlord, shall be distinct, separate, and cumulative, and the use of one or more thereof shall not exclude or waive any other right or remedy allowed by law, unless specifically waived in this Lease; (2) No waiver of any breach or default of either party hereunder shall be implied from any omission by the other party to take any action on account of any similar or different breach or default. (3) The payment or acceptance of money after it falls due after knowledge of any breach of this agreement by Tenant or Landlord, or after the termination of Tenant's right of possession hereunder, or after the service of any notice, or after commencement of any suit, or after final judgment for possession of the Leased Premises shall not reinstate, continue, or extend this Lease nor affect any such notice, demand or suit or any right hereunder not herein expressly waived.

13

## 21.0  RECONSTRUCTION:

21.1    In the event the Leased Premises or building improvements are damaged by fire, or other perils covered by the "special form" commercial insurance policy required in paragraph 14.1, Landlord agrees to forthwith repair the same within six (6) months, provided Landlord receives the insurance proceeds and the cost to complete such restoration and repair is less than the insurance proceeds and less than seventy percent (70%) of the replacement value of the building improvements immediately prior to the date of such damage; and this Lease shall remain in full force and effect, with no reduction of rent while such repairs are being made to the Premises, the Tenant protecting itself with business interruption insurance. (14.3))

21.2    In the event the Leased Premises or the building improvements are damaged as a result of any cause other than the perils covered by the "special form" commercial insurance policy required in paragraph 14.1, then Landlord shall forthwith repair the same, provided the extent of the destruction be less than ten percent (10%) of the then full replacement value of the building improvements.  In the event of the destruction of the Leased Premises or building improvements is greater than ten (10%) percent of the then full replacement value and is the result of a peril other than a peril covered by the "special form" commercial insurance policy required in paragraph 14.1, or in the event such destruction results from a peril covered by the "special form" commercial insurance policy required in paragraph 14.1, but the cost to repair and restore such damage is in excess of seventy percent (70%) of the replacement value of the building improvements immediately prior to such damage, then Landlord shall have the option to either:  (1) repair and restore such damage as reasonable after settlement with the Insurance Company, this Lease continuing in full force and effect or, (2) give notice to the Tenant at any time within thirty (30) days after such damage, terminating this Lease as of the date specified in such notice, which date shall be no less than thirty (30) days, nor more than sixty (60) days, after the giving of such notice.  In the event of giving of such notice, this Lease shall expire and all interest of the Tenant in the Leased Premises shall terminate on the date so specified in such notice and the rent shall be paid up-to-date of such termination.

21.3    Landlord shall not be required to repair any injury or damage by fire or other cause, or to make any repairs or replacements of any panels, decoration, furniture, fixtures, equipment, ceiling, floor covering, partitions, or any property installed on the Leased Premises by Tenant.

## 22.0  EMINENT DOMAIN:

If all or any part of the Leased Premises or the building improvements shall be taken or appropriated by any public or quasi-public authority under the power of eminent domain, either party hereto shall have the right, at its option, to terminate this Lease effective as of the date of the taking of physical possession of the Leased Premises or building and Landlord shall be entitled to any and all income, rent award, or any interest therein whatsoever which may be paid or made in connection with such public or quasi-public use or purpose, and Tenant

14

shall have no claim against Landlord for the value of any unexpired term of this Lease. If a Part of the Leased Premises shall be so taken or appropriated and neither party hereto shall elect to terminate this Lease, the rental thereafter to be paid shall be equitably reduced and Landlord shall restore the Premises and/or the other building improvements. Notwithstanding the foregoing provisions of this paragraph to the contrary, before Tenant may terminate this Lease by reason of a taking or appropriation as above provided, such taking or appropriation shall be of such an extent and nature as to substantially handicap, impede or impair Tenant's use of the premises. Nothing in this paragraph shall be construed to abrogate, compromise, or in any way prevent the Tenant from pursuing whatever rights it may have with regards to the diminution, if any, of the value of said Tenant's Leasehold estate due to any taking under the power of eminent domain.

## 23.0    SALE BY LANDLORD:

In the event of a sale or conveyance by Landlord of its interest in and to the Leased premises, the same shall operate to release Landlord but not its successor in interest from any liability upon any of the covenants or conditions expressed or implied herein contained in favor of Tenant, except for those accrued as of the date of such sale or conveyance.

## 24.0    RIGHT TO CURE:

Should Tenant fail to pay when due and payable any premium or other charge in connection with any insurance policy or policies, real estate taxes or other items which Tenant is obligated to pay, or any lien or claim for labor or materials employed or used in the repair, alteration, maintenance and/or use of the Premises to be paid by Tenant, or should Tenant fail to make or commence any repairs required to be made by it under this Lease or to perform any other act or to make any other payment to be performed or made by Tenant hereunder within ten (10) days after notice from Landlord to do so, for a monetary default or within thirty (30) days after notice from Landlord to do so for a non monetary default, then Landlord may, at its option (but this provision shall not be deemed to create an obligation upon Landlord so to do, or in any manner affect the obligation of Tenant) pay any such tax, assessment, claim, insurance premium or other charge, or settle and discharge any such lien or claim or action therefor or satisfy any judgment thereon enter upon the Premises and perform such work or repair or other act to be performed by Tenant, and all costs and expenses incurred or paid by Landlord in connection therewith, shall be deemed to be additional rent hereunder and shall be paid by Tenant to Landlord upon demand, and if not paid within ten (10) days of demand for payment shall then be payable, together with 18% interest per annum and any default therein shall constitute a breach of the covenants and conditions of this Lease.

15

0068

## 25.0   DELINQUENT RENTALS:

Tenant acknowledges that late payments by Tenant to Landlord of rent due hereunder will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges and late charges which may be imposed upon Landlord by the terms of any mortgage, note, and/or trust deed covering the Leased Premises. Accordingly, if any installment of rent due from Tenant shall not be received by Landlord or Landlord's designee within ten (10) days after said rent is due, then Tenant shall pay to Landlord a late charge equal to the greater of (i) five percent (5%) per month of such overdue amount, plus any attorney's fees incurred by Landlord by reason of Tenant's failure to pay rent due hereunder; or (ii) One Hundred Dollars ($100.00). The parties hereby agree that such late charges represent a fair and reasonable estimate of the cost that Landlord will incur by reason of the late payment of rent by Tenant. Acceptance of such late charges by Landlord shall in no event constitute a waiver of Tenant's default with respect to such overdue amount, nor prevent Landlord from exercising any of the other rights or remedies granted hereunder.

## 26.0   SEVERABILITY:

Any provisions of this Lease which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision hereof, and such other provisions shall remain in full force and effect.

## 27.0   ATTORNEY'S FEES:

In the event of any action or proceeding brought by either party against the other under this Lease, the prevailing party shall be entitled to recover for the fees of its attorneys in such action of such proceeding such amount as the Court may adjudge as reasonable attorney's fees.

## 28.0   NO MERGER:

The voluntary or other surrender of this Lease by Tenant, or a mutual cancellation thereof, shall not work a merger and shall, at the option of the Landlord, terminate all or any existing subleases or subtenancies, or may, at the option of the Landlord, operate as an assignment to it of any or all such subleases or subtenancies.

## 29.0   WAIVER:

The waiver by a Landlord of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition of any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent

16

acceptance of rent hereunder by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any term, covenant or condition of this Lease, other than the failure of Tenant to pay the particular rental so accepted, regardless of the Landlord's knowledge of such preceding breach at the time of acceptance of such rent.

## 30.0   NOTICES:

All notices and demands which may, or are required to be given by either party to the other hereunder, shall be in writing. All notices and demands by the Landlord to the Tenant shall be sent by United States Certified or Registered mail, postage prepaid, addressed to the Tenant at the Premises, or to such other places as the Tenant may from time to time designate in writing to the Landlord or may be personally served upon the Tenant. All notices and demands by the Tenant to the Landlord shall be sent by United States Certified or Registered Mail, postage prepaid, addressed to the Landlord, or to such other person or place or persons or places as the Landlord may from time to time designate in writing to the Tenant. All notices shall be effective as of the date of receipt or certification. Delivery may also be made by an established national overnight delivery service (such as Federal Express).

## 31.0   DEFINED TERMS AND MARGINAL HEADINGS:

The words "Landlord" and "Tenant" as used herein shall include the plural as well as the singular. Words used in the masculine gender include feminine and neuter. If there be more than one Tenant, the obligations hereunder imposed upon the Tenant shall be joint and several. The marginal headings and titles to the Paragraphs of this Lease are not a part of the Lease and shall have no effect upon the construction or interpretation of any part hereof.

## 32.0   TIME:

Time is of the essence in this Lease and each and all of its provisions.

## 33.0   SUCCESSORS AND ASSIGNS:

The covenants and conditions herein contained shall, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of the parties hereto.

## 34.0   SUBORDINATION:

Upon the request of the Landlord, Tenant herewith subordinates or will subordinate its rights hereunder to any lien of any mortgage to any lending institution now or hereafter in

17

0070

force against the land and the building of which the Leased Premises are a part, and to all advances made or hereafter to be made upon the security hereof. Tenant shall execute upon request a document indicating said subordination. The provisions of this paragraph shall be self-operative and no further instrument of subordination shall be required but it is agreed that so long as Tenant is not in default hereunder, this Lease shall remain in full force and effect for the full term hereof, and Tenant hereby agrees to attorn to the purchaser of the building through sale or judicial foreclosure proceedings under any mortgage covering said premises and to recognize such purchaser as the Landlord under this Lease.

## 35.0    NON-DISTURBANCE CLAUSE:

Subject to the observance and performance by Tenant of all of the covenants, terms and conditions of this Lease, Lender, for itself and its successors and assigns, and for any purchaser at a foreclosure sale under the Mortgage, any transferee who acquires the Leased Premises by Deed in Lieu of Foreclosure or otherwise, and the successors and assigns of such purchaser and transferee covenants that in the event Lender or other New Landlord (as the case may be) obtains title to the Leased Premises prior to the termination of this Lease, including any extensions and renewals of the Lease now provided, either by foreclosure or by Deed in Lieu of Foreclosure, and after that time obtains the right of possession of the Leased Premises, that the Lease will continue in full force and effect, and Lender or other New Landlord (as the case may be) shall recognize the Lease and any modifications or amendments subsequently approved by Lender and the Tenant's rights thereunder, and will thereby establish direct privity of estate and contract between the Lender or other New Landlord (as the case may be) and Tenant with the same force and effect and with the same relative priority in time and right as though the Lease were directly made from Lender or other New Landlord (as the case may be) in favor of Tenant.

## 36.0    RECORDATION:  This Lease shall not be recorded, but a Memorandum of Lease reciting only the parties, term, option, and legal description but not any amounts may be recorded.

## 37.0    TAX REPORTS:    Tenant agrees to supply and shall require any subtenants or assignees of Tenant to supply to Landlord all sales tax reporting information required under the Amended and Restated Development/Economic Incentive Agreement between Landlord, Tenant and the City of Tuscola including but not limited to (i) any other relevant agreements or reports regarding rebates for taxes (sales or real estate) Landlord or Tenant may be eligible for from time to time during the term or any extended term of this lease and (ii) reports listing the total amount of sales made by Tenant or any other occupant of the Premises and the total amount of Retailer's Occupation Tax, Municipal Retailers' Occupation Tax, and Service Occupation Tax paid with respect to such sales. In addition, Tenant agrees to execute a letter consenting to and authorizing the Illinois Department of Revenue (or other appropriate governmental entity) to disclose to Landlord, detailed information from tax returns filed with

18

0071

the State of Illinois as to the amount of Retailers' Occupation Tax, Municipal Retailers' Occupation Tax and Service Occupation Tax paid to the State of Illinois for sales at the Leased Premises.

**38.0    PERSONAL GUARANTEE:**   All terms and conditions of this Lease, including monetary payments required hereunder, shall be personally guaranteed by: James Stillwell and Margaret Stillwell. Said Guarantee is attached as Exhibit "E" and made part of the Lease Agreement.

**39.0    ENTIRE AGREEMENT:**

This Lease contains the entire agreement of the parties hereto with respect to the matters covered hereby, and no other agreement, statement or promise made by any party hereto, or to any employee, officer or agent of any party hereto, which is not contained herein, shall be binding or valid.

IN WITNESS THEREOF, The parties hereto have executed the Lease on the day and year first above written.

LANDLORD: Amishland Development, LLC. an Illinois Limited Liability Company, by its manager, Janko Financial Group, L.L.C. an Illinois Limited Liability Company

BY: _____
Richard F. Janko, Manager

LENDER, If any, as to paragraph 35.0 Only.

BY:_____

TENANT: AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation

BY: _____
James Stillwell,                       President

ATTEST:_____
Secretary

JANKO\AmLndCtyVil.LSE.3/14/01.LWB\sma

19

0072



MAIN BUILDING FLOOR PLAN

SCALE: 1/16"=1'-0"

☑ 02

# <u>TEN DAY NOTICE</u>

TO:   AMISHLAND COUNTRY VILLAGE, INC.
Attn: James Stilwell, President
1304 S. Tuscola Boulevard
Tuscola, IL 61953

    YOU ARE HEREBY NOTIFIED that in consequence of your default by the nonpayment of rent since January 1, 2002 in the amount of $384,190.33, the undersigned has elected and does hereby elect to terminate your Lease dated May 25, 2001 of the premises now occupied by you, described as:

The property commonly known as
Amishland Country Village, Inc.
1304 S. Tuscola Boulevard
Tuscola, IL 61953

    AND, YOU ARE FURTHER NOTIFIED that unless you cure these payment defaults, you are hereby required to quit and deliver possession thereof to the undersigned, within ten (10) days from the service hereof.

Dated at Peru, Illinois January 29, 2003

LANDLORD:

cc:   James Stilwell, Guarantor
     Margaret Stilwell, Guarantor
     218 Iowa St.
     Atwood, IL 61913

AMISHLAND DEVELOPMENT, LLC,
An Illinois Limited Liability Company,
By its manager: JANKO FINANCIAL
GROUP, L.L.C., a Limited Liability
Company,

By: _____
         Richard Janko, Manager

STATE OF ILLINOIS    )
COUNTY OF LASALLE    )

    Lawrence W. Bianchi, being duly sworn on oath deposes and says that on the 29th day of January, 2003, he served this Notice on the above-named by delivering a copy hereof by hand delivery, by Federal Express, or by U.S. Registered mail, postage prepaid.

By: _Lawrence W. Bianchi_
     Lawrence W. Bianchi

Subscribed and sworn to before
me this 29 day of January, 2003.
_____
Notary Public

10 day notice-january 2003 ACV

EXHIBIT
B
007



**AMERICAN GENERAL**

*Insurance Service Center for:*

**American General Life Insurance Company**

05/02/2003

MARGARET STILWELL
PO BOX 538
ATWOOD IL  61913-0538

| | |
|---|---|
| Contract Number: | 2604663 |
| Insured: | JAMES E STILWELL |
| Claim Number: | 03D00893OLL |

Dear MRS STILWELL:

We are sorry to learn of the loss of JAMES E STILWELL.  Please extend our sincere sympathy to all the members of the family.

The Illinois Department of Insurance requires that our Company notify you that interest shall accrue on the proceeds payable because of the death of the insured from the date of death, at the rate of 9 percent on the total amount payable or the face amount, if payments are to be made in installments until the total payment or first installment is paid, unless payment is made within fifteen (15) days from the date of receipt by the Company of due proof of loss.

Sincerely,
INDIVIDUAL CLAIMS DEPARTMENT

cc:    W0908
       W0090



EXHIBIT
B9

tabbies

3096

0B1

American General Life Insurance Company
*Member of American International Group, Inc.*
Service Center • P.O. Box 4373 • Houston, TX  77210-4373 • 1.800.487.5433 • Fax 214.654.6008

MAY 02 '03 11:54 FR AMERICAN GEN LIFE               TO 912175783292

5/9/03 11:04
0085204050057

  **AMERICAN GENERAL**

**Proof of Death**
**- Claimant's Statement**

**American General Life Insurance Company**
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

**To Be Completed By The Beneficiary**

### I — DECEASED

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 10-07-54 | Myocardial Infarction | 05/02/2003 |

**POLICIES DECEASED HELD WITH THIS COMPANY:**

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2384389 | 1,000,000 | | |

I hereby certify that the policy of insurance for the listed policy has been  ☐ ENCLOSED  ☐ LOST  ☐ DESTROYED

### II — CLAIMANT

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| Margaret J. Stilwell | 08-08-1950 | Wife |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| N on Kentucky Box 538 | Atwood | IL | 61913 | (217) 578-3132 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim?  ☐ YES  ☒ NO   If yes, what amount? $ _____   (Attach copy of assignment)

How do you want proceeds paid?  ☒ Lump Sum  *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.  ☐ Settlement Option  If Option, give details: _____

**IMPORTANT:** Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.)  ☒ YES  ☐ NO   (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits any fraudulent insurance act, which is a crime.

PLEASE SIGN HERE  ☒ Margaret J. Stilwell

### III — TAXPAYER I.D. NO.

| Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number. | CLAIMANT'S S.S. NO. | | TAX I.D. NO. |
|---|---|---|---|
| | 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 | OR | |

**Note:** If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

**CERTIFICATION:** Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| PLEASE SIGN HERE  ☒ Margaret J. Stilwell | DATE  05/06/03 |
|---|---|

### IV — FILING

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?   SHOW BELOW

Please deliver check to my Agent William John Lyons
P.O. Box 260
Atwood, IL 61913

EXHIBIT B10

L 2843 Rev 0103                      Page 1 of 2                      **POOR QUALITY**

Bloomfield Hills Kalamazoo Lansing Peoria

# Howard & Howard
### law for business

direct dial: 309.999.6307

Timothy J. Howard
May 6, 2003

email: TJHoward@howardandhoward.com

Richard L. Broch, Esq.
P.O. Box 253
1304 S. Tuscola Blvd.
Tuscola, IL 61953

*VIA FACSIMILE – 217/253-2296*

RE:  Tuscola Furniture Group, LLC v. Amishland Country Village, Inc., et al.
Douglas Co. Case No. 03-L-5
Our File No. 17379-3

Dear Mr. Broch:

This is to express our condolences on the untimely death of Mr. Stilwell.

Pursuant to the Consignment Agreement, we will seek satisfaction of our claim against your client, Amishland Country Village, Inc., from the proceeds of the life insurance policy on the life of Mr. Stilwell. Pursuant to paragraph 3.9 of the Agreement, Mr. Stilwell maintained a life insurance policy on his life with Old Line Life Insurance Company (Policy No. 2604663). One million dollars of coverage was collaterally assigned to Tuscola Furniture Group, LLC ("TRG") and its bank, First Mid-Illinois Bank & Trust by an Assignment dated January 11, 2001. The proceeds of this policy are sufficient to satisfy the TRG claim of approximately $481,000, with the excess proceeds payable to Mrs. Stilwell. Our client is preparing a payoff statement.

Finally, we do not see the need to proceed with the replevin action that has been scheduled for trial this Friday, because our client and the bank will be paid from the insurance proceeds.

Please call me to discuss this matter at your convenience.

Very truly yours,

HOWARD & HOWARD ATTORNEYS, P.C.

*Tim Howard/bp*

Timothy J. Howard

cc:  Tuscola Furniture Group, LLC (Via facsimile)
First Mid-Illinois Bank & Trust (Via facsimile-217/359-9889)

betty\g:\j-l\janko financial\tuscola furniture grp\cor\rb5-6-03

**EXHIBIT**
tabbies
B11

# Howard & Howard

## law for business

### FACSIMILE TRANSMITTAL SHEET

This communication is confidential and intended only for the addressee. Any distribution or duplication of this communication is prohibited. If this facsimile was not intended for you, please telephone us immediately so that we can arrange for its return at our expense.

TO: *Richard Broch*

COMPANY:

FAX NUMBER: *217/253-2296*

PHONE NUMBER:

CLIENT NUMBER: *17379-3*

RE:

FROM: Timothy J. Howard

DATE: *5-6-03*

TOTAL NO. OF PAGES INCLUDING COVER: *2*

SENDER'S TELEPHONE NUMBER: (309) 672-1483

SENDER'S FAX NUMBER: (309) 672-1568

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY

NOTES/COMMENTS:

*CC: Tuscola Furniture*
*First Mid-Illinois Bank (Tom C.)*
*217/359-9889*

HOWARD & HOWARD ATTORNEYS, P.C.
ONE TECHNOLOGY PLAZA, SUITE 600
211 FULTON STREET
PEORIA, ILLINOIS 61602-1350

000047

**RICHARD L.BROCH**
1304 S. Tuscola Blvd.
Tuscola, IL  61953
Phone: 217/ 253-2366
Fax:  217/ 253-2296

## <u>FAX TRANSMITTAL COVER SHEET</u>

TO:   Tim Howard
FROM:  Rick Broch

DATE:   05/19/03

FAX RECEIVER NUMBER:  309-672-1568
NUMBER OF PAGES SENT, INCLUDING COVER SHEET: 2
SPECIAL INSTRUCTIONS: Re: Assignments of Life Insurance Policies

Dear Tim,

As Margaret Stilwell had forgotten about the specifics of the life insurance assignments, I have indicated I would go over those with her to explain exactly where the proceeds would go, for what purposes and in what amounts. In that regard, I want to clear up a couple of questions I have since speaking with her insurance agent, John Lyons  of Atwood.

Mr. Lyons indicated to me originally that their were three assignments as to the 4 million dollar policy : 2 million to T.N.B.,  1.5 million to Citizens Bank in Princeton, 1 million to F.M.I.B.  and $250,000 to Janko Furniture Group.  An earlier assignment in the amount of $500,000 to Janko Financial Group had been released.

When I spoke with you on the telephone, you confirmed these amounts, and stated the assignments in fact overlapped, and were all connected to furniture debt in the amount of $481,000 plus additional expenses.

Mr. Lyons last week in dicated to me that he had been receiving the claims of the assignees, and that Citizens Bank was in fact claiming the 1.5 million dollar assignment, and further indicated to him they were owed the sum of 2 million dollars. This claim could clearly not involve the furniture as we had discussed.  The Janko Furniture Group Claim has now increased to over $500,000.

The purpose for this fax is to inquire as to whether or not you have,  and would be able to forward to me, the assignment documentation for Janko Furniture Group, Citizens Bank and FMIB, so that I can go over with Margaret the exact nature of the assignments. We need to determine the amount still owed to FMIB by JFG as of May 2,



EXHIBIT

B12

2003;  why Princton is now claiming the 1.5 million; and the specifics as to the JFG claimed amount of $500,000 plus. Margaret is interested in taking care of any valid assignment as soon as the insurance money arrives, however needs to have these questions cleared up for her peace of mind. Please call me if you have any questions.

Thank you.    Rick Broch

********CONFIDENTIALITY NOTE ********

THE DOCUMENT ACCOMPANYING THIS TELECOPY TRANSMISSION CONTAINS INFORMATION FROM THE OFFICE OF BROCH & NOLAN, ATTORNEYS AT LAW, WHICH MAY BE CONFIDENTIAL AND/OR LEGALLY PRIVILEGED. THE INFORMATION IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ON THIS TRANSMISSION SHEET.  IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS TELECOPIED INFORMATION IS STRICTLY PROHIBITED, AND THAT THE DOCUMENTS SHOULD BE RETURNED TO THIS FIRM IMMEDIATELY.  IN THIS REGARD, IF YOU HAVE RECEIVED THIS TELECOPY IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE RETURN OF THE ORIGINAL DOCUMENTS TO US AT NO COST TO YOU.



# *Tuscola Furniture Group, LLC*

**Michael M. Janko, CPA, JD**
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-9902
Fax (630) 964-9903

**Richard F. Janko**
**Lawrence W. Bianchi**
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3380
Fax (815) 223-7160
tfg.Peru@insightbb.com

12 May 2003

VIA OVERNIGHT MAIL DELIVERY

Mr. William J. Lyons, LUTCF
District Manager
American General Life Insurance Company
231 N. Main Street
Atwood, IL 61913-0260

RE:    Life Insurance Policy No. 2604663

Dear Mr. Lyons:

Pursuant to your letter of May 6, 2003, Tuscola Furniture Group, LLC ("TFG") and First Mid-Illinois Bank & Trust Company ("Bank"), are jointly making application on the Collateral Assignments they received to secure an obligation under a certain Consignment Agreement dated November 17, 2000 between TFG and Amishland Country Village, Inc.

As itemized on the attached Exhibit A, the total amount owed by Amishland Country Village, Inc. and guaranteed by James and Margaret Stilwell is $512,974.50. This amount includes the amounts that TFG owes the Bank.

Please issue your draft made payable to "Tuscola Furniture Group, LLC and First Mid-Illinois Bank & Trust," and have it delivered to the Bank at 2229 South Neil, Champaign, Illinois 61820, Attn: Thomas J. Chamberlain, Community President. The signature of the Bank officer below acknowledges and confirms this direction.

Upon receipt of this amount, TFG and the Bank will relinquish all Assignments against the proceeds on the life insurance policy number 2604663. Specifically, these are the Assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19, 1999 for $500,000, September 25, 2000 for $1,500,000, and January 11, 2001 for $1,000,000.



**EXHIBIT**

B13



Finally, we have also enclosed a completed Claimant's Statement on the form you provided for both TFG and Janko Financial Group, LLC.

Very truly yours,

Tuscola Furniture Group, LLC and
Janko Financial Group, LLC,
the manager of TFG

By: _Lawrence W. Bianchi_
Lawrence W. Bianchi
Their Authorized Representative

Acknowledgment:

The undersigned, on behalf of First Mid-Illinois Bank & Trust hereby acknowledges and confirms the directions above.

First Mid-Illinois Bank
& Trust

By: _Thomas J. Chamberlain_
Thomas Chamberlain
Community President

Enclosures

cc:    First Mid-Illinois Bank & Trust
       Richard L. Broch, Esq.
       Timothy J. Howard, Esq.
       Richard Heavner, Esq.

g:\j-l\janko financial\tuscola furniture grp\cor\insurance ltr

## TUSCOLA FURNITURE GROUP, LLC (TFG)
### Amounts due from Stilwells/ACV
### As of April 30, 2003

| | Principal | Interest (Prime) + 10 % of Reported Sales | Total |
|---|---|---|---|
| 3/31/03 - 1st Qtr Financials (thru 2/28, transactions consistently 1 month behind) | 404,951.63 | 71,810.39 | 476,762.02 |
| March   (1,359.98 + 1,461.71) | | 2,821.69 | 2,821.69 |
| April   (4,882.40 + 1,414.56) | | 6,296.96 | 6,296.96 |
| | 404,951.63 | 80,929.04 | 485,880.67 |
| $101,780.32 unlocated inventory at cost Unknown sales price certainly higher, TFG entitled to a minimum of 10% fee. | | | 10,178.04 |
| JFG/TFG credit application guaranty claim from Eagle Industries for unauthorized purchases made by Stilwell outside the system. (4,463.91 + 7,250.88) | | | 11,714.79 |
| Legal | | | 5,201.00 |
| | | | 512,974.50 |

Due from Stilwell 4-30-03

5/20/9 31:58P
005807 000149

### Tuscola Furniture Group, LLC  (TFG)
### STILWELL - Inventory Reconciliation

3/31/03                                                                                  404,851.63

COGS deducted from physical count (since sold) but not yet paid for by Stilwell:
    Thru 3/31/03                                               201,896.27
    1st three (3) days of April,  2003                          0.00
                                                                                        (201,896.27)
                                                                                         203,055.36

Inventory count @ 4/3/03 by Cherub Financial                                            (101,275.04)

Shortage                                                                                 101,780.32

RP
5/9/2003

MAY 09 '03 10:45 FR AMERIC GEN LIFE   TO 910157  1173  5170004935800P
005607 000144

**AIG** | **AMERICAN GENERAL**

**Proof of Death - Claimant's Statement**

**American General Life Insurance Company**
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

*To Be Completed By The Beneficiary*

| DECEASED FULL NAME | | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|---|
| James E. Stilwell | | 10/07/54 | Heart Attack | 5/02/03 |

**POLICIES DECEASED HELD WITH THIS COMPANY:**

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | $4,000,000 | | |

I hereby certify that the policy of insurance for the listed policy has been ☐ ENCLOSED ☐ LOST ☐ DESTROYED

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| TUSCOLA FURNITURE GROUP, LLC | | ASSIGNEE / CREDITOR |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| 2220 MARQUETTE RD | PERU | IL | 61354 | (815) 223-3380 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim? ☐ YES ☒ NO   If yes, what amount? $ _____ (Attach copy of assignment)

How do you want proceeds paid? ☒ Lump Sum   *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.   ☐ Settlement Option   If Option, give details: _____

IMPORTANT: Do you wish to receive a completed Form No. 712 (Stmt. of Ins.)   ☐ YES ☒ NO   (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE   *Tuscola Furniture Group, LLC By Its Authorized Representative*   *Lawrence W. Bianchi*

Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number.   CLAIMANT'S S.S. NO.   OR   TAX I.D. NO. # 36-4391423

Note: If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

CERTIFICATION: Under penalties of perjury, I certify that (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

PLEASE SIGN HERE   CLAIMANT'S SIGNATURE   *Tuscola Furniture Group, LLC By Its Authorized Representative*   *Lawrence W. Bianchi*   DATE 5/09/03

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?   SHOW BELOW

*See Attached Letter*

L 2843 Rev0103                     Page 1 of 2



# Tuscola Furniture Group, LLC

Michael M. Janko, CPA, JD
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-9902
Fax (630) 964-9903

Richard F. Janko
Lawrence W. Bianchi
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3380
Fax (815) 223-7160

28 May 2003

Mr. William J. Lyons, LUTCF
District Manager
American General Life Insurance Company
231 N. Main Street
Atwood, IL 61913-0260          VIA FAX (217/578-3292)
                                & OVERNIGHT MAIL

              RE:    Life Insurance Policy No. 2604663

Dear Mr. Lyons:

Please accept this letter as an amendment to my letter dated 12 May 2003. When listing "all Assignments" against the proceeds on the life insurance policy number 2604663, I inadvertently left out an assignment to Tuscola Furniture Group, LLC dated November 21, 2000 for $250,000.

Paragraph four of my letter dated 12 May 2003 is hereby amended to read as follows:

> "Upon receipt of this amount, TFG and the Bank will relinquish all Assignments against the proceeds on the life insurance policy number 2604663. Specifically, these are the assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19, 1999 for $500,000, September 25, 2000 for $1,500,000, November 21, 2000 for $250,000 and January 11, 2001 for $1,000,000."

Please contact me immediately if any further documentation should be needed. Thank you for your assistance.

                    Very Truly Yours,

                    Tuscola Furniture Group, LLC and
                    Janko Financial Group, LLC, the manager of TFG

                    By: _Lawrence W. Bianchi_
                        Lawrence W. Bianchi
                        Their Authorized Representative

cc:    First Mid-Illinois Bank & Trust
       Richard L. Broch, Esq.
       Timothy J. Howard, Esq.
       Richard Heavner, Esq.

EXHIBIT
B/4

May 28, 2003

Claims Department
c/o AIG American General
P. O. Box 4373
Houston, Tx. 77210-4443

Dear Sirs;

I have enclosed four claim forms for the proceeds on life policy #2384389

on the life of James E. Stilwell. Please dispense the proceeds as directed.

I am also returning the check made out to Margaret Stilwell. She and her

attorney have decided that she would like this money to be placed in an interest

bearing checkbook. Please reissue as a checkbook and send to me for delivery.

Thank you for your consideration.

Sincerely,

William John Lyons

EXHIBIT

B 15



Insurance Service Center for:

**American General Life
Insurance Company**

July 10, 2003

MARGARET STILWELL
P O BOX 538
ATWOOD IL 61913-0538

| | |
|---|---|
| Contract Number: | 2604663 |
| Insured: | JAMES STILWELL |
| Claim Number: | 03D00893OLL |

Dear Ms. Stilwell:

Please accept our sincere sympathy in the loss of your husband. Enclosed is our check for $25,354.98 representing your share of the above policy benefits due to you.

Family members should review the beneficiary designation in their policies. If there is an active policy with our Company and a beneficiary change needs to be made, please contact our Customer Services Representatives.

We are enclosing four claim forms for the remaining beneficiaries to complete and return to our office.

We appreciate the opportunity to be of service to you during this time. If we may be of further assistance, please contact our office.

Thank You.
INDIVIDUAL CLAIMS DEPARTMENT

Enclosure -    Check & claim forms

cc:    W0908
       W0090



EXHIBIT
B16

3009

**American General Life Insurance Company**
*Member of American International Group, Inc.*
Service Center • P.O. Box 4373 • Houston, TX 77210-4373 • 1.800.487.5433 • Fax 214.654.6008

0B1



 **AMERICAN GENERAL**

Company

*Insurance Service Center for:*

American General Life Insurance

**DATE:**    July 10, 2003

**TO:**    WILLIAM J LYONS, AGENT

**FROM:**    **Margaret Singh, - Individual Claims Department**

**SUBJECT:**    Contract Number 2604663
Insured - JAMES STILWELL
Claim Number 03D00893OLL

Enclosed is the letter and check, which you will need to deliver to MARGARET STILWELL. The telephone number we have for them is 217-578-3132. We are also enclosing four claimant statements for the remaining beneficiaries to complete. We would like to thank you very much for all your assistance with this claim.

Please complete the bottom of this form and return it to our office so we can document our files.

If you have any questions, please let us know.

Thank You

Enclosure - Check

_____
AGENT

07/18/2003
_____
DATE DELIVERED/MAILED

3009

**American General Life Insurance Company**
*Member of American International Group, Inc.*
Service Center • P.O. Box 4373 • Houston, TX 77210-4373 • 1.800.487.5433 • Fax 214.654.6008



EXHIBIT
B17



AMERICAN
GENERAL

*Insurance Service Center for:*

**American General Life
Insurance Company**

July 10, 2003

MARGARET STILWELL
P O BOX 538
ATWOOD IL 61913-0538

Contract Number:      2604663
Insured:              JAMES STILWELL
Claim Number:         03D00893OLL

Dear Ms. Stilwell:

Please accept our sincere sympathy in the loss of your husband. Enclosed is our check for $25,354.98 representing your share of the above policy benefits due to you.

Family members should review the beneficiary designation in their policies. If there is an active policy with our Company and a beneficiary change needs to be made, please contact our Customer Services Representatives.

We are enclosing four claim forms for the remaining beneficiaries to complete and return to our office.

We appreciate the opportunity to be of service to you during this time. If we may be of further assistance, please contact our office.

Thank You.
INDIVIDUAL CLAIMS DEPARTMENT

Enclosure -   Check & claim forms

cc:     W0908
        W0090

**EXHIBIT**

tabbies®

*25*

3009

0131

**American General Life Insurance Company**
*Member of American International Group, Inc.*
Service Center • P.O. Box 4373 • Houston, TX  77210-4373 • 1.800.487.5433 • Fax 214.654.6008

 **AMERICAN GENERAL**

*Insurance Service Center for:*

**American General Life Insurance Company**

July 10, 2003

MARGARET STILWELL
P O BOX 538
ATWOOD IL 61913-0538

| | |
|---|---|
| Contract Number: | 2604663 |
| Insured: | JAMES STILWELL |
| Claim Number: | 03D00893OLL |

Dear Ms. Stilwell:

Please accept our sincere sympathy in the loss of your husband. Enclosed is our check for $25,354.98 representing your share of the above policy benefits due to you.

Family members should review the beneficiary designation in their policies. If there is an active policy with our Company and a beneficiary change needs to be made, please contact our Customer Services Representatives.

We are enclosing four claim forms for the remaining beneficiaries to complete and return to our office.

We appreciate the opportunity to be of service to you during this time. If we may be of further assistance, please contact our office.

Thank You.
INDIVIDUAL CLAIMS DEPARTMENT

Enclosure -    Check & claim forms

cc:    W0908
       W0090



877-200-0220

3009

0B1

**American General Life Insurance Company**
*Member of American International Group, Inc.*
Service Center • P.O. Box 4373 • Houston, TX  77210-4373 • 1.800.487.5433 • Fax 214.654.6008

08/21/2003  10:00    2175783292              UNITY TOWNSHIP

214-902-5874



**JOHN LYONS, LUTCF**
District Manager
P. O. Box 260
Atwood IL 61913
Bus.: 217-578-3142
Res.: 217-578-3058
Fax: 217-578-3560

Policy # 2604663

8/20/2003

Dear Sirs,

Please Release Haley Stilwell's Share of Contract #
2604663 (Insured James Stilwell) The proceeds
are $1225.83 And should be mailed to me for
delivery. Haley Stilwell's Social Security
Number is 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. Haley's date of birth
is 09/03/86. Thank you for your consideration.

Margaret Stilwell
Margaret J. Stilwell

P.S. Original is being mailed to American General.

**EXHIBIT**
B19

NOV 20 2000 11:14 FR AG-DALLAS SERV CTR    2146545022 TO 912175783560    00083 004803

## POOR ORIGINAL

**AMERICAN GENERAL FINANCIAL GROUP**

**Assignment.**

- ☐ **All American Life Insurance Company (AAL)**, P.O. Box 35844 Dallas, TX 75235-8883
- ☐ **The American Franklin Life Insurance Company (AMFLIC)**, P.O. Box 19520, Springfield, IL 62794-9520
- ☐ **American General Life Insurance Company (AGLI)**, P.O. Box 4373, Houston TX 77210-4373
- ☐ **The Franklin Life Insurance Company (FLIC)**, #1 Franklin Square, Springfield, IL 62713-0001
- ☒ **The Old Line Life Insurance Company of America (OLL)**, P.O. Box 35844, Dallas TX 75235-8883

Members of American General Financial Group. American General Financial Group is the marketing name for American General Corporation and its subsidiaries.

| | |
|---|---|
| **1. CONTRACT IDENTIFICATION**<br><br>☐ Check Here if New Address | You may use this form for multiple contracts that have the same contract owner and require the same signatures. All contracts must be assigned to the same assignee or all contracts released from assignment with same assignee.<br><br>CONTRACT No.: **2604663**<br><br>OWNER: **MARGARET Stilwell**    SSN/TIN OR EIN: **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**<br><br>Address: **218 N. IOWA**<br>**Atwood, IL 61913**<br><br>Phone No.: **(217) 578-3132**<br>INSURED/ANNUITANT (if other than Owner): **James E. Stilwell** |
| **2. ☐ ASSIGNMENT** | For value received, I/we hereby assign and transfer to the named Assignee/Creditor as their interest may appear, the Contract number named above, issued by the Company, upon the life as named above and all moneys now or hereafter payable thereunder, subject to the conditions of said contract, the regulations of the Company and to any lien, charge, or indebtedness thereon now or hereafter existing in favor of the Company.<br><br>Assignee/Creditor Name: _____<br><br>Assignee/Creditor Address: _____ |
| **3. ☒ RELEASE OF ASSIGNMENT** | The consideration for which the Assignment was made, having been fully paid and satisfied, all right, title, and interest of the assignee in the above named Contract issued or assumed by the Company on the above named life is hereby relinquished.<br><br>Assignee/Creditor Name: **JANKO FINANCIAL GROUP LL.C.**<br><br>Assignee/Creditor Address: **2220 MARQUETTA Rd Perry, IL 61354** |
| **4. SIGN HERE FOR ABOVE REQUEST** | This request must be dated and all required signatures must be written in ink, using full legal names.<br><br>To assign this contract, this request must be signed by the person or persons who have the rights of ownership under the terms of the contract. For Corporate Owned contracts, this form must be signed by one officer followed by the officer's title. The request must be accompanied by a piece of corporate letterhead or paper with the corporate seal that has been signed by that officer. For contracts owned by a Partnership, the full name of the partnership should be written followed by the signatures of any partner, other than the Insured. For contracts owned but assigned to a Trustee, Trustee signatures are required as instructed by the trust agreement.<br><br>Under penalty of perjury, the contract owner(s) certify: (1) that the number(s) shown on this form is my (are our) correct social security (or taxpayer identification) number(s); and (2) that I am (we are) not subject to backup withholding under Section 3406(A)(1)(C) of the Internal Revenue Code.<br><br>X _____    _____<br>Signature of Owner    Date    Signature of co-owner    Date<br>(or other party interested in contract)<br><br>To release the assignment of this contract, this request must be signed by the Assignee.<br><br>X **Lawrence W. Bianchi / Authorized Member**    **In favor of Tuscola Furniture Group, LLC** |

*(Handwritten stamp at left, sideways)* Received and Recorded on DEC 0 1 2000 — The Old Line Life Insurance Company of America — ASSIGNMENT / RELEASE OF ASSIGNMENT

**EXHIBIT 30**

NO OVERLAP