E-FILED
Monday, 02 April, 2007   03:47:53 PM
Clerk, U.S. District Court, ILCD

# G  RANTY

TUSCOLA      IL
(City)      (State)

NOVEMBER 17, 2000

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce FIRST MID-ILLINOIS BANK & TRUST, N.A., 1415 S MAIN, P.O. BOX 18, TUSCOLA, IL 61953 (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of TUSCOLA FURNITURE GROUP, LLC

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this XX is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: TUSCOLA FURNITURE GROUP, LLC, LINE OF CREDIT IN THE AMOUNT OF $1,000,000   and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the joint Undersigned to guaranty the obligation.

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions or refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ 300,000.00 (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is XX unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

X _____
RICHARD F JANKO

_____

_____

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-397-2341) FORM M-240  5/20/91 (For Corporate Guarantor use M-250)

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

(page 1 of 2)

6. Whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into and whether resulting in the creation or continuance of Indebtedness, without any consent or approval by the transactions and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or Undersigned any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from impaired by · both before and after revocation of this guaranty, without notice to or approval by the Undersigned): time to time, ance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (i) any accept more extensions or renewals of Indebtedness (whether or not for longer than the original period) or ii) any one or more of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any ny modifica ment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in waiver, adjustment of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or the enforcement any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, otherwise pr y other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any Borrower or an Iebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any evidence of incn collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient failure to obt: perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral creation and  ny release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any security; or a rity; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any collateral secur any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; Indebtedness c by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

(x) any election  ersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor,

7. The Undebtedness, except the defense of discharge by payment in full. Without limiting the generality of pertaining to  the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, the foregoing, ations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability statute of limit available to Bprrower or any other person liable in respect of any Indebtedness, or any setoff which may best Lender to Borrower or any such other person, whether or not on account of a related transaction. available again d expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by The Undersigne for any deficiency remaining after foreclosure of any mortgage or security interest securing applicable law whether or not the liability of Borrower or any other obligor for such deficiency is discharged Indebtednes statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by pursuant t such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. The Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-397-2341) FORM M-240   5/20/91 (For Corporate Guarantor use M-250)

# CONSIGNMENT AGREEMENT

This Consignment Agreement made this *17th* day of *November* 2000 by and between TUSCOLA FURNITURE GROUP, LLC., an Illinois Limited Liability Company, hereafter "TFG" and AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation, hereafter "ACV".

WHEREAS, ACV is in the business of retail sale of Amish made furniture and desires to establish a retail outlet in Tuscola, Illinois but lacks financial resources for acquiring an adequate inventory of Amish furniture, and

WHEREAS, TFG has the financial resources and is willing to purchase an inventory of Amish crafted furniture and consign same with ACV upon the terms and conditions herein, and

WHEREAS, JANKO FINANCIAL GROUP, L.L.C., an Illinois Limited Liability Company, hereafter "JANKO" and ACV are parties to a "Consignment Agreement" dated April 16, 1999, and

WHEREAS, JANKO having the right, without the consent of ACV, to assign its interest in the Cosignment Agreement, has assigned its interest in the Cosignment Agreement dated 4/16/99 to TFG, and

WHEREAS, TFG (as assignee of JANKO) and ACV, desiring to    modify the Cosignment Agreement dated April 16, 1999, by terminating same and entering into this agreement do hereby agree as follows:

## 0.O    THE AGREEMENT:

0.1    The Consignment Agreement dated April 16, 1999 by and between JANKO and ACV is hereby terminated and replaced by this Consignment Agreement, effective as of the date of this agreement.

0.2    ACV shall cooperate with JANKO and TFG in regards to changing the name of the consignor on all documents relating to transactions relating to this agreement.



EXHIBIT
Chamberlain #2
2-8-07  sm

1



000075

1.  **DEFINITIONS**

    1.1   "ACV" means AMISHLAND COUNTRY VILLAGE, INC., an Illinois Corporation the consignee under this Consignment Agreement.

    1.2   "AMISH FURNITURE" herein means (i) originally made and crafted Amish furniture, fully finished, (ii) AMISH style furniture made by others and (iii) any "other furniture" purchased and owned by TFG in an amount not to exceed 3% of the average wholesale replacement cost of total inventory, but does not include crafts, lamps, pictures and accessories other than wood products, whether Amish made or not.

    1.3   "AVERAGE WHOLESALE COST" means the inventory value of the AMISH FURNITURE as determined by QUICK BOOKS software program on a straight line average

    1.4   "BANK" means FIRST MID-ILLINOIS BANK and TRUST OF TUSCOLA, ILLINOIS.

    1.5   "INVENTORY CAP" means the maximum total aggregate amount of the average wholesale cost of Amish Furniture consigned by TFG to ACV.

    1.6   "JANKO" means JANKO FINANCIAL GROUP, L.L.C., an Illinois Limited Liability Company, the manager of TFG.

    1.7   "TFG'S INVESTMENT" means all amounts paid by TFG for AMISH FURNITURE less credits for payments received from sales of AMISH FURNITURE

    1.8   "STILWELL" means JAMES and/or MARGARET STILWELL, the sole Shareholders of ACV.

    1.9   "TFG" means TUSCOLA FURNITURE GROUP, LLC., an Illinois Limited Liability Company, the consigner under this Agreement.

2.  **AGREEMENTS OF TFG**

    2.1   TFG agrees to purchase the existing inventory of Amish furniture now owned by ACV at current wholesale replacement cost and to purchase new Amish furniture selected by ACV, all at wholesale value or cost from time to time during the existence of this Agreement provided that the total amount of purchases shall never exceed $1,250,000.00 except as otherwise allowed herein.

    2.2   TFG will be the owner of such Amish furniture free and clear of all liens and encumbrances except a Security Agreement with BANK in an amount not to exceed 80% of the wholesale value.

2

000076

2.3    TFG will consign the Amish furniture with ACV and with no other party or entity unless with the consent of ACV or pursuant to termination of this Agreement by reason of the default of ACV.

2.4    TFG will pay ACV, or at the direction of ACV, the seller of the Amish furniture all items delivered to an ACV store or warehouse within seven (7) days of demand and TFG'S receipt of proper documentation, i.e. Purchase Order Receipts with corresponding copy of vendor invoices and no more frequently than once every two (2) weeks.

2.5    Wholesale value will be determined and supported by receipts or invoices from suppliers, copies to be provided by STILWELL.

2.6    TFG may increase or waive the inventory cap of $1,250,000.00 limit on the purchase of Amish furniture upon the written request of ACV submitted not earlier than one (1) year from the date of this Agreement and conditioned upon evidence that ACV is current and not in default on any of its financial obligations including all current and long term lenders and tax obligations to State and Federal governmental bodies.

3.    <u>AGREEMENTS OF ACV:</u>

3.1    ACV will sell to TFG its existing inventory of Amish furniture at current wholesale replacement cost and purchase on behalf of TFG additional Amish furniture at wholesale cost from time to time during the term of this Agreement which total wholesale value should never exceed $1,250,000.00 unless increased pursuant to paragraph 2.6 above.

3.2    ACV's purchase at wholesale of Amish furniture on behalf of TFG shall be under the supervision and direction of STILWELL who shall exercise reasonable care and diligence in selecting marketable Amish furniture at fair and reasonable cost.

3.3    ACV will keep, preserve, repair and maintain all Amish furniture in good condition at only the following locations:

(1) <u>1304 Tuscola Blvd., Tuscola, IL. 61953</u>
(2) <u>East Route 36,   Atwood,  IL.    61913</u>
(3) <u>123 N. Main St., Atwood, IL    61913</u>
(4) <u>601 & 603 S. Main, Tuscola, IL  61953</u> ( 1 bldg. occupying 2 lots)

3

and sell and market same in the ordinary course of its business at retail pricing in such amounts as determined by ACV. At all times ownership of the Amish furniture shall be in the name of TFG and ACV will execute, obtain or provide such Bill of Sales, Inventory lists, or other documents as deemed necessary by TFG to evidence its ownership.

3.4    Principal Payments:  ACV will pay or remit to BANK in an account designated by TFG  by the 10th day of the month,  an amount equal to the average wholesale cost  of the items sold during the previous month. Such reductions in the inventory level of Amish furniture may be replaced up to the inventory cap.

3.5    Consignment Payments: For its consignment services, ACV may retain all amounts in excess of average wholesale cost obtained from the sale at retail of the Amish furniture after deducting and paying Bank in an account designated by TFG by the 10th day of the month an amount equal to the previous month's total of:

   a)    10% of retail sale price, exclusive of sales tax;

   b)    interest (at the rate charged by BANK to TFG) on the amount of TFG'S INVESTMENT; and

   c)    all other costs, points, fees, charges by BANK to TFG.

3.6    Exclusive:  ACV will not accept for consignment, sell or lease furniture of any kind except in accordance with this Consignment Agreement, and ACV will not pledge the Amish Furniture or proceeds therefrom as collateral except as required by paragraph 3.17 of this Agreement.

3.7    Product Liability Insurance:  ACV will obtain Product Liability Insurance in the minimum amount of One Million Dollars at its cost, naming TFG as an additional insured with fee tail coverage, with an Insurance Company rated by AM Best of a rating of "A" or better.

3.8    Casualty Insurance:  ACV will insure the Amish furniture against fire, loss, theft, vandalism, damage and other casualty with an insurance company rated by AM Best of a rating A or better at its full insurable value naming TFG and BANK as additional party insured. Said policies will maintain a clause requiring notice to TFG and BANK ten (10 ) days prior to any alteration in terms or cancellation. ACV will furnish evidence of such insurance being in force to TFG and BANK. Any insurance proceeds paid to TFG and BANK in excess of the balance of the obligations owed by ACV to TFG and TFG'S cost for the Amish Furniture shall be the property of ACV and shall be paid over to ACV after the obligations due under this Agreement and Amish furniture costs have been paid in their entirety.

000078

4

3.9    Life Insurance: ACV will maintain life insurance and pay the premiums thereon on JAMES STILWELL in an amount of at least $1,250,000.00 or an amount equal to the Inventory Cap, if higher, with TFG and BANK named as beneficiary with an insurance company rated A or better by AM Best. The life insurance proceeds shall be used first to pay BANK for the amount TFG owes BANK in order to release its lien on the Amish furniture, then to TFG for all Amish furniture owned by TFG at average wholesale cost, less a credit for the amount paid BANK, and any other amounts owed to TFG under this Agreement and any excess life insurance proceeds shall be paid to the Estate of JAMES STILWELL or ACV. Upon payment, TFG will convey title to as much of the Amish furniture free and clear of all liens, as was paid for by the insurance proceeds, to ACV.

3.10    If ACV shall at any time or times hereafter fail to obtain and maintain any of the policies of insurance required above, or fail to pay any premium in whole or in part relating to any such policies, then TFG may, but need not, obtain and cause to be maintained any or all of such policies and pay any part or all of the premiums due thereunder without thereby waiving the said default or any other default by ACV. Any sums so disbursed by TFG shall be additional indebtedness owed by ACV to TFG and shall incur interest at the default rate of 12%.

3.11    ACV shall implement and maintain an inventory and accounting system acceptable to TFG and BANK for the purpose of tracking the purchase and sale and payment of funds pursuant to this Agreement, which shall include, but not be limited to the following:

a)    Physical inventory will be taken by ACV once/month and ACV will do such spot inventories as directed by TFG. TFG may also conduct its own spot, random or complete inventories.

b)    ACV will maintain on a daily basis, a running book inventory.

c)    Whenever inventory records over a quarterly period indicate "inventory shrinkage" has occurred, ACV will pay TFG within five (5) days the amount of SHRINKAGE at average wholesale cost, plus 10% of the sale price of the missing inventory and inventory records will be adjusted in accordance therewith.

d)    ACV will establish and implement a physical coding system of inventory items acceptable to TFG, and every item will be backed by a Bill of Sale, purchase order or paid receipt in connection with its acquisition and a sales receipt in connection with its disposition.

5

000079

3.12    ACV shall pay and be responsible for all expenses for the storage, transportation, handling, sales and distribution of said Amish furniture, as well as all costs incurred by TFG in connection with BANK financing of TFG'S purchase of Amish furniture, including, but not limited to interest, points, fees and other BANK charges incurred to maintain inventory financing by BANK.

3.13    ACV will keep account books and records giving complete information covering all transactions in connection with the purchase, sale, returns and distribution of Amish furniture and payment of the amounts due hereunder, and such books and records shall be open during normal business hours to the inspection of any duly authorized representative of TFG or BANK.

3.14    Inspections: TFG, BANK or their agents shall have the right, at any time and from time to time hereunder, to inspect and examine the Amish furniture and to copy any records relating thereto, provided that such inspection, examination or copying does not unreasonably interfere with ACV's Business.

3.15    ACV will use its best efforts to sell and merchandise Amish furniture promptly and in a profitable manner.

3.16    ACV shall not have any store wide sale of Amish furniture for less than average wholesale cost plus 10% without the consent of TFG except in the case of Amish furniture deemed unmarketable, obsolete or damaged in the opinion of ACV.

3.17    Security Agreement: ACV will execute any and all security agreements and UCC financing statements required by Article 9 of the Uniform Commercial Code, Section 9-114 in order for TFG to perfect a security interest in the Amish Furniture with priority over the creditors of ACV.

4.    TERM

4.1    This Agreement shall remain in effect for ten (10) years from the date of April 16, 1999.

4.2    Not until after April 15, 2004, shall ACV have the right to terminate this Agreement and then only upon thirty (30) days advance written notice to TFG and payment within said 30 days to TFG for the Amish furniture at current wholesale replacement cost or average wholesale cost, whichever is higher and all accrued and delinquent obligations owed by ACV to TFG. In addition, ACV will pay TFG a "residual payment" equal to two times 2% of the average annual gross retail sales of Amish furniture by ACV during the previous five

6

years.    1/8 of said amount shall be paid for the next eight quarters thereafter or until April 15, 2009, which ever occurs first.

.4.3    TFG shall have the right to terminate this Agreement any month after January 1, 2001. Written notice of termination shall be given to ACV 120 days in advance of the date of termination. In the event of termination by TFG, TFG will be   paid within said 120 days the same amounts as in the event of termination by ACV except TFG shall not be entitled to the residual payment.

5.    WARRANTIES AND COVENANTS OF ACV:

5.1    ACV expressly warrants, covenants and agrees, so long as any indebtedness as hereinbefore described remains unpaid to TFG, as follows:

5.2    ACV is (or at time of conveyance will be) the sole owner of the Amish furniture in its existing inventory free from any lien, security interest or encumbrance in favor of any person or entity, has the right to convey its existing inventory of Amish furniture to TFG and will defend the collateral against the claims and demands of all persons.

5.3    Except for sales in the ordinary course of business, ACV shall not sell, assign, transfer, encumber or hypothecate in any manner the Amish furniture.

5.4    ACV is a Corporation duly organized, validly existing and  in good standing under the laws of the State of Illinois. ACV has the power and authority to carry on its business, to enter into this Consignment Agreement and to carry out the provisions hereof.

5.5    ACV is not in violation of, and the execution, delivery and performance of and compliance with this Consignment Agreement, will not result in ACV being in violation of, or in conflict with, or constitute a default under any term or provisions of any mortgage, indenture, contract, agreement, instrument, judgement, decree, order, statute, rule or regulation applicable thereto.

5.6    There are no actions, suits or proceedings pending or to the knowledge of ACV threatened against or affecting ACV at law or in equity or before or by any federal, state, municipal or other governmental department, commissions, board, bureau, agency or instrumentality, domestic or foreign, which involve the possibility of any judgement or liability not fully covered by insurance and which may result in any material adverse change in ACV's business or the operations, properties or assets or in the condition (financial or otherwise) of ACV.

7                                    000081

6.    **CONTINGENCIES AND CONDITIONS:**

6.1    TFG'S obligations under this Agreement are contingent upon:

6.2    TFG obtaining a line of credit in the minimum of 1.0 million dollars from BANK for the purchase of Amish furniture on terms acceptable to TFG and ACV.

6.3    Personal guarantee to TFG by JAMES and MARGARET STILWELL of all funds owed by ACV to TFG and for the obligations of ACV under this Agreement whether to TFG or BANK. In addition, STILWELL, will co-sign and will cause ATWOOD MEAT SERVICE, INC. to co-sign the Security Agreements and UCC Financing Statements referred to in paragraph 3.17.

6.4    Life Insurance on JAMES STILWELL in the amount of at least 1.25 Million Dollars or an amount equal to the Inventory Cap, if higher, with TFG and BANK as beneficiaries to the extent of the amounts owed to them, with an Insurance Company rated "A" or better by AM Best.

6.5    Casualty insurance coverage equal to average wholesale cost on all furniture inventory with TFG and BANK named as an additional insured party with an Insurance Company rated "A" or better by AM Best.

6.6    Product Liability Insurance in an amount of at least One Million Dollars with TFG named as an additional insured party, with an Insurance Company rated "A" or better by AM Best.

6.7    An inventory and accounting system acceptable to TFG and BANK for the purpose of tracking the Amish furniture business and payments due under this Agreement.

**PERFORMANCE:**

7.1    If ACV (1) defaults by failing to pay when due any single installment or payment required to be made to TFG or BANK under the terms of this Consignment Agreement and such default is not cured within ten (10) days of written notice to ACV; or (2) defaults in the performance of any other covenant or agreement hereof and such default is not cured by ACV within thirty (30) days after written notice to ACV (unless the default involves a dangerous condition which shall be cured forthwith); TFG may treat such a default as a breach of this Agreement and TFG shall have any one or more of the following remedies in addition to all other rights and remedies provided at law or in equity: (i) maintain an action for any unpaid amounts; (ii) declare the entire

8

balance due and maintain an action for such amount; (iii) forfeit the ACV's interest this Agreement, retain all sums paid; and with or without notice and without process of law, take possession of said furniture, or any part thereof that remains unsold or in the custody of ACV, and for that purpose may enter any of the premises of ACV to search for or obtain said furniture, and consignee hereby waives any trespass or any rights of action for damages that it might or could have against consignor or its agents by reason of consignor, or its agents, procuring or attempt to procure possession of Amish furniture after forfeiture as aforesaid; or (iv) upon ACV's failure to surrender possession of the Amish furniture to TFG, maintain an action for possession of the Amish furniture under the Illinois Replevin Act.

7.2     If default is based upon the failure to pay sales taxes, insurance, liens or other charges relating to the Amish furniture as provided in this Agreement, TFG may elect to make such payments, which amounts shall become immediately due and payable by ACV to TFG, and if not paid within ten (10) days of demand shall then be payable together with 12% interest per annum.

8.     **DEFAULT, FEES:**

8.1     ACV shall pay all reasonable attorney's fees and costs incurred by TFG in enforcing the terms and provisions of this Consignment Agreement, or in defending any proceeding to which TFG is made a party defendant as a result of the acts or omissions of ACV.

8.2     All rights and remedies given to TFG, shall be distinct, separate, and cumulative, and the use of one or more thereof shall not exclude or waive any other right or remedy allowed by law, unless specifically waived in this Agreement.  No waiver of any breach or default of either party hereunder shall be implied from any omission by the other party to take any action on account of any similar or different breach or default.  The payment or acceptance of money after it falls due after knowledge of any breach of this agreement by TFG, or after the termination of ACV's right of possession of the Amish Furniture hereunder, or after the service of any notice, or after commencement of any suit, or after final judgment for replevin shall not reinstate, continue, or extend this Agreement nor affect any such notice, demand or suit or any right hereunder not herein expressly waived.

9.     **DELINQUENT MONTHLY PAYMENTS:**

9.1     ACV acknowledges that late payments by ACV to TFG of the amounts or other charges due hereunder will cause TFG to incur costs not contemplated by this Agreement, the exact amount of which will be extremely difficult to ascertain.

000083

Such costs include, but are not limited to, processing and accounting charges and late charges which may be imposed upon BANK by the terms of any note, and/or security agreement covering the Amish Furniture. Accordingly, if any installment or any sum due from ACV shall not be received by TFG or TFG'S designee within ten (10) days after said amount is due, then ACV shall pay to TFG a late charge equal to the greater of (i) five percent (5%) per month of such overdue amount, plus any attorney's fees incurred by TFG by reason of ACV's failure to pay and/or other charges due hereunder; or (ii) One Hundred Dollars ($100.00). The parties hereby agree that such late charges represent a fair and reasonable estimate of the cost that TFG will incur by reason of the late payment by ACV. Acceptance of such late charges by TFG shall in no event constitute a waiver of ACV's default with respect to such overdue amount, nor prevent TFG from exercising any of the other rights or remedies granted hereunder.

10.   **SEVERABILITY:**

10.1   Any provisions of this Consignment Agreement which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision hereof, and such other provisions shall remain in full force and effect.

11.   **WAIVER:**

11.1   The waiver by TFG of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition of any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of payment hereunder by TFG shall not be deemed to be a waiver of any preceding breach by ACV of any term, covenant or condition of this Agreement, other than the failure of ACV to pay the particular delinquency so accepted, regardless of the TFG'S knowledge of such preceding breach at the time of acceptance of such delinquent payment.

12.   **NOTICES:**

12.1   All notices and demands which may, or are required to be given by either party to the other hereunder, shall be in writing. All notices and demands by the TFG to the ACV shall be sent by United States Certified or Registered mail, postage prepaid, addressed to ACV at the business address, or to such other places as the ACV may from time to time designate in writing to the TFG or may be personally served upon ACV. All notices and demands by ACV to TFG shall be sent by United States Certified or Registered Mail, postage prepaid, addressed to TFG, 2220 Marquette Road, Peru, IL or to such other person or place or persons or places as the TFG may from time to time designate in writing to the ACV. All notices shall be effective as of the date of receipt or certification. Delivery may also be made by an established national overnight delivery service (such as Federal Express).

**000084**

10

13. **MARGINAL HEADINGS:**

    13.1    The marginal headings and titles to the Paragraphs of this Agreement are not a part of the Agreement and shall have no effect upon the construction or interpretation of any part hereof.

14. **TIME:**

    14.1    Time is of the essence in this Consignment Agreement and each and all of its provisions.

15. **SUCCESSORS AND ASSIGNS; BINDING EFFECT:**

    15.1    The covenants and conditions herein contained shall, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of the parties hereto.

    15.2    ACV may not assign its interest, rights or obligations herein without the consent of TFG.

16. **SUBORDINATION:**

    16.1    Upon the request of TFG, ACV herewith subordinates or will subordinate its rights hereunder to any lien of any Security Agreement by TFG to any bank, or other lending institution now or hereafter placed against the Amish furniture. ACV shall execute upon request a document indicating said subordination. The provisions of this paragraph shall be self-operative and no further instrument of subordination shall be required.

17. **SURVIVAL OF REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS:**

    17.1    TFG and ACV each hereby agree that their respective representations, warranties, covenants and agreements set forth herein shall survive the closing and shall thereafter be fully effective and enforceable.

18. **AGENTS:**

    18.1    TFG'S agent for all matters under this agreement is DICK JANKO, until ACV is notified of a different agent pursuant to paragraph 12.1.

    18.2    ACV's agent for all matters under this Agreement is JAMES STILWELL, until TFG is notified of a different agent pursuant to paragraph 12.1.

**000085**

19.  **ENTIRE AGREEMENT:**

19.1  This Consignment Agreement contains the entire agreement of the parties hereto with respect to the matters covered hereby, and no other agreement, statement or promise made by any party hereto, or to any employee, officer or agent of any party hereto, which is not contained herein, shall be binding or valid.

This Agreement is made ___17___ day, of _____November_____, 2000.

ACV:                                          TFG:

AMISHLAND COUNTRY              TUSCOLA FURNITURE GROUP, LLC.,
VILLAGE, INC.,                          An Illinois Limited Liability Company,
an Illinois Corporation                 By its manager:   JANKO FINANCIAL
                                                GROUP, L.L.C., An Limited Liability
                                                Company,

BY: _____      BY: _____
Printed: JAMES STILLWELL              RICHARD JANKO, Authorized Member
Its: _____President_____          2220 Marquette Road
                                                Peru, IL 61354

JANKO\AMISHLND-TFG.AGR3SA

000086

**AMERICAN GENERAL**
FINANCIAL GROUP

$1,000,000

- [ ] All American Life Insurance Company (AAL), P.O. Box 35844 Dallas, TX 75235-8683
- [ ] The American Franklin Life Insurance Company (AMFLIC), P.O. Box 19520, Springfield, IL 62794-9520
- [ ] American General Life Insurance Company (AGL), P.O. Box 4373, Houston TX 77210-4373
- [ ] The Franklin Life Insurance Company (FLIC), #1 Franklin Square, Springfield, IL 62713-0001
- [X] The Old Line Life Insurance Company of America (OLL), P.O. Box 35844, Dallas TX 75235-8683

Members of American General Financial Group. American General Financial Group is the marketing name for American General Corporation and its subsidiaries.

| | |
|---|---|
| **1. CONTRACT IDENTIFICATION**<br><br>[ ] Check Here if New Address | You may use this form for multiple contracts that have the same contract owner and require the same signatures. All contracts must be assigned to the same assignee or all contracts released from assignment with same assignee.<br><br>CONTRACT No.: 2604663<br><br>OWNER: MARGARet Stilwell     SSN/TIN OR EIN: 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<br><br>Address: 218 N. Iowa<br>Atwood, IL. 61913<br><br>Phone No.: (217) 578-3132     578-3322<br>INSURED/ANNUITANT (if other than Owner): JAmes E. Stilwell |
| **2. [X] ASSIGNMENT** | For value received, I/we hereby assign and transfer to the named Assignee/Creditor as their interest may appear, the Contract number named above, issued by the Company, upon the life as named above and all moneys now or hereafter payable thereunder, subject to the conditions of said contract, the regulations of the Company and to any lien, charge, or indebtedness thereon now or hereafter existing in favor of the Company.<br><br>Assignee/Creditor Name: 1st mid·illinois Bank + Trust (1,000,000)<br><br>Assignee/Creditor Address: POBox 18, 410 S.main Tuscola, IL 61953 |
| **3. [ ] RELEASE OF ASSIGNMENT** | The consideration for which the Assignment was made, having been fully paid and satisfied, all right, title, and interest of the assignee in the above named Contract issued or assumed by the Company on the above named life is hereby relinquished.<br><br>Assignee/Creditor Name: _____<br><br>Assignee/Creditor Address: _____ |
| **4. SIGN HERE FOR ABOVE REQUEST** | This request must be dated and all required signatures must be written in ink, using full legal names.<br><br>To assign this contract, this request must be signed by the person or persons who have the rights of ownership under the terms of the contract. For Corporate Owned contracts, this form must be signed by one officer followed by the officer's title. The request must be accompanied by a piece of corporate letterhead or paper with the corporate seal that has been signed by that officer. For contracts owned by a Partnership, the full name of the partnership should be written followed by the signatures of any partner, other than the Insured. For contracts owned by or assigned to a Trustee, Trustee signatures are required as instructed by the trust agreement.<br><br>Under penalty of perjury, the contract owner(s) certify: (1) that the number(s) shown on this form is my (are our) correct social security (or taxpayer identification) number(s); and (2) that I am (we are) not subject to backup withholding under Section 3406(A)(1)(C) of the Internal Revenue Code. |
| **ASSIGNMENT** | *[signature] Margaret Stilwell 1/11/01*<br>Signature of Owner    Date          Signature of co-owner    Date<br>                                        (or other party interested in contract) |
| **RELEASE OF ASSIGNMENT** | To release the assignment of this contract, this request must be signed by the Assignee. |

LC 6206

Assignee    Date

JAN 29 2001

Received and Recorded on _____
by The Old Line Life Insurance Company
Registrar *[signature]*

**This assignment is recorded subject to a prior collateral assignment executed by the policyowner.**

*EXHIBIT Chamberlain #3 2-8-07 SM*

## THE OLD LINE LIFE Insurance Company of America

ADMINISTRATIVE OFFICES / PO BOX 35844 / DALLAS TX 75235 0844
214 654 6300 / 800 487 5433 / FAX 214 654 6008

January 30, 2001

1ST MID ILLNOIS BANK & TRUST
PO BOX 18
TUSCOLA IL   61953

Re:  Insured, James E Stilwell
     Policy Number   2604663
     Owner, James E Stilwell

```
*********************************
*                               *
*     ASSIGNMENT VERIFICATION    *
*                               *
*********************************
```

The original document submitted to place an assignment on this policy
has been endorsed, recorded and made a part of the policy records.

A copy of this assignment is attached for your records.

If this assignment is released or transferred, please notify us in
writing.

Prepared By:  Title Change Unit
              Policyowner Service Department

Attachment

cc:   W0908 FRAN TONY M CARTER
      W0090 FRAN WILLIAM J LYONS

2303

23/03
     An American General Company


EXHIBIT
Chamberlain 44
2-8-07   Sm



**First
Mid-Illinois
Bank & Trust**

May 12, 2003

Mr. William J. Lyons, LUTCF
District Manager
American General Life Insurance Company
231 N. Main Street
Atwood, IL 61913-0260

Re:    Life Insurance Policy No. 2604663

Dear Mr. Lyons:

Copy

    Pursuant to your letter of May 6, 2003, Tuscola Furniture Group, LLC ("TFG") and First Mid-Illinois Bank & Trust ("Bank"), are jointly making application on the Collateral Assignments they received to secure an obligation under a certain Consignment Agreement dated November 17, 2000 between TFG and Amishland Country Village, Inc.

    As itemized on the attached Exhibit A, the total amount owed by Amishland Country Village, Inc. and guaranteed by James and Margaret Stilwell is $512,974.50 . This amount includes the amounts that TFG owes the Bank.

    Please issue your draft made payable to "Tuscola Furniture Group, LLC and First Mid-Illinois Bank & Trust", and have it delivered to First Mid-Illinois Bank & Trust - 2229 South Neil - Champaign, IL 61820 - ATTN: Thomas J. Chamberlain.  The signature of the Bank officer below acknowledges and confirms this direction.

    Upon receipt of this amount TFG and the Bank will relinquish all Assignments against the proceeds on the life insurance policy number 2604663.  Specifically, these are the Assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19, 1999 for $500,000.00, September 25, 2000 for $1,500,000.00, and January 11, 2001 for $1,000,000.00.



**EXHIBIT**

Chamberlain 5
2-8-07  Sm

000019

Mr. William J. Lyons
May 12, 2003
Page 2

     Finally, we have enclosed a completed Claimant's Statement on the form you provided for both TFG and Janko Financial Group, LLC.

          Very truly yours,

          First Mid-Illinois Bank & Trust

By: _____

          Thomas J. Chamberlain
          Community President

Acknowledgment:

The undersigned, on behalf of Tuscola Furniture Group, LLC and Janko Financial Group, LLC, the manager of TFG hereby acknowledges and confirms the directions above.

          Tuscola Furniture Group, LLC and
          Janko Financial Group, LLC,
          the manager of TFG

By: _____

          Lawrence W. Bianchi
          Their Authorized Representative

Enclosures

Copy

# AIG | AMERICAN GENERAL

**Proof of Death**
**- Claimant's Statement**

**American General Life Insurance Company**
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

To Be Completed By The Beneficiary

## I DECEASED

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 10-07-54 | Heart Attack | 5/02/03 |

POLICIES DECEASED HELD WITH THIS COMPANY:

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | $4,000,000.00 | | |

I hereby certify that the policy of insurance for the listed policy has been ☐ ENCLOSED ☐ LOST ☐ DESTROYED

## II CLAIMANT

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| First Mid-Illinois Bank & Trust | | Assignee/Creditor |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| 2229 South Neil | Champaign | IL | 61820 | (217) 359-9889 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim? ☐ YES ☒ NO — If yes, what amount? $_____ (Attach copy of assignment)

How do you want proceeds paid? ☒ Lump Sum — *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.

☐ Settlement Option — If Option, give details:

IMPORTANT: Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.) ☐ YES ☐ NO (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE: First Mid-Illinois Bank & Trust
BY: *Thomas J. Chamberlain*      Thomas J. Chamberlain, Community President

## III TAXPAYER I.D. NO.

Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number.

| CLAIMANT'S S.S. NO. | OR | TAX I.D. NO. |
|---|---|---|
| : | | 37-0404035 |

Note: If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

CERTIFICATION: Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

PLEASE SIGN HERE:
CLAIMANT'S SIGNATURE: First Mid-Illinois Bank & Trust      DATE 5-12-03
BY: *Thomas J. Chamberlain*      Thomas J. Chamberlain, Community President

## IV MAILING

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED? SHOW BELOW

First Mid-Illinois Bank & Trust
ATTN: Thomas J. Chamberlain, Community President
2229 South Neil
Champaign, IL 61820

L 2843 Rev0103    Page 1 of 2

000021

** TOTAL PAGE.02 **

EXHIBIT A

## TUSCOLA FURNITURE GROUP, LLC (TFG)
### Amounts due from Stilwells/ACV
### As of April 30, 2003

| | Principal | Interest (Prime) + 10 % of Reported Sales | Total |
|---|---|---|---|
| 3/31/03 - 1st Qtr Financials (thru 2/28, transactions consistently 1 month behind) | 404,951.63 | 71,810.39 | 476,762.02 |
| March  (1,359.98 + 1,461.71) | | 2,821.69 | 2,821.69 |
| April    (4,882.40 + 1,414.56) | | 6,296.96 | 6,296.96 |
| | 404,951.63 | 80,929.04 | 485,880.67 |
| $101,780.32 unlocated inventory at cost Unknown sales price certainly higher, TFG entitled to a minimum of 10% fee. | | | 10,178.04 |
| JFG/TFG credit application guaranty claim from Eagle Industries for unauthorized purchases made by Stilwell outside the system. (4,463.91 + 7,250.88) | | | 11,714.79 |
| Legal | | | 5,201.00 |
| | | | 512,974.50 |

Copy

Due from Stilwell 4-30-03.xls

000022

**AMERICAN GENERAL**
FINANCIAL GROUP

$1,000,000

- ☐ All American Life Insurance Company (AAL), P.O. Box 35844 Dallas, TX 75235-8663
- ☐ The American Franklin Life Insurance Company (AMFLIC), P.O. Box 19520, Springfield, IL 62794-9520
- ☐ American General Life Insurance Company (AGL), P.O. Box 4373, Houston TX 77210-4373
- ☐ The Franklin Life Insurance Company (FLIC), #1 Franklin Square, Springfield, IL 62713-0001
- ☒ The Old Line Life Insurance Company of America (OLL), P.O. Box 35844, Dallas, TX 75235-8663

Members of American General Financial Group. American General Financial Group is the marketing name for American General Corporation and its subsidiaries.

| | | |
|---|---|---|
| 1. | **CONTRACT IDENTIFICATION** | You may use this form for multiple contracts that have the same contract owner and require the same signatures. All contracts must be assigned to the same assignee or all contracts released from assignment with same assignee. |
| | ☐ Check Here if New Address | **CONTRACT No.:** 2604663 |
| | | **OWNER:** MARGARET Stilwell    **SSN/TIN OR EIN:** 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 |
| | | **Address:** 218 N. IOWA |
| | | Atwood, IL. 61913 |
| | | **Phone No.:** (217) 578-3132    578-3322 |
| | | **INSURED/ANNUITANT (if other than Owner):** James E. Stilwell |
| 2. ☒ | **ASSIGNMENT** | For value received, I/we hereby assign and transfer to the named Assignee/Creditor as their interest may appear, the Contract number named above, issued by the Company, upon the life as named above and all moneys now or hereafter payable thereunder, subject to the conditions of said contract, the regulations of the Company and to any lien, charge, or indebtedness thereon now or hereafter existing in favor of the Company. |
| | | Assignee/Creditor Name: 1st mid Illinois BANK + Trust (1,000,000) |
| | | Assignee/Creditor Address: P.O. Box 100 S. main Tuscola, IL. 61953 |
| 3. ☐ | **RELEASE OF ASSIGNMENT** | The consideration for which the Assignment was made, having been fully paid and satisfied, all right, title, and interest of the assignee in the above named Contract issued or assumed by the Company on the above named life is hereby relinquished. |
| | | Assignee/Creditor Name:_____ |
| | | Assignee/Creditor Address:_____ |
| 4. | **SIGN HERE FOR ABOVE REQUEST** | This request must be dated and all required signatures must be written in ink, using full legal names. |
| | | To assign this contract, this request must be signed by the person or persons who have the rights of ownership under the terms of the contract. For **Corporate Owned** contracts, this form must be signed by one officer followed by the officer's title. The request must be accompanied by a piece of corporate letterhead or paper with the corporate seal that has been signed by that officer. For contracts owned by a **Partnership**, the full name of the partnership should be written followed by the signatures of any partner, other than the Insured. For contracts owned by or assigned to a **Trustee**, Trustee signatures are required as instructed by the trust agreement. |
| | | Under penalty of perjury, the contract owner(s) certify: (1) that the number(s) shown on this form is my (are our) correct social security (or taxpayer identification) number(s); and (2) that I am (we are) not subject to backup withholding under Section 3406(A)(1)(C) of the Internal Revenue Code. |
| | **ASSIGNMENT** | *Margaret Stilwell* 1/11/01 |
| | | Signature of Owner        Date        Signature of co-owner        Date |
| | | (or other party interested in contract) |
| | **RELEASE OF ASSIGNMENT** | To release the assignment of this contract, this request must be signed by the Assignee. |
| | | 000023 |

COPY

AGLC 0205

Assignee _____ Date _____
JAN 2001

Received and Recorded on ____
by The Old Line Life Insurance Company
Registrar _____

**This assignment is recorded subject to a prior collateral assignment executed by the policyowner.**

# THE OLD LINE LIFE Insurance Company of America

ADMINISTRATIVE OFFICES / PO BOX 35844 / DALLAS TX 75235 0844
214 654 6300 / 800 487 5433 / FAX 214 654 6008

January 30, 2001

1ST MID ILLNOIS BANK & TRUST
PO BOX 18
TUSCOLA IL   61953

Re:  Insured, James E Stilwell
     Policy Number   2604663
     Owner, James E Stilwell

```
***********************************
*                                 *
*      ASSIGNMENT VERIFICATION    *
*                                 *
***********************************
```

The original document submitted to place an assignment on this policy
has been endorsed, recorded and made a part of the policy records.

A copy of this assignment is attached for your records.

If this assignment is released or transferred, please notify us in
writing.

Prepared By:  Title Change Unit
              Policyowner Service Department

Attachment

cc:   WO908 FRAN TONY M CARTER
      WO090 FRAN WILLIAM J LYONS

2303                                              000024

23/03
An American General Company

# AIG | AMERICAN GENERAL

**Proof of Death**
**- Claimant's Statement**

**American General Life Insurance Company**
*Member of American International Group, Inc.*
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

*To Be Completed By The Beneficiary*

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 10/07/54 | Heart Attack | 5/02/03 |

**POLICIES DECEASED HELD WITH THIS COMPANY:**

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | $4,000,000 | | |

I hereby certify that the policy of insurance for the listed policy has been ☐ ENCLOSED    ☐ LOST    ☐ DESTROYED

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| TUSCOLA FURNITURE GROUP, LLC | | ASSIGNEE / CREDITOR |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| 2220 MARQUETTE RD | PERU | IL | 61354 | (815) 223-3380 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim?  ☐ YES  ☒ NO    If yes, what amount? $ _____ ( Attach copy of assignment )

How do you want proceeds paid?  ☒ Lump Sum    *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.    ☐ Settlement Option    If Option, give details: _____

IMPORTANT: Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.)    ☐ YES    (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE    Tuscola Furniture Group, LLC
By Its Authorized Representative    Lawrence W. Bianchi

| Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number. | CLAIMANT'S S.S. NO. | OR | TAX I.D. NO.  # 36-4391423 |
|---|---|---|---|

Note: If the account is in more than one name, see the chart on reverse side for guidelines on which box to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

CERTIFICATION: Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

PLEASE SIGN HERE    CLAIMANT'S SIGNATURE    Tuscola Furniture Group, LLC
By Its Authorized Representative    Lawrence W. Bianchi    DATE  5/09/03

**WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?    SHOW BELOW**

See Attached Letter

L 2843 Rev0103    Page 1 of 2



# *Tuscola Furniture Group, LLC*

Michael M. Janko, CPA, JD
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-9902
Fax (630) 964-9903

Richard F. Janko
Lawrence W. Bianchi
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3380
Fax (815) 223-7160
tfg.Peru@insightbb.com


12 May 2003

VIA OVERNIGHT MAIL DELIVERY

Mr. William J. Lyons, LUTCF
District Manager
American General Life Insurance Company
231 N. Main Street
Atwood, IL 61913-0260

     RE:    Life Insurance Policy No. 2604663

Dear Mr. Lyons:

     Pursuant to your letter of May 6, 2003, Tuscola Furniture Group, LLC ("TFG") and First Mid-Illinois Bank & Trust Company ("Bank"), are jointly making application on the Collateral Assignments they received to secure an obligation under a certain Consignment Agreement dated November 17, 2000 between TFG and Amishland Country Village, Inc.

     As itemized on the attached Exhibit A, the total amount owed by Amishland Country Village, Inc. and guaranteed by James and Margaret Stilwell is $512,974.50. This amount includes the amounts that TFG owes the Bank.

     Please issue your draft made payable to "Tuscola Furniture Group, LLC and First Mid-Illinois Bank & Trust," and have it delivered to the Bank at 2229 South Neil, Champaign, Illinois 61820, Attn: Thomas J. Chamberlain, Community President. The signature of the Bank officer below acknowledges and confirms this direction.

     Upon receipt of this amount, TFG and the Bank will relinquish all Assignments against the proceeds on the life insurance policy number 2604663. Specifically, these are the Assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19, 1999 for $500,000, September 25, 2000 for $1,500,000, and January 11, 2001 for $1,000,000.



**EXHIBIT**

Chamberlain #6
2-8-07 Sm



Finally, we have also enclosed a completed Claimant's Statement on the form you provided for both TFG and Janko Financial Group, LLC.

Very truly yours,

Tuscola Furniture Group, LLC and
Janko Financial Group, LLC,
the manager of TFG

By: _Lawrence W. Bianchi_
Lawrence W. Bianchi
Their Authorized Representative

Acknowledgment:

The undersigned, on behalf of First Mid-Illinois Bank & Trust hereby acknowledges and confirms the directions above.

First Mid-Illinois Bank
& Trust

By: _Thomas J. Chamberlain_
Thomas Chamberlain
Community President

Enclosures

cc:    First Mid-Illinois Bank & Trust
       Richard L. Broch, Esq.
       Timothy J. Howard, Esq.
       Richard Heavner, Esq.

g:\j-l\janko financial\tuscola furniture grp\cor\insurance ltr

## TUSCOLA FURNITURE GROUP, LLC (TFG)
### Amounts due from Stilwells/ACV
### As of April 30, 2003

| | Principal | Interest (Prime) + 10 % of Reported Sales | Total |
|---|---|---|---|
| 3/31/03 - 1st Qtr Financials (thru 2/28, transactions consistently 1 month behind) March   (1,359.98 + 1,461.71) April   (4,882.40 + 1,414.56) | 404,951.63 | 71,810.39 2,821.69 6,296.96 | 476,762.02 2,821.69 6,296.96 |
| | 404,951.63 | 80,929.04 | 485,880.57 |
| $101,780.32 unlocated inventory at cost Unknown sales price certainly higher, TFG entitled to a minimum of 10% fee. | | | 10,178.04 |
| JFG/TFG credit application guaranty claim from Eagle Industries for unauthorized purchases made by Stilwell outside the system. (4,463.91 + 7,250.88) | | | 11,714.79 |
| Legal | | | 5,201.00 |
| | | | 512,974.50 |

Due from Stilwell 4-30-03

**Tuscola Furniture Group, LLC  (TFG)**
**STILWELL - Inventory Reconciliation**

*3/31/03*

404,951.63

COGS deducted from physical count (since sold) but not yet paid for by Stilwell:
   Thru 3/31/03                            201,896.27
   1st three (3) days of April,  2003           0.00

(201,896.27)
203,055.36

Inventory count @ 4/3/03 by Cherub Financial

(101,275.04)

*Shortage*

101,780.32

*RP*
*5/9/2003*





**Proof of Death**
**- Claimant's Statement**

**American General Life Insurance Company**
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

*To Be Completed By The Beneficiary*

**I DECEASED**

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 10/07/54 | Heart Attack | 5/02/03 |

POLICIES DECEASED HELD WITH THIS COMPANY:

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | $4,000,000 | | |

I hereby certify that the policy of insurance for the listed policy has been ☐ ENCLOSED  ☐ LOST  ☐ DESTROYED

**II CLAIMANT**

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| TUSCOLA FURNITURE GROUP, LLC | | ASSIGNEE / CREDITOR |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| 2220 MARQUETTE RD | PERU | IL | 61354 | (815) 223-3380 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim?  ☐ YES  ☒ NO   If yes, what amount? $____  ( Attach copy of assignment )

How do you want proceeds paid?  ☒ Lump Sum  *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.   ☐ Settlement Option   If Option, give details:____

IMPORTANT: Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.)  ☐ YES  ☒ NO   (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE   *Tuscola Furniture Group, LLC*   *By Its Authorized Representative*   *Lawrence W. Bianchi*

**III TAXPAYER I.D. NO.**

Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number.   | CLAIMANT'S S.S. NO. | OR | TAX I.D. NO.  # 36-4391423

Note: If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

CERTIFICATION: Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

PLEASE SIGN HERE   | CLAIMANT'S SIGNATURE  *Tuscola Furniture Group, LLC  By Its Authorized Representative  Lawrence W. Bianchi* | DATE  5/09/03

**IV MAILING**

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?  SHOW BELOW

*See Attached Letter*

L 2843 Rev0103                Page 1 of 2

# Janko Financial Group, L.L.C.

*Real Estate Investments and Financial Management*

**Michael M. Janko, CPA, JD**
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-9902
Fax (630) 964-9903
Rp@jankofinancial.com

*[handwritten]* Queen Letters Jo day By Ray 6/18

**Richard F. Janko**
**Lawrence W. Bianchi**
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3380
Fax (815) 223-7160
Jfg.peru@insightbb.com

11 June 2003

Ray Sawicki, Director of Claims
American General Life
6363 Forrest Park Rd.
Dallas, TX 75235-5460

**VIA FAX (214/654-6047) &**
**REGULAR MAIL**

RE:    LIFE INSURANCE POLICY No. 2604663

Dear Mr. Sawicki:

Thank you for the opportunity to provide a further explanation for a rather complex situation. Enclosed are copies of the following letters that I will reference in this correspondence:

> **12 May 2003 -** Letter to William J. Lyons, District Manager for AIG from Lawrence W. Bianchi, Authorized Representative for Tuscola Furniture Group, LLC & Janko Financial Group, LLC (letter acknowledged by Thomas Chamberlain, Community President for First Mid-Illinois Bank & Trust);

> **12 May 2003 -** Letter to William J. Lyons, District Manager for AIG from Thomas Chamberlain, Community President for First Mid-Illinois Bank & Trust (letter acknowledged by Lawrence W. Bianchi, Authorized Representative for Tuscola Furniture Group, LLC & Janko Financial Group, LLC);

> **28 May 2003 -** Letter to William J. Lyons, District Manager for AIG from Lawrence W. Bianchi, Authorized Representative for Tuscola Furniture Group, LLC & Janko Financial Group, LLC.

**On 16 April 1999,** Janko Financial Group (JFG), LLC entered into a Consignment Agreement for the retailing of Amish Furniture with Amishland Country Village, Inc. and guaranteed personally by James and Margaret Stilwell. Section 3.9 of this original Consignment Agreement required that JFG and their lender, First Mid-Illinois Bank & Trust (FMIB), receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $2,000,000.

**On 19 April 1999,** JFG received an assignment of life insurance in the amount of $500,000 from Margaret Stilwell, owner of policy number 2604663 with James Stilwell as the insured. However, it was not until **25 September 2000** that JFG received a second assignment of life insurance for the same policy in the amount of $1,500,000 from Margaret Stilwell.



EXHIBIT
Chamberlain #7
2-8-07 SM



On 16 November 2000, JFG signed an Assignment & Assumption Agreement with a newly formed LLC, Tuscola Furniture Group (TFG), LLC. This new entity is owned 70% by JFG with JFG acting as managing member. This agreement specifically included and lists any rights to insurance assignments relating to the original Consignment Agreement.

On 17 November 2000, TFG entered into a new Consignment Agreement with Amishland Country Village, Inc and guaranteed personally by James and Margaret Stilwell. This new agreement modified and replaced the previous agreement. Once again, Section 3.9 of the new Consignment Agreement required that TFG and their lender FMIB receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $1,250,000.

On 20 November 2000, in support of the Assignment & Assumption Agreement between JFG & TFG, JFG signed a release of assignment on policy number 2604663 "**In favor of Tuscola Furniture Group, LLC."** This release was a transfer of all rights of insurance assignment from JFG to TFG.

On 21 November 2000, TFG received an assignment of life insurance in the amount of $250,000 from Margaret Stilwell, owner of policy number 2604663 with James Stilwell as the insured. Then, on 11 January 2001, FMIB received an assignment of life insurance for the same policy in the amount of $1,000,000 from Margaret Stilwell.

The preceeding chronology of events resulted in the following assignments from Margaret Stilwell on policy number 2604663:

> Tuscola Furniture Group, LLC - $2,000,000 (assignment transferred to Tuscola Furniture Group, LLC via Agreement dated 16 November 2000 and Release dated 20 November 2000);

> Tuscola Furniture Group, LLC - $250,000 (21 November 2000);

> First Mid-Illinois Bank & Trust - $1,000,000 (11 January 2001).

Therefore, the life insurance assignments received from Margaret Stilwell on policy number 2604663 in satisfaction of the requirements of the Consignment Agreements (dated 16 April 1999 and 17 November 2000) totaled **$3,250,000**.

These events lead us to the claim being made jointly by TFG and FMIB to American General Life. As documented in the information submitted by JFG, TFG and FMIB, a joint claim is being made for $512,974.50 in conjunction with the obligations of Amishland Country Village, Inc. and James and Margaret Stilwell per the Consignment Agreement date 17 November 2000. The payment of this claim in the amount of $512,974.50 would release all assignments to JFG, TFG and FMIB which total $3,250,000. Mr. Sawicki, as we discussed I believe that a review of the enclosed letters dated 12 May 2003 and 28 May 2003, provide American General Life with releases for all assignments totaling $3,250,000 upon receipt of the claim amount of $512,974.50.



I apologize for the complex nature of this letter. However, I do believe that I have provided a factual summary of the situation. Also, I would be glad to answer any questions that you might have on this matter. In any event please contact me after your legal department has completed their review. As I am sure you can appreciate, all parties concerned are anxiously awaiting payment of our claim.

Thank you for your kind attention.

Sincerely,

Lawrence W. Bianchi/ Authorized Representative
Tuscola Furniture Group, LLC and
Janko Financial Group, LLC, the manager of TFG
:bm

Enclosures

cc:    Dick Janko
       Mike Janko
       Tom Chamberlain, FMIB
       Tim Howard, Attorney at Law



*Insurance Service Center for:*

**American General Life
Insurance Company**

June 26, 2003

FIRST MID-ILLINOIS BANK & TRUST
ATTN: THOMAS CHAMBERLAIN
2229 SOUTH NEIL
CHAMPAIGN IL 61820-2001

Contract Number:      2604663
Insured:                    JAMES STILWELL
Claim Number:         03D00893OLL

DEAR MR. CHAMBERLAIN:

Enclosed is our check for $512,974.50 representing payment of benefits payable to Tuscola Furniture Group, LLC and First Mid-Illinois Bank and Trust..

> TOTAL PAYABLE                                     $512,974.50

We appreciate the opportunity to be of service to you during this time.  If we may be of further assistance, please contact our office.

Thank You.
INDIVIDUAL CLAIMS DEPARTMENT

Enclosure -  Check

cc:    W0908
       W0090



3009

0131

AMERICAN GENERAL LIFE INSURANCE COMPANY
HOUSTON TX

ENDORSEMENT OF PAYEE INDICATES
NO BANKRUPTCY OR INSOLVENCY
PROCEEDINGS PENDING

51-44/119

| S.S#/CORP.TAX ID NO. | POLICY/AG__ NO. | INSURED | |
|---|---|---|---|
| CP117 | 2604663 | STILWELL, JAMES | |

Check No.: 0005134183
RFP No.: 00061187
06/27/2003

PAY FIVE HUNDRED TWELVE THOUSAND NINE HUNDRED SEVENTY FOUR
DOLLARS AND .50 CENTS**

*********$512,974.50

TO
THE
ORDER
OF

TUSCOLA FURNITURE
LLC & FIRST MID-ILLINOIS BANK
AND TRUST

VOID AFTER NINETY DAYS

FLEET BANK
HARTFORD          CT

AUTHORIZED SIGNATURE

⑆000513 4183⑆ ⑉011900445⑉          62750⑈

## LOAN SYSTEM - CREDIT - PAYOFF (CLIENT DEFINED)

ACCOUNT NAME   Tuscola Furniture Group, LLC

DATE 7 / 3 / 200

PREPARED BY   Tom Chamberlain

AMOUNT

$        8 1 6 6 0 3 7

ACCOUNT NUMBER

*  2 1 5 0 0 9 5 3 8

385



DEPOSIT TICKET
NAME Tuscola Furniture Group, LLC
ACCOUNT NO. 894-418-1
DATE 7-3-2003

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL
ENDORSE & LIST CHECKS SEPARATELY OR ATTACH LIST

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| TOTAL CASH | | |
| CHECKS | | |
| 1 Insurance | | |
| 2 Proceeds | 512974 | 50 |
| 3 | | |
| 4 Less: | | |
| 5 Loan Payoff | | |
| 6 215009387 | 81660 | 37 |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| TOTAL FROM ATTACHED LIST | | |
| TOTAL | 431314 | 13 |

First
Mid-Illinois
Bank & Trust
Mattoon, Illinois 61938

70-207/711
BRANCH 3

CHECKS AND OTHER ITEMS ARE RECEIVED
FOR DEPOSIT SUBJECT TO THE PROVISIONS
OF THE UNIFORM COMMERCIAL CODE AND

TOTAL
ITEMS

$        4 3 1 3 1 4 1 3

⑉071 1020 76⑉          009          000003

AMERICAN GENERAL LIFE INSURANCE COMPANY

DATE
06/27/2003

CHECK NO
0005134183

TUSCOLA FURNITURE
LLC & FIRST MID-ILLINOIS BANK
AND TRUST

| EXPLANATION | AMOUNT |
|---|---|
| 2619110I16<br><br>CLAIM NUMBER: 03D0089300LL<br>CLAIM PROCEEDS-------------------- | 512,974.50 |

| INSURED | POLICY NUMBER | CHECK AMOUNT |
|---|---|---|
| STILWELL, JAMES | 2604663 | $512,974.50 |

THIS DOCUMENT CONTAINS A CUSTOM COLORED BACKGROUND AS A SECURITY FEATURE

AMERICAN GENERAL LIFE INSURANCE COMPANY
HOUSTON  TX

ENDORSEMENT OF PAYEE INDICATES
NO BANKRUPTCY OR INSOLVENCY
PROCEEDINGS PENDING

51-44/119

S.S#/CORP.TAX ID NO.  POLICY/AGENT NO.         INSURED

P117                2604663          STILWELL, JAMES

Check No.: 0005134183
RFP No.:    00061187
              06/27/2003

AY  FIVE HUNDRED TWELVE THOUSAND NINE HUNDRED SEVENTY FOUR
DOLLARS AND 50 CENTS**

TUSCOLA FURNITURE
LLC & FIRST MID-ILLINOIS BANK
AND TRUST

**********$512,974.50
VOID AFTER NINETY DAYS

O
HE
RDER
F

LEET BANK
ARTFORD              CT

AUTHORIZED SIGNATURE

000004



## First
## Mid-Illinois
## Bank & Trust

FAX TRANSMITTAL

DATE: ___7-3-03___

PLEASE DELIVER THE FOLLOWING PAGES TO:

NAME: __Mike, Dick & Larry__

COMPANY: __Janko Financial Group__

FAX NUMBER: __Mike: 630-964-9903    Dick & Larry: 815-223-7160__

FROM: __Tom Chamberlain__

SENDER FAX #: __(217) 359-9889__

### ***   IMPORTANT NOTICE  ***

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH
IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL
AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE
IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR
DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT
ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY
PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US
IMMEDIATELY BY TELEPHONE SO THAT WE MAY ARRANGE TO RETRIEVE THIS TRANSMISSION
AT NO COST TO YOU.  THANK YOU FOR YOUR COOPERATION.

We are transmitting ___2___ pages, including this cover page.  If
you do not receive all of the pages, please call me as soon as
possible at: (217) 359-9837 or TOLL FREE (888) 367-8451.

COMMENTS:

Matt delivered check just fine.  We paid off the

entire loan balance of $81,660.37 and deposited the balance

of $431,314.13 to your checking account #894-418-1

Loan Payoff:  $81,020.00 Principal, plus $480.00 in legal fees

plus $160.37 in accrued interest.

000007

2229 South Neil, Champaign, IL 61820
(217) 359-9837  FAX (217)