IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| MARGARET J. STILWELL, HALEY STILWELL, HEIDI STILWELL, JAMIE STILWELL, MEGAN STILWELL, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 05 CV 02160 |
| v. | ) ) ) | Honorable Chief Judge Michael P. McCuskey |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) | Magistrate Judge David G. Bernthal |
| Defendants. | ) ) | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) ) | |
| FIRST MID ILLINOIS BANK & TRUST, TUSCOLA FURNITURE GROUP, LLC, and JANKO FINANCIAL GROUP, LLC, | ) ) ) ) | |
| Third-Party Defendants. | ) ) | |

## AMERICAN GENERAL LIFE INSURANCE COMPANY'S FIRST REQUEST FOR ADMISSIONS OF FACT AND GENUINENESS OF DOCUMENTS UPON THIRD PARTY DEFENDANT CREDITORS, FIRST MID ILLINOIS BANK AND TRUST, TUSCOLA FURNITURE GROUP LLC, AND JANKO FINANICAL GROUP, LLC

Defendant/Third Party Plaintiff, American General Life Insurance Company, by its attorneys and pursuant to Rule 36 of the Federal Rules of Civil Procedure, direct the following request for admissions to Third party Defendant Creditors, First Mid Illinois Bank and Trust (First Mid), Tuscola Furniture Group LLC ("TFG"), and Janko Financial Group, LLC ("Janko" or "JFG"), and requests that they answer same in the manner and within the time provided by Rule 36.

337843.1



EXHIBIT
F2

**REQUEST NO. 1:**   James E. Stilwell was a shareholder, director and the President of Amishland Country Village, Inc. ("ACV")

**ANSWER**:

**REQUEST NO. 2:**   Margaret Stilwell was a shareholder, director and the Vice President of ACV.

**ANSWER:**

**REQUEST NO. 3**:   On or about October 27, 1998, the Old Line Life Insurance Company of America issued Policy No. 2604663 ("the Policy") with a face amount of $4,000,000 to James Stilwell.

**ANSWER**:

**REQUEST NO. 4:**   Attached to this pleading as Exhibit 1 is a true and correct copy of the Policy.

**ANSWER**:

**REQUEST NO. 5:**   Margaret Stilwell was the owner and identified as a 60% beneficiary under the Policy.

**ANSWER:**

**REQUEST NO. 6:**   Plaintiffs, Haley Stilwell, Heidi Stilwell, Jamie Stilwell and Megan Stilwell were each named 10% beneficiaries under the Policy.

**ANSWER:**

**REQUEST NO. 7:**   ACV made premium payments to fund the Policy.

**ANSWER:**

**REQUEST NO. 8:**    The Policy was purchased to assist in funding business expenses related to ACV.

**ANSWER:**

**REQUEST NO. 9:**    The Policy allowed the policyholder to make third-party assignments of the Policy.

**ANSWER:**

**REQUEST NO. 10:**    The Policy contained the following provision:

**Assignment**

> "No assignment of this policy will be binding on us until filed with us in writing and recorded by us.  No assignment will affect any payment we made before we recorded the assignment.  We will not be responsible for the validity of an assignment.
>
> All rights of the owner and any revocable beneficiary are subject to the rights of any assignee on record with us.

**ANSWER:**

**REQUEST NO. 11**:    On or about October 27, 1998, the Old Line Life Insurance Company of America General, issued a separate policy, Policy No. 2384339 ("the Personal Policy") with a face amount of $1,000,000 to James Stilwell.

**ANSWER:**

- 3 -

**REQUEST NO. 12:**   Margaret Stilwell was the owner and a named beneficiary under the $1,000,000 Personal Policy.

**ANSWER:**


**REQUEST NO. 13:**  On April 19, 1999, Margaret Stilwell executed an assignment under the Policy in the amount of $500,000 to Janko Financial Group LLC ("Janko" or "JFG").

**ANSWER:**

**REQUEST NO. 14:**  Attached to this pleading as Exhibit 2 is a true and correct copy of the April 19, 1999 assignment to Janko  executed by Margaret Stilwell.

**ANSWER:**

**REQUEST NO. 15:**   On or about May 14, 1999, American General forwarded correspondence to Janko, titled "Assignment Verification," which advised, in part, that "the original document submitted to place an assignment on this policy has been endorsed, recorded and made a part of the policy records."

**ANSWER:**

**REQUEST NO. 16:**  A true and correct copy of American General's May 14, 1999 assignment verification is attached to this pleading as Exhibit 3.

**ANSWER:**

**REQUEST NO. 17:**   On September 25, 2000, Margaret Stilwell executed another assignment under the Policy in the amount of $1,500,000.

337843.1

**ANSWER**:

**REQUEST NO. 18:** Attached to this document as Exhibit 4 is a true and correct copy of the assignment executed by Margaret Stilwell on September 25, 2000 in favor of Janko.

**ANSWER**:

**REQUEST NO. 19:** On or about October 3, 2000, American General forwarded correspondence to Janko, titled "Assignment Verification," which advised, in part, that "the original document submitted to place an assignment on this policy has been endorsed, recorded and made a part of the policy records."

**ANSWER**:

**REQUEST NO. 20:** Attached to this pleading as Exhibit 5 is American General's October 3, 2000 Assignment Verification.

**ANSWER**:

**REQUEST NO. 21**: The Assignments that Margaret Stilwell executed on April 19, 1999 and September 25, 2000 provide, in part:

> F.   The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity of the amount of the Liabilities or the existence of any default therein, or the filing of any notice under Paragraph E(2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee.   The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the Insurer.   Checks for all or any part of the

- 5 -

337843.1

sums payable under the Policy and assigned therein, shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be requested by the Assignee.

**ANSWER:**

**REQUEST NO. 22:** On November 16, 2000, Tuscola Furniture Group, LLC ("TFG") and Janko executed an Assignment and Assumption Agreement relating to ACV.

**ANSWER:**

**REQUEST NO. 23:** A true and correct copy of the Assignment and Assumption Agreement is attached to this pleading as Exhibit 6.

**ANSWER**:

**REQUEST NO. 24:** On November 17, 2000, TFG and Janko executed an Assignment in favor of First Mid-Illinois Bank & Trust.

**ANSWER:**

**REQUEST NO. 25:** A true and correct copy of the November 17, 2000 Assignment from TFG/Janko to First Mid-Illinois Bank & Trust is attached to this pleading as Exhibit 7.

**ANSWER**:

**REQUEST NO. 26**: On November 17, 2000, TFG and ACV entered into a consignment agreement.

**ANSWER**:

337843.1

**REQUEST NO. 27**:  Attached to this pleading as Exhibit 8 is a true and correct copy of the November 17, 2000 Consignment Agreement between TFG and ACV.

**ANSWER**:

**REQUEST NO. 28**:  The November 17, 2000 Consignment Agreement was executed by James Stilwell in his capacity as the President of ACV.

**ANSWER:**

**REQUEST NO. 29**:  The Consignment Agreement provides, in part:

> 3.9    Life Insurance:  ACV will maintain life insurance and pay the premiums thereon on James Stilwell in the amount of at least $1,250,000 or an amount equal to the inventory cap, if higher, with TFG and Bank named as beneficiary with an insurance company rated A or better by AM Best.  The life insurance proceeds shall be used first to pay Bank for the amount TFG owes Bank in order to release its lien on the Amish furniture, then to TFG for all Amish furniture owned by TFG at average wholesale cost, less a credit for the amount paid Bank, and any other amounts owed to TFG under this agreement and any excess life insurance proceeds shall be paid to the Estate of James Stilwell or ACV.  Upon payment, TFG will convey title to as much of the Amish furniture free and clear of all liens, as was paid for by the insurance proceeds, to ACV.

**ANSWER**:

**REQUEST NO. 30**:  Section 1.3 of the Consignment Agreement provides that "BANK" means FIRST MID ILLINOIS BANK and TRUST OF TUSCOLA, ILLINOIS.

**ANSWER:**

**REQUEST NO. 31**: On November 17, 2000, James Stilwell and Margaret Stilwell executed a Guaranty related to the Consignment Agreement dated November 17, 2000.

337843.1

**ANSWER:**

**REQUEST NO. 32**:  Attached to this pleading as Exhibit 9 is a true and correct copy of the Guaranty executed by Margaret Stilwell and James Stilwell on November 17, 2000.

**ANSWER**:

**REQUEST NO. 33**:  The Guaranty executed by Margaret and James Stilwell provides that "TFG shall have the right to proceed against the Guarantor hereunder following any breach or default by ACV without first proceeding against ACV and without notice to or demand on ACV."

**ANSWER**:

**REQUEST NO. 34:**  On November 17, 2000, acting as the President of ACV, James Stilwell acknowledged receipt of a Notice from TFG which provides, in part:

> Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interest in your collateral. ...

**ANSWER:**

**REQUEST NO. 35:**  Attached to this pleading as Exhibit 10 is a true and correct copy of the notice executed by James Stilwell on November 17, 2000.

**ANSWER:**

**REQUEST NO. 36:**  TFG did not purchase insurance coverage at the expense of ACV or at the expense of the Stilwells.

- 8 -

**ANSWER:**

**REQUEST NO. 37** :  On or about November 20, 2000 Lawrence Bianchi executed a release of assignment on behalf of Janko "in favor of [TFG]."

**ANSWER:**

**REQUEST NO. 38**:  Attached to this pleading as Exhibit 11 is a true and correct copy of the release of assignment document executed by Lawrence Bianchi on or about November 20, 2000.

**ANSWER:**

**REQUEST NO. 39**:  On or about December 4, 2000 American General forwarded correspondence to Janko titled "Release of Assignment Verification," which advised, in part, that "the original document submitted to release the assignment on this policy has been endorsed, recorded and made a part of the policy records."

**ANSWER:**

**REQUEST NO. 40**:  Attached to this pleading as Exhibit 12 is a true and correct copy of the "Release of Assignment Verification."

**ANSWER:**

**REQUEST NO. 41**:  On or about November 21, 2000, Margaret Stilwell executed an Assignment under the Policy in the amount of $250,000 in favor of TFG.

**ANSWER:**

337843.1

**REQUEST NO. 42:**    Attached to this pleading as Exhibit 13 is a true and correct copy of the November 21, 2000 assignment executed by Margaret Stilwell in favor of TFG.

**ANSWER**:

**REQUEST NO. 43:**    On or about December 4, 2000 American General forwarded correspondence to TFG titled "Assignment Verification," which advised, in part, that "the original document submitted to place an assignment on this policy has been endorsed, recorded and made a part of the policy records."

**ANSWER**:

**REQUEST NO. 44:**    Attached to this pleading as Exhibit 14 is American General's December 4, 2000 Assignment Verification.

**ANSWER**:

**REQUEST NO. 45:**    On or about January 11, 2001, Margaret Stilwell executed an Assignment under the Policy to First Mid in the amount of $1,000,000.

**ANSWER**:

**REQUEST NO. 46:**    A true and correct copy of the $1,000,000 assignment from Margaret Stilwell to First Mid is attached at Exhibit 15.

**ANSWER**:

- 10 -

**REQUEST NO. 47:**  On or about January 30, 2001, American General forwarded correspondence to Janko, titled "Assignment Verification," which advised, in part, that "the original document submitted to place an assignment on this policy has been endorsed, recorded and made a part of the policy records."

**ANSWER:**

**REQUEST NO. 48:**  Attached to this pleading as Exhibit 16 is a true and correct copy of American General's January 30, 2001 Assignment Verification.

**ANSWER:**

**REQUEST NO. 49:**  The insured, James E. Stilwell, died on May 2, 2003.

**ANSWER:**

**REQUEST NO. 50:**  On or about May 2, 2003, American General forwarded correspondence to Margaret Stilwell which acknowledged the death of James Stilwell.

**ANSWER:**

**REQUEST NO. 51**:  Attached to this pleading as Exhibit 17 is a true and correct copy of American General's May 2, 2003 correspondence to Margaret Stilwell.

**REQUEST NO. 52:**  On or about May 6, 2003, Margaret Stilwell submitted an executed claim form under the Personal Policy.

**ANSWER:**

**REQUEST NO. 53:** At no time did Margaret Stilwell forward an executed claim form under the Policy.

**ANSWER:**

**REQUEST NO. 54:** On May 12, 2003, First Mid submitted to American General a completed claim form on behalf of First Mid, TFG, and Janko.

**ANSWER:**

**REQUEST NO. 55:** With the completed claim form, First Mid also submitted correspondence to American General dated May 12, 2003, which states, in part:

> ... Tuscola Furniture Group, LLC ("TFG") and First Mid-Illinois Bank and Trust ("Bank"), are jointly making application on the collateral assignments they received to secure an obligation under a certain consignment agreement dated November 17, 2000 between TFG and Amish Land Country Village, Inc. As itemized on the attached Exhibit A, the total amount owed by Amish Land Country Village, Inc. and guaranteed by James and Margaret Stilwell is $512,974.50. This amount includes the amounts that TFG owes the Bank. Please issue your draft made payable to Tuscola Furniture Group, LLC and First Mid-Illinois Bank and Trust, and have it delivered to First-Mid Illinois and Trust – 229 South Neil – Champaign Illinois 61820 – attention: Thomas J. Chamberlain. The signature of the bank officer below acknowledges and confirms this direction.
>
> Upon receipt of this amount TFG and the Bank will relinquish all assignments against the proceeds on the life insurance policy no. 2604663. Specifically, these are the assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19, 1999 for $500,000, September 25, 2000 for $1,500,000, and January 11, 2001 for $1,000,000.
>
> Finally we have enclosed and completed claimants statement on the form you provided for both TFG and Janko Financial Group, LLC.

337843.1

**ANSWER:**

**REQUEST NO. 56**:  A  true  and  correct  copy  of  the  Bank's  May  12,  2003 correspondence and attachments are attached to this pleading as Ex. 18.

**ANSWER**:

**REQUEST NO. 57:**  The May 12, 2003 cover letter was executed on behalf of the Bank by Thomas J. Chamberlain.

**ANSWER:**

**REQUEST NO. 58**:  The May 12, 2003 cover letter from First Mid to American General was also signed by Lawrence W. Bianchi on behalf of both TFG and Janko to acknowledge and affirm the direction expressed by the Bank.

**REQUEST NO. 59:**   On or about May 12, 2003, Lawrence W. Bianchi, acting as authorized  representative  of  both  TFG  and  Janko,  forwarded  a  completed  claim  form  and correspondence to American General.

**ANSWER:**

**REQUEST NO. 60:**  A true and correct copy of the May 12, 2003 correspondence and attachments sent to American General by TFG and Janko is attached to this pleading as Exhibit 19.

**ANSWER:**

**REQUEST NO. 61:**  The  May  12,  2003  correspondence  from  TFG  and  Janko  to American General states, in part:

- 13 -

... Tuscola Furniture Group, LLC ("TFG") and First Mid- Illinois Bank & Trust Company ("Bank"), are jointly making application on the Collateral Assignments they received to secure an obligation under a certain Consignment Agreement dated November 17, 2000 between TFG and Amishland Country Village, Inc.

**ANSWER:**

**REQUEST NO. 62**:    The May 12, 2003 correspondence from TFG and Janko to American General stated that "the amount owed by Amishland Country Village, Inc. and guaranteed by James and Margaret Stilwell is $512,974.50.  This amount includes the amounts that TFG owes the Bank."

**ANSWER**:

**REQUEST NO. 63:**    TFG and Janko submitted documentation with their May 12, 2003 correspondence evidencing the debt due from the Stilwells to TFG in the amount of $512,974.50.

**ANSWER:**

**REQUEST NO. 64:**    The May 12, 2003 TFG/JFG correspondence was also executed by Thomas Chamberlain on behalf of First Mid to acknowledge and confirm the direction expressed by TFG and JFG.

**ANSWER:**

**REQUEST NO. 65:**    On May 28, 2003, Lawrence W. Bianchi, acting as authorized representative of TFG and JFG, forwarded correspondence to American General for the purpose of amending his May 12, 2003 correspondence.

**ANSWER**:

**REQUEST NO. 66:**    Attached to this pleading as Exhibit 20 is a true and correct copy of the May 28, 2003 correspondence.

337843.1

**ANSWER**:

**REQUEST NO. 67:**  The correspondence to American General attached at Exhibit 20 states, in part:

> Please accept this letter as an amendment to my letter dated 12 May 2003. When listing "all Assignments" against the proceeds on the life insurance policy number 2604663, I inadvertently left out an assignment to Tuscola Furniture Group, LLC dated November 21, 2000 for $250,000.

**REQUEST NO. 68**:  On or about June 10, 2003, American General sent separate correspondence to TFG, Janko, and First Mid, requesting verification of the assignments referenced in their claim correspondence and confirmation of the debt owed under those assignments.

**ANSWER**:

**REQUEST NO 69:**  Attached to this pleading as Exhibit 21 are true and correct copies of the American General's June 10, 2003 correspondence to TFG, Janko, and First Mid.

**REQUEST NO. 70:**  On or about June 11, 2003, Lawrence Bianchi sent correspondence to American General on behalf of TFG and Janko, which enclosed prior correspondence to American General from TFG and First Mid.

**ANSWER:**

**REQUEST NO. 71:**  Attached at Exhibit 22 is a true and correct copy of Lawrence Bianchi's June 11, 2003 correspondence to American General on behalf of TFG and Janko.

**ANSWER**

**REQUEST NO. 72:**  Mr. Bianchi's June 11, 2003 correspondence to American General stated, in part:

> Thank you for the opportunity to provide a further explanation for a rather complex situation. ...

337843.1

***

On 16 April 1999, Janko Financial Group (JFG), LLC entered into a Consignment Agreement for the retailing of Amish Furniture with Amishland Country Village, Inc. and guaranteed personally by James and Margaret Stilwell. Section 3.9 of this original consignment agreement required that JFG and their lender, First Mid-Illinois Bank and Trust (FMIB), receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $2,000,000.

On 19 April 1999, JFG received an assignment of life insurance in the amount of $500,000 from Margaret Stilwell, owner of Policy No. 2604663 with James Stilwell as the insured. However, it was not until 25 September 2000, that JFG received a second assignment of life insurance for the same policy in the amount of $1,500,000 from Margaret Stilwell.

On 16 November 2000, JFG signed an assignment and assumption agreement with the newly formed LLC, Tuscola Furniture Group (TFG), LLC. This new entity is owned 70% by JFG with JFG acting as managing member. This agreement was specifically included and lists any rights to insurance assignments relating to the original consignment agreement.

On 17 November 2000, TFG entered into a new consignment agreement with Amish Land Country Village, Inc. and guaranteed personally by James and Margaret Stilwell. This new agreement modified and replaced the previous agreement. Once again, Section 3.9 of the new consignment agreement required that TFG and their lender FMIB receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $1,250,000.

On 20 November 2000, in support of the assignment and assumption agreement between JFG and TFG, JFG signed a release of assignment on Policy No. 2604663 'in favor of Tuscola Furniture Group, LLC.' This release was a transfer of all rights of insurance assignment for JFG to TFG.

On 21 November 2000, TFG received an assignment of life insurance in the amount of $250,000 from Margaret Stilwell, owner of Policy No. 2604663 with James Stilwell as the insured. Then, on 11 January 2001, FMIB received an assignment of life insurance for the same policy in the amount of $1,000,000 from Margaret Stilwell.

337843.1

The preceding chronology of events resulted in the following assignments from Margaret Stilwell on Policy No. 2604663:

> Tuscola Furniture Group, LLC - $2,000,000 (assignment transfer to Tuscola Furniture Group, LLC via agreement dated 16 November 2000 and release dated 20 November 2000);

> Tuscola Furniture Group, LLC - $250,000 (21 November 2000);

> First Mid-Illinois Bank and Trust - $1,000,000 (11 January 2001).

Therefore the life insurance assignments received from Margaret Stilwell on Policy No. 2604663 in satisfaction of the requirements of the consignment agreements (dated 16 April 1999 and 17 November 2000) totaled $3,250,000.

These events lead us to the claim being made jointly by TFG and FMIB to American General Life as documented in the information submitted by TFG, TFG and FMIB, a joint claim is being made for $512,974.50 in conjunction with the obligations of Amish Land County Village, Inc. and James and Margaret Stilwell per the consignment agreement date [sic] 17 November 2000.   The payment of this claim in the amount of $512,974.50 would release all assignments to JFG, TFG and FMIB, which total $3,250,000. Mr. Sawicki, as we discussed I believe that a review of the enclosed letters dated 12 May 2003 and 28 May 2003, provide American General Life with releases for all assignments totaling $3,250,000 upon receipt of the claim amount of $512,974.50.

**ANSWER**:

**REQUEST NO. 73:**  On June 25, 2003, TFG and JFG forwarded to American General a

formal authorization for Lawrence Bianchi to act as signatory for JFG and TFG for the purpose

of releasing all assignments pertaining to the Policy under the joint claim no. 03D00890LL.

**ANSWER**:

**REQUEST NO. 74:**  Attached to this pleading as Exhibit 23 is a true and correct copy of

the authorization submitted by Lawrence Bianchi on behalf of TFG and JFG.

**ANSWER**:

**REQUEST NO. 75:**  To support their joint claim, TFG, JFG and First Mid submitted documentation to American General.

**ANSWER**:

**REQUEST NO. 76:**  To support their claim, TFG and JFG verified that, via the agreement dated 16 November 2000 between JFG and TFG and the release of assignment dated November 20, 2000, executed by JFG, JFG transferred its assignments, amounting to $2,000,000 cumulatively, to TFG.

**ANSWER**:

**REQUEST NO. 77:**  To support their claim, JFG and TFG represented to American General that the outstanding life insurance assignments received from Plaintiff on the Policy in satisfaction of the requirements of the parties' consignment agreements (dated 16 April 1999 and 17 November 2000) totaled $3,250,000.

**ANSWER**:


**REQUEST NO. 78**:  On or about June 26, 2003, American General forwarded a check for $512,974.50 to TFG and First Mid.

**ANSWER**:

**REQUEST NO. 79**:  As of the date of James Stilwell's death, TFG was owed $431,974.50 by ACV pursuant to the November 17, 2000 Consignment Agreement.

**ANSWER:**

**REQUEST NO. 80**:  As of the date of James Stilwell's death, TFG was owed in excess of $250,000.00 by ACV pursuant to the November 17, 2000 Consignment Agreement.

337843.1

**ANSWER:**

**REQUEST NO. 81**: As of the date of James Stilwell's death, First Mid was owed $81,000.00 by ACV.

**ANSWER:**

**REQUEST NO. 82**: Attached to this correspondence as Exhibit 24 is a true and correct copy of American General's June 26, 2003 correspondence to First Mid.

**ANSWER**:

**REQUEST NO. 83**: TFG and/or First Mid endorsed and cashed the check issued by American General in the amount of $512,974.50 under the Policy.

**ANSWER**:

**REQUEST NO. 84**: On or about July 10, 2003, American General forwarded correspondence to Margaret Stilwell with a check in the amount of $25,354.98.

**ANSWER**:

**REQUEST NO. 85** : Attached to this pleading as Exhibit 25 is a true and correct copy of American General's July 10, 2003 correspondence to Margaret Stilwell.

**ANSWER**:

**REQUEST NO. 86**: Margaret Stilwell received American General's July 10, 2003 correspondence and check on or about July 8, 2003.

**ANSWER**:

**REQUEST NO. 89**: Attached to this pleading as Exhibit 26 is a true and correct copy of a letter from American General to William Lyons which is signed by Margaret Stilwell.

**ANSWER**:

337843.1

**REQUEST NO. 90:** Margaret Stilwell endorsed and cashed the check issued by American General under the Policy.

**ANSWER:**

**REQUEST NO. 91**: In addition to enclosing the check to Margaret Stilwell, American General also forwarded four claimants' statements to be completed by the remaining beneficiaries named in the Policy.

**ANSWER**:

**REQUEST NO. 92**:    On or about July 17, 2003 Jamie Stilwell Bowles executed a claimant's statement relative to the Policy.

**ANSWER**:

**REQUEST NO. 93**:    On or about July 23, 2003 Megan Stilwell executed a claimant's statement relative to the policy.

**ANSWER**:

**REQUEST NO. 94**:    On or about July 25, 2003 Haley Stilwell executed a claimant's statement relative to the policy.

**ANSWER**:

**REQUEST NO. 95**:    Attached as Group Exhibit 27 are true and correct copies of the claimants' statements executed by Haley Stilwell, Megan Stilwell Jamie Stilwell Bowles and Heidi Stilwell.

**ANSWER**:

**REQUEST NO. 96**:    On or about August 4, 2003, American General forwarded checks in the amount of $4,225.83 to Haley Stilwell, Megan Stilwell, Jamie Stilwell Bowles and Heidi Stilwell.

- 20 -

**ANSWER**:

**REQUEST NO. 97:**  Haley Stilwell, Megan Stilwell, Jamie Stilwell Bowles and Heidi Stilwell endorsed and cashed the checks issued by American General under the Policy.

**ANSWER**:

**REQUEST NO. 98**:  On or about November 25, 2003, Margaret Stilwell filed a Petition for Bankruptcy.

**ANSWER**:

**REQUEST NO. 99**:  Janko, TFG and First Mid did not appear as creditors or otherwise in Margaret Stilwell's personal bankruptcy proceedings.

**ANSWER**:

**REQUEST NO. 100**:  On or about April 27, 2004, Margaret Stilwell was discharged in bankruptcy.

Respectfully submitted,

**AMERICAN GENERAL LIFE INSURANCE COMPANY**

By: _____
    One of its attorneys

Daniel J. McMahon
Rebecca M. Rothmann
Cinthia G. Motley
WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
120 North La Salle Street, Suite 2600
Chicago, Illinois 60602
(312) 704-0550

337843.1

## CERTIFICATE OF SERVICE

I, the undersigned, certify that a true and correct copy of the foregoing was mailed by U.S. Mail, postage fully paid, this 31st day of July, 2006, to the following:

Jason M. Crowder
HELLER, HOLMES & ASSOC., P.C.
1101 Broadway, P.O. Box 889
Mattoon, IL 61938
(217) 235-2700
(217) 235-0743 (Fax#)
crowderjason@hotmail.com.

Richard L Heavner
HEAVNER SCOTT BEYERS &
MIHLAR
111 E Main St , Suite 200
Decatur, IL 62523
217-422-1719
Fax: 217-422-1754
richardheavner@hsbattys.com

Timothy J Howard
HOWARD & HOWARD
ATTORNEYS PC
211 Fulton St, Ste 600
Peoria, IL 61602-1350
309-672-1483
Fax: 309-672-1568
thoward@howardandhoward.com

Daniel J. McMahon
Rebecca M. Rothmann
Cinthia G. Motley
WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER, LLP
120 N. LaSalle Street, Suite 2600
Chicago, Illinois 60602
TEL: 312-704-0550
FAX: 312-0704-1522
motleyc@wemed.com

- 22 -

337843.1

PO Box 401
Milwaukee  WI  53201 0401
888 653 5463

# THE OLD LINE LIFE Insurance Company of America

## POLICY DELIVERY RECEIPT

Contract/Certificate Number: _____ 2604663 _____

Owner: _____ MARGARET STILWELL _____

**My life or annuity contract/certificate has been delivered to me.**

Date: _____

Owner Signature: _____

**IMPORTANT NOTICE:** **The laws of your state may require the completed Policy Delivery Receipt be returned to the Insurance Company.**

EXHIBIT
1

# AMERICAN GENERAL LIFE INSURANCE COMPANY

MARGARET STILWELL
218 N IOWA STREET
ATWOOD IL   61913

Company: OLD LINE LIFE INSURANCE COMPANY
Policy Number: 2604663
Insured or Annuitant: MARGARET STILWELL

## MERGER CERTIFICATE

This certificate has been issued as a result of a merger on March 31, 2003 of:

**THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA**, a Wisconsin insurance corporation (Old Line Life);

Into

**AMERICAN GENERAL LIFE INSURANCE COMPANY**, a Texas insurance corporation (American General Life), the surviving company.

This is to certify that American General Life hereby assumes all liability for the insurance policy, certificate or annuity contract identified above issued by Old Line Life (or any predecessor company) the same as if it had been issued originally by American General Life. Benefits under the policy, certificate or annuity contract identified above will not change as a result of this merger.

This certificate is effective March 31, 2003.

Signed at the Home Office of American General Life Insurance Company,

*Elizabeth M. Snel*
Secretary

**IMPORTANT**

President

This certificate becomes a part of your policy, certificate or annuity contract, and should be attached thereto. All inquiries should be directed to American General Life Insurance Company, 2727-A Allen Parkway, Houston, Texas 77019 (Mailing Address: P.O.Box 4373, Houston, TX 77210-4373).

**FOR INFORMATION OR TO MAKE A COMPLAINT, CALL US AT 1-800-937-2351.**

AGLC 8204-IL

**AMERICAN**
**GENERAL**
FINANCIAL GROUP

THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA
*Member American General Financial Group*
P.O. Box 401
Milwaukee, Wisconsin 53201-0401
888/653-5463

## CHECKBOOK REMINDER
(Please substitute for any previous slip referring to this policy)

| (Name of Insured) | (Policy) |
|---|---|
| JAMES E STILWELL | 2604663 |

**Please** remember to deduct $ __1,780.63__ on the __27__ of each billing period. Your premium will be automatically paid **by the** Pre-Authorized Check Plan premium.

**Notice:** If you change your checking account to another bank, please complete the form below and mail immediately to the address shown.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**AUTHORIZATION TO HONOR PRE-AUTHORIZED PAYMENTS DRAWN AND PAYABLE TO:**

The OLD LINE LIFE Insurance Company of America

ATTACH VOIDED CHECK TO COMPLETED FORM

As a convenience to me, I hereby request and authorize you, or your Agent Bank, to initiate debit entries on my checking account maintained at the bank named below hereof for the periodic payment to the company named above, hereinafter called COMPANY, of premiums due and/or loan repayment on the policy(ies) shown below, and, if a mutual fund program is indicated below, to the broker/dealer or its nominee or to the funds shown below for mutual fund subscription payments, and if a savings and loan savings account is indicated below, to the savings and loan association shown below for deposit to the indicated savings account and if other amounts are designated, to the designated payee.

: is agreed that:

1. Debit entries shall be drawn on or about the dates on which payments are due.
2. The COMPANY shall incur no liability by reason of the dishonor of any such debit entries.
3. Any requirement for giving notice of premium due on the insurance policies shall be waived as long as this plan is in effect.
4. This authorization shall not become effective unless and until the insurance policies are approved and shall relate only to insurance premiums, policy loan repayment, mutual fund subscription payments or deposits to savings accounts falling due on or after the issue date of said insurance policies.
5. This plan shall continue in effect unless and until terminated by COMPANY or me by thirty (30) days written notice to the other party. COMPANY may terminate the plan immediately if any debit entries are not paid upon presentation.
6. Amounts drawn shall be distributed by Agent Bank to COMPANY, or the funds or savings and loan associations named hereon within fifteen (15) days after presentation of debit entries to bank depositor named hereon.
7. This service shall apply to policies and fund accounts listed hereon.

is authorization is applicable (please check premium payment desired) to the following:

| POLICY NUMBERS | NAME OF INSURED | MONTHLY | QUARTERLY | SEMI-ANNUAL | ANNUAL |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

xessly recognizing that the premiums on the above policy(ies) are due in accordance with the provision therein and that the COMPANY hereby in no way ives or modifies the premium due date or any other terms of the policy(ies).

quest that debit entries be drawn under this authority on the _____ day of each month a premium is due. If no date is indicated, debit entries will be wn on the due date, or earliest due date of the policy(ies).

_____
1E OF BANK

_____
RESS                          CITY                  STATE              ZIP CODE

_____
OUNT NO.                    DATE            SIGNATURE OF DEPOSITOR AS IT APPEARS ON BANK RECORDS

# Finding a Low Cost Policy

After you have decided which kind of life insurance fits your needs, look for a good buy. Your chances of finding a good buy are better if you use two types of index numbers that have been developed to aid in shopping for life insurance. One is called the "Surrender Cost Index" and the other is the "Net Payment Cost Index". It will be worth your time to try to understand how these indexes are used, but in any event, use them only for comparing the relative costs of similar policies. *LOOK FOR POLICIES WITH LOW COST INDEX NUMBERS.*

## What is Cost?

"Cost" is the difference between what you pay and what you get back. If you pay a premium for life insurance and get nothing back, your cost for the death protection is the premium. If you pay a premium and get something back later on, such as a cash value, your cost is smaller than the premium.

The cost of some policies can also be reduced by dividends; these are called "participating" policies. Companies may tell you what their current dividends are, but the size of future dividends is unknown today and cannot be guaranteed. Dividends actually paid are set each year by the company.

Some policies do not pay dividends. These are called "guaranteed cost" or "non-participating" policies. Every feature of a guaranteed cost policy is fixed so that you know in advance what your future cost will be.

The premiums and cash values of a participating policy are guaranteed, but the dividends are not. Premiums for participating policies are typically higher than for guaranteed cost policies, but the cost to you may be higher or lower, depending on the dividends actually paid.

## WHAT ARE COST INDEXES?

In order to compare the cost of policies, you need to look at:
1. Premiums
2. Cash values
3. Dividends

Cost indexes use one or more of these factors to give you a convenient way to compare relative costs of similar policies. When you compare costs, an adjustment must be made to take into account that money is paid and received at different times. It is not enough to just add up the premiums you will pay and to subtract the cash values and dividends you expect to get back. These indexes take care of the arithmetic for you. Instead of having to add, subtract, multiply and divide many numbers yourself, you just compare the index numbers which you can get from the life insurance agents and companies:

1. *Life Insurance Surrender Cost Index* - This index is useful if you consider the level of the cash values to be of primary importance to you. It helps you compare costs if at some future point in time, such as 10 or 20 years, you were to surrender the policy and take its cash value.

2. *Life Insurance Net Payment Cost Index* - This index is useful if your main concern is the benefits that are to be paid at your death and if the level of cash values is of secondary importance to you. It helps you compare costs at some future point in time, such as 10 or 20 years, if you continue paying premiums on your policy and do not take its cash value.

\*\*\*

There is another number called the Equivalent Level Annual Dividend. It shows the part dividends play in determining the cost index of a participating policy. Adding a policy's Equivalent Level Annual Dividend to its cost index allows you to compare total costs of similar policies before deducting dividends. However, if you make any cost comparisons of a participating policy with a non-participating policy, remember that the total cost of the participating policy will be reduced by dividends, but the cost of the non-participating policy will not change.

## HOW DO I USE COST INDEXES?

The most important thing to remember when using cost indexes is that a policy with a smaller index number is generally a better buy than a comparable policy with a larger index number. The following rules are also important:

1. Cost comparisons should only be made between similar plans of life insurance. Similar plans are those which provide essentially the same basic benefits and require premium payments for approximately the same period of time. The closer policies are to being identical, the more reliable the cost comparison will be.

2. Compare index numbers only for the kind of policy for your age and for the amount you intend to buy. Since no one company offers the lowest cost for *all* types of insurance at *all* ages and for *all* amounts of insurance, it is important that you get the indexes for the actual policy, age and amount which you intend to buy. Just because a "shoppers guide" tells you that one company's policy is a good buy for a particular age and amount, you should not assume that all of the company's policies are equally good buys.

3. Small differences in index numbers could be offset by other policy features, or differences in the quality of service you may expect from the company or its agent. Therefore, when you find small differences in cost indexes, your choice should be based on something other than cost.

4. In any event, you will need other information on which to base your purchase decision. Be sure you can afford the premiums, and that you understand its cash values, dividends and death benefits. You should also make a judgement on how well the life insurance company or agent will provide service in the future to you as a policyholder.

5. These life insurance cost indexes apply to new policies and should not be used to determine whether you should drop a policy you have already owned for awhile in favor of a new one. If such a replacement is suggested, you should ask for information from the company which issued the old policy before you take action.

## Important Things to Remember—A Summary

The first decision you must make when buying a life insurance policy is choosing a policy whose benefits and premiums most closely meet your needs and ability to pay. Next, find a policy which is also a relatively good buy. If you compare Surrender Cost Indexes and Net Payment Cost Indexes of similar competing policies, your chances of finding a relatively good buy will be better than if you do not shop. *REMEMBER, LOOK FOR POLICIES WITH LOWER COST INDEX NUMBERS.* A good life insurance agent can help you choose the amount of life insurance and kind of policy you want and will give you cost indexes so that you can make cost comparisons of similar policies.

Don't buy life insurance unless you intend to stick with it. A policy which is a good buy when held for 20 years can be very costly if you quit during the early years of the policy. If you surrender such a policy during the first few years, you may get little or nothing back and much of your premium may have been used for company expenses.

Read your new policy carefully, and ask the agent or company for an explanation of anything you do not understand. Whatever you decide now, it is important to review your life insurance program every few years to keep up with any changes in your income and responsibilities.

STATEMENT OF POLICY COST AND BENEFIT INFORMATION

LTG SERIES 10 YR
RTG10

THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA    DEBBIE
P.O. BOX 401
MILWAUKEE, WI 53201-0401    NO CITY

POLICY NO    2604663
INSURED    JAMES E STILWELL    AGE    44

| POLICY YEAR | ANNUAL PREMIUM (CURRENT RATES) | GUARANTEED CASH SURRENDER VALUE | GUARANTEED DEATH PAYMENT BEGIN. OF YR. |
|---|---|---|---|
| 1 | 20350.00 | | 4000000 |
| 2 | 20350.00 | | 4000000 |
| 3 | 20350.00 | | 4000000 |
| 4 | 20350.00 | | 4000000 |
| 5 | 20350.00 | | 4000000 |
| 6 | 20350.00 | | 4000000 |
| 7 | 20350.00 | | 4000000 |
| 8 | 20350.00 | | 4000000 |
| 9 | 20350.00 | | 4000000 |
| 10 | 20350.00 | | 4000000 |
| 11 | 127510.00 | | 4000000 |
| 12 | 142990.00 | | 4000000 |
| 13 | 161950.00 | | 4000000 |
| 14 | 183430.00 | | 4000000 |
| 15 | 207430.00 | | 4000000 |
| 16 | 235030.00 | | 4000000 |
| 17 | 266470.00 | | 4000000 |
| 18 | 302470.00 | | 4000000 |
| 19 | 342550.00 | | 4000000 |
| 20 | 385870.00 | | 4000000 |
| AT AGE 62 | 342550.00 | | 4000000 |
| AT AGE 65 | 479710.00 | | 4000000 |

LIFE INSUR. NET PAYMENT COST INDEX
10TH YR.**    20TH YR.**
5.09    24.48

LIFE INSUR. SURRENDER COST INDEX
10TH YR.**    20TH YR.**
5.09    24.48

**AN EXPLANATION OF THE INTENDED USE OF THE LIFE INSURANCE COST INDEXES IS PROVIDED IN THE LIFE INSURANCE BUYERS GUIDE.

THE COLUMNS OF THIS REPRESENTATION DO NOT REFLECT THE FACT THAT, BECAUSE OF INTEREST, A DOLLAR IN THE FUTURE HAS LESS VALUE THAN A DOLLAR TODAY.

IMPORTANT NOTE - DURING THE THIRTY DAY PERIOD FROM THE DATE OF DELIVERY OF THIS POLICY, IT MAY BE SURRENDERED TO THE COMPANY FOR CANCELLATION AND A FULL REFUND OF ANY MONEY PAID.

IL

11/12/2003

STATEMENT OF POLICY COST AND BENEFIT INFORMATION

LTG SERIES 10 YR
RTG10

THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA
P.O. BOX 401
MILWAUKEE,WI 53201-0401

POLICY NO   2604663

INSURED   JAMES E STILWELL

DEBBIE
NO CITY

AGE   44

| POLICY YEAR | ANNUAL PREMIUM (MAXIMUM RATES) | LIFE INSUR. NET PAYMENT COST INDEX 10TH YR.** 5.09 | LIFE INSUR. NET PAYMENT COST INDEX 20TH YR.** 30.88 | GUARANTEED CASH SURRENDER VALUE | GUARANTEED DEATH PAYMENT BEGIN. OF YR. | LIFE INSUR. SURRENDER COST INDEX 10TH YR.** 5.09 | LIFE INSUR. SURRENDER COST INDEX 20TH YR.** 30.88 |
|---|---|---|---|---|---|---|---|
| 1 | 20350.00 | | | | 4000000 | | |
| 2 | 20350.00 | | | | 4000000 | | |
| 3 | 20350.00 | | | | 4000000 | | |
| 4 | 20350.00 | | | | 4000000 | | |
| 5 | 20350.00 | | | | 4000000 | | |
| 6 | 20350.00 | | | | 4000000 | | |
| 7 | 20350.00 | | | | 4000000 | | |
| 8 | 20350.00 | | | | 4000000 | | |
| 9 | 20350.00 | | | | 4000000 | | |
| 10 | 20350.00 | | | | 4000000 | | |
| 11 | 165910.00 | | | | 4000000 | | |
| 12 | 185950.00 | | | | 4000000 | | |
| 13 | 210550.00 | | | | 4000000 | | |
| 14 | 238510.00 | | | | 4000000 | | |
| 15 | 269710.00 | | | | 4000000 | | |
| 16 | 305470.00 | | | | 4000000 | | |
| 17 | 343390.00 | | | | 4000000 | | |
| 18 | 393190.00 | | | | 4000000 | | |
| 19 | 445270.00 | | | | 4000000 | | |
| 20 | 501790.00 | | | | 4000000 | | |
| AT AGE 62 | 445270.00 | | | | 4000000 | | |
| AT AGE 65 | 627710.00 | | | | 4000000 | | |

THE COLUMNS OF THIS REPRESENTATION DO NOT REFLECT THE FACT THAT, BECAUSE OF INTEREST, A DOLLAR IN
THE FUTURE HAS LESS VALUE THAN A DOLLAR TODAY.

**AN EXPLANATION OF THE INTENDED USE OF THE LIFE INSURANCE COST INDEXES IS PROVIDED IN THE LIFE
INSURANCE BUYERS GUIDE.

IMPORTANT NOTE - DURING THE THIRTY DAY PERIOD FROM THE DATE OF DELIVERY OF THIS POLICY, IT MAY BE
SURRENDERED TO THE COMPANY FOR CANCELLATION AND A FULL REFUND OF ANY MONEY PAID.

IL

11/12/2003

AGENCY: 834
AGENT : X DEBBIE
MAILTO: NONE
POLICY: 2604663

NO AGENT ADDRESS FOUND

DEBBIE

ll..ll..ll..ll..ll..ll..ll..l

# THE OLD LINE LIFE Insurance Company of America

1200 North Mayfair Road, Suite 300 • PO Box 401 • Milwaukee WI  53201-0401 • 800-487-5433

THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA, A STOCK COMPANY (REFERRED TO IN THIS POLICY AS WE/US/OUR) WILL PAY THE BENEFITS OF THIS POLICY SUBJECT TO ITS PROVISIONS. THIS PAGE AND THE PAGES THAT FOLLOW ARE PART OF THIS POLICY.

SIGNED AT OUR HOME OFFICE AT 1200 NORTH MAYFAIR ROAD, SUITE 300, P.O. BOX 401, MILWAUKEE, WISCONSIN  53201 0401.

_General Counsel_                                    _President_

RIGHT TO RETURN POLICY

THE OWNER MAY RETURN THIS POLICY TO US AT THE ABOVE ADDRESS OR TO THE AGENT FROM WHOM IT WAS PURCHASED WITHIN 30 DAYS AFTER RECEIPT.  THIS POLICY WILL THEN BE CANCELLED AS OF ITS DATE OF ISSUE AND ANY PREMIUM PAID WILL BE REFUNDED.

NW                                                      B-7133
                                                        B1101000-1033-0501

**NOTICE PAGE**

# ILLINOIS
# LIFE AND HEALTH INSURANCE GUARANTY
# ASSOCIATION LAW

**Note:** The terms "policy" and "Policyholder" as used in this Notice shall be read to mean "certificate" and "Certificateholder", respectively, as applicable to persons insured under a group insurance plan.

Residents of Illinois who purchase health insurance, life insurance, and annuities should know that the insurance companies licensed in Illinois to write these types of insurance are members of the Illinois Life and Health Insurance Guaranty Association. The purpose of this Guaranty Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its policy obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the covered claims of policyholders that live in Illinois (and their payees, beneficiaries, and assignees) and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however, as noted on the other side of this page.

## DISCLAIMER

The Illinois Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE FOR YOUR POLICY. Even if coverage is provided, there are substantial limitations and exclusions. Coverage is generally conditioned on continued residence in Illinois. Other conditions may also preclude coverage.

You should not rely on availability of coverage under the Life and Health Insurance Guaranty Association Law when selecting an insurer. Your insurer and agent are prohibited by law from using the existence of the Association or its coverage to sell you an insurance policy.

The Illinois Life and Health Insurance Guaranty Association or the Illinois Department of Insurance will respond to any questions you may have which are not answered by this document. Policyholders with additional questions may contact:

Illinois Life and Health Insurance Guaranty Association
8420 West Bryn Mawr Avenue
Chicago, Illinois 60631
(312) 714-8050

Illinois Department of Insurance
320 West Washington Street
4th Floor
Springfield, Illinois 62767
(217) 782-4515

## SUMMARY OF GENERAL PURPOSES AND
## CURRENT LIMITATIONS OF COVERAGE

The Illinois law that provides for this safety-net coverage is called the Illinois Life and Health Insurance Guaranty Association Law ("Law") [215 ILCS 5/531.01, et seq.]. The other side of this page contains a brief summary of the Law's coverages, exclusions and limits. This summary does not cover all provisions, nor does it in any way change anyone's rights or obligations under the Law or the rights or obligations of the Guaranty Association. If you have obtained this document from an agent in connection with the purchase of a policy, you should be aware that its delivery to you does not guarantee that your policy is covered by the Guaranty Association.

(continued on next page)

NP-1A IL

# NOTICE PAGE (Continued)

If any complaints arise regarding the insurance provided by this policy, you may contact us as follows:

American General Insurance Service Center
Correspondence Unit
P.O. Box 35844
Dallas, Texas 75235-0844

Toll Free Telephone Number: 1-800-487-5433
Within Dallas Area Code 214: 654-6300

If you are unable to obtain the information you need from us, you may write to the Department of Insurance at the following address:

Illinois Department of Insurance
Consumer Division
Springfield, Illinois 62767

NP-1C IL

## TABLE OF CONTENTS

| PAGE | TITLE OF PROVISION |
|------|--------------------|
| 7 | ASSIGNMENT |
| 7 | BENEFICIARY |
| 7 | CHANGE OF OWNER OR BENEFICIARY |
| 7 | CLAIMS OF CREDITORS |
| 7 | CONTRACT |
| 7 | CORRESPONDENCE |
| 5 | DEFINITIONS |
| 6 | EXCHANGE OPTIONS |
| 5 | GRACE PERIOD |
| 3 | INCONTESTABILITY |
| 7 | MISSTATEMENT OF AGE OR SEX |
| 5 | NONPARTICIPATING |
| 7 | OWNER |
| 3 | PAYMENT OF PROCEEDS |
| 7 | POLICY SETTLEMENT |
| 2 | POLICY SPECIFICATIONS |
| 5 | PREMIUM PAYMENT |
| 5 | REINSTATEMENT |
| 5 | RENEWAL OPTION |
| 5 | RIGHT TO CHANGE PREMIUM |
| COVER | RIGHT TO RETURN POLICY |
| 2 | SCHEDULE OF BENEFITS AND PREMIUMS |
| 3 | SUICIDE |
| LAST | TABLE OF PREMIUMS |

SEE SUPPLEMENTAL BENEFIT PAGES FOR RIDERS, IF ANY

RENEWABLE LEVEL TERM LIFE POLICY -- INDETERMINATE PREMIUM
INSURANCE PAYABLE IN EVENT OF DEATH PRIOR TO EXPIRY DATE
PREMIUMS PAYABLE DURING TERM

NO DIVIDENDS

80-RCT 97D                    2604663                    PAGE  1

POLICY SPECIFICATIONS

| INSURED | JAMES E STILWELL | 2604663 | POLICY NUMBER |
| FACE AMOUNT | $4,000,000 | 10/27/1998 | DATE OF ISSUE |
| PREMIUM CLASS | NON-TOBACCO RATED CLASS H | 44 | AGE AT ISSUE |

SCHEDULE OF BENEFITS AND PREMIUMS

| BENEFITS | BENEFIT AMOUNTS | ANNUAL PREMIUMS | YEARS PAYABLE |
|---|---|---|---|
| LIFE INSURANCE | $4,000,000 | $6,830.00 | 10 YEARS* |
| INITIAL EXPIRY DATE | 10/27/2008 | | |

SUBSEQUENT EXPIRY DATES WILL OCCUR AT THE END OF EACH ONE YEAR RENEWABLE
TERM PERIOD.  THE FINAL EXPIRY DATE IS 10/27/2049.

| PERMANENT EXTRA | | 13,520.00 | 10 YEARS |

TOTAL FIRST YEAR ANNUAL PREMIUM                    $20,350.00

PREMIUMS OTHER THAN ANNUAL ARE A PERCENTAGE OF THE ANNUAL PREMIUM.
PREMIUMS ARE PAYABLE AT 01 MONTH INTERVALS FROM 10/27/1998.   THE FIRST
INTERVAL PREMIUM IS $1,780.63.

* RENEWAL PREMIUMS ARE SHOWN ON THE LAST PAGE.  ON THE  TENTH POLICY
ANNIVERSARY AND ANY LATER POLICY ANNIVERSARY WE HAVE A LIMITED RIGHT
TO CHANGE THE PREMIUM.  SEE THE RIGHT TO CHANGE PREMIUM PROVISION.

THIS POLICY MAY BE EXCHANGED FOR A NEW POLICY.  SEE THE EXCHANGE OPTIONS
PROVISION.  OPTION 1 IS AVAILABLE UNTIL THE EIGHTH POLICY ANNIVERSARY,
PROVIDED THE INSURED IS AGE 65 OR LESS ON THE DATE OF EXCHANGE.  THE
DATE OF EXCHANGE UNDER OPTION 2 IS THE TENTH POLICY ANNIVERSARY,
PROVIDED THE INSURED IS AGE 70 OR LESS.

## PAYMENT OF PROCEEDS

THE FACE AMOUNT WILL BE PAID TO THE BENEFICIARY IMMEDIATELY UPON RECEIPT OF DUE PROOF OF THE DEATH OF THE INSURED IF DEATH OCCURS PRIOR TO THE EXPIRY DATE. IF DEATH OCCURS IN THE GRACE PERIOD OF AN UNPAID PREMIUM AN AMOUNT EQUAL TO THE PREMIUM FOR ONE MONTH WILL BE DEDUCTED FROM THE PROCEEDS.

## SUICIDE EXCLUSION

IN THE EVENT OF THE SUICIDE OF THE INSURED, WHILE SANE OR INSANE, WITHIN 2 YEARS FROM THE DATE OF ISSUE, OUR LIABILITY WILL BE LIMITED TO THE PREMIUMS PAID.

## INCONTESTABILITY

WE WILL NOT CONTEST THIS POLICY AFTER IT HAS BEEN IN FORCE DURING THE LIFETIME OF THE INSURED FOR TWO YEARS FROM THE DATE OF ISSUE. WE WILL NOT CONTEST ANY REINSTATEMENT AFTER THE REINSTATEMENT HAS BEEN IN FORCE DURING THE LIFETIME OF THE INSURED FOR TWO YEARS. IF WE DO CONTEST A REINSTATEMENT, WE WILL CONTEST ONLY STATEMENTS MADE IN THE REINSTATEMENT APPLICATION.

(THIS PAGE IS INTENTIONALLY LEFT BLANK.)

**Age or attained age** means the insured's age nearest birthday at the beginning of a policy year.

**Policy months, years and anniversaries.** The first policy year begins on the date of issue. Policy months, years and anniversaries will be measured from that date.

## PREMIUM PAYMENT

The first premium is due on or before delivery of this policy. Later premiums are due and payable at the intervals and for the period shown on page 2, while the insured is alive. With our consent, premiums may be paid at other intervals.

Premiums after the first are payable at our home office or to an authorized agent in exchange for a receipt signed by one of our officers.

Any premium, after the first, not paid on or before its due date will be in default. Such due date will be the date of default.

## GRACE PERIOD

A 31 day grace period, without interest charge, is allowed for the payment of each premium after the first. This policy will stay in force during this period. If the premium is not paid by the end of this period, insurance will cease.

## REINSTATEMENT

This policy may be reinstated within five years of the date of default subject to receipt of evidence of insurability satisfactory to us.

Reinstatement will also be subject to (1) payment of the premium for the grace period with interest at the rate of 6% per year compounded annually plus the premium due for the current policy month, if this policy has a renewable term period of one year, or (2) payment of all overdue premiums with interest at the rate of 6% per year compounded annually, if this policy has a renewable term period other than one year.

## NONPARTICIPATING

This policy does not pay dividends.

## RENEWAL OPTION

This policy may be renewed without evidence of insurability on each expiry date for a further term period. Renewal premiums are shown on the last page.

The first premium for a new term will be due at the end of the previous term. This policy will renew if this premium is paid within the grace period. Premiums for the new term will be due and payable at the intervals show on page 2.

No term period will extend beyond the final expiry date shown on page 2.

## RIGHT TO CHANGE PREMIUM

We reserve the right to change the premium for this policy on the policy anniversary specified on page 2 and on any later policy anniversary, subject to the following terms:

1. The premium will not exceed the applicable maximum premium shown on the last page.

2. Any change in premium will be made on a uniform basis for all insureds with the same benefits and provisions who have the same age at issue, date of issue, sex and premium class. No change in premium will occur due to any change in the insured's health or occupation.

3. Any change in premium will take effect only after 30 days' prior notice to the owner of this policy.

4. Any change in premium will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing the premium.

This provision does not apply to any rider attached to this policy.

80-RCT 79-05.5

## OWNER

The owner is as shown in the application unless changed. The owner has all rights under this policy while the insured is alive. These rights are subject to the consent of any living irrevocable beneficiary.

## BENEFICIARY

The beneficiary or beneficiaries are as shown in the application unless changed. If no beneficiary survives the insured, the owner or the estate of the owner will be the beneficiary. However, if a trust is the owner and no beneficiary survives the insured, the estate of the insured will be the beneficiary.

## CHANGE OF OWNER OR BENEFICIARY

While this policy is in force the owner may change the beneficiary or ownership by written notice to us. When we record the change, it will take effect as of the date the owner signed the notice, subject to any payment we make or other action we take before recording.

## CORRESPONDENCE

Any request, notice or proof shall be filed with our home office.

## ASSIGNMENT

No assignment of this policy will be binding on us until filed with us in writing and recorded by us. No assignment will affect any payment we made before we recorded the assignment. We will not be responsible for the validity of an assignment.

All rights of the owner and any revocable beneficiary are subject to the rights of any assignee on record with us.

## POLICY SETTLEMENT

In any settlement we may require the return of this policy.

## THE CONTRACT

This policy, including any riders and endorsements, the original application and any supplemental applications and declarations, is the entire contract.

All statements in an application are representations and not warranties. No statement will be used to void this policy or to contest a claim unless it appears in an application or declaration which is attached to and made part of this policy.

This policy may not be changed, nor may any of our rights or requirements be waived, except in writing by one of our authorized officers.

## MISSTATEMENT OF AGE OR SEX

If the insured's age or sex has been misstated, any death benefit payable by us will be what the premiums paid would have bought at the insured's correct age and sex.

## CLAIMS OF CREDITORS

All payments under this policy are exempt from the claims of creditors to the extent permitted by law. Payments may not be assigned or withdrawn without our consent before becoming payable.

# ENDORSEMENT

The Payment Options of the policy to which this endorsement is attached will be as follows:

## PAYMENT OPTIONS

The term "annuitant/insured" as used in the following paragraph means the person named in the Policy Specifications as annuitant or insured, as the case may be.

Proceeds of less than $5,000 will be paid in one lump sum. Proceeds of $5,000 or more may be paid under an option. When proceeds are placed under an option the payee will receive a settlement contract. The date of the contract will be the date the proceeds become payable. The owner may choose the option only while the annuitant/insured is living. After the death of the annuitant/insured, the beneficiary may choose the option if proceeds are payable in one sum. Payment options for death proceeds must be chosen within six months after the annuitant's/insured's death. Payment options for other proceeds must be chosen within two months of the date they are payable. All elections must be filed with us in writing. Payments may be requested at 1, 3, 6 or 12 month intervals. Each payment must be at least $50. Each payee must be a living person receiving payments in his own right.

The interest rate for options 1, 2 and 3 will be declared by us each year. This rate will never be less than 3% per year. For options 1 and 3 any interest in excess of 3% will be used to increase payment amounts; for option 2 any excess interest will be used to lengthen the payment period.

For options 4, 5, 6 and 7 the payments will be based on rates declared by us from time to time. These rates will be 3 1/2% less than the published rates in effect for immediate annuities on the date of the settlement contract. Payments under these rates will never be less than the amount according to the tables of minimum monthly income in this endorsement. The rates in the tables are derived from a projection of the 1983 Table "a", and an annual interest rate of 3.00%.

**Option 1. Interest.** We will hold the proceeds on deposit. Interest will be paid while the payee is living. Sums of $500 or more may be withdrawn up to four times a year.

**Option 2. Specified Income.** We will pay a stated income amount until the proceeds, with interest on the unpaid balance, are used up. The income each year may not be less than 10% of the proceeds.

**Option 3. Income for Specified Period.** We will pay an income for a stated period, up to 30 years.

**Option 4. Life Income with Guaranteed Period.** We will pay an income for a guaranteed period and for the rest of the payee's life. The guaranteed period may be 10, 15 or 20 years.

**Option 5. Life Income without Guaranteed Period.** We will pay an income for the payee's lifetime. Payments will end at the death of the payee. However, if the payee dies within one year of the date of the settlement contract, payments will be continued to a contingent payee until 10 years from the date of the settlement contract.

**Option 6. Life Income with Installment Refund.** We will pay an income for a guaranteed period and for the rest of the payee's life. The guaranteed period is the period required for the sum of income payments to equal the proceeds applied.

**Option 7. Joint Life Income with 2/3 to Survivor.** We will pay an income while both payees are living. When one payee dies we will pay 2/3 of the income for the rest of the survivor's life. However, if one payee dies within one year from the date of the settlement contract, income will be paid to the survivor thereafter as if the survivor had chosen option 5 on the date of the settlement contract.

**Additional Option to Buy Single Premium Immediate Life Annuity at Reduced Rate.** If proceeds of at least $5,000 are applied under option 4, 5, 6 or 7, additional money may be used to buy a single premium immediate life annuity. The cost of this annuity will be 3 1/2% less than the then published rate. The monthly income from this annuity together with the monthly income from option 4, 5, 6 or 7 may not exceed 3 times the monthly income which could be bought solely by applying the policy proceeds. Written request must be made within 31 days from the date proceeds are payable.

(Continued on page 2)

PO3-NQ 79-1D

## TABLE OF MINIMUM MONTHLY INCOME FOR FEMALE PAYEES UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

### OPTION 3 — INCOME FOR SPECIFIED PERIOD

| Year | Income |
|---|---|
| 1 | $84.47 |
| 2 | 42.86 |
| 3 | 28.99 |
| 4 | 22.06 |
| 5 | 17.91 |
| 6 | 15.14 |
| 7 | 13.16 |
| 8 | 11.68 |
| 9 | 10.53 |
| 10 | 9.61 |
| 11 | 8.86 |
| 12 | 8.24 |
| 13 | 7.71 |
| 14 | 7.26 |
| 15 | 6.87 |
| 16 | 6.53 |
| 17 | 6.23 |
| 18 | 5.96 |
| 19 | 5.73 |
| 20 | 5.51 |
| 21 | 5.32 |
| 22 | 5.15 |
| 23 | 4.99 |
| 24 | 4.84 |
| 25 | 4.71 |
| 26 | 4.59 |
| 27 | 4.48 |
| 28 | 4.37 |
| 29 | 4.27 |
| 30 | 4.18 |

### OPTIONS 4, 5, 6

| Age at First Payment | Option 4 — Life Income with Guaranteed Period 10 Years | 15 Years | 20 Years | Option 5 — Life Income Without Guaranteed Period | Option 6 — Life Income with Installment Refund |
|---|---|---|---|---|---|
| 5 and under | $2.72 | $2.72 | $2.72 | $2.72 | $2.79 |
| 6 | 2.73 | 2.73 | 2.73 | 2.73 | 2.79 |
| 7 | 2.74 | 2.74 | 2.74 | 2.74 | 2.79 |
| 8 | 2.75 | 2.75 | 2.75 | 2.75 | 2.79 |
| 9 | 2.76 | 2.76 | 2.76 | 2.76 | 2.79 |
| 10 | 2.77 | 2.77 | 2.77 | 2.77 | 2.79 |
| 11 | 2.78 | 2.78 | 2.78 | 2.78 | 2.79 |
| 12 | 2.79 | 2.79 | 2.79 | 2.79 | 2.80 |
| 13 | 2.80 | 2.80 | 2.80 | 2.80 | 2.81 |
| 14 | 2.81 | 2.81 | 2.81 | 2.81 | 2.82 |
| 15 | 2.82 | 2.82 | 2.82 | 2.82 | 2.83 |
| 16 | 2.83 | 2.83 | 2.83 | 2.83 | 2.84 |
| 17 | 2.85 | 2.85 | 2.85 | 2.85 | 2.86 |
| 18 | 2.86 | 2.86 | 2.86 | 2.86 | 2.86 |
| 19 | 2.87 | 2.87 | 2.87 | 2.87 | 2.87 |
| 20 | 2.89 | 2.89 | 2.89 | 2.89 | 2.88 |
| 21 | 2.90 | 2.90 | 2.90 | 2.90 | 2.90 |
| 22 | 2.92 | 2.92 | 2.92 | 2.92 | 2.91 |
| 23 | 2.93 | 2.93 | 2.93 | 2.93 | 2.93 |
| 24 | 2.95 | 2.95 | 2.95 | 2.95 | 2.95 |
| 25 | 2.97 | 2.97 | 2.96 | 2.97 | 2.96 |
| 26 | 2.98 | 2.98 | 2.98 | 2.98 | 2.98 |
| 27 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 |
| 28 | 3.02 | 3.02 | 3.02 | 3.02 | 3.02 |
| 29 | 3.04 | 3.04 | 3.04 | 3.04 | 3.04 |
| 30 | 3.06 | 3.06 | 3.06 | 3.06 | 3.06 |
| 31 | 3.09 | 3.08 | 3.08 | 3.09 | 3.08 |
| 32 | 3.11 | 3.11 | 3.11 | 3.11 | 3.10 |
| 33 | 3.13 | 3.13 | 3.13 | 3.13 | 3.13 |
| 34 | 3.16 | 3.16 | 3.15 | 3.16 | 3.15 |
| 35 | 3.18 | 3.18 | 3.18 | 3.18 | 3.18 |
| 36 | 3.21 | 3.21 | 3.21 | 3.21 | 3.20 |
| 37 | 3.24 | 3.24 | 3.24 | 3.24 | 3.23 |
| 38 | 3.27 | 3.27 | 3.27 | 3.27 | 3.26 |
| 39 | 3.30 | 3.30 | 3.30 | 3.30 | 3.29 |
| 40 | 3.34 | 3.33 | 3.33 | 3.34 | 3.32 |
| 41 | 3.37 | 3.37 | 3.36 | 3.37 | 3.35 |
| 42 | 3.41 | 3.40 | 3.40 | 3.41 | 3.39 |
| 43 | 3.44 | 3.44 | 3.43 | 3.45 | 3.42 |
| 44 | 3.49 | 3.48 | 3.47 | 3.49 | 3.46 |
| 45 | 3.53 | 3.52 | 3.51 | 3.53 | 3.50 |
| 46 | 3.57 | 3.57 | 3.55 | 3.58 | 3.54 |
| 47 | 3.62 | 3.61 | 3.60 | 3.62 | 3.58 |
| 48 | 3.67 | 3.66 | 3.64 | 3.67 | 3.63 |
| 49 | 3.72 | 3.71 | 3.69 | 3.73 | 3.68 |
| 50 | 3.78 | 3.76 | 3.74 | 3.78 | 3.73 |
| 51 | 3.83 | 3.82 | 3.79 | 3.84 | 3.78 |
| 52 | 3.90 | 3.88 | 3.85 | 3.90 | 3.83 |
| 53 | 3.96 | 3.94 | 3.90 | 3.97 | 3.89 |
| 54 | 4.03 | 4.00 | 3.96 | 4.04 | 3.95 |
| 55 | 4.10 | 4.07 | 4.02 | 4.12 | 4.02 |
| 56 | 4.17 | 4.14 | 4.09 | 4.19 | 4.08 |
| 57 | 4.25 | 4.22 | 4.15 | 4.28 | 4.15 |
| 58 | 4.34 | 4.29 | 4.22 | 4.36 | 4.23 |
| 59 | 4.42 | 4.37 | 4.29 | 4.46 | 4.30 |
| 60 | 4.52 | 4.46 | 4.36 | 4.56 | 4.39 |
| 61 | 4.62 | 4.55 | 4.44 | 4.66 | 4.47 |
| 62 | 4.72 | 4.64 | 4.51 | 4.78 | 4.56 |
| 63 | 4.84 | 4.74 | 4.59 | 4.90 | 4.66 |
| 64 | 4.95 | 4.84 | 4.66 | 5.03 | 4.76 |
| 65 | 5.08 | 4.95 | 4.74 | 5.17 | 4.87 |
| 66 | 5.21 | 5.06 | 4.81 | 5.31 | 4.98 |
| 67 | 5.35 | 5.17 | 4.89 | 5.47 | 5.10 |
| 68 | 5.50 | 5.28 | 4.96 | 5.65 | 5.23 |
| 69 | 5.66 | 5.40 | 5.03 | 5.83 | 5.36 |
| 70 | 5.82 | 5.52 | 5.09 | 6.03 | 5.51 |
| 71 | 6.00 | 5.64 | 5.15 | 6.25 | 5.66 |
| 72 | 6.18 | 5.75 | 5.21 | 6.49 | 5.82 |
| 73 | 6.37 | 5.87 | 5.26 | 6.74 | 5.99 |
| 74 | 6.56 | 5.98 | 5.30 | 7.02 | 6.17 |
| 75 | 6.76 | 6.09 | 5.34 | 7.33 | 6.37 |
| 76 | 6.97 | 6.19 | 5.38 | 7.65 | 6.57 |
| 77 | 7.17 | 6.29 | 5.41 | 8.01 | 6.78 |
| 78 | 7.39 | 6.38 | 5.43 | 8.40 | 7.02 |
| 79 | 7.59 | 6.46 | 5.46 | 8.82 | 7.26 |
| 80 | 7.79 | 6.53 | 5.47 | 9.28 | 7.52 |
| 81 and over | 7.99 | 6.59 | 5.49 | 9.78 | 7.79 |

MINIMUM INCOME AMOUNTS PAYABLE OTHER THAN MONTHLY WILL BE FURNISHED ON REQUEST.

## TABLE OF MINIMUM MONTHLY INCOME UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

### OPTION 7 - JOINT LIFE INCOME WITH TWO THIRDS TO SURVIVOR

| Female | 40 | 45 | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
|--------|------|------|------|------|------|------|------|------|------|
| **Male** | | | | | | | | | |
| 40 | $3.35 | $3.45 | $3.55 | $3.67 | $3.80 | $3.94 | $4.10 | $4.28 | $4.47 |
| 41 | 3.37 | 3.47 | 3.58 | 3.70 | 3.83 | 3.97 | 4.14 | 4.32 | 4.51 |
| 42 | 3.39 | 3.49 | 3.60 | 3.72 | 3.86 | 4.01 | 4.18 | 4.37 | 4.56 |
| 43 | 3.41 | 3.51 | 3.62 | 3.75 | 3.89 | 4.05 | 4.22 | 4.41 | 4.61 |
| 44 | 3.42 | 3.53 | 3.65 | 3.78 | 3.92 | 4.08 | 4.26 | 4.46 | 4.67 |
| 45 | 3.44 | 3.55 | 3.67 | 3.81 | 3.96 | 4.12 | 4.31 | 4.51 | 4.72 |
| 46 | 3.46 | 3.57 | 3.70 | 3.84 | 3.99 | 4.16 | 4.35 | 4.56 | 4.78 |
| 47 | 3.48 | 3.59 | 3.72 | 3.87 | 4.03 | 4.20 | 4.40 | 4.61 | 4.84 |
| 48 | 3.50 | 3.62 | 3.75 | 3.90 | 4.07 | 4.25 | 4.45 | 4.67 | 4.90 |
| 49 | 3.52 | 3.64 | 3.78 | 3.93 | 4.10 | 4.29 | 4.50 | 4.73 | 4.97 |
| 50 | 3.54 | 3.66 | 3.80 | 3.96 | 4.14 | 4.34 | 4.55 | 4.79 | 5.04 |
| 51 | 3.56 | 3.69 | 3.83 | 4.00 | 4.18 | 4.38 | 4.61 | 4.85 | 5.11 |
| 52 | 3.58 | 3.71 | 3.86 | 4.03 | 4.22 | 4.43 | 4.66 | 4.92 | 5.19 |
| 53 | 3.60 | 3.73 | 3.89 | 4.07 | 4.26 | 4.48 | 4.72 | 4.99 | 5.27 |
| 54 | 3.62 | 3.76 | 3.92 | 4.10 | 4.31 | 4.53 | 4.78 | 5.06 | 5.35 |
| 55 | 3.65 | 3.78 | 3.95 | 4.14 | 4.35 | 4.59 | 4.85 | 5.13 | 5.43 |
| 56 | 3.67 | 3.81 | 3.98 | 4.17 | 4.39 | 4.64 | 4.91 | 5.21 | 5.52 |
| 57 | 3.69 | 3.84 | 4.01 | 4.21 | 4.44 | 4.69 | 4.98 | 5.29 | 5.62 |
| 58 | 3.72 | 3.86 | 4.04 | 4.24 | 4.48 | 4.75 | 5.05 | 5.37 | 5.72 |
| 59 | 3.74 | 3.89 | 4.07 | 4.28 | 4.53 | 4.81 | 5.12 | 5.46 | 5.82 |
| 60 | 3.76 | 3.92 | 4.10 | 4.32 | 4.58 | 4.87 | 5.19 | 5.55 | 5.93 |
| 61 | 3.79 | 3.95 | 4.13 | 4.36 | 4.62 | 4.93 | 5.27 | 5.64 | 6.04 |
| 62 | 3.82 | 3.97 | 4.17 | 4.40 | 4.67 | 4.99 | 5.34 | 5.74 | 6.16 |
| 63 | 3.84 | 4.00 | 4.20 | 4.44 | 4.72 | 5.05 | 5.42 | 5.84 | 6.28 |
| 64 | 3.87 | 4.03 | 4.24 | 4.48 | 4.77 | 5.11 | 5.51 | 5.94 | 6.41 |
| 65 | 3.90 | 4.06 | 4.27 | 4.52 | 4.82 | 5.18 | 5.59 | 6.05 | 6.54 |
| 66 | 3.92 | 4.10 | 4.31 | 4.57 | 4.88 | 5.25 | 5.68 | 6.16 | 6.68 |
| 67 | 3.95 | 4.13 | 4.34 | 4.61 | 4.93 | 5.31 | 5.76 | 6.28 | 6.83 |
| 68 | 3.98 | 4.16 | 4.38 | 4.65 | 4.98 | 5.38 | 5.85 | 6.39 | 6.98 |
| 69 | 4.01 | 4.19 | 4.42 | 4.70 | 5.04 | 5.45 | 5.94 | 6.51 | 7.13 |
| 70 | 4.04 | 4.23 | 4.45 | 4.74 | 5.09 | 5.52 | 6.03 | 6.63 | 7.29 |
| 71 | 4.07 | 4.26 | 4.49 | 4.78 | 5.14 | 5.59 | 6.12 | 6.76 | 7.45 |
| 72 | 4.10 | 4.29 | 4.53 | 4.83 | 5.20 | 5.66 | 6.22 | 6.88 | 7.62 |
| 73 | 4.13 | 4.33 | 4.57 | 4.87 | 5.25 | 5.73 | 6.31 | 7.01 | 7.80 |
| 74 | 4.16 | 4.36 | 4.61 | 4.92 | 5.31 | 5.80 | 6.40 | 7.14 | 7.97 |
| 75 | 4.19 | 4.39 | 4.65 | 4.96 | 5.36 | 5.87 | 6.50 | 7.27 | 8.15 |
| 76 | 4.22 | 4.43 | 4.68 | 5.01 | 5.42 | 5.94 | 6.59 | 7.40 | 8.33 |
| 77 | 4.25 | 4.46 | 4.72 | 5.05 | 5.47 | 6.00 | 6.68 | 7.53 | 8.52 |
| 78 | 4.28 | 4.49 | 4.76 | 5.10 | 5.52 | 6.07 | 6.77 | 7.66 | 8.71 |
| 79 | 4.31 | 4.53 | 4.80 | 5.14 | 5.58 | 6.14 | 6.87 | 7.79 | 8.89 |
| 80 | 4.34 | 4.56 | 4.83 | 5.18 | 5.63 | 6.21 | 6.96 | 7.92 | 9.08 |

MINIMUM INCOME AMOUNTS FOR AGES NOT SHOWN AND MINIMUM INCOME AMOUNTS
PAYABLE OTHER THAN MONTHLY WILL BE FURNISHED ON REQUEST.

2604663

**PART A**  Application for Insurance to:

# OLD LINE LIFE Insurance Company of America
(referred to in this application as we/us/our)

**COMPLETE FOR ALL POLICIES (Please Print) — Questions 1a through g apply to Proposed Insured**

**1. a. NAME** James E Stilwell  ☒ Male  ☐ Female

**6. a. PLAN** LTG 10  ☒ Non Par  ☐ Par

**b.** ☐ Single ☐ Married ☐ Divorced ☐ Widowed ☐ Separated

**b. AMOUNT** 5,000,000

**c. DATE OF BIRTH** 10 07 54  **d. AGE** 43  **e. BIRTHPLACE** IL USA

**c. PREMIUMS PAYABLE** ☐ Annual ☒ Semi-annual ☐ Quarterly ☐ Pre-Auth. Chk. ☐ GAP ☐ List Bill ☐ ........

**f. SOCIAL SECURITY OR TAX NO.** 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

**d. For Universal Life only:** ☐ Option 1 ☐ Option 2 Planned Premium $ ........ Additional Initial Premium $ ........

**g. HOME TELEPHONE NO.** 217 578-3132

**2. SEND ALL MAIL TO OWNER AT ADDRESS IN** ☐ 3a ☐ 3b ☐ 9

**e. AUTOMATIC PREMIUM LOAN, if available** ☐ Yes ☐ No

**3. a. RESIDENCE ADDRESS OF PROPOSED INSURED**
No. & Street 218 N. Iowa  B
City Atwood  State IL  Zip 61913
How long at this address? 5 yrs. Previous Addresses (5 Yrs.)

**f. ADDITIONAL COVERAGES (Check if desired)**
☐ WP or WMD, ........  ☐ ........
☐ ADB $ ........  ☐ GIO ........ Units
☐ Spouse Rider ........ Units  ☐ Child Rider ........ Units
☐ Term Rider Plan ........  $ ........ (Amt. or M.I.)
☐ Term Rider on Other Insured — use separate application

QUESTIONS 3b & c APPLY TO PROPOSED INSURED IF AGE 15 OR OVER. TO OWNER OR PAYOR IF PROPOSED INSURED UNDER AGE 15.

**b. BUSINESS ADDRESS** with present employer ........ yrs.
Employer Self Employed Entrepreneur
No. & Street 102 N Main
City Atwood  State IL  Zip 61913
Nature of Business Antiques Furniture Stereo, meat
**c. OCCUPATION** (All, if more than one) Food Service, Restaurant Owner
Duties (Describe)

**g. IF PARTICIPATING, USE OF DIVIDENDS**
Purchase 1 Yr. Term, balance to:
☐ (1) Cash  ☐ (5) Deposit at Interest
☐ (2) Reduce Premium  ☐ (6) Reduce Premiums
☐ (3) Paid Up Additions  ☐ (7) Purchase Paid Up Additions
☐ (4) Deposit at Interest  ☐ (8) Use All to Purchase 1 Yr. Term

**7. LIFE INSURANCE IN FORCE ON PROPOSED INSURED**

| Name of Company | Issue Year | Amount | ADB | Personal/Business |
|---|---|---|---|---|
| Bankers Life | 84 | 800,000 | | Business |

**4. HAS ANY PERSON PROPOSED FOR INSURANCE:**

| | Yes | No |
|---|---|---|
| a. smoked cigarettes during the past 12 months? | ☐ | ☒ |
| b. smoked pipes or cigars during the past 12 months? | ☐ | ☒ |
| c. used any other tobacco products during the past 12 months? | ☐ | ☒ |

**8. BENEFICIARY** for benefits payable upon death of the proposed insured

Full Name / Age / Relationship
Primary: Margaret Stilwell  47  Wife 60%
Jamie Stilwell (14%) Heidi Stilwell (10%) Megan
Contingent Stilwell (10) Haley Stilwell (10%)
Stilwell Family Trust
Except as above directed: (a) the proceeds are to be divided equally among all persons who are named as Primary Beneficiary and who survive the insured, but if none survive, equally among all persons who are named as Contingent Beneficiary and who survive the insured. (b) The right to change the beneficiary is reserved.

**5. HAS ANY PERSON PROPOSED FOR INSURANCE:**

| | Yes | No |
|---|---|---|
| a. engaged, or intend to engage, in hang gliding, racing, scuba diving, sky diving? | ☐ | ☒ |
| b. had driver's license restricted, revoked or suspended? If yes, give driver's ID# | ☐ | ☒ |
| c. other life insurance applications pending? | ☐ | ☒ |
| d. ever had life or health insurance declined, modified or rated? | ☐ | ☒ |
| e. any intention of traveling or residing outside the U.S.? | ☐ | ☒ |
| f. any intention of replacing or changing any life insurance or annuity policy in force in this or any other company? | ☐ | ☒ |
| g. taken within five years or intend to take flights other than as fare-paying passenger on scheduled airlines? | ☐ | ☒ |

If any of 5a through 5f are answered Yes, give names & full details in REMARKS.
If Yes, complete Aviation Questionnaire

**9. NAME OF OWNER** if other than proposed insured  Relationship Wife
Address Margaret Stilwell
218 N Iowa
Atwood IL 61913
Social Security or Tax No. 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

**10. SPECIAL POLICY DATE, IF DESIRED**

**11. AMOUNT PAID WITH THIS APPLICATION:** $ 0

**12. REMARKS**

**AMENDMENTS AND CORRECTIONS** (for Home Office use only)
Plan RTg 10

THIS IS A REISSUED POLICY AND REPLACES ANY POLICY BEARING THIS NUMBER PRIOR TO 10-30-98

This application consists of Part A and one or more Parts B. This application is not a contract of insurance. A contract of insurance shall take effect only if a policy is issued on this application and the first premium is paid in full (a) during the lifetime of all proposed insureds and (b) while there is no change in the insurability and health of all such persons from that stated in this application. However, if cash is paid when this application is signed, the terms of the Conditional Receipt shall apply. It is represented that all statements and answers in this application are true, full and complete, and bind all parties in interest under any policy applied for. Only an authorized officer of our Company can make, void, waive or change any of the conditions or provisions of any application, policy or receipt or accept any risks or pass on insurability. Notice to or knowledge by an agent or medical examiner is not notice to or knowledge by us. Acceptance of any policy issued on this application shall mean acceptance of any change, correction, addition or amendment noted by us in the "Amendments and Corrections" Section. However, any such change shall require the written consent of the person or persons who sign this application. The Proposed Insured shall be the policy owner unless another owner is named above.

## DECLARATION

I have carefully read the receipt. I understand and agree to its terms including the conditions under which a limited amount of insurance may take effect before policy delivery. I have received the MIB, Inc. and Fair Credit Reporting Act Notices.

Signed at City Atwood  State IL

Signature of Proposed Insured  James E Stilwell

Signature of Spouse (Spouse Rider Only)

Date 3/2/98

Witness William Golyn
(LICENSED RESIDENT AGENT WHERE REQUIRED BY STATUTE OR REGULATION)

Signature of Owner (if 9 answered) Margaret Stilwell
SIGNATURE & TITLE OF OFFICER SIGNING FOR CORP. OR TRUSTEE

Form 4485-Q (Rev. 88)

FF-04001000-1048-1196
Supply Ordering Number-0420/000-1019-1196

**PART-B**   ntinuation of application for life insurance to
**OLD LINE LIFE** Insurance Company of America   238439
(returned to in this application as we/us/our)

| 1. PROPOSED INSURED (Person Named on 1a Part A) | A. Height _6_ ft. _1_ in. | B. Weight _320_ lbs. | C. Change in weight in past 12 months. (Give reason) _____ lbs.  Loss _____  Gain _____ |
|---|---|---|---|

| 2. FULL NAME(S) OF ADDITIONAL INDIVIDUAL(S) PROPOSED FOR INSURANCE (PLEASE PRINT) first  middle  last | DATE OF BIRTH month day year | Age | Sex | Place of Birth | Height ft. in. | Weight lbs. | Total Insurance in Force |
|---|---|---|---|---|---|---|---|
| a. SPOUSE OR PAYOR (If proposed for insurance) | | | | | | | |
| b. CHILDREN (If proposed for insurance and residing with Proposed Insured) | | | | | | | |

3. Name and address of your personal physician (if none, so state) DR. MANO hAn • Main Street Atwod IL 6/9/?
108 S. Main

QUESTIONS 4-8 PERTAIN TO ALL PERSONS NAMED ABOVE AND ARE TO BE ANSWERED TO THE BEST OF THE APPLICANT'S KNOWLEDGE AND BELIEF

GIVE FULL DETAILS IF ANSWER TO QUESTION 4 IS NO OR 5, 6, 7, 8 IS YES
Name of Person   Details, Dates, Doctors' Names & Addresses

| | Yes | No |
|---|---|---|
| 4. Are all persons proposed for insurance in good health? | ☒ | ☐ |
| 5. Has any person proposed for insurance any physical defect? | ☐ | ☒ |
| **6. HAS ANY PERSON PROPOSED FOR INSURANCE:** | | |
| a. received treatment or joined an organization for alcoholism or drug dependency or abuse; been advised to discontinue the use of alcohol or drugs? | ☐ | ☒ |
| b. used cocaine, barbiturates, amphetamines or any other drug which might cause a dependency, other than as prescribed by a licensed physician? | ☐ | ☒ |
| c. ever been diagnosed by or received medical treatment from a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ | ☒ |
| d. ever applied for or received disability benefits from any source? | ☐ | ☒ |
| **7. HAS ANY PERSON PROPOSED FOR INSURANCE EVER HAD:** | | |
| a. convulsions, epilepsy, paralysis, neuritis, sciatica, nervous breakdown, headache, dizziness, fainting spells, speech defect, nervous or mental disorder? | ☐ | ☒ |
| b. high blood pressure, chest pain, palpitation, heart attack, stroke, heart murmur, hemorrhage, rheumatic fever, disorder of heart or blood vessels? | ☐ | ☒ |
| c. persistent hoarseness or cough, shortness of breath, asthma, emphysema, tuberculosis, bronchitis, disorder of respiratory system? | ☐ | ☒ |
| d. recurrent indigestion, ulcer, colitis, diverticulitis, hernia, intestinal bleeding, appendicitis, disorder of stomach, liver, digestive or abdominal organs? | ☐ | ☒ |
| e. sugar, albumin, blood or pus in urine, kidney stone, diabetes, or disorder of kidneys, bladder, prostate, or genito-urinary organs? | ☐ | ☒ |
| f. arthritis, gout, disorder of muscles, bones, joints or spine? | ☐ | ☒ |
| g. impairment of vision or hearing or disorder of eyes, ears, nose or throat? | ☐ | ☒ |
| h. tumor, cyst, cancer, hemorrhoids, venereal disease, anemia, disorder of blood, skin, thyroid or other glands? | ☐ | ☒ |
| i. treatment or observation in any hospital or institution? (past 5 years) | ☐ | ☒ |
| j. X-ray or electrocardiograms? (past 5 years) | ☐ | ☒ |
| k. treatment or consultations with any physicians or practitioners, other than as stated above? (past 5 years) | ☐ | ☒ |
| 8. Is any person proposed for insurance now pregnant? (if so, how many months?) | ☐ | ☒ |

**COMPLETE IF PROPOSED INSURED UNDER AGE 15**
9. List life insurance in force on family. (if none, so state)

| | Age | Amount | | Amount |
|---|---|---|---|---|
| Father | | | Mother | |
| Brothers | | | Sisters | |

**COMPLETE IF PROPOSED INSURED AGE 15 OR OVER & NOT SELF-SUPPORTING**
10. Parent's/Spouse's full name ........................
11. Parent's/Spouse's occupation ........................
12. How much insurance does Parent/Spouse carry? ........................
13. Does Proposed Insured have an independent source of income? (state source) ........................

Owner (if other than parent) ........................

Signature of Proposed Insured _[signature]_

Signature of Spouse (If required) ........................

Witness _William John_
(LICENSED RESIDENT AGENT WHERE REQUIRED BY STATUTE OR REGULATION)

Signature of Owner (If required) ........................

Form 4485-Q (Rev. 88)

**PRODUCER'S REPORT**

Is policy intended to replace insurance or annuity in any company? ☐ Yes ☒ No   If Yes, give full details and attach any other papers required by state law.
Are you related to any person proposed for insurance? ☐ Yes ☒ No   If Yes, give details ........................
Estimate of Proposed Insured's Income:  Salary $ _150,000_   Other Income $ ........................   Net Worth $ _10,000,000_

| AGENCY OR BRANCH OFFICE | CODE NO. | PRODUCER'S NAME FOR RECORD PURPOSES (IF MORE THAN ONE INDICATE % SPLIT) | CODE NO. |
|---|---|---|---|
| | | William John Lyons | WCO90 |

I hereby certify that I personally solicited and completed this application; that I have no knowledge of anything which might affect the insurability of any person proposed for insurance which is not fully set forth herein.

_[signature]_ SIGNATURE OF PRODUCER

FF-04001000-1046-1196
Supply Ordering Number: 04201000-1019-1196

26 04663

# THE OLD LINE LIFE Insurance Company of America

**ANSWERS TO MEDICAL EXAMINER**

forming Part B of Application when used in connection with new Life Insurance

Agency # C0090

PART B

Proposed Insured  **Earl**          **Jason**          **Stilwell**  Birth Date .. **10** .... **?** .... **54** ..
First Name          Middle Initial          Last Name          Month    Day    Year

1. a. Name and address of your personal physician (if none, so state)
*Dr. Nathan Atwood, IL*

b. Date and reason last consulted?
*Bun infection - 1 yr ago*

c. What treatment was given or medication prescribed?
*Cold - Rx*

|  | Yes | No |
|---|---|---|
| 2. Have you smoked cigarettes during the past 12 months? Do you currently smoke pipes or cigars or use any other tobacco products? | ☐ ☐ | ☐ ☐ |
| 3. a. Have you received treatment or joined an organization for alcoholism or drug dependency or abuse; been advised to discontinue the use of alcohol or drugs? | ☐ | ☑ |
| b. Have you used cocaine, barbiturates, amphetamines or any other drug which might cause a dependency, other than as prescribed by a licensed physician? | ☐ | ☑ |
| 4. Have you ever had or been told you had or been treated for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ | ☑ |
| 5. Are you in good health? | ☑ | ☐ |
| 6. Do you have any physical defect? | ☐ | ☑ |
| 7. Have you ever been treated for or ever had any known indication of: | | |
| a. convulsions, epilepsy, paralysis, neuritis, sciatica, nervous breakdown, headache, dizziness, fainting spells, speech defect, nervous or mental disorder? | ☐ | ☑ |
| b. high blood pressure, chest pain, palpitation, heart attack, stroke, heart murmur, hemorrhage, rheumatic fever, disorder of heart or blood vessels? | ☐ | ☑ |
| c. persistent hoarseness or cough, shortness of breath, asthma, emphysema, tuberculosis, bronchitis, disorder of respiratory system? | ☐ | ☑ |
| d. recurrent indigestion, ulcer, colitis, diverticulitis, hernia, intestinal bleeding, appendicitis, disorder of stomach, liver, digestive or abdominal organs? | ☐ | ☑ |
| e. sugar, albumin, blood or pus in urine, kidney stone, diabetes, or disorder of kidneys, bladder, prostate, or genito-urinary organs? | ☐ | ☑ |
| f. arthritis, gout, disorder of muscles, bones, joints or spine? | ☐ | ☑ |
| g. impairment of vision or hearing or disorder of eyes, ears, nose or throat? | ☐ | ☑ |
| h. tumor, cyst, cancer, hemorrhoids, venereal disease, anemia, disorder of blood, skin, thyroid or other glands? | ☐ | ☑ |
| 8. Are you now under observation or taking treatment? | ☐ | ☑ |
| 9. Have you had any change in weight in the past year? | ☐ | ☑ |
| 10. Other than above, have you within the past 5 years: | | |
| a. Had any mental or physical disorder not listed above? | ☐ | ☑ |
| b. Had a checkup, consultation, illness, injury, surgery? | ☐ | ☑ |
| c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☐ | ☑ |
| d. Had electrocardiogram, X-ray, or other diagnostic test? | ☐ | ☑ |
| e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☑ |

|  | Yes | No |
|---|---|---|
| 11. Have you ever been deferred, rejected or discharged from military service or discharged because of a physical or mental condition? | ☐ | ☐ |
| 12. Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability? | ☐ | ☑ |
| 13. Family History: Tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? | ☐ | ☑ |

| | Age if Living? | Cause of Death | Age at Death? |
|---|---|---|---|
| Father | 64 | living + well | |
| Mother | 63 | living + well | |
| Brothers and Sisters No. Living | 1 Brother - Stephen - 21ths | | |
| No. Dead | 1 Sister 41 - living + well | | |

14. Females only:

|  | Yes | No |
|---|---|---|
| a. Have you ever had any disorder of menstruation, pregnancy or of the female organs or breasts? | ☐ | ☐ |
| b. Are you now pregnant? (If so, how many months?) | ☐ | ☐ |

Give full details in REMARKS if Answer to Question 5 is No, or if answer to Questions 2-4 or 6-14 is Yes. Identify question number and circle applicable items; include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.

**REMARKS**

I hereby declare that, to the best of my knowledge and belief, the information given above is correctly recorded, complete and true, and I agree that the Company, believing it to be true, shall rely and act upon it accordingly.

Date  **3 - 23 - 98**

Signature of Person Examined ....................
for adult applicant if person examined is under 15)

Signed at City *Urbana* ............ State *IL* ............  Witnessed by ....................  M.D.

Form 80P (Rev. 87)    The attached authorization should be dated and signed by the person examined    04201000-1032-1194 (Front)

TABLE OF PREMIUMS AT THE CURRENT AND MAXIMUM RATES FOR THE FACE AMOUNT
AND PREMIUM CLASS OF THIS POLICY.

WE MAY CHANGE THE CURRENT PREMIUM IN ACCORDANCE WITH THE RIGHT TO CHANGE
PREMIUM PROVISION.

| POLICY YEAR | CURRENT ANNUAL LIFE INSURANCE PREMIUM | MAXIMUM ANNUAL LIFE INSURANCE PREMIUM |
|---|---|---|
| 1- 10 | 20,350.00 | 20,350.00 |
| 11 | 127,510.00 | 165,910.00 |
| 12 | 142,990.00 | 185,950.00 |
| 13 | 161,950.00 | 210,550.00 |
| 14 | 183,430.00 | 238,510.00 |
| 15 | 207,430.00 | 269,710.00 |
| 16 | 235,030.00 | 305,470.00 |
| 17 | 266,470.00 | 346,390.00 |
| 18 | 302,470.00 | 393,190.00 |
| 19 | 342,550.00 | 445,270.00 |
| 20 | 385,870.00 | 501,790.00 |
| 21 | 432,190.00 | 561,790.00 |
| 22 | 479,710.00 | 623,710.00 |
| 23 | 524,950.00 | 682,510.00 |
| 24 | 569,350.00 | 740,350.00 |
| 25 | 616,510.00 | 801,430.00 |
| 26 | 670,150.00 | 871,270.00 |
| 27 | 735,910.00 | 956,590.00 |
| 28 | 814,270.00 | 1,064,710.00 |
| 29 | 902,950.00 | 1,189,630.00 |
| 30 | 1,001,350.00 | 1,339,630.00 |
| 31 | 1,108,750.00 | 1,526,710.00 |
| 32 | 1,220,950.00 | 1,759,150.00 |
| 33 | 1,339,390.00 | 2,045,710.00 |
| 34 | 1,465,270.00 | 2,397,910.00 |
| 35 | 1,595,230.00 | 2,832,190.00 |
| 36 | 1,726,990.00 | 3,366,070.00 |
| 37 | 1,860,430.00 | 3,827,830.00 |
| 38 | 1,977,430.00 | 3,827,830.00 |
| 39 | 2,080,030.00 | 3,827,830.00 |
| 40 | 2,198,470.00 | 3,827,830.00 |
| 41 | 2,359,870.00 | 3,827,830.00 |
| 42 | 2,591,470.00 | 3,827,830.00 |
| 43 | 2,892,070.00 | 3,827,830.00 |
| 44 | 3,245,110.00 | 3,827,830.00 |
| 45 | 3,646,990.00 | 3,827,830.00 |

80-RCT 79-8                    2604663              NEXT TO LAST PAGE

TABLE OF PREMIUMS AT THE CURRENT AND MAXIMUM RATES FOR THE FACE AMOUNT
AND PREMIUM CLASS OF THIS POLICY.   (CONTINUED)

| POLICY YEAR | CURRENT ANNUAL LIFE INSURANCE PREMIUM | MAXIMUM ANNUAL LIFE INSURANCE PREMIUM |
|---|---|---|
| 46 | 3,827,830.00 | 3,827,830.00 |
| 47 | 3,827,830.00 | 3,827,830.00 |
| 48 | 3,827,830.00 | 3,827,830.00 |
| 49 | 3,827,830.00 | 3,827,830.00 |
| 50 | 3,827,830.00 | 3,827,830.00 |
| 51 | 3,827,830.00 | 3,827,830.00 |

RENEWABLE LEVEL TERM LIFE POLICY -- INDETERMINATE PREMIUM
INSURANCE PAYABLE IN EVENT OF DEATH PRIOR TO EXPIRY DATE
PREMIUMS PAYABLE DURING TERM                    NO DIVIDENDS

For Value Received the undersigned hereby assign, transfer and set over to **Jan Ko Finance Group LLC.**
Address: **3320 Marquette Rd**
**Peru IL 61354**

its successors and assigns, (herein called the "Assignee") Policy No. **260 4 663** issued by the

(herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "Policy"), upon the life of **James E. Stilwell**

of **Atwood, IL 61913** and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof:
1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;
2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;
3. The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at any time, from other persons, and to pledge or assign the Policy as security for such loans or advances;
4. The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and
5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:
1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;
2. The right to designate and change the beneficiary;
3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:
1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed;
2. That the Assignee will not exercise either the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when due, nor until twenty days after the Assignee shall have mailed , by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and
3. That the Assignee will upon request forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.

F. The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefor to the Insurer. Checks for all or any part of the sums payable under the Policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee

G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, but any such amounts so paid by the Assignee from its own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall draw interest at a rate fixed by the Assignee from time to time not exceeding 6% per annum.

H. The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

I. The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

J. In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the Policy or rights of collateral security therein, the provisions of this assignment shall prevail.

K. Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to any assignment for the benefit of creditors.

| | | |
|---|---|---|
| x _William Jet Jay_ | (x) _Margaret Stilwell_ | 4/19/99 |
| Witness | Policyowner (if company owned, name of company & title of officer signing) | Date |
| | Soc. Sec./Tax ID# **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** | |
| x _Lawrence W Branch_ | (x) _Jane_ | 4/19/99 |
| Witness | Joint Insured/Owner, Assignee, Irrevocable Beneficiary or Spouse in Community Property State | Date |

Received and filed at the Home Office of The Old Line Life Insurance Company of America, 707 North Eleventh Street, P.O. Box 401, Milwaukee, Wisconsin 53201-0401.

Date: _____ By: _____

**EXHIBIT**
**2**

## INDIVIDUAL ACKNOWLEDGMENT

State of _____ Illinois _____

County of _____ Douglas _____ } ss:

On the _____ 19th _____ day of _____ April _____ 19 99 _____ , before me personally came

_____ Margaret Stilwell _____ , to me known to be the Individual _____ described in and who executed the

assignment on the reverse side hereof and acknowledged to me that _____ she _____ , executed the same.

_____ Notary Public

My commission expires _____ 6-22-00 _____

**OFFICIAL SEAL
RICHARD A HARRER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/22/00**

## CORPORATE ACKNOWLEDGMENT

State of _____

County of _____ } ss:

On the _____ day of _____ 19 _____ , before me personally came

_____ , who being by me duly sworn, did depose and say that he resides in

_____ that he is the _____ of _____ ,

the corporation described in and which executed the assignment on the reverse side hereof; that he knows the seal of said corporation; that
the seal affixed to said assignment is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and
that he signed his name thereto by like order.

_____
Notary Public

My commission expires _____

Duplicate received and filed at the home office of the Insurer in _____ Dallas TX _____ , this _____ day of _____ 19 _____

MAY 14 1999

By _____
Authorized Officer

NOTE: When executed by a corporation, the corporate seal should be affixed and there should be attached to the assignment a certified
copy of the resolution of the Board of Directors authorizing the signing officer to execute and deliver the assignment in the name and on
behalf of the corporation.

# THE OLD LINE LIFE Insurance Company of America



ADMINISTRATIVE OFFICES / PO BOX 35844 / DALLAS TX 75235 0844
214 654 6300 / 800 487 5433 / FAX 214 654 6008

May 14, 1999

JANKO FINANCIAL GROUP
2320 MARQUETTE RD
PERU IL 61354

Re:   Insured, James Stillwell
      Policy Number   2604663
      Owner, James Stillwell

```
**********************************
*                                *
*     ASSIGNMENT VERIFICATION    *
*                                *
**********************************
```

The original document submitted to place an assignment on this policy
has been endorsed, recorded and made a part of the policy records.

The original copy of this assignment is attached for your records.

If this assignment is released or transferred, please notify us in
writing.

Prepared By:  Title Change Unit
              Policyowner Service Department

Attachment

cc:

An American General Company            ***** TA *****

EXHIBIT
3

SEP 08 2000 15:06 FR AG-DALLAS SERV CTR    2146546022 TO 912175783568    P.02/03

**POOR ORIGINAL**

ADMINISTRATIVE OFFICE
PO Box 35844
Dallas TX 75235 8683
800 487 6433/214 654 6300/FAX 214 654 6001

## THE OLD LINE LIFE Insurance Company of America
### An American General Company

## ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL

1,500,000

A. For Value Received the undersigned hereby assign, transfer and set over to _____
JANKO Financial Group LLC    2200 MARQUETTA RD. PERU FL 61354
PLEASE PRINT FULL NAME AND ADDRESS OF ASSIGNEE
its successors and assigns, (herein called the "Assignee") Policy No. 2604463
Company (herein called "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being
herein called the "Policy") upon the life of JAMES E. Stilwell _____
of ATWOOD, FL 61913 _____ and all claims, options, privileges, rights, title and interest therein
and thereunder (except as provided in Paragraph C hereof) subject to all the terms and conditions of the Policy and to all superior
liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the
Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this
assignment and pass by virtue hereof:
   1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;
   2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and
      at such other times as the Insurer may allow;
   3. The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at any time, from other persons,
      and to pledge or assign the Policy as security for such loans or advances;
   4. The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy now or
      hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided,
      that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend
      deposits and additions shall continue on the plan in force at the time of this assignment; and
   5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive
      all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from
this assignment and do not pass by virtue hereof:
   1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;
   2. The right to designate and change the beneficiary;
   3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these
      rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other
      right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made
      subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them,
to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned
and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:
   1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured
      or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment
      not been executed;
   2. That the Assignee will not exercise either the right to surrender the Policy (except for the purpose of paying premiums) the right
      to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when
      due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the address last supplied
      in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and
   3. That the Assignee will forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or
      change of beneficiary or any election of an optional mode of settlement.

The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action
taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice
under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee.
The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole
receipt of the Assignee for any sums received shall be a full discharge and release therefor to the Insurer. Checks for all or any part
of the sums payable under the Policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, then, and in such
amounts as may be requested by the Assignee.

The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy
whether or not obtained by the Assignee, or any other charges on the Policy, but any such amounts so paid by the Assignee from its
own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall draw interest at a rate fixed by
the Assignee from time to time not exceeding 8% per annum.

The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except
as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or
assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may
grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee
shall determine, the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any
right permitted under this assignment, without resorting or regard to other security.

In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with
respect to the Policy or rights of collateral security therein, the provisions of this assignment shall prevail.

Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to
any assignment for the benefit of creditors.



EXHIBIT
4
tabbies®

SEP 08 2000 15:07 FR AG-DALLAS SERV CTR    2146546822 TO 912175783560    00059605576

Signed this _____ 25 __ day of _September_____ 2000 ___ YEAR

In the presence of:

_William John Ayers_____    _Margaret Stilwell_____
F. I. J. o   NG                 SIGNED OR OWNER OR OTHER THAN INSURED

_____    OTHER REQUIRED SIGNATURE

_____    OTHER REQUIRED SIGNATURE

**POOR ORIGINAL**

CORPORATE ACKNOWLEDGEMENT

STATE OF _ILLINOIS_____  } ss.
COUNTY OF _DOUGLAS_____  }

On the _25TH_ of _September__ _2000_ before me personally came _MARGARET STILWELL_
                      YEAR
who being by me duly sworn, did depose and say that she resides in _Arcola, IL_ that she is
the _Vice President_ of _Ansur Mar Series Inc._ the corporation described in and which executed the foregoing instrument; that he
knows the seal of said corporation; that the seal affixed to said assignment is such corporate seal; that it was so affixed by order of the
Board of Directors of said corporation, and that he signed his name thereto by like order.

> **OFFICIAL SEAL**
> GERALD V. ALEXANDER
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES 4/03/02

_____
        NOTARY PUBLIC

My commission expires ___4-3-02___

**HOME OFFICE USE ONLY**

This is to certify that the original of this collateral Assignment has been recorded with the Company.

Dated in _Dallas TX_ this _____ day of _____    OCT 0 2 2000
                                                                              YEAR

By _____ AUTHORIZED OFFICER