E-FILED
Monday, 02 April, 2007 04:47:35 PM
Clerk, U.S. District Court, ILCD

| TUSCOLA FURNITURE GROUP, LLC<br>2220 MARQUETTE ROAD<br>PERU, IL 61354 | FIRST MID-ILLINOIS BANK & TRUST,<br>N.A.<br>410 S MAIN, P.O. BOX 18<br>TUSCOLA, IL 61953 | Loan Number 2150044 <br>Date NOVEMBER 17, 2000 <br>Maturity Date APRIL 16, 2002 <br>Loan Amount $ 1,000,000.00 <br>Renewal Of _____ <br>: ID#: 36-4391423 |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, joint and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of ONE MILLION AND NO/100*
* * * * * * * * * * * * * * * * * * * * * * Dollars $ 1,000,000.00

☐ **Single Advance:** I will receive all of this principal sum on _____. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On NOV. 17, 2000 _____ I will receive the amount of $ _____ and future principal advances are contemplated.

**Conditions:** The conditions for future advances are UPON REQUEST OF TUSCOLA FURNITURE GROUP, LLC, MANAGER JANKO FINANCIAL GROUP, LLC, AUTHORIZED MEMBERS RICHARD JANKO OR MICHAEL JANKO, BASED ON INVOICES, NOT TO EXCEED 80% OF ACTUAL COST OF INVENTORY

☒ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on APRIL 16, 2002

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from NOVEMBER 17, 2000 at the rate of 9.500 % per year until JANUARY 16, 2001

☒ **Variable Rate:** This rate may then change as stated below.

☒ **Index Rate:** The future rate will be EQUAL TO the following index rate: HIGHEST PRIME RATE AS LISTED IN THE MONEY RATE SECTION OF THE WALL STREET JOURNAL

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ **Frequency and Timing:** The rate on this note may change as often as QUARTERLY
A change in the interest rate will take effect THE 16TH DAY OF EACH JANUARY, APRIL, JULY & OCTOBER

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____.

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☒ The amount of each scheduled payment will change. ☒ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/365 basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than 10 days after it is due, I agree to pay a late charge of 5.000% OF THE LATE PAYMENT WITH A MAXIMUM OF $25.00

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:

☒ **Interest:** I agree to pay accrued interest ON DEMAND, BUT IF NO DEMAND IS MADE THEN ON THE 16TH DAY OF EACH MONTH BEGINNING DECEMBER 16, 2000

☒ **Principal:** I agree to pay the principal ON DEMAND, BUT IF NO DEMAND IS MADE THEN ON APRIL 16, 2002

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____ and will be due _____. A payment of $ _____ will be due _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____

**ADDITIONAL TERMS:**

INVENTORY CHECKS WILL BE CONDUCTED MONTHLY BY A REPRESENTATIVE OF THE BORROWER AND/OR A BANK OFFICER AT THE BANK'S SOLE DISCRETION. A REPORT DETAILING THE FINDINGS OF THE INVENTORY CHECK WILL BE FORWARDED TO THE BANK FOR REVIEW WITHIN THREE BUSINESS DAYS. THE LINE OF CREDIT AGREEMENT OF EVEN DATE WITH THIS NOTE. IT IS EXPRESSLY UNDERSTOOD THAT FIRST MID-ILLINOIS BANK & TRUST WILL ADVANCE UP TO AN AMOUNT NOT TO EXCEED 80% OF THE ACTUAL COST OF INVENTORY. ASSIGNMENT OF UCC-1 AND SECURITY AGREEMENT ORIGINIALLY EXECUTED BY AMISHLAND'S COUNTRY VILLAGE, INC., DEBTOR AND GRANTED TO TUSCOLA FURNITURE GROUP. 500,000 PERSONAL GUARANTY FROM RICHARD F JANKO.

| **SECURITY:** This note is separately secured by (describe separate document by type and date): SECURITY AGREEMENT & UCC-1 AGREEMENT SIGNED EVEN DATE TO THIS NOTE; ASSIGNMENT OF SECURITY AGREEMENT & UCC-1 FROM CONSIGNOR; PERSONAL GUARANTY<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is BUSINESS: FLOOR PLAN FURNITURE INVENTORY<br><br>☒ **CONFESSION OF JUDGMENT:** I agree to the terms of the "Confession of Judgment" paragraph on page 2.<br>**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date. |
| Signature for Lender<br><br>_Thomas J. Chamberlain_ (signature)<br>THOMAS J CHAMBERLAIN | TUSCOLA FURNITURE GROUP, LLC BY ITS MANAGER:<br>JANKO FINANCIAL GROUP, LLC<br><br>BY: _(signature)_<br>RICHARD F JANKO, AUTHORIZED MEMBER |

UNIVERSAL NOTE
© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-IL 4/9/96

000137

EXHIBIT
17

*(page 1 of 2)*

EFINITIONS—As used on page 1 a "□" means the terms that apply to
is loan. "I," "me" or "my" means each Borrower who signs this note
d each other person or legal entity (including guarantors, endorsers,
d sureties) who agrees to pay this note (together referred to as "us").
"ou" or "your" means the Lender and its successors and assigns.
PPLICABLE LAW: The law of the state of Illinois will govern this note.
ny term of this note which is contrary to applicable law will not be
ffective, unless the law permits you and me to agree to such a variation.
any provision of this agreement cannot be enforced according to its
rms, this fact will not affect the enforceability of the remainder of this
reement. No modification of this agreement may be made without your
xpress written consent. Time is of the essence in this agreement.
YMENTS: Each payment I make on this note will first reduce the
mount I owe you for charges which are neither interest nor principal.
e remainder of each payment will then reduce accrued unpaid interest,
d then unpaid principal. If you and I agree to a different application of
yments, we will describe our agreement on this note. I may prepay a
rt of, or the entire balance of this loan without penalty, unless we
ecify to the contrary on this note. Any partial prepayment will not
cuse or reduce any later scheduled payment until this note is paid in full
nless, when I make the prepayment, you and I agree in writing to the
ntrary).
TEREST: Interest accrues on the principal remaining unpaid from time
time, until paid in full. If I receive the principal in more than one
vance, each advance will start to earn interest only when I receive the
vance. The interest rate in effect on this note at any given time will
ply to the entire principal advanced at that time. Notwithstanding
ything to the contrary, I do not agree to pay and you do not intend to
arge any rate of interest that is higher than the maximum rate of
erest you could charge under applicable law for the extension of credit
at is agreed to here (either before or after maturity). If any notice of
erest accrual is sent and is in error, we mutually agree to correct it,
d if you actually collect more interest than allowed by law and this
reement, you agree to refund it to me.
DEX RATE: The index will serve only as a device for setting the rate on
s note. You do not guarantee by selecting this index, or the margin,
at the rate on this note will be the same rate you charge on any other
ans or class of loans to me or other borrowers.
CCRUAL METHOD: The amount of interest that I will pay on this loan
ll be calculated using the interest rate and accrual method stated on
ge 1 of this note. For the purpose of interest calculation, the accrual
thod will determine the number of days in a "year." If no accrual
thod is stated, then you may use any reasonable accrual method for
lculating interest.
ST MATURITY RATE: For purposes of deciding when the "Post
aturity Rate" (shown on page 1) applies, the term "maturity" means the
te of the last scheduled payment indicated on page 1 of this note or
e date you accelerate payment on the note, whichever is earlier.
NGLE ADVANCE LOANS: If this is a single advance loan, you and I
pect that you will make only one advance of principal. You may
y add other amounts to the principal if you make any payments
scribed in the "PAYMENTS BY LENDER" paragraph below.
ULTIPLE ADVANCE LOANS: If this is a multiple advance loan, you and I
pect that you will make more than one advance of principal. If this is
osed end credit, repaying a part of the principal will not entitle me to
ditional credit.
YMENTS BY LENDER: If you are authorized to pay, on my behalf,
arges I am obligated to pay (such as property insurance premiums),
en you may treat those payments made by you as advances and add
em to the unpaid principal under this note, or you may demand
mediate payment of the charges.
T-OFF: I agree that you may set off any amount due and payable under
s note against any right I have to receive money from you.
    "Right to receive money from you" means:
    (1) any deposit account balance I have with you;
    (2) any money owed to me on an item presented to you or in your
        possession for collection or exchange; and
    (3) any repurchase agreement or other nondeposit obligation.
    "Any amount due and payable under this note" means the total
amount of which you are entitled to demand payment under the terms of
is note at the time you set off. This total includes any balance the due
te for which you properly accelerate under this note.
    If my right to receive money from you is also owned by someone who
s not agreed to pay this note, your right of set-off will apply to my
erest in the obligation and to any other amounts I could withdraw on
y sole request or endorsement. Your right of set-off does not apply to
account or other obligation where my rights are only as a
presentative. It also does not apply to any Individual Retirement
count or other tax-deferred retirement account.
    You will not be liable for the dishonor of any check when the dishonor
curs because you set off this debt against any of my accounts. I agree
hold you harmless from any such claims arising as a result of your
ercise of your right of set-off.
AL ESTATE OR RESIDENCE SECURITY: If this note is secured by real
tate or a residence that is personal property, the existence of a default
d your remedies for such a default will be determined by applicable
w, by the terms of any separate instrument creating the security
terest and, to the extent not prohibited by law and not contrary to the
rms of the separate security instrument, by the "Default" and
medies" paragraphs herein.

DEFAULT: I will be in default if any one or more of the following occur: (1) I
fail to make a payment on time or in the amount due; (2) I fail to keep the
property insured, if required; (3) I fail to pay, or keep any promise, on any
debt or agreement I have with you; (4) any other creditor of mine attempts to
collect any debt I owe him through court proceedings; (5) I die, am declared
incompetent, make an assignment for the benefit of creditors, or become
insolvent (either because my liabilities exceed my assets or I am unable to
pay my debts as they become due); (6) I make any written statement or
provide any financial information that is untrue or inaccurate at the time it
was provided; (7) I do or fail to do something which causes you to
believe that you will have difficulty collecting the amount I owe you; (8)
any collateral securing this note is used in a manner or for a purpose
which threatens confiscation by a legal authority; (9) I change my name
or assume an additional name without first notifying you before making
such a change; (10) I fail to plant, cultivate and harvest crops in due
season if I am a producer of crops; (11) any loan proceeds are used for a
purpose that will contribute to excessive erosion of highly erodible land or
to the conversion of wetlands to produce an agricultural commodity, as
further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.
REMEDIES: If I am in default on this note you have, but are not limited to,
the following remedies:
    (1) You may demand immediate payment of all I owe you under this
        note (principal, accrued unpaid interest and other accrued charges).
    (2) You may set off this debt against any right I have to the payment
        of money from you, subject to the terms of the "Set-Off"
        paragraph herein.
    (3) You may demand security, additional security, or additional parties
        to be obligated to pay this note as a condition for not using any
        other remedy.
    (4) You may refuse to make advances to me or allow purchases on
        credit by me.
    (5) You may use any remedy you have under state or federal law.
By selecting any one or more of these remedies you do not give up your
right to later use any other remedy. By waiving your right to declare an
event to be a default, you do not waive your right to later consider the
event as a default if it continues or happens again.
CONFESSION OF JUDGMENT: In addition to your remedies listed herein, I
authorize any attorney to appear in any court of record having jurisdiction
over this matter and to confess judgment, without process, against me,
in favor of you, for any unpaid principal, accrued interest and accrued
charges due on this agreement, together with collection costs including
reasonable attorney's fees.
COLLECTION COSTS AND ATTORNEY'S FEES: I agree to pay all costs of
collection, replevin or any other or similar type of cost if I am in default.
In addition, if you hire an attorney to collect this note, I also agree to pay
any fee you incur with such attorney plus court costs (except where
prohibited by law). To the extent permitted by the United States
Bankruptcy Code, I agree to pay the reasonable attorney's fees and
costs you incur to collect this debt as awarded by any court exercising
jurisdiction under the Bankruptcy Code.
WAIVER: I give up my rights to require you to do certain things. I will not
require you to:
    (1) demand payment of amounts due (presentment);
    (2) obtain official certification of nonpayment (protest); or
    (3) give notice that amounts due have not been paid (notice of
        dishonor).
    I waive any defenses I have based on suretyship or impairment of
collateral.
OBLIGATIONS INDEPENDENT: I understand that I must pay this note
even if someone else has also agreed to pay it (by, for example, signing
this form or a separate guarantee or endorsement). You may sue me
alone, or anyone else who is obligated on this note, or any number of us
together, to collect this note. You may do so without any notice that it
has not been paid (notice of dishonor). You may without notice release
any party to this agreement without releasing any other party. If you give
up any of your rights, with or without notice, it will not affect my duty to
pay this note. Any extension of new credit to any of us, or renewal of
this note by all or less than all of us will not release me from my duty to
pay it. (Of course, you are entitled to only one payment in full.) I agree
that you may at your option extend this note or the debt represented by
this note, or any portion of the note or debt, from time to time without
limit or notice and for any term without affecting my liability for payment
of the note. I will not assign my obligation under this agreement without
your prior written approval.
CREDIT INFORMATION: I agree and authorize you to obtain credit
information about me from time to time (for example, by requesting a
credit report) and to report to others your credit experience with me (such
as a credit reporting agency). I agree to provide you, upon request, any
financial statement or information you may deem necessary. I warrant
that the financial statements and information I provide to you are or will
be accurate, correct and complete.
NOTICE: Unless otherwise required by law, any notice to me shall be
given by delivering it or by mailing it by first class mail addressed to me
at my last known address. My current address is on page 1. I agree to
inform you in writing of any change in my address. I will give any notice
to you by mailing it first class to your address stated on page 1 of this
agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| /  / | $ | | $ | $ | % | $ | /  / |
| /  / | $ | | $ | $ | % | $ | /  / |
| /  / | $ | | $ | $ | % | $ | /  / |
| /  / | $ | | $ | $ | % | $ | /  / |
| /  / | $ | | $ | $ | % | $ | /  / |
| /  / | $ | | $ | $ | % | $ | /  / |
| /  / | $ | | $ | $ | % | $ | /  / |
| /  / | $ | | $ | $ | % | $ | /  / |
| /  / | $ | | $ | $ | % | $ | /  / |
| /  / | $ | | $ | $ | % | $ | /  / |

*(page 2 of 2)*

1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-IL 4/9/96

## LOAN EXTENSION AGREEMENT

Note No. __2150095387__

TUSCOLA      ILLINOIS
CITY      STATE

$ __1,000,000.00 LINE OF CREDIT NOTE__     Date __4-3-2002__

| Amount Financed | FINANCE CHARGE | ANNUAL PERCENTAGE RATE | Total of Payments |
|---|---|---|---|
| $ | $ | % | $ |
| This is the amount you are borrowing. | This is the dollar amount this loan will cost you. | This is what your loan will cost as a yearly rate of interest. | This is the total amount you will pay if you make all payments as scheduled. |

IT IS HEREBY AGREED that the above numbered note, or payment, on which there is an unpaid balance o

__AN OPEN ONE MILLION AND NO/100 LINE OF CREDIT__ ($ __1,000,000.00__ ) DOLLARS,

shall be and is hereby extended to become due __ON APRIL 16, 2003, WHEN ALL UNPAID PRINCIPAL__
EXPLAIN

__AND INTEREST SHALL BE DUE AND PAYABLE__

and the undersigned, in consideration of the extension of time for payment, does hereby agree to pay a fee of

$ __0.00__ and further agrees to pay the said note, or payment, as above specified together with interest at

the rate of __4.75% VARIABLE__ per cent per annum, payable __MONTHLY__
EXPLAIN (MONTHLY - SEMI-ANNUALLY)

from __MARCH 16, 2002__ , __19__ until the maturity as herein specified and at the highest rate allowed

by law, from maturity until fully paid. All terms and conditions of the original note and any security thereto attached is fully incorporated herein and fully ratified except as specifically modified by this extension agreement.

**By executing this Extension Agreement, the undersigned acknowledge receipt of a completely filled-in copy prior to consummation.**

**FIRST MID-ILLINOIS BANK & TRUST, N.A.**
CREDITOR

By _Thomas J Chamberl_

TUSCOLA COMMUNITY PRESIDENT
TITLE

TUSCOLA FURNITURE GROUP, LLC BY ITS
MANAGER: JANKO FINANCIAL GROUP, LLC
CUSTOMER

BY: _J Janko_
CUSTOMER

RICHARD F. JANKO, AUTHORIZED MEMBER

**AN EQUAL OPPORTUNITY LENDER**

000138

## LOAN EXTENSION AGREEMENT

Note No. 2150095387                              CHAMPAIGN                    IL
                                                 CITY                         STATE

$ 85,409.00                                      Date APRIL 10, 2003
*THE LINE OF CREDIT FEATURE IS NOT EXTENDED.

| Amount Financed | FINANCE CHARGE | ANNUAL PERCENTAGE RATE | Total of Payments |
|---|---|---|---|
| $ | $ | % | $ |
| This is the amount you are borrowing. | This is the dollar amount this loan will cost you. | This is what your loan will cost as a yearly rate of interest. | This is the total amount you will pay if you make all payments as scheduled. |

IT IS HEREBY AGREED that the above numbered note, or payment, on which there is an unpaid balance o

EIGHTY-FIVE THOUSAND FOUR HUNDRED NINE & NO/100 ($ 85,409.00   ) DOLLARS,

shall be and is hereby extended to become due APRIL 16, 2004, when all unpaid principa
                                                                    EXPLAIN

and interest shall be due and payable.

and the undersigned, in consideration of the extension of time for payment, does hereby agree to pay a fee o

$ 0.00             and further agrees to pay the said note, or payment, as above specified together with interest a

the rate of 4.25% Variable per cent per annum, payable Monthly
                                                         EXPLAIN (MONTHLY - SEMI-ANNUALLY)

from MARCH 16                , 2003 until the maturity as herein specified and at the highest rate allowed

by law, from maturity until fully paid. All terms and conditions of the original note and any security thereto attached i
fully incorporated herein and fully ratified except as specifically modified by this extension agreement

**By executing this Extension Agreement, the undersigned acknowledge receipt of a completely filled-ir copy prior to consummation.**

FIRST MID-ILLINOIS BANK & TRUST, N.A.            TUSCOLA FURNITURE GROUP, LLC
               CREDITOR                          ITS MANAGER:JANKO FINANCIAL G
                                                 LLC
By _____                                        CUSTOMER

COMMUNITY PRESIDENT     **AN EQUAL OPPORTUNITY LENDER**    RICHARD F. JANKO, AUTHORIZED
        TITLE                                            MEMBER

000139

TUSCOLA FURNITURE GROUP
2220 MARQUETTE ROAD
PERU, IL 61354

FIRST ILLINOIS BANK & TRUST, N.A.
410 S MAIN, P.O. BOX 18
TUSCOLA, IL 61953

TAXPAYER I.D. NUMBER : 36-4391423

| DEBTOR'S NAME, ADDRESS AND SSN OR TIN<br>("I" means each Debtor who signs.) | SECURED PARTY'S NAME AND ADDRESS<br>("You" means the Secured Party, its successors and assigns.) |
|---|---|

I am entering into this security agreement with you on _____ NOVEMBER 17, 2000 _____ (date).

**SECURED DEBTS.** I agree that this security agreement will secure the payment and performance of the debts, liabilities or obligations described below that (Check one) ☐ I XX (name) TUSCOLA FURNITURE GROUP, LLC _____

(Check one below):

☐ **Specific Debt(s).** The debt(s), liability or obligations evidenced by (describe): _____ owe(s) to you now or in the future:

_____ and all extensions, renewals, refinancings, modifications and replacements of the debt, liability or obligation.

XX **All Debt(s).** Except in those cases listed in the "LIMITATIONS" paragraph on page 2, each and every debt, liability and obligation of every type and description (whether such debt, liability or obligation now exists or is incurred or created in the future and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several or joint and several).

**Security Interest.** To secure the payment and performance of the above described Secured Debts, liabilities and obligations, I give you a security interest in all of the property described below that I now own and that I may own in the future (including, but not limited to, all parts, accessories, repairs, improvements, and accessions to the property), wherever the property is or may be located, and all proceeds and products from the property.

XX **Inventory:** All inventory which I hold for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

☐ **Equipment:** All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will also be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.

☐ **Farm Products:** All farm products including, but not limited to:
(a) all poultry and livestock and their young, along with their products, produce and replacements;
(b) all crops, annual or perennial, and all products of the crops; and
(c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

XX **Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment:** All rights I have now and that I may have in the future to the payment of money including, but not limited to:
(a) payment for goods and other property sold or leased or for services rendered, whether or not I have earned such payment by performance; and
(b) rights to payment arising out of all present and future debt instruments, chattel paper and loans and obligations receivable.
The above include any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.

XX **General Intangibles:** All general intangibles including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of any preexisting, current or future Federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and the ASCS).

XX **The secured property includes, but is not limited by, the following:** ALL ORIGINALLY MADE AND CRAFTED AMISH FURNITURE, FULLY FINISHED, AND AMISH STYLE FURNITURE MADE BY OTHERS, PLUS OTHER FURNITURE COMPLIMENTARY TO, BUT NOT CURRENTLY PRODUCED BY AMISH MANUFACTURERS, BUT DOES NOT INCLUDE CRAFTS, LAMPS, PICTURES AND ACCESSORIES OTHER THAN WOOD PRODUCTS WHETHER AMISH MADE OR NOT

If this agreement covers timber to be cut, minerals (including oil and gas), fixtures or crops growing or to be grown, the legal description is:

FURNITURE COVERED BY THIS SECURITY AGREEMENT IS TO BE KEPT, PRESERVED, REPAIRED AND MAINTAINED AT THE FOLLOWING LOCATIONS:

1. 1304 TUSCOLA BLVD., TUSCOLA, ILLINOIS 61953
2. EAST ROUTE 36, ATWOOD, ILLINOIS 61913
3. 123 N. MAIN ST., ATWOOD, ILLINOIS 61913
4. 601 & 603 S. MAIN ST., TUSCOLA, ILLINOIS 61953
   (1 BUILDING OCCUPYING 2 LOTS)

I am a(n) ☐ individual ☐ partnership ☐ corporation
XX LIMITED LIABILITY COMPANY
☐ If checked, file this agreement in the real estate records.
Record Owner (if not me): _____

The property will be used for ☐ personal XX business
☐ agricultural _____ reasons.

FIRST MID-ILLINOIS BANK & TRUST, N.A.
_____
(Secured Party's Name)
By: _____ Thomas J. Chamberlain _____
THOMAS J CHAMBERLAIN
Title: VICE PRESIDENT

**I AGREE TO THE TERMS SET OUT ON BOTH PAGE 1 AND PAGE 2 OF THIS AGREEMENT.** I have received a copy of this document on today's date.

TUSCOLA FURNITURE GROUP, LLC BY ITS MANAGER:
_____
(Debtor's Name)
JANKO FINANCIAL GROUP, LLC

By: _____ Richard F. Janko _____
RICHARD F. JANKO

Title: AUTHORIZED MEMBER

By: _____
Title: _____

© 1986, 1990 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341) SECURITY AGREEMENT FORM SA 8/5/91

000140 (page 1 of 2)

**GENERALLY -** "You" means the Secured Party identified on page 1 of this agreement. "I," "me" and "my" means each person who signs this security agreement as Debtor and who agrees to give the property described in this agreement as security for the Secured Debts. All terms and duties under this agreement are joint and individual. No modification of this security agreement is effective unless made in writing and signed by you and me. This security agreement remains in effect, even if the note is paid and I owe no other debt to you, until discharged in writing. Time is of the essence in this agreement.

**APPLICABLE LAW -** I agree that this security agreement will be governed by the law of the state in which you are located. If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the property is located.

To the extent permitted by law, the terms of this agreement may vary applicable law. If any provision of applicable law may not be varied by agreement, any provision of this agreement that does not comply with that law will not be effective. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement.

**OWNERSHIP AND DUTIES TOWARD PROPERTY -** I represent that I own all of the property, or to the extent this is a purchase money security interest I will acquire ownership of the property with the proceeds of the loan. I will defend it against any other creditor. Your claim to the property is ahead of the claims of any other creditor. I agree to do whatever you require to protect your security interest and to keep your claim in the property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the property.

I will keep the property in my possession and will keep it in good repair and use it only for the purpose(s) described on page 1 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the property and, if I am not, that I have provided you with a list of prior owners of the property.

I will keep the property at my address listed on page 1 of this agreement, unless we agree I may keep it at another location. If the property is to be used in another state, I will give you a list of those states. I will not try to sell the property unless it is inventory or I receive your written permission to do so. If I sell the property I will have the payment made payable to the order of you and me.

You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent (1) a beneficial interest in the debtor is sold or transferred or (2) there is a change in either the identity or number of members of a partnership or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

I will pay all taxes and charges on the property as they become due. You have the right of reasonable access in order to inspect the property. I will immediately inform you of any loss or damage to the property.

**LIMITATIONS -** This agreement will not secure a debt described in the section entitled "Secured Debts" on page 1:
1) if you fail to make any disclosure of the existence of this security interest required by law for such other debt;
2) if this security interest is in my principal dwelling and you fail to provide (to all persons entitled) any notice of right of rescission required by law for such other debt;
3) to the extent that this security interest is in "household goods" and the other debt to be secured is a "consumer" loan (as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices);
4) if this security interest is in margin stock subject to the requirements of 12 C.F.R. Section 207 or 221 and you do not obtain a statement of purpose if required under these regulations with respect to that debt; or
5) if this security interest is unenforceable by law with respect to that debt.

**PURCHASE MONEY SECURITY INTEREST -** For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any non-purchase money loan also secured by this agreement will not be deemed to apply to the purchase money loan, and (b) payments on the purchase money loan will be deemed to apply first to the non-purchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items of collateral were acquired or if acquired at the same time, in the order selected by you. No security interest will be terminated by application of this formula. "Purchase money loan" means any loan the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**AUTHORITY OF SECURED PARTY TO MAKE ADVANCES AND PERFORM FOR DEBTOR -** I agree to pay you on demand any sums you advanced on my behalf including, but not limited to, expenses incurred in collecting, insuring, conserving, or protecting the property or in any inventories, audits, inspections or other examinations by you in respect to the property. If I fail to pay such sums, you may do so for me, adding the amount paid to the other amounts secured by this agreement. All such sums will be due on demand and will bear interest at the highest rate provided in any agreement, note or other instrument evidencing the Secured Debt(s) and permitted by law at the time of the advance.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. I understand that this authorization includes, but is not limited to, permission to: (1) prepare, file, and sign my name to any necessary reports or accountings; (2) notify any account debtor of your interest in this property and tell the account debtor to make the payments to you or someone else you name, rather than me; (3) place on any chattel paper a note indicating your interest in the property; (4) in my name, demand, collect, receive and give a receipt for, compromise, settle, and handle any suits or other proceedings involving the collateral; (5) take any action you feel is necessary in order to realize on the collateral, including performing any part of a contract or endorsing it in my name; and (6) make an entry on my books and records showing the existence of the security agreement. Your right to perform for me shall not create an obligation to perform and your failure to perform will not preclude you from exercising any of your other rights under the law or this security agreement.

**INSURANCE -** I agree to buy insurance on the property against the risks and for the amounts you require and to furnish you continuing proof of coverage. I will have the insurance company name you as loss payee on any such policy. You may require added security if you agree that insurance proceeds may be used to repair or replace the property. I will buy insurance from a firm licensed to do business in the state where you are located. The firm will be reasonably acceptable to you. The insurance will last until the property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

**WARRANTIES AND REPRESENTATIONS -** If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to me or which I take back in trust for you. I will not mix them with any other property of mine. I will deliver them to you at your request. If you ask me to pay you the full price on any returned items or items retaken by myself, I will do so.

If this agreement covers inventory, I will not dispose of it except in my ordinary course of business at the fair market value for the property, or at a minimum price established between you and me.

If this agreement covers farm products I will provide you, at your request, a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products. In addition to those parties named on this written list, I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of my agreement with you and the Food Security Act. In this paragraph the terms farm products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

**DEFAULT -** I will be in default if any one or more of the following occurs: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) I change my name or address without first notifying you before making such a change; (9) failure to plant, cultivate and harvest crops in due season; (10) if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES -** If I am in default on this agreement, you have the following remedies:
1) You may demand immediate payment of all I owe you under any obligation secured by this agreement.
2) You may set off any obligation I have to you against any right I have to the payment of money from you.
3) You may demand more security or new parties obligated to pay any debt I owe you as a condition of giving up any other remedy.
4) You may make use of any remedy you have under state or federal law.
5) If I default by failing to pay taxes or other charges, you may pay them (but you are not required to do so). If you do, I will repay to you the amount you paid plus interest at the highest contract rate.
6) You may require me to gather the property and make it available to you in a reasonable fashion.
7) You may repossess the property and sell it as provided by law. You may repossess the property so long as the repossession does not involve a breach of the peace or an illegal entry onto my property. You may sell the property as provided by law. You may apply what you receive from the sale of the property to: your expenses; your reasonable attorneys' fees and legal expenses (where not prohibited by law); any debt I owe you. If what you receive from the sale of the property does not satisfy the debts, you may take me to court to recover the difference (where permitted by law).
   I agree that if any written notice sent to my address listed on page 1 by first class mail will be reasonable notice to me under the Uniform Commercial Code.
   If any items not otherwise subject to this agreement are contained in the property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.
8) In some cases, you may keep the property to satisfy the debt. You may enter upon and take possession of all or any part of my property, so long as you do not breach the peace or illegally enter onto the property, including lands, plants, buildings, machinery, and equipment as may be necessary to permit you to manufacture, produce, process, store or sell or complete the manufacture, production, processing, storing or sale of any of the property and to use and operate the property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

By choosing any one or more of these remedies, you do not waive your right to later use any other remedy. You do not waive a default if you choose not to use a remedy, and, by electing not to use any remedy, you do not waive your right to later consider the event a default and to immediately use any remedies if it continues or occurs again.

**FILING -** A carbon, photographic or other reproduction of this security agreement or the financing statement covering the property described in this agreement may be used as a financing statement where allowed by law. Where permitted by law, you may file a financing statement which does not contain my signature, covering the property secured by this agreement.

**CO-MAKERS -** If more than one of us has signed this agreement, we are all obligated equally under the agreement. You may sue any one of us or any of us together if this agreement is violated. You do not have to tell me if any term of the agreement has not been carried out. You may release any co-signer and I will still be obligated under this agreement. You may release any of the security and I will still be obligated under this agreement. Waiver by you of any of your rights will not affect my duties under this agreement. Extending this agreement or new obligations under this agreement, will not affect my duty under the agreement.

| AMISHLAND'S COUNTRY VILLAGE, INC | TUSCOLA FURNITURE GROUP, LLC |
|---|---|
| 1304 TUSCOLA BLVD | 2220 MARQUETTE ROAD |
| TUSCOLA, IL 61953 | PERU, IL 61354 |
| TAXPAYER I.D. NUMBER : 37-1397921 | |
| DEBTOR'S NAME, ADDRESS AND SSN OR TIN ("I" means each Debtor who signs.) | SECURED PARTY'S NAME AND ADDRESS ("You" means the Secured Party, its successors and assigns.) |

I am entering into this security agreement with you on _____ (date).

SECURED DEBTS. I agree that this security agreement will secure the payment and performance of the debts, liabilities or obligations described below that (Check one) ☐ ☒ (name) AMISHLAND'S COUNTRY VILLAGE, INC.

owe(s) to you now or in the future:

(Check one below):

☐ Specific Debt(s). The debt(s), liability or obligations evidenced by (describe): _____ and all extensions, renewals, refinancings, modifications and replacements of the debt, liability or obligation.

☒ All Debt(s). Except in those cases listed in the "LIMITATIONS" paragraph on page 2, each and every debt, liability and obligation of every type and description (whether such debt, liability or obligation now exists or is incurred or created in the future and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several or joint and several).

Security Interest. To secure the payment and performance of the above described Secured Debts, liabilities and obligations, I give you a security interest in all of the property described below that I now own and that I may own in the future (including, but not limited to, all parts, accessories, repairs, improvements, and accessions to the property), wherever the property is or may be located, and all proceeds and products from the property.

☒ Inventory: All inventory which I hold for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

☐ Equipment: All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will also be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.

☐ Farm Products: All farm products including, but not limited to:
(a) all poultry and livestock and their young, along with their products, produce and replacements;
(b) all crops, annual or perennial, and all products of the crops; and
(c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

☒ Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment: All rights I have now and that I may have in the future to the payment of money including, but not limited to:
(a) payment for goods and other property sold or leased or for services rendered, whether or not I have earned such payment by performance; and
(b) rights to payment arising out of all present and future debt instruments, chattel paper and loans and obligations receivable.
The above include any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.

☒ General Intangibles: All general intangibles including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.

☐ Government Payments and Programs: All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of any preexisting, current or future Federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and the ASCS).

☒ The secured property includes, but is not limited by, the following:  ALL ORIGINALLY MADE AND CRAFTED AMISH FURNITURE, FULLY FINISHED, AND AMISH STYLE FURNITURE MADE BY OTHERS, PLUS OTHER FURNITURE COMPLIMENTARY TO, BUT NOT CURRENTLY PRODUCED BY AMISH MANUFACTURES, BUT DOES NOT INCLUDE CRAFTS, LAMPS, PICTURES AND ACCESSORIES OTHER THAN WOOD PRODUCTS WHETHER AMISH MADE OR NOT

If this agreement covers timber to be cut, minerals (including oil and gas), fixtures or crops growing or to be grown, the legal description is:

FURNITURE COVERED BY THIS SECURITY AGREEMENT IS TO BE KEPT, PRESERVED, REPAIRED AND MAINTAINED AT THE FOLLOWING LOCATIONS:

1. 1304 TUSCOLA BLVD., TUSCOLA, ILLINOIS 61953
2. EAST ROUTE 36, ATWOOD, ILLINOIS 61913
3. 123 N. MAIN ST., ATWOOD, ILLINOIS 61913
4. 601 & 603 S. MAIN ST., TUSCOLA, ILLINOIS 61953
   (1 BUILDING OCCUPYING 2 LOTS)

I am a(n)   ☐ individual   ☐ partnership   ☒ corporation
☐
☐ If checked, file this agreement in the real estate records.
Record Owner (if not me): _____

The property will be used for ☐ personal   ☒ business
☐ agricultural   ☐ _____ reasons.

TUSCOLA FURNITURE GROUP, LLC
BY ITS MANAGER: JANKO FINANCIAL GROUP, LLC

By: _____
RICHARD JANKO

Title: AUTHORIZED MEMBER

I AGREE TO THE TERMS SET OUT ON BOTH PAGE 1 AND PAGE 2 OF THIS AGREEMENT. I have received a copy of this document on today's date.

AMISHLAND'S COUNTRY VILLAGE, INC
(Debtor's Name)

By: _____
JAMES E STILWELL

Title: PRESIDENT

By: _____

Title: _____

© 1986, 1990 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341) SECURITY AGREEMENT FORM SA 8/5/91

000141       (page 1 of 2)

**GENERALLY** - "You" means the Secured Party identified on page 1 of this security agreement as Debtor and who agrees to give the property described in this security agreement as security for the Secured Debts. All terms and duties under this agreement are joint and individual. No modification of this security agreement is effective unless made in writing and signed by you and me. This security agreement remains in effect, even if the note is paid and I owe no other debt to you, until discharged in writing. Time is of the essence in this agreement.

**APPLICABLE LAW** - I agree that this security agreement will be governed by the law of the state in which you are located. If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the property is located.

To the extent permitted by law, the terms of this agreement may vary applicable law. If any provision of applicable law may not be varied by agreement, any provision of this agreement that does not comply with that law will not be effective. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - I represent that I own all of the property, or to the extent this is a purchase money security interest I will acquire ownership of the property with the proceeds of the loan. I will defend it against any other claim. Your claim to the property is ahead of the claims of any other creditor. I agree to do whatever you require to protect your security interest and to keep your claim in the property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the property.

I will keep the property in my possession and will keep it in good repair and use it only for the purpose(s) described on page 1 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the property and, if I am not, that I have provided you with a list of prior owners of the property.

I will keep the property at my address listed on page 1 of this agreement, unless we agree I may keep it at another location. If the property is to be used in another state, I will give you a list of those states. I will not try to sell the property unless it is inventory or I receive your written permission to do so. If I sell the property I will have the payment made payable to the order of you and me.

You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent (1) a beneficial interest in the debtor is sold or transferred or (2) there is a change in either the identity or number of members of a partnership or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

I will pay all taxes and charges on the property as they become due. You have the right of reasonable access in order to inspect the property. I will immediately inform you of any loss or damage to the property.

**LIMITATIONS** - This agreement will not secure a debt described in the section entitled "Secured Debts" on page 1 if:
1) if you fail to make any disclosure of the existence of this security interest required by law for such other debt;
2) if this security interest is in my principal dwelling and you fail to provide (to all persons entitled) any notice of right of rescission required by law for such other debt;
3) to the extent that this security interest is in "household goods" and the other debt to be secured is a "consumer" loan (as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices);
4) if this security interest is in margin stock subject to the requirements of 12 C.F.R. Section 207 or 221 and you do not obtain a statement of purpose if required under these regulations with respect to that debt; or
5) if this security interest is unenforceable by law with respect to that debt.

**PURCHASE MONEY SECURITY INTEREST** - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any non-purchase money loan also secured by this agreement will not be deemed to apply to the purchase money loan, and (b) payments on the purchase money loan will be deemed to apply first to the non-purchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items of collateral were acquired or if acquired at the same time, in the order selected by you. No security interest will be terminated by application of this formula. "Purchase money loan" means any loan the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**AUTHORITY OF SECURED PARTY TO MAKE ADVANCES AND PERFORM FOR DEBTOR** - I agree to pay you on demand any sums you advanced on my behalf including, but not limited to, expenses incurred in collecting, insuring, conserving, or protecting the property or in any inventories, audits, inspections or other examinations by you in respect to the property. If I fail to pay such sums, you may do so for me, adding the amount paid to the other amounts secured by this agreement. All such sums will be due on demand and will bear interest at the highest rate provided in any agreement, note or other instrument evidencing the Secured Debt(s) and permitted by law at the time of the advance.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. I understand that this authorization includes, but is not limited to, permission to: (1) prepare, file, and sign my name to any necessary reports or accountings; (2) notify any account debtor of your interest in this property and tell the account debtor to make the payments to you or someone else you name, rather than me; (3) place on any chattel paper a note indicating your interest in the property; (4) in my name, demand, collect, receive and give a receipt for, compromise, settle, and handle any suits or other proceedings involving the collateral; (5) take any action you feel is necessary in order to realize on the collateral, including performing any part of a contract or endorsing it in my name; and (6) make an entry on my books and records showing the existence of the security agreement. Your right to perform for me shall not create an obligation to perform and your failure to perform will not preclude you from exercising any of your other rights under the law or this security agreement.

**INSURANCE** - I agree to buy insurance on the property against the risks and for the amounts you require and to furnish you continuing proof of coverage. I will have the insurance company name you as loss payee on any such policy. You may require added security if you agree that insurance proceeds may be used to repair or replace the property. I will buy insurance from a firm licensed to do business in the state where you are located. The firm will be reasonably acceptable to you. The insurance will last until the property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

**WARRANTIES AND REPRESENTATIONS** - If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to me or which I take back in trust for you. I will not mix them with any other property of mine. I will deliver them to you at your request. If you ask me to pay you the full price on any returned items or items retaken by myself, I will do so.

If this agreement covers inventory, I will not dispose of it except in my ordinary course of business at the fair market value for the property, or at a minimum price established between you and me.

If this agreement covers farm products I will provide you, at your request, a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products. In addition to those parties named on this written list, I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of my agreement with you and the Food Security Act. In this paragraph the terms farm products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

**DEFAULT** - I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) I change my name or assume an additional name without first notifying you before making such a change; (9) failure to plant, cultivate and harvest crops in due season; (10) if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES** - If I am in default on this agreement, you have the following remedies:
1) You may demand immediate payment of all I owe you under any obligation secured by this agreement.
2) You may set off any obligation I have to you against any right I have to the payment of money from you.
3) You may demand more security or new parties obligated to pay any debt I owe you as a condition of giving up any other remedy.
4) You may make use of any remedy you have under state or federal law.
5) If I default by failing to pay taxes or other charges, you may pay them (but you are not required to do so). If you do, I will repay to you the amount you paid plus interest at the highest contract rate.
6) You may require me to gather the property and make it available to you in a reasonable fashion.
7) You may repossess the property and sell it as provided by law. You may repossess the property so long as the repossession does not involve a breach of the peace or an illegal entry onto my property. You may sell the property as provided by law. You may apply what you receive from the sale of the property to: your expenses; your reasonable attorneys' fees and legal expenses (where not prohibited by law); any debt I owe you. If what you receive from the sale of the property does not satisfy the debts, you may take me to court to recover the difference (where permitted by law).
    I agree that 10 days written notice sent to my address listed on page 1 by first class mail will be reasonable notice to me under the Uniform Commercial Code.
    If any items not otherwise subject to this agreement are contained in the property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.
8) In some cases, you may keep the property to satisfy the debt. You may enter upon and take possession of all or any part of my property, so long as you do not breach the peace or illegally enter onto the property, including lands, plants, buildings, machinery, and equipment as may be necessary to permit you to manufacture, produce, process, store or sell or complete the manufacture, production, processing, storing or sale of any of the property and to use and operate the property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

By choosing any one or more of these remedies, you do not waive your right to later use any other remedy. You do not waive a default if you choose not to use any remedy, and, by electing not to use any remedy, you do not waive your right to later consider the event a default and to immediately use any remedies if it continues or occurs again.

**FILING** - A carbon, photographic or other reproduction of this security agreement or the financing statement covering the property described in this agreement may be used as a financing statement where allowed by law. Where permitted by law, you may file a financing statement which does not contain my signature, covering the property secured by this agreement.

**CO-MAKERS** - If more than one of us has signed this agreement, we are all obligated equally under the agreement. You may sue any one of us or any of us together if this agreement is violated. You do not have to tell me if any term of the agreement has not been carried out. You may release any co-signer and I will still be obligated under this agreement. You may release any of the security and I will still be obligated under this agreement. Waiver by you of any of your rights will not affect my duties under this agreement. Extending this agreement or new obligations under this agreement will not affect my duty under the agreement.

| | | |
|---|---|---|
| TUSCOLA FURNITURE GROUP, LLC<br>2220 MARQUETTE ROAD<br>PERU, IL 61354<br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | FIRST MID-ILLINOIS BANK & TRUST,<br>N.A.<br>410 S MAIN, P.O. BOX 18<br>TUSCOLA, IL 61953<br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Line of Credit No. 2150095387<br>Date NOVEMBER 17, 2000<br>Max. Credit Amt. $1,000,000.00<br>Loan Ref. No. 2150095387 |

You have extended to me a line of credit in the

AMOUNT of ONE MILLION AND NO/100 $ 1,000,000.00

You will make loans to me from time to time until 3:00 P.m. on APRIL 15, 2002 . Although the line of credit expires on that date, I will remain obligated to perform all my duties under this agreement so long as I owe you any money advanced according to the terms of this agreement, as evidenced by any note or notes I have signed promising to repay these amounts.

This line of credit is an agreement between you and me. It is not intended that any third party receive any benefit from this agreement, whether by direct payment, reliance for future payment or in any other manner. This agreement is not a letter of credit.

1. **AMOUNT:** This line of credit is:
   - XX **OBLIGATORY:** You may not refuse to make a loan to me under this line of credit unless one of the following occurs:
     - a. I have borrowed the maximum amount available to me;
     - b. This line of credit has expired;
     - c. I have defaulted on the note (or notes) which show my indebtedness under this line of credit;
     - d. I have violated any term of this line of credit or any note or other agreement entered into in connection with this line of credit;
     - e. _____
       _____
   - ☐ **DISCRETIONARY:** You may refuse to make a loan to me under this line of credit once the aggregate outstanding advances equal or exceed
     _____ $ _____ .

   Subject to the obligatory or discretionary limitations above, this line of credit is:
   - XX **OPEN-END** (Business or Agricultural only): I may borrow up to the maximum amount of principal more than one time.
   - ☐ **CLOSED-END:** I may borrow up to the maximum only one time.

2. **PROMISSORY NOTE:** I will repay any advances made according to this line of credit agreement as set out in the promissory note, I signed on NOVEMBER 17, 2000 , or any note(s) I sign at a later time which represent advances under this agreement. The note(s) set(s) out the terms relating to maturity, interest rate, repayment and advances. If indicated on the promissory note, the advances will be made as follows: UPON REQUEST OF TUSCOLA FURNITURE GROUP, LLC, MANAGER JANKO FINANCIAL GROUP, LLC, AUTHORIZED MEMBERS RICHARD JANKO OR MICHAEL JANKO, BASED ON INVOICES OR RECEIPTS, NOT TO EXCEED 80% OF THE ACTUAL COST OF INVENTORY

3. **RELATED DOCUMENTS:** I have signed the following documents in connection with this line of credit and note(s) entered into in accordance with this line of credit:
   - XX security agreement dated NOVEMBER 17, 2000 ☐ _____
   - ☐ mortgage dated _____ ☐ _____
   - XX guaranty dated NOVEMBER 17, 2000 ☐ _____

4. **REMEDIES:** If I am in default on the note(s) you may:
   - a. take any action as provided in the related documents;
   - b. without notice to me, terminate this line of credit.
   
   By selecting any of these remedies you do not give up your right to later use any other remedy. By deciding not to use any remedy should I default, you do not waive your right to later consider the event a default, if it happens again.

5. **COSTS AND FEES:** If you hire an attorney to enforce this agreement I will pay your reasonable attorney's fees, where permitted by law. I will also pay your court costs and costs of collection, where permitted by law.

6. **COVENANTS:** For as long as this line of credit is in effect or I owe you money for advances made in accordance with the line of credit, I will do the following:
   - a. maintain books and records of my operations relating to the need for this line of credit;
   - b. permit you or any of your representatives to inspect and/or copy these records;
   - c. provide to you any documentation requested by you which support the reason for making any advance under this line of credit;
   - d. permit you to make any advance payable to the seller (or seller and me) of any items being purchased with that advance;
   - e. _____
     _____
     _____

7. **NOTICES:** All notices or other correspondence with me should be sent to my address stated above. The notice or correspondence shall be effective when deposited in the mail, first class, or delivered to me in person.

8. **MISCELLANEOUS:** This line of credit may not be changed except by a written agreement signed by you and me. The law of the state in which you are located will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation.

FOR THE LENDER

THOMAS J CHAMBERLAIN

Title VICE PRESIDENT

SIGNATURES: I AGREE TO THE TERMS OF THIS LINE OF CREDIT. I HAVE RECEIVED A COPY ON TODAY'S DATE.

TUSCOLA FURNITURE GROUP, LLC BY ITS MANAGER: JANKO FINANCIAL GROUP, LLC

BY: _____
RICHARD F JANKO, AUTHORIZED MEMBER

© 1985 BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-397-2341) FORM LCA 5/2/91

*(page 1 of 1)*

000142

GUARANTY

<u>TUSCOLA</u>                                    , <u>IL</u>
(City)                                                (State)

<u>NOVEMBER 17, 2000</u>

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce <u>FIRST MID-ILLINOIS BANK & TRUST, N.A., 410 S MAIN, P.O. BOX 18, TUSCOLA, IL 61953</u> (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of <u>TUSCOLA FURNITURE GROUP, LLC</u>

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: <u>TUSCOLA FURNITURE GROUP, LLC, LINE OF CREDIT IN THE AMOUNT OF $1,000,000</u> and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the joint Undersigned to guaranty the obligation.

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ <u>300,000.00</u>
(if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

X _____
RICHARD F JANKO

_____

_____

_____

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-397-2341) FORM M-240 5/20/91 (For Corporate Guarantor use M-250)                        (page 1 of 2)

000143

NOV 20 2000 11:14 FR AG-DALLAS SERV CTR   2146546022 TO 912175783580

**POOR**
**ORIGINAL**

**AMERICAN**
**GENERAL**
FINANCIAL GROUP

*250,000*

Assignment

- ☐ All American Life Insurance Company (AAL), P.O. Box 35844 Dallas, TX 75235-8883
- ☐ The American Franklin Life Insurance Company (AMFLIC), P.O. Box 19520, Springfield, IL 62794-9520
- ☐ American General Life Insurance Company (AGL), P.O. Box 4373, Houston TX 77210-4373
- ☐ The Franklin Life Insurance Company (FLIC), #1 Franklin Square, Springfield, IL 62713-0001
- ☒ The Old Line Life Insurance Company of America (OLL), P.O. Box 35844, Dallas TX 75235-8883

Members of American General Financial Group. American General Financial Group is the marketing name for American General Corporation and its subsidiaries.

| | | |
|---|---|---|
| **1.** | **CONTRACT IDENTIFICATION** | You may use this form for multiple contracts that have the same contract owner and require the same signatures. All contracts must be assigned to the same assignee or all contracts released from assignment with same assignee. |
| | ☐ Check Here if New Address | CONTRACT No.: 2604663 |
| | | OWNER: Margaret Stilwell     SSN/TIN OR EIN: 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 |
| | | Address: 218 N. Iowa |
| | | Atwood, Il. 61913 |
| | | Phone No.: (217) 578-3732     578-3322 |
| | | INSURED/ANNUITANT (if other than Owner): James E. Stilwell |
| **2.** ☒ | **ASSIGNMENT** | For value received, I/we hereby assign and transfer to the named Assignee/Creditor as their interest may appear, the Contract number named above, issued by the Company, upon the life as named above and all moneys now or hereafter payable thereunder, subject to the conditions of said contract, the regulations of the Company and to any lien, charge, or indebtedness thereon now or hereafter existing in favor of the Company: |
| | | Assignee/Creditor Name: Tuscola Furniture Group L.L.C.   ($250,000) |
| | | Assignee/Creditor Address: 2220 Marquette Rd. Peru Il. 61354 |
| **3.** ☐ | **RELEASE OF ASSIGNMENT** | The consideration for which the Assignment was made, having been fully paid and satisfied, all right, title, and interest of the assignee in the above named Contract issued or assumed by the Company on the above named life is hereby relinquished. |
| | | Assignee/Creditor Name: |
| | | Assignee/Creditor Address: |
| **4.** | **SIGN HERE FOR ABOVE REQUEST** | This request must be dated and all required signatures must be written in ink, using full legal names. To assign this contract, this request must be signed by the person or persons who have the rights of ownership under the terms of the contract. For Corporate Owned contracts, this form must be signed by one officer followed by the officer's title. The request must be accompanied by a piece of corporate letterhead or paper with the corporate seal that has been signed by that officer. For contracts owned by a Partnership, the full name of the partnership should be written followed by the signatures of any partner, other than the Insured. For contracts owned by or assigned to a Trustee, Trustee signatures are required as instructed by the trust agreement. Under penalty of perjury, the contract owner(s) certify: (1) that the number(s) shown on this form is my (are our) correct social security (or taxpayer identification) number(s); and (2) that I am (we are) not subject to backup withholding under Section 3406(A)(1)(C) of the Internal Revenue Code. |

*NOT AN OVERLAP*

**EXHIBIT**
Lynn #7

**EXHIBIT**
18

ASSIGNMENT

X Margaret Stilwell   12/2000
Signature of Owner   Date

Signature of co-owner   Date
(or other party interested in contract)

RELEASE OF ASSIGNMENT

To release the assignment of this contract, this request must be signed by the Assignee.

DEC 01 2000
Received and Recorded on _____
by The Old Line Life Insurance Company
Registrar

12/7/0 010:45
001120 005510

## THE OLD LINE LIFE Insurance Company of America

ADMINISTRATIVE OFFICES / PO BOX 35844 / DALLAS TX 75235 0844
214 654 6300 / 800 487 5433 / FAX 214 654 6008

December 4, 2000

TUSCOLA FURNITURE GROUP LLC
2220 MARQUETTA RD
PERU IL 61354

Re: Insured, James E Stilwell
    Policy Number  2604663
    Owner, Margaret Stilwell

```
**********************************
*                                *
*     ASSIGNMENT VERIFICATION    *
*                                *
**********************************
```

The original document submitted to place an assignment on this policy
has been endorsed, recorded and made a part of the policy records.

A copy of this assignment is attached for your records.

If this assignment is released or transferred, please notify us in
writing.

Prepared By:  Title Change Unit
              Policyowner Service Department

Attachment

cc:   W0908 FRAN TONY M CARTER
      W0090 FRAN WILLIAM J LYONS

2303
23/03
      An American General Company

1,000,000

## AMERICAN GENERAL
FINANCIAL GROUP

- ☐ All American Life Insurance Company (AAL), P.O. Box 35844 Dallas, TX 75235-8683
- ☐ The American Franklin Life Insurance Company (AMFLIC), P.O. Box 19520, Springfield, IL 62794-9520
- ☐ American General Life Insurance Company (AGL), P.O. Box 4373, Houston TX 77210-4373
- ☐ The Franklin Life Insurance Company (FLIC), #1 Franklin Square, Springfield, IL 62713-0001
- ☒ The Old Line Life Insurance Company of America (OLL), P.O. Box 35844, Dallas TX 75235-8683

Members of American General Financial Group. American General Financial Group is the marketing name for American General Corporation and its subsidiaries.

| | |
|---|---|
| **1.** **CONTRACT IDENTIFICATION** | You may use this form for multiple contracts that have the same contract owner and require the same signatures. All contracts must be assigned to the same assignee or all contracts released from assignment with same assignee. |
| ☐ Check Here if New Address | CONTRACT No.: 2604663 |
| | OWNER: MARGARet Stilwell    SSN/TIN OR EIN: 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 |
| | Address: 218 N. IOWA |
| | Atwood, IL. 61913 |
| | Phone No.: (217) 578-3132    578-3322 |
| | INSURED/ANNUITANT (if other than Owner): JAmes E. Stilwell |
| **2.** ☒ **ASSIGNMENT** | For value received, I/we hereby assign and transfer to the named Assignee/Creditor as their interest may appear, the Contract number named above, issued by the Company, upon the life as named above and all moneys now or hereafter payable thereunder, subject to the conditions of said contract, the regulations of the Company and to any lien, charge, or indebtedness thereon now or hereafter existing in favor of the Company. |
| | Assignee/Creditor Name: 1st mid Illinois BANK +Trust (1,000,000) |
| | Assignee/Creditor Address: POBox 18, 410 S.main Tuscola, IL. 61953 |
| **3.** ☐ **RELEASE OF ASSIGNMENT** | The consideration for which the Assignment was made, having been fully paid and satisfied, all right, title, and interest of the assignee in the above named Contract issued or assumed by the Company on the above named life is hereby relinquished. |
| | Assignee/Creditor Name:_____ |
| | Assignee/Creditor Address:_____ |
| **4.** **SIGN HERE FOR ABOVE REQUEST** | This request must be dated and all required signatures must be written in ink, using full legal names. |
| | To assign this contract, this request must be signed by the person or persons who have the rights of ownership under the terms of the contract. For **Corporate Owned** contracts, this form must be signed by one officer followed by the officer's title. The request must be accompanied by a piece of corporate letterhead or paper with the corporate seal that has been signed by that officer. For contracts owned by a **Partnership**, the full name of the partnership should be written followed by the signatures of any partner, other than the Insured. For contracts owned by or assigned to a **Trustee**, Trustee signatures are required as instructed by the trust agreement. |
| | Under penalty of perjury, the contract owner(s) certify: (1) the number(s) shown on this form is my (are our) correct social security (or taxpayer identification) number(s); and (2) that I am (we are) not subject to backup withholding under Section 3406(A)(1)(C) of the Internal Revenue Code. |
| **ASSIGNMENT** | _Margaret Stilwell_ 1/11/01    Signature of co-owner    Date |
| | Signature of Owner    Date    (or other party interested in contract) |
| **RELEASE OF ASSIGNMENT** | To release the assignment of this contract, this request must be signed by the Assignee. |
| | _____    _____ |
| | Assignee    Date |

AGLC 0205

EXHIBIT

EXHIBIT
19
tabbies

# THE OLD LINE LIFE Insurance Company of America

ADMINISTRATIVE OFFICES / PO BOX 35844 / DALLAS TX 75235 0844
214 654 6300 / 800 487 5433 / FAX 214 654 6008

January 30, 2001

1ST MID ILLNOIS BANK & TRUST
PO BOX 18
TUSCOLA IL  61953

Re:  Insured, James E Stilwell
     Policy Number   2604663
     Owner, James E Stilwell

```
************************************
*                                  *
*      ASSIGNMENT VERIFICATION     *
*                                  *
************************************
```

The original document submitted to place an assignment on this policy
has been endorsed, recorded and made a part of the policy records.

A copy of this assignment is attached for your records.

If this assignment is released or transferred, please notify us in
writing.

Prepared By:  Title Change Unit
              Policyowner Service Department

Attachment

cc:   W0908 FRAN TONY M CARTER
      W0090 FRAN WILLIAM J LYONS

2303

JL 060

23/03
    An American General Company

1

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE CENTRAL DISTRICT OF ILLINOIS
 2                     STATE OF ILLINOIS

 3
        MARGARET J. STILWELL,        )
 4      HALEY STILWELL, HEIDI        )
        STILWELL, JAMIE STILWELL,    )
 5      MEGAN STILWELL,              )
            Plaintiffs,              )
 6              -vs-                 )
        AMERICAN GENERAL LIFE        )
 7      INSURANCE COMPANY,           )
            Defendant.               )
 8      ---------------------------) No. 05-CV-02160
        AMERICAN GENERAL LIFE        )
 9      INSURANCE COMPANY,           )
            Third-Party Plaintiff    )
10              -vs-                 )
        FIRST MID ILLINOIS BANK &    )
11      TRUST, TUSCOLA FURNITURE     )
        GROUP, LLC, JANKO            )
12      FINANCIAL GROUP, LLC,        )
            Third-Party Defendants.) )
13      ---------------------------

14                         CSR License No. 084-003038

15

16                          DEPOSITION

17           The deposition of MARGARET STILWELL, a
        citizen of the State of Illinois, a witness of
18      lawful age; produced, sworn and examined upon her
        corporeal oath, on the 9th day of February, 2007, at
19      the offices of Area Wide Reporting Service, 301 West
        White Street, Champaign, Illinois, before June
20      Haeme, CSR, RMR, CRR, Notary Public in and for the
        County of Ford and State of Illinois, as a witness
21      in a certain suit and matter now pending and
        undetermined in the United States District Court for
22      the Central District of Illinois.

23

24
```

COPY



EXHIBIT
tabbies
20

2

1              Appearances:

2                      Michael S. Seneca
                       Attorney at Law
3                      Howard & Howard
                       One Technology Plaza, Suite 600
4                      211 Fulton Street
                       Peoria, IL  61602-1350
5                      Appearing for Tuscola Furniture Group
                          and Janko Financial Group
6
                       Rebecca M. Rothman
7                      Attorney at Law
                       Wilson, Elser, Moskowitz, Edelman &
8                         Dicker, LLP
                       120 North LaSalle Street, Suite 2600
9                      Chicago, IL  60602
                       Appearing for American General Life
10
                       Jason M. Crowder
11                     Attorney at Law
                       Heller, Holmes & Associates, P.C.
12                     1101 Broadway Avenue
                       Mattoon, IL  61938
13                     Appearing for Plaintiffs

14                     Julie Beyers
                       Attorney at Law
15                     Heavner, Scott, Beyers & Mihlar
                       111 E. Main Street, Suite 200
16                     Decatur, IL  62523
                       Appearing for First Mid Illinois

17

18      Also Present:  Larry Bianchi

19

20

21

22

23

24

3

1

I N D E X

                                                Page

EXAMINATION BY MS. ROTHMAN.................... 4
EXAMINATION BY MR. SENECA..................... 65
EXAMINATION BY MS. BEYERS..................... 67

E X H I B I T S

                                                Page

Stilwell Exhibit No. 1........................ 16
Stilwell Exhibit No. 2........................ 20
Stilwell Exhibit No. 3........................ 23
Stilwell Exhibit No. 4........................ 25
Stilwell Exhibit No. 5........................ 27
Stilwell Exhibit No. 6........................ 28
Stilwell Exhibit No. 7........................ 29
Stilwell Exhibit No. 8........................ 32
Stilwell Exhibit No. 9........................ 46
Stilwell Exhibit No. 10....................... 47
Stilwell Exhibit No. 11....................... 48
Stilwell Exhibit No. 12....................... 52
Stilwell Exhibit No. 13....................... 57
Stilwell Exhibit No. 14....................... 58
Stilwell Exhibit No. 15....................... 58
Stilwell Exhibit No. 16....................... 59
Stilwell Exhibit No. 17....................... 60
Stilwell Exhibit No. 18....................... 45
Stilwell Exhibit No. 19....................... 45
Stilwell Exhibit No. 20....................... 66

1      A.    No.

2      Q.    Did you --

3      A.    I didn't have access -- I don't -- I

4    didn't have these at home.

5      Q.    Okay.  Did you look at them at any time to

6    prepare for your deposition?

7      A.    Well, back when I signed it.

8      Q.    Okay.  After you signed it?

9      A.    No.

10      Q.    Have you seen the document since you

11    signed it?

12      A.    No.

13      Q.    Okay.  All right.  But that is your

14    signature --

15      A.    Yes, it is.

16      Q.    -- on this document?  All right.  Do you

17    have any understanding or any knowledge as to why

18    you signed this document?

19      A.    It looks like an assignment for life

20    insurance since it's from American General.  No, you

21    know, I really -- I don't know.  I don't see any

22    figures or anything, so I really don't know.

23      Q.    Okay.  Turning to Exhibit 7 -- can you put

24    Exhibit 6 away?  Exhibit 7, you recognize your

1    signature on that document?

2        A.    Yes, I do.

3        Q.    Okay.  Do you have any independent

4    recollection of signing this document?

5        A.    No.

6        Q.    Okay.  And would this be another one of

7    the documents that your husband would tell you you

8    had to sign --

9        A.    Correct.

10       Q.    -- and you signed?  Okay.  My

11   understanding from reviewing the documents that have

12   been produced in discovery is that at some point

13   Amishland Development -- well, strike that.

14             At some point, ACV started to have some

15   financial difficulties.  Is that a true statement?

16       A.    In reflection, it is.  My husband did

17   dealings with business connections and business

18   people and did not really keep me advised of that.

19       Q.    Okay.  So at -- do you recall at some

20   point that you learned that there were some

21   financial difficulties?

22       A.    Yes.

23       Q.    Okay.  When was that that you learned

24   that, you first learned that?

37

1       A.    Jim's the one that did business

2    relationships with them.  My relationship was having

3    lunch at the buffet with them.

4       Q.    Okay.  Did you do that often or was that a

5    one-time occurrence?

6       A.    Whenever they showed up to talk about

7    things with Jim, I usually got invited for lunch.

8       Q.    Okay.  And who is they?  Who are the

9    members of Janko?

10      A.    Larry Bianchi and Dick Janko.

11      Q.    Did you know Larry Bianchi and Dick Janko

12   prior to having business dealings with them?

13      A.    No.

14      Q.    Okay.  Your first contact with Mr. Bianchi

15   -- Bianchi and Mr. Janko came in the form of a

16   business relationship; is that right?

17      A.    Correct.

18      Q.    Okay.  Did your husband know Mr. Bianchi

19   or the Jankos before?

20      A.    Not that I was aware of.

21      Q.    Okay.  Your husband passed away on March

22   2nd, 2003; is that right?

23      A.    Correct.

24           MR. CROWDER:  Well, actually you said --

1    you said March 2nd.

2         Q.    I'm sorry, May 2nd.

3         A.    May 2nd.

4         Q.    Okay.

5              MR. CROWDER:  Sorry about that.

6         Q.    And that was incidentally prior to the

7    voluntary dismissal that was filed in this action;

8    is that right?  And in the action that's Exhibit 8.

9         A.    It was prior to that date.

10        Q.    Okay.  Do you -- would Mr. Broch have

11   communicated with you then instead of Jim as to what

12   was going on in that lawsuit?

13        A.    I don't recall that.  Does it say who was

14   involved with this?

15        Q.    Well, it says that -- what do you mean

16   does it say who was involved in this?

17        A.    For my attorney.

18        Q.    Mr. --

19        A.    Broch.

20        Q.    -- Broch.

21        A.    I don't recall.

22        Q.    You don't recall having any discussions

23   with Mr. Broch about this lawsuit?

24        A.    Well, I had discussions at different

67

1    what's been marked as Exhibit 20.  Do you recognize

2    that document?

3        A.   No.

4        Q.   Okay.  So you don't know who -- who filled

5    that out?

6        A.   No.

7        Q.   Why it was filled out?

8        A.   I don't recall.

9        Q.   Okay.  Do you know --

10           MR. SENECA:  Okay, that's all the

11   questions I have.

12           MR. CROWDER:  Is that it, Mike?

13           MR. SENECA:  Yes.

14           MS. BEYERS:  I just have a few questions,

15   Mrs. Stilwell.

16           EXAMINATION BY

17           MS. BEYERS:

18       Q.   My name is Julie Beyers.  I represent

19   First Mid Illinois Bank and Trust in this case.

20       A.   Okay.

21       Q.   And I'd like for you to look at Exhibit 13

22   if you would.  And specifically I'd like to direct

23   your attention to paragraph 2 of the letter, and

24   just stating that for the record it indicates that

68

1    "as itemized on the attached Exhibit A, the total

2    amount owed by Amishland Country Village,

3    Incorporated, and guaranteed by James and Margaret

4    Stilwell is $512,974.50.  This amount includes the

5    amounts that TFG owes the bank."

6           Do you see that statement in Exhibit No.

7    13?

8        A.   Just I read it with you.

9        Q.   Okay.  As you sit here today, do you have

10   any reason to disagree with that statement in that

11   amount being shown there as being owed to TFG would

12   also include amounts -- well, strike that.

13          As you sit here today, do you have any

14   reason to disagree with that statement as you've

15   just read it in that letter?

16          MR. CROWDER:  I'll object, no foundation,

17   but you can answer.

18       A.   I don't know because I don't know enough

19   of what Jim did to be able to answer that.

20       Q.   Okay.  So as you sit here today, it would

21   be fair to say that you don't have any facts that

22   you can tell us that you're relying upon in an

23   effort to dispute that figure; is that correct?

24       A.   I personally don't, but that doesn't mean

1    that legal representation doesn't.

2         Q.   Okay.  But you personally do not; is that

3    correct?

4         A.   I personally was not involved with the

5    business decisions and signed things when my husband

6    told me to because I was more than busy with doing

7    my own jobs at the barn.  I did -- doesn't matter

8    what I did, but I put in lots of hours every day of

9    the week.

10        Q.   Sure.  And what I'm trying to get at with

11   you, Mrs. Stilwell, is just what your knowledge is

12   here today, and my understanding of your testimony

13   is that, as you sit here today, you don't have any

14   facts to dispute the facts set forth in that

15   particular paragraph.

16        A.   I have no recollection.

17        Q.   But you don't have any facts; is that

18   correct?

19        A.   Maybe in my representation, but personally

20   in my head?

21        Q.   Right.

22        A.   No.

23        Q.   Okay.

24             MS. BEYERS:  That's all I have for you,



First
Mid-Illinois
Bank & Trust

May 12, 2003

Mr. William J. Lyons, LUTCF
District Manager
American General Life Insurance Company
231 N. Main Street
Atwood, IL 61913-0260

**Re:    Life Insurance Policy No. 2604663**

Dear Mr. Lyons:

Pursuant to your letter of May 6, 2003, Tuscola Furniture Group, LLC ("TFG")
and First Mid-Illinois Bank & Trust ("Bank"), are jointly making application on the
Collateral Assignments they received to secure an obligation under a certain
Consignment Agreement dated November 17, 2000 between TFG and Amishland
Country Village, Inc.

As itemized on the attached Exhibit A, the total amount owed by Amishland
Country Village, Inc. and guaranteed by James and Margaret Stilwell is
$*512,474.50*.  This amount includes the amounts that TFG owes the Bank.

Please issue your draft made payable to "Tuscola Furniture Group, LLC and First
Mid-Illinois Bank & Trust", and have it delivered to First Mid-Illinois Bank & Trust - 2229
South Neil - Champaign, IL 61820 - ATTN: Thomas J. Chamberlain.  The signature of
the Bank officer below acknowledges and confirms this direction.

Upon receipt of this amount TFG and the Bank will relinquish all Assignments
against the proceeds on the life insurance policy number 2604663.  Specifically, these
are the Assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19,
1999 for $500,000.00, September 25, 2000 for $1,500,000.00, and January 11, 2001
for $1,000,000.00.



EXHIBIT

21



EXHIBIT
Bianchi 4
2-9-07    JH



Mr. William J. Lyons
May 12, 2003
Page 2

Finally, we have enclosed a completed Claimant's Statement on the form you provided for both TFG and Janko Financial Group, LLC.

Very truly yours,

First Mid-Illinois Bank & Trust

By: _____

Thomas J. Chamberlain
Community President

Acknowledgment:

The undersigned, on behalf of Tuscola Furniture Group, LLC and Janko Financial Group, LLC, the manager of TFG hereby acknowledges and confirms the directions above.

Tuscola Furniture Group, LLC and
Janko Financial Group, LLC,
the manager of TFG

By: _____

Lawrence W. Bianchi
Their Authorized Representative

Enclosures

EXHIBIT A

## TUSCOLA FURNITURE GROUP, LLC (TFG)
### Amounts due from Stilwells/ACV
### As of April 30, 2003

| | Principal | Interest (Prime) + 10 %.of Reported Sales | Total |
|---|---|---|---|
| 3/31/03 - 1st Qtr Financials (thru 2/28, transactions consistently 1 month behind) | 404,951.63 | 71,810.39 | 476,762.02 |
| March  (1,359.98 + 1,461.71) | | 2,821.69 | 2,821.69 |
| April    (4,882.40 + 1,414.56) | | 6,296.96 | 6,296.96 |
| | 404,951.63 | 80,929.04 | 485,880.67 |
| | | | |
| $101,780.32 unlocated inventory at cost Unknown sales price certainly higher, TFG entitled to a minimum of 10% fee. | | | 10,178.04 |
| | | | |
| JFG/TFG credit application guaranty claim from Eagle Industries for unauthorized purchases made by Stilwell outside the system. (4,463.91 + 7,250.88) | | | 11,714.79 |
| | | | |
| Legal | | | 5,201.00 |
| | | | 512,974.50 |

Due from Stilwell 4-30-03.xls

MAY 16 '03 15:25 FR AMERICAN LIFE          TO 9121  ...4

Proof of Death
- Claimant's Statement

**AIG** AMERICAN GENERAL

**American General Life Insurance Company**
Member of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

**To Be Completed By The Beneficiary**

## I DECEASED

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 10-07-54 | Heart Attack | 5/02/03 |

POLICIES DECEASED HELD WITH THIS COMPANY:

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | $4,000,000.00 | | |

I hereby certify that the policy of insurance for the listed policy has been ☐ ENCLOSED ☐ LOST ☐ DESTROYED

## II CLAIMANT

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| First Mid-Illinois Bank & Trust | | Assignee/Creditor |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| 2229 South Neil | Champaign | IL | 61820 | (217) 359-9889 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim? ☐ YES ☒ NO      If yes, what amount? $ _____ (Attach copy of assignment)

How do you want proceeds paid? ☒ Lump Sum / ☐ Settlement Option

*If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.

If Option, give details: _____

IMPORTANT: Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.)     ☐ YES ☐ NO      (An IRS Form 712 is to be filed with United States tax return, Form 706.)

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

First Mid-Illinois Bank & Trust

PLEASE SIGN HERE   BY: *Thomas J. Chamberlain*      Thomas J. Chamberlain, Community President

## III TAXPAYER I.D. NO.

| Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number. | CLAIMANT'S S.S. NO. | OR | TAX I.D. NO. 37-0404035 |
|---|---|---|---|

Note: If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.

CERTIFICATION: Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

CLAIMANT'S SIGNATURE     First Mid-Illinois Bank & Trust                          DATE 5-12-03

PLEASE SIGN HERE   BY: *Thomas J. Chamberlain*      Thomas J. Chamberlain, Community President

## IV MAILING

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?  SHOW BELOW

First Mid-Illinois Bank & Trust

ATTN: Thomas J. Chamberlain, Community President

2229 South Neil

Champaign, IL 61820

Page 1 of 2

L 2843 Rev0103

** TOTAL PAGE.02 **



# _Tuscola Furniture Group, LLC_

Michael M. Janko, CPA, JD
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-9902
Fax (630) 964-9903

Richard F. Janko
Lawrence W. Bianchi
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3380
Fax (815) 223-7160
Jfg.Peru@insightbb.com

12 May 2003

VIA OVERNIGHT MAIL DELIVERY

Mr. William J. Lyons, LUTCF
District Manager
American General Life Insurance Company
231 N. Main Street
Atwood, IL 61913-0260

    RE:    Life Insurance Policy No. 2604663

Dear Mr. Lyons:

    Pursuant to your letter of May 6, 2003, Tuscola Furniture Group, LLC ("TFG") and First Mid-Illinois Bank & Trust Company ("Bank"), are jointly making application on the Collateral Assignments they received to secure an obligation under a certain Consignment Agreement dated November 17, 2000 between TFG and Amishland Country Village, Inc.

    As itemized on the attached Exhibit A, the total amount owed by Amishland Country Village, Inc. and guaranteed by James and Margaret Stilwell is $512,974.50. This amount includes the amounts that TFG owes the Bank.

    Please issue your draft made payable to "Tuscola Furniture Group, LLC and First Mid-Illinois Bank & Trust," and have it delivered to the Bank at 2229 South Neil, Champaign, Illinois 61820, Attn: Thomas J. Chamberlain, Community President. The signature of the Bank officer below acknowledges and confirms this direction.

    Upon receipt of this amount, TFG and the Bank will relinquish all Assignments against the proceeds on the life insurance policy number 2604663. Specifically, these are the Assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19, 1999 for $500,000, September 25, 2000 for $1,500,000, and January 11, 2001 for $1,000,000.







Finally, we have also enclosed a completed Claimant's Statement on the form you provided for both TFG and Janko Financial Group, LLC.

Very truly yours,

Tuscola Furniture Group, LLC and
Janko Financial Group, LLC,
the manager of TFG

By: _Lawrence W. Bianchi_
Lawrence W. Bianchi
Their Authorized Representative

Acknowledgment:

The undersigned, on behalf of First Mid-Illinois Bank & Trust hereby acknowledges and confirms the directions above.

First Mid-Illinois Bank
& Trust

By: _Thomas J. Chamberlain_
Thomas Chamberlain
Community President

Enclosures

cc:    First Mid-Illinois Bank & Trust
       Richard L. Broch, Esq.
       Timothy J. Howard, Esq.
       Richard Heavner, Esq.

g:\j-l\janko financial\tuscola furniture grp\cor\insurance ltr

5/20/0 31:58P
005607 000148

## TUSCOLA FURNITURE GROUP, LLC (TFG)
### Amounts due from Stilwells/ACV
### As of April 30, 2003

| | Principal | Interest (Prime) + 10 % of Reported Sales | Total |
|---|---|---|---|
| 3/31/03 - 1st Qtr Financials (thru 2/28, transactions consistently 1 month behind) | 404,951.63 | 71,810.39 | 476,762.02 |
| March   (1,359.98 + 1,461.71) | | 2,821.69 | 2,821.69 |
| April    (4,882.40 + 1,414.56) | | 6,296.96 | 6,296.96 |
| | 404,951.63 | 80,929.04 | 485,880.67 |
| | | | |
| $101,780.32 unlocated inventory at cost Unknown sales price certainly higher, TFG entitled to a minimum of 10% fee. | | | 10,178.04 |
| | | | |
| JFG/TFG credit application guaranty claim from Eagle Industries for unauthorized purchases made by Stilwell outside the system. (4,463.91 + 7,250.88) | | | 11,714.79 |
| | | | |
| Legal | | | 5,201.00 |
| | | | 512,974.50 |

Due from Stilwell 4-30-03

5/20/0 31:58P
005807 000149

## Tuscola Furniture Group, LLC  (TFG)
### STILWELL - Inventory Reconciliation

*3/31/03*                                                                                                404,951.63

COGS deducted from physical count (since sold) but not yet paid for by Stilwell:
    Thru 3/31/03                                                                    201,896.27
    1st three (3) days of April, 2003                                               0.00

                                                              (201,896.27)
                                                              203,055.36

Inventory count @ 4/3/03 by Cherub Financial                                            (101,275.04)

*Shortage*                                                                                             101,780.32

RP
5/9/2003

**AIG** AMERICAN GENERAL

**Proof of Death**
**- Claimant's Statement**

**American General Life Insurance Company**
Member of American International Group, Inc.
Service Center: P.O. Box 4443 · Houston, TX 77210-4443

*To Be Completed By The Beneficiary*

| DECEASED FULL NAME | DATE OF BIRTH | CAUSE OF DEATH | DATE OF DEATH |
|---|---|---|---|
| James E. Stilwell | 10/07/54 | Heart Attack | 5/02/03 |

POLICIES DECEASED HELD WITH THIS COMPANY:

| POLICY NUMBER | AMOUNT OF INSURANCE | POLICY NUMBER | AMOUNT OF INSURANCE |
|---|---|---|---|
| 2604663 | $4,000,000 | | |

I hereby certify that the policy of insurance for the listed policy has been ☐ ENCLOSED ☐ LOST ☐ DESTROYED

| CLAIMANT'S NAME | DATE OF BIRTH | RELATIONSHIP TO DECEASED |
|---|---|---|
| TUSCOLA FURNITURE GROUP, LLC | | ASSIGNEE / CREDITOR |

| ADDRESS | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| 2220 MARQUETTE RD | PERU | IL | 61354 | (815) 223-3380 |

Have you given the Funeral Home an Assignment to collect any amount due under this claim?  ☐ YES  ☒ NO
*If yes, what amount?* $ _____ ( Attach copy of assignment )

How do you want proceeds paid?  ☒ Lump Sum  *If a lump sum option is elected and the proceeds are $10,000 or more, then an interest earning money-market type account with check-writing privileges will be opened. If the beneficiary wants all proceeds, a check may be written as soon as the account starter kit is received. If the proceeds are less than $10,000, the beneficiary will receive a lump sum check unless an optional payment plan was, or is elected.*
☐ Settlement Option  If Option, give details: _____

IMPORTANT: Do you wish to receive a completed IRS Form No. 712 (Stmt. of Ins.)  ☐ YES  ☒ NO   (An IRS Form 712 is to be filed with United States tax return, Form 706.)

...ny person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE
Tuscola Furniture Group, LLC
By Its Authorized Representative   Lawrence W. Bianchi

Enter the claimant's taxpayer identification number in the appropriate box. For most individuals this is your social security number.

| CLAIMANT'S S.S. NO. | | TAX I.D. NO. |
|---|---|---|
| | OR | # 36-4391423 |

*Note: If the account is in more than one name, see the chart on reverse side for guidelines on which number to give the payer. If the Social Security number or Tax I.D. number is not provided, and backup withholding is applicable, taxes will be withheld from the proceeds.*

CERTIFICATION: Under penalties of perjury, I certify: (1) that the number shown on this claim form is my correct social security (or taxpayer identification) number and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

PLEASE SIGN HERE
CLAIMANT'S SIGNATURE
Tuscola Furniture Group, LLC
By Its Authorized Representative   Lawrence W. Bianchi
DATE  5/09/03

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED?   SHOW BELOW

See Attached Letter

13 Rev0103

Page 1 of 2

# Tuscola Furniture Group, LLC

*Michael M. Janko*, CPA, JD
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-9902
Fax (630) 964-9903

*Richard F. Janko*
*Lawrence W. Bianchi*
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3380
Fax (815) 223-7160

28 May 2003

Mr. William J. Lyons, LUTCF
District Manager
American General Life Insurance Company
231 N. Main Street
Atwood, IL 61913-0260

**VIA FAX (217/578-3292)**
**& OVERNIGHT MAIL**

RE:    Life Insurance Policy No. 2604663

Dear Mr. Lyons:

Please accept this letter as an amendment to my letter dated 12 May 2003. When listing "all Assignments" against the proceeds on the life insurance policy number 2604663, I inadvertently left out an assignment to Tuscola Furniture Group, LLC dated November 21, 2000 for $250,000.

Paragraph four of my letter dated 12 May 2003 is hereby amended to read as follows:

> "Upon receipt of this amount, TFG and the Bank will relinquish all Assignments against the proceeds on the life insurance policy number 2604663. Specifically, these are the assignments to Janko Financial Group, LLC, TFG and the Bank dated April 19, 1999 for $500,000, September 25, 2000 for $1,500,000, November 21, 2000 for $250,000 and January 11, 2001 for $1,000,000."

Please contact me immediately if any further documentation should be needed. Thank you for your assistance.

Very Truly Yours,

Tuscola Furniture Group, LLC and
Janko Financial Group, LLC, the manager of TFG

By: *Lawrence W. Bianchi*
Lawrence W. Bianchi
Their Authorized Representative

EXHIBIT
23

cc:    First Mid-Illinois Bank & Trust
Richard L. Broch, Esq.
Timothy J. Howard, Esq.
Richard Heavner, Esq.

000009



**AMERICAN GENERAL**

Company

*Insurance Service Center for:*

American General Life Insurance

June 10, 2003

JANKO FINANCIAL GROUP, LLC
ATTN: LAWRENCE BIANCHI
2220 MARQUETTE RD
PERU IL 61354-1538

Contract Number:    2604663
Insured:    JAMES STILWELL
Claim Number:    03D00893OLL

Dear Mr. Bianchi:

We are in receipt of a claimant's statement signed by you for the benefit of Janko Financial Group LLC under Policy Number 2604633.

Our records show that In April 2000 and in October 2000, there were Collateral Assignments against the above policy to Janko Financial Group, LLC. In December 2000, we received a release of the Collateral Assignment to Janko Financial Group, LLC. Our records do not reflect a Collateral Assignment to Janko Financial Group, LLC after December 2000. According to our records, there is no debt owing to Janko Financial Group, under Policy 2604633. If you have proof that there is debt owing to this company against this policy, please send us the proof, within fifteen days from the date of this letter.

The Rules and Regulations of the Illinois Department of Insurance requires that our Company advise you that if you wish to take this matter with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 100 West Randolph Street, Chicago, Illinois 60601 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

If you should have any questions regarding this information or forms, please do not hesitate to contact our office at 1.800.487.5433.

Sincerely,
INDIVIDUAL CLAIMS DEPARTMENT

cc:    W0908
    W0090

**EXHIBIT**
tabbies
24

3009

0B1

American General Life Insurance Company
*Member of American International Group, Inc.*
Service Center • P.O. Box 4373 • Houston, TX 77210-4373 • 1.800.487.5433 • Fax 214.654.6008

# Janko Financial Group, L.L.C.

*Real Estate Investments and Financial Management*

Michael M. Janko, CPA, JD
3030 Finley Road
Suite 110
Downers Grove, Illinois 60515
Ph: (630) 964-9902
Fax (630) 964-9903
Rp@jankofinancial.com

Richard F. Janko
Lawrence W. Bianchi
2220 Marquette Road
Peru, Illinois 61354
Ph: (815) 223-3380
Fax (815) 223-7160
Jfg.peru@insightbb.com

11 June 2003

Ray Sawicki, Director of Claims
American General Life
6363 Forrest Park Rd.
Dallas, TX 75235-5460

**VIA FAX (214/654-6047) &
REGULAR MAIL**

RE:    LIFE INSURANCE POLICY No. 2604663

Dear Mr. Sawicki:

Thank you for the opportunity to provide a further explanation for a rather complex situation. Enclosed are copies of the following letters that I will reference in this correspondence:

> **12 May 2003** – Letter to William J. Lyons, District Manager for AIG from Lawrence W. Bianchi, Authorized Representative for Tuscola Furniture Group, LLC & Janko Financial Group, LLC (letter acknowledged by Thomas Chamberlain, Community President for First Mid-Illinois Bank & Trust);

> **12 May 2003** – Letter to William J. Lyons, District Manager for AIG from Thomas Chamberlain, Community President for First Mid-Illinois Bank & Trust (letter acknowledged by Lawrence W. Bianchi, Authorized Representative for Tuscola Furniture Group, LLC & Janko Financial Group, LLC);

> **28 May 2003** – Letter to William J. Lyons, District Manager for AIG from Lawrence W. Bianchi, Authorized Representative for Tuscola Furniture Group, LLC & Janko Financial Group, LLC.

**On 16 April 1999,** Janko Financial Group (JFG), LLC entered into a Consignment Agreement for the retailing of Amish Furniture with Amishland Country Village, Inc. and guaranteed personally by James and Margaret Stilwell. Section 3.9 of this original Consignment Agreement required that JFG and their lender, First Mid-Illinois Bank & Trust (FMIB), receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $2,000,000.

**On 19 April 1999,** JFG received an assignment of life insurance in the amount of $500,000 from Margaret Stilwell, owner of policy number 2604663 with James Stilwell as the insured. However, it was not until **25 September 2000** that JFG received a second assignment of life insurance for the same policy in the amount of $1,500,000 from Margaret Stilwell.

EXHIBIT

Bianchi  7
2-9-07   JH

000014

EXHIBIT

25

On 16 November 2000, JFG signed an Assignment & Assumption Agreement with a newly formed LLC, Tuscola Furniture Group (TFG), LLC. This new entity is owned 70% by JFG with JFG acting as managing member. This agreement specifically included and lists any rights to insurance assignments relating to the original Consignment Agreement.

On 17 November 2000, TFG entered into a new Consignment Agreement with Amishland Country Village, Inc and guaranteed personally by James and Margaret Stilwell. This new agreement modified and replaced the previous agreement. Once again, Section 3.9 of the new Consignment Agreement required that TFG and their lender FMIB receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $1,250,000.

On 20 November 2000, in support of the Assignment & Assumption Agreement between JFG & TFG, JFG signed a release of assignment on policy number 2604663 **"In favor of Tuscola Furniture Group, LLC."** This release was a transfer of all rights of insurance assignment from JFG to TFG.

On 21 November 2000, TFG received an assignment of life insurance in the amount of $250,000 from Margaret Stilwell, owner of policy number 2604663 with James Stilwell as the insured. Then, on 11 January 2001, FMIB received an assignment of life insurance for the same policy in the amount of $1,000,000 from Margaret Stilwell.

The preceeding chronology of events resulted in the following assignments from Margaret Stilwell on policy number 2604663:

> **Tuscola Furniture Group, LLC - $2,000,000** (assignment transferred to Tuscola Furniture Group, LLC via Agreement dated 16 November 2000 and Release dated 20 November 2000);

> **Tuscola Furniture Group, LLC - $250,000** (21 November 2000);

> **First Mid-Illinois Bank & Trust - $1,000,000** (11 January 2001).

Therefore, the life insurance assignments received from Margaret Stilwell on policy number 2604663 in satisfaction of the requirements of the Consignment Agreements (dated 16 April 1999 and 17 November 2000) totaled **$3,250,000.**

These events lead us to the claim being made jointly by TFG and FMIB to American General Life. As documented in the information submitted by JFG, TFG and FMIB, a joint claim is being made for $512,974.50 in conjunction with the obligations of Amishland Country Village, Inc. and James and Margaret Stilwell per the Consignment Agreement date 17 November 2000. The payment of this claim in the amount of $512,974.50 would release all assignments to JFG, TFG and FMIB which total $3,250,000. Mr. Sawicki, as we discussed I believe that a review of the enclosed letters dated 12 May 2003 and 28 May 2003, provide American General Life with releases for all assignments totaling $3,250,000 upon receipt of the claim amount of $512,974.50.

I apologize for the complex nature of this letter. However, I do believe that I have provided a factual summary of the situation. Also, I would be glad to answer any questions that you might have on this matter. In any event please contact me after your legal department has completed their review. As I am sure you can appreciate, all parties concerned are anxiously awaiting payment of our claim.

Thank you for your kind attention.

Sincerely,

*Lawrence W. Bianchi*

Lawrence W. Bianchi/ Authorized Representative
Tuscola Furniture Group, LLC and
Janko Financial Group, LLC, the manager of TFG
:bm

Enclosures

cc:  Dick Janko
     Mike Janko
     Tom Chamberlain, FMIB
     Tim Howard, Attorney at Law

000016

07478.00134

E-FILED
Monday, 05 March, 2007  03:24:50 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

MARGARET J. STILWELL, HALEY STILWELL,   )
HEIDI STILWELL, JAMIE STILWELL, MEGAN   )
STILWELL,                               )
                                        )
                 Plaintiff,             )      No. 05 CV 02160
                                        )
        v.                              )      Honorable Chief Judge
                                        )      Michael P. McCuskey
AMERICAN GENERAL LIFE INSURANCE         )
COMPANY,                                )      Magistrate Judge
                                        )      David G. Bernthal
                 Defendants.            )
————————————————————————————————————    )
AMERICAN GENERAL LIFE INSURANCE         )
COMPANY,                                )
                                        )
                 Third-Party Plaintiff, )
                                        )
        v.                              )
                                        )
FIRST MID ILLINOIS BANK & TRUST,        )
TUSCOLA FURNITURE GROUP, LLC,           )
and JANKO FINANCIAL GROUP, LLC,         )
                                        )
                 Third-Party Defendants.)

### AFFIDAVIT OF DIANA FIELDS

I, Diana Fields, under penalty of perjury, depose and state as follows:

1.      I am employed as a Senior Claims Analyst with American General Life Insurance

Company ("American General"), the defendant/third-party plaintiff in the above-captioned

lawsuit, and have personal knowledge of the statements contained in this affidavit and, if sworn

to testify could competently testify thereto.

2.      Margaret Singh held a position as claims examiner while employed with

American General.  She no longer works at American General.

384169.1
338597.1





3.      I have been employed with American General for over 30 years and have previously held the position of claims examiner with American General.

4.      A claim examiner has the authority and responsibility to review and pay claims that are payable.

5.      In connection with this determination, a claim examiner may call on American General's in-house counsel for the purpose of soliciting legal advice and assistance in determining whether funds should be paid in light of the claim documentation submitted and the policy terms.

6.      Upon review of the file in this case, Margaret Singh communicated with American General's in-house counsel for the purpose of soliciting legal advice and assistance upon receiving the claim submissions from the Third-Party Defendants.

7.      I became a Senior Claims Analyst on or about 2003 when my position as Claim Investigator was renamed to Senior Claims Analyst.

8.      As a Senior Claims Analyst, and previously as a Claim Investigator, I am responsible for the handling of contestable claims, foreign death claims, fraudulent claims and claims pertaining to homicides.

9.      As a Senior Claims Analyst I have the authority and responsibility to analyze the claim documentation submitted and determine if the proceeds are payable in light of that documentation under a policy.

10.    In connection with my determination, I may call on American General's in-house counsel for the purpose of soliciting legal advice and assistance in determining whether funds should be paid in light of the claim documentation submitted and the policy terms.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 5th day of March, 2007.

___/s/  Diana Fields___
Diana Fields

- 3 -

Client.ID:
Team:
    Policy Number: 2604663
    PRODUCT ID:
    Printed on Thursday, September 01, 2005 at 3:43:44PM

Oal

Type:
Status:
Queue:
User Name:   **Singh, Margaret
DTM Description:
Comments:     Note: Face amount $4M

    End Date:     2003-06-26
    End Time:     09:37:55

Assignment to Janko Financial Group was released in 12-2000.
Assignment to: Tuscola National Bank still
outstanding.------------------------$2M
Assignment to Citizens 1ST Natinal Bank still oustanding:----------------- $1
.5M
Amt owed to Tuscola Furniture LLC & First Mid-Illionois Bkm & Trust:
$512,974.50. (documents received and reviewed by Melinda Boyd, Attorney): OK
to pay $512,974.50 to Tuscola Furniture Group LLC & First Mid-Illionois Bk &
Trust.
Melinda Boyd, spoke with Laurence Bianchi who is an authorized member of the
Janko Financial Group, LLC, and asked him fax her the Partnership Agreement
which shows that Laurence Bianchi is indeed an "authorized representative" of
Janko Financial and authorized to release the assignment

per Melinda, send ck to Tuscola Furniture LLC & First Mid-Illinois Bank and
Trust by overnight mail (our expense).
Claim set up for approval.

---

Begin Date:     2003-06-26
Begin Time:     00:18:44
User Id:     AWDBATCH
Workstation Id:   AWDBATCH
Business Area:   CLAIMS
Type:     REG
Status:     DMATCHE
Queue:     DCLAIME
User Name:     Batch Station & User, BATCH
DTM Description:
Comments:

    Flags:     3290N0
    DTM Job Name:
    DTM Return Code:
    DTM Task Name:
    DTM Next Task:
    End Date:     2003-06-26
    End Time:     00:18:44

---

Begin Date:     2003-06-25
Begin Time:     00:19:05
User Id:     AWDBATCH
Workstation Id:   AWDBATCH
Business Area:   CLAIMS
Type:     REG

    Flags:     3000N0
    DTM Job Name:
    DTM Return Code:
    DTM Task Name:
    DTM Next Task:
    End Date:     2003-06-25

**EXHIBIT**

27

tabbies

A1G440

# First Mid-Illinois Bank & Trust

FAX TRANSMITTAL

DATE: 7-3-03

PLEASE DELIVER THE FOLLOWING PAGES TO:

NAME: Mike, Dick & Larry

COMPANY: Janko Financial Group

FAX NUMBER: Mike: 630-964-9903   Dick & Larry: 815-223-7160

FROM: Tom Chamberlain

SENDER FAX #: (217) 359-9889

### *** IMPORTANT NOTICE ***

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE SO THAT WE MAY ARRANGE TO RETRIEVE THIS TRANSMISSION AT NO COST TO YOU. THANK YOU FOR YOUR COOPERATION.

We are transmitting __2__ pages, including this cover page. If you do not receive all of the pages, please call me as soon as possible at: (217) 359-9837 or TOLL FREE (888) 367-8451.

COMMENTS:

Matt delivered check just fine. We paid off the entire loan balance of $81,660.37 and deposited the balance of $431,314.13 to your checking account #894-418-1

Loan Payoff: $81,020.00 Principal, plus $480.00 in legal fees plus $160.37 in accrued interest.

EXHIBIT
28

000007

Inst: 001                          1ST MID-ILLINOIS BANK & TRUST                    Page: 1
COMMERCIAL: 2150095387                    TOM CHAMBERLAIN                System: 05/07/03 1:16 pm


**BALANCES - SUMMARY**


[04]   TUSCOLA FURNITURE GROUP, LLC          Portfolio Number:                                854716
       3030 FINLEY RD SUITE 110              Product:                   [20421] (21) COMMERCIAL
       DOWNERS GROVE    IL 60515             Class:                                [21] COMMERCIAL
                                             Branch Number:    [07] 1ST MID-ILLINOIS BANK & TRUST
Principal Balance:                 81,020.00 Accounting Branch:                             [00007]
Interest Balance:                     197.11 Responsibility Code:       [00368] CHAMBERLAIN, TOM (07)
Net Payoff:                        81,217.11 Purpose Code:            [530] Comml-Operating Expense
                                             Employee/Officer/Director Code:                    [0]
Total Amount Due:                     282.01 Collateral:              I/AR/GI/PERSONAL GUARANTY
Current Payment Due Date:         May 16, 2003 Tax Name:        [04] TUSCOLA FURNITURE GROUP, LLC
Regular Payment Amount:            85,409.00
                                             Original Note Date:                     Nov 17, 2000
Current Rate Over:                   4.2500% Renewal Date:                            Apr 10, 2003
One Day's Interest:                   9.4338 Maturity Date:                           Apr 16, 2004
Current Yield:                       4.2500% Date Principal Paid To:                  Apr 10, 2003
Line Available Balance Code:                 Date Interest Paid To:                   Apr 16, 2003
         Current Max Credit, Funds Avail After Payoff Date Last Payment:              Apr 18, 2003
                                             Amount Last Payment:                          309.18
Interest Billed To:               May 16, 2003
Interest As Of:                   May 16, 2003 Status Code:                                  Active
Total Interest Billed:                282.01 Interest Method:           [2] 365/365 P&I Separate
Total Amount Billed:                  282.01 Loan To Value Ratio:                          .0000

Date Last Updated:                 May 6, 2003 Months To Maturity:                              11
Date Accrued Thru:                 May 6, 2003
Date Last Tran Activity:          Apr 21, 2003 Times Renewed:                                    2
Date Last Change:                 Apr 17, 2003 Times Past Due 0-29 Days:                         1
                                             Total Past Due Payments:                           1
                                             Payments Scheduled:                                1



Grp. EXHIBIT
29
tabbies

000133

2/0

                    L O A N   P A Y O F F   S T A T E M E N T


    TUSCOLA FURNITURE GROUP, LLC          Loan Number:      2150095387
    3030 FINLEY RD SUITE 110              Date Quoted:       07/03/03
    DOWNERS GROVE        IL  60515        Payoff Good to:    07/03/03


================================================================================
COLLATERAL: I/AR/GI/PERSONAL GUARANTY

    PRINCIPAL                                      81,020.00
    INTEREST TO 07/03/03                              160.37
                                              ------------------
    ********************************************************************
    * NET AMOUNT DUE                               81,180.37 *
    ********************************************************************

    ONE DAY'S INTEREST                                 9.43


                          Legal Fees    +480.00
                                        _____
                                        81,660.37


                    512,974.50
                   - 81,660.37
                   _____
                    431,314.13


                                                              000006