**E-FILED**
Monday, 02 April, 2007  04:49:47 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| MARGARET J. STILWELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | No. 05-CV-02160 |
| v. | ) | |
| | ) | Honorable Michael P. McCuskey |
| AMERICAN GENERAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | Magistrate Judge David G. Bernthal |
| Defendant. | ) | |
| _____ | ) | |
| AMERICAN GENERAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| FIRST MID ILLINOIS BANK & TRUST, | ) | |
| TUSCOLA FURNITURE GROUP, LLC, | ) | |
| and JANKO FINANCIAL GROUP, LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT ON THIRD PARTY COMPLAINT

NOW COME Third-Party Defendants, TUSCOLA FURNITURE GROUP, LLC ("TFG") and JANKO FINANCIAL GROUP, LLC ("JFG"), by HOWARD & HOWARD ATTORNEYS, P.C. and respectfully submit their Motion for Summary Judgment on Defendant's/Third-Party Plaintiff's, AMERICAN GENERAL LIFE INSURANCE COMPANY ("AGLIC"), Third-Party Complaint pursuant to Federal Rule of Civil Procedure 56(b) and Central District Local 7.1(D).

## I.     INTRODUCTION

The real tragedy here is that Margaret Stilwell's testimony reveals that she has no personal knowledge or evidence to support her claims in her Complaint. Worse yet, she seeks to take financial advantage of her and her late husband's own misconduct. All of the evidence

obtained through discovery demonstrates that TFG, JFG, and First Mid Illinois Bank & Trust ("Bank") (collectively referred to as "Third-Party Defendants") followed the instructions issued by James Stilwell and completed the forms designated by AGLIC in the manner AGLIC indicated.

James and Margaret Stilwell promised in their contract with TFG to make a joint assignment of life insurance policies in the amount of 1.25 million dollars in favor of TFG and the Bank.  At the time of James Stilwell's passing, he and Margaret owed significant monies to TFG and JFG, some of which was due because James was "out of trust," i.e. failing to pay TFG for sold goods.  Margaret then shielded herself from having to make any payments by filing bankruptcy.

TFG and JFG declared that they were not filing a claim in her bankruptcy because they had received insurance proceeds.  Margaret then discovered that the insurance proceeds would be shielded from creditors, and she waited until after the claim date had passed for TFG and JFG to file claims against her bankruptcy estate then filed suit for the insurance proceeds paid to TFG and JFG.  She and the other contingent beneficiaries seek to do now indirectly what they could not do directly.

The Assignment and Assumption Agreement dated November 16, 2000 between JFG and TFG which included the collateral assignment of $2,000,000 of the life insurance policy on James' life was sufficient to effectuate an assignment of the right to the life insurance proceeds to TFG.  If the November 16, 2000 Assignment did not properly effectuate an assignment, then the November 20, 2000 release by JFG in favor of TFG was legally sufficient itself to accomplish the transfer.

Regardless of the legal effect of either document, the Third-Party Defendants are nevertheless entitled to judgment because AGLIC voluntarily made a payment under a claim of right after it made its own determination of the validity of the claim. The evidence demonstrates that Third-Party Defendants did not make any misrepresentations of material fact and that all material facts were made known to AGLIC.

William Lyons, the insurance broker who sold the policy to the Stilwells and handled the assignment in question failed to identify any misrepresentation. Larry Bianchi, who acted as agent for the Third-Party Defendants, provides the only evidence on this issue. He testified that he submitted documents in response to AGLIC's request. Bianchi described the documents in his transmitting correspondence. Mr. Lyons stated in his deposition that the documents and correspondence were received and reviewed by AGLIC and that it made the ultimate determination regarding claim payment. Hence, summary judgment should enter in favor of Third-Party Defendants.

## II.    UNDISPUTED MATERIAL FACTS

1.    Margaret Stilwell, the wife of James Stilwell, ("Margaret") was the owner and beneficiary of a life insurance policy issued by AGLIC on the life of James Stilwell. Policy #2604663 in the amount of $4,000,000 the ("Policy") attached as Exhibit 1 to the Third-Party Complaint, hereinafter referred to as TPC Exh. 1. All exhibits attached to the Third-Party Complaint will be referred to as "TPC Exh. ___."

2.    The Policy was taken out to secure business debts. (Lyons Dep., p. 16, lines 1-18.)

3.    James Stilwell ("James") was President of Amishland Country Village, Inc. ("ACV") (Third-Party Complaint, ¶ 6.)

3

4.      JFG was the managing member of Amishland Development, LLC, and ACV leased its business premises in Tuscola, Illinois from Amishland Development, LLC.  (The Lease Agreement is attached as JFG Exhibit A; Bianchi Dep., p. 87 lines 2-7.)

5.      ACV entered into a Consignment Agreement dated April 16, 1999, with JFG. (This "1999 Consignment Agreement" is attached hereto as JFG Exhibit B; Stilwell Dep., pp. 21-22.)

6.      ACV lacked the resources to finance its inventory.  Pursuant to the 1999 Consignment Agreement, JFG financed ACV's inventory of Amish-crafted furniture.   In exchange, ACV made principal and consignment payments to JFG.  (Bianchi Dep., p. 11, lines 14-24.)

7.      James Stilwell sought out JFG to get a higher credit amount and better financing terms that he could obtain at a bank.  (Bianchi Dep., p.13 lines 16-18.)

8.      Pursuant to Paragraph 3.9 of the 1999 Consignment Agreement, ACV agreed to maintain life insurance and pay the premiums in an amount of at least $2,000,000, with First Mid and JFG as the named beneficiaries.  Further, as an inducement for the original Consignment Agreement, James and Margaret executed a personal Guaranty of the obligation of ACV under the Consignment Agreement.  (JFG Exhibit C; Bianchi Dep., p. 14 lines 19-24, p. 15, lines 1-24, p. 16 lines 1-7; Stilwell Dep., pp. 21-22.)

9.      On April 19, 1999, Margaret Stilwell executed a Collateral Assignment of the Policy in the amount of $500,000 to JFG.  (TPC Exh. 2.)

10.      On September 25, 2000, Margaret Stilwell executed a Collateral Assignment of the Policy in the amount of $1,500,000 to JFG.  (TPC Exh. 3.)

11.    TFG was created by JFG to take over the Amish furniture consignment business with ACV.  JFG owned seventy percent (70%) of TFG.  (Bianchi Dep., p. 22 lines 1-5.)

12.    On November 16, 2000, TFG and JFG entered into an Assignment and Assumption Agreement for Amish Furniture ("hereinafter the TFG Assumption Agreement") whereby JFG transferred to TFG any and all contracts and documents "including insurance policies" relating to the 1999 Consignment Agreement for Amish furniture between ACV and JFG.  (TFG Assumption Agreement is attached as JFG Exhibit D; Bianchi Dep., p. 14 lines 19-24 and p. 15, lines 1-24.)

13.    As of November 2000, ACV still lacked the resources to finance its inventory. On November 17, 2000, ACV entered into a new consignment agreement with TFG pursuant to which TFG financed ACV's inventory of Amish crafted furniture (the "2000 Consignment Agreement").  In exchange, ACV made principal and consignment payments to TFG.  (2000 Consignment Agreement is attached as JFG Exhibit E; Stilwell Dep., pp. 25-28.)

14.    As an inducement for the 2000 Consignment Agreement, James and Margaret Stilwell executed a personal Guaranty of ACV's obligations under the 2000 Consignment Agreement.  (The Guaranty is attached as JFG Exh. F; Stilwell Dep., p. 27.)

15.    Section 3.9 of the 2000 Consignment Agreement requires ACV to maintain and pay the premiums on life insurance in an amount of at least $1,250,000 with First Mid and TFG as the named beneficiaries.  (Bianchi Dep., pp. 23-28.)

16.    At the closing and thereafter Bianchi "hounded" James daily to obtain the collateral assignment of the Policy required by the 2000 Consignment Agreement.  (Bianchi Dep., pp. 36, 110-111.)

17.    In furtherance of the 2000 Consignment Agreement, on November 21, 2000, Margaret made a Collateral Assignment in the amount of $250,000 of the Policy to TFG. (TPC Exh. 5; Bianchi Dep., p. 33; Stilwell Dep., p. 28.)

18.    Because the required assignment of $1,250,000 to both First Mid and TFG as joint beneficiaries had not been properly made as required by the 2000 Consignment Agreement, Bianchi received from William Lyons of AGLIC a letter with a partially filled out form that would effectuate the desired result.  (The letter is attached as JFG Exh. G; Bianchi Dep., pp. 30, 110-111.)

19.    On or about November 20, 2000 [the fax machine date upper left hand corner], Bianchi, on behalf of JFG, signed the tendered form and released JFG's assignment under the Policy "in favor of Tuscola Furniture Group, LLC."  (TPC Exh. 4; Bianchi Dep., p. 31) (hereinafter referred to as the "JFG Assignment to TFG").

20.    On January 11, 2001, Margaret made a Collateral Assignment of $1,000,000 of the Policy to First Mid.  (TPC Exh. 6; Bianchi Dep., p. 34; Stilwell Dep., pp. 29-30.)

21.    On February 13, 2003, Amishland Development, LLC, filed suit against ACV and the Stilwells as guarantors for past-due rent. (Bianchi Dep., p. 41, lines 11-14.)

22.    James Stilwell died on May 2, 2003. (Third-Party Complaint, ¶ 19.)

23.    After Mr. Stilwell's death, AGLIC provided claimant forms to TFG and First Mid.  (Third-Party Complaint, ¶ 20.)

24.    By letter dated May 12, 2003, First Mid submitted to AGLIC a completed claim for $512,974.50 with a cover letter on behalf of Bank, JFG and TFG.  The cover letter states that First Mid, JFG and TFG were making a joint claim for collateral assignments securing unpaid

obligations.  The cover letter itemized the $512,974.50 still due and owing to First Mid and TFG. (TPC Exh. 7.)

25.    By letter dated May 12, 2003, Bianchi submitted to AGLIC a completed claim form for TFG.  The correspondence made an application for joint proceeds and provided an itemized amount of the unpaid debt secured by the Policy.  (TPC Exh. 8.)

26.    By letter dated May 28, 2003, Bianchi amended his May 12th letter because he inadvertently failed to reference the November 21, 2000 Collateral Assignment in the amount of $250,000. (TPC Exh. 9.)

27.    William Lyons does not dispute the statements or amounts contained in any of the correspondence in his file on this matter sent by Bianchi.  (Lyons Dep., p. 72.)

28.    By letter dated June 10, 2003, AGLIC requested verification of the collateral assignments and confirmation of the debt from TFG and First Mid.  (Third-Party Complaint, ¶ 27.)

29.    By letter dated June 11, 2003, Bianchi explained in detail to AGLIC the events leading up to the assignments and provided copies of all of the Collateral Assignments and both Consignment Agreements.  (TPC Exh. 10.)

30.    On June 26, 2003, AGLIC paid the sum of $512,974 to TFG and First Mid in full satisfaction of their claim.  (Third-Party Complaint, ¶ 33.)  The Bank received $81,000 and TFG retained the balance.  (Bianchi Dep. pp.113-117.)

31.    Amishland Development, LLC, notified ACV and Margaret, through her attorneys, that it would dismiss its action because it was receiving insurance proceeds.  (Bianchi Dep., p. 46, lines 14-18 and pp. 70-73.)

32.    AGLIC relied upon its own evaluation of the legal effect of the documents before paying TFG and JFG.  AGLIC states that Margaret Singh, a claims examiner, communicated with AGLIC's in-house counsel for the purpose of soliciting legal advice and assistance in determining whether funds should be paid on the claim submission from the Third-Party Defendants.  (See Affidavit of Diana Fields, ¶¶ 2-10 filed March 5, 2007 as Docket No. 77-5.)

33.    Margaret Singh noted in an AGLIC document that the "Amt [amount] owed to Tuscola Furniture LLC & First Mid-Illinonois (sp) Bkm & Trust:  $512,974.50 (documents received and reviewed by Melinda Boyd, Attorney); OK to pay $512,974.50 to Tuscola Furniture Group LLC & First Mid-Illionois (sp) Bk & Trust. … per Melinda, send ck to Tuscola Furniture LLC & First Mid-Illinois Bank and Trust by overnight mail (our expense).  Claim set up for approval."  (See AIG440 attached to AGLIC's Response Brief filed March 5, 2007 as Docket No. 77-3, Bates Stamp A16440.)  (A copy of this document is also attached as JFG Exhibit H.)

34.    Margaret filed personal bankruptcy and has an agreement with her bankruptcy trustee about pursuing her current claim.  Chapter 7 Bankruptcy Case No. 03-93877 filed November 25, 2003 in the U.S. Bankruptcy Court for the Central District of Illinois (Danville Division) (Order Authorizing Trustee to Employ Jason Crowder as Attorney for the Trustee entered May 17, 2005.)  (Stilwell Dep., p. 61, lines 17-20.)

35.    TFG and JFG did not file a claim in Margaret's bankruptcy because their debt had been satisfied by receipt of life insurance proceeds.  (Bianchi Dep., pp. 73-74.)

36.    Margaret claims AGLIC overpaid the Third-Party Defendants by $181,974.50. (Complaint, ¶¶ 14-16; TPC Exh. 12.)

The deposition excerpts for the following persons are attached as exhibits.

JFG Exhibit I                    Larry Bianchi

JFG Exhibit J                    William Lyons

JFG Exhibit K                    Margaret Stilwell

### III.    STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  In determining whether any genuine issue of material fact exists, all facts shall be construed in the light most favorable to the non-moving party, and all reasonable and justifiable inferences shall be drawn in favor of that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, neither the "mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  Summary judgment is appropriate only if no rational trier of fact viewing the record as a whole could find for the non-moving party. *Matsushita*, 475 U.S. at 587.  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Summary judgment is particularly appropriate in cases involving contract interpretation because when the contract is unambiguous, the meaning of the contract is a question of law. *Murphy v. Keystone Steel & Wire Co.,* 61 F.3d 560, 564-65 (7th Cir. 1995); *see also Am. Med. Sec., Inc. v. Executive Risk Specialty Ins. Co.,* 393 F.Supp.2d 693, 699 (E.D. Wis. 2005). A contract is unambiguous if it is susceptible to only one reasonable interpretation. *Tingstol Co. v.*

*Rainbow Sales, Inc.,* 218 F.3d 770, 771-72 (7th Cir. 2000). Whether a contract is clear or ambiguous is a matter of law for the court, but the meaning of any ambiguity is a question of fact for a jury. *Id.* at 772. Extrinsic evidence is considered only if the contract itself is ambiguous. Id.

In this diversity action, the *Erie* Doctrine calls for the Court to apply the substantive law of the forum state in which the cause of action arose.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Illinois contract law governs this case, and provides that absent coercion, fraud or a superior bargaining position by the transferee, money paid by an insurer under a mistake of law is not recoverable.  *Cohn v. Anthem Life & Health Ins. Co.*, 965 F. Supp. 1119, 1121-22 (N.D. Ill. 1997) (citing *Illinois Graphics Co. v. Nickum,* 159 Ill. 2d 469, 639 N.E.2d 1282, 1292 (1994)).  "Mistake of law" has been defined as an erroneous conclusion of the legal effect of known facts.  *Id.*  Even if AGLIC reached the wrong legal conclusion, it may not recover a payment made as a result of a mistake of law.  *Auto-Owners Ins. Co. v. South Side Trust & Savings Bank*, 176 Ill. App. 3d 303, 531 N.E.2d 146, 151-152 (3rd Dist. 1988).

# IV.    ARGUMENT

**A.    At the time the Third-Party Defendants Filed Their Claims, TFG held $2,250,000.00 in Collateral Assignments.**

**1.    JFG validly assigned its Collateral Assignments to TFG on November 16, 2000.**

There is no dispute that at the time of James Stilwell's death, there was a policy in force with AGLIC.  James took out the $4,000,000.00 policy in order to secure loans with various creditors in an effort to protect his family from outstanding business debt.  The Policy provides that all an owner needs to change the beneficiary or ownership of the Policy is to provide written notice to the AGLIC.  (See TPC Exh. 1, p. 5.)

Insurance contracts, including beneficiary changes, assignments, and loans with the policy as collateral, are governed by the same legal principles that govern contracts.  *In re Cohen's Estate*, 23 Ill. App. 2d 411, 417, 163 N.E.2d 533 (1st Dist. 1959).  The insurance policy is a contract between the insured and the insurance company.  It may contain provisions which dictate the "intent, meaning, or consequences of other documents."  Thus, all documents must be examined to determine the parties' rights.  *Id*.   "The facts, together with reasonable inferences should control."  *Id.* at 424**.**

The terms of the Policy at issue in this action are clear:  assignments are valid and enforceable when notice is provided.  In this case, the facts are also undisputed:  an assignment was made and proper notice of the Collateral Assignments was provided to AGLIC.  Hence, the assignments are enforceable.

JFG and ACV (the Stilwell's business) were parties to the original Consignment Agreement dated April 16, 1999.  Paragraph 3.9 of the Agreement required ACV to maintain life insurance on the life of James in the amount of $2,000,000.00, with JFG and the Bank as

beneficiaries. (Bianchi Dep., p. 15.)  During James's lifetime, the Collateral Assignments made by Margaret in favor of JFG ($500,000.00 on April 19, 1999, and $1,500,000.00 on September 25, 2000) were required by the 1999 Consignment Agreement.  (Statement of Facts, ¶¶ 8-10.) These Collateral Assignments dictated that the proceeds of the Policy would be paid to JFG upon James's death.

On November 16, 2000, JFG assigned all of its rights in the 1999 Consignment Agreement to TFG by the "TFG Assumption Agreement."  Paragraph 2 of the TFG Assumption Agreement specifically assigned to TFG, "[a]ny and all Contracts and other documents including insurance policies, relating to and incurred in connection with the acquisition and consignment of AMISH FURNITURE pursuant to the Consignment Agreement referred to in paragraph 1."  This Agreement, standing alone, was sufficient to assign Margaret's April 19 1999, and September 25, 2000 Collateral Assignments of life insurance held by JFG to TFG.

The law in Illinois is well-settled as to the benefits afforded a life insurance assignee. Over one hundred years ago, the Illinois Supreme Court held that an assignee pursuant to an assignment of a life insurance policy is entitled to receive the benefits accruing at the insured's death, to the extent of the debt owed.  *Martin v. Stubbings,* 126 Ill. 387, 407, 18 N.E.2d 265 (1888)**.**  It is also well established that any objection concerning the failure of an assignee to give proper notice of an assignment can be raised solely by the insurer, as the notice provisions of a policy are for its benefit.  *Equitable Life Ins. Co. of Iowa v. Mitchell,* 248 Ill. App. 401 (2nd Dist. 1927).  Fundamental contract principles dictate that an assignment need not take any particular form and is valid if it contains language sufficient to show the intent to assign certain rights and interests currently held by one party to another.   *Stoller v. Exch. Nat'l Bank of Chicago,* 199 Ill. App. 3d 674, 681 557 N.E.2d 438, 443 (1st Dist. 1990).

The TFG Assumption Agreement itself validly assigned the Collateral Assignments previously made in favor of JFG to TFG. The undisputed language of the TFG Assumption Agreement and Bianchi's testimony leaves undisputed the parties' intent in executing that document. Pursuant to the holding of *Equitable Life*, Margaret cannot allege that this assignment is invalid or defective because it was not sent directly to AGLIC. Only AGLIC could raise such an objection to the form of notice and it has not done so.

The day after the TFG Assumption Agreement was signed, ACV and TFG entered into a new consignment agreement dated November 17, 2000. This 2000 Consignment Agreement provided at paragraph 3.9 that ACV would maintain life insurance on James in the amount of at least $1,250,000.00, with TFG and the Bank as named beneficiaries. The Stilwells did not bring the life insurance assignment forms required by paragraph 3.9 to the closing of the 2000 Consignment Agreement. Larry Bianchi, the representative of JFG and TFG, testified that TFG did not waive this condition.

Bianchi insisted that the Stilwells obtain the required assignment form. Specifically, Bianchi testified:

> At closing we instructed Jim and Margaret Stilwell that we had to be covered under this agreement. We stated that we felt that we were covered under the agreement because of the assignment and assumption agreement that was dated the day before this agreement that assigned the life insurance's previous assignments. And we requested, pending receipt of the proper beneficial interest in the amount of $1,250,000.00 for TFG and First Mid Illinois Bank, that we wanted to substantiate to the insurance company the assignment of the rights to the beneficial interest that already existed, and therefore I requested -- we requested from Jim Stilwell that he provide us with a form so that we could notify the insurance company.

(Bianchi Dep., p. 37.)

Pursuant to Bianchi's request for a form to notify AGLIC of the assignment to TFG, William Lyons, on behalf of AGLIC, forwarded the assignment attached as Exhibit 4 to the Third Party Complaint.  When Bianchi received the form, sections one and three had already been completed and the form was accompanied by a cover letter.  (Statement of Facts, ¶¶ 18-19.) Bianchi signed the document provided by AGLIC, and wrote "In favor of Tuscola Furniture Group, LLC" next to his signature.

In order to insure his intent to transfer the Collateral Assignments from JFG to TFG was clear, Bianchi wrote next to his signature, "In favor of Tuscola Furniture Group, LLC."  There is no question that the TFG Assumption Agreement, as well as this assignment, were intended to assign JFG's Collateral Assignments to TFG.  (Bianchi Dep., p. 31.)

Bianchi attempted and did, in fact, notify AGLIC of the assignment by JFG to TFG of all contracts.  Bianchi requested, received and executed the assignment form provided by AGLIC. (TPC Exh. 4.)  Although the word "release" appears on TPC Exhibit 4, there is no question when the document is reviewed as a whole in conjunction with all facts and surrounding circumstances that the document was meant to be and is an assignment to TFG rather than a complete release of JFG's Collateral Assignments.

The case of *In Re Estate of Constantine,* 305 Ill. App. 3d 256, 711 N.E.2d 119 (1st Dist. 1999), is directly on point. The court considered this question:  "When is a document entitled 'Release' not a release?"  *In re Estate of Constantine,* 305 Ill. App. 3d at 257.  The court answered the question finding that a document is not a release when the people who sign the document intend it to be something else.  *Id.*  In reaching this holding, the court specifically noted that when interpreting a contract, it must look at the circumstances surrounding the

execution of the document in order to determine the intent of the parties.  *Id.* at 260 (citing

*Batteast v. Wyeth Laboratories*, Inc., 137 Ill. 2d 175, 183, 560 N.E.2d 315 (1990)).

Here, Illinois law dictates that if the terms of the Policy were adhered to, the Policy acts

as a contract.  There is no dispute that the parties to the TFG Assumption Agreement intended to

assign all of the rights held by JFG to TFG, including the Collateral Assignments of the Policy

on James's life.  And there is no question but that Bianchi caused appropriate notice to issue to

AGLIC.   Summary  judgment  should  be  granted  on  all  counts  in  favor  of  the  Third-Party

Defendants.

> **2.      If the TFG Assumption Agreement was not an effective
> transfer of the rights in the insurance proceeds from JFG to
> TFG, the subsequent transfer by JFG in favor of TFG was
> sufficient to vest JFG's rights with TFG.**

As explained above, Bianchi completed the form provided by AGLIC through William

Lyons.  The form Lyons sent to Bianchi was accompanied by a cover letter, in which Lyons

states that it is being sent to Bianchi for the release "from Janko." (See JFG Exh. G.)  Although

the box designated "release" is checked on the form, Bianchi, in an effort to make the intent of

JFG clear, wrote in next to his signature, "in favor of TFG."  Bianchi intended to transfer, not

release, the Collateral Assignments on that date.  The intent of JFG in signing the document is

based on the language of the document, and the circumstances at the time the document was

signed. *See In re Estate of Constantine,* 305 Ill. App. 3d at 257.  JFG did not intend a release of

JFG's Collateral Assignments.  Moreover, the document was also construed by AGLIC as an

assignment of JFG's Collateral Assignments to TFG.

In the TFG Assumption Agreement JFG assigned all of its contract rights to TFG.  If the

TFG Assumption Agreement did not transfer JFG's rights in the Collateral Assignments from

JFG to TFG, then the subsequent release on November 20, 2000 from JFG "in favor of TFG"

should be sufficient to transfer JFG's rights in the Collateral Assignments to TFG. Summary judgment should be granted on all counts in favor of the Third-Party Defendants.

> **B.**     **Third-Party Defendants are entitled to judgment as a matter of law because the unrebutted evidence establishes AGLIC made a voluntary payment under a claim of right and fails to show fraud or mistake of fact occurred.**

Illinois law prevents recovery where, as here, AGLIC made a mistake of law. AGLIC made a voluntary payment as demonstrated by all of the evidence before this Court.

Under the "voluntary payments doctrine, … neither money paid under a claim of right with full knowledge of the underlying facts and absent coercion, fraud or a superior bargaining position by the transferee nor money paid under a mistake of law is recoverable." *Cohn v. Anthem Life & Health Ins. Co.*, 965 F. Supp. at 1121-22. "Mistake of law" has been defined as an erroneous conclusion of the legal effect of known facts. *Id. See also Hartford v. Doubler*, 105 Ill. App. 3d 999, 1001, 434 N.E.2d 1189, 1191 (3rd Dist. 1982). ("It is a well established proposition of law that money paid under a mistake of fact can be recovered by the payor. However, money paid under mistake of law cannot be so recovered.")

In *Hartford*, the defendant rancher's insurance policy excluded coverage for the loss of livestock while in a public sale barn. When some of the rancher's steers were stolen from a public sale barn, the insured notified the authorities and his insurer. 434 N.E.2d at 1190. The claims form submitted by the insured noted that the loss occurred at a public sale barn. After interviewing the insured, and reviewing the police report and claim form, the insurer paid the claim. 434 N.E.2d at 1190. The insurer later filed suit to recover the payment, asserting the adjuster made payment by mistake without knowledge of the public barn exclusion.

The appellate court affirmed the trial court's grant of summary judgment in favor of the rancher. In doing so, it noted the insurer is charged with knowledge of its policies and received

the request to act under the terms of its policy. *Hartford,* 434 N.E.2d at 1191. Thus, the court held, the insurer made the payment with full knowledge of the sale barn exclusion and it was a nonrecoverable mistake of law. The court stated "[b]ecause approval and payment of the … claims were made voluntarily and without lack of knowledge or mistake of fact, any policy provisions exempting coverage have been waived." *Hartford,* 434 N.E.2d at 1192.

In *Hartford* the defendants neither withheld information nor distorted the facts presented to the plaintiff. Because approval of payment of the defendants' claims was made voluntarily and without lack of knowledge or mistake of facts, the insurer could not recover those amounts.

The *Hartford* court relied on the case of *Western & Southern Life Ins. Co. v. Brueggeman*, 323 Ill. App.173, 55 N.E.2d 719 (4th Dist. 1944). In the *Western* case, an insurer had inadvertently made payment on a claim of a beneficiary to a life insurance policy for a military death despite a military and naval service exemption clause in the policy. *Id.* at 720. The insurer made payment with knowledge that the insured was in the military. The court in *Western* found that payment had been made voluntarily without any fraud or misrepresentation and that the insurer could not recover the payment. *Id.* at 721-722.

In *Auto-Owners Ins. Co. v. South Side Trust & Savings Bank*, 176 Ill. App. 3d 303, 531 N.E.2d 146, 148-150 (3rd Dist. 1988), South Side Bank brought a counterclaim against an insurer to recover payments its employees made on a letter of credit. *Id.* South Side issued a letter of credit on behalf of an electrical subcontractor to secure a performance bond issued by the insurer. The performance bond did not conform to the letter of credit, but South Side paid a draw made by the issuer of the performance bond. Its employees had assumed that the wording of the bond and the letter of credit were in compliance. *Id.*

South Side later learned that the performance bond and letter of credit were not in compliance. The bank sued the issuer of the performance bond to recover the draw it had paid. *Id.* South Side argued that its error was one of fact entitling it to recover its payment to the issuer of the performance bond and that it was not aware of noncompliance because the plaintiff failed to supply it with a copy of the bond. *Id.* at 151 The insurer successfully argued that since South Side Bank misinterpreted the legal effect of the letter of credit, it had made a mistake of law. The Appellate Court held that since the defendant paid the money without demanding to see the bond, it also had waived its right to reimbursement. *Id.* at 152.

The record shows that no facts or documents were concealed from review by AGLIC. AGLIC has failed to offer any evidence that Mr. Lyons doubted the accuracy of the information provided to AGLIC. (Lyons Dep., p. 72). Bianchi testified that the numbers supporting the amount due the Third party Defendants were accurate. (Bianchi Dep., pp. 52-53). He further said that all of the information contained in his correspondence to AGLIC was true and correct. (Bianchi Dep., p. 54). If a mistake was made in this case, it was one of law. As a result, AGLIC should not recover.

AGLIC reached its own legal conclusion regarding the Third-Party Defendants' right to payment. Margaret Singh, a claims examiner, communicated with AGLIC's in-house counsel for the purpose of soliciting legal advice and assistance upon receiving the claim submissions from the Third-Party Defendants. The documents produced by AGLIC corroborate that it conduced an independent legal analysis of the facts and documents of this case. Margaret Singh stated in a file entry that the documents submitted by Larry Bianchi were received and reviewed by Melinda Boyd, Attorney and that AGLIC was approving payment of $512,974.50 to TFG and First Mid per Melinda. (Statement of Facts, ¶¶ 32-33.)

As stated in *Auto-Owners*, misinterpreting the legal effect of a document is a mistake of law. If AGLIC was in doubt, it could have interpleaded the funds.

Here, like the nonrecoverable payments in *Hartford,. Auto-Owners,* and *Western & Southern*, AGLIC made payment voluntarily, with full knowledge, and with the benefit of the documents themselves. AGLIC required the Bank, TFG and JFG to produce documents and information for its review. (Third-Party Complaint*, ¶ 27*). Pursuant to AGLIC's request for verification of the basis for the joint claim, Bianchi sent an exhaustive verification correspondence on behalf of JFG and TFG explaining in chronological detail the assignments and events which formed the basis of the entities claims made under the Policy and drawing attention to the November 20, 2000 release of assignment by JFG in favor of TFG. (TPC Exh. 10)

AGLIC's Third-Party Complaint on its face recognizes it received all of the relevant underlying facts. AGLIC alleges it requested, received, acknowledged receipt of, and subsequently recorded all four assignments. (Third-Party Complaint, ¶¶ 9-18) This includes the Collateral Assignments from Margaret to JFG and TFG, as well as the November 20, 2000 JFG Assignment to TFG. (Third-Party Complaint, ¶ 13, TPC Exh. 4. See also AGLIC's Answer to Margaret's Complaint, ¶ 8, Affirmative Defense, ¶ 13, TPC Exh. 13) As is clear from Paragraphs 11 through 18 of the Third-Party Complaint, AGLIC had all of the collateral assignments prior to its decision to make payment. Now, only after Margaret claims the JFG Assignment to TFG was a blanket release and not an assignment does AGLIC seek to recover payments it voluntarily made.

AGLIC made a voluntary payment after receiving all of the documents and information. AGLIC concluded that the JFG Assignment to TFG was properly executed in favor of TFG and

made payment accordingly.  Like the insurer in *Auto-Owners*, TFG and JFG believed they had properly executed the legal document assigning JFG's interest to TFG.  Like the bank in *Auto-Owners*, AGLIC received and reviewed the legal document without objection.  Like the bank in *Auto-Owners*, AGLIC should not be allowed to recover its voluntary payment.  Even if AGLIC misinterpreted the effect of the assignment, such a mistake was one of law.  Under Illinois law, it may not recover payments it voluntarily made when it had all the relevant facts, even if it reached the wrong legal conclusion from those facts.  Summary judgment should be granted on all counts in favor of the Third-Party Defendants.

### C.     The evidence in the record unequivocally demonstrates a complete lack of fraud.

The only way AGLIC can possibly circumvent Illinois law regarding the voluntary payment doctrine is to establish a fraudulent misrepresentation was made to it by TFG and JFG. There is no evidence that any misrepresentation was made.  As a result, AGLIC cannot carry its burden of proof and Third-Party Defendants are entitled to judgment as a matter of law.

To state a cause of action for fraudulent misrepresentation, a plaintiff must allege that the defendant made a representation of material fact, the defendant knew or believed the representation was untrue, the plaintiff had a right to and did rely on the representation, the representation was made for the purpose of inducing the plaintiff to act or refrain from acting, and the representation led to the plaintiff's injury.  *Miner v. Fashion Enterps., Inc.* 342 Ill. App. 3d 405, 794 N.E.2d 902 (1st Dist. 2003).  A misrepresentation is "material" and therefore actionable if it is such that had the other party been aware of it, he would have acted differently. *Mack v. Plaza Dewitt Ltd. P'ship*, 137 Ill. App. 3d 343, 484 N.E.2d 900 (1st Dist. 1985).

Here there was not a misrepresentation of material fact.  The statement that "JFG released its assignments amounting to $2,000,000 in favor of TFG and, thus, transferred those rights

under the Assignment to TFG pursuant to the agreement dated November 16, 2000, between JFG and TFG and the release of assignment dated November 20, 2000 submitted to American General" is not a misrepresentation at all. (Third-Party Complaint, ¶ 37.) Bianchi affirmatively stated that the information and correspondence he provided were true and correct. Lyons himself stated that he has no reason to doubt the accuracy of the information or documents provided by the Third-Party Defendants. (Lyons Dep., p. 72)

The "misrepresentation" alleged in the Third-Party Complaint is regarding the legal effect of the November 20, 2000 JFG Assignment in favor of TFG. AGLIC does not allege the Third-Party Defendants misrepresented the language in the JFG Assignment to TFG. The Third-Party Defendants simply quoted the language in the assignment. Simply put, Margaret reached a different conclusion of the legal effect of the language than both AGLIC and the Third-Party Defendants did in this case. Regardless of the conclusion reached, AGLIC, made its decision with full knowledge of the facts. Therefore, Third-Party Defendants are entitled to judgment as a matter of law on all counts of AGLIC's Third-Party Complaint.

> **D.    AGLIC's fraud, unjust enrichment, contribution and implied indemnity claims are nothing more than relabeled mistake claims and are defective for the same reasons as its mistake claims.**

As stated above, the only mistake that occurred, if at all, was one of law made by AGLIC. The record reveals no evidence of fraud or misrepresentations. The remaining counts in the Third-Party Complaint must also be dismissed because Illinois law does not recognize an exception to the voluntary payments doctrine for claims of unjust enrichment, contribution or implied indemnity.

Even if Illinois law allowed such claims, all of AGLIC's third party claims are redundant because they are based on the same alleged "misrepresentations." The Third-Party Complaint

alleges that TFG, JFG and Bank represented that JFG had released its assignment of two million dollars ($2,000,000) in favor of TFG pursuant to the assignment dated November 20, 2000.  The Third-Party Complaint further alleges TFG, JFG and First Mid represented that the outstanding life insurance assignments totaled three million dollars ($3,000,000).    (See Third-Party Complaint, ¶ 37)    In Counts II and IV, AGLIC alleges TFG, JFG and First Mid made these representations based on the mistaken belief that JFG's release in favor of TFG on November 20, 2000 was a valid transfer rather than a blanket release.  In Counts I and III, AGLIC claims the very same "misrepresentations" were made with knowledge of their inaccuracy or reckless disregard for the same.  The exact same "misrepresentations" purportedly give rise to AGLIC's contribution claim in Count V and implied indemnity claim in Count VI.

The problem with these alternative theories of recovery is that they suffer from the same defects as AGLIC's mistake claim.  These are not misrepresentations of fact.  Regardless of how AGLIC chooses to characterize the same conduct, it fails to state a claim because AGLIC has not and cannot allege that it did not have complete knowledge of all the material facts prior to paying on the life insurance policy.  Summary judgment should be granted on all counts in favor of the Third-Party Defendants.

## VI.  CONCLUSION

For the reasons stated above, TFG and JFG request that judgment be entered in their favor and against AGLIC.

Dated:  April 2, 2007

TUSCOLA FURNITURE GROUP, LLC
and JANKO FINANCIAL GROUP, LLC


By:   /s/   Timothy J. Howard
       Timothy J. Howard, ARDC No.01271202

Michael S. Seneca, ARDC No. 06273030
Attorneys for Defendant
Howard & Howard Attorneys, P.C.
211 Fulton Street, Suite 600
Peoria, IL 61602
Telephone:  (309) 672-1483
Facsimile:  (309) 672-1568 (fax)
Email:        THoward@howardandhoward.com
Email:        mseneca@howardandhoward.com

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record, hereby certifies that the Argument section of this Motion for Summary Judgment complies with the type volume limitation of Local Rule 7.1(B)(2)(D)(4).  The number of words in the Argument according to the word count of the word processing system (Microsoft WORD) used to prepare this document is 3,782.

/s/ Timothy J. Howard
Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2007, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system and that service was made electronically to the parties as indicated on that system.

Jason M. Crowder
Heller, Holmes & Associates, P.C.
1101 Broadway
P.O. Box 889
Mattoon, IL  61938

Richard L. Heavner
Heavner, Scott & Byers
Suite 200
111 E. Main St.
Decatur, IL  62523

Cinthia G. Motley
Rebbecca M. Rothman
Wilson Elser Moskowitz
Edelman & Dicker LLP
120 N. LaSalle St.
Ste 2600
Chicago, IL  60602

/s/ Timothy J. Howard