IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF ILLINOIS

URBANA DIVISION

MARGARET J. STILWELL, HALEY
STILWELL, HEIDI STILWELL,
JAMIE STILWELL, MEGAN
STILWELL,                           No. 05-CV-02160

       Plaintiffs,

vs.

AMERICAN GENERAL LIFE
INSURANCE COMPANY,

       Defendant.

AMERICAN GENERAL LIFE
INSURANCE COMPANY,
  Third-Party Plaintiff,

vs.

FIRST MID-ILLINOIS BANK &
TRUST, TUSCOLA FURNITURE
GROUP, LLC, and JANKO
FINANCIAL GROUP, LLC,
  Third-Party Defendants.


DEPOSITION

    The deposition of WILLIAM JOHN LYONS, taken on behalf of the Third-Party Defendant First Mid-Illinois at the office of Area Wide Reporting, 301 W. White, Champaign, Illinois on February 26, 2007, before Barbara A. Glover, CRR, RPR, and Certified Shorthand Reporter of the State of Illinois.



EXHIBIT J

**AREA WIDE REPORTING (800)747-6789**

Page 2

1  APPEARANCES:
2
3  Heller, Holmes & Associates
   Jason M. Crowder
4  1101 Broadway
   Mattoon, Illinois  61938
5  (217) 235-2700
   Appearing for Plaintiffs
6
7
   Heavner, Scott, Beyers & Mihlar
8  Julie Beyers
   111 E. Main Street, Suite 200
9  Decatur, Illinois  62523
   (217) 422-1719
10 Appearing for Third-Party Defendant First
   Mid-Illinois
11
12
   Howard & Howard
13 Michael S. Seneca
   211 Fulton Street, Suite 600
14 Peoria, Illinois  61602-1350
   (309) 672-1483
15 Appearing for Tuscola Furniture and Janko
   Financial
16
17
   Wilson, Elser, Moskowitz, Edelman &
18 Dicker LLP
   Rebecca M. Rothmann
19 120 N. LaSalle Street, Suite 2600
   Chicago, Illinois  60602
20 (312) 704-0550
   Appearing for Defendant American General
21
22
23
24

Page 3

1           I N D E X
2
   EXAMINATION CONDUCTED BY:        PAGE
3
      By:  Ms. Beyers                4
4     By:  Mr. Seneca                72
      By:  Ms. Rothmann              73
5     By:  Mr. Crowder               84
      By:  Ms. Beyers                89
6     By:  Ms. Rothmann              90
      By:  Mr. Seneca                93
7     By:  Ms. Beyers                94
      By:  Mr. Crowder               97
8  Q.
9
            E X H I B I T S
10
   EXHIBIT                          PAGE
11
   Exhibit No. 1                    13
12 Exhibit No. 2                    17
   Exhibit No. 3                    19
13 Exhibit No. 4                    20
   Exhibit No. 5                    24
14 Exhibit No. 6                    28
   Exhibit No. 7                    29
15 Exhibit No. 8                    31
   Exhibit No. 9                    32
16 Exhibit No. 10                   33
   Exhibit No. 11                   40
17 Exhibit No. 12                   44
   Exhibit No. 13                   46
18 Exhibit No. 14                   51
   Exhibit No. 15                   55
19 Exhibit No. 16                   58
   Exhibit No. 17                   62
20 Exhibit No. 18                   81
   Exhibit No. 19                   84
21 Exhibit No. 20                   88
   Exhibit No. 21                   90
   Exhibit No. 22                   97
23
24

Page 4

1           WILLIAM JOHN LYONS
2  the deponent herein, called as a witness, after
3  having been first duly sworn, was examined and
4  testified as follows:
5
6        EXAMINATION CONDUCTED
7        BY:  MS. BEYERS
8
9     Q. Can you please state your name for the
10 record?
11    A. **I am William John Lyons.**
12    Q. Mr. Lyons, I'm going to have the
13 record reflect that you are here today pursuant
14 to a notice of deposition and a subpoena --
15    A. **Okay.**
16    Q. -- that you were served with to secure
17 your presence here today at the deposition and
18 that this deposition is going to be for discovery
19 purposes, and it's done pursuant to the Federal
20 Rules of Civil Procedure.
21       Mr. Lyons, have you ever given your
22 deposition before?
23    A. **No, ma'am, I don't believe so.**
24    Q. Okay. I'm going to give you a few

Page 5

1  quick rules here.
2     A. **Okay.**
3     Q. The court reporter is typing down your
4  responses, so she can't -- you have to say your
5  answer out loud.
6     A. **Okay.**
7     Q. She can't take down nods of the head.
8     A. **Okay. Okay.**
9     Q. Of shakes of the head. The other
10 thing that we have to remember is that one person
11 needs to talk at a time, so I'll ask the
12 question, and then you can provide the response.
13 It's hard to do, but we have to not talk over
14 each other so that she's real clear about what my
15 question is and what your response is. Okay?
16    A. **Okay.**
17    Q. I introduced myself to you when you
18 first came in. My name is Julie Beyers, and I
19 represent First Mid-Illinois Bank & Trust in the
20 case regarding Margaret Stilwell versus American
21 General Life Insurance company, and, Mr. Lyons,
22 have you brought with you today your entire file
23 concerning Margaret Stilwell and any life
24 insurance policies that she and her husband may

Page 14

1 this out to get insurance for -- I believe this
2 was for the million dollar policy, because it
3 says insurance applied for in this company, eight
4 hundred thousand, and when I -- later on he
5 decided that he wanted to go to a million, but --
6 but this was -- I really can't remember filling
7 this out, but this is my handwriting, and I
8 filled it out. I'm sorry about that.
9    Q. That's okay. But that is your
10 signature there at the bottom of the page?
11    A. Yes, ma'am. Yes, it is. It's a
12 supplement for -- when you -- the insurance
13 companies -- American General, they like to know
14 why they need so much insurance.
15    Q. Okay. And this would have been
16 basically you filling out and telling them why
17 they were applying?
18    A. I would have asked Jim these
19 questions, and he would have answered them -- and
20 then he would have answered them, and then I
21 would have sent it in.
22    Q. Okay. Let me just back up for a few
23 minutes. We were talking about the fact that you
24 had known Mr. Stilwell for a long time and really

Page 15

1 you were friends with Mr. Stilwell?
2    A. Yes.
3    Q. Is that fair?
4    A. Yes, ma'am.
5    Q. Okay. And then you said that he came
6 to you, and he wanted to purchase these two
7 policies that are involved in this case?
8    A. Right.
9    Q. And we've described those policies.
10    A. Right.
11    Q. Do you remember how many conversations
12 you had with him during the application process
13 before the policies were actually issued?
14    A. Not very much, because Jim was a
15 business person, and he was on the run all the
16 time.
17    Q. Okay.
18    A. And Jim was kind of working all the
19 time at his business, and he would drop in. He
20 would say I think I'm going to need this, and I
21 would say, okay.
22       He would say find me a price, and I
23 would look it up in the computer, and then he may
24 not show up for another month or two, because he

Page 16

1 was busy. I mean, you know, he was busy, so I
2 mean nothing against that. That's just the way a
3 lot of business people are, and then he came in,
4 and he said, well, I think I'm going to go with
5 the four million dollar policy for the business.
6    Q. For the debt. Right?
7    A. For the debt, yes.
8    Q. Uh-huh.
9    A. For the business and then the one
10 million dollar for Maggie and the girls.
11    Q. Okay.
12    A. Which was fine with me.
13    Q. Okay.
14    A. I mean, honestly, people, I don't have
15 many people coming in wanting four million
16 dollars and one million dollars' worth of
17 coverage. I'll be honest with you. Those are
18 the biggest policies I ever sold.
19    Q. Okay. Okay. And so other than what
20 you've told me just now, do you remember any
21 other conversations with Mr. Stilwell prior to
22 you sending in documentation to American General
23 to have the policies issued?
24    A. No. I don't remember.

Page 17

1    Q. And I guess -- it would have been, I'm
2 sorry, was Old Line Life?
3    A. Which Old Line Life people was being
4 -- in the process of being bought by American
5 General.
6    Q. Okay. So at the time you would
7 have -- this was in --
8    A. March of '98.
9    Q. Okay. And at that time would it still
10 have been Old Line Life?
11    A. Yes, ma'am, it would have been.
12    Q. And then at some point American
13 General took -- basically took over those
14 policies. Is that right?
15    A. Yes, ma'am. Yes, ma'am.
16       (At this point the court reporter
17       marked Lyons Exhibit No. 2 for purposes
18       of identification.)
19 BY MS. BEYERS:
20    Q. Okay. All right. Let's move on to
21 Exhibit No. 2 then. It's just this letter. I'm
22 going to have you look at this, Mr. Lyons, if you
23 don't mind.
24    A. This is a -- this is a letter that I

Page 70

1 sort of claims or the way the claims were made.
2 Is that a fair statement?
3    A. I will tell you I did tell Jason and
4 I've told you that Margaret was very upset with
5 Larry Bianchi.
6    Q. And what did you tell Jason about
7 that?
8    A. That's all I said. She was very
9 upset.
10   Q. Basically what you've told me today?
11   A. Yes, it was the same.
12   Q. And that was --
13   A. You know, let me -- let me -- I'll
14 have to be honest. You don't call me the day a
15 guy dies and ask me. You know, you wait until
16 after the funeral, you know, and I didn't think
17 that was very good -- I'm not -- I guess I'm a
18 central Illinois boy.
19       You don't call a person up the day he
20 dies and want to know if the life insurance is
21 still in force. I'm sorry, but that's just my
22 opinion. I probably shouldn't have told you
23 that, but that's the way it is.
24   Q. That's okay. And you said that you

Page 71

1 knew that Margaret was very upset. Again, you've
2 told me all of your conversations with Margaret
3 concerning that particular issue. Is that
4 correct?
5    A. Yes. Yes, ma'am. And my memory is
6 not real good.
7    Q. Well, that's --
8    A. I'm sorry.
9    Q. And when Mr. Bianchi called you, did
10 you have any idea how much the Stilwells or ACV
11 or any related entities owed Janko Financial or
12 TFG or anything like that?
13   A. No. No. Lloyd called me too, but it
14 was like three days after the funeral.
15   Q. And Lloyd is the one that you sent the
16 fax to?
17   A. Yes.
18   Q. That we've already talked about.
19 Correct?
20   A. Yes.
1    Q. And he called you shortly after
22 Mr. Stilwell's death?
23   A. Yeah, it was three days after we
24 buried him.

Page 72

1        MS. BEYERS: Mark, do you want to ask
2 a few questions? I think I'm almost done.
3        EXAMINATION CONDUCTED
4        BY: MR. SENECA
5    Q. I'm Mike Seneca. I have a couple of
6 questions.
7        We've discussed and looked at various
8 documents today provided to you by Larry Bianchi
9 on behalf of Janko Financial Group and Tuscola
10 Furniture Group and then several other documents
11 that you have in your file.
12       Do you have any reason to dispute any
13 of the statements made by Larry to you in any of
14 those letters?
15   A. No, Mike.
16   Q. Do you have any reason to dispute any
17 of the amounts represented in those documents?
18   A. Mike, I wouldn't know anything about
19 the amounts. I'm sorry.
20   Q. Did you do anything to investigate
21 Margaret's complaints about the way claims were
22 made?
23   A. No, ma'am -- no, sir. I'm sorry. I'm
24 sorry.

Page 73

1    Q. That's all right. That's all right.
2 That's all the questions I have.
3    A. I felt and I still feel that is my
4 company's job, not mine.
5    Q. So documents provided to you, you
6 didn't look at, independently review yourself?
7    A. No, sir.
8    Q. You just passed them on to your
9 company?
10   A. Yes, sir.
11       MR. SENECA: Okay. That's all the
12 questions I have.
13       MS. ROTHMANN: I've got a couple.
14       EXAMINATION CONDUCTED
15       BY: MS. ROTHMANN
16   Q. Mr. Lyons, Becky Rothmann. Nice to
17 meet you. I just had one or two, and it was just
18 on points of clarification.
19       You had testified in response to some
20 of Julie's questions that -- I don't want to put
21 words in your mouth -- sometime after
22 Mr. Stilwell passed away Margaret called you into
23 or down to the store for a meeting?
24   A. Yes, ma'am.