IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MARGARET J. STILWELL, HALEY STILWELL, HEIDI STILWELL, JAMIE STILWELL, MEGAN STILWELL,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>　　　　　　　　Defendant.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>　　　　　　　　Third-Party Plaintiff,<br><br>　v.<br><br>FIRST MID ILLINOIS BANK & TRUST, TUSCOLA FURNITURE GROUP, LLC, and JANKO FINANCIAL GROUP, LLC,<br><br>　　　　　　　　Third-Party Defendants. | No. 05 CV 02160<br><br>Honorable Chief Judge<br>Michael P. McCaskey<br><br>Magistrate Judge<br>David G. Bertha |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff's claim is based on the disingenuous belief that Janko executed a blanket release of its Policy assignments after the parties closed the November 17th Consignment Agreement transaction. This position disregards and ignores the clear intent of the parties expressed in the form release document, the related Consignment Agreements, and the Assignment and Assumption Agreement all of which shows that Janko transferred its rights and liabilities under

the Consignment Agreement to TFG five days before Plaintiff claims Janko "released" these same rights.

Plaintiff now moves for Summary Judgment based on a selective view of the undisputed documents, an intentional ignorance of the elementary rules of contract construction, and a misapprehension of the policy provisions and the law. In support of her motion, she offers four equally meritless arguments.

First, she claims that Janko's assignment of its interest to TFG is invalid under the Policy because she did not consent to the assignment. The Policy, however, says nothing of the sort and offers no support to Plaintiff's position that her consent was necessary before Janko could assign its Policy rights to TFG.

Plaintiff's second claim -- that American General's initial recording of the form document as a "release" is somehow binding and controlling -- should also be summarily rejected. This position conveniently disregards the undisputed evidence that American General properly reconsidered its initial position based on the verified claim submissions and its duty under the Policy to evaluate the claim documentation submitted by the third-party creditors.

Plaintiff's third argument, that Janko's subsequent assignment to TFG is invalid because there was no transfer of the underlying debt, is most telling. This claim highlights Plaintiff's intentional ignorance of the undisputed Assignment and Assumption Agreement which clearly transferred all of Janko's rights and obligations under Plaintiff's original financing agreement to TFG. Accordingly, the debt Plaintiff owed to Janko was transferred to TFG along with the assignments under the Policy which were made to protect Janko's interest in recovering the debt that was owed.

Finally, Plaintiff summarily claims that the Consignment Agreement itself is irrelevant and the parties' intent expressed in that agreement should be ignored without any explanation or citation to the record or authority.

Even if the Court could ignore the clear intent of the parties expressed in this agreement (which it clearly cannot not), Plaintiff offers no explanation as to how the Court can ignore the clear language that illustrates the parties' intent to transfer Janko's rights under the Policy to TFG which is intentionally drafted into the document on which she hangs her hat for summary judgment.

It cannot go unnoted that Plaintiff offers all of the above arguments while at the same time strategically disregarding and ignoring the clear intent of the parties and the law that requires the Court to give effect to the intent of the parties when construing a contract like the assignments at hand. This is because the only reasonable view of the disputed assignment form itself (not to mention all of the related and undisputed agreements) compels the conclusion that the parties intended to transfer Janko's Assignment of rights under the policy to TFG. There is no alternative interpretation that can be reached based on a proper reading of these contracts as a whole.

Accordingly, American General properly paid the claim, Plaintiff's Motion for Summary Judgment should be denied, and this Court should enter summary judgment in favor of American General for all of the reasons herein and all of the additional reasons set forth in American General's Motion for Summary Judgment.

## RESPONSE TO MATERIAL UNDISPUTED FACTS

A. **Undisputed Material Facts**

American General agrees that the following facts set forth in Plaintiff's Motion for Summary Judgment are undisputed and material facts: 1, 2, 4, 6, 7[*], 9, 10, 11, 13, 14, 15, 16, 17, 21, 22, 23.

B. **Disputed Material Facts**

American General disputes the following material facts contained in Plaintiff's Motion:

3. JFG released its assignment on or about November 28, 2000, and Defendant had knowledge of the releases.

**RESPONSE**: American General admits that TFG released its assignment "in favor of TFG" on or about November 21, 2000. Ex. 6 to Plaintiff's Motion (#80) and American General's Appendix in Support of its Motion for Summary Judgment ("A.G. App." or "#83") at Ex. D at 30-32, 37-38, and Ex. B (20). American General verified receipt of this document as an "assignment release." #83 at Ex. F at 39 and 40 and F(2) at Ex. 12.

8. First Mid-Bank & Trust was owed $81,020 at the time of the death of James E. Stilwell by TFG.

**RESPONSE**: ATV and Plaintiffs owed no money at all to the Bank and were not contractually obligated to pay any funds to the Bank. To the extent that Plaintiff's intent is to illustrate what the Bank was owed by TFG, American General admits No. 8.

12. Pursuant to Illinois statute, interest accrues on any unpaid balance of life insurance benefits at the rate of 9% per year. 215 ILCS 5/224(l).

---

[*] Plaintiff states that "Decedent" never made a joint assignment. American General assumes that Plaintiff means that "Margaret Stilwell," the owner of the policy, never made a joint assignment and, thus, it admits this fact. However, if Plaintiff actually meant to reference the term "Decedent," while true, this fact would be irrelevant and immaterial because Decedent was not the policy owner and had no right to make assignments under the policy.

4

392836.1

**RESPONSE**: American General admits the existence of the statute but disputes Plaintiff's characterization. 215 ILCS 5/224(l) provides as follows:

> Interest shall accrue on the proceeds payable because of the death of the insured, from the date of death, at the rate of 9% on the total amount payable … unless payment is made within fifteen (15) days from the date of receipt by the Company of due proof of loss.

Accordingly, 215 ILCS 5/224(l) does not provide that interest must be paid on any unpaid balance of life insurance benefits, but rather that interest accrues unless payment is made within "15 days from the date of receipt by the Company of due proof of loss." Plaintiff never provided due proof of loss to the Company and never made a claim under the policy at issue. # 83 at Ex. G(3) at ¶ 5, Ex. B at 47-48, Ex. C at 51.

18. Richard Janko, as Authorized Member of JFG, executed an Assignment and Assumption Agreement, assigning to Richard Janko, as Authorized Member JFG, which was Manager of TFG, the Consignment Agreement dated 4/16/99 between ACV and JFG, and all contracts and other documents including insurance policies related to and incurred in connection with the acquisition and consignment of Amish furniture, on November 16, 2000. Plaintiff's Motion ("# 80") at Ex. 11.

**RESPONSE**: Richard Janko, authorized member of JFG, executed an Assignment and Assumption Agreement, assigning the Consignment Agreement dated 4/16/99 between ACV and JFG, and all contracts and other documents including insurance policies related to and incurred in connection with the acquisition and consignment of Amish furniture, <u>to</u> <u>TFG</u> -- not JFG, on November 16, 2000. JFG did not assign the Consignment Agreement to itself, the assignee was TFG, not JFG. *Id*. at Ex. 11.

19. Richard Janko, as Authorized Member of JFG, which was the manager of TFG, executed and Assignment selling, assigning, and transferring to FMIBT all collateral and a security agreement on November 17, 2000. *Id*. at Ex. 10.

**RESPONSE**: Richard Janko, was an authorized member of JFG, but he executed the assignment of the security agreement to First Mid-Illinois Bank as the manager of TFG, not Janko. #80 at Ex. 10.

C. **Immaterial Facts**

The following facts set forth in Plaintiff's Motion for Summary Judgment are immaterial and irrelevant to the issues at bar for summary judgment: 5, 7[*], 20.

## ADDITIONAL MATERIAL FACTS

As and for its additional material facts raised in opposition to Plaintiff's Motion for Summary Judgment, American General cites and incorporates by reference its own undisputed material facts set forth at pp. 3-19 of its opening Motion for Summary Judgment on Plaintiff's claims (#81), supported by its Appendix of Exhibits (#83).

## ARGUMENT

American General has filed a cross motion for summary judgment on Plaintiff's claim. (#81.) In addition to specifically addressing the arguments that Plaintiff raises in support of her motion for Summary Judgment below, each of the arguments that American General asserts in its own Motion for Summary Judgment compels the denial of Plaintiff's motion and, thus, American General incorporates by reference all of the arguments and case law it has asserted in its cross motion (#81) as and for its Response in Opposition to Plaintiff's Motion for Summary Judgment.

---

[*] Under the terms of the policy, it is the owner, Margaret Stilwell, not the insured, the decedent James Stilwell, who can execute valid assignments of the policy.

6

392836.1

## I.  PLAINTIFF'S CLAIM IS REFUTED BY THE FACE OF THE DOCUMENT THAT SHE RELIES UPON

Plaintiff's entire case is premised on the purported belief that the November 21, 2000 Assignment form completed by Janko ("Disputed Assignment Form") operated as a general and blanket release of all Janko's rights under the Policy, rather than a transfer (or notice of a transfer) of those rights to TFG. She takes this position despite the fact that she was not a party to this document, she has admitted that she has no relevant knowledge about this document, and she has no basis to otherwise challenge the parties' clear intent to transfer Janko's rights under the Policy to TFG which is expressed on the face of the document. *Id.*

In her motion, Plaintiff avoids offering any analysis of the document itself and, instead, jumps straight into attempting to convince this Court that it should not give effect to the clear intent of the parties to transfer Janko's interest in the Policy to TFG for various reasons found outside of the four corners of the document itself. It is obvious that by offering these arguments, Plaintiff implicitly concedes that the ***"transfer in favor of"*** language that is intentionally drafted into this document is fatal to her claim.

As a preliminary matter, this Court can and should reject all of Plaintiff's arguments for summary judgment simply because, by carefully avoiding the document itself, Plaintiff fails to provide the Court with any basis to find that the document she disputes is ambiguous and, thus, it is inappropriate for her to ask this Court to look past the four corners of the document to interpret its content. *See*, *Central States Pension Fund v. Kroger Co.*, 73 F.3d 727, 732 (7th Cir. 1996).

Keeping in mind the cardinal rules of contract construction, the only reasonable interpretation of this form document is the one offered to American General by TFG and Janko and, thus, the one that American General offers this Court in its own Motion for Summary Judgment. By specifically and intentionally inserting the phrase ***"in favor of Tuscola Furniture***

7

*Group, L.L.C.,"* Janko's intent to transfer, assign, and/or release its rights under the identified contract to and "in favor of" TFG is clear and unambiguous.  Taken as a whole, the Disputed Assignment Form compels the conclusion that the parties intended to transfer Janko's rights under the Policy to TFG. There is no reasonable alternative interpretation that can be reached based on a proper reading of this contract as a whole.  *See*, case law and arguments in #81 at pp. 20-23.  This is obviously why Plaintiff avoids the issue altogether.

For this reason alone Plaintiff's Motion should be denied and summary judgment should be entered in favor of American General.

## II.     PLAINTIFF OFFERS NO LEGITIMATE BASIS FOR THIS COURT TO AVOID GIVING EFFECT TO THE CLEAR INTENT OF THE PARTIES

As noted above, Plaintiff strategically avoids addressing the *"transfer in favor of Tuscola Furniture Group LLC"* language that is intentionally inserted in the Disputed Assignment Form, and offers this Court several arguments to avoid an interpretation that would give effect to the parties' clear intent to transfer Janko's rights to TFG.  All of Plaintiff's arguments are meritless and they should be summarily rejected.

### A.     Plaintiff's Consent to Transfer is Not Necessary

Plaintiff first argues that Janko's attempt to transfer or assign its rights under the Policy to TFG is invalid because she did not consent to the transfer of interest.  Of course, Plaintiff does not cite a single provision from either the Policy or the Disputed Assignment Form to support this contention.  Like the case law that exits on this issue, the Policy itself does not require any particular form to effect a valid assignment of the Policy.[1]  In fact, the **only** requirement for a valid assignment under the Policy is that it be filed and recorded *by American General*.  #81 at ¶

---

[1] Indeed, even the form assignment Plaintiff executed to assign Janko $2 million under the Policy differs from the subsequent form assignment she executed in favor of TFG.

8

392836.1

5 and #83 at Ex. B(1) at 7. Accordingly, under the terms of the Policy, it is *American General's consent,* not the policyholder's consent that matters. *Id.*

The Disputed Assignment Form offers no support for Plaintiff's claim either. This document is a form document that American General provides as a convenience to its clients. Contrary to Plaintiff's claim, this document makes no specific reference to the policyholder's consent. Instead, it states "to assign this contract the request must be signed by the person or persons who have the rights of ownership under the terms of the contract." A.G. App./#83 at Ex. B(20). Plaintiff does not contend that her assignment of policy rights to Janko was defective or that Janko was not otherwise the valid owner of the policy rights that it transferred to TFG. The form assignment document was executed and signed by an authorized member of Janko and there is no question that Janko was the rightful owner of the rights that were assigned under the Policy. Thus, its signature was the only signature that was required on this form.

Even if one could find a contractual basis to call into question Janko's execution of the Disputed Assignment Form, this does not save Plaintiff's claim, let alone support a finding of summary judgment in her favor. As American General demonstrates in its own cross motion, the undisputed documents and testimony compels the conclusion that Janko's rights under the Policy were actually assigned to TFG five days before the Disputed Assignment Form was executed and that Janko executed and submitted this form document to American General merely to provide it with notice of that prior transaction. #81 at pp. 23-25. Accordingly, even if the form assignment document was invalid due to Plaintiff's lack of consent (which it is not), this "point" is irrelevant and moot because Janko's rights were actually transferred before that document was executed.

9

### B. American General's Initial Assessment Is Neither Binding, Nor Relevant.

Plaintiff contends that American General's internal recording of the Disputed Assignment Form as a "release" and its initial response disputing the creditors' joint claim is somehow binding. There is no basis in logic, law, or fact for this position.

American General recorded the Disputed Assignment Form executed by Janko in its own internal records as a "release" and sent verification of the "release" to Janko. #81 at ¶ 15, #83 at Ex. F at Nos. 39 and 40 and F(2) at Ex. 12. Thereafter, when presented with the joint claim, American General questioned the status of Janko's $ 2 million assignments, citing the fact that it had recorded in its own internal documents that these assignments were "released." #81 at ¶ 23 and Ex. 83 at Ex. F at 68 and F(2) at Ex. 21; Ex. C at 58 and D(6). While Plaintiff's analysis stops here, it is undisputed that the creditors thereafter responded by providing American General with additional information and documentation to support their claim that Janko had transferred its rights under the Policy to TFG, rather than actually released those rights as American General had initially noted in its file. #81 at ¶ 24, #83 at Ex. C at 58-59 and C(7).

Contrary to Plaintiff's claim, American General was not bound to its initial position that Janko had released its assignments. To find otherwise illogically precludes American General from properly assessing the claim documentation submitted in support the claims made under the Policy. American General properly reconsidered its assumption that the document in its file was a blanket release based on its review of the verified claim submissions that were provided. #81 at ¶ 25, #83 at Ex. G(2) at ¶ 6, G(3) at ¶¶ 2-7.

It cannot go unnoticed that Plaintiff does not go so far as to argue that American General is actually legally estopped from altering its initial position that the assignment was released. Plaintiff can never demonstrate the necessary elements to support an estoppel claim because

there is simply no detrimental reliance. Plaintiff never even received a copy of the "release" verification that she claims should be controlling. This document was sent to Janko only. *See*, Ex. 6 to Plaintiff's Motion (#80).

Moreover, there is no question that Plaintiff knew that TFG had submitted a joint claim to American General. Her counsel received a copy of the joint claim submissions, and she knew that TFG had represented to American General in its claim submissions that it held assignments under the Policy in excess of $3.25 million. #81 at ¶¶ 29-34. Nonetheless, Plaintiff never alerted American General to the fact that she had an objection to the claim. *Id.* In addition, Plaintiff knew that she was required to submit a claim under the policy, but she failed to make a claim. *Id.* Thus, not only does Plaintiff have no basis in fact or law to claim that American General is estopped from altering its initial claims position, it is clear from the record that Plaintiff should be estopped from asserting her present claim. *Id.* at pp. 29-34.

Plaintiff also claims that American General's response to her counsel's inquiries regarding American General's payment of the claim -- *ex post facto* -- is somehow relevant to whether the claim was properly paid. In particular, Plaintiff takes issue with the fact that when her present attorney inquired six months after all claims had been paid under the Policy, American General stated that "the original amount assigned [to TFG] was $250,000" and "it was [American General's] position that the assignments to JFG dated April 2000 and October 2000 had been released by the Release of Assignment received by [American General] in December 2000." Ex. 21 and 22 to Plaintiff's motion (#80).

Plaintiff conspicuously fails to provide the letters that were written by her counsel so as to put American General's responsive comments into context. Regardless, there is no adverse inference that can be drawn from the face of the evidence she cites. The "original" amount

Plaintiff assigned to TFG was $250,000 and "it was" Defendant's position that the assignments had been released. Even if Plaintiff could somehow show that American General did not properly respond to her counsel's inquiries (whatever they may have been), Plaintiff provides no explanation as to how this could possibly have any bearing whatsoever on whether the joint claim was properly paid.

      C.      **Plaintiff Ignores the Assumption and Assignment Agreement**

Plaintiff also argues that any assignment from Janko to TFG should be considered invalid because there was no corresponding assignment of the underlying debt with the rights under the policy. Even assuming that the mortgage assignment cases Plaintiff cites is applicable, Plaintiff's factual position is disingenuous and dead wrong.

Plaintiff cannot dispute that Janko created TFG for the specific purpose of assuming Janko's responsibilities to ACV under the 1999 Consignment Agreement and to assist ACV finance its furniture business. #81 at ¶ 11 and #83 at Ex. C at 22. Nor can Plaintiff dispute that on November 16, 2000, Janko and its company, TFG executed an Assumption and Assignment Agreement whereby Janko assigned to TFG and TFG assumed all of Janko's rights to recover against ACV (and the Stilwells) and all of the obligations Janko had to finance the Stilwell's furniture business under the 1999 consignment agreement. #81 at ¶ 11 and #83 at Ex. B(5) at 707; Ex. C at 22.

Therefore, if it is true that "James Stillwell owed no money to Janko" at the time of his death (and Plaintiff offers no evidence that it is), the only reason would be because Janko had already transferred all of the debt that the Stilwells owed it under the 1999 Consignment Agreement along with the right to recover that debt to TFG under the parties' Assumption and Assignment Agreement. Plaintiff has no basis to contest the face of the Assumption and

12
392836.1

Assignment Agreement or the undisputed testimony from Janko and TFG that the purpose of the Assumption and Assignment Agreement was to transfer the debt incurred, along with the rights to recover that debt, in connection with the acquisition and consignment of Amish furniture. *Id*. Apparently, because this document is fatal to Plaintiff's claim, she simply ignores it with the hope that this Court will do the same.

To the extent that Plaintiff may be suggesting that Janko's assignments should be rendered null and void based on the fact that TFG and Plaintiff executed a new consignment agreement, which replaced the 1999 Consignment Agreement, this position is also wrong. There is nothing on the face of the Consignment Agreement to support the finding that the prior $2 million assignments were null and void. Nor is there any legal basis to presume that the assignments executed under the original Consignment were automatically released or otherwise terminated by virtue of this new agreement between TFG and Plaintiff. *See*, *Central State Bank v. Edwards*, 21 Tenn. App. 418, 111 S.W.2d 873 (1937) (Life insurance policy assignment is not released from pledge by giving new notes in payment of old where return of assignment is never demanded).

> **D.    The Consignment Agreement is Relevant And it Compels the Finding that American General Properly Paid the Claim to Give Effect to the Intent of the Parties**

For Plaintiff's final argument, she summarily claims that the November 17, 2000 Consignment Agreement between Plaintiff's company ACV and TFG is "irrelevant." However, rather than explaining how the underlying agreement from which the assignments at issue flow is actually "irrelevant," Plaintiff actually argues that (1) the Bank and TFG should be found to have waived the obligation that required ACV to provide joint protection to TFG and the Bank and (2) American General was not bound by the terms of the Consignment Agreement.

13

Thus, the arguments that Plaintiff offers in this section not only necessarily concede that the Consignment agreement is relevant, they also concede that the express intent of the parties to this agreement was to provide joint protection to TFG and the Bank. In any event, like the rest of Plaintiff's claims, both of the arguments that she offers on this issue are meritless.

Plaintiff does not cite any law or facts from the record to support her claim that TFG and the Bank waived her obligation to provide them with joint protection in the amount of $1.25 million under the Consignment Agreement. This is not surprising due to the fact that Plaintiff's position directly contradicts the only evidence that exists on this issue -- the undisputed testimony from TFG's corporate representative, Larry Bianchi.[2] Mr. Bianchi testified that the Stilwells showed up to the closing for the 2000 Consignment transaction without the proper life insurance protection required under Section 3.9 but that TFG decided to close the transaction anyway because it felt that it was sufficiently protected by the assignments that had already been transferred from Janko to TFG under their prior Assignment and Assumption Agreement. #81 at ¶¶ 13-14 and #83 at Ex. C at 26-29.

It was during this time and pending receipt of new assignments from Margaret Stilwell in the proper amount required under the 2000 Consignment, that TFG requested that the Stilwells provide it with documentation so that it could notify American General that Janko had assigned its Policy rights to TFG as a result of the Assignment and Assumption Agreement. *Id*. On or about November 21, 2000 Larry Bianchi received from the Stilwell's insurance agent, Mr. John Lyons, an American General assignment form that had already been partially completed. *Id*. Mr. Bianchi understood this to be the form that he had requested for purposes of notifying American General that TFG was the holder of the policy assignments originally held by Janko

---

[2] Plaintiff's claim also completely ignores the fact that Plaintiff had absolutely no contractual liability to the Bank at all and, thus, no reason to provide the Bank with a million dollars in protection.

while the parties worked to satisfy the terms of the 2000 Consignment Agreement by effecting new policy assignments. #81 at ¶¶ 13-14 and #83 at Ex. C at 30-32, 37-38. Mr. Bianchi also specifically testified that TFG never waived the obligation ACV and the Stilwells had to provide joint protection under the Consignment Agreement. *Id*. at 27.

Plaintiff's position that American General was not a party to the Consignment Agreement and, thus, was not "bound" by the agreement is true, but immaterial to the issue of whether this document was properly considered by American General. In addition to requiring that the Stilwells personal guarantee ACV's debt to TFG under Section 6.3, Sections 6.9 and 6.4 of the Consignment Agreement required ACV to maintain a life insurance policy on the life of James Stilwell in an amount of at least $1.25 million for the benefit of both TFG and its lender, First Mid Illinois Bank. #81 at ¶ 12 and #83 at Ex. B(5) at 662. The clear and plain language of the consignment agreement demonstrates that the parties' disclosed intent was to protect both TFG and the Bank with available life insurance proceeds. Accordingly, American General properly considered the Consignment Agreement with the rest of the verified claim submissions and found that payment of the joint claim was proper.

None of the arguments Plaintiff offers provide a basis for summary judgment in her favor and this Court should deny her motion.

### III.  PLAINTIFF'S CLAIM IS OTHERWISE BARRED

Even if this Court finds that American General's payment of the joint claim was somehow improper, Plaintiff's claim is nonetheless barred under the terms of the Policy and on grounds of laches, estoppel, waiver, and unjust enrichment.

Despite the fact that she had knowledge of TFG's position and the representations it made to American General in its claim submissions, Plaintiff failed to object and did nothing to

15

392836.1

otherwise alert American General or TFG that she secretly disputed the payment of the joint claim. #81 at ¶¶ 29-34, 41. Despite the fact that she submitted her own claim under a separate Policy issued by American General, Plaintiff never submitted a claim under the Policy at bar and gave American General no reason to believe that the joint claim was contested. *Id.* Instead, she sat back and allowed American General to pay off her business creditors with policy proceeds which reduced the debt that she personally owed, she allowed her creditors to voluntarily dismiss a separate action that had been pending against her on another matter as a result of that payment, and she filed for bankruptcy and then waited until she received a discharge of all of her debts before bringing the present claim. *Id.*

To allow recovery under the set of facts in the record affronts the principals of fairness, justice and good conscience. For these reasons and all of the other reasons set forth at pages 28 to 34 of American General's Motion for Summary Judgment (#81), Plaintiff's Motion for Summary Judgment (#82) must be denied and judgment should be entered in favor of American General as a matter of law.

IV.    **PLAINTIFF HAS NO CLAIM FOR STATUTORY INTEREST**

215 ILCS 5/224(l) provides as follows:

> Interest shall accrue on the proceeds payable because of the death of the insured, from the date of death, at the rate of 9% on the total amount payable … unless payment is made within fifteen (15) days from the date of receipt by the Company of due proof of loss.

Plaintiff is not entitled to statutory interest. 215 ILCS 5/224(l) does not provide that interest must be paid on any unpaid balance of life insurance benefits as plaintiff claims, but rather that interest accrues unless payment is made within "15 days from the date of receipt by the Company of due proof of loss." Plaintiff never provided due proof of loss to the Company and never made a claim under the policy at issue. # 83 at Ex. G(3) at ¶ 5, Ex. B at 47-48, Ex. C at

51. Furthermore, this Court has already denied Plaintiff's attempt to amend her complaint to seek statutory interest. *See,* # 65, Court order of September 19, 2006 denying Plaintiff's motion to amend. Accordingly, there is no question that Plaintiff is not entitled to statutory interest.

## CONCLUSION

For all of the foregoing reasons, this Court should deny Plaintiff's Motion for Summary Judgment and enter summary judgment in favor of American General.

Respectfully submitted,

**AMERICAN GENERAL LIFE INSURANCE COMPANY**


By: _____s/ Rebecca M. Rothmann_____
    Rebecca M/ Rothmann
    Attorney Bar Number: 6236791
    Attorney for Defendant/Third Party
     Plaintiff
    WILSON, ELSER, MOSKOWITZ,
     EDELMAN & DICKER LLP
    120 North La Salle Street, Suite 2600
    Chicago, Illinois 60602
    Phone: (312) 704-0550
    Fax: (312) 704-1522
    Rebecca.Rothmann@wilsonelser.com

392836.1

## CERTIFICATE OF SERVICE

I hereby certify that on **April 26, 2007**, I electronically filed the above pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

### SERVICE LIST
*Margaret Stilwell v. American General Life Ins. Co.*

Jason M. Crowder
HELLER, HOLMES & ASSOC., P.C.
1101 Broadway, P.O. Box 889
Mattoon, IL 61938
(217) 235-2700
(217) 235-0743 (Fax#)
crowderjason@hotmail.com.

Richard L Heavner
HEAVNER SCOTT BEYERS & MIHLAR
111 E Main St., Suite 200
Decatur, IL 62523
217-422-1719
Fax: 217-422-1754
richardheavner@hsbattys.com

Timothy J Howard
HOWARD & HOWARD ATTORNEYS PC
211 Fulton St, Ste 600
Peoria, IL 61602-1350
309-672-1483
Fax: 309-672-1568
thoward@howardandhoward.com

   s/ Rebecca M. Rothmann
    Rebecca M. Rothmann
Attorney Bar Number: 6236791
Attorney for Defendant/Third Party Plaintiff
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
120 North La Salle Street, Suite 2600
Chicago, Illinois 60602
Phone: (312) 704-0550
Fax: (312) 704-1522
Rebecca.Rothmann@wilsonelser.com

392836.1