IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MARGARET J. STILWELL, HALEY STILWELL, HEIDI STILWELL, JAMIE STILWELL, MEGAN STILWELL,<br><br>      Plaintiffs,<br><br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>      Defendant.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>      Third-Party Plaintiff,<br><br>v.<br><br>FIRST MID ILLINOIS BANK & TRUST, TUSCOLA FURNITURE GROUP, LLC, and JANKO FINANCIAL GROUP, LLC,<br><br>      Third-Party Defendants. | No. 05 CV 02160<br><br>Honorable Chief Judge<br>Michael P. McCuskey<br><br>Magistrate Judge<br>David G. Bernthal |

**AMERICAN GENERAL'S COMBINED RESPONSE TO THIRD-PARTY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON THIRD-PARTY COMPLAINT**

NOW COMES Defendant/Third-Party Plaintiff, AMERICAN GENERAL LIFE INSURANCE COMPANY ("American General"), by its undersigned attorneys, and for its combined response to the separate Motions for Summary Judgment filed by Tuscola Furniture Group ("TFG") and First Mid Illinois Bank & Trust ("the Bank") (TFG and the Bank are referenced collectively herein as "Third Party Creditors") (#84 and #85), states as follows:

**INTRODUCTION**

Plaintiff has sued American General for paying the joint claim submitted by the Third Party Creditors based on the theory that TFG only held a single assignment of $250,000 and,

394244.1

thus, when American general paid the joint claim, it overpaid TFG by approximately $180,000. Plaintiff has not filed suit directly against the Third Party Creditors. Presumably this is because she personally guaranteed her company's debt to TFG and actually owed the debt that was "over paid" by American General.

American General has filed its own motion for summary judgment on Plaintiff's claim and has presented clear evidence that supports the finding that TFG was properly paid because it held the assignments it claimed it held in its claim submissions. As such, American General does not dispute all of the arguments raised by the Third Party Creditors regarding the validity of their assignments. These arguments go to the crux of the issue of whether American General properly paid the joint claim (which it claims it did), and whether American General is liable to Plaintiff (which it claims is not).

While American General disputes that it is liable to Plaintiff, its Third Party Complaint assumes that it is. If American General is liable to Plaintiff, it is liable to Plaintiff only because it relied upon the representations that were made by the Third Party Creditors in their verified claim submissions.

There is no dispute that the Third Party Creditors represented to American General in its verified claim submissions that TFG was the holder of assignments far in excess of the $250,000 assignment that Plaintiff claims it held. Third Party Creditors cannot credibly dispute that American General paid the joint claim based upon the verified claim submissions that they submitted. Clearly, if American General improperly paid the Creditors' claim, there can be no question that the Creditors misrepresented the status of the assignments that they held and they were unjustly enriched and should have to return that sum to American General.

After raising arguments that go to the heart of Plaintiff's claim against American General and support American General's motion for summary judgment, the Third Party Creditors simply regurgitate all of the exact same arguments (verbatim) that they raised in their motion to dismiss concerning the application of the voluntary payment doctrine. Specifically the creditors argue that in paying the joint claim, American General made a mistake of law, not fact, and it should have to live with this mistake. This Court has already properly rejected this argument. *See*, Order of July 11, 2006 (#45) adopting Magistrate Judge Bernthal's Report and Recommendation (#42). At summary judgment, the Third Party Creditor's legal theories remain unfounded. They have not provided (and based on the record before this court, can never provide) any basis for this Court to revisit its ruling.

The Creditors also mistakenly contend that American General is not entitled to the relief it seeks against them because it has admitted that they made no "misrepresentations" in the information and documents they submitted. This "point" purposely ignores the fact that American General's third party claims are contingent on its liability to Plaintiff. Thus, the Creditors' contention that the information they gave was "true" and "correct" runs circles around the undisputed fact that, regardless of whether the Creditors made "representations" or "misrepresentations", they nevertheless convinced American General that they were entitled to the full amount of their joint claim by "stating" that TFG held assignments in excess of its claim and American General paid the joint claim based on that representation.

For the reasons set forth below as well as the reasons set out in American General's Response to the Creditors' motions to dismiss (#38), American General's Combined Motion and Memorandum for Summary Judgment on its Plaintiff's Claim (#81), and American General's Combined Motion and Memorandum for Summary Judgment on its Third-Party Claims (#82),

394244.1

all of which American General incorporates as if fully set forth herein, Third-Party Defendants are not entitled to summary judgment. Instead, assuming that this Court denies American General's motion for summary judgment against Plaintiff, it should enter summary judgment in favor of American General on its Third Party Claim.

<u>**RESPONSE TO MATERIAL UNDISPUTED FACTS FILED BY TFG/JANKO**</u>

**A.    Undisputed Material Facts**

American General does not dispute the applicability of the following undisputed material facts in TFG and Janko's Motion for Summary Judgment: 1-5, 8-10, 12, 14, 15, 17-26, 28-30, 33, 36.

**B.    Disputed Material Facts**

32.    American General relied upon its own evaluation of the legal effect of the documents before paying TFG and JFG. American General states that Margaret Singh, a claims examiner, communicated with American General in-house counsel for the purpose of soliciting legal advice and assistance in determining whether funds should be paid on the claim submission from the Third-Party Defendants. (See Affidavit of Diana Fields, ¶¶ 2-10 filed March 5, 2007 as Docket No. 77-5.)

<u>RESPONSE</u>:    Disputed. American General relied upon the truth of the statements made by the Creditors in their claim submissions when it paid the joint claim as supported by American General's Proposed Findings of Fact 23 through 25. American General does not dispute that it sought the advice of its counsel, Melinda Boyd, regarding the payment of the joint claim submitted by TFG and the Bank. (American General's Proposed Finding of Fact at ¶ 25.)

**C.    Immaterial Facts**

The following facts do not relate to the legal arguments raised by American General in its Third-Party Complaint and are immaterial to the validity of the assignments received by the

394244.1

Creditors under the Policy at issue: 6, 7, 11, 13, 16, 27, 31, 34, and 35.  *Altman v. Benigno*, No. 04-3074, 2005 U.S. Dist. LEXIS 35540 at *3-4 (C.D. Ill., December 8, 2005).

### RESPONSE TO MATERIAL UNDISPUTED FACTS FILED BY THE BANK

A.   **Undisputed Material Facts**

American General does not dispute the applicability of the following undisputed material facts in the Bank's Motion for Summary Judgment: 1-4, 6-17, 20-25, 27, 29-37, 39-43

B.   **Disputed Material Facts**

26.   The information contained in First Mid's letter and claim form is true and accurate. (Exhibit 21, Also see Exhibit 16, Chamberlain dep., pg. 48, lines 14-18, pg. 49, lines 1-5.)

28.   The information contained in TFG and JFG's letter and claim form is true and accurate. (Exhibit 6, Bianchi dep., pg. 54, lines 2-4)

38.   American General made the determination to pay the claims, and in doing so, relied upon its own evaluation of the legal effect of the documents submitted by each of the Third Party Defendants. (See Exhibits 26 and 27.)

RESPONSE:   American General disputes proposed facts 26, 28 and 38.  American General relied upon the truth of the statements made by the creditors in their claim submissions when it paid the joint claim.  If American General's payment of the joint claim was improper, it necessarily follows that information contained in the Creditors' verified claim submissions was not true and accurate and, thus, they were not entitled to the Policy funds they received.  (*See* American General's Proposed Findings of Fact (#82) at ¶¶ 23-25.)

C.   **Immaterial Facts**

The following facts do not relate to the legal arguments raised by American General in its Third-Party Complaint and are immaterial to the validity of the assignments received by the

- 5 -

Creditors under the Policy at issue: 5, 18, 19. *Altman v. Benigno*, No. 04-3074, 2005 U.S. Dist. LEXIS 35540 at *3-4 (C.D. Ill., December 8, 2005).

## ADDITIONAL MATERIAL FACTS

As and for its additional material facts raised in opposition to the Creditors' motions for summary judgment, American General cites and incorporates by reference its own undisputed material facts set forth at pp. 3-19 of its opening Motion for Summary Judgment on Plaintiff's claims (#81).

## ARGUMENT

**I.  THIRD-PARTY DEFENDANTS' ARGUMENTS ARE PRECLUDED BY THE LAW OF THE CASE DOCTRINE AND THERE IS NO BASIS FOR SUMMARY JUDGMENT IN THEIR FAVOR**

Under the doctrine of the law of the case, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). This doctrine limits re-litigation of an issue at a subsequent stage of the same suit, *see Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317-18 (7th Cir. 1995), and decisions on legal issues made at one stage of a case are "binding precedent to be followed in successive stages of the same litigation." *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1031 (7th Cir. 1997). The law of the case doctrine is inapplicable only when the Court is presented with additional evidence which calls into question the original ruling. *Curran v. Kwon*, 153 F.3d 481, 487 (7th Cir. 1998).

The Third Party Creditors do not even acknowledge the fact that their arguments that the voluntary payment doctrine applies to bar American General's claims has already been considered and rejected by this Court.

On July 11, 2006, this Court affirmed Magistrate Judge Bernthal's Report and Recommendation (#42) which specifically found that American General paid Third Party Defendants' claim based on the information that they provided to American General. Judge Bernthal also found that American General did not make a mistake of law and noted that if an error occurred, it was as a result of American General's reliance on Third Party Defendants' factual representations:

> The circumstances in this case are similar to CHA and Illinois Graphics because here AGL paid Third Party Defendants' claim based on information Third Party Defendants provided. It did not make a mistake of law as Third Party Defendants contend because it did not make the mistake due to an inadvertent error of an error that was inconsistent with its own policy. The error occurred as a result of AGL's reliance on Third Party Defendants' representations.
>
> Third Party Defendants further note that AGL paid based on its own volition. They contend that AGL only brought suit after Margaret Stilwell raised her claim. Although this is true, it only strengthens the argument that AGL made a mistake of fact. AGL believed that the claim was proper based on the factual information provided, so it had no reason to believe it wrongly paid the claim until the error was brought to its attention. This is unlike an inadvertent mistake of law where AGL would have found out it paid a joint claim inconsistent with its own policies and practices.

#42 at p 11.

The Creditors do not (because they cannot) give this Court any basis to reconsider its order of July 11, 2006. They raise no additional facts, cite no additional authority or point to anything in the record before this court that would call into question the Court's original ruling. In fact, that the Creditors fail to address or even acknowledge that the Court has already addressed the arguments which they offer verbatim, straight from their prior motions, is most telling.

394244.1

This Court should reject the Creditors' claims and deny their motions for this reason alone. In any event, for the reasons set forth below, even if the Court is inclined to revisit these verbatim arguments, the Creditors have failed to bring forth any basis for this Court to grant them summary judgment and their motions should be denied.

## II.    THIRD PARTY CREDITORS CANNOT SHOW THAT THE JOINT CLAIM WAS PAID BASED ON A MISTAKE OF LAW

Third Party Creditors still offer no legal basis to support the theory that the voluntary payment doctrine applies to this case. For reasons that are obvious, the Creditors shy away from any reference to the *Hartford Accident & Indemnity Company v. Chicago Housing Authority,* 12 F.3d 92 (7th Cir 1993)("CHA") and *Illinois Graphics Co., v Nickum,* 639 N.E.2d 1282, 1292 (Ill. 1994) -- the cases that this Court has found most analogous to the present case.

In *CHA*, the insurer paid a claim under the mistaken belief that certain claims exceeded one million dollars. 12 F.3d at 96. This factual mistake led the insurer to conclude that the claim triggered coverage under its policy. The Seventh Circuit considered the insurer's mistake to be one of fact. *Id.* The court found that the record was clear that CHA represented to the insurer that payments had exceeded the limits of the underlying policy. *Id.* The insurer responded by making the requested payment. *Id.* Under the Illinois test, this representation caused the insurer to make a mistake of fact that certain claims exceeded one million dollars. *Id.* When it discovered that its factual interpretation was incorrect (i.e. that no single claim exceeded $ 1,000,000), it demanded its money back. *Id.*

As already noted by this Court, the Illinois Supreme Court reached a similar conclusion in *Illinois Graphics.* # 42 at p. 10-11. That the Creditors do not even attempt to discuss or distinguish these cases that the Court has already found applicable is most telling. As previously noted, the Creditors fail to offer any set of facts that would cause this Court to revisit its

- 8 -

394244.1

conclusion. There is no question that the present case is similar to CHA the one at bar and, thus, under Illinois law, the scenario at bar represents a mistake of fact whereby the insurer is entitled to recover. *Id.*

To support their argument on summary judgment, the Creditors cite the same cases they relied upon in their motion to dismiss to support the same claim that American General reached its own improper legal conclusion as to the validity of the joint payment based on the facts that were presented to it: *Cohn v. Anthem Life & Health Ins. Co.*, 965 F. Supp. 1119, 1121-22 (N.D. Ill. 1997), *Hartford v. Doubler*, 105 Ill. App. 3d 999, 434 N.E.2d 1189, 1191 (3rd Dist. 1982) *Western & Southern Life Insurance Co. v. Brueggeman*, 323 Ill. App. 3d 173, 55 N.E.2d 719 (4th Dist. 1944), *Auto Owners Ins. Co. v. South Side Trust & Savings Bank*, 176 Ill. App. 3d 303, 531 N.E.2d 146 (3rd Dist. 1988).

To the extent these cases are relevant at all, it is only to show that the Creditors are not entitled to the relief they seek. As this Court has already found, these cases are easily distinguished. *Auto Owners* involved a counterclaim brought by a bank against the insurer to recover payments made on a letter of credit after it failed to verify that the principal listed on the bond was not the principal on the letter of credit. The appellate court upheld the trial court's decision that the bank made a mistake of law when it failed to adequately examine the bond before paying on the letter of credit. 176 Ill. App. 3d at 312.

*Cohn, Hartford,* and *Western* all involve cases where the insurer asserted a mistake of fact based on a policy exclusion or "an inadvertent clerical error". *Cohn,* 965 F. Supp. at 1122. In those cases, the court charged the insurer with knowledge of its policies and received the request to act under the terms of its policy. *Hartford* 434 N.E.2d at 1191.

The Creditors claim that these cases are similar to the one at bar based on the misconception that TFG, JFG and the Bank completed the forms designated by American General in the manner American General indicated, pointing to the ministerial acts performed by John Lyons, which they claim was meant to satisfy Lawrence Bianchi's request for a form to notify American General that TFG was the holder of Janko's assignments.

However, there is no support in the record for the conclusion that Mr. Lyons was acting on behalf of American General. Based on the record, Mr. Lyons' conduct cannot be imputed to American General because the undisputed testimony is that he was acting as Margaret and James Stilwell's agent, not as an agent for American General when he performed these tasks. American General's Appendix of Exhibits (#83) at Ex. B at pp. 15, 17. In any event, this argument fixates on an event that transpired before the Creditors submitted their claim to American General in 2003 and its relevance to American General's payment of the claim is a mystery.

It is undisputed that American General initially recognized and internally recorded the November 22, 2000 as a blanket _release_ by Janko (which is the position Plaintiff claims is correct). Indeed, American General did not pay the proceeds upon receipt of the joint claim submissions, but instead advised TFG and Janko in its letter dated June 10, 2003, that its records indicated that TFG only held a single assignment of $250,000 and that Janko had released its assignments. # 81 at ¶¶ 23, #83, Ex. A(1) at Ex. 21, Ex. C at 58 and Ex. C(6). Significantly, in response, the Creditors sought to "clarify" that the parties' actual intent in executing that document was to transfer and assign from Janko to TFG of all of the prior Policy assignments held by Janko. # 81 at ¶ 24, # 83 at Ex. C at 58-64 and Ex. C(7). The Creditors also reiterated the fact that TFG held assignments in excess of its claims under the Policy.

394244.1

The Creditors' next contention, that American General voluntarily made a payment under a claim of right after it made its own determination of the validity of the claim, is meritless and finds no support in the record.

This position intentionally avoids the fact that the determination that American General made was based on the factual statements and information that the Creditors provided in their verified claim submissions. Even the Creditors must admit that they represented to American General that (1) Janko had transferred its assignments to TFG pursuant to an assignment and assumption agreement that pre-dated the assignment form that American General recorded as a "release"; (2) the words "in favor of Tuscola Furniture Group, LLC" on the assignment form "was a transfer of all rights of insurance assignment from JFG to TFG," not a release and, (3) the outstanding life insurance assignments received under consignment agreement totaled $3,250,000. (Bank's Proposed Undisputed Facts ("PF) 23-34 and TFG and Janko's PF 23-30).

The fact that American General performed a detailed and thorough investigation and forwarded the information it received from the Third Party Creditors to its in-house counsel prior to approving the claim for payment does not undermine American General's third party claim. This point supports the finding that American General relied on the information and assurances contained in the verified claim submissions, including the assurance that TFG was the holder of Janko's prior assignments, when it paid the joint claim. #83, Ex. C at 98, Ex. E at 67; Ex. G(3) at ¶ 4.

American General has provided undisputed testimony that claims are paid "in light of the claim documentation submitted and the policy terms." # 81 ¶ 38, 39; # 83 Ex. G(3). There is no evidence to the contrary and certainly no evidence that American General paid the joint claim because it performed its own analysis as to whether the information provided was actually true.

- 11 -

394244.1

There is no question that Third Party Defendants represented that TFG was the rightful holder of Janko's assignment. If American General wrongfully paid the joint claim, it did so based on the mistaken belief that the third parties had assignments of $3,250,000. This is not a question of law, but of fact. Contrary to Third Party Creditors' belief, this was a fact that did not have to be independently verified by American General. # 81 at ¶5, # 83 at Ex. B(1) at 7. Indeed, the Policy itself provides that American General is not responsible for the validity of an assignment. Accordingly, there is no legal basis for Third Party Defendants to contend that American General did or was required to "make its own legal conclusion" regarding the validity of the assignments that Third Party Defendants claimed they held.

On the other hand, Janko, TFG and First Mid, as the (purported) assignees under the Policy, were required to provide verified proof of loss that they were entitled to the Policy proceeds that they claimed. They did this by executing and submitting a verified claimant's statement and providing additional documentation to support their claim under the Policy. As this Court has already found, American General's payment of the Creditors' joint claim was based on the facts and representations made by the Creditors in their claim submissions. Again, this is best highlighted by the fact that American General initially disputed the claimant's joint representation that they were entitled to proceeds based on the assignments previously held by Janko and it was only after the parties submitted additional documentation to "clarify" this fact that American General paid the joint claim.

For the Creditors to now argue that they are not responsible for the statements they made is disingenuous at best. There can be no question based on the law and the facts of this case that to the extent that American General is liable to Plaintiff, the Creditors are liable to American General and their motion must be denied.

394244.1

### III. IF AMERICAN GENERAL IS LIABLE TO PLAINTIFF, THE THIRD PARTY CREDITORS MISREPRESENTED A MATERIAL FACT

Third Party Creditors argue that they are entitled to summary judgment on American General's claims for fraud because (1) they simply regurgitated the language of the assignment (2) Mr. Bianchi affirmed the information he submitted was true and correct, and (3) any misrepresentation was not "material." Each of these arguments should be summarily rejected.

First, even the most summary review of the claim submissions demonstrates that the Creditors did more than simply quote the language of the documents they submitted in their verified claim submissions. Indeed, the lengthy written response that was submitted by TFG after American General questioned the status of the release of Janko's assignments does far more then quote from documents that are provided to American General, it makes numerous representations concerning the "chronology of events" that resulted in the status of the assignments including – but not limited to the following:

> **On 20 November 2000, in support of the assignment and assumption agreement between JFG and TFG, JFG signed a release of assignment on Policy No. 2604663 'in favor of Tuscola Furniture Group, LLC.' This release was a transfer of all rights of insurance assignment for JFG to TFG**
> 
> ***
> 
> **The preceding chronology of events resulted in the following assignments from Margaret Stilwell on Policy No. 2604663:**
> 
> **Tuscola Furniture Group LLC - $2,000,000 (assignment transfer to Tuscola Furniture Group LLC via agreement dated 16 November 2000 and release dated 20 November 2000);**
> 
> **Tuscola Furniture Group LLC - $250,000 ( 21 November 2000);**
> 
> **First Mid-Illinois Bank and Trust - $1,000,000 (11 January 2001)**
> 
> **Therefore the life insurance assignments received from Margaret Stilwell on Policy No. 264663 in satisfaction of the requirements of the consignment agreements (dated 16 April 1999 and 17 November 2000) totaled $3,250,000**

- 13 -

# 81 at ¶ 24 and #83, Ex. C at 58-59 and C(7)

The claim that they made no misrepresentation in expressing the above statements is simply untenable. If American General's payment to the Creditors was wrongful, it **must** necessarily follow that the Creditors misrepresented the status of their assignments.

Furthermore, there can be no dispute that these statements and representations to American General concerning the status of the assignments were material to inducing American General to pay their joint claim because the records demonstrates that "but for" their representations to American General that the "chronology of events" resulted in total assignments of $3,250,000, American General would not have paid their joint claim.

Moreover, the Creditors do not contest (or even address) this Court's prior conclusion that the representations that were made to American General *"were clearly material. But for the representations, American General would not have paid Third Party Defendants' claim; thus, but for the representations there would be no fraud claim because AGL would have acted in a different way."* (#42 at page 7). Third Party Creditor have provided nothing from the record that could change this conclusion and their motion should be denied for this reason as well.

## IV. THE BANK CANNOT DISTANCE ITSELF FROM THE JOINT CLAIM

Finally, the Bank's argument that it did not submit a joint claim to American General should be summarily rejected as it is contradicted by its own proposed facts. The Bank concedes that "*Lawrence Bianchi signed the letter prepared and submitted on behalf of First Mid and Thomas Chamberlain signed the letter submitted by JFG & TFG, as the Consignment Agreement provided for the submission to be joint. As Tom Chamberlain lived in Tuscola and approximately seven miles from Lyons' office, he delivered the letters and forms of First Mid and JFG and TFG to William Lyons' office*." (Bank's PF 29-30) How the

- 14 -

394244.1

Bank could possibly try to disassociate itself from TFG and Janko after supporting and signing documents it clearly knew were being filed as a joint claim is a mystery.

While it is true that the Bank could have filed its own claim without TFG and Janko, it did not do this. Instead, what it did was submit a joint claim with TFG and, in doing so, it is bound by the representations TFG made in the claim submissions that was calculated to convince American General to pay the joint claim. The Bank cannot now claim that it can stand on its undisputed individual assignment in support that it, individually, it was properly paid.

As noted above, American General does not dispute that the third-party Creditors were properly paid because Janko assigned all of the rights it held to TFG including the collateral assignments of the policy on the life of James Stillwell. However, if judgment could be entered against American General in favor of Plaintiff, American General is entitled to relief against the Creditors who convinced it to pay their joint claim under the theories of constructive trust, restitution, unjust enrichment, contribution, and indemnity against the creditors.

## CONCLUSION

For all of the foregoing reasons, TFG, Janko and the Bank are not entitled to summary judgment. To the contrary, if this Court denies American General's Motion for Summary Judgment on Plaintiff's claim, American General is entitled to summary judgment against the Creditors on its third party claims of restitution and constructive trust based on the theory of unjust enrichment.

394244.1

Respectfully submitted,

**AMERICAN GENERAL LIFE INSURANCE COMPANY**

By: \_\_\_\_/s/ Cinthia G. Motley_____
      Cinthia G. Motley
Daniel J. McMahon
Rebecca M. Rothmann
Cinthia G. Motley
WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP
120 North La Salle Street, Suite 2600
Chicago, Illinois 60602
(312) 704-0550

- 16 -

394244.1

**CERTIFICATE OF SERVICE**

      I hereby certify that on **April 26, 2007**, I electronically filed the above pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*By CM/ECF Electronic Notification*
Jason M. Crowder
HELLER, HOLMES & ASSOC., P.C.
1101 Broadway, P.O. Box 889
Mattoon, IL 61938
(217) 235-2700
(217) 235-0743 (Fax#)
crowderjason@hotmail.com.

Richard L Heavner
Julie Beyers
HEAVNER SCOTT BEYERS & MIHLAR
111 E Main St , Suite 200
Decatur, IL 62523
217-422-1719
Fax: 217-422-1754
richardheavner@hsbattys.com

Timothy J Howard
Michael Seneca
HOWARD & HOWARD ATTORNEYS PC
211 Fulton St, Ste 600
Peoria, IL 61602-1350
309-672-1483
Fax: 309-672-1568
thoward@howardandhoward.com

      /s/ Cinthia G. Motley
        Cinthia G. Motley

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
120 North La Salle Street, Suite 2600
Chicago, Illinois 60602
Tel. (312) 704-0550
Fax (312) 704-1522
Cinthia.Motley@wilsonelser.com