**E-FILED**
Thursday, 14 June, 2007  03:25:08 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| MARGARET J. STILWELL, HALEY STILWELL, HEIDI STILWELL, JAMIE STILWELL, and MEGAN STILWELL, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 05-2160 |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Defendant/ Third Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| FIRST MID-ILLINOIS BANK & TRUST, TUSCOLA FURNITURE GROUP, L.L.C., and JANKO FINANCIAL GROUP, L.L.C., | ) ) ) ) | |
| Third Party Defendants. | ) | |

## OPINION

On February 15, 2006, Plaintiffs Margaret J. Stilwell, Haley Stilwell, Heidi Stilwell, Jamie Stilwell, and Megan Stilwell filed their Amended Complaint (#16) against Defendant American General Life Insurance Company. American General had removed this case from the Circuit Court of Coles County to this court on July 20, 2005. Plaintiffs allege American General breached the terms of a life insurance policy it issued to James E. Stilwell by making payments from the proceeds of the policy to Tuscola Furniture Group (TFG) and First Mid-Illinois Bank & Trust (FMIB) in excess of the amounts which had been assigned to them under the policy. American General filed a Third Party

Complaint (#14) against TFG, FMIB, and Janko Financial Group (Janko) seeking indemnification from these Third Party Defendants if American General is found liable under Plaintiffs' Amended Complaint.  FMIB also filed a Cross Caim for contribution against TFG and Janko (#47) in the event it is found liable under American General's Third Party Complaint.

On March 28, 2007, Plaintiffs filed a Motion for Summary Judgment (#80), and American General filed its own Motion for Summary Judgment on Plaintiffs' Claim (#81) on April 2, 2007.  American General also filed a Motion for Summary Judgment on its Third-Party Claims (#82) on April 2, 2007.  FMIB also filed a Motion for Summary Judgment on American General's Third Party Complaint and its Cross Claim against Janko and TFG (#84) on April 2, 2007.  Finally, TFG and Janko filed a Motion for Summary Judgment on American General's Third Party Complaint (#85) on April 2, 2007.  For the reasons that follow, Plaintiffs' Motion for Summary Judgment is DENIED, American General's Motion for Summary Judgment on Plaintiffs' Claim is GRANTED, American General's Motion for Summary Judgment on its Third-Party Claims is denied as MOOT, FMIB's Motion for Summary Judgment is denied as MOOT, and TFG and Janko's Motion for Summary Judgment is denied as MOOT.

FACTS

On October 27, 1998, Old Line Life Insurance Company of America, a subsidiary of American General, issued a life insurance policy insuring James Stilwell in the amount of $4,000,000.  It also issued a separate life insurance policy insuring James in the amount of $1,000,000.  Margaret was a 60% beneficiary under both policies.  The remaining Plaintiffs were also beneficiaries under the policies.  The $4 million policy allowed the policyholder to make third party assignments.  On this issue, the policy contained the following provision:

Assignment

No assignment of this policy will be binding on us until filed with us in writing and recorded by us.  No assignment will affect any payment we made before we recorded the assignment.  We will not be responsible for the validity of an assignment.

All rights of the owner and any revocable beneficiary are subject to the rights of any assignee on record with us.

James was the president and owner of Amishland Country Village (ACV).  On April 16, 1999, Janko and ACV entered into a Consignment Agreement to assist ACV in financing its retail furniture business.  Pursuant to the Consignment Agreement, James and Margaret were required to personally guarantee ACV's debt and were required to maintain life insurance protection for the benefit of Janko and its lender.  With regard to the life insurance protection, the Consignment Agreement stated:

Life Insurance: ACV will maintain life insurance and pay the premiums thereon on JIM STILWELL in the amount of at least $2,000,000.00 or an amount equal to the Inventory Cap, if higher, with JANKO and Bank named as beneficiary. . . . The life insurance proceeds shall be used first to pay Bank for the amount JANKO owes Bank in order to release its lien on the Amish furniture, then to JANKO for all Amish furniture owned by JANKO at average wholesale cost, less a credit for the amount paid Bank, and any other amounts owed to JANKO under this agreement and any excess life insurance proceeds shall be paid to the Estate of James Stilwell or ACV.  Upon payment, JANKO will convey title to

-3-

as much of the Amish furniture free and clear of all liens, as was paid for by the insurance proceeds, to ACV.

Thereafter, Janko received two separate assignments under the $4 million policy totaling $2 million from ACV.  The two assignments ACV provided stated:

> F.  The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity of the amount of the Liabilities or the existence of any default therein, or the filing of any notice under Paragraph E(2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the Insurer.  Checks for all or any part of the sums payable under the Policy and assigned therein shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be requested by the Assignee.

American General verified receipt of both of these assignments.

The principals of Janko later created an entity called Tuscola Furniture Group (TFG).  Janko was the majority shareholder of TFG.  On November 16, 2000, Janko and TFG entered into an Assignment and Assumption agreement which transferred and assigned all of Janko's rights and obligations under the Consignment Agreement to TFG.  The Assignment and Assumption Agreement included Janko's assignment to TFG of "[a]ny and all Contracts and other documents including insurance policies, relating to and incurred in connection with the acquisition and

consignment of Amish Furniture pursuant to the Consignment Agreement . . . ."

On November 17, 2000, ACV and TFG entered into a new Consignment Agreement. The terms of the new 2000 Consignment Agreement were very similar to the terms of the 1999 Consignment Agreement entered into between Janko and ACV. Under the new Consignment Agreement, James and Margaret were still required to guarantee ACV's debt to TFG and ACV was required to maintain life insurance in the amount of $1,250,000 or an amount equal to the inventory cap with TFG and FMIB named as beneficiaries. At the closing of the 2000 financing transaction, James and Margaret did not present evidence of a new joint life insurance policy or an assignment of interest under the existing $4 million policy. TFG nevertheless agreed to close the transaction.

TFG requested that James and Margaret provide it with documentation so it could notify American General that Janko had assigned its rights under the $4 million policy to TFG as a result of the Assignment and Assumption Agreement. On November 21, 2000, Larry Bianchi of Janko and TFG received from the Stilwells' insurance agent a partially completed American General assignment form. The portion which had been completed was titled "Release of Assignment." Bianchi inserted the words "in favor of Tuscola Furniture Group, LLC" after his signature.

On November 21, 2000, Margaret executed a Policy Assignment in the amount of $250,000 in favor of TFG. TFG received the assignment after Bianchi executed the Release of Assignment. After receiving the Policy Assignment, Bianchi informed James that the assignment was inadequate because it did not include FMIB and the amount of the assignment was wrong in that an additional $1 million was required under the terms of the Consignment Agreement. In January 2001, Margaret executed another Policy Assignment in the amount of $1 million in favor of FMIB. Bianchi notified James that the January 2001 assignment was inadequate because it named only FMIB. Bianchi

-5-

informed James that TFG would not release the $2 million in policy assignments it received from Janko until the matter was corrected.

On May 2, 2003, James died.  Pursuant to the insurance contract, American General was obligated to pay out all amounts due under the assignments and then to provide the original beneficiaries with the remainder of the proceeds.  On May 12, 2003, TFG submitted a "Proof of Death Claimant's Statement" to American General seeking $512,974.50 of the life insurance proceeds.  Of that amount, TFG owed FMIB $81,020.  Attached as Exhibit A was a document indicating the Stilwells and ACV owed $512,974.50 to TFG.  TFG also submitted a cover letter which stated, in part:

> Tuscola Furniture Group, LLG ("TFG") and First Mid-Illinois Bank and Trust ("Bank") are jointly making application on the Collateral Assignments they received to secure an obligation under a certain Consignment Agreement dated November 17, 2000 between TFG and Amish Land Country Village, Inc.
>
> As itemized on the attached Exhibit A, the total amount owed by Amish Land Country Village, Inc. and guaranteed by James and Margaret Stilwell is $512,974.50. This amount includes the amounts that TFG owes the Bank.
>
> Please issue your draft made payable to "Tuscola Furniture Group, LLC and First Mid-Illinois Bank and Trust," and have it delivered to the Bank at 2229 South Neil, Champaign, Illinois 61820, Attn: Thomas J. Chamberlain, Community President. The signature of the Bank officer below acknowledges and confirms this direction.
>
> . . .
>
> Upon receipt of this amount TFG and the Bank will relinquish all Assignments

against the proceeds on the life insurance policy number 2604663.  Specifically,

these are the Assignments to Janko Financial Group, LLC, TFG and the Bank dated

April 19, 1999 for $500,000, September 25, 2000 for $1,500,000, and January 11,

2001 for $1,000,000.

Finally we have also enclosed and completed Claimant's Statement on the form you

provided for both TFG and Janko Financial Group, LLC.

The cover letter was signed by Larry Bianchi of TFG and Janko and Thomas J. Chamberlain of

FMIB.  On May 28, 2003, Bianchi forwarded additional correspondence to American General to

amend his initial claim submission to include another assignment.  The letter stated, in part: "Please

accept this letter as an amendment to my letter dated 12 May 2003.  When listing 'all Assignments'

against the proceeds on the life insurance policy number 2604663, I inadvertently left out an

assignment to Tuscola Furniture Group, LLC dated November 21, 2000 for $250,000."

On June 10, 2003, American General sent separate letters to TFG, Janko, and FMIB

requesting verification of the assignments referenced in their claims and confirmation of the debt

they claimed to be owed.  American General further informed Janko that, according to its records,

Janko had released its assignment in December 2000 and advised TFG that it only had records of

one assignment to TFG in the amount of $250,000.  Bianchi responded to this letter on behalf of

TFG and Janko by speaking with Ray Sawicki, Director of Claims for American General.  Bianchi

informed Sawicki that TFG held multiple assignments which exceed the amount of the parties'

Consignment Agreement.  Bianchi further informed Sawicki that Janko executed the form release

document to inform American General that Janko had already released and transferred its policy

rights to TFG and that TFG held the assignments.  TFG followed up this conversation with

-7-

correspondence to American General which summarized what had happened with regard to the assignments from ACV as follows:

On 16 April 1999, Janko Financial Group (JFG), LLC entered into a Consignment Agreement for the retailing of Amish Furniture with Amishland Country Village, Inc. and guaranteed personally by James and Margaret Stilwell.  Section 3.9 of this original Consignment Agreement required that JFG and their lender, First Mid-Illinois Bank and Trust (FMIB), receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $2,000,000.

On 19 April 1999, JFG received an assignment of life insurance in the amount of $500,000 from Margaret Stilwell, owner of Policy No. 2604663 with James Stilwell as the insured.  However, it was not until 25 September 2000, that JFG received a second assignment of life insurance for the same policy in the amount of $1,500,000 from Margaret Stilwell.

On 16 November 2000, JFG signed an Assignment and Assumption Agreement with a newly formed LLC, Tuscola Furniture Group (TFG), LLC.  This new entity is owned 70% by JFG with JFG acting as managing member.  This agreement was specifically included and lists any rights to insurance assignments relating to the original Consignment Agreement.

On 17 November 2000, TFG entered into a new Consignment Agreement with Amishland Country Village, Inc. and guaranteed personally by James and Margaret Stilwell.  This new agreement modified and replaced the previous agreement.  Once again, Section 3.9 of the new Consignment Agreement required that TFG and their

lender FMIB receive an assignment of beneficial interest for life insurance on James Stilwell in the amount of $1,250,000.

On 20 November 2000, in support of the Assignment & Assumption Agreement between JFG and TFG, JFG signed a release of assignment on policy number 2604663 "In favor of Tuscola Furniture Group, LLC." This release was a transfer of all rights of insurance assignment for JFG to TFG.

On 21 November 2000, TFG received an assignment of life insurance in the amount of $250,000 from Margaret Stilwell, owner of policy number 2604663 with James Stilwell as the insured. Then, on 11 January 2001, FMIB received an assignment of life insurance for the same policy in the amount of $1,000,000 from Margaret Stilwell.

The preceding chronology of events resulted in the following assignments from Margaret Stilwell on policy number 2604663:

Tuscola Furniture Group, LLC - $2,000,000 (assignment transfer to Tuscola Furniture Group, LLC via agreement dated 16 November 2000 and Release dated 20 November 2000);

Tuscola Furniture Group, LLC - $250,000 (21 November 2000);

First Mid-Illinois Bank and Trust - $1,000,000 (11 January 2001).

Therefore, the life insurance assignments received from Margaret Stilwell on policy number 2604663 in satisfaction of the requirements of the Consignment Agreements (dated 16 April 1999 and 17 November 2000) totaled $3,250,000.

These events lead us to the claim being made jointly by TFG and FMIB to American

General Life.  As documented in the information submitted by JFG, TFG and FMIB,
a joint claim is being made for $512,974.50 in conjunction with the obligations of
Amishland County Village, Inc. and James and Margaret Stilwell per the
Consignment Agreement date [sic] 17 November 2000.  The payment of this claim
in the amount of $512,974.50 would release all assignments to JFG, TFG and FMIB,
which total $3,250,000.  Mr. Sawicki, as we discussed I believe that a review of the
enclosed letters dated 12 May 2003 and 28 May 2003, provide American General
Life with releases for all assignments totaling $3,250,000 upon receipt of the claim
amount of $512,974.50.

American General approved payment of the claim submitted by TFG and FMIB.  On June 26, 2003,
American General forwarded a check for $512,974.50 to TFG and FMIB.  FMIB took $81,020 plus
$160.37 in interest and $480 in legal fees from the $512,974.50 and the balance was received by
TFG.  Margaret never notified American General that she objected to payment of the claim that TFG
and FMIB made prior to American General's payment of the claim.

On May 6, 2003, Margaret executed a "Proof of Death Claimant's Statement" under the $1
million policy which was submitted to American General for processing.  Margaret never submitted
a similar claim form under the $4 million policy.  On May 28, 2003, American General forwarded
a check to Margaret for $600,000, 60% of the $1 million policy.  After paying the claims submitted
by creditors under the $4 million policy, American General sent a letter to Margaret along with a
check for $25,354.98, what remained of her 60% share of the $4 million policy after all business
creditors had been paid.  On August 4, 2004, after receiving claim statements from the remaining
beneficiaries, American General sent four checks in the amount of $4,225.83 to Haley Stilwell,

-10-

Megan Stilwell, Jamie Stilwell, and Heidi Stilwell.

On November 25, 2003, Margaret filed a Petition for Bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. Janko and TFG did not assert a claim in the bankruptcy estate because the debt owed them was satisfied through American General's payment of the life insurance proceeds. On April 27, 2004, Margaret received a discharge of her debts in the bankruptcy proceedings.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988).

Plaintiffs argues that Defendant breached the terms of the life insurance contract when, according to Plaintiffs, it paid FMIB and TFG more than they were entitled pursuant to the assignments issued under the policy. Plaintiffs argue that Margaret authorized only one assignment of the proceeds of James' life insurance policy to FMIB in the amount of $1,000,000 and one to TFG in the amount of $250,000. With regard to TFG, Plaintiffs argue that while TFG may have been owed more, TFG was entitled to recover only $250,000 because that was the limit of its assignment

under the policy.[1]

Defendant argues that its payments to FMIB and TFG were permissible under the policy because TFG held assignments totaling $2,250,000 under the life insurance policy because of Janko's assignment of its rights under the policy to TFG.  Defendant argues that this assignment was accomplished in the November 16, 2000, Assignment and Assumption Agreement entered into between Janko and TFG and the November 21, 2000, Release of Assignment form completed by Janko.  Plaintiffs respond by arguing that the assignment from Janko to TFG was invalid because the document submitted by Janko to American General was a complete release of Janko's rights under the life insurance policy rather than a transfer of its rights to TFG.[2]

The central issue in this matter is whether American General complied with the life insurance policy it issued to James in paying proceeds to TFG and FMIB as a result of the assignment from Janko rather than paying the proceeds to Plaintiffs.  The policy provides that "[a]ll rights of the owner and any revocable beneficiary are subject to the rights of any assignee on record with us."  There is no issue that James and Margaret assigned $2 million under the policy to Janko.  Thus, this

---

[1]  Plaintiffs also make an argument that FMIB was overpaid on its claim because it collected interest and attorney fees.  Plaintiffs fail to elaborate on why FMIB was not entitled to recover these fees, nor have Plaintiffs cited any caselaw in support of this position.  Therefore, the court finds this claim is without merit.

[2]  Plaintiffs make two other arguments in support of their motion for summary judgment which require little discussion.  First, Plaintiffs argue that a valid assignment was not made between Janko and TFG/FMIB because Margaret did not consent to the assignment.  However, Plaintiffs have cited no language in the policy which requires such consent.  Rather, the only requirement under the policy appears to be that the assignment be filed and recorded with American General, which this court concludes was done.  Second, Plaintiffs argue that Janko could not make an assignment to TFG and FMIB because it was owed nothing by the Stilwells at the time of James' death.  However, Janko had already assigned what it was owed by the Stilwells under the policy to TFG and FMIB at the time of James' death.

court must determine if Janko validly assigned its interest in the policy to TFG and FMIB.[3]  If so, this court must determine if TMG and FMIB recorded that assignment with American General because the policy states with regard to assignments that "[n]o assignment of this policy will be binding on us [American General] until filed with us in writing and recorded by us."

Pursuant to Illinois law,[4] an assignment occurs "when there is a transfer of some identifiable interest from the assignor to the assignee."  Northwest Diversified, Inc. v. Desai, 818 N.E.2d 753, 761 (Ill. App. Ct. 2004).  "Assignments are governed by contract law, and an assignment is subject to the same requisites for validity as are other contracts, such as intent, mutuality of assent, capacity to contract, legal subject matter, and consideration."  Northwest, 818 N.E.2d at 761.  The determination of whether a valid assignment was made is "to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances."  Northwest, 818 N.E.2d at 761, quoting Rivan Die Mold Corp. v. Stewart-Warner Corp., 325 N.E.2d 357, 361 (Ill. App. Ct. 1975).  If a valid assignment has been made, "the assignee acquires all of the interest of the assignor in the property that is transferred."  Northwest, 818 N.E.2d at 761, quoting Buck v. Illinois Nat'l Bank & Trust Co., 223 N.E.2d 167, 169 (Ill. App. Ct. 1967).

Plaintiffs argue that there was not a joint assignment to TFG and FMIB, so the joint claim filed by TFG and FMIB with American General was improper.  However, it is clear from the

---

[3]  Even if the assignment to TFG was not valid, there is some issue if there would then be liability for American General.  The policy states that American General "will not be responsible for the validity of an assignment."  Furthermore, it is clear from the record that the Stilwells intended for TFG and FMIB to receive the assignment based upon the 2000 Consignment Agreement.

[4]  The parties do not dispute that Illinois law governs this matter.

documents submitted to this court and the circumstances surrounding the assignments that a valid assignment was made.  The document which first sheds light on the validity of this assignment is the Consignment Agreement entered into between ACV and Janko pursuant to which James and Margaret were required to personally guarantee ACV's debt and were required to maintain life insurance protection for the benefit of Janko and its lender.  This document clearly indicates that Margaret and James intended to assign to Janko and its lender an interest in the $4 million policy in the amount of $2 million.  Janko and TFG then entered into an Assignment and Assumption agreement which assigned all of Janko's rights and obligations under the Consignment Agreement to TFG.  Thus, it is beyond dispute from this agreement that Janko intended to assign its interest in the $4 million policy to TFG.

The 2000 Consignment Agreement entered into between TFG evidences the intent of the Stilwells to make an assignment to TFG and FMIB.  The terms of the 2000 Consignment Agreement required James and Margaret to guarantee ACV's debt to TFG and ACV was required to maintain life insurance in the amount of $1,250,000 or an amount equal to the inventory cap with TFG and FMIB named as beneficiaries.  Further, it is undisputed that TFG requested that James and Margaret provide it with documentation so it could notify American General that Janko had assigned its rights under the life insurance policy to TFG as a result of the Assignment and Assumption Agreement.  TFG then received from the Stilwells' insurance agent a partially completed American General assignment form.  On this form, signed by an agent of both TFG and Janko, it is written "in favor of TFG."  While the section of the document which is filled in is entitled "Release of Assignment," it is apparent by the insertion of the phrase "in favor of TFG" that Janko did not intend to completely release the assignment, but rather release the assignment to them and transfer it to TFG.  "[N]o

particular words are required to create a valid assignment so long as the intent to transfer is evident."
Community Bank of Greater Peoria v. Carter, 669 N.E.2d 1317, 1319 (Ill. App. Ct. 1996).   This intent is undisputed based upon the provisions of the Assignment and Assumption Agreement, and Plaintiffs have presented no evidence to contradict the intent evidenced by that agreement.

While it is true that American General originally considered the document submitted by TFG to be a release, TFG and FMIB subsequently submitted documentation in support of their claim that Janko had transferred its rights under the $4 million policy to TFG rather than released them.  After reviewing these documents, American General reconsidered its position and found that a valid assignment had been made.  Plaintiffs have cited no caselaw in support of their position that an insurance company is bound by its initial assessment of a claim.  Furthermore, it is evident Margaret did not depend on this pre-claim analysis because she did not contest the position of TFG and FMIB.  Accordingly, this court concludes that TFG and FMIB recorded a valid assignment with American General.  Therefore, the undisputed facts show that summary judgment in favor of American General is warranted.

Because this court concludes that the undisputed evidence clearly evidences an intent for TFG and FMIB to receive the assignment from Janko concerning the $4 million policy, this court needs not address American General's remaining arguments.  Furthermore, the Third Party Complaint filed by American General against TFG, FMIB and Janko, along with the Cross Claim filed by FMIB are now moot.  American General's Third Party Complaint seeks recovery from TFG, Janko, and FMIB under the theory of unjust enrichment, arguing if American General's payment of the claim by TFG and FMIB was improper, it follows that they were not entitled to the policy funds they received.  Because this court has determined American General's payment was proper,

the court need not consider these claims.  Furthermore, FMIB's Cross Claim seeks contribution from

TFG and Janko for any judgment that may be entered against it in this cause.  Because this court has

not found any liability with regard to FMIB, this claim is also moot.

IT IS THEREFORE ORDERED:

> (1) Plaintiffs' Motion for Summary Judgment (#80) is DENIED.

> (2) Defendant American General's Motion for Summary Judgment on Plaintiffs' Claim (#81)
is GRANTED.

> (3) Defendant American General's Motion for Summary Judgment on its Third-Party Claims
(#82) is denied as MOOT.

> (4) Third Party Defendant First Mid-Illinois Bank and Trust's Motion for Summary
Judgment on American General's Third Party Complaint and its Cross Claim (#84) is denied as
MOOT.

> (5) Third Party Defendants Tuscola Furniture Group's and Janko Financial Group's Motion
for Summary Judgment on American General's Third Party Complaint (#85) is denied as MOOT.

> (6) The final pretrial conference scheduled in this matter for August 1, 2007, and the jury
trial scheduled to begin August 27, 2007, are VACATED.

> (7) This case is terminated.

ENTERED this 14th day of June, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

-16-